# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

DEAN

V

Case Number:

J. BISSELL, IMMIGRATION CONSULTANTS OF CANADA REGULATORY
COUNCIL, ABC CORPS 1 -100 (FICTIOUS ENTITIES), ALLAM, ANDREW
ROMAN PROFESSIONAL CORPORATION, AMLANI, ARCH INSURANCE
CANADA LTD, ASHMORE, ASHWORTH, ATKINS, AVIVA
INSURANCE COMPANY OF CANADA, AWWAD, BALBIRAN, BARAM,
BARKER, BASSIRULLAH, BASTARACHE, BELEVICI, BELL AND SHIVAS,
P.C., BELL JR., BERASKOW, BERESKIN & PARR LLP, BERNIER,
BEVERELY, BOLDT, BORDERS IMMIGRATION
CONSULTANCY, BRITU, BROOKS, BURKE, BURNS, CANADIAN
ASSOCIATION OF PROFESSIONAL IMMIGRATION CONSULTANTS,
CARDOZO DE CARDOSO, CEDAR GROVE POLICE DEPARTMENT,
CHOI, IMMIGRATION, REFUGEES, AND CITIZENSHIP CANADA,
CLASSIC LUXURY LLC, COCKERILL, COWIE, CPA ONTARIO, DAMITZ,
DASS, DAW, DEETH WILLIAMS WALL LLP, R. DENNIS, E. DENNIS,
DICKENSON, D'SOUZA, EATON, EL – GHANDOURI,
EVEREST INSURANCE COMPANY OF CANADA, FABER, FARROL,
FORBES CHOCHLA, FORTIN, FURLONG, GABRIELA NAJAR DE LIMA,
FUHRER,GAGNON, GAUDET, GELBLOOM, HAMID-OKE, HARPER,
HARRINGTON, HAWE, HERNANDEZ, HILLIER, HUSSEN, HUYNH,
IGBOKWE, IWAJOMO, JADE, JANE DOES 1 - 100 (FICTIOUS PERSONS),
JOHN DOES 1 - 100 (FICTIOUS PERSONS), JOHN MCNEIL RISK
CORPORATION, N. JONES, R. JONES, JOZSA, KEELE COTTRELLE,
KELLY, KENNEDY, N. KEWLEY, R. KEWLEY, KINGDON, KRAJEWSKA,
LAFRENIERE, LARRY, LASKIEWICZ, LEBARON, LEBEBVRE, D. LEBLANC,
R. LEBLANC, LEE, LEON, LI, LIMA, LISOWSKI, LIU, LLOYD'S OF LONDON
INSURANCE, K. LY, S LY, MACKENDRICK, MACKIE, MARBELL, MAY,
MCAULEY, MCCEACHY, MCDERMOTT, MCKAY, MCNAIR, MENDICINO,
MILLER THOMPSON, MILMANTAS, MISTRY, MOONEY, MURRAY,
NAJAR DE LIMA, NONO, NOONAN, NR COMPLAINTS AND DISCIPLINE
SOLUTIONS INC, ORR, O'TOOLE, PACE, PAGE, PAHL, PALIARE
ROLAND ROSENBERG ROTHSTEIN LLP, PARENT, PAULAUSKA,
PERETZ, PEREZ, PERRAM, PSOCH, PUMPHREY, QUEENS UNIVERSITY,
RAMOS, RANKIN, RISK, ROMAN, ROUKEMA, RYAN, SACCUCCI,
SANFORD, SHIVAS, SIDHU, SIERRA GLOBAL MANAGEMENT LLC,
SINGH, JONAL, SINGHERA, SINGLETON UQUHART REYNOLDS
VOGEL LLP, SMITH, J. SODEN, S. SODEN, STANLEY, STEPHENS,
STEPHENSON, STRIPNIECKS, TEMPLE INSURANCE COMPANY,
TONELLI, TOWER, TOWNSHIP OF CEDAR GROVE, TUCCI, VAN
STADIUUM, VARNAM, VINSOME, WALL, WARD, WARDEL, WEN, WIEBE,
WILLIAMS, WINEGUST, XI, XL REINSURANCE AMERICA INC, YIN,
YORK UNIVERSITY, ZAJACK & ZILLEGEN

**CIVIL RICO COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiff(s):

Ryan Dean
3540 W. Sahara Ave, 752
Las Vegas, NV, 89102
rcic20xx@gmail.com

1

Pre – Note: Use the link immediately below: It contains the "PDF Court Filing" and the "Actual Document" that was filed to create the PDF court Filing.  Use the file called "**Actual Document**" as it far more user friendly in terms of accessing all of the other links embedded in the document, and the reader will only need to type in one url in total: Simply type the address immediately below in the url browser as you would any internet address and hit <enter>:

**https://www.dropbox.com/sh/xcz51upmbkrp74h/AACyxSxLsNoRzVhJSG3H8V2_a?dl=0**

**Next, to download and access the file that says "Actual Document" double click. Off to top right-hand corner there is the download symbol** ⬇

**Prologue**

1. Ultimately this is a story of an attempt to send a man away to state prison for the rest of his natural life and aggravated violations of 18 USC § 1512 and 18 USC § 1513 – Tampering and Retaliating against a witness, victim, or an informant – in the commission of an attempted murder – and numerous other RICO Predicate Racketeering Act Offenses, and related conspiracy offenses to commit these Offenses.

2. It is a story of Extortion and Criminal Coercion.

3. It is also a story of utter Civil Rights Violations under 18 USC § 1983 and 18 USC § 1985.

4. New Evidence has recently been discovered with respect to all of these matters that uncovers the Evil Scheme to defraud by defendants.

5. These Crimes fall under the United States Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") – as well as the corresponding State(s) RICO (or equivalent) statutes.

6. Plaintiff(s) is a defined term to include Mr. Ryan Dean.  More Plaintiff(s) will likely be added that include Mr. Kevin Klassen, Ms. Nancy Salloum, and others directly affected by the actions of the defendants. Plaintiff(s) can also be corporate Plaintiff(s) and/or another entity. Time has been a factor in writing this complaint because there are concurrently several other legal proceeding to be dealt with at this time related to these matters, and as such errors and admissions and Plaintiff(s) will be added/subtracted, as the case may be in due course.

7. Ms. Lisa Bissell ("Bissell"), currently the "Plaintiff" in ESX – L – 984 – 19 and former CEO of Pure Grown Diamonds Inc, confederated and conspired with defendants, including her own lawyers, to accuse knowingly, malevolently, and falsely, Mr. Ryan Dean ("Dean"), of a one-time brutal and heinous sexual assault, the night of February 7, 2017 for the end of Extortion Takes – if Dean survived.  Ms. Bissell was a Self – Professed 'Spin Doctor' who was comfortable going onto TV and making out that Lab Grown Diamonds were better than "a girl's best friend."

8. Bissell weaponized her craft and "story telling" abilities, and fabricated a tale that she was the one time brutal sexual assault victim of Dean, followed up by falsely claiming that Dean was making constant and nefarious threats of breaking and entering into her home, re-raping Ms. Bissell due to the 'fact' that '…no one would hear him enter or hear her scream, "like the last time" and then ending in grisly *Mass Murder* of Bissell, her family,

and her *children – each and every time that Bissell and Dean spoke on the phone and/or face-to-face* from the period of February 8, 2017 – May 1, 2017.

9. Of course, there was no physical evidence of any sexual assault and indeed Bissell testified that she destroyed/did not keep any evidence and of course there were no recordings of Dean making these so called predicable threats.

10. Now, Bissell's police report that has been unlawfully concealed for nearly four years has been obtained and it forecloses on the possibility of these supposed "threats," and indeed the supposed brutal sexual assault itself.

11. Everything that has been fabricated has been a scheme to defraud Plaintiff(s), while at the same time making the Township of Cedar Grove stand on their policies, that were clear 'color of state law' violations of Dean's due process rights, for instance, trigging 42 USC § 1983 claims. The Police are the ones who have also withheld this exculpatory Evidence for nearly four years.

12. Ms. Bissell's main plan, then being financed by the Canadian defendants (as described below), was to unjustly have Dean incarcerated into New Jersey State Prison for the remainder of his natural life – and then arrange for his murder by any number of unsavory individuals there, such as this individual: https://youtu.be/YawI85U7QtA

13. Prisons are full of men *justly* accused who are serving life and/or decades long sentences for their *actual* crimes and committing murder to many of them, committing murder again is something that does not bother them in the least.

14. Ms. Bissell et al were falsely planning to send Dean to Prison and Prison is full of Murderers and Rapists and generally Murderers have no disincentive to not murder again – as they are already in Prison for a very long time – and generally murderers frown on rapists as it is well known in our society.  In any event, Bissell et al falsely accused Dean and tried to have him locked away to be around these unsavory individuals and that dramatically increased Dean's chance of being murdered and especially so because violent 'rapist' and "about-to-be-murders-of-children" in prison are not so welcome inmates – and Bissell designed it to be precisely that way. Sinister.  Bissell et al could have easily arranged to 'finsih the job' by paying $500 or $1,000 to complete the deed.

15. In has been nearly four years since this Evil Odyssey started and Dean has survived Bissell et al's sneak attack and her various documented changing stories making each deviation of her story telling more far-fetched than the last. This is now a paper case, that has Bissell herself stating there was no physical evidence as well as she sought no medical treatment and her admitting she committed evidence destruction, for instance.

16. There are dozens of other documented instances where Bissell counters herself on the same subject in front of numerous different Courts. Perjury and Subornation of Perjury and Conspiracy to commit Perjury and Subornation of Perjury are front and central to all of these matters.

17. On March 18, 2021, the 'smoking gun' of Dean's utter innocence was 'given' to him by the Cedar Grove (NJ) Police Department, after they resisted for years, by way of their written municipal policy to do so. They released the actual original police report of August 9, 2017 – when Bissell first falsely reported the rape, and it shows what an utter sham Bissell and her co-conspirators' stories are - as well as supports the true accusations of the crimes that they have perpetrated on an aggravated basis at against Plaintiff. It is a truly sinister diabolical story.

18. The August 9, 2017 police report states in part: "…Bissell said they [herself and Dean] never spoke of that night again…." in express reference to February 7, 2017 (the false rape date), foreclosing on any possibility of Bissell's false claim of Dean's constant threats on the phone or face-to-face of breaking and entering into her home, re-rape, and the Mass Murder of Bissell, her family, and *her children, "like the last time.*" In the section entitled "Act II", all of this is covered in great detail.

19. There are many more direct contradictions to Bissell's perjurious claims in writing, but as horrendous as all of this is, the story is much larger and nefarious, as it involves Dean's enemies in Canada, and their reaching into the United States paying for and/or financing Bissell et al's scheme. All RICO predicate activity is by definition a money laundering offense under 18 USC § 1956 and 18 USC § 1957 but by paying and/or financing Bissell and her Associates-In-Fact in the United States with this plot elevates all of this into an Evil Plot by those engaging in prohibited activities. The Canadian defendants were involved for the reason of retaining control of their Enterprise and did violate the prohibited activity of "[F]or any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity… in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce" 18 USC § 1962(a).   They torpedoed a hedge fund which clearly is (negatively) affecting interstate or foreign commerce.

20. These crimes involve managers and directors of the Immigration Consultants of Canada Regulatory Council ("ICCRC"), the managers and directors of their lobby group the Canadian Association of Professional Immigration Consultants ("CAPIC"), many high-level members of Canadian Government bureaucracy, law firms, and their lawyers, and numerous other individuals all who have committed and/or conspired to commit Predicate Acts and they are members of the Immigration Association-In-Fact and members of it (defined in the section called "Act I"), and all are culpable of 18 U.S. Code § 1959 - Violent crimes in aid of racketeering activity and the related conspiracy.

21. There are violations of 18 USC § 1589, 18 USC § 1590, and 18 USC § 1594, all relating to forced labor and abuse of legal process – which certainly qualifies as conduct unbecoming of a regulator or in this case the "Immigration Enterprise" as defined below.

4

22.  The perpetrators of these Predicate Acts represent the Darkest side of the human spirit in covering up "their crimes," by accusing a man elected (Dean) to investigate their alleged corruption back in 2016.

23.  In 2016, Dean was a member of the ICCRC and ran for and won an elected director position on the board of ICCRC on a platform of openness and transparency and to investigate the ICCRC board members and managers et al for their then 'alleged corruption.'  The Immigration Associates-In-Fact filed a blizzard of discipline complaints for Dean winning his election. The and to stymie the investigation and after Dean's appearance at the Parliament of Canada to testify, and after being told by the Parliament of Canada not to witness tamper - twice, the Immigration Associates-In-Fact (see below for definition) shortly thereafter unlawfully removed Dean from his directorship, and the Immigration Associates-In-Fact denied Dean's appeal on August 2, 2017.

24.  Dean was getting ready to file a Canadian Federal Judicial Review, and at the same time file this matter into the United States District Court – as there were then some 400+ US based members of the ICCRC being oppressed by the Immigration Associates-In-Fact members.

25.  Instead, on August 9, 2017, the Associates-In-Fact, via Ms. Bissell, put into motion the pre-planned reprehensible scheme to falsely accuse Dean of a brutal vaginal, digital, and anal rape - to the point of making Bissell supposedly bleed from her anus - and Dean was made to appear before Judge Murray in the Essex County Family Part, New Jersey Court by August 17, 2017.  Dean was not given any due process notice whatsoever of the supposed constant threats of Mass Murder. The prosecutor was looming about and Dean's plans of running an international hedge fund were dashed as was any notion of Dean appealing his unlawful removal from the board to the Canadian Federal Court within the requisite 30-day time limit to file it as well as Dean was prevented as a witness and victim of the Immigration Association-In-Fact members ("Immigration defendants") – see more definitions below - scheme from reporting the matter to Federal, State, and local police as well as filing for relief in the United States District Court.

26.  Later in Act II, it will be shown that Dean was prevented from filing anything that related to the False Accuser Associates, and in turn the Immigration Associates-In-Fact by order of a Judge until February 5, 2019 – a key date. Dean was left to use only Canadian Avenues against the Immigration Associates-In-Fact and it did produce Evidence related to these matters herein and shows the interrelatedness.

27.  To unravel the entire scheme has become a two-step process:

   i.   Prove Bissell et al's utter Fraud, Perjury, and Subornation of Perjury – a process that is near completion.
   ii.  Begin the RICO process showing that all defendants are connected and interrelated.

28.  To complete step "i" above would have been next to impossible had Dean been incarcerated in NJ State Prison. Besides, convicted rapists do not make for such good witnesses in front of a Jury and even less so if they are dead, convicted rapists.  That Dean was not convicted (nor formally charged by the NJ State Prosecutor's Office)

meant that Dean could dedicate a substantial amount of time being a 'detective,' and indeed a "private prosecutor" per the Supreme Court of the United States with respect to the RICO statute and now this matter is ripe and ready to be prosecuted.

> In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act.  Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. **The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "<u>private attorneys general</u>," dedicated to eliminating racketeering activity.** [3] *Id.*, at 187 (citing *Malley-Duff*, <u>483 U.S., at 151</u> ) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate"). The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better.[<u>Rotella v. Wood *et al.*</u>, 528 U.S. 549 (<u>2000</u>)]  (**Emphasis added by Plaintiff(s) and is done so throughout this complaint by Plaintiff(s) unless so said otherwise**).

29. The Associates-In-Fact of the Immigration Enterprise (defined below) confederated and conspired with the False Accuser Associates-In-Fact (defined in Act II) of the False Accuser Enterprise (defined below). Act III will, in part, make *a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.  In short, it will be shown that all defendants have been using the same types of tactics and methods to carry out their various schemes and by doing so that in and of itself, according to Congress, is evidence of the connection.*

30. All defendants are employed by or associated with enterprise(s) engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 USC § 1962.

31. Their combined pattern of racketeering activity, on an aggravated basis, has resulted in the destruction of one of New York's most exiting Emerging Hegde Funds – the Saga Enterprise – that will be described herein. Saga Global Capital Management LLC was based in Connecticut and therefore Connecticut Civil RICO applies to all damages the Saga Enterprise sustained through this document.

32. On a personal note, the Associates-In-Fact of these two Enterprises have transformed Dean, by way of their racketeering predicate acts, into somewhat of the plight and title character and the protagonist Edmond Dantès of Alexandre Dumas's 1844 adventure novel *The Count of Monte Cristo.* Dantes was cast into the Chateau d'If unjustly and for political and other criminal malevolent reasons.  For Dean it has not been any "adventure," and the isolation and fallout due to our social media connected world has been real, as what these *Associates* have done has negatively affected nearly every aspect in Dean's life, property, and business. There have been numerous egregious injuries in fact and proximately caused by defendants.

33. All Associates-In-Fact are deemed state actors (see Act II) as they have violated nearly every Constitutionally Guaranteed Federal Right of Dean – an American Citizen (as well as a Canadian Citizen).

**Background of RICO and Jurisdiction Primer**

34. This complaint relies on Federal Rules of Civil Procedure 9(b):

> FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

35. This complaint further relies on Federal Rules of Civil Procedure 9(g) relating punitive damages and Article III standing issues and the overall egregiousness of what has transpired:

> SPECIAL DAMAGES: If an item for special damages is claimed, it must be specifically stated.

36. Plaintiff(s) state that there have been so many obnoxious legal proceedings going on all at once that it has been difficult to draft this complaint and admittedly it needs (much) further revision, editing, and cutting it down. However, April 20, 2021 is a four year anniversary and this complaint needed to get filed.

37. In this complaint it is somewhat necessary to give a brief primer to stakeholders with respect to this matter who are not familiar with the RICO Statute and that starts with the intent of the Congress of the United States. Keep in mind that 10% of the ICCRC membership is in the United States and the Immigration Enterprise is and has been reaching into the United States each and every time they send an email, wire broadcast, and bulletin announcement. The Immigration Enterprise has a Principle living in Buffalo, New York. Just by these facts alone, it affects interstate and foreign commerce and the USDC has jurisdiction over all of these matters.

38. In using the combined military and medical science metaphors by Senator McClellan, S. 1861 RICO was designed to eradicate the "cancer" of organized crime's penetration into the nation's economy "by direct attack, by forcible removal and prevention of return." For Senator McClellan, the "most direct route to accomplish" getting rid of once and for all "organized crime influences from legitimate organizations" was the prohibition of the racketeer himself from the infiltrated enterprise: "If an organization is acquired or run by the proscribed method, then the persons involved are removed from the organization" (115 Cong. Rec. 9567 (1969).

39. Mr. Richard Dennis, a director of ICCRC, and resident and (likely) American Citizen living in Buffalo, NY, is such a person and he is connected to all Immigration Associate-In-Fact members.

40. Congress "is primarily concerned with domestic conditions." Arabian Am. Oil Co., 499 U.S. at 248 (quoting Foley Bros., 336 U.S. at 285); accord Kiobel, 133 S. Ct. at 1664 13); Carnero v. Boston Scientific Corp., 433 F.3d 1, 7 (1st Cir. 2006). (emphasis added).

41. Moreover, Congress stated that the purpose of RICO's remedial provisions was to afford enhanced sanctions and new remedies," and accordingly mandated that RICO Ashall be liberally construed to effectuate its remedial purposes (Section 904(a) of PUB. L. NO. 91-452, 84 Stat. 922, 923, 947). The Supreme Court has similarly characterized Section 1964 as a far-reaching civil enforcement scheme," Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 483 (1985), and has explained that Congress' liberal-construction mandate is to be applied anywhere, it is in 18 USC § 1964 where RICO's remedial purposes are most evident. See Supreme Court of the United States ("SCOTUS") Russello v. United States, 464 U.S. 16, 27 (1983); United States v. Turkette, 452 U.S

42. What is needed here…are new approaches that will deal not only with individuals, but also with the economic base through which those individuals constitute such a serious threat to the economic well-being of the nation. In short, an attack must be made on their source of economic power itself, and the attack must take place on all available fronts.

43. The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property…and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow…because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

44. In our view, Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity.

45. RICO should be broadly and liberally applied, innovative defenses should be curtailed, and any remedies for perceived abuses or misuses of the statute should come from Congress, not from the courts.

46. In short, in this instant case it will be shown that this is far more than simply a 'garden variety fraud case.' This is racketeering at the most sinister and vile level.

47. International law recognizes five principal bases upon which a nation may exercise its criminal jurisdiction over citizens and non-citizens for conduct committed outside that nation's territorial limits: (1) the "objective territorial principle," which provides for jurisdiction over conduct committed outside a State's borders that

has, or is intended to have, a substantial effect within its territory; (2) the "nationality principle," which provides for jurisdiction over extraterritorial acts committed by a State's own citizen; (3) the "protective principle," which provides for jurisdiction over acts committed outside the State that harm the State's interests; (4) the "passive personality principle," which provides for jurisdiction over acts that harm a State's citizens abroad; and (5) the "universality principle," which provides for jurisdiction over extraterritorial **acts by a citizen or noncitizen that are so heinous as to be universally condemned by all civilized nations**. Yousef, 327 F.3d at 91 n.24; accord Vazquez-Velasco, 15 F.3d at 840; Chua Han Mow, 730 F.2d at 1311 (collecting cases). (Emphasis added and indeed, throughout wherever anything it is deemed to be 'emphasis added' unless so stated otherwise.)  In this instant case, all five of these conditions are met as will be shown herein.

48.  The analysis in RJR Nabisco is also consistent with the general notion that ancillary crimes, such as conspiracy or aiding and abetting, apply extraterritorially if the underlying crime so applies. See, e.g., United States v. Ali, 718 F.3d 929, 939 (D.C. Cir. 2013) ("extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying criminal statute."); Chua Han Mow, 730 F.2d at 1311 (conspiracy statute applies extraterritorially if underlying substantive statutes does). For example, courts have applied penal laws extraterritorially in a variety of circumstances, including where sovereign interests of the United States or its citizens may be adversely affected. See, e.g., United States v. Delgado-Garcia, 374 F.3d 1337, 1343-51 (D.C. Cir. 2004) (holding that the offense of conspiracy….)

49.  Permissible Domestic Application and "Focus" of RICO Statute applies even when a case involves some foreign activity that is not reached by a permissible extraterritorial application, a statute nonetheless has permissible domestic application when the alleged domestic conduct is within "the 'focus' of congressional concern." Morrison, 561 U.S. at 266 (citation omitted). If the alleged domestic conduct involves the acts that "the statute seeks to 'regulate,'" and if the parties who are allegedly injured are among those "that the statute seeks to 'protec[t],' " then the claim qualifies as Felix-Gutierrez, 940 F.2d at 1203-06 (holding that under 18 U.S.C. § 3, accessory after the fact to those crimes applied extraterritorially)

50.  Most of the crimes took places within the United States.

51.  A domestic application, even if the case also involves some amount of foreign activity. Id. at 267 (citation omitted). Morrison's holding has prompted courts to dissect RICO to determine Congress' "focus" of concern. If the alleged domestic activity in a case satisfies all elements of both RICO and all the predicates, then that case constitutes a **permissible domestic application** of RICO. In this context, it may be unnecessary to even address the statute's focus. If, however, a court does engage in this analysis, a case in which all elements are satisfied by domestic conduct necessarily addresses Congress' focus, regardless of the foreign activity. See, e.g., Pasquantino v. United States, 544 U.S. 349 (2005); European Community v. RJR Nabisco, 764 F.3d 129,

142 (2d Cir. 2014), cert. granted 2015 WL 4575964, 84 USLW 3082 (U.S. Oct 01, 2015).

52. Johnson Elec. N. Am. v. Mabuchi Motor 344 America Co., 98 F. Supp. 2d 480, 485 (S.D.N.Y 2000) ("Where RICO predicate acts occurred primarily in the United States, jurisdiction exists"). If, however, the alleged domestic conduct in a case does not satisfy all the elements of RICO and the charged predicates, we will have to determine whether the alleged domestic activity nonetheless falls within the focus of Congress' concern such that use of RICO is a **permissible domestic application** of the statute, despite the existence of foreign activity. ("But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."). Nonetheless, there is a good argument that a RICO indictment or complaint reflects a domestic application of **RICO if the enterprise or the pattern element is satisfied by activity in the United States**. See RJR Nabisco, 764 F.3d at 142 n.14 (leaving that issue undecided).

53. At least two district courts adopted a "nerve center test" to determine whether the enterprise was domestic or extraterritorial. See, e.g., Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc., 871 F. Supp. 2d 933, 938–41 (N.D.Cal.2012); European Community v. RJR Nabisco, 2011 WL 843957 (E.D.N.Y. 2011), judgment vacated by European Community v. RJR Nabisco, Inc., 764 F.3d 129 (2d Cir. 2014). The "nerve center test" determines where the enterprise is located and Mr. Richard Dennis is one of the main "nerves" in Buffalo, NY.

54. RICO charges were permissibly "based on a pattern of racketeering activities that were conducted by the Defendants in the territorial United States."

55. Plaintiff(s) have herein alleged that all elements of the wire fraud, money fraud, and Travel Act violations were completed in the United States or while crossing the U.S. border

56. Congress' Authority Under the Commerce Clause Congress' authority to prohibit RICO violations stems from the Commerce Clause of the Constitution, Article I, § 8, cl. 3, which provides that Congress shall have power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . . " For many years, the Supreme Court interpreted Congress' authority under the Commerce Clause very broadly to include regulation of intrastate conduct that affected interstate commerce, as well as interstate commerce itself. Wickard v. Filburn, 317 U.S. 111 (1942), is the landmark case in that regard.

57. The "Substantial Effects" Test Applies to the Legal Issue of Whether a Statute Lies Within Congress' Authority under the Commerce Clause. The "De Minimis" Test Determines Whether the Evidence is Sufficient in a Particular Case to Establish a Requisite Nexus to Interstate Commerce Required Under a Statutory Offense.

58. RICO's Interstate Nexus Requirement May Be Met by Evidence That Either the Alleged RICO Enterprise was Engaged in, or its Activities Had a de minimis Effect on, Interstate Commerce RICO, 18 U.S.C. § 1962 (a), (b), and (c), require that the alleged enterprise be "engaged in, or the activities of which affect, interstate or foreign commerce."

59. Moreover, since RICO requires proof that the enterprise "is engaged in" interstate or **foreign commerce, or the enterprise's activities "affect" interstate or foreign commerce**, the Government is not limited to proof that the charged racketeering acts affect interstate or foreign commerce. Rather, the Government may rely on proof that the enterprise is engaged in, or its activities as a whole, affect interstate commerce.

60. The language of the statute, however---the most reliable evidence of its intent-reveals that Congress opted for a far broader definition of the word "enterprise," and we are unconvinced by anything in the legislative history that this definition should be given less than its full effect.

61. The Supreme Court of the United States held that criminal agreement is a "distinct evil." United States v Recio, 123 S. Ct. 819, 822 (2003) (quoting from Salinas v United States, 522 U.S. 52, 65 (1977)). Plaintiff(s) will show that there is criminal conspiracy in this complaint.

62. "The Supreme Court has explained that a "collective criminal agreement – a partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality….group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish.  Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Finally, combination in crime makes more likely he commission of crimes unrelated to the original purpose for which the group was formed.  In sum, the danger which the conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise. Congress and the courts have fashioned federal conspiracy law accordingly. Iannelli v United States, 420 U.S. 770, 778 (1975), quoting Callanan v United States, 364 US, 587, 593-94, 778 (1961).

63. "Members of conspiracy are also liable for the foreseeable crimes of their fellow committed in furtherance of the common plot." United States v Jimenez Recio, 537 U.S. 270, 274 (2003).

64. "Moreover, statements by one conspirator are admissible evidence against all." Pinkerton v. United States, 328 U.S. 640, 647 (1946)

**Introduction:**

65. Upon information and belief, this is a matter which involves violations of the (1) Racketeer Influenced and Corrupt Organizations Act ("RICO") – both Federal and State, (2) Federal and State Civil Rights Violations, and (3) common law claims – both Federal and State, and (4) State (not Federal) Securities Law Violations, and will be detailed under the Federal Rules of Civil Procedure 9(b) with particularity because there is Fraud here, there, and everywhere in this case:

      i. Permissible domestic application and those that perpetrate these crimes with their lawyers will get no help from the law. Crime is a regular way of doing business for all of these defendants and co-conspirators.

      ii. Plaintiff(s) are not the only victim – there are many more – outside of these schemes detailed herein and they will be called as witnesses.

66. The Victim of the RICO Acts, the Saga Enterprise, which includes "Associate-In-Fact" members Ryan Dean, Kevin Klassen and Saga Global Capital Management LLC was progressing very well until August 9, 2017.  The Saga Enterprise was long on ideas and short on capital, but the Hedge Fund industry waived all of their minimums because they had never seen what the Saga Enterprise was bringing to the table.  The minimums to gain entrance to the hedge fund world are in the neighborhood, of $10, 000, 000 - $50,000,000, and with those with impeccable reputations.  The Saga Associates-In-Fact SPENT TEN YEARS TO develop the Saga Enterprise.

67. One of the major overall injuries that have been perpetrated on the Saga Enterprise and indeed its Association-In-Fact members, and especially so to Dean, is to equate and "ring the alarm" of Dean being something like the notorious and now deceased aggravated sexual assault offended Jeffrey Epstein. That bell cannot be 'un-rung' and in turn all defendants are liable for Article III Standing liability as these injuries never go away – they are a matter of public record and Dean and indeed the Saga Enterprise will forever be branded by them. The Saga Enterprise is likewise damaged and will be so well into the future.

    a. Before all of these matters were perpetrated on the Saga Enterprise by defendants the Saga Enterprise had all of the requisite items in place to affect a 'lift off.'

      i. All Fund documents were being finalizing
      ii. All Seeders were engaged and very interested
      iii. The First team members for the Saga Enterprise were being assembled
      iv. There was a broker holding Dean's financial licenses
      v. The Contracts were starting to be scoped and being determined
      vi. Commissions were being discussed and vetted
      vii. Final marketing material vetted

    b. The Saga Enterprise was on track to become a massive fund in a relatively short period inside and outside of the United States including in Asia because it was building a terrific stock trading track record.

68. The False Accuser Association-In-Fact and Immigration Association-In-Fact together in league have committed a 'pre-meditated' extortion and/or "murder attempt" on the infant Saga Enterprise in 2017 (and Dean's reputation) – and the perpetrators certainly delayed and greatly impacted the established trajectory of the victim – the Saga Enterprise (Admittedly, there is no statute to deal with the "murder a corporation"). The Judge tossed it all in 2017 and it was not appealed by the False Accusers.  In 2019, False Accuser Association-In-Fact et al 'pre-meditated' another attack and again attempted to extort and/or murder the toddler Saga (already badly damaged). Now Saga is on "life support" – and the perpetrators have gravely attacked Dean's reputation a second time, and now have attacked his business partner Mr. Kevin Klassen.  All

of this is in direct and related proximate cause the Saga Enterprise Injury in Fact.  Dean and Klassen's

reputations need to be impeccable and even if that wasn't an issue they can't run the hedge fund either

because of, for instance, because of defendants' violations of "forced labor," 18 USC § 1589 (a RICO

violation), due to "abuse of legal process." Who has time to run a hedge fund when there are blizzards of

legal matters to tend to?  This premeditated Evil has taken over both mens' lives by the direct and proximate

causes of criminals and in turn has caused Plaintiff to not to able even be able to work any job and in turn

could not work any job (if they could get one) because of the forced labor and abuse of legal process.

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") INTRODUCTION and RACKETEERING
ACTIVITY IN THIS INSTANT CASE.**

69. Over the course of several years, the "RICO Defendants" (see definition below), together with their co-

conspirators, have sought to Extort, Defraud, Imprison for Life and/or murder, and otherwise tortiously Injure

Plaintiff(s) in his property, and his business by means of multiple schemes conceived and substantially

executed in the United States. The Predicate Acts under RICO in this matter include:

Act or Threat Involving Murder, Extortion, Witness Tampering, Fraud and Related Activity in,

Robbery, Mail Fraud, Wire Fraud, Bank fraud, Obstruction of Justice, Obstruction of Criminal

Investigations, Tampering with a witness, victim, or an informant, Retaliating against a witness,

victim, or an informant, Interference with commerce, robbery, or extortion, racketeering, money

laundering, laundering of monetary instruments, relating to use of interstate commerce facilities in

the commission of murder-for-hire, forced labor, copyright infringement, Restrictions on financial

transactions,  section 1030 (relating to computer fraud and abuse), transportation of stolen property

in interstate commerce. Section 2314, 18 U.S. Code § 1957 - Engaging in monetary transactions in

property derived from specified unlawful activity & money laundering.  Specified unlawful activity

and money laundering means:

    i.  18 USC 1961(1) "racketeering activity" for this civil claims means (A) any act or threat involving

murder, robbery, bribery, extortion, dealing in obscene matter, which is chargeable

under State law and punishable by imprisonment for more than one year; (B) any act which is

indictable under any of the following provisions of title 18, United States Code: section 1029

(relating to fraud and related activity in connection with access devices), section 1341 (relating

to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution

fraud), section 1510 (relating to obstruction of criminal investigations), section 1512 (relating to

tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a

witness, victim, or an informant), sections 1581–1592 (relating to peonage, slavery, and

trafficking in persons), , section 1951 (relating to interference with commerce, robbery, or

extortion), section 1952 (relating to racketeering), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), 18 U.S. Code § 1959 - Violent crimes in aid of racketeering activity, section 1960 (relating to illegal money transmitters), and section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds). Attached to money laundering is 15 USC § 78ff (Foreign Corrupt Practices Act), 18 USC § 1951, 18 USC § 2319.

ii. Aside from the aforementioned numerous Federal Racketeering Predicate Acts and Activity, the State Predicate Acts and Activity that violate the state RICO (or equivalent) laws of the states of Arizona, California, Florida, New Jersey, New York, and Nevada are long, troublesome, and disturbing. In RICO matters such as this, "Concurrent Jurisdiction" applies and "Double Jeopardy" does not apply in this case.

iii. Additionally, there are state money laundering laws that apply to this action (for instance): FLA. STAT. ANN. §§ 896.101 to 896.108, NJ STAT. ANN. §§ 2C:21-23 to 2C:21-29 and N.Y. Penal Law §§ 470.00 t0 470.25 and State Money Transmission Laws FLA. STAT. ANN. §§ 560.101 – 560.408, NEV. REV. STAT. §§ 671.010 TO 671.190 and N.Y. BANKING LAW §§ 640 TO 652-B.

iv. Conspiracy attaches to each and every one of the charges noted above both Federally and at the State(s) level for each Association-In-Fact member.

70. There are two broad "Association-In-Fact" groups that comprise the members of these two Enterprises. These two broad "Association-In-Fact" groups have conspired and acted together to commit RICO Predicate Acts to injure the Plaintiff(s), their business and their property. Both "Association-In-Fact" groups have numerous CIVIL RICO Predicate Act violations – both Federally and in numerous states each - that could stand alone separate and apart from each "Association-In-Fact Group," and these stand-alone RICO Predicate Acts were all substantially carried out in the United States to injure Plaintiff(s)' business and property.

71. However, when what these two "Association-In-Fact" groups' Actions, Predicate Acts, and Schemes are combined to do what they did as detailed herein - it makes for a much more Shocking, Egregious, Aggravated and Totally Interrelated Civil RICO matter of what has, and still is, transpiring.

**THE IMMIGRATION ENTERPRISE, THE FALSE ACCUSER ENTERPRISE, AND ASSOCIATION(S)-IN-FACT MEMBERS**

72. The Canadian Immigration Consultants Enterprise ("Immigration Enterprise") is comprised of the Immigration – Association in Fact members ("Immigration Association") – (see below) for the members of the Immigration Association-In-Fact members) – that paid for, is paying for, and/or is (or has) financing the False Sexual Assault

Accuser Association-In-Fact  ("False Accuser Association") (see below) and the definition of the "False Accuser Enterprise".

73. It will be shown that these defendants are unsavory and corrupt. RICO is concerned with injustice at its most fundamentally offensive level – injustice that rises to the level of racketeering.

74. A corporation who falsely and repeatedly tells investors and regulators that it has achieved profits and acquired assets that the corporation has not in fact achieved or acquired is corrupt.  A federal regulator that said that it has been protecting the public and indeed instead admitted it has not been because it a "club or an association" (see below for evidence) has been protecting itself with predicating racketeering activity to control and/or maintain control of the Enterprise, and in turn use its own facilities to hide and attempt to cover up their own crimes is corruption at the highest level.

    i. Together the Immigration Association and the False Accuser Association that make up the "RICO defendants," along with co-conspirators involved directly and indirectly in the unconscionable scheme (see below for all members and conspirators).

    ii. One of the members of the Immigration Association is the Immigration Consultants of Canada Regulatory Council ("ICCRC") that today has approximately 7,000 members scattered across the globe in virtually every country of the world, and approximately 10% of the Membership is based in the United States.  It was principally the ICCRC and its managers and directors – along with the it parent company-in-fact, the Canadian Association of Professional Immigration Consultants ("CAPIC"), and its directors and managers, that confederated together,  and then increasingly put into motion more reprehensible schemes, culminating with the False Accuser Association to attempt to have Dean imprisoned (and more) unjustly in New Jersey for essentially the remainder of his natural life for heinous crimes he is utterly innocent of. Additionally, RICO defendants attempted to get a Final Restraining Order ("FRO") on Dean that would have resulted in (and essentially this is complete) by Dean losing all of licenses and other egregious additional consequences that would have had a direct proximate cause of damage to his property and business: The Saga Enterprise.

    iii. At all times, the Immigration Enterprise was based in Canada but also had two Directors of the Association-In-Fact who were residents of Buffalo, New York in 2016/2017, thereby extending the "nerve center" into the United States where the planning, directing, managing, and scheming took place by phone, computer, email, or otherwise.  Said Directors also physically crossed the US/Canadian Border to reach these goals. Each Predicate Act of Racketeering in aggregate (read: wire fraud, for instance) was directed at Plaintiff(s) in the United States to injure their property and business.  Every email to and from these Buffalo, New York

Association-In-Fact members constitutes a Predicate Act of RICO under Wire Fraud that had anything to do with the Furtherance of the Crime, and since the Immigration Association-In-Fact members are in egregious violation of not only Canadian Federal Law (see Act I in general) but also of 18 USC § 1962, it also gives jurisdiction to this Federal Court over all principles and co-cococonspirators to the schemes.

iv.  Therefore, at all times, at least one of the central Association-In-Fact members, Mr. Richard Dennis, was a Director of the ICCRC and/or operating from the shadows with Director–Like-Powers to the scheme(s) and Mr. R. Dennis was a resident (and likely American Citizen) of Buffalo, New York at all times. Another central Association-In-Fact member, a Director of ICCRC, Mr. Edward Dennis fled the jurisdiction to the United Kingdom during the time in question around 2018.

v.  At all times, whenever the Association-In-Fact member ICCRC would broadcast false and fraudulent messages into the world including the United States via email, video, and/or by making fraudulent website posting, for instance, this all constituted a Predicate Act of Wire Fraud thereby enhancing the jurisdictional justification of the Court over all defendants. There are numerous instances detailed with Evidence in Act I and in the link below:

https://www.dropbox.com/scl/fi/8rrczfytbim6aub41umzn/Final-Wire-Fraud-04-19-21.xlsx?dl=0&rlkey=xf7aynqpakredjl3w49woduqd

vi.  With respect to the entirely US Based False Sexual Assault Accuser Enterprise it comprises of False Assault Association-In-Fact members including Ms. Bissell, Mr. James Bissell (Ms. Bissell husband, ex-husband, and/or un-husband) discussed in Act II, Mr. Craig Peretz, the Godfather to Ms. Bissell's children, best friend of James Bissell, and COO of Sierra Global Management LLC, Sierra Global Management LLC,  a New Jersey law firm Greenbaum, Rowe, Smith and Davis LLP ("Greenbaum" or "GG"),  Darren Barreiro, Robert Flanagan III, Chris Adams, Charles Vaccaro, all lawyers at "GG",  and another New Jersey law firm akin to a "Better (not) Call Saul" outfit headed by legally and morally flexible criminals with law license, Dave Shivas, Joseph Bell Jr, Brian Laskiewicz with their "will-work-for-extortion-takes 'legal assistants,' Victoria Kingdon and Kristie Ward.  Side Note: nowhere does it state in the RICO statues that those who possess law licenses are immune from RICO and that a scheme to defraud is covered by "litigation privilege." "Litigation Privilege" is not even a law; it is a judicial creation made by the judiciary to protect lawyers operating within the legal bounds of the legal profession. The Supremacy Clause of the United States per RICO statute overrules all of that as well as numerous violations of the Commerce Clause. Due to the Supremacy Clause [in the United States Constitution], no state has

the authority to declare a state remedy exclusive of federal remedies. Additionally, there is the Noerr-Pennington Doctrine Exception to "sham" litigation that will be illuminated below. Indeed, by virtue of having a law license, these 'lawyers,' have a higher duty to be honest, trustworthy, and seek the truth and instead have perverted what they swore to uphold as will be detailed through out this complaint.

vii.    With respect to the Immigration Enterprise, this is a much bigger organization consisting of the Canadian Immigration Consultant Regulator, and Associate-In-Fact member, the ICCRC, that Plaintiff Dean was Elected to the board of directors by a wide margin by the membership in November 2016 to investigate the Regulator based on allegations of fraud and malfeasance (See Act I). The Immigration Enterprise also includes another Association-In-Fact member, and closely associated 'membership organization' to ICCRC, named the Canadian Association of Professional Immigration Consultants ("CAPIC").  The core competency of the Regulator – the investigations arm  – was incorporated (NR Discipline and Complaints Solutions Inc) and run out of the living room of another Association-In-Fact member (Robert Kewley) as well as essentially a phantom (not real person: Arnold Atkins) that performed investigations and reached in the United States against Plaintiff Dean (See Act I).  Ms. Natalie Kewley, the owner of NR Complaints and Discipline Solutions Inc, under oath in the Watto matter, swore that she had never heard of Mr. Atkins despite the fact that he supposedly also worked out of her living room for years.

viii.   Additionally, the Immigration Enterprise includes Immigration Association-In-Fact members including numerous law firms, lawyers, and assistants working within and outside the confines of legal proceedings. The Association-In-Fact members contains numerous high level Canadian Government Employees and two Immigration Cabinet Ministers (past and present) that are giving all kinds of cover and help to the Immigration Enterprise knowing that there is malfeasance, including directly interfering in Canadian Federal Court matter T-834-20. The Governor General of Canada tangentially related to all of this (and not a Defendant), resigned in protest, in part, over the actions of said Government interference according to a witness. Others are investigating that at this time and that may or may not become relevant to this matter.

ix.    The Immigration Enterprise also includes two Canadian Universities (Association-in-Fact members), a Canadian Provincial Accounting Regulator (Association-In-Fact member), and numerous insurance companies, and all of these 'University,' 'accounting regulator,' and insurance,' Association-In-Fact members contain numerous individuals who are engaged in Predicate Acts of Racketeering and/or Conspiring to violate the Act under 18 USC §1962 as well as under Canadian Law.  They all have either reached into the United States to commit predicate

acts or agreed to the acts to be done with the ultimate goal of destroying Plaintiff Dean, his

reputation, his business, and his property by any necessary means.  See Act I & Act III for full

details and Association in Fact membership.

**THE ENTERPRISES AND THE SUB ASSOCIATION(S)-IN-FACT To Demonstrate Structure.**

75.  The sub-associations in fact are described in detail below to demonstrate the structure and interrelatedness of
the overall Association-In-Fact for each Enterprise.

    **a.  FALSE SEXUAL ASSAULT ACCUSER ENTERPRISE is comprised of the:**

        i.  False Accuser Association-In-Fact with the following sub-Association-In-Fact members.

            a.  Bissell False Accuser Sub Association-In-Fact
            b.  Sierra Global Management LLC Sub Association-In-Fact
            c.  Greenbaum Sub Association-In-Fact
            d.  Bell & Shivas P.C. Sub Association-In-Fact

    **b.  IMMIGRATION ENTERPRISE**

        i.  Immigration Association-In-Fact

            a.  ICCRC Sub Association-In-Fact
            b.  CAPIC Sub Association-In-Fact
            c.  NR Discipline and Complaint Solutions Inc Sub Association-In-Fact
            d.  Queen's University Sub Association-In-Fact
            e.  York University Sub Association-In-Fact
            f.  CPA Ontario Sub Association-In-Fact
            g.  Citizenship and Immigration Canada Sub Association-In-Fact
            h.  Miller Thompson Sub Association-In-Fact
            i.  Singleton Urquhart Reynolds Vogel LLP Sub Association – In – Fact
            j.  John McNeil Risk Corporation Sub Association – In – Fact
            k.  Paliare Roland Rosenberg Rothstein LLP Sub Association – In – Fact
            l.  Deeth Williams Wall LLP Sub Association – In – Fact
            m.  Andrew John Roman Professional Corporation Sub Association – In – Fact
            n.  Keel CottrelleSub Association – In – Fact
            o.  Forbes Chochla Sub Association-In-Fact
            p.  Insurance Company Sub Association -In – Fact

76.  This case is frothy with corruption and "backroom dealing," as one of the Public Interest Directors of ICCRC
stated in early 2017 in her outgoing resignation protest letter in disgust at the Immigration Association-In-Fact
members.  Dean never met this director and shows that the non-sense and corruption was going on long before
Dean ever was elected Director. It is also of note that each and everyone of these lawyers and their firms listed
in the Immigration Association – In – Fact are indeed Plaintiff Dean's lawyers working against Plaintiff Dean for
the reason that Plaintiff has and still is technically a Director at ICCRC – and was never removed properly – and
therefore these lawyers will all be eventually disbarred.  More importantly, none of the documents that they will
claim to be privileged are indeed privileged. In turn, because the Immigration Association-In-Fact members are
also working with the False Accuser Association-In-Fact members, that also means that all of the False Accuser

lawyers are also technically Plaintiff Dean's lawyers and these are additional grounds for there being no litigation privilege as well as the fact that all work product – under the Crime Fraud Exception – needs to be handed over and reviewed in-camera.

77. The Immigration Enterprise has, all things being equal, one legitimate purpose, and that is the keep intact the Canadian Immigration Consultants Regulator or to transition it to become the College of Citizenship and Immigration Consultants under the "new" Federal "College Act." But things are far from "all things being equal," as matters are downright corrupt, as it is run by and through Racketeering Activity. The illegitimate end of the Immigration Association-In-Fact members is several fold. The 'new' College Act was actually the work of Ms. Nancy Salloum, another victim to this whole scheme and who may become a Plaintiff in this matter. For now it is sufficient to state that Immigration Association-In-Fact members caused Ms. Salloum to have a stroke. These Immigration Association-In-Fact members are utterly ruthless individuals. This is how they have violated Canadian Law (discussed at length in Act I with Evidence) and 18 USC § 1962:

    i.   First, establishment or operation of, an enterprise which is engaged in, or the activities of which affected, interstate and foreign commerce. This was the establishment of the NR Discipline Complaints Solutions Inc – run out of Mr. Robert Kewley's private residence and living room – and established by illicit proceeds, and that created false complaints so that they could attempt to extort payments or something else of value from members. Plaintiff Dean has over a dozen such complaints (in violation of 18 USC § 1589, for instance) for winning his election and the Association – In – Fact members want to get paid off for this 'service." This is an example of violations of 18 USC § 1962(a)(b) and Act I will show that it is very similar in law to what the Canada Not For Profit Corporation Act ("CNCA") prohibits.

    ii.   Likewise, the False Accuser Associates-In-Fact would also like to get paid off for their "service" of wrecking Plaintiff(s) lives and destroying their business and property and they required an extortion payment of $875,000, and then later when the term "Fraud on the Court" was used by Plaintiff(s), the False Accuser Associates offered "discounted" Extortion of $180,000. In both cases, it is an extortion attempt meant to affect commerce under economic fear and fear in general per the Hobbs Act. This falls under §1962(a)(b) as well because False Accusers have hit Plaintiff twice – the first time in 2017 was timed with the knowledge that Plaintiff(s) were about to capitalize Saga with investor fund and of course could not because of the false rape report and then in 2019 the monetary extortion attempts came and these were an attempt to convert the demand into Saga Enterprise equity and/or interests as Plaintiff(s) could not pay the money they falsely demanded and extorted. Any payment given to them to "hush up" the supposed sexual assault would be unlawful grounds for them to come back at any time into the future and

re-extort for a greater amount and/or extort more equity/interests in the Saga Enterprise. It is believed the that members of the False Accuser Association-In-Fact members have extorted others and they scheme will go on into the future.  With respect to the Immigration Enterprise, that will go on into the future in some form or fashion for the foreseeable future as Canada is screaming for immigrants – and indeed immigration powers Canada's economy. The Immigration Enterprise is not at fault – all things being equal – it is the people running the Immigration Enterprise that need "disciplining."

iii.   Under §1962(b), "It shall be unlawful for any person through a pattern of racketeering activity or though collection of any unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  Here, Immigration Association-In-Fact members in elections in 2016, and every incumbent running for election as director, lost. The ICCRC board was nearly balanced with new and old directors, and it was war on the board right from the beginning and director Dean was leading the charge to root out the corruption.  The remaining board members and management that were part of the Plot put into place an unlawful scheme to retain control of the ICCRC, including reaching into the United States and injuring Plaintiff Dean, and Plaintiff Dean's property and business, the Saga Enterprise, by way of numerous 'discipline complaints' run through the NR Discipline and Complaint Solutions Inc (the "third party private corporation"). This third party private corporation, which one of the Immigration Association-In-Fact members emphatically denied existed during the "financial question and answer period of the 2016 Annual General Meeting ("AGM")  - while the entire board sat in 'fraudulent concealment denial' - as this denial was broadcast live in the world, and into the United States to ICCRC members. In turn, the Immigration defendants used this third-party private corporation (NR Discipline and Complaint Solutions Inc - which supposedly did not exist), to ram through in record time discipline complaints against an elected director elected for the purpose of investigating those behind the corruption (and indeed those who perpetrated the discipline complaints themselves and recruited many others) as well as they used the Immigration Enterprises' facilities and resources to perpetrate this scheme. These 12 or so complaints were essentially about the same thing and that Dean was rude and how dare he point out that the "balance sheets did not balance," and so on and so forth in an attempt to cover up their crimes and retain control of the Immigration Enterprise.  Mr. Merv Hillier (former president of CPA Ontario and director of ICCRC) and the one giving the no "third party private corporation" denial speech to the membership to cover up his wrong doing, and also in response to Dean's own

private and confidential board level complaint, was given the confidential board level complaint of Dean by Mr. Chris Daw et al, and Hillier used it to file a complaint against director Dean to cover up their violations, their flouting Canadian Federal law, and as well as their reaching into the United States unjustly and violating 18 USC § 1962 et al.

    iv.   The goal of the Association-In-Fact members of the Immigration Enterprise is/was to utterly destroy Plaintiff Dean (and now his business partner Mr. Klassen too) and their business and property by these related escalating schemes all designed to shut Plaintiff(s) down completely (that included an attempt to see Dean off to state prison for the rest of his life (and more), to discredit him, and to make sure that he cannot run a hedge fund in the United States for the purpose of not exposing their malfeasance, and then get paid off for their extortion. The RICO defendants (Immigration Associate-In-Fact members and False Accuser Association-In-Fact members) have sought to inflict maximum damage onto Plaintiff(s) and the Saga Enterprise (See throughout this complaint for Evidence and discussion).

    v.   Of course, by far the worst offense was to scheme to and pay for and finance (and continue to finance) the False Accuser Association-In-Fact members to accuse Plaintiff Dean of a vile heinous rape on the night of February 7, 2017 as well as accusing him of threatening to murder said false accuser association-in-fact member Bissell, her family, and her *children each and every time Bissell and Dean spoke on the phone and/or in person.* False accusers also tried to obtain a New Jersey Final Restraining Order – a life sentence – that would also had the instant effect of shutting down Dean's life, having his professional licenses revoked (as it would have been a disclosable event), and the subsequent fall out from that. Here are the different and *various escalating schemes*. They planned everything from "life in prison" and "attempted murder" to just get the Dean disgraced and get his licenses revoked so he can't run a hedge fund nor be a member of the ICCRC, and all of the destruction in between to business and property.

78. **SCHEME # 1: STIFLE AND IN TURN REMOVE PLAINTIFF FROM THE BOARD OF DIRECTORS OF ICCRC**

    a.   On the very first board meeting that Plaintiff attended he was offered a bribe/veiled coercion threat to accept the criminality of the Immigration Association-In-Fact members in exchange for the "privilege" of not being tossed off the board and to stop the new filing of subsequent discipline complaints being blasted out to the world for the grievous wrong of winning an election (and also being right with respect to their corruption). The ICCRC Sub Association – In – Fact members brought in a member of the York University Sub Association – In – Fact to deliver the not so thinly veiled threat; this threat was delivered by Mr. Richard Leblanc, one of Merv Hillier's buddies at York University that worked with Mr. Hillier, and this relationship was never disclosed and it constituted wire fraud by Mr. Leblanc, Mr. Hillier, Chris Daw,

Rhonda Williams, Javier Vinsome, Lynn Gaudet, Ed Dennis, Rhonda Williams, Lawrence Barker, and Dace Stripniecks and others because wire fraud can be done in person if it is followed up by other documentation.  That documentation came in the form of Mr. Hiller's complaint against Dean right around the same time.  To the Immigration Association-In-Fact members it was perfectly fine for them to carry on criminality but it was not fine for Dean to ask pointed questions about it all – because it was rude. It was no matter to the ICCRC Sub Association-In-Fact that they knew that they were engaging in hardcore criminality – it was their habit, like the False Accuser Association-In-Fact members it will be shown herein.

b. The Sub Association-In-Fact members of ICCRC and Sub Association-In-Fact members of CAPIC caused numerous unlawful discipline complaints to be launched against Plaintiff Dean in an effort to damage and injure Plaintiff(s), and their business and property in the United States. In fact, these discipline complaints were orchestrated via backroom dealing that were never disclosed to Plaintiff Dean and the infrastructure of the Enterprise was used to create and ram through these discipline complaints in record time by Ms. Kim Ly and Ms. Carla Gelbloom under the direction of Phil Mooney, Gerd Damitz, and Donald Igbokwe – all current and/or high level directors (past/present) of CAPIC. CAPIC is not only the "mother" of ICCRC it is also the lobby group of ICCRC. There are hundreds of instances of wire fraud all directed into the United States meant to affect the Saga Enterprise and in turn negatively affect interstate and foreign commerce in violation of the United States' Commerce Clause – in the Civil RICO case information statement, and after discovery, this is likely to morph into thousands of predicate acts of wire fraud. See Exhibit I.   Sub Association-In-Fact members of ICCRC conspired with the Insurance Company Association-In-Fact members to deny coverage to Plaintiff Dean's *membership insurance* despite Plaintiff Dean's insurance premiums being paid in full. These too include Predicate Acts of wire fraud. See below for more details.

c. There was the scheme to keep Plaintiff Dean from getting any of the information that he wanted and indeed the man that Plaintiff beat fair and square in election, Mr. Richard Dennis, of Buffalo, NY,  had at all times more power in the Immigration Enterprise than Plaintiff and director Dean did.  This too included the bribery of a New York State resident (citizen the United States) by the Immigration Association-In-Fact members as well as a violation of NY Penal Code's Grand Larceny – part of New York's Enterprise Corruption Statute (New York's RICO equivalent statute) under New York Penal Law 460.20 that also will be developed in Act I and elsewhere herein.

d. After Plaintiff had just testified at the Parliament of Canada, the Association-In-Fact members caused to be sent to Plaintiff a board Resolution (3 different versions) as yet another attempt to bribe (then extort and ultimately rob) Plaintiff Dean to join their criminal Scheme despite the fact that Plaintiff Dean was

never really 'allowed' to be a Director and in fact has never seen the inside of ICCRC's offices. This act was bribery, extortion, robbery, wire fraud, and obstruction of justice. See in Act I

e. The Sub Association-In-Fact members of ICCRC removed Plaintiff Dean by way of an unlawful board trial not provided for in the By-laws (and neither was the NR Discipline and Complaints Solutions Inc) and prohibited against by the Canada Not For Profit Corporation Act ("CNCA"). Only the members who elect a director can remove that director – and this affected the intangible rights of some 400 United States based ICCRC members at the time. The Association-In-Fact members conspired with the Insurance Company Association-In-Fact to deny coverage, yet again, to Plaintiff Dean's paid-in-full *director insurance*. This act was bribery, extortion, wire fraud, and obstruction of justice. See Act I for more details.

f. After the predictably failed appeal of Plaintiff Dean's removal from the ICCRC board of directors Dean was preparing to file a Judicial Review in Canadian Federal Court that would have overturned the decision of the "removal" as a matter of law. This act by the appeals committee was a violation of the CNCA, wire fraud, and 18 USC § 1962, and a violation of 18 USC § 1512 and 18 USC § 1513 – which in this case both provide for Extraterritorial jurisdiction.

79. **SCHEME #2: THE IMMIGRATION ASSOCIATION – IN – FACT MEMBERS COMBINED WITH THE FALSE ACCUSER ASSOCIATION – IN - FACT MEMBERS TO ACCUSE PLAINTIFF OF HEINOUS SEXUAL ASSAULT AND OTHER DESPICABLE CRIMES.**

i. Ms. Lisa Bissell ("Bissell"), former CEO of Pure Grown Diamonds, after learning she was not going to be the next Mrs. Ryan Dean and/or the full-time girlfriend, of a rising hedge fund manager star in New York City, NY, contacted and plotted with the Immigration Association-In-Fact members for a double payout in combination of Bribery, Money Laundering, and Extortion Takes as specifically described herein. The Immigration Association-In-Fact has been paying for Ms. Bissell's lengthy legal (false) battles. Turns out, there are numerous documented different stories by Bissell as Bissell committed Aggravated Perjury (and her lawyers aggravated Subornation of Perjury) going from Court to Court to Court creating different stories all about Plaintiff during the same time period, on the same subject matter.

ii. In mid – July 2017 (or June 2017 according to Bissell's various accounts), Bissell exposed the *true* secret of their affair (Bissell & Plaintiff Dean) to her husband, Mr. James Bissell, and this was a New Jersey State Extortion Violation (N.J.S.A. 2C:20-5(c)) and then Bissell exposed the '*false secret rape*' to Mr. James Bissell again on July 30, 2017 (Or August 1, 2017) according to Bissell's various accounts and this too is Extortion by Theft (N.J.S.A. 2C-20-5(a)(b)(c)(d)(f)(g)) making this Aggravated Extortion. This is simply Bissell's account of what she says but nearly everything she

has said is proven false or at best a ½ truth by her own words. There are so many "inconsistencies" in the various documented stories that it appears that Mr. and Ms. Bissell faked their own marriage, so they could accuse Dean of doing these vile things and then Ms. Bissell moved into the same apartment as Mr. Bissell in Florida, right after their 'divorce,' and there they are today carrying out their scheme to destroy Dean and the Saga Enterprise and directly, and proximately (if not but) seriously and negatively affect interstate commerce. Of note, in New Jersey it is not just "threats" that count but also "acts," (See Act II) N.J.S.A. 2C:13-5 Criminal Coercion. In all circuit courts have all unanimously agreed that attempted extortion is extortion. Everything that followed was done in furtherance of crime by the False Accuser Association-In-Fact members that now has her own attorneys from 2017 and 2019-2021 in a heap of trouble and these two sets of attorneys want nothing to do with each other, as they attempt to run away from the New Jersey scene of the crime and each other stating "nothing to see here." There is plenty to see. That these lawyers are all sharing the same "client," Ms. Bissell and none of them want to let the other attorneys' involvement and/or testimony of Bissell into their proceeding is telling. It is in and of itself Evidence that they are indeed Association-In-Fact members sharing Ms. Bissell as a "client." Of note, all defendants, in whatever portion of the scheme they were directly involved with have participated in sham litigation – both objectively and subjectively and there is a carve out for litigation privilege for Extortion nor Hobbs Act violations or the Congress would have said, but did not, something like: "reprobate lawyers confederating with their clients are all excused from telling the truth during legal proceedings." In fact SCOTUS has made a provision that indeed removes all litigation privilege in circumstances such as this. See the Noerr-Pennington Doctrine Exception that is applied to Anti-Trust matters but also to regular litigation as well of course to RICO matters.

iii.  Ms. Bissell knew in 2016/2017 all about what was going on in Canada with the Immigration Association-In-Fact members as well as Bissell knew that Plaintiff hedge fund was just on the edge of rocketing off the proverbial launch pad and the Saga Enterprise was about to take in capital. When Dean made it clear to Ms. Bissell that it was going to be "less sex" and "more business," Bissell devised a corrupt scheme and betrayed Plaintiff Dean to the Immigration defendants and they literally tried to have him tossed into prison for the rest of his nature life, murdered, and a host of other Evil Acts. Bissell recruited other corrupt individuals for her extortion plot and went into league with the Immigration Association – In – Fact members in a modern - day '30-Gold Pieces for a Judas Kiss' betrayal with an on-going payment plan and financing scheme first with the Greenbaum Gang Sub Association-In-Fact members ("GG") to

finance and pay for the first set of Bissell's New Jersey lawyers and then in 2019 – 2020 the members of Bell & Shivas, P.C. ("BS").

iv.  The New Jersey lawyers heard "hedge fund manager," and they said: "Let's Extort!" The Police Report seals their fate. Together, they all plotted for Plaintiff Dean's utter destruction and imprisonment for the rest of Plaintiff's life involving knowingly and malicious false accusations reported to the Police on 08/09/17 of false charges of vaginal, digital and anal rape. In open Court, Bissell twisted off into a diatribe about false accusations about constant threats of break and enter, re-rape, mass murder of Bissell, her family, and her children, each and every time that Bissell and Plaintiff spoke on the phone or face-to-face. For over half the time in question Plaintiff Dean was in Asia/Canada and not even speaking to Bissell.  It is of note that Bissell would use this time that Dean was in Asia/Canada to report all of these threats and this included the time of the Board Trial. Of further note, Congress stated under the RICO Act that any threat of murder is a Predicate Act, and this likely includes aggravated false threats of mass murder, and that has extra-jurisdictional reach anywhere in the world for a plot of this nature and scope.

v.  The timing of the plot was also coordinated and meant to Obstruct Justice from Plaintiff not only filing a Judicial Review in Canadian Court 30-days from the dated date of the ICCRC Tribunal Appeal decision dated 08/02/17 for unlawfully removing Plaintiff from the ICCRC. A mere 7-days later Bissell filed her false complaint and after that Plaintiff Dean all of a sudden had much bigger concerns that his director position in Canada and was *forced* to stop-drop-and-worry-about the lightning-fast-speed of the New Jersey Prevention of Domestic Violence Act ("NJ PDVA") and the consequences of that Act and in turn it stopped the Saga Enterprise launch dead in its tracks, and 10 years of momentum was lost, as well as all investor money was gone. Instead, Plaintiff Dean had to give his full attention to defend himself against this "Pearl-Harbor-Like-Sneak-Attack," and Plaintiff Dean was due to attend a Final Restraining Order hearing on August 17, 2017.  Numerous New Jersey RICO Predicate Acts (See Act II) were violated as well as other state RICO (or equivalent) violations – see below.

vi.  Suddenly, Plaintiff's concern about being removed from ICCRC's board and indeed trying to stay out of prison (and alive) for the rest of Plaintiff Dean's life was Priority Number One. Side Note: prisons are full of men who have been falsely accused of sexual assault and Plaintiff was dealing with a women who was comfortable going on to TV and convincing other women (and men too) that "Lab Grown Diamonds" were actually better than the real thing or a "girl's best friend." Plaintiff's hedge fund was egregiously damaged and that was priority number 2.  Plaintiff's position at the ICCRC was suddenly (a very distant) priority number 3.   In this world there is

indeed the dark side of the #MeToo movement, and these Association-In-Fact members were Corruptly attempting to Capitalize upon it.

**vii.** Bissell's action also prevented Dean from filing a claim in US Federal Court as well as reporting these matters to the United States District Attorney for New York and the District Attorney of the State of New York and state/local law enforcement, it will show in Act II.  As it turned out, in Judge Murray's Judgement given in favor of Dean, the Judge warned Dean to not take any kind of retaliatory action against Bissell whatsoever despite Dean "winning" the case, and that meant that Plaintiff (Dean) could not report the matter at all to the authorities and the alleged connection between the False Assault Accuser Association-In-Fact and the Immigration Association-In-Fact. Keep in mind Judge Murray did not have all of the facts that are available today, the TRO/FRO process is basically "who tells the best story," and turns on credibility, and Judge Murray herself said she did not know what happened on the night of February 7, 2017. Still Judge Murray caught Bissell lying under oath and this is what largely turned the case for Dean as well as the lengthy "friendly and businesslike" text messages between Bissell and Dean. Bissell did not present her text messages (fraudulent concealment) or destroyed them before filing the case and she thought Dean had destroyed his. He did not. See Act I for text messages. Judge Murray in 2017 made the right decision as the Police Report shows despite not having all of the information and facts available today. **Dean is eternally grateful to Judge Murray and her wisdom.**

**viii.** On February 5, 2019, the False Sexual Assault Accuser Association – In – Fact and the Immigration Association – In – Fact combined together yet again by radically and materially changing their stories from 2017 and filing a Civil Complaint in Essex County New Jersey (ESX – L – 984 – 19).  This time a new set of morally and legally flexible lawyers at Bell & Shivas P.C. Sub Association-In-Fact ("BS") picked up and took over from GG. No longer was there a prohibition against Dean defending himself, and he shortly thereafter dedicated himself to learn how to think like a RICO lawyer because he knew that he was definitely being extorted and that the RICO act provided relief.  Mr. Klassen also has dedicated himself to get relief for all of the damage to his part in the Saga Enterprise and will likely be added as a Plaintiff in due course.

**ix.** The False Accuser Enterprise is built on the notion that Lawyers have "litigation privilege" in the Third Circuit and some of them think that this is a license to Extort and both of these law firms have extorted before and it will be shown that Ms. Bissell, Mr. Bissell, and Mr. Peretz in forming the False Accuser Enterprise to engage in criminality has been going on for quite some time as there is a decades long relationship between the three. Witness will be brought forward that

show the other schemes that they have participated in and other victims through discovery. The

Association-In-Fact Scheme has gone on, is going on, and will go on unless the Court stops it.

**SCHEME #3 – CICC AND ICCRC STEALING INTELLECTUAL PROPERTY AND COPYRIGHT MATERIALS AND REACHING INTO THE UNITED STATES.**

80.  The Immigration defendant think that they not only rip off a Ms. Nuha Nancy Salloum's intellecutual property and copyright materials but they also think that they can reach inside of the United States and threaten Dean for the grievous wrong of taking a volunteer job with CICC (Salloum's company, see below), putting his name and position on Linkedin, and waiting to see what the Minister of Immigration, Refugees, and Citizenship Canada, would do, and no more.

81.  All of this is much more detailed in Act III and shows all of wrongdoing is related by showing that the methods, schemes, tactics, and means by which the predicate acts are committed are all connected.

82.  It will be shown that there are other victims of the schemes through discovery.

**Relatedness and Continuity**

83.  Clearly there is a breath of RICO Predicate Act that have been illuminated herein and that was what RICO was designed to combat. See, e.g., Mohawk Indus., 465 F.3d at 1284 (distinctness requirement satisfied where a corporation was the defendant and the enterprise consisted of an alliance of the corporate defendant and third-party individuals and agencies); According In re Classic Star Mare Lease Litigation, 727 F.3d 473, 493 (6th Cir. 2013) (distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme). This refers to ICCRC and CAPIC – a "two headed monster" and at the same time distinct members of the Immigration Association-In-Fact membership.  All other members are obviously distinct for relatedness purposes.

84.  Under the teachings of Cedric Kushner, 533 U.S. at 163, the requisite distinctness can be satisfied by "practical separateness"; therefore, distinctness may be satisfied where the facts establish that a subsidiary is operated with sufficient independence from its legally distinct parent corporation.  Mr. Evan Rankin, a lawyer from the 'law firm' Singleton Uquhart Reynolds Vogel LLP acting for CAPIC stated in his documents and pleadings that ICCRC and CAPIC were separate. A question for the Jury is whether or not a "two headed monster" is one or two.

85.  With respect to the Pattern of Racketeering Activity The definition of a "pattern of racketeering activity" is one of the most important in the RICO statute because it defines a key element of each substantive RICO offense under 18 USC § 1962. 18 USC § 1961(5) provides that a pattern of racketeering activity "requires at least two acts of racketeering activity" such as wire fraud. The two violations may both be state offenses, federal offenses, or a combination of the two; they may be violations of the same statute, or of different statutes; and the acts need not have previously been charged criminally (but may be later). There need not be prior convictions to be

charged under CIVIL RICO. In this case there are hundreds and likely thousands of wire fraud predicates in addition to all of the other criminality detailed herein.

86. Ongoing extortion or bribe schemes involving the same victim or bribe recipient in which the defendant repeatedly bribes or extorts the victim over a period of time may constitute separate racketeering acts for each act and/or transaction, and there are numerous extortion and bribe schemes.

87. Overall the reasons that all of this largely falls under RICO in this instant case is that (1) the nature, seriousness, and number of the predicate racketeering offenses; (2) the predicate racketeering offenses were committed over a substantial period of time, and/or pose a threat of continuing unlawful activity in the United States; (3) the Immigration Association-In-Fact members ("Immigration defendants" or "Imm defendants") are without question an organized crime group that has participated these predicate racketeering offenses or exercised corrupt influence over any proposed enterprise, defendant or related entity; (4) there is a reasonable likelihood that the Immigration Association-In-Fact members will commit unlawful activity in the future – they are about to receive more power under Canadian statute and rewarded for their criminality; (5) the pervasiveness of wrongdoing within a collective entity that is a proposed defendant, including the complicity in, or condonation of, the wrongdoing by the collective entity's officers and management. The factors listed are similar to the factors to be considered in determining whether to bring criminal charges against a corporation are all present. (6) the defendant's history of similar unlawful conduct, including prior criminal, civil or regulatory enforcement actions against it and this is present as well (See Act I for the Parliamentary Report recommending to deregulate the ICCRC below); (7) whether the defendant has derived unlawful proceeds from his RICO violation that are subject to disgorgement and this is definitely a possibility as they the Immigration Association-In-Fact members, through the Enterprise – Imm defendants through the Immigration Enterprise - have been collecting fees for nearly a decade from between 400 – 700 US based members at a rate of approximately $1,500/year; (8) the defendant's timely and voluntary disclosure of wrongdoing and his/her or its willingness to cooperate with the authorities to eliminate corruption involving the defendant or related entities which in this case has not been the case as the government north of the 49th parallel has given the Immigration Association-In-Fact all kinds of help and cover and turned a blind eye to existing Federal Law; (9) the existence and adequacy of a collective entity's compliance program and other remedial actions (which is enforced when needed to protect themselves and relaxed to give one of their own a 'pass'; (10) collateral consequences, including harm, if any, to innocent third parties, including a collective entity's shareholders, employees, or union members (or in this case scores of actual immigrants themselves, many who come from the United States) (11) whether and to what extent the sought remedies are likely to be effective (see at end of complaint for remedies); and (12) the availability and adequacy of other remedies (see at end of complaint for remedies).

88. All of these items above are present and the Immigration Association-In-Fact members are in "no danger" of changing their ill ways. These are villainous people in control of tens of millions of dollars and they have no qualms whatsoever about negatively affecting commerce in the United States directly and/or indirectly.  The group is large, and members come and go, or fade into the shadows, but that does not make any difference with respect to continuity of the Enterprise and indeed the Association-In-Fact membership(s)' continuity. Continuity may exist even if some members of the group leave and are later replaced. United States v. Smith, 413 F.3d 1253, 1267 (10th Cir. 2005), cert. denied, 546 U.S. 1120 (2006); United States v. Nabors, 45 F.3d 238, 241 (8th Cir. 1995). The damage is done and if the member simply leaves and/or fades into the background they are not absolved of liability.

89. Imm defendants' should note, SCOTUS has consistently held that the Double Jeopardy Clause does not bar successive federal and state prosecutions for offenses arising from the same acts. The rationale underlying this rule lies in the concept of "dual sovereignty," which the Supreme Court has summarized as follows: We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each . . . . Here the same act was an offense against the State of Washington, because a violation of its law, and also an offense against the United States under the National Prohibition Act. The defendants thus committed two different offenses by the same act, and a conviction by a court of Washington of the offense against that state is not a conviction of the different offense against the United States, and so is not double jeopardy. Lanza, 260 U.S. at 382.  CIVIL RICO is just that CIVIL, but it describes criminality and thus it is not the same as in Canada because Canada has nothing remotely comparable to RICO.

90. Without question all of these Acts by defendants meet the standard of the "overt-act-must-injure" rule ranging from death, to life in prison, to trashing ones' reputation, business, and property online and elsewhere while they use their Enterprise(s) to conduct criminality.  These defendants are literally worse than a criminal gang (although they might still qualify for that title in certain State RICO – see below) because they are attempting to act under the protection of government power (Imm defendants) and under litigation privilege (False accusers).

91. Defendants' general and personal jurisdiction by the USDC NJ will be discussed below.

**Parties**

92. The Plaintiff(s) consist of Ryan Dean, who was an elected member of the ICCRC and is a member of the Saga Enterprise.  More Plaintiff(s) will likely be added and be more formally described in the Civil RICO case information statement along with details on each defendant as well.  Below are how the defendants are

generally group and membership in one sub-association does not preclude membership in another sub-association as below.

**b.  FALSE SEXUAL ASSAULT ACCUSER ENTERPRISE is comprised of the:**

    i.  False Accuser Association-In-Fact with the following sub-Association-In-Fact members.

        a.  Bissell False Accuser Sub Association-In-Fact

- ➢ Lisa Bissell
- ➢ James Bissell
- ➢ Classic Luxury LLC
- ➢ Mark Faber

        b.  Sierra Global Management LLC Sub Association-In-Fact

- ➢ Craig Peretz
- ➢ Sierra Global Management LLC

        c.  Greenbaum Sub Association-In-Fact

- ➢ Robert Flanagan III
- ➢ Darren Barreiro
- ➢ Chris Adams
- ➢ Charles Vaccaro
- ➢ Greenbaum, Rowe, Smith, Davis, LLP

        d.  Bell & Shivas P.C. Sub Association-In-Fact

- ➢ Dave Shivas
- ➢ Joseph Bell, Jr
- ➢ Brian Laskiewicz
- ➢ Kristi Ward
- ➢ Victoria Kingdon
- ➢ Bell & Shivas, P.C.

**b.  IMMIGRATION ENTERPRISE**

    i.  Immigration Association-In-Fact

        a.  ICCRC Sub Association-In-Fact

- ➢ Tarek Allam
- ➢ Alli Amlani
- ➢ Christina Ashmore
- ➢ Stephen Ashworth
- ➢ Nancy Awwad
- ➢ Marty Baram
- ➢ Lawrence Barker

- ➢ Hafeeza Bassirullah
- ➢ Daniel Bastarache
- ➢ Stanislav Belevici
- ➢ Alex Beraskow
- ➢ Peter Bernier
- ➢ Cindy Beverely
- ➢ Randy Boldt
- ➢ Haile Britu
- ➢ Janice Brooks
- ➢ John Burke
- ➢ John Cockerill
- ➢ Chris Daw
- ➢ Edward Dennis
- ➢ Richard Dennis
- ➢ Tim D'Souza
- ➢ Latifa El - Ghandouri
- ➢ Gabrielle Fortin
- ➢ Jackie Furlong
- ➢ Louis-Rene Gagnon
- ➢ Lynn Gaudet
- ➢ Carla Gelbloom
- ➢ Russ Harrington
- ➢ Ana Hernandez
- ➢ Merv Hillier
- ➢ James Hsieh
- ➢ Michael Huynh
- ➢ Immigration Consultants of Canada Regulatory Council
- ➢ Nicole Jones
- ➢ Sabine Jozsa
- ➢ Wendy Kelly
- ➢ Mary Kennedy
- ➢ Maria Krajewska
- ➢ Daniela Lima
- ➢ Christopher May
- ➢ Leanne Mcceachy
- ➢ Ron McKay
- ➢ Phil Mooney
- ➢ John Murray
- ➢ Guy Marcel Nono
- ➢ Danielle Orr
- ➢ Joan Page
- ➢ Beata Paulauska
- ➢ Peter Perram
- ➢ Samatha Psoch
- ➢ Rodelio Ramos
- ➢ Daniel Roukema

31

- ➢ Darlene Ryan
- ➢ Laurie Sanford
- ➢ Satpaul Singh Jonal
- ➢ Amandeep Singhera
- ➢ Dace Stripniecks
- ➢ Thomas Tucci
- ➢ Rosalee Van Stadiuum
- ➢ Javier Vinsome
- ➢ Melanie Wen
- ➢ Sherry Wiebe
- ➢ Rhonda Williams

b. CAPIC Sub Association-In-Fact

- ➢ (Kim) Ly
- ➢ (Stacey) Ly
- ➢ Jo Balbiran
- ➢ Borders Immigration Consultancy
- ➢ Jennifer Burns
- ➢ Canadian Association of Professional Immigration Consultants
- ➢ Tatiana Cardozo De Cardoso
- ➢ Doo Yong Choi
- ➢ Gerd Damitz
- ➢ Namita Dass
- ➢ Rochelle Dickenson
- ➢ Eva Eaton
- ➢ Aileen Farrol
- ➢ Susana Gabriela Najar de Lima
- ➢ Olufunke Hamid-Oke
- ➢ Donald Igbokwe
- ➢ Oluwadamilola Iwajomo
- ➢ Dory Jade
- ➢ Robin Jones
- ➢ Matthew LeBaron
- ➢ David LeBlanc
- ➢ Eunsook Lee
- ➢ Evonne Li
- ➢ Hong Liu
- ➢ Adelaide Marbell
- ➢ Christopher McNair
- ➢ Dalia Milmantas
- ➢ Susana Najar de Lima
- ➢ Balvinder Pahl
- ➢ Perminder Sidhu
- ➢ John Soden
- ➢ Shakuntala Soden
- ➢ Erica Stanley
- ➢ Mark Varnam
- ➢ Xiao Xi

32

➢ Andrew Yin
➢ Jutta Zillegen

c.  NR Discipline and Complaint Solutions Inc Sub Association-In-Fact

➢ Arnold Atkins
➢ Natalie Kewley
➢ Robert Kewley
➢ NR Complaints and Discipline Solutions Inc

d.  Queen's University Sub Association-In-Fact

➢ Bereskin & Parr LLP
➢ Scott Mackendrick
➢ Queen's University
➢ Tamara Celine Winegust
➢ Janet Fuhrer

e.  York University Sub Association-In-Fact

➢ Richard LeBlanc
➢ York University

f.  CPA Ontario Sub Association-In-Fact

➢ Elizabeth Cowie
➢ CPA Ontario
➢ Theresa Tonelli

g.  Citizenship and Immigration Canada Sub Association-In-Fact

➢ Ahmed Hussen
➢ Marco Mendicino
➢ Aakash Mistry
➢ Brian Smith
➢ Katarina Stephenson
➢ Immigration, Refugees, and Citizenship Canada

h.  Miller Thompson Sub Association-In-Fact
➢ Miller Thompson
➢ Michael Pace
➢ Elliott Saccucci
➢ Adam Stephens

i.  Singleton Urquhart Reynolds Vogel LLP Sub Association – In – Fact

➢ Nicole Lafreniere
➢ Tara Lisowski
➢ Evan Rankin
➢ Singleton Uquhart Reynolds Vogel LLP

33

➢ Peter Wardel

j.  John McNeil Risk Corporation Sub Association – In – Fact

➢ John McNeil Risk Corporation
➢ John Risk

k.  Paliare Roland Rosenberg Rothstein LLP Sub Association – In – Fact

➢ Glyniss Hawe
➢ Jeff Larry
➢ Paliare Roland Rosenberg Rothstein LLP

l.  Deeth Williams Wall LLP Sub Association – In – Fact

➢ Michelle Noonan
➢ Gervais Wall
➢ Deeth Williams Wall LLP Sub Association-in-Fact

m.  Andrew John Roman Professional Corporation Sub Association – In – Fact

➢ Andrew Roman
➢ Andrew Roman Professional Corporation

n.  Keel Cottrelle Sub Association – In – Fact

➢ Patricia Harper
➢ Keele Cotrelle

o.  Forbes Chochla Sub Association-In-Fact

➢ Forbes Chochla
➢ Natalie  Leon
➢ Nicole   McAuley

p.  Insurance Company Sub Association -In – Fact

➢ Arch Insurance Canada Ltd
➢ Aviva Insurance Company of Canada
➢ Everest Insurance Company of Canada
➢ Diane Lebebvre
➢ Lloyd's of London Insurance
➢ Heather Mackie
➢ Kelly Parent
➢ Temple Insurance Company
➢ XL Reinsurance America Inc

93.  Other potential RICO defendants are provided for in:

> ➤ ABC Corps 1 - 100 (fictious entities)
> ➤ Jane Does 1 - 100 (fictious persons)
> ➤ John Does 1 - 100 (fictious persons)

94. Civil Rights Violations Defendants (**NOTE: not RICO defendants nor defendants to common law causes of action at this time,** and when the words Imm defendants and/or False accusers are used throughout herein it does not include anyone working at the Cedar Grove Police and/or the Township of Cedar Grove):

> ➤ Cedar Grove Police Department
> ➤ Robert McDermott
> ➤ Eileen O'Toole
> ➤ Sasha Perez
> ➤ Francais Pumphrey
> ➤ Det. Tower
> ➤ Township of Cedar Grove
> ➤ Carolyn Zajack

***RICO Federal Subject Matter Jurisdiction, Venue, and Personal Jurisdiction:***

95. Subject Matter Jurisdiction:

   i. This USDC NJ has subject matter jurisdiction over Plaintiff(s)' claims under 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(2)(3), 28 U.S.C. 1964(a)(c), U.S.C. § 1512(h), 18 U.S.C. 1956, 18 U.S.C. 1957, 18 U.S.C.§ 1831, 18 U.S.C. 1832 (and § 1836, §1837, & §1838).

   ii. *Venue,* 18 U.S.C. § 1965(a)(b)(d), 18 U.S.C. § 1512(i), 18 U.S.C. § 3238

   iii. *Personal Jurisdiction – will be noted for each defendant in the Civil RICO case information statement.*

96. Plaintiff(s)' first claim for relief arises under 18 U.S.C. §1961 et seq flowing from 18 USC § 1964(a)(b)(c)(d). The amount of controversary exceeds $75,000 exclusive of interest and costs. Plaintiff(s)' RICO state law claims arise out of the same case or controversary as its federal law claims as all claims in this action arise out of a common nucleus of operative facts. Thus, this USDC NJ also has supplemental jurisdiction over Plaintiff(s)' state law claims under 28 U.S.C. § 1367, 18 U.S.C. 1513(d)(e)(f)(g), 18 U.S.C. § 1956, 18 U.S.C § 249, 18 U.S.C § 1111 (and/or 18 U.S.C. 1113), 18 U.S.C. § 1025, 18 U.S.C. § 1957, 18 U.S.C. § 2111, 18 U.S.C. § 1596 (derived from 18 U.S.C. 1589 and 18 U.S.C. 1590), 18 U.S.C. § 1512, 18 U.S.C. § 1513, 28 U.S.C. § 1391, and 18 USC 1961(1).

97. Plaintiff(s) rely on the Piggyback Statutes 18 U.S.C. §2 (principals) 18 U.S.C. §3 (accessories after the fact) 18 U.S.C. §4 (misprision) 18 U.S.C. §371 (conspiracy) 18 U.S.C. §924(c), (j). 18 U.S.C. §1952 (Travel Act) 18 U.S.C. §§1956-1957 (money laundering), 18 U.S.C. §1959 (violence in aid of racketeering), and 18 U.S.C. §§1961-1965 (RICO).

98. Aside from the aforementioned numerous Federal Racketeering Predicate Acts and Activity, the State Predicate Acts and Activity that violate the state RICO (or equivalent) laws of the states of Arizona, Connecticut, California,

Florida, New Jersey, New York, and Nevada are incorporated herein and they are long, troublesome, and disturbing. In RICO matters such as this, "Concurrent Jurisdiction" applies, and "Double Jeopardy" does not apply in this case.

99.   When a RICO claim is based upon violations of federal criminal statutes (see 18 U.S.C. § 196l(l)(B)), the nexus with interstate commerce is necessarily established by the commission of the underlying federal crime. United States v. Urban, 404 F.3d 754, 767 (3d Cir.) ("[A]s we have repeatedly noted, the government need only prove that Hobbs Act extortion **potentially affected commerce**.") Herein, it will be shown that an international hedge fund was terminated because of the acts of the defendants and now sits on life support in a "comatose" like state.

100.  Moreover, because the U.S. Constitution confers the postal powers upon the federal government, acts of mail fraud, even intrastate use of the mails, have an inherent nexus with interstate commerce. United States v. Elliott, 89 F.3d 1360 (8th Cir. 1996), cert. denied, 519 U.S. 1118 (1997). Clearly, the mails (and wires which is essentially the same as 'mails') were used in the scheme to defraud it will be described herein and will be further detailed in the RICO Civil Case information statement.

101.  The state crimes upon which a RICO claim may be predicated (see 18 U.S.C. § 196l(l)(A)) are not minor offenses, and when such significant crimes are committed through an "enterprise" (rather than a mere individual), they are seldom confined to a single state. A de minimus" connection suffices for a RICO enterprise that 'affects' interstate commerce, and that too is amply met as described herein. Note as well that Private attorney general provisions such  as § 1964(c)  are in part designed to fill prosecutorial gaps. Cf. Reiter v. Sonotone Corp.,  442 U.S.  330,  344,  99  S.Ct.  2326,  2333,  60  L.Ed.2d   931 All Care Nsg. Ser. v. High Tech Staffing Ser, 135 F.3d 740 (11th Cir. 1998).

102.  Additionally, the Court has specific jurisdiction over a defendant when the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286. The "minimum contacts" required to assert specific jurisdiction are analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction (Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).  Just Film, Inc. v. Merchant Services, Inc., No. C 10-1993 CW, at *10-11 (N.D. Cal. Nov. 29, 2010). All of these elements are amply met as described herein.

103. Extraterritorial application ordinarily involves either the "effects" test or the "conduct" test, and sometimes both. The "conduct" test requires that the challenged conduct taking place in the United States must be central or integral to an illegal scheme conducted both in the United States and elsewhere. The centrality of the events took place in the United States. The conduct occurring in, or directed at, the United States in this case was not an insubstantial or preparatory part of the overall scheme(s) to defraud, but the actual means of its consummation.

104. State jurisdiction in general in which the USDC NJ can administer and take jurisdiction with the Civil Federal Matters for judicial efficiency: Model Penal Code §1.03 Territorial Applicability (1) Except as otherwise provided in this Section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if: (a) either the conduct that is an element of the offense or the result that is such an element occurs within this State; or (b) conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit an offense within the State; or (c) conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the state and an overt act in furtherance of such conspiracy occurs within the state; or (d) conduct occurring within the State establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit , an offense in another jurisdiction that also is an offense under the law of this State; or (e) the offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or (f) the offense is based on a statute of this State that expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest. (2) Subsection (1)(a) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result. (3) Subsection (1)(a) does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State that would not constitute an offense if the result had occurred there, unless the actor purposely or knowingly caused the result within the State. (4) When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes a result within the meaning of Subsection (a)(1), and if the body of a homicide victim is found within the State, it is presumed that such result occurred within the State. (5) This State includes the land and water and the air space above such land and water with respect to which the State has legislative jurisdiction.

105.   Each state's RICO requirements and laws are discussed herein.

106.   General Jurisdiction is based on a party's domicile and grants the court jurisdiction over the defendants regardless of the underlying conduct at issue. Specific jurisdiction for each defendant will be included in the RICO Civil Case Information Statement and their individual issues will also be listed therein as well with respect to the underlying controversy and the relationship will create a substantial connection to the forum – which arises out of the contact the defendant itself creates with the forum and contact with the state itself is not merely contact with persons who reside there.

***Civil Rights Violations Subject Matter Jurisdiction, Venue, and Personal Jurisdiction both Federal and State***

107. The venue is proper in this District under 28 U.S.C. § 1391(a)(2), & 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1343, and 42 USC § 1983 as a substantial number (and most egregious) events giving rise to this action occurred in New Jersey; and also there is jurisdiction under 18 U.S.C. § 1965 and 18 U.S.C. § 1956. There is Article III standing as well giving rise to Federal Jurisdiction.

108. Approximately 10% of the ICCRC membership is in the United States and the Immigration defendants running the Immigration Enterprise are reaching into the United States under terms of conspiracy and to deprive Plaintiff(s) Federal Civil Rights et al and under 42 USC § 1985(2) and under § 1985 there is extraterritorial jurisdiction over all Imm defendants. What's more, because all Imm defendants are operating in concert with Mr. Richard Dennis, who is a New York State resident (as well as Mr. E Dennis when he was a resident of New York), all defendants as well have ties to the United States through Mr. R. Dennis and Mr. E. Dennis.

109. There exists, additional grounds to sustain jurisdiction.  It is the rule that where any interstate use is made to perpetuate the original fraudulent concealment or transaction, even though not part of the original solicitation or inducement of sale involved, that nevertheless the subsequent use of interstate facilities in furthering the scheme is sufficient to establish federal jurisdiction. Creswell-Keith Inc. v. Willingham 264 F.2d  76, 80, 82 (8th Cir. 1959); see also 'Thomas   v. United States 227 F.2d 667, 670 (9th Cir. 1955) (use of automobile); Ellis v. Carter 291 F.2d 270, 274 (9th Cir. 1961) (use of plane); Boone v. Baugh 308 F.2d 711 (8th Cir. 1962).  There is plenty of "They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts (see: Zafiro v United States, 506 US 534, 537 (1993). Look no further than Merv Hillier broadcasting into the United States that there is no third party private corporation that membership money is being funneled into and consider how many US based ICCRC members have been on the losing end of this scheme, for instance. There of course is much more than simply this.

110. In conspiracy cases, a "conspiracy charge combined with substantive counts arising out of that conspiracy is a proper basis for Joinder under Rule 18(b)" (see United States v Williams 553 F. 3d 1073, 78-79 (7th Cir. 2009). Moreover, "the preference in a conspiracy trial is that persons charged together should be tried together." (See United States v McDonnell, 792 F. ed 478, 494 (4th Cir. 2015).

111. In fact, several passages suggest that the Constitution contemplates the application of American law beyond the geographical confines of the United States. It speaks, for example, of "felonies committed on the high seas," "offences against the law of nations," "commerce with foreign nations," and of the impact of treaties. Congress's commerce powers are three; one, that vests it with power "[t]o regulate Commerce with foreign Nations," affords it apparent authority to enact criminal statutes with extraterritorial application. The other two Commerce Clause powers permit Congress to regulate interstate commerce and commerce with the Indian tribes. The courts often speak of these two in exceptionally sweeping terms. **The Foreign Commerce Clause may be even more far-reaching**, although there is certainly support for a contrary view. Cal. Bankers Ass'n v. Shultz, 416 U.S. 21, 46 (1974)("the plenary authority of Congress over both interstate and foreign commerce is not open to dispute"); United States v. 12,200-Ft. Reels of Film, 413 U.S. 123, 125 (1973)("The Constitution gives Congress broad, comprehensive powers 'to regulate Commerce with foreign Nations'"); United States v. Baston, 818 F.3d 651, 668 (11th Cir. 2016)(quoting Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 434 (1932) and Japan Line, Ltd. v. County of Los Angeles) ("Indeed the Supreme Court has suggested that 'the power to regulate commerce … when exercised in respect of foreign commerce may be broader than when exercised as to interstate commerce.' Although the Constitution grants Congress power to regulate commerce with foreign Nations and among the several States in parallel phrases,' the Supreme Court has explained, 'there is evidence that the Founders intended the scope of the foreign commerce power to be the greater'").

112. United States v. Yunis, 681 F. Supp. 896, 907 n.24 (D.D.C. 1988) ("Rather than relying on Congress's direct authority under Art. I Section 8 to define and punish offenses against the law of nations, the government contends that Congress has authority to regulate global air commerce under the commerce clause. U.S. CONST. art. I, § 8, c. 3. Sending Dean three copies of the "board resolution" to him while he was in the Philippines likely crossed Alaskan, Hawaiian, or Guam airspace and/or the emails probably went through USA servers at some point, for instance.

113. General Jurisdiction. If an individual or corporate defendant is not domiciled in New York, under New York Civil Practice Laws and Rules § 301, a court may exercise general jurisdiction over the foreign defendant if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." McGowan v. Smith, 52 N.Y.2d 268, 272 (1981) (citation omitted). *Kurzon LLP v. Thomas M. Cooley Law Sch.*, No. 12CV8352-LTS-RLE, at *6 (S.D.N.Y. June 24, 2014). "Where such a showing is made, a defendant may be sued in New York on causes of action wholly unrelated to acts done in New York." Mazloum v. Int'l Comm. Corp., 829 F. Supp. 2d 223, 228 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). To warrant the exercise of general jurisdiction, New York law requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1991)

(internal quotation marks and citation omitted). The term "doing business" refers to "the ordinary business which the corporation was organized to do . . . It is not the occasional contact or simple collateral activity which is included." Nelson v. Mass. Gen. Hosp., No. 04 Civ. 5382(CM), 2007 WL 2781241, at *14 (S.D.N.Y. Sep. 20, 2007) (citation omitted).

114. It will be shown that the defendants have been "doing business" in the state of New York, and in general in the entire United States, and particularly with their confederation with the False accuser defendants as generally alleged throughout this complaint.

115. Nationwide Service of Process Under Section 1965(b) The relevant legislative history states that "[s]ubsection (b) [of 18 U.S.C. § 1965] provides Nationwide service of process on parties, if the ends of justice require it," and that the "broad provisions [of § 1965] are required by the nationwide nature of the activity of organized crime in its infiltration efforts." S. REP. NO. 91-617 at 161. Thus, "Congress intended [Section 1965(b)] to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial," and hence Section 1965(b) allows nationwide service of process to defendants residing outside the forum district court provided that the forum district court has "personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy," and the ends of justice require such service. Where, "nationwide service of process is authorized," as under Section 1965(b), the plaintiff need not establish that each defendant has contacts with the forum state. Rather, the plaintiff's prima facie burden is met by showing that a defendant has contacts with the United States. Minimum contacts with the forum state, as required under the traditional long-term jurisdiction analysis, is not necessary. A defendant's contact with the United States is sufficient to satisfy the requirements of due process.

116. There is also jurisdiction over all defendants under anti SLAPP statutes and under the state (not Federal) securities law.

117. Also, that there are high level Canadian Government officials involved in the scheme defraud they will likely claim immunity but Congress had other commands under 28 U.S. Code § 1605 - General exceptions to the jurisdictional immunity of a foreign state – which also applies to these individuals.

118. Federal jurisdiction may also be further established in one of three ways: 1) by travel in interstate or foreign commerce; 2) by use of the mails; or 3) by use of any facility of interstate or foreign commerce. All of these are amply met as described herein.

119. The Cosmopolitan theory of jurisdiction also applies. It is based upon the ideas that civilized nations are inter-connected and interrelated – and that what is harmful to one is very likely to prove harmful to all the rest. Canada is assumed to be generally "civilized." The important factor in criminal law is not the place where a harmful act occurred, nor the likelihood that the act would prove harmful in a given bit of territory, but that a human being existed who had exhibited tendencies which the history of civilization has shown to be harmful to

other human beings. It did not matter where the dangersome activities occurred. They may occur outside of the domain of a particular sovereign, harm may result from them to humans who are not subjects of the sovereign, and no harm whatever may come to the sovereign, his domain and subjects because of the activities, yet the sovereign will give his courts the power to try and punish those who were guilty of such activities, if they are found or brought within his domain. In Anglo-American law there are just two types of activities which come within the cosmopolitan justice theory of jurisdiction. The first concerns piracy and the second concerns aggressions by so-called uncivilized peoples who are not subjects of any civilized sovereign. Piracy is an offense against the laws of all nations. It consists of illegal aggressions against persons and property upon the high seas. The nature of the illegality can be found in the customs and usage of maritime nations. Pirates are enemies of all mankind. They are unprotected by any sovereign, are outside of all law, and are subject to punishment by any sovereign no matter where the piratical acts were committed or who the victims were. The courts of every country have jurisdiction over piracy.

120. Herein the Immigration defendants have acted like *Immigration Pirates* as they do not answer to anyone  nor any sovereign as they are getting all kinds of help and cover from high level Canadian Officials that think it is OK to influence a Canadian Federal Judge - as well as that same Federal Judge thinks that it is OK to be influenced - as well as to not disclose obvious conflicts of interests. The Imm defendants literally operate anywhere in the world by virtue of their positions and what they do as getting as many immigrants to come to Canada by hook or crook. Therefore, under these circumstances, these defendants have not been subjected *fully* to the laws of Canada.  Even the Parliament of Canada cannot deter the Immigration defendants (see herein for that Evidence).

121. From this perspective, this USDC NJ has jurisdiction over the *Immigration Pirates* – who will hereafter always be referred to simply as Imm defendants – but it is an apt label to place on them because part of the problem, that even the Imm defendants admit to is that they have no jurisdiction over their own members because ICCRC itself has been described as being an "association" or a "club" as John Murray (ICCRC president and CEO) and Dory Jade (president and CEO) told the members of the Canadian Senate and yet there are some 7,000 Canadian Immigration consultants scattered throughout the world and approximately 700 of them reside in the United States (Note: Plaintiff(s) are <u>not</u> suing these 700 +/- members) as they too are under the same *Immigration Piracy* 'laws' that Plaintiff Dean is under.

122. The Imm defendants also qualify as perpetrating aggressions by so-called uncivilized peoples who are not subjects of any civilized sovereign.  These Imm defendants are ruthless and seemingly act or are not restrained by any law – which is detailed herein.

123. Article III, SECTION 2. Clause 1. The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—

to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party;—to Controversies between two or more States; between a State and Citizens of another State; between Citizens of different States,—between Citizens of the same State claiming Land under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

124. 28 USC § 1343 Civil Rights and Elective Franchise states: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by act done in furtherance of any conspiracy mentioned in section 1985 of Title 42. To Recover damages from any person who fails to prevent or to aid in preventing the wrongs mentioned in section 1985 Title 42 which he had knowledge were about to occur and power to prevent. To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.  All of these are amply described herein including color of state law where the defendants are all deemed state actors under § 1983.

125. As for the RICO claims and the criminality associated, the Imm defendants affected commerce within the United States and their acts were directed at the United States and the locus delicti was largely in the United States and certainly the most egregious acts were in New Jersey.  All of the injuries were domestic injuries and any supplemental jurisdiction applies under 28 USC $ 1367.

126. It is of note that because Plaintiff(s) are Pro se, mis-citation of the state statute for an alleged state predicate offense is not fatal, absent clear evidence of prejudice to the defendant. See, e.g., United States v. Watchmaker, 761 F.2d 1459, 1469 (11th Cir. 1985); United States v. Chatham, 677 F.2d 800, 803 (11th Cir. 1982). See also FED. R. CRIM. P. 7(c)(3).

# Act I

**THE SAGA ENTERPRISE**

127. This is a story of the Saga Enterprise consisting of Ryan Dean ("Dean"), Kevin Klassen ("Klassen") and Saga Global Capital Management LLC and related companies ("Saga"); see below for full description.  Herein the Saga Enterprise and Plaintiff(s) will establish the injuries and the causation of the injuries by the "but for," "by reason," and "proximate cause" and factually caused analysis. Plaintiff will establish that the Immigration Enterprise and False Accuser Enterprise(s) was conducted conduced by the Imm defendants and the False accusers respectively, by and through with respect to their enterprise(s) – separately and together - through a

pattern of racketeering activity and caused severe damage to the Saga Enterprise in addition to causing damage to Dean through violations of his Federal Civil Rights and many other troubling violations. The Immigration Association-In-Fact members and the False accuser members have violated 1962(a)(b)(c)(d) and numerous RICO predicate Act, and these individuals involved represent the very kind of predicate acts that Congress wanted outlawed - and gave the tools to Private Attorney General such as Plaintiff(s) to deal with them. See Act II for details on the False Accuser Enterprise and the False Accuser Associates-In-Fact and the outrageous RICO predicate acts committed.

**IMMIGRATION ENTERPRISE AND THE IMMIGRATION ASSOCIATION-IN-FACT**

128. The Immigration Enterprise is an enterprise that exists and that has longevity and will go well into the future.

129. Act I's focus is on largely the Immigration Associates-In-Fact as they are precisely the sophisticated and dangerous kind of Association-In-Fact members that committed the Predicate Acts, are still committing the predicate acts, and definitely threating to continue committing the predicate acts well into the future. The chilling lengths that the Immigration Associates-In-Fact are willing to go to hide their crimes, by committing ever escalating crimes, with seeming impunity, and disregard for all authority is astounding – and that is because the authorities *are* helping them.

130. In Act III, this becomes painstakingly obvious because the authorities intervened in a Canadian Federal Court case (T-834-20) the Immigration Associates-In-Fact were involved in for their benefit, *while knowing* that there were two United States Federal Court Cases ongoing (2:19-cv-18255-MCA-LDW ("2:19") and 2:20-cv-07393-MCA-LDW ("2:20") that violate 18 USC § 1512 & 18 USC § 1513 in and of itself. Below, all of those elements will be defined but for now know that the Canadian Court in T- 834 – 20 in using a document in question that had the date of *April 31, 2017* for a November 20, 2020 hearing date. Of course, April 31 – in any year on either side of the 49th parallel does not exist – but in Canadian Federal Court the Judge did not even blink at April 31, 2017. It was then Plaintiff(s) knew precisely why he could get any Canadian Court to properly hear his cases with that kind of non-sense.

131. As well, by that time in November 20, 2020, mounting evidence was being accumulated that the Immigration Associates-In-Fact (Canada) were connected with False Accuser Associations-In-Fact (United States) and Plaintiff had no choice but to combine all of this in the United States and invoke the numerous statutes and extraterritorial jurisdiction to protect himself as United States Citizens and what's left of the Saga Enterprise.

132. With respect to the Immigration Associates-In-Fact, these defendants are in some ways worse than the traditional mob because they have the power of a regulator (and not officially part of the government…yet) and have the backing of certain corrupt department officials at the Immigration, Refugee, Citizenship of Canada ("IRCC"). It is a shocking and appalling thing to say but to this Canadian/American Plaintiff (Dean), it is altogether shameful to report.

133. To determine standing Plaintiff(s) will show that the injuries inflicted on the Saga Enterprise (and indeed to Plaintiff(s) personally under 18 USC § 1589 (forced labor)) were direct and the proximate causes of the numerous injuries.

134. For now the definition of abuse of process includes:

The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

135. Although there are no other direct victims to these particular schemes described herein, there are other victims in other schemes perpetrated by defendants in the conduct of their enterprise(s) elsewhere using the same means and methods described herein.    This is a story that includes continuous and related acts constituting a pattern of racketeering activity – including Federal and numerous State Predicate (or equivalent) - that encompasses Bribery, Extortion, Extortion under color of official right, Wire Fraud, Mail Fraud, Bank Fraud, Robbery,  Witness Tampering, Obstruction of Justice, transportation of stolen property in interstate commerce, and much more, as well as conspiracy to commit each and every one of these predicate acts by all defendants. See all predicate acts and elements herein (front loaded in para 67) for some kind of brevity in this complaint and all of the state predicate acts referred that will be detailed below.

136. All RICO predicate offenses are related to money laundering per 18 USC § 1956(c)(7)(A) and also have extraterritorial reach in many instances and that are present in this instant case, and these too will be defined below. The money laundering provisions, among other things, prohibit financial transactions involving the proceeds of a "specified unlawful activity," that are intended to launder the proceeds or to promote further "specified unlawful activity." Any RICO predicate offense is by virtue of that fact a specified unlawful activity, that is, a money laundering predicate offense. Money laundering is punishable by imprisonment for not more than 20 years, a fine ranging from $250,000 to $500,000 depending upon the nature of the offenses, and the confiscation of related property.

137. With respect to 18 USC § 1956(a)(1), the Immigration Associates-In-Fact knew (as evidenced herein) that they unlawfully gained control of the Immigration Enterprise (by gaining control of the core piece, the ICCRC) – and the Immigration Associates-In-Fact defendants have attempted and/or conducted the Immigration Enterprise in unlawful financial transactions in the United States, or aimed at the United States, and abroad, that have negatively affected commerce in the United States and abroad, with the intent to carry out numerous "specified unlawful activity," which is detailed herein.

138. The Immigration Associates-In-Fact are also in violation of 18 USC § 1962 (a) and 18 USC § 1962(b) and specifically when they reached into the United States to "discipline" an elected Director of ICCRC and Plaintiff Dean, that was also for the benefit of NY resident Richard Dennis (see below for reasons why).  Approximately 700 members of the ICCRC live in the United States, that Plaintiff Dean represented (approximately 400 in

2016/2017) and just by that fact alone that the Immigration Associates-In-Fact defendants are "regulating" some 400- 700 US based persons during this stretch of time, and that definitely affected commerce in the United States beyond a *de minimus* level and of course it created substantial head winds to the Saga Enterprise because all of sudden Dean had to start explaining to stakeholders in the hedge fund industry why he was being disciplined for others criminality and corruption.  With respect to the Saga Enterprise, and the Imm defendants conduct in perpetrating their racketeering activities through the Immigration Enterprise, and holding out their activities as somehow legitimate, the negative affect has been devastating on Plaintiff Dean and on the Saga Enterprise through numerous injuries with the confederacy with the False accuser defendants.

139. As will be shown herein racketeering is a regular way of doing business for the Immigration Association-In-Fact members (and False accusers below):

> If acts of racketeering are a regular way in which a defendant does business, courts  expect  to see victims other  than  the  plaintiff.  *See, e.g., Brandon Apparel Grp., Inc. v. ()y,itman Mfg. Co.,* 52 F. Supp. 2d 913, 920 **(N.D.** Ill. 1999) ("[W]hether there are multiple victims is highly relevant to the inquiry of continuity."); *Norstar Bank v. Pepitone,* 742 F. Supp. 1209, 1212 **(E.D.N.Y.** 1990) (holding that open-ended continuity was supported by  allegations  that  "defendants were involved in other business transactions with other victims  in  which  they engaged" in the same type of racketeering); *Ross v. Bolton,* 639 F. Supp. 323, 328 **(S.D.N.Y.** 1986) (holding that a pattern aimed at different individuals and injuring multiple victims was actionable). Thus, even if a defendant  did  not  engage  in  a pattern of racketeering activity against a particular person, the continuity standard enables the plaintiff to hold the defendant liable under  RICO  if  the  defendant  engaged  in  similar wrongdoing  against others.

140. **Act I shows that the Imm defendants kept and maintained control of the Immigration Enterprise by a scheme to defraud and then by appointing many friends and cronies to directorship of the ICCRC; these appointments blew way through the legal limits of the ICCRC's own 'articles of continues, ICCRC's By-Laws and the CNCA. Just like a drunk driver blows way over and goes to jail, the Imm defendants 'appointed their friends' way over the legal limit.**

141. **Here is the detailed story of that and also along the way it shows the corruption and indeed how their means and ends are the same as the False accusers means and ends.  It is detailed under Federal Rules of Civil Procedure but it shows that the Imm defendants took over the Enterprise unlawfully – by Canadian standards – and then used the enterprise to chase Dean into the United States and commit predicate acts here in the United States by confederating with the False accusers and by other means.**

142. **It got so arrogant and out of hand that for one director appointment, they held out this guy as being elected, and he was not even on the ballot.**

143. At the November 12, 2016 Annual General meeting in Toronto, where Dean became a Director of ICCRC, in the afternoon "Financial Question and Answer" session – that started with the microphones being turned off (the rest of the day the microphones were on), and while being broadcast to the membership worldwide via live-wire

feed, including into the United States, the question was asked by Mr. M. Watto, whether or not there was money or funds being diverted out from the regulator to a third party. With the entire board, management, and a number of employees of ICCRC in attendance, and in approving silence, Mr. Merv Hillier denied (read: fraudulent concealment – see below) that there existed a third-party private corporation and indeed there time would should that it indeed did exist, and this 'third party,' which performed the "discipline investigations" was *the* "core competency" of the regulator that was being run out of private residence of Mr. Kewley, and in turn was the "infrastructure," at the time to "discipline" the regulator's members – when it felt like it needed to discipline members.

144. And discipline Imm defendants did often, like they did to M. Watto, and Dean, and others, to protect themselves, and not the public. Imm Defendants sent Plaintiff Dean about a dozen complaints for asking these types of *very uncomfortable questions* at the 2016 ICCRC Annual General Meeting including the fact that their audited and certified balance sheets did not balance and that there was an attempted cover up of the four different versions of them – also blasted out to the United States by wire in November 2016 at differing times (see the conspiracy to cover up – see below).

145. Witness testimony will show that when discipline complaints came into the regulator that it was known for Mr. Kewley to dispose of complaints – without even processing them and in one instant 500 complaints were thrown away without consideration of what each legitimate discipline complaint meant.

146. The Immigration Association-In-Fact defendants ("Imm defendants") have taken over the Immigration Enterprise unlawfully, and Imm defendants have received income derived directly and/or indirectly by way of a pattern of racketeering activity (defined below), and/or through a pattern of collecting unlawful debt in which Imm defendants have operated as principals in the establishment of the NR Complaints and Discipline Solutions Inc. This NR Complaints and Discipline Solutions Inc (an Imm Defendant), once Plaintiff Dean exposed it to the Parliament of Canada, and as an elected director of ICCRC, elected to investigate the regulator – in which Plaintiff then "enjoyed" absolute Parliamentary Privilege (or so he was told) – shortly thereafter stopped operating from Mr. Robert Kewley's living room, in his private residence, and soon after the "discipline investigations" function became a "in house" operation of the Immigration Enterprise.

147. Significantly, all discipline complaints were addressed to Plaintiff Dean's address in Las Vegas, Nevada, giving not only Federal Jurisdiction to these matters but also the State of Nevada Jurisdiction as well. Nevada's RICO Laws are very similar to the Federal RICO law and are defined in the Causes of action and many of the Nevada Predicate Acts are described herein.

148. The ICCRC Founder, CEO, President, and Director, Mr. Phil Mooney, and his friends and cronies, Chris Daw, Lynn Gaudet, Rhonda Williams and a long list of other unsavory sinister individuals, recruited Mr. Kewley from the previous regulator the Canadian Society of Immigration Consultant ("CSIC") to do Imm defendants' "double

46

dealing," "backroom dealing (by applying pressure where it was "needed most," and other not-so-pleasant henchman duties. Mr. Mooney himself was an *expert* at committing fraud (until he was caught) and it was not his first go at in the United States, as the government in Vermont tossed Mooney and his partners out for Immigration related Fraud. There are likely other RICO predicate acts and victims from his separate and unrelated scheme, but this is how Mr. Mooney operates as a regular way and his cronies also learnt from him as Mooney is the tip-of-the-corruption spear and a real slippery used car salesman kind of guy. He is an "alleged" criminal reprobate, as the evidence will show, as a number of them will be described herein. Here is evidence of Mooney's activities in Vermont <hold the "CTRL key down" and "double click mouse">:

See: http://vtdigger.wpengine.com/2013/04/03/state-pulls-plug-on-eb-5-project/

149. The Imm defendants have perpetrated other crimes against other individuals/victims on numerous occasions and there are/will be witnesses to Imm Defendants' somewhat unrelated predicate acts and schemes and their testimony will be used to expose the corruption and vileness of these individuals.

150. Largely this entire Act I exposes the Imm Defendants' breach of not only the Canada Not For Profit Corporations Act ("CNCA") – which ICCRC is currently operating under – but each and every time that ICCRC reached into the United States, and in particular as it related to Plaintiff Dean and/or the Saga Enterprise, the Imm defendants were committing Predicate RICO Act, after Predicate RICO Act, because Imm defendants thought that because they had the Canadian Courts in their back pocket, and the high up level officials in government, that they could do as they pleased, and would not have to be made to answer in the USDC.

151. RICO was designed to stop the infiltration of legitimate business by corrupt individuals that perpetrate the RICO Act (and in this case the CNCA and the Imm defendants did and still are reaching into the USA) by their unlawful and unethical means.

152. Under 18 USC 1962 (b) the Imm defendants have violated the statute repeatedly and constantly and it threatens to continue long into the future, as they will have more power under the new "College Act" under Canadian Federal Statute which says they can reach inside any country worldwide. Fortunately, the Congress had other ideas and said that it shall be unlawful for any person through a pattern of racketeering activity or through a collection of unlawful debts to acquire, maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate, or foreign commerce. If the new College in Canada is packed with these unsavory individuals they should not be allowed to do business in the United States (see end of complaint for remedy).

153. Imm defendants significantly slowed down, and then shut down, an International Hedge fund – with great promise - just before it was to launch by:

    i.    Imm Defendants filing a blizzard of unlawful discipline complaints in violation of 18 USC § 1962(a)(b)(c)(d) in an attempt to cover up their scheme, removing a lawfully elected Canadian/American

Citizen for exposing Imm Defendants' crimes (Act I), and then taking away Plaintiff Dean's livelihood and license for taking a *volunteer job* and waiting to see what would happen next and nothing more in 2020/2021 (See Act III) – and making it all (falsely) public is devastating to Plaintiff Dean and the Saga Enterprise. And then there is a "matter" of what happened immediately after the Imm Defendants' "Appeal Committee" upheld the unlawful removal of Dean from the ICCRC board on August 2, 2017.

ii.   Imm Defendants, conspiring with the False Accuser Association-In-Fact, put in motion on August 9, 2017, a reprehensible scheme to finance and pay for Ms. Lisa Bissell (and the False Accuser Association-In-Fact members). Ms. Bissell is the former CEO of Pure Grown Diamonds and self-professed "Spin Doctor," and on August 9, 2017 she filed a false Temporary Restraining Order ("TRO") and a false police report against Plaintiff Dean. Bissell stated in writing and under oath that on the night of February 7, 2017 that Dean brutally raped her vaginally, digitally, and anally to the point of making her bleed – but she sought no medical help. Later, with no notice in open Court (Due Process Violations), Bissell stated and confirmed that on every subsequent meeting – face to face or on the phone - Dean threatened to break and enter into the Bissell home, re-rape her (like the last time) and then commit mass murder of *Bissell,* her family, *and her children.* Note: the Cedar Grove (New Jersey) police have just recently released the 'police report' that Dean has been trying to get for years, and Bissell claims on the police report that after February 7, 2017, the incident was never spoken of again between Bissell and Dean and by definition this means there were no "murder threats," and the rest is a farce too as Evidenced by Bissell's own words in transcripts and other documents. There is plenty more documented perjury, and subornation of perjury, in Act II detailing out the scheme of the False accuser Association-In-Fact members. The TRO (and Amended TRO) were tossed out of NJ State Family Court and not appealed because Bissell had credibility issues so said Judge Carolyn Murray – a professional lie detector herself and former Essex County Sex Crimes boss. Bissell in 2019, after changing her story yet again, was given "another bite at the apple," and she is on her 7 or 8th story now. Here is a copy of the text messages between Bissell and Dean – text messages that Bissell asked and thought Dean had deleted from his iPhone. Note: Each one of these links should be printed off so that the de-spaghettification can begin and the scheme to defraud can be verified.

https://www.dropbox.com/s/fwx63k3m0k7x957/Bissell%20Dean%20Text%20Messages.pdf?dl=0

iii.   It is of further note that after Dean received the news from the ICCRC "appeals" committee, he had precisely one month to file with the Canadian Federal Court system for a Federal Judicial Review. It would have been "slam dunk" to get Imm defendants' unlawful removal overturned (See CNCA 130 below) because only the members that elect a director can remove that director) but instead Dean was suddenly thrust into the Jaws of the New Jersey Justice System and dealing with Ms. Bissell's

Case 2:21-cv-09770-MCA-SDA    Document 1    Filed 04/19/21    Page 49 of 457 PageID: 49

professional story telling - fabricating Evidence - and the throwing away evidence (evidence destruction/spoilation) before the authorities/parties had any chance to analyze it). Before August 9, 2017, Dean was preparing to not only report these matters in Canada spilling into the USA to the US Federal Justice System, but also to the State Law Enforcement as well. Mr. Richard Dennis – an American Citizen in New York State – was party to all of this at all times giving jurisdiction to the United States District Court. It was not "due process of law." But defendants had different plans as they tried to destroy Dean in the lightning fast NJ PDVA using it as a 'sword,' and 'not a shield.' It is of note that the Magna Carta first appeared in 1354 England where it states (and is used in the US and Canada):

> "No man of what state or condition he be, shall be put out of his lands or tenements nor taken (taken mean arrested or deprived of liberty by the state), nor disinherited, nor put to death, without he be brought to answer by due process of law."

154. Somehow laws such as these have been forgotten under regimes like the NJ PDVA but in our modern day society of the motto "every woman should be believed" (and she unquestionably should be *initially* believed) is being perverted by elements of the dark side of the "#MeToo Movement." It is a problem and reconciling the two extremes of rights and protecting women are at the root of it is this entire complaint underscoring the False accusers knowing and wiling abuse of the process et al.

155. The Imm defendants participation in financing the False Accusers and by reaching into the United States to do so is clearly a violation of 18 USC § 1962 (b). It is also a violation that the Imm defendants engaged in activities that negatively affect interstate and foreign commerce, to conduct or participate, directly or indirectly, in the conduct of the Imm Enterprises' affair through various predicate acts of racketeering. Clearly, Imm defendants have something serious to hide if they are willing to go to the lengths of paying for one of their formers elected directors to spend the rest of his natural life in New Jersey State Prison for a brutal sexual crime he did not commit (and have him subsequently silenced…permanently). Of note is that Dean was in Asia/Canada for over ½ of the time that False accuser Bissell says Dean was threatening her and not communicating with Bissell.  Had Dean gone to State Prison for brutal Sexual Assault, he in turn would have been most assuredly murdered in State Prison as well just so that these Imm defendants could know that the "job" was done. The substantial step towards that murder was to send Dean away to prison for the rest of his natural life.

**TAMPERING WITH A WITNESS OR INFORMANT**

156. The elements of 18 USC § 1512 (Tampering with a witness or informant) has numerous features and benefits to deal with racketeers reaching into the United States and that is that it has extraterritorial jurisdiction to help and ensure that those morally, ethically, and legally flexible Association-In-Fact members of criminal syndicates – such as the Imm defendants – never, ever, again look at a sign that says "Welcome to the United States" the

same way again. 18 USC § 1513 is equally and probably more easy to prove and that definitely has extraterritorial jurisdiction.

157. 18 USC § 1512 applies to the obstruction of federal proceedings—in this case the United States District Court. 18 U.S.C. § 1512(a)) is the use or threat of force.

> § 1512(a)(1)
> I. Whoever
> II. a. kills or
> b. attempts to kill
> III. with the intent to
> a. prevent attendance or testimony at an official proceeding (i.e., a federal judicial, legislative or administrative proceeding)
> b. prevent the production of an item at an official proceeding
> c. prevent the communication to U.S. law enforcement authorities of a federal offense or a violation of probation, parole, or supervised release.
> IV. shall be punished under §1512(a)(3)

158. Here the plan was the Imm defendants to have the False Accuser Association-In-Fact members see Plaintiff Dean off to NJ State Prison for the rest of his natural life or until he was murdered and/or befell some "unfortunate" accident, or as a direct and/or proximate cause, because Dean *definitely would not have joined a prison gang – a requisite for 'good prison life living*.' He did not join the immigration defendants' scheme and would not permit himself to join a prison gang – even if that meant death. What defendants did was all done with extreme malice and as a sneak attack. This is defined as conspiracy to murder and/or conspiracy to commit murder under 18 USC § 1111 and 18 USC § 1113 – which both definitely have extraterritorial jurisdiction. The Court defined conspiracy as well as conspiracy to commit murder with this:

> Conspiracy is an inchoate crime. (See *United States* v. *Feola* (1975) 420 U.S. 671, 694 [ 43 L.Ed.2d 541, 558, 95 S.Ct. 1255].) It does not require the commission of the substantive offense that is the object of the conspiracy. ( *People* v. *Manson* (1977) 71 Cal.App.3d 1, 47 [ 139 Cal.Rptr. 275].) "As an inchoate crime, conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime," and "thus reaches further back into preparatory conduct than attempt. . . ." (Model Pen. Code Commentaries (1985) com. 1 to § 5.03, pp. 387-388.)
>
> The crime of conspiracy is defined in the Penal Code as "two or more persons conspir[ing]" "[t]o commit any crime," together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance thereof. (Pen. Code, §§ 182, subd. (a)(1), 184.) **(3)** "Conspiracy is a `specific intent' crime. . . . The specific intent required divides logically into two elements: (a) the intent to agree, or conspire, and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree *but also that they intended to commit the elements of that offense*." ( *People* v. *Horn* (1974) 12 Cal.3d 290, 296 [ 115 Cal.Rptr. 516, 524 P.2d 1300] ( *Horn*), citations omitted, italics added.) In some instances, the object of the conspiracy "is defined in terms of proscribed conduct." (Model Pen. Code Commentaries, *supra,* com. 2(c) to § 5.03, p. 402.) **(4) (See fn. 1.)** In other instances, it "is defined in terms of . . . a proscribed result under specified attendant circumstances." ( *Ibid*.)

50

Another provision of the Penal Code, section 182, the current version of which was enacted in 1955, prescribes the punishment for the crime of conspiracy. "If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit such felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree."

**(1b)** Turning next to the elements of the target offense of the conspiracy here in issue, Penal Code section 187 defines the crime of murder as the "unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) Malice aforethought "may be express or implied." (Pen. Code, § 188.) "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." ( *Ibid*.)

This court has observed that proof of unlawful "intent to kill" is the functional equivalent of express malice. (See *People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [ 2 Cal.Rptr.2d 364, 820 P.2d 588] ["Pursuant to the language of [Penal Code] section 188, when an intentional killing is shown, malice aforethought is established."].) *People v. Swain*, 12 Cal.4th 593, 599-601 (Cal. 1996)

159. What matters here is the Imm defendants took a concrete step to this end and therefore ought all be "welcomed to the United States." Alternative, even if Dean were not "murdered," or had some unfortunate accident in Prison then 1512(a)(2) applies, as to be tossed into Prison unjustly would certainly qualify as "physical force," as well as "influence, delay, or prevent testimony at an official proceeding."  Also, usually convicted rapists and violent anal rapist convicts, and those who "are-about-to-be-mass-murders-of-children" usually do not make good credible witnesses in other legal proceedings - as well as the fact that they do not have access to any materials to prove their innocence.  This entire ordeal has been quite an effort (See forced labor below in which is also conduct unbecoming of the Federal Canadian Immigration Consultant Regulator, and members of the regulator, and dispels the ICCRC Bulletins blasted out to the world on a monthly basis under the false presumption  of "Fraud Prevention month." See in Evidence below.

  i. § 1512(a)(2)
  ii. I. Whoever
  iii. II. a. uses physical force,
  iv. b. attempts to use physical force,
  v. c. uses the threat of physical force, or
  vi. d. attempts to use the threat of physical force
  vii. III. with the intent to
  viii. a. **influence, delay, or prevent testimony at an official proceeding**
  ix. b. cause or induce another to withhold testimony or an item at an official proceeding
  x. c. hinder, delay or prevent the communication to U.S. law enforcement authorities of a federal offense or a violation of probation, parole, or supervised release
  xi. d. **cause or induce another to alter, conceal or destroy an item with the intent to make unavailable**
  xii. e. cause or induce another to evade process

51

xiii.    f. cause or induce another to fail to comply with process

xiv.    IV. shall be punished under §1512(a)(3)

160. **Watch the video of them threatening Mr. Watto here that was blasted out to the world via live feed by ICCRC (or similar video):**

https://www.dropbox.com/s/ysy5y3sy8qdt3hg/ICCRCAssaultThreatOfViolenceAt2017AGM.mp4?dl=0

161. Subsection 1512(f) declares that the evidence that is the object of the obstruction need not be admissible and that the obstructed proceedings need not be either pending or imminent. The mounting Evidence will show that defendants "knowingly" engaged in the obstructing conduct. Dean had a nearly freshly minted Parliamentary Privilege letter issued by the Committee Chair to the ICCRC and the entire board of directors – which is good evidence that Plaintiff Dean was going to continue the fight off the corruption by not only appealing the matter in Canadian Federal Court for the unlawful Directorship removal but also turning the USDC Courts (Dean represented the International region including the United States) as well as the Imm defendants were definitely affecting domestic and international commerce of the Saga Enterprise.  Dean needed to get rid of those unlawful discipline complaints as well as the public 'shaming' of being removed from office for calling the Imm defendants out on their criminality et al. It was a hindrance to the Saga Enterprise.

162. As a consequence of subsection 1512(h), murder, attempted murder, or the use or threat of physical force— committed overseas to prevent the appearance or testimony of a witness or the production of evidence in federal proceedings in this country or to prevent a witness from informing authorities of the commission of a federal offense or a federal parole, probation, supervised release violation—is a federal crime outlawed in subsection 1512(a) that may be prosecuted in this country.

163. Even if these Imm defendants are not connected to the False Accuser Association-In-Fact members, Imm defendants' have plenty of stand-alone RICO predicate activity that will be a matter for the Jury to decide what's what and if the mounting evidence connects both Associations-In-Fact. If the Imm defendants are willing to have three large men (there were some 20+ security guards there that day) threaten publicly Mr. Watto (at best 150 pounds) then it is not a stretch for a Jury to see that the Imm defendants schemed to have Plaintiff Dean 'permanently' disposed of.

**Use of deception or corruption or intimidation to prevent the production of evidence (18 USC § 1512(b))**

164. On Dean's very first day at the ICCRC board meeting as an elected director he went to walk into the corporate offices of ICCRC, but Ms. Jackie Furlong was there being a 'watch dog,' to make sure that Dean did not enter. It was very difficult to get to the records that ICCRC was hiding, the United States members also had an interest in knowing about these records as well, and that the ICCRC membership elected Plaintiff Dean to get, to uncover, and expose the obvious corruption. This "blocked ICCRC office entrance" happened for several board meetings,

and Ms. Furlong is culpable of 18 USC § 1962(c) and 18 USC § 1962(d) as she was taking orders from management – Mr. Lawrence Barker, then in 2016/2017 acting ICCRC CEO and Registrar (and a few more titles).

165. Ms. Furlong was under the direction of Mr. Lawrence Barker and Ms. Dace Stripniecks - who were both ring masters of the Immigration Enterprise circus as main 'tent pegs.'  Mr. Barker earnestly and promptly signed each and every discipline complaint that Ms. Carla Gelbloom shoveled his way, to move the "discipline complaints" forward in the process, and therefore for every discipline complaint, all defendants are all culpable of hundreds of acts of wire fraud (see below in links below, and in the pending Civil RICO Case Information Statement).  Of note is that all of these discipline complaints had nothing to do with Dean's practice as an immigration consultant and that is a harbinger of the Imm defendants using the facilities of the regulator to perpetrate their predicate acts. Below is main link that is packed with Evidence of what is claimed herein. See Exhibit 40 for instance where Merv Hillier complain against Dean in his cover up attempt that was pushed through the Immigration Enterprise's facilities.

https://www.dropbox.com/sh/b9c9n9glmxzdezf/AAAFe5cQA-seYk_MMpCG0XfNa?dl=0

166. To create these unlawful discipline complaints, the Imm defendants used the Enterprise Resources and backroom channel of the Canadian Association of Professional Immigration Consultants ("CAPIC") – ICCRC's mother and lobby arm - operatives from Ms. Gelbloom and Ms. Kim Ly, both working under the director of Mr. Phil Mooney, Mr. Gerd Damitz, and Mr. Donald Igbokwe and of deception or corruption or intimidation to prevent the production of evidence (18 U.S.C. 1512(b)). For each and every discipline complaint and indeed email that was sent back and forth Mr. Mooney, Mr. Damitz, and Mr. Igbokwe are culpable of wire fraud.

167. At this point 18 USC 1512(b) was not quite ripe but it would become ripe after August 2, 2017 ICCRC appeals committee issued their fraudulent "decision." See below for August 2, 2017 decision.

**OBSTRUCTION BY INTIMIDATION, THREATS, PERSUASION, OR DECEPTION (18 U.S.C. § 1512(B))**

168. §1512 outlaws obstruction of federal congressional, judicial, or administrative activities by intimidation, threat, corrupt persuasion, or deception, 18 U.S.C. 1512(b). Parsed to its elements, subsection 1512(b) provides that:

169. In more general terms, subsection 1512(b) bans (1) knowingly, (2) using one of the prohibited forms of persuasion (intimidation, threat, misleading or corrupt persuasion), (3)(a) with the intent to prevent a witness's testimony or physical evidence from being truthfully presented at official federal proceedings or (b) with the intent to prevent a witness from cooperating with authorities in a matter relating to a federal offense.

170. It also bans any attempt to so intimidate, threaten, or corruptly persuade. The term "corruptly" in the phrase "corruptly persuades" as it appears in subsection 1512(b) has been found to refer to the manner of persuasion, the motive for persuasion, and the manner of obstruction. Prosecution for obstructing official proceedings under subsection 1512(b)(2) will require proof that the defendant intended to obstruct a particular proceeding. Prosecution for obstructing the flow of information to law enforcement officials under subsection 1512(b)(3), on the other hand, apparently requires no such nexus. A subsection 1512(b)(3) investigation obstruction offense prosecution, however, does require proof that the defendant believed it reasonably likely that the witness, absent tampering, might communicate with federal authorities. The defendant's belief that a witness is reasonably likely to confer with federal authorities can be inferred from the nature of the offense and "additional appropriate evidence."

171.

I. Whoever
II. knowingly
A. uses intimidation
B. threatens, or
C. corruptly persuades another person, or
D. attempts to do so, or
E. 1. engages in misleading conduct[60]
2. toward another person,
III. with intent to
A. 1. a. influence,
b. delay, or
c. prevent
2. the testimony of any person
3. in an official proceeding,[61] or
B. cause or induce any person to
1. a. i. withhold testimony, or
ii. withhold a
(I) record,
(II) document, or
(III) other object,
b. from an official proceeding, or
2. a. i. alter,
ii. destroy,
iii. mutilate, or
iv. conceal
b. an object
c. with intent to impair
d. the object's
i. integrity or
ii. availability for use
e. in an official proceeding, or
3. a. evade

54

b. legal process
c. summoning that person
i. to appear as a witness, or
ii. to produce a
(I) record,
(II) document, or
(III) other object,
iii. in an official proceeding, i.e., a
(I) federal court proceeding,
(II) federal grand jury proceeding,
(III) Congressional proceeding,
(IV) federal agency proceeding, or
(V) proceeding involving the insurance business; or
4. a. be absent
b. from an official proceeding,
c. to which such person has been summoned by legal process; or
C. 1. a. hinder,
b. delay, or
c. prevent
2. the communication to a
a. federal judge or
b. federal law enforcement officer
3. of information relating to the
a. commission or
b. possible commission of a
4. a. federal offense or
b. [a] violation of conditions of
i. probation,
ii. supervisor release,
iii. parole, or
iv. release pending judicial proceedings;
shall be fined under this title or imprisoned not more than 20 years, or both.

172. Of note is that a witness (Ms. Sascha-Kate Marskell) came forward with a string of emails (and withdrew from the scheme) – that was kept hidden from Plaintiff Dean by the Imm defendants - showing that Mr. Mooney, Mr. Damitz and Mr. Igbokwe – all senior managers at ICCRC and CAPIC – conspired together with others, and directed lower level individuals (Ms. Carla Gelbloom) and Ms. Kim Ly to actually go out and conspire and *recruit* lower level CAPIC individuals (who were also members of ICCRC) in the Immigration Enterprise - and use the email list of CAPIC (which is comprised of ICCRC members) - and 'cold call' lower level members to file 'discipline complaints' against Dean winning his directorship fair and square.

173. It was literally the tail that wagged the Immigration Enterprise and those involved was about 1% of the total membership overriding democracy.

174. Ms. Ly and Ms. Gelbloom even would write the complaints for the complainants and then file the complaints for them, after a few wire frauds here and there to get the signatures.  In short, it is like the police going door to

55

door to get people to file discipline complaints in exchange for a token reward. In the link below are about 200 pages of these emails and apparently it is just the "tip of the 'proverbial' wire fraud (and other predicate acts) ice burg." Keep in mind too that the ICCRC membership at this point is about 4,000 members and Dean won his election handily and the individuals involved in this scheme as evidenced by these emails is less than 1% of the membership. Dean gave numerous videos that said he was a hedge fund manager out of New York City, and this was the material that was used against Dean in the discipline complaints. Clear violation of 18 USC § 1962(a)(b)(c)(d) on an aggravated basis because of the fact that many of them are using ".com" email addresses and all of it is directed at Plaintiff Dean who resided in the United States. By definition, by using a ".com," even if they were not directly sent to Dean, these emails still go through United States servers and therefore on this point alone there is further United States Jurisdiction. In the Evidence herein it is clear that there are all kinds of US based email servers used including gmail.com for instance.

https://www.dropbox.com/s/rpum6hojtr4cpnw/Ryan%20Dean%20Affidavit%20July%2027%202020.pdf?dl=0

175. Further note with respect to Ms. Marskell: for any Federal and/or State Prosecutor considering filing criminal charges against defendants, Ms. Marskell should be afforded all of the rights and privileges given under 18 USC § 1512, 18 USC § 1513, and any of protections afforded Ms. Marskell under the protection of the law, in the opinion of Plaintiff Dean. Ms. Marskell has been quite helpful and should not be prosecuted in any way, shape, form or fashion, and indeed it will encourage other witnesses and/or defendants to tell the Truth.

176. Ms. Maria Krajewska sent the members an email (read: wire fraud) informing them of her advice on how to file discipline complaints against Plaintiff Dean on November 14, 2016 at 12:25 PM. Ms. Krajewska, herself patently unelectable – like Mr. Peter Perram (see below) but nevertheless Ms. Krajewska was "elected" to a board seat the following year. Ms. Krajewska is also responsible for each successive discipline complaint filed against Plaintiff Dean and sent to him in the United States as are each and every defendant that will be detailed in the pending Civil RICO case information statement.

177. In the link above in an email Ms. Kim Ly on November 16, 2016 at 4:06 AM is telling a person named "Ivory" that she can complain despite not knowing the facts. On November 16, 2016, Ms. Ly tried to explain that the regulations were what was important and not the covering up of the crime (which turned out to be the third party private corporation that Mr. Hillier denied existed but it did and all of these discipline complaints were funneled through the third party private corporation (NR Complaints and Disciplines Solutions Inc), for instance. Clearly a violation of the CNCA on numerous fronts as well as aggravated violations of 18 USC § 1962(a)(b)(c)(d) in writing.

178. In the link above Ms. Erica Stanley 'counsel[s]' those that did not witness the "behavior" that they too can file a discipline complaint.  Their argument is that those that are calling out crime are not allowed to do so because they are not polite and do things per their set norms of what is acceptable or unacceptable.  Wire Fraud – Erika Stanley, November 16, 2016 at 4:06 AM.  There are likely hundreds more emails between all of these individuals that Ms. Sascha-Kate Marskell was not part of and in turn that means that the wire fraud allegations will spike markedly once discovery has been completed and again will be in the Civil RICO case information Statement.  For now, these emails represent a "smoking gun" that there was a conspiracy to take over the regulator by people who did not like the results of an election, and in turn were actively helping in cover up crime.  It is also aggravated violations of 18 USC § 1962(a)(b)(c)(d).

179. Mr. Jeffrey Larry – sent Plaintiff Dean a threatening Sunday Morning June 28, 2020 at 9:34 AM wire fraud on his legal stationary for his 'law firm,' Paliare Roland 'demanding' that Plaintiff not accept a job in the United States – or else. See Act III for letter.

180. Again, there is so much wire fraud going on for nearly all defendants it will all be detailed out after discovery has taken place – for now there are dozens and dozens examples of it in the link above and throughout herein meeting the wire fraud definition and elements. See link below for hundreds of documented  examples of wire/mail fraud.

**WIRE FRAUD**

https://www.dropbox.com/scl/fi/8rrczfytbim6aub41umzn/Final-Wire-Fraud-04-19-21.xlsx?dl=0&rlkey=xf7aynqpakredjl3w49woduqd

181. Predicate act of mail and wire fraud 18 USC § 1341 and 18 USC § 1343 are essentially the same Act with the difference being the mode of transmission. Fraud by wire, radio, or television: whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purposes of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years or both. It is important to note as well that to violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation and that the transmission need not be essential to the success of the scheme to defraud; it need only be "for the purpose of executing" the scheme to defraud if it is "incident to an essential part of the scheme," or a "step in the plot." The elements of the offense of mail fraud 18 U.S.C. (Supp. V) s 1341 are a scheme to defraud and the mailing of the letter for the purpose of executing the fraud scheme is not necessary to use the mail (Fed Ex, UPS, DHL, ect) could also be used (See United States v Young, 232 U.S. 155, 34 S. Ct. 303).  If the violation affects a financial institution, such person shall be fined not

more than $1,000,000 or imprisoned more than 30 years or both. Of course, there is bank fraud this entire scheme (See Act II) and all defendants are liable. Herein is the proof of the material misrepresentations: "defendants willfully or recklessly made material misrepresentations or omitted to communicate material facts." See *Ernst Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Sunstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *S E C v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir. 1968) (in banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), *J. H. Cohn Co. v. Am. Appraisal Assoc., Inc.,* 628 F.2d 994, 998 (7th Cir. 1980).

182. United States v. Eisen, 974 F.2d 246, 253-54 (2d Cir. 1992) (mail fraud predicate offense applied to conduct that may constitute perjury even though perjury is not a RICO predicate offense. In 1987, in McNally v. United States, 483 U.S. 350 (1987), the Supreme Court held that the mail and wire fraud statutes were limited to schemes to defraud a victim of tangible or intangible property rights.

183. As for fraudulent concealment define elements that would make an ordinary person of prudence rely upon: "…those courts that do not require "reasonable diligence" have said that the "fraudulent concealment" doctrine seeks to punish defendants for affirmative, discrete acts of concealment; the behavior of plaintiffs is consequently irrelevant. See *Wolin*, *supra*, at 852; *Robertson* v. *Seidman  Seidman*, 609 F.2d 583, 593 (CA2 1979); cf. *Urland*, *supra*, at 1280-1281 (Becker, J., dissenting).*Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 195 (1997).

184. So it is said that whenever defendants used the mails and/or wires to commit wire fraud in aid of extortion or bribery that 18 U.S. Code § 1952 - Interstate and foreign travel or transportation in aid of racketeering enterprises applies and herein it is aggravated violations of § 1952 for all defendants.

185. Nevada has its own fraudulent conduct law that also has been met amply herein:

NRS 91.230  Fraudulent conduct.  A person shall not directly or indirectly:
   1.  Cheat or defraud, or attempt to cheat or defraud, any other person or employ any device, scheme or artifice to defraud any other person;
   2.  Make any false report, enter any false record, or make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;
3.Engage in any transaction, act, practice or course of business, including, without limitation, any form of advertising or solicitation, which operates or would operate as a fraud or deceit upon any person; or
4.Misappropriate or convert the money, security or property of any other person,
in or in connection with the purchase or sale of, the offer to purchase or sell, the offer to enter into, or the entry into of, any commodity contract or commodity option subject to the provisions of NRS 91.190 or 91.200 or paragraph (b) or (d) of subsection 1 of NRS 91.210.

186. Plaintiff Dean did not discover the Sascha-Kate Marskell emails until 2020 and therefore equitable tolling applies to all discipline complaints from 2016/2017 and the extent of the scheme.

187. Further elements of mail and wire fraud are the intentional participation in a scheme to defraud and use of the interstate wires in furtherance of the scheme and the wires need not even be used and instead just to be

'reasonably foreseeable.' What is really is that Imm defendants have documented all of this themselves in their own discipline complaints against Dean in 2021 to urgently suspend him (See Act III) for taking the CICC voluntary job, and then they bundled it all up and sent it to Dean in the United States. All of this was done by a gaggle of Imm Enterprise lawyers who knew or should have known they were committing wire fraud and other predicate acts.

188. Dean was being discipline because he was calling out the Imm defendants during election for their obvious incompetence as well. Dean called the Imm defendants "half wits" repeatedly and it was based of this video. US and Canadian elections are far worse that this but things like this were large parts in the discipline but irony now of it all is quite relevant as the Imm defendants did a marvelous job of packing up and detailing all of their fraud for Plaintiff(s). See below for more links to their packaging up their fraud et al.

https://youtu.be/eTDsJd1l7Aw

189. The four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used) (*citing* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)), *cert. denied*, 115 S.Ct. 2289 (1995); *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994) (essential elements of wire fraud are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme), *cert. denied*, 115 S.Ct. 193 (1995); *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993) (to prove wire fraud government must show (1) scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in scheme with intent to defraud, and (3) use of interstate wire communications in furtherance of scheme); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").

190. See United States v. Sawyer, 85 F.3d 713, 723 n.5 (1st Cir. 1996) (noting that the statutes "are increasingly used effectively to convict and punish for the substantive fraud," with "the use of the mails or wires [being] merely a 'jurisdictional hook'").

191. These discipline complaints were used as further grounds to keep Plaintiff Dean off of any committee within the board and in turn it was also part of the scheme to defraud not only Plaintiff Dean but the entire membership – which also includes several hundred US based Immigration Consultants at the time.  Their schemes are the ones that stopped the investigation that Dean was elected to do and goal of their schemes was to destroy Plaintiff Dean and the Saga Enterprise and the hedge fund.

192. Phil Mooney knew what he was doing with respect to the predicate acts wrote the board an email with this regard and in all of his published documents in 2019 with respect to the Special General Meeting ("SGM"), all Mr. Mooney, interviewing himself it was revealed at the end of these "RCICs Together" email blast and Mooney had this to say about Dean, and only this in these numerous email blast letters sent out to the entire membership worldwide, including the US based members. All Mr. Mooney had to say about Plaintiff Dean for the entirety of these email blasts in Volume 5, Part II Victim Statements:

> Q. You have also been attacked recently by Mr. Dean and Roy Kellogg. How do you respond to them? A. I have little to say about Ryan Dean, except he is the only Director I have ever heard of who was removed from a Board of a Not For Profit by a majority vote of his fellow Directors, for bullying. He also claimed to be a Hedge Fund manager, but a check with FINRA gives his history, which is very brief. https://www.dropbox.com/sh/pxokm759k35r89k/AADvPv9tJVd9UgY-VkXjS1Cfa?dl=0

193. This is a material deception as the Imm defendants know that they have multiple schemes that have significantly affected and/or destroyed the Saga Enterprise. It will be shown that the Imm defendants really did not want to talk about Dean as it tends to out their "secrets," and that the Imm defendants sent after Dean new Imm defendants Dean had never met at Immigration Enterprise in an attempt to try to cover up that the people Dean knew at the Immigration Enterprise were also involved. Mary Kennedy, is a stark example as in deposition she knew very little Dean and for the rest the deposition lawyer Gervais Wall would not let Kennedy ask questions about Dean. Wall repeatedly would say Dean was irrelevant and this in turn lends to the question why was Dean there in the first place? See Act III.

194. As for Mooney it should that there are only a few lines in total that he had to say about Dean, despite Dean being racketeer enemy No. 1 or No. 2 or thereabouts to the Imm defendants. But Mooney was refereeing to Dean's financial licenses in the United States and it was if he was claiming a victory for destroying Dean and the Saga Enterprise. A matter for the Jury to decide.

195. In Act III, it will be of further note that the Imm Def did a deep background dive on Plaintiff Dean, arguably three times, even touching on Dean's Linkedin Profile of Saga Global Capital Management LLC and Imm Defendants were trying to tarnish Dean's reputation and the Saga Enterprise – but did not think to include any of the brutal rape allegations in New Jersey that are all over the internet. Any reasonable person trying to show that another is a criminal and/or fraud would use such material but the Imm Defendants did not. Indeed, despite being part of the whole ruse in Act III, Plaintiff will show that Imm defendants did not even want to talk about Plaintiff Dean (and his 'other matters,' and in turn Imm defendants are abusing the legal process (See 18 USC § 1589). A simply search on google of "Dean" and "Saga" will top list these law suits and three analyst of the Imm defendants miss it all did they. A very uncomfortable set of facts for the Jury to ponder.

196. Ms. Robin Jones – who was instrumental in the wire fraud (See Act III) commits wire fraud in Volume 5, Part II by attempting to "play the victim," on September 16, 2019 at 12:32 PM. Plenty of this "false victim" fraud going

around (See Act II) with the False Accuser Association-In-Fact members. It is of note – until very recently – that despite the False Accuser Association-In-Fact members knowing quite a bit of detail with respect to the Imm defendants – False accusers too did not want to talk about anything (or very little) of Dean's public situation in Canada. Plaintiff(s) of course used Mr. Mooney likely past Racketeering activity resulting in him and his business partners being ejected from the State of Vermont. See act III.

197. In Volume 5, Part II, Mr. David Gervais, a New York based lawyer is "interviewed." Mr. Gervais himself says that he is not an Immigration Consultant, but clearly Mr. Gervais indeed was influenced by what was being said in all of these matters by Imm defendants and generally to the public – which Mr. Gervais is a member of - and that in and of itself qualifies for the *de minimus* requirement for affecting interstate and foreign commerce under the Commerce Clause. Just so it is stated, Mr. Gervais is not a defendant in this matter – but instead it shows and is Evidence that the Imm Defendants' reach goes into the United States, giving Jurisdiction to all of these matters with their false misrepresentations and other illegal acts – just on this point alone.

198. From the beginning, Congress intended to reach a wide range of schemes to defraud, and has expanded the concept whenever doubts arose. USC 18 U.S.C. § 1346 is also relevant to the scheme to defraud by wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicanery, or overreaching. As a general rule, the crime is done when the scheme is hatched and an attendant mailing or interstate phone call or email has occurred. Thus, the statutes are said to condemn a scheme to defraud regardless of its success and this applies to all of the discipline complaints that have been sitting idle and going nowhere for years.

199. It matters not who sent the email or mail or Fed Ex, ect or even if they were a low level employee carrying out the direction of management or a director. In United States v. White, 737 F.3d 1121, 1129 (7th Cir. 2013)(internal citations omitted)("There is no requirement that Ford personally cause the use of the wire. Rather, the third element of wire fraud is met if the use of a wire 'will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended'"), quoting Pereira v. United States, 347 U.S. 1, 8-9 (1954); United States v. Appolon, 715 F.3d 362, 370 (1st Cir. 2013); United States v. Andrews, 681 F.3d 509, 528-29 (3d Cir. 2012). Schmuck v. United States, 489 U.S. 705, 710-11 (1989)("To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot" ); United States v. Read, 710 F.3d 219, 227 (5th Cir. 2012); United States v. Gillion, 704 F.3d 284, 297 (4th Cir. 2012).

200. In short, the Imm defendants have used the organization to protect themselves and used the scheme to defraud by covering up Evidence and defraud an elected director who was elected by the membership to get rid of the 'alleged' corruption. The damage done to the Saga Enterprise from the wire fraud (on the discipline complaints alone) is with respect to Institutional Investors that the Saga Enterprise was engaged in that did an investigation

into Plaintiff Dean's background and found the fraudulent Immigration Discipline Complaints; these discipline complaints costs at a minimum an institutional account of between $50,000,000 to $100,000,000 USD for the Saga Enterprise (and definitely many more) and that translates into 2% fee per year plus approximately 20% of the profits per year.  Dean's track record was trending towards 25%. Treble damages to all defendants on this point alone for 5 years.

201. Without question – no matter how any of this 'sliced up,' there is conspiracy under 18 USC § 1962(d) and all defendants owe Plaintiff(s) treble damages for what has transpired and what they have conspired to do.

202. Here is the Evidence in this link below that shows that Imm defendants are the nexus between the RICO Predicate Acts and the damage that that they have inflicted upon Plaintiff(s) and Plaintiff(s) business and property – the Saga Enterprise. The Imm Defendants' Director Appointments Matrix to the regulator ICCRC - which is presented as a summary of how the Immigration Association-In-Fact members were able to hold onto the organization ICCRC – which is central to all of this – which is also against the CNCA as well as 18 USC § 1962(a)(b)(c)(d). Here is a summary of all of the director appointments that were also blasted out into the world in the ICCRC monthly bulletins and therefore every person named in these bulletins that had a hand in making the bulletin are also RICO defendants including the managers and directors for each month and/or year that they were participating in the scheme to fraud Dean and indeed the entire membership of ICCRC. There is a video that explains it all and how they are breaking all kinds of Canadian Laws and flowing from that, and just that alone, they are breaking many American laws each and every time that they reached into the United States for anything including sending a bill to any member and receiving payment, for instance. See also the link the Canada Not For Profit Corporations Act ("CNCA") that is referenced in the video. However, there are RICO Predicate Acts being committed:

> Contains: Video of how Defendants are breaking Canadian Federal Law, letter to the ICCRC board by Plaintiff, and Summary of their violations via director appointments, (and in turn 18 USC § 1962(a)(b)(c)(d).
>
> https://www.dropbox.com/s/vnkmq38y1n3tvjj/Every%20RCIC%20should%20consider%20this.pdf?dl=0
>
> **Canada Not For Profit Corporations Act:**
>
> https://www.dropbox.com/s/y9ef2ai4nr20kag/Canada%20Not%20For%20Profit%20Corporations%20Act.pdf?dl=0

203. See CNCA 130 for how to properly remove a director and it was not what the Imm defendants did.

204. Indeed, there is continuity and it is a function of duration of time over which the predicate acts were committed, numbered and varied, the number of victims and that there are separate schemes and distinct injuries - when combined all defendants become formable and sinister. It is Pure Evil what has transpired.

**Obstruction of Justice In the United States Becoming More Ripe By Other RICO Predicate Acts**

205. The Obstruction of Justice Act – sometimes referred to the Sarbanes – Oxley Act ("SOX") prohibits a wide range of conduct aimed at interfering with Federal Investigations. Dean was elected by the ICCRC – a Defendant – and then predictably Dean's appeal was denied by the ICCRC "appeal" committee on August 2, 2017.  Even though Dean had written about the third-party private corporation in the appeal, Dean was preparing to not only do a Judicial review in Canadian Federal Court but was also preparing to file charges in United States District Court against multiple ICCRC defendants for reaching into the United States and doing what they did (See Exhibit I herein with wire fraud allegations, for instance).

206. See Mr. Merv Hillier, broadcast to the world and indeed to approximately 400 US based immigration consultants that there was no third-party private corporation that existed and that funds were not being diverted from the memberships' treasury. See the below link starting at minute 30:01 and in particular right around minute 35:00; indeed after the Court reviews the additional link below that shows that there is a third party private corporation – that even directors once on the ICCRC board were not even allowed to ask questions about as it was kept hidden from the membership. Mr. Kewley it is said received a $2 Million payoff once Plaintiff Dean exposed the third-party private corporation; it means that every step that ICCRC has taken both internally and in legally settings has been an utter sham – both objectively and subjectively.

    https://www.dropbox.com/s/zprag1ul9a0wfdw/ICCRC%20Covering%20The%20Truth%21%20%20The%202016%20AGM%20analyzed..mp4?dl=0

207. This third party does exist according to the internal documents of ICCRC; see Appendix 28, 29, 30 & 31.

    https://www.dropbox.com/sh/b9c9n9glmxzdezf/AAAFe5cQA-seYk_MMpCG0XfNa?dl=0

208. The people that were involved in the fraudulent appeal process and "decision" of August 2, 2017 included Mr. Andrew Roman, the author of the report, (see Appendix 30 noted immediately above describing all the problems with said third party private corporation), and Mr. Roman (and his company Andrew Roman Professional Corporation) stood for the "Discipline Committee Panel," in Dean's appeal. Of course, Plaintiff Dean had mentioned the third-party private corporation as a main thrust in his appeal, but Mr. Roman and his corrupt and unsavory co-conspirators that directly benefited from said third party made sure that they buried the Evidence in a sham appeal decision and attempted to cover the rest as they wired these results to Dean in the United States. Of note, along with Mr. Roman, Ms. Patricia Harper, yet another legally self-dealing flexible lawyer, and was the one prosecuting Dean for all of the sham discipline complaints likewise reviewed all of the materials (like the video above) and Ms. Harper knew too knew that one of the subjects was the third-party private corporation that she, like Mr. Roman, was direct beneficiary of.   That Ms. Particia Harper and her company Keel Cottrelle LLP culpable of all of the discipline complaints with respect to wire and mail fraud – as it does Mr. Roman and his "professional corporation."

209. Also, involved in the scheme were Dean's own lawyers at Miller Thomson - that actual did some transactions for the Saga Enterprise out of the Calgary, Alberta, Canada office.  At the board trial of April 20, 2017 run by and organized were the reprobates Mr. Adam Stephens, Mr. Michael Pace, and Mr. Elliott Saccucci from the Toronto office where these hypocrites were told in no uncertain terms that they were indeed Plaintiff Dean's lawyers for the reason of Miller Thompson's work in Calgary, Alberta for the Saga Enterprise. What's more, every single one of the lawyers mentioned here up to and including this filing that are part of the Imm Enterprise and in turn extending to the False Accuser Enterprise are indeed Dean's own lawyers – defendants never properly removed Dean from his directorship because they knew that the membership would not have it.

210. Ms. Harper even said so when she arbitrarily imposed on Dean the stipulation that he could not run for election again for 5 years.  See Exhibit 84, in link in next paragraph.  At this point 18 USC § 1512(b) had become "ripe," and Plaintiff Dean was getting set to report it to the United States District Court and/or Federal Prosecutor.

211. John Risk and his corporation the John McNeil Risk Corporation became involved in these matters around this time as General Council and was really co-council along with Michael Pace.  Mr. Risk and Mr. Pace are sinister figures akin to the lawyer in the Godfather played by Mr. Robert Duvall; from the shadows Mr. Risk and Mr. Pace controlled the organization and helped it willing, knowingly, and wantonly dance around the law on several occasions to perpetrate the racketeering schemes up and including the time the time that CPA Ontario register and lawyer John Murray – another reprobate lawyer who also worked with Merv Hillier at CPA Ontario – took over the ICCRC in a quid pro transaction.  More about Mr. Murray later, but with respect to Mr. Risk he can be shown whispering into the ear of Mr. Chris Daw – the ICCRC chair and for good reason.  Mr. Daw could not do anything without asking a lawyer – Mr. Daw in particular was blasted in open parliament for overt witness tampering of Dean. See Appendix 1 – 18 in link for full details:

https://www.dropbox.com/sh/b9c9n9glmxzdezf/AAAFe5cQA-seYk_MMpCG0XfNa?dl=0

212. Hear Member of Parliament of former Federal Government of Canada Cabinet Minister Hon. MP Michelle Rempel blast Chris Daw in Open Parliament Committee:

https://www.dropbox.com/s/y8x9zulxynx6x22/RempelDawApril102017.mp4?dl=0

213. As for the board trial that followed in the wake of this, it does not seem quite fair that those committing the crimes get to be on the proverbial "jury" too. The larger point is that it seems that nothing 'scared' the Imm defendants in Canada because they have high level government bureaucrats and Courts giving them all kinds of cover and help. Let them try that like they did in Canada in United States District Court and commit perjury and subornation of perjury in official proceedings and try to intimidate witnesses and see how that goes for them.

214. For a primer on how it is that Dean was not properly removed under the Canada Not For Profit Act which is a central subject herein and part of the scheme to defraud see the this- link that was published by Miller Thompson

– but as morally and legally flexible lawyers it somehow did not make it into their appeal materials against Dean either (read: fraudulent concealment by Imm defendants).

https://www.dropbox.com/s/ka19qn9jl43zmib/Exhibit%2058%20-%20Miller%20Thompson%20Official%20How%20To%20Remove%20A%20Director%20Under%20The%20Act.pdf?dl=0

215. Here summary of the discipline complaints against Dean that are still up on the Imm defendants that is still up on their website today and have gone nowhere in nearly 5 years.

https://www.dropbox.com/scl/fi/oa8c4w9au1xjgsnz4ngzm/ICCRCComplaintsICCRCWebsiteComparison.xlsx?dl=0&rlkey=yy3pyo5idax1kt2o0tgz4nq2n

*https://iccrc-crcic.ca/complaints-professional-conduct/disciplinary-actions/*

## OBSTRUCTION BY DESTRUCTION OF EVIDENCE (18 U.S.C. § 1512(C))

216. The obstruction by destruction of evidence offense found in subsection 1512(c) is the creation of the Sarbanes-Oxley Act, and proscribes obstruction of federal administrative, judicial, or congressional proceedings by destruction of evidence.

More specifically, subsection 1512(c) provides that:
I. Whoever
II. corruptly
III. A.1.alters,
2. destroys,
3. mutilates, or
4. conceals
B. 1. a record,
2. document, or
3. other object, or
C. attempts to do so,
D. with the intent to impair the object's
1. integrity, or
2. availability for use
E. in an official proceeding, or
IV. otherwise
A. 1. obstructs,
2. influences, or
3. impedes
B. an official proceeding, or
C. attempts to do so
shall be fined under this title or imprisoned not more than 20 years, or both.

217. Section 1512(c) covers only obstructions committed or attempted with "corrupt" intent. Here, the courts have said that "corruptly" means "acting with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede, or obstruct the proceeding"; that it means "acting with consciousness of wrongdoing." It does not mean that the obstruction must be done with wicked or evil intent. It will be proven that there is a nexus between the defendants' destructive conduct and the proceedings defendants' sought to obstruct. The defendants' conduct must have had a relationship to the time, causation, or logic with the [official] proceedings; in

other words, confederating with the False Accuser Associates-In-Fact resulted in the natural and probable effect of interfering with the due administration of justice. As is generally true of attempts to commit a federal offense, attempt to violate subsection 1512(c) requires an intent to violate the subsection and a substantial step toward the accomplishment of that goal – and even without the False Accuser Association-In-Fact confederacy, Plaintiff Dean could take this to the United States District Court and /or Federal Prosecutor. Like subsection 1512(a) and 1512(b) offenses, subsection 1512(c) offenses are RICO and money laundering predicate offenses, and may provide the foundation for criminal liability as a principal, accessory after the fact, conspirator, or one guilty of misprision. If the federal judicial, administrative or congressional proceedings are obstructed, prosecution may be had in the United States even if the destruction occurs overseas, the proceedings are yet pending,[89] or the offender is unaware of their federal character.

## OBSTRUCTION BY HARASSMENT (18 U.S.C. § 1512(D))

218. Subsection 1512(d) declares:

I. Whoever,
II. intentionally,
III. harasses another person, and thereby
IV. A. hinders,
B. delays,
C. prevents, or
D. dissuades,
V. any person from
A. 1. attending or
2. testifying in
3. an official proceeding, or
B. reporting
1. a. to a law enforcement officer, or
b. judge
c. of the United States,
2. a. the commission, or
b. possible commission, of
3. a. a federal offense, or
b. a violation of the conditions of
i. probation,
ii. supervised release,
iii. parole, or
iv. release pending judicial proceedings, or
C. 1. arresting, or
2. seeking to arrest
3. another person
4. in connection with a federal offense, or
D. causing
1. a. a criminal prosecution, or
b. a parole revocation proceeding, or
c. a probation revocation proceeding
2. a. to be sought, or
b. instituted, or
3. assisting in such prosecution or proceeding, or

VI. attempts to do so

shall be fined under this title or imprisoned not more than 3 years, or both.

The fine for crimes punishable by imprisonment for not more than 3 years is not more than $250,000 (not more than $500,000 for organizations).[91] The subsection does not apply to obstructing a private individual who seeks information of criminal activity in order to report it to federal authorities.

219. Subsection 1512(d) harassment offenses are RICO and money laundering predicate offenses. The provisions of law relating to principals, accessories after the fact, misprision, and conspiracy apply with equal force to offenses under subsection 1512(d), as do the provisions elsewhere in §1512 relating to extraterritorial application, and abolition of the need to show pendency or knowledge of the federal character of the obstructed proceedings or investigation.

220. Clearly, all of the elements of 18 USC § 1512 are amply met herein.

**WITNESS RETALIATION**

221. Section 1107 of SOX 18 U.S.C. § 1513(e) states:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any federal offense, shall be fined under this title, imprisoned not more than 10 years, or both.

222. Congress outlawed retaliation against federal witnesses under §1513 at the same time it outlawed witness tampering under §1512. Although somewhat more streamlined, §1513 shares a number of attributes with §1512. The definitions in §1515 apply to both sections. Consequently, the prohibitions apply to witnesses in judicial, congressional, and administrative proceedings. There is extraterritorial jurisdiction over both offenses. In slightly different terms, both protect witnesses against murder and physical abuse—committed, attempted, conspired, or threatened. Offenses under the two are comparably punished.

223. Here, ICCRC knew that Plaintiff Dean was an American Citizen, living in the United States, running a hedge fund and it was his intention to take these matters to the American Authorities. Imm Defendants stopped that process. In Act III, there were already two USDC NJ matters ongoing in 2:19, 2:20 and ESX – L – 984 – 19 in NJ State Court, and Imm defendants definitely knew this as they did a deep background dive on Dean's background arguably three times; a quick google search of "Dean" and "Saga" top lists these various cases, and yet Imm defendants did not include them because they knew or should have known that among many other things that a violation of 18 USC § 1512 and 18 USC § 1513, were in and of themselves RICO Predicate Acts and in turn Money Laundering Offenses.

224. The elements of an offense under 18 U.S.C. §1513 are (1) knowing engagement in conduct; (2) either causing, or threatening to cause, bodily injury to another person; and (3) the intent to retaliate for, *inter alia*, the attendance or testimony of a witness at an official proceeding.

225. It also prohibits economic retaliation against federal witnesses – getting removed unlawfully from the Board not under the CNCA and while representing several hundred US Citizens and/or US Permanent Resident applies – especially since there is so much wire and mail fraud.

226. To satisfy the assault prong of §1513, the government must prove that the defendant bodily injured another in retaliation for the victim's testimony or service as a federal informant. The extent of the injuries need not be extensive, nor in the case of a threat even carried out. In fact, in the case of a threat, all that is required is the intent to communicate a retaliatory threat; it matters not that the defendant neither planned nor had the ability to carry out the threat. As a general rule, the intent to retaliate need not have been the sole motivation for the attack. Given the fact that the Imm defendants defied the Parliament of Canada – twice – it is not a stretch to think that they also thought that they could chase Plaintiff Dean into the United States to do what they have done in confederation with False accusers.

227. With respect to all of these matters and what will be revealed in Act II, 18 U.S.C. 1959 (violence in aid of a RICO enterprise), is also relevant here as is Conspiracy to Commit a Substantive Offense of §1512 and/or §1513.

228. The elements of conspiracy to commit a substantive federal offense are "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime."

229. There is also conspiracy to Obstruct Justice against all defendants and a word from SCOTUS on this matter (See United States v Russo 301 F. 3d 37, 43-47 (2nd Cir, 2002).

**NRS  199.150    ATTEMPT TO SUBORN PERJURY.**

230. "NRS" refers to the Nevada Revised Statute and it says that every person who, without giving, offering or promising a bribe, shall incite or attempt to procure another to commit perjury, or to offer any false evidence, or to withhold true testimony, though no perjury be committed, or false evidence offered, or true testimony withheld, shall be guilty of a gross misdemeanor.

231. All of the false discipline complaints and/or other legal matters involving Imm defendants and directed at Dean in Nevada apply. NRS 199.150 also appears to be a Nevada RICO Predicate Act.  Each Federal wire fraud act noted herein would generally also be a violation of NRS 199.150.

232. According to common law, robbery is defined as taking the property of another, with the intent to permanently deprive the person of that property, by means of force or fear; that is, it is a larceny or theft accomplished by an assault.[1] Precise definitions of the offence may vary between jurisdictions. Robbery is differentiated from other forms of theft (such as burglary, shoplifting, pickpocketing, or car theft) by its inherently violent nature (a violent crime); whereas many lesser forms of theft are punished as misdemeanors, robbery is always a felony in jurisdictions that distinguish between the two. Under English law, most forms of theft are triable either way, whereas robbery is triable only on indictment. The word "rob" came via French from Late Latin words (e.g., deraubare) of Germanic origin, from Common Germanic raub "theft".

233. This too applies to all Imm defendants who had a hand in ripping off Plaintiff Dean's directorship and under color of official right under terms of Extortion and then Robbery. More importantly the discussion will soon turn to Extortion and here is some primer case law to help illuminate the way.

234. Just before the April 20, 2017 "board trial," Plaintiff Dean was dealing the suicide of his young niece (Plaintiff Dean will submit this into the Record under seal if requested) who killed herself in Plaintiff Dean's living room (Greater Manila, Philippines) while Dean was away visiting the extended family in the Southern Philippines where this niece was originally from. Dean informed the board of this and Chris Daw did not think that was important and he extorted Dean – to come to the Burlington, Ontario, so Plaintiff Dean could defend against his criminal circus Daw created to cover up his own participation in the overall criminal scheme.  Just before the "board trial" began, Chris Daw asked Dean if he "wanted more time to attend the funeral" which meant flying back around the world. That was Dean's right to attend his own niece's funeral and that in and of itself was extortion by Daw et al. Then the robbery happened next when they took the directorship and covered up their own crimes under color of official right. See also Uni-ted Stales v. Arena, 180 F.3d 380, 395 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000) ("In order to foreclose any argument by an extortionist that the relinquishment of property in such circumstances was voluntary, the Hobbs Act definition of extortion simply prohibits the extortionist from forcing  the  victim  to make such a choice.").

> This Court recognized the broad scope of the Hobbs Act in *Stirone v. United States*, <u>361 U.S. 212, 215</u> (1960): "That Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference `in any way or degree.'"Several States had already defined the offense of extortion broadly enough to include the conduct of the private individual as well as the conduct of the public official. *See, e.g., United States v. Nardello*, <u>393 U.S. 286, 289</u> (1969) ("In many States . . ., the crime of extortion has been statutorily expanded to include acts by private individuals under which property is obtained by means of force, fear, or threats"); *Bush v. State*, 19 Ariz. 195, 198, 168 P. 508, 509-510 (1917) (recognizing that the state Penal Code "has enlarged the scope of this offense so as not to confine the commission of it to those persons who act under color of official right"); *People v. Peck*, <u>43 Cal.App. 638, 643</u>, <u>185 P. 881, 882-883</u> (1919) (In some States, "the statutory definitions have extended the scope of the offense beyond that of the common law, so as to include the unlawful taking of money or thing of value of another by any person, whether a public officer or a private individual, and this is so in California . . .").
> At least one commentator has argued that, at common law, extortion under color of official right could also be committed by a private individual. *See* Lindgren 875.*Evans v. United States*, 504 U.S. 255, 264 n.12 (1992).

## HOBBS ACT: ROBBERY, EXTORTION, AND BRIBERY

235. The Hobbs Act prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce "in any way or degree." Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371. The extortion offense reaches both the obtaining of property "under color of official right" by public officials and the obtaining of property by private actors with the victim's

"consent, induced by wrongful use of actual or threatened force, violence, or fear," including fear of economic harm. See this Manual at 2405 and Evans v. United States, 504 U.S. 255, 265, 112 S.Ct. 1181, 1188 (1992) (only a private individual's extortion of property by the wrongful use of force, violence, or fear requires that the victim's consent be induced by these means; extortion of property under color of official right does not require that a public official take steps to induce the extortionate payment).With respect to extortion through wrongful use of fear of economic loss, the element of fear that Section 1951 requires is satisfied where a victim reasonably fears economic loss. See United States v. Capo, 817 F.2d 947, 951 (2d Cir. 1987) (en banc).

236. Here it will be shown that there has been ever increasing acts of Extortion and Robbery starting with taking Plaintiff Dean's directorship and ending (so far) with the False Accuser Association-In-Fact trying to extort Dean for $875,000, and then again with 'discounted Extortion" of $180,000, and of course taking away Plaintiff(s) right to operate a hedge fund – in the wake of the false rape allegations et al – as examples of many troubling matters.

237. Proof of "racketeering" as an element of Hobbs Act offenses is not required. United States v. Culbert, 435 U.S. 371, 98 S.Ct. 1112 (1978). However, a violation of the Hobbs Act may be part of a "pattern of racketeering activity" for purposes of prosecution under the Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961, et seq.)

238. The Hobbs Act proscribes obstructing commerce by means of robbery or extortion or attempting or conspiring to do so or by use of fear and economic consequence. Attempted Hobbs Act robbery consists of an intent to rob, coupled with a substantial step toward that objective; conspiracy, a scheme of two or more to rob or extort; and accomplice liability, aiding and abetting a Hobbs Act violation of another. If that sounds like the 'Board Trial,' that is correct as it is both Extortion and Robbery.

239. It was extortion by making Dean come from the Philippines in the first place and became Extortion as soon as Dean found out that his own lawyers in the Saga Enterprise did not think anything about acting for ICCRC in the board trial was of consequence and that is when it became Extortion converted to Robbery under color of official right, and RICO Predicate Acts for all Imm defendants. The fact is, a Hobbs Act robbery case may also implicate violations of (1) the federal racketeering statute punishable by imprisonment for not more than 20 years and (2) the federal money laundering statutes, likewise punishable by imprisonment for not more than 20 years.

240. As a robbery look-alike, it outlaws the wrongful use of force or fear to induce another to surrender property to which the aggressor has no lawful claim. Dean knew when he was coming from the Philippines that Imm defendants were trying to harm the Saga Enterprise and it did come up at board trial.

241. As a bribery look-alike to extortion, it outlaws corrupt quid pro quos, i.e., a public official obtaining a payment, to which he is not entitled, in anticipation of the performance of an official act. The proscriptions also apply to

attempt or conspiracy to commit either variety of Hobbs Act extortion and may implicate accomplice liability (aiding and abetting) as well. So the board trial included extortion, robbery and bribery. A "hat trick" of predicate acts of racketeering in one scheme to defraud.

242. It should be noted that a Hobbs Act conspiracy does not require proof of an overt act. See United States v. Salahuddin, 765 F.3d 329 (3d Cir. 2014). Further, if the defendant is charged with conspiracy to obtain something of value under color of official right, the government is not required to establish that the defendant actually obtained something of value. See United States v. Salahuddin, 765 F.3d 329 (3d Cir. 2014). The Third Circuit also held that "the specific benefits that the members of the conspiracy sought to obtain is not a required element of Hobbs Act conspiracy;" accordingly, the trial court does not have to instruct the jury specifically as to unanimity as to the benefit sought. Salahuddin, 765 F.3d 329. The Third Circuit has held: [A] conviction under the Hobbs Act requires proof beyond a reasonable doubt that (1) the defendant knowingly or willfully committed, or attempted or conspired to commit, robbery or extortion, and (2) the defendant's conduct affected interstate commerce. See United States v. Powell, 693 F.3d 398 (3d Cir. 2012). In United States v. Traitz.

243. The board resolution is that evidence (see below).

244. In addition, the Supreme Court has held that a public official may be convicted of conspiracy to obtain something of value under color of official right based on the official's agreement with the victim of the Hobbs Act extortion. The government need not prove that the conspirators sought or obtained money from someone outside the conspiracy or that each member of the conspiracy was capable of carrying out the Hobbs Act extortion. Ocasio v. United States, 136 S.Ct. 1423 (2016).

245. In United States v. Kenny, 462 F.2d 1205, 1229 (3d Cir. 1972), the Third Circuit held that the following instruction properly defined extortion under the statute: The term 'extortion' means the obtaining of property from another with his consent induced either by wrongful use of fear or under color of official right. The term 'fear,' as used in the statute, has the commonly accepted meaning. It is a state of anxious concern, alarm, apprehension of anticipated harm to a business or of a threatened loss. * * * Extortion under color of official right is the wrongful taking by a public officer of money not due him or his office, whether or not the taking was accomplished by force, threats or use of fear. You will note that extortion as defined by Federal Law is committed when property is obtained by consent of the victim by wrongful use of fear, or when it is obtained under color of official right, and in either instance the offense of extortion is committed.

246. A conviction may be based on proof that the official accepted a "stream of benefits" in exchange for one or more official acts. See United States v. Donna, 366 F. App'x. 441 (3d Cir. 2010) (nonprecedential) (citing United States v. Kemp, 500 F.3d 257, 282 (3d Cir. 2007)). The government may show that the benefit was meant to be given to the public official directly, or to a third party who is not a public official.

247. The coercive element is provided by the existence of the public office itself. Evans v. United States, 504 U.S. 255, 265 (1992); United States v. Fountain, 792 F.3d 310 (3d Cir. 2015); Antico, 275 F.3d at 255 n.14; United States v. Jannotti, 673 F.2d 578, 594 (3d Cir. 1982). The government need not prove that the defendant acted exclusively with corrupt intent. See United States v. Donna, 366 F. App'x. 441 (3d Cir. 2010) (non-precedential) (remarking that trial court's "dual motive" instruction stating that a person commits extortion under color of official right when that person has "a partly corrupt intent and a partly neutral intent" constituted a correct statement of the law). In McCormick v. United States, 500 U.S. 257 (1991), the Court held that, when an elected official is charged with extorting campaign contributions, the government must prove "an explicit promise or undertaking" by the public official.

248. Hurt feelings and being insulted for covering up crime will not do as a defense and as the reasons given by the Imm defendants as the reasons for Dean's removal from the board. The circumstances also are in large part also relevant here and that is something that the Jury can consider.

249. Alas – there was also a quid pro quo aggravated "Board Resolution" 'offer' that required Dean not to speak with any elected Officials concerning the ICCRC. Imm defendants literally tried to bribe Plaintiff Dean to "behave," and in essence join their scheme. 18 U.S.C. § 875(d) is also at play here and those elements that have been satisfied are:

> Interstate transmission of extortionate threats, in violation of 18 U.S.C. §875(d). Under §875(d), a person is criminally liable if he, "with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee." In this case, both parties concede that the definition of "extortion" under the Hobbs Act also applies to the §875(d) counts. Sekhar v. United States, 570 U.S. 729, 732 n.1 (2013).

250. It is aggravated-three-strike-aggravated-bribery-your-out Hobbs Act violations (or hat trick as above) that negatively affected interstate and foreign commerce because Plaintiff Dean would not agree to become a criminal with Imm defendants. See Appendix 11 - 18.

251. There is a letter from the Parliament of Canada to ICCRC that essentially says stop the witness tampering and director Balbachir was disgusted with the Imm defendants and resigned the next day from the board. The three board resolutions were all sent to Dean via email (read more wire fraud) and likely crossed either Alaskan, Hawaiian, or Guam airspace and/or facilities along the way.  ICCRC used Microsoft and that too probably took a little trip through Seattle enroute.

https://www.dropbox.com/sh/b9c9n9glmxzdezf/AAAFe5cQA-seYk_MMpCG0XfNa?dl=0

252. Moreover, in addition to the racketeering and money laundering, the facts in a Hobbs Act extortion case may also implicate the Travel Act, which condemns interstate travel to promote an extortion or bribery scheme and that carries a penalty of imprisonment for not more than five years. Both Mr. Dennis' were going in and out of

the State of New York and traveling into Canada for this scheme, and during the entire scheme(s) to defraud (E Dennis left to England in or around 2018).  A record of their entry and department from Canada/USA will supplement the record.

253. A word from SCOTUS on Extortion under Color of Official rights which includes written bribery, robbery, and extortion and conspiracy to commit bribery, robbery, and extortion from the Imm defendants and in all cases: robbery, extortion, and bribery there is quid pro quo.

> In order to make out a Hobbs Act violation under the "color of official right" prong, there is no need to prove that any force or threat of force was used. Nor need the defendant make a demand for payment. In short, the passive receipt of a bribe is sufficient. McCormick v. United States, 500 U.S. 257 (1991)

254. After the removal, Imm defendants blasted the unlawful removal on the internet and held it out to be somehow legitimate and this significantly slowed down the Saga Enterprise because now Plaintiff Dean was becoming embroiled in legal battles for Imm defendants' criminality. The private individuals involved in the color of official right extortion can be charged under RICO because they were conspiring with the "official" ICCRC board and management members who control a great deal of the Imm Enterprise.

255. Of note is that the board was nearly evenly divided before the Board Vote and indeed Chris Daw tried to remove Plaintiff Dean a number of times and director Balbachir blocked that unsavory effort.  Peter Perram, under terms of conflict of interest was brought on the board as an "extra" vote, and was done so under terms of conflict of interest that was discussed at length on the board, but it did not matter to the dishonest Imm defendants.

256. At board trial, Ms. Gabrielle Fortin, changed her vote at the last minute and surprised everyone and this was the difference in the vote.  Fortin betrayed Deana and the membership and is literally the 'Benedict Arnold' of this entire ruse and if not but for her 'turn coat' actions this matter may have turned out much differently. Plaintiff Dean believes there is much more to the story as Ms. Fortin herself resigned from the board a little while later. Discovery will be helpful in this matter.

257. The elements of Hobbs Act Robbery are:

(1) Whoever

(2) in any way or degree

(3) (a) obstructs,

(b) delays, or

(c) affects

(4) (a) [interstate or foreign] commerce or

(b) the movement of any article or commodity in commerce,

(5)(a) by robbery, *i.e.*,

(i) [knowing and willful]

(ii) unlawful taking or obtaining of personal property

(iii) (A) from the person or

(B) in the presence of another,

(iv) against his will,

(v) by means of actual or threatened (A) force,

(B) or violence, or

(C) fear of injury,

immediate or future,

(vi)(A) to his person or property,

(B) or property in his custody or possession,

(C) or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining

or (b) attempts or

(c) conspires so to do, or

(d) commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section

shall be fined under this title or imprisoned not more than twenty years, or both.

258. The Hobbs Act defines "commerce" as (1) commerce into or out of a state; (2) commerce into, out of, or within the District of Columbia or any U.S. territory or possession; or (3) all other commerce over which the United States has jurisdiction." The Supreme Court has acknowledged that the Hobbs Act's jurisdictional language "manifests a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence." Nevertheless, the Constitution confines Congress's legislative authority under the Commerce and Necessary and Proper Clauses to enactments regulating (1) the channels of commerce, (2) the instrumentalities of commerce, or (3) the activities that substantially affect commerce. "[A]ctivities within this third category—those that 'substantially affect' commerce—may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal."

259. Here it is a double violation of interstate commerce because it negatively affected the Saga Enterprise and also negatively affected the hundreds of U.S. based Immigration Consultants here under the control of Imm defendants. Who knows how much they have been affected negatively? Nevertheless,  in the case of the Hobbs Act where Congress sought to exercise its Commerce Clause powers to the fullest, the courts have held that the impact on commerce in an individual case may be minimal, even *de minimis*.

260. Messing with an International Hedge Fund that was welcomed into the industry because of the new and innovative ideas that Plaintiff(s) brought to the industry and about to launch with great anticipation would certainly qualify with negatively affecting interstate and foreign commerce.

261. It also qualifies as bank fraud as will be discussed later.  For now, here are some elements of the crimes. To be convicted of an 'attempt,' a defendant must: (1) have the specific intent to engage in the criminal conduct with which he is charged with attempting; and (2) have taken a substantial step toward the commission of the offense that strongly corroborates his criminal intent. As a general rule, conviction does not require successful commission of the attempted offense. Factual impossibility and mistake of fact are not defenses to an attempt to commit a Hobbs Act robbery as long as the defendant intended to commit the substantive offense and took a substantial step to the satisfaction of that intent acting on facts as he believed them to be. Nor is abandonment a defense once a substantial step has been taken. This also qualifies for all of that business of attempting to send Dean to prison for the rest of his natural life and then *arranging for his permanent silence by all defendants.*

262. All defendants have had a chance to withdraw on multiple occasions and they did not – except for Ms. Marskell.

263. It has been 4 years since April 20, 2017 since Imm defendants committed the Hobbs Act violations against Plaintiff Dean and bribed Richard Dennis (and he accepted it in writing and blasted it out to the world in the ICCRC bulletin). It further means that because the Imm defendants have violated 18 USC § 1962(a)(b)(c)(d) and by virtue of RICO being a money laundering statute but also because the unlawful proceeds have been funneling into the United States each and every year for 4 years in excess of $10,000 USD to Mr. Dennis making all Imm defendants liable for conspiracy to launder money and this also is extraterritorial jurisdiction as well as bank fraud and conspiracy to commit bank fraud as described below. See Exhibit 23, pg 9 in link below of Mr. Dennis accepting his bribe across international lines in writing and then the Imm defendants proudly blasting it across the world and into the United States.

https://www.dropbox.com/home/HVD/Exhibits%20and%20Appendix

264. The obtaining-property element of Hobbs Act extortion consists of "'not only the deprivation but also the acquisition of property.' ...That is, it requires that the victim part with his property and that the extortionist gain possession of it." Moreover, "the property must therefore be transferrable"; it must be something of value that can be exercised, transferred, or sold. Otherwise, the property may be tangible or intangible, lawful or contraband.

265. Here are the elements to a Hobbs Act Extortion Violation:

    (1)Whoever
    (2) in any way or degree
    (3) (a) obstructs,

(b) delays, or
(c) affects
(4) (a) commerce or
(b) the movement of any article or commodity in commerce,
(5)(a) by extortion, *i.e.*,
(i) [knowing and willful]
(ii) obtaining the property of another
(iii) with his consent
(iv) (A) induced by wrongful use of actual or threatened
(I) force, or
(II) violence, or
(III) fear of injury, or
(B) under color of official right
(b) attempts or
(c) conspires so to do, or
(d) commits or threatens physical violence to any person or property in furtherance of a plan or purpose
to do anything in violation of this section
shall be fined under this title or imprisoned not more than twenty years, or both

266. Robbery-like extortion, extortion by means of force or fear, involves the wrongful use of force, violence, or fear to induce the victim to surrender his property. Bribery-like extortion, extortion under color of official right, involves the misconduct of public officials. Bribery-like extortion demands proof that a corrupt official received something to which he was not entitled, knowing that it was the *quid pro quo* for his performance of an official act. Extortion by means of wrongful force, violence, or fear, on the other hand, requires evidence that the defendant acted knowingly and willfully, and is marked by the prerequisite that the force, violence, or fear be wrongful.

267. All of these elements are herein.

268. The Supreme Court's 1973 labor violence case, *United States v. Enmons*, explained that the word "wrongful" as used in the Hobbs Act extortion provision refers to the use of force, violence, or fear to obtain property to which the extortionist has no lawful claim. Thus, the Hobbs Act applies to personal payoffs or feather-bedding extorted by union officials, but it does not reach "the use of violence to achieve legitimate union objectives, such as higher wages in return for genuine services which the employer seeks."

269. Clearly, ICCRC had no lawful right to Dean's directorship because even Miller Thompson, running the board trial put out a brochure on the subject a few months after the board trial. See Exhibit 58 in link below and as above. Notice as well that when Mr. Richard Dennis took his bribe Imm defendants gave "notice" to the ICCRC membership months after the fact of Dean's removal and not in accordance with the CNCA 131 – the Imm defendants sure made it seem like it was legitimate – it was not. It was more fraud and wire fraud and part of the scheme to defraud Dean by Mr. R. Dennis and New York resident.

https://www.dropbox.com/home/HVD/Exhibits%20and%20Appendix

270. Side note: this link above is used repeatedly and henceforth is called the "Exhibits and Appendix" Link. Also, when in the link kindly hit the word header "Name" to sort the files into Exhibit 1, Exhibit 2, Exhibit 3, and so on.

271. The Hobbs Act does not define the term "official act," but the bribery statute does. In *McDonnell v. United States*, the Supreme Court turned to the bribery statute's definition of "official act" in its summary of what constitutes an official act for purposes of Hobbs Act extortion: In sum, an "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before the public official. To qualify as an 'official act,' the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy." Or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit the definition of "official act.

272. The "board trial" is not provided for anywhere in the ICCRC By-Laws nor in the CNCA. but how to remove a director was as shown below.  To report it fairly, Ms. Melanie Wen, Mr. Stanislav Belivici and Ms. Latifa El – Ghandouri all voted *against* the removal of Plaintiff Dean from his directorship.  Moreover, despite the fact that Ms. El-Ghandouri sent Plaintiff Dean some emails with respect to the "Board Resolution," Plaintiff Dean believes that Ms. Ghandouri should not be held accountable for these acts as she ultimately did not agree to carry out the underlying scheme at that time.  The reason that Ms. Wen, Mr. Belivici, and Ms. El-Ghandouri are Imm defendants is that they have been at the Immigration Enterprise for quite sometime now as directors of the Immigration Enterprise, and it will be illuminative to see what activities that they have played form April 20, 2017 to date and as such this will be their opportunity to get out of this matter (only at the front end of this process).

273. Mr. Ali Belbachir is a witness and he definitely voted against the Board Resolution and then resigned the next day.  Mr. Sadara Singh Chera is also a witness.

274. As for as elements to be satisfied with respect to "Property" it has been held to be "any valuable right considered as a source of wealth." United States v. Tropiano, 418 F.2d 1069, 1075 (2d Cir. 1969) (the right to solicit garbage collection customers). "Property" includes the right of commercial victims to conduct their businesses. See United States v. Zemek, 634 F.3d 1159, 1174 (9th Cir. 1980) (the right to make business

decisions and to solicit business free from wrongful coercion) and cited cases). It also includes the statutory right of union members to democratically participate in union affairs. See United States v. Debs, 949 F.2d 199, 201 (6th Cir. 1991) (the right to support candidates for union office); United States v. Teamsters Local 560, 550 F. Supp. 511, 513-14 (D.N.J. 1982), aff'd, 780 F.2d 267 (3rd Cir. 1985) (rights guaranteed union members by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411).

275. Property also includes International hedge funds on the "launching pad."

276. In United States v Hyde the court found that an implied threat under official right by the defendant State Attorney General, one in a position to cause economic harm to his victims, was sufficient to sustain a Hobbs Conviction. It should be emphasized that the prosecution's theory in Hyde could have been predicated on the "under color of official right" language of the Hobbs Act by relying on the leverage and coercion implicit in the defendant's official position rather than on proof of actual threats or fear.

277. Clearly the board resolution and the "board trial" were meant to induce Plaintiff Dean's reasonable fear of economic harm in order to induce Dean consent to give up property (directorship) if he did not join their criminality. Indirect effects on such commerce are also sufficient, as for example, where the obtaining of property and resulting depletion of the victim's assets decreases the victim's ability to make future expenditures for items in interstate commerce.

278. And thusly all of the elements of extortion are met at common law as well under the test of:

1. The offending person must be a public officer.
2. There must be a "taking" by color of office.
3. There must be a receipt of money or some other thing of value.
4. The money or thing of value must have been "willfully and corruptly demanded and received."

279. Most courts have held that a Hobbs Act violation does not require that the public official be the recipient of the benefit of the extortion, and that a Hobbs Act case exists where the corpus of the corrupt payment went to a third party. The Imm defendants rolled out a policy where the second-place finisher (the loser) in election would be the next one appointed and in this case it was designed specifically for Mr. Richard Dennis. Of note is that the Imm defendants also disenfranchised more than ½ of the US based Immigration Consultants that elected Plaintiff Dean and indeed worldwide and that is (election) wire fraud as well.

**INHERENT CONTEMPT OF CONGRESS & CONTEMPT OF COURT AT CONGRESSIONAL BEHEST**

280. As a quick aside and because this matter includes several high-level members of the Canadian Government's Bureaucracy as part of the Imm Defendants the following may give pause to those trying to influence the Congress or a US Federal Judge from north of the 49th Parallel. Congress's exercise of its inherent power to

punish for contempt of its authority predates the 1857 enactment of the original version of its statutory contempt provisions.

281. There are two statutory provisions available to permit Congress to call upon the courts to overcome the resistance of witnesses in congressional proceedings. One covers immunity orders where the witness has claimed his Fifth Amendment privilege against self-incrimination. Continued recalcitrance after the grant of immunity is punishable under the court's civil and criminal contempt powers. The second permits the court enforcement of a Senate subpoena but apparently only to the extent of the court's civil contempt powers. The statute has always been recognized as a supplement rather than a replacement of the inherent power. Not much is to be made of this at this time other than it is so stated and therefore any member of Congress can invoke it in these matters if s/he so deems necessary if in fact there are whispers that someone in Canada is trying to reach over into the US and influence a member of the Congress et al.

282. So it is stated and clear, the USDC, from what Plaintiff(s)' can tell by reading the newspapers et al for decades, *do not let themselves get influenced by anyone.*

283. State Extortion laws also apply for the states of Nevada, Florida, New Jersey and New York as will be detailed herein and Defendants can be charged with both Federal RICO and/or State RICO (or equivalent) laws under as it is not considered 'double jeopardy.' The Imm defendants were directing all of their correspondence to Plaintiff Dean in Nevada and "Nevada" is scribed over numerous documents sent to Dean. The Model Penal code also provides for jurisdiction in this instance as well.

284. NRS 205.320 Extortion/blackmail. A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property, or to influence the action of any public officer, or to do or abet or procure any illegal or wrongful act, whether or not the purpose is accomplished, threatens directly or indirectly:

> -To accuse any person of a crime;
> -To injure a person or property;
> -To publish or connive at publishing any libel;
> -To expose or impute to any person any deformity or disgrace; or
> -To expose any secret,

285. Clearly Plaintiff Dean and Plaintiff(s)' property and business – the Saga Enterprise – has been injured by Imm Defendants and under Nevada Law has "destroy[ed] a valuable security via False accuser. To help the Saga Enterprises' destruction along the way, Imm defendants also in turn published under terms of clear connivance, removing Dean from the ICCRC board, and in turn to expose or impute Dean to disgrace for calling out the Imm defendants on their criminality (which ultimately turned out to be racketeering activity). See Link below showing

the injury and email blast out to the entire ICCRC membership worldwide and of course into the United States to all ICCRC members here who all relied on this email being somehow legitimate – it was not:

https://www.dropbox.com/s/arqioqrtyfkp7k1/Dean%20removal%20from%20the%20board.pdf?dl=0

286. The "take aways" from the email are that it states that Dean is being removed from the board under section 45.1(l) of the ICCRC By – Law.  That By – Law can be found in Exhibit 5 of the Exhibits and Appendix link.  Clearly 45.1(l) is about qualifications of a member to serve as a director *before* they become a director and not after. And in any event, Miller Thompson, the law firm running the sham board trial also noted in November 2017 that the proper way to remove a director was under the CNCA 130 as well as to give member notice under CNCA 131.  In the blast email that Dean had been removed, Imm defendants gave notice after the fact and after the removal. See Miller Thompson's "how to remove a director" Exhibit 54 in the Exhibit and Appendix link.

**NEVADA RICO**

287. What Imm defendants should have done was give notice that they were racketeering under Nevada law when they directed this lawlessness at Plaintiff Dean in Nevada (and many members that relied on their email worldwide). Nevada RICO, is very similar to Federal RICO has the elements of: It is unlawful for a person:

   a. Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of:
      i. Any title to or any right, interest or equity in real property; or
      ii. Any interest in or the establishment or operation of any enterprise.
   b. Through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.
   c. Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:
      i. The affairs of the enterprise through racketeering activity; or
      ii. Racketeering activity through the affairs of the enterprise.
   d. Intentionally to organize, manage, direct, supervise or finance a criminal syndicate.
   e. Knowingly to incite or induce others to engage in violence or intimidation to promote or further the criminal objectives of the criminal syndicate.
   f. To furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate.
   g. Intentionally to promote or further the criminal objectives of a criminal syndicate by inducing the commission of an act or the omission of an act by a public officer or employee which violates his official duty.
   h. To conspire to violate any of the provisions of this section.

288. All of the elements of this have been amply alleged herein but will be done again briefly here and then elsewhere once again. The Immigration Association-In-Fact defendants and the False Accuser Association-In-Fact defendants have both separately and in a combined venture operated their Enterprise(s), through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise. The Associate(s)-In-Fact are

either employed by or associated with the enterprise(s) to conduct or participate, directly or indirectly, in the affairs of the enterprise through racketeering activity to intentionally to organize, manage, direct, supervise or finance a criminal syndicate, knowingly to incite or induce others to engage in violence or intimidation to promote or further the criminal objectives of the criminal syndicate and to furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate.

289. What is additional in the Nevada RICO laws are the "criminal syndicate" portion of the law where it states "Intentionally promote or further the criminal objectives of the criminal syndicate by inducing the commission of an act or the commission of an act by a public officer or employee which violates his official duty." A criminal 'white collar' syndicate has members coming and going and that is certainly the case with the Imm defendants.

290. It is of note that the Imm defendants did not accuse Dean of any crimes or cover up and indeed used the term "Bullying and Intimidation," which the False Accuser Association-In-Fact members also used in some of their pleadings in Court.  Pray tell – how is it that the False accusers in 2019 used the term "Bullying and Intimidation" in their Court documents if there is not a connection between the Canadian Matters and the USA matters?  A Very "Jury Matter To Decide." Also, the Imm defendants' email blast is yet another instance of wire fraud on April 21, 2017 at 5:14 PM.

291. Conspiracy to commit extortion NRS 199.480(2) – Nevada RICO Predicate Activity - is equally as troubling and has a wide sweep. The common law definition is rather simple: conspiracy is an agreement made between two or more people for any unlawful purpose. What this means is any agreement made to commit a crime is a crime in and of itself, whether or not any actual crime ever takes place. Further, the prosecution can charge someone for conspiracy without any evidence of the agreement itself. This means that even though the prosecutor might not have any evidence of a written or verbal agreement, a defendant can still be charged with conspiracy based on circumstantial evidence such as records of telephone calls and text messages, video footage of coordinated actions between people at the scene of a crime, or even simple hand or head gestures around the time a crime is being committed. All Imm defendants ought to keep this in mind as Act II and Act III are read. Nevada prosecutors are specifically allowed to prosecute people for conspiracy whether or not any "overt act" has been made in furtherance of the crime agreed upon in the conspiracy. Technically, the crime of conspiracy has been committed as soon as the agreement has been made, even if the parties change their mind before taking any steps toward committing the crime.

292. Other Nevada RICO activity is attempted murder – NRS 200.030 and Involuntary Servitude NRS 200.463 – also have the corresponding conspiracy laws.  Attempted murder under NRS 200.030 element are: the defendant(s) intended to kill the victim, **and the defendant(s) took a direct step towards carrying out the killing**. Try, just try, to convince the Jury that by sending him to prison under false pretenses, that all defendants are not culpable, and that

indeed there was not intent to kill. Confederating with the False Accuser-In-Fact to send Plaintiff Dean to NJ State Prison for the rest of his natural life, if he survived a 'natural life,' is a good step towards achieving Imm defendants' goal of 'attempted murder.'

293. NRS  200.463 - Involuntary servitude

1.    A person who knowingly subjects, or attempts to subject, another person to forced labor or services by:
  (a)  Causing or threatening to cause physical harm to any person;
  (b)  Physically restraining or threatening to physically restrain any person;
  (c)  Abusing or threatening to abuse the law or legal process;
  (d)  Knowingly destroying, concealing, removing, confiscating or possessing any actual or    purported passport or other immigration document, or any other actual or purported government identification document, of the person;
  (e)  Extortion; or
   (f)  Causing or threatening to cause financial harm to any person,
is guilty of holding a person in involuntary servitude.

294. Imm defendants with respect to conspiracy NRS 200.463 are culpable of sub sections (c), (d), (e) & (f). To wit:

(c) – clearly all of the unlawful discipline complaints made to put Plaintiff Dean in "involuntary servitude" to keep him busy while Imm defendants violated Nevada RICO Enterprise Laws (see below).

(d) – Imm defendants recently made Dean surrender his ICCRC membership ID – which Dean sent through the USPS to Imm defendants in Canada and Dean captured Evidence of this.  Note: Dean had thought the ID was lost long ago in the Philippines in a typhoon and it was recently found and in turn Dean submitted to the extortion and returned the ID to Ms. Daniel Bastarache, ICCRC's internal "lead lawyer," see Act III.

(e) – Extortion as defined by NRS 205.320 Extortion/blackmail for not only this ID in (d) but also of course for everything noted above with respect to the "board trial," and "board resolutions" et al as it was all directed at Dean in Nevada.

(f) – Clearly the removal of the ID and stripping Dean and/or suspending Dean of his Immigration License in Canada, removing him from the board and the discipline complaints were all designed to threaten and inflict financial harm onto Dean as well as the Saga Enterprise.  All of these offenses are done under aggravating circumstances.

295. Under NRS  199.490 (conspiracy), an  overt act is not necessary.   In any such proceeding for violation of NRS 199.480, it shall not be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy or combination – but that most of these matters are all in writing sure helps Plaintiff(s)' case.

296. Chris Daw and his corrupt friends would not allow Plaintiff Dean to do the job that he was elected to do, and Mr. Daw expressly said that Dean was not the ombudsman (after Dean cheekily appointed himself to this 'plumb' position. Perhaps Imm defendants will not object to SCOTUS appointing Plaintiff(s) as "Private Attorney Generals" in this RICO matter to press the issue since Chris Daw found that Dean being the "ombudsman" was inappropriate.

In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act.  Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited

practices. **The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity.** [3] *Id.*, at 187 (citing *Malley-Duff*, 483 U.S., at 151 ) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate"). The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better.[Rotella v. Wood *et al.*, 528 U.S. 549 (2000)].

297. Plaintiff(s) at this point are dedicated to this end and really have nothing better to do and Dean in particular loves the RICO statute(s).

298. Here are some of the defenses to Nevada Conspiracy:

- No Agreement was made. It is not a violation of the conspiracy statute to merely discuss committing a crime, as long as no agreement was made to actually commit one.
- Lack of intent. Merely speaking words of agreement to commit a crime is not a violation of the conspiracy statute. For example, an undercover police officer may speak words that indicate an agreement to commit a crime in a sting operation, but as the officer never intended to enter into a criminal agreement, he did not commit conspiracy. Likewise, if friends speak words in jest such as "Who wants to rob a bank?" and "I'm in!", the criminal charge of conspiracy would not apply as long as there was no general intent to break the law.
- Lack of evidence. Even if the state has enough evidence to show that it is more likely than not that a person has committed conspiracy, it is not enough to convict. The prosecutor must show beyond a reasonable doubt that the crime was committed, which is a very high burden of proof.
- Evidence is inadmissible. If the evidence that the prosecution wants to use to convict someone was obtained through an illegal search and seizure by law enforcement, a criminal defense attorney in Nevada can argue to the judge that the evidence should be thrown out. If the Las Vegas court agrees with the defense lawyer, the evidence will be suppressed and the prosecutor may not have enough evidence left to convict the accused.

299. It appears that Imm defendants are fresh out of defenses for what transpired as of August 2, 2017. When the mounting written Evidence is given to the Jury that connects Imm defendants with the Pure Evil that transpired in New Jersey this is going to become an entirely different matter for all defendants.

300. All of the elements for Nevada Extortion and Conspiracy to commit Extortion are a lower bar that than the Federal bar under the Hobbs Act.  Both statutes have been violated by all Imm defendants with respect to all matters up to and including August 2, 2017 – the appeal.   Nevada RICO can be substituted for Hobbs Act if necessary and the Nevada state matter can continue as well.  Congress really meant it when they wanted to eliminate racketeering activity. Additionally, since the "Board Trial" was not even a legal nor lawful proceedings the State of Nevada can help as well.

301. Another Nevada RICO act that clearly is present here is the following: NRS 205.377   Multiple transactions involving fraud or deceit in course of enterprise or occupation. A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ

a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:

    (a) The person knows to be false or omitted;
    (b) The person intends another to rely on; and
    (c) Results in a loss to any person who relied on the false representation or omission, in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $1,200. Each act which violates subsection 1 constitutes a separate offense.

302. Returning back to the three board resolutions directed at Plaintiff Dean in Nevada, it is of note that that the Board Resolution has no date on it, no to and from, and a big 'water marked" "confidential" plastered sideways over it. Imm defendants knew the board resolution was against the law in Canada and indeed in the United States.  The Imm defendants intended to have Plaintiff Dean rely on the board resolution as legitimate. The grave man of the offense and the loss was to the membership of the ICCRC that relied on the removal of Plaintiff Dean from the board as somehow legitimate. Dean knew the first instant that he read the board resolution that it was utter fraud.

303. The same analysis applies to all of the "discipline complaints," where Plaintiff Dean relied on the complaints as somewhat legitimate until of course the Sascha-Kate Marskell emails revealed that it was a scheme to defraud. There are dozens and dozens of aggravated violations of NRS  205.377. Imm defendants left out the fact that most of the individuals that filed complaints were recruited, and shown how to fill out the discipline complaint and indeed were led through the entire expedited process so that Imm defendants could retain control of the Immigration Enterprise.

304. NRS 205.220 – Nevada "Grand Larceny" Laws are also predicate Nevada RICO activity. In the United States a person(s) can be charged with the multiple crimes/violations if the elements meet the different crimes as they do here and besides – with all of the discipline complaints that Plaintiff Dean received for essentially being rude (in chasing down criminals) it in turn seems appropriate to help Imm defendants meet Federal and State laws on multiplicative and redundant, but *slightly different*, ways.  Nevada is already being rolled out here but Arizona (thanks to Ms. Daniel Basatrache and her criminality, see part III), California (See Act III), Connecticut (See Act II), Florida (See Act II), New Jersey (See Act II), New York (See Act II and Act III) will also follow and all defendants are liable for those RICO statutes too.

305. With respect to NRS 205.220, Nevada law defines **grand larceny** (also called "grand theft") as deliberately stealing property valued at $1,200 or more. If the value of the stolen property is less than $1,200.00, the offense would be "petit (petty) larceny." Stealing means taking property that belongs to another person or entity, without the rightful owner's permission. As stated by NRS  205.300 (1), the punishments and penalties for embezzlement are the same as those for larceny.

306. Grand Larceny is essentially robbery without the threat and taking Dean's board seat is completion of the crime. But Nevada has robbery too and that also is met for the same act. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.

307. *That there are so many criminals with law license involved in this overall scheme a word from the Nevada Court seems appropriate here. Litteral v. State*, 97 Nev. 503, 508-09 (Nev. 1981).

> SCR 111(2) defines a "serious crime" as being any felony, or any crime less than a felony a necessary element of which is "improper conduct as an attorney, interference with the administration of justice . . . misrepresentation, fraud . . . deceit . . . or an attempt or a conspiracy or solicitation of another to commit a `serious crime.'" In the proceedings below, counsel for the State Bar argued that Sloan's conviction was based on fraudulent conduct committed by Sloan. Specifically, counsel argued that Sloan was aware at the time he prepared the bill of sale for Brinkerhoff that a fraud was being committed, and that Sloan was therefore a knowing participant in the fraudulent act. The evidence in the record, however, clearly indicates that Sloan did not have knowledge of the fraudulent act until at least two months later when he was contacted by Lamb and advised of the stolen nature of the farm equipment and of the fact that Michael Anderson had posed as William Larson. Further, Sloan's *Alford* plea was specifically based on his failure to report the fraud rather than on his active participation in the fraud. Finally, we note that during the oral argument of this appeal, State Bar counsel conceded that Sloan, an unknowing participant in the fraud, was "unwittingly" used by Anderson and Lamb to commit the fraud. Accordingly, we conclude that Sloan was not guilty of any fraudulent behavior. *Sloan v. State Bar*, 102 Nev. 436, 440 (Nev. 1986).

308. With respect to the Board Trial that was held out to be a legitimate proceeding but as a matter of law it was a sham. NRS 199.210 – Nevada "Offering False Evidence" Laws, Nevada RICO activity, was designed to combat criminals such as the Imm defendants. NRS 199.210 is the Nevada law that makes it a crime knowingly to obtain or provide forged or fraudulent written documents to be used as evidence in a legal proceeding. The fraudulent document of course was the "Board Resolution," and there are probably other fraudulent documents that will also be obtained in discovery because Plaintiff Dean was made to leave the room while the Imm defendants "deliberated his fate." How upside down is that – a matter for the Jury to decide.

309. NRS 199.210 states that "a person who, upon any trial, hearing, inquiry, investigation or other proceeding authorized by law, offers or procures to be offered in evidence, as genuine, any book, paper, document, record or other instrument in writing, knowing the same to have been forged or fraudulently altered, is guilty of a category D felony and shall be punished as provided in NRS 193.130." Aside from the "board trial," – not

provided by law but held out as if it was - there were also three attempts made by Chris Daw et al to remove Plaintiff Dean without any due process – but director Belbachir blocked those attempts.

310. Now what follows are more details of what happened in Canada and how it relates to the activity in the United States. Matters such as standing, relatedness, continuity, closed and open-ended issues and so on and so forth will also be discussed. Below shows that the situation and tension between Plaintiff Dean and Imm defendants was ever increasing as well as it shows their unlawful conduct.

311. Much of the items were in a Canadian Court before but were never read and never considered by a Jury. Imm defendants really and truly do not want any impartial Judge reading what follows. It also shows the *motive* why Imm defendants have let the discipline compliant just sit idle for years; they needed something more drastic and that is what follows in Act II. Dean tried to have the Federal Court in T-834-20 read these (related materials without the US law included and as updated) and they were not even allowed into the record and then Dean was not even allowed to speak at his own hearing on November 20, 2020 in T-834-20. When Dean started to tell the Judge about the Evidence tampering in T-834-20 he was shut down and told that was 'inappropriate,' and then the Judge threw out wholesale the majority of Ms. Salloum's pleadings.   Not-so-Canadian in Plaintiff Dean's Canadian opinion. After the fact, Ms. Salloum found out that there was a major conflict of interest with this same Judge that relates to the ICCRC. Mr. Salloum will have plenty to say about it when she joins this complaint or a witness (she has had serious eye problems and an operation on each eye and has not read this complaint).

312. The Immigration Consultants of Canada Regulatory Council ("ICCRC") is a national regulator of Immigration Consultants. The Immigration Association-In-Fact Defendants and the False Accuser Association-In-Fact have also violated Dean's entire Federal United States Guaranteed Civil Rights and Dean is asserting his Article III Standing where Dean has suffered an Injury-In-Fact that is "distinct" and "palpable," because the Defendants have made Dean's reputation "toxic," and that that will be covered in detail in Act II. To be clear the Civil Rights violations by Defendants are to Dean personally and the RICO violations are to Dean's business and property the Saga Enterprise because the Saga Enterprise is too is "toxic."

313. Of course, all defendants under 18 USC 1962(a)(b)(c)(d) and Nevada Law (as well as the other states detailed below) are also liable for the racketeering activating involving "any threat of murder." On the Police report (see Act II), Ms. Lisa Bissell ("Bissell") stated that after the February 7, 2017 supposed 'rape' that she and Dean never spoke of the "incident again" (Dean could not get a copy of this police report (filed 08/09/17) for years) and Dean only received a copy in March 2021.

314. This next part relates to Act II but it is shown here to get the Court comfortable with the idea that the Imm defendants and False accusers are using the same means and tactics to achieve their unjust and unlawful ends.

Their overall goal by defendants was to make Dean and the Saga Enterprise 'toxic' – and they have achieved that overall goal.

315. By the time the false TRO got to Judge Murray's Court (08/17/17 or eight days later) Bissell stated (09/28/17) that Dean threatened to break and enter into the Bissell home, re-rape her (like the last time), and the commit grisly mass *murder* Bissell, her family, and her *children* - each and every time that they spoke on the phone and/or saw each other face-to-face. Judge Murray tossed it all in large part because Bissell was caught lying on the stand and Judge Murray noted the credibility issues with Bissell in rendering judgement.

316. Turns out, Dean was in Asia/Canada for more than half of the time in question (02/08/17 – 05/01/17) and two face-to-face meetings between Bissell and Dean are accounted for and were in public places.  The few phone calls were all explained as well. Bissell made it seem like these phone calls were constant, nefarious, and numerous all throughout the period but while in Asia Dean was not communicating with Bissell. Dean even said to Ms. Latifa El - Ghandouri during the Dean's Asia trip in an email that communications were difficult in the place Dean was in in the Philippines.

317. There was the "unclaimed booty call" from Bissell to Dean on 02/27/17 (see texts) and how Bissell twisted it all into the "garage door" perjury that Dean knew the codes to her garage door, and False accuser lawyers' subornation of perjury of it all – it is damning stuff. And then there was the police report – that was withheld from Dean for years by the Cedar Grove Police as a matter of Municipal policy – and the report debunked all of Ms. Bissell's perjury and her lawyers' subornation of perjury.

318. There are numerous stories of Bissell on the same subject matter.  She is a self-professed "Spin Doctor" and maker of creative stories she said. This matter will be detailed in Act II. It is all connected to the Imm defendants as there is mounting Evidence of this fact and that is a matter for the Jury to decide.

319. As a result of all of this and the fact that it is all public in our socially connected internet world there is a concrete financial loss for the past wrong doings by defendants and the injury to Dean personally (Civil Rights violations, 18 USC § 1589 and a host of common law causes of action) issues under Federal law as well as State RICO and Civil Rights violations and to Plaintiff(s) business and property – the Saga Enterprise.

320. The greatest loss is that Dean can never be a hedge fund manager again (or indeed hold any professional job) because of the false accusations that were labeled against him and paid for by the Immigration Enterprise and that is also an Article III standing matter as well as the RICO violation(s) both Federal and State.

321. With respect to the "continuity plus relationship" that too is met as the pattern of racketeering activity is far more than simply two isolated predicates and indeed is varied over the course of five years, there are other victims in other schemes (not in this claim but they exist as discovery and witnesses come forth).

322. There are several schemes that involve Dean and the Saga Enterprise, and of course there are distinct injuries. Defendants violated by way of § 1962 (a)(b)(c)(d) and caused distinct injuries to Plaintiff's business and property

by their recklessness, connivance, and general disregard for the law so that they could protect themselves and hold onto the business in further violation of §1962 (a)(b). That being said – even if the injuries to Dean and his business and property were not so grievous – he still cannot run a hedge fund, and this is further issue of 'forced labor' that will be described below at both the Federal and State levels.

323. Under Canadian Law it appears that ICCRC should not even be a regulator and they should have been dissolved long ago.  But nothing so far seems to stop ICCRC as it appears they have the bureaucrats and the courts in their back pocket. See (Act III.  Here is the Evidence of ICCRC's overall unlawfulness and violation of the Canadian Not For Profit equivalent to 18 USC § 1862(a)(b).

## Introduction of Issues and the Grounds to Dissolve ICCRC under the Act (Canadian Federal Law)

324. The point of bringing the attention of the Court to the laws broken in Canada is to supplement all of the claims and issues under 18 USC § 1962(a)(b)(c)(d) and to show that ICCRC has been operating and conducting predicate acts under using the resources of the Immigration Enterprise and then reaching into the United States.

325. "The cornerstone of our judicial system is that justice is the polestar and the procedures utilized by the courts must "be moulded and applied with that in mind." *N.J. Highway Authority v. Renner,* 18 *N.J.* 485, 495 [114 *A.*2d 555] (1955)." *In re J.B.*, 428 N.J. Super. 40, 60 (N.J. Super. 2012).

326. The injuries to Dean and his business and property flowed from the conspiracy of the defendants and their tortious character of 'above all' protect themselves and disregard and break the law 'standard operating procedure.' In other words, their acts are independently wrong under the Federal RICO statute. Congress sought to eradicate organized crime in the United States because Congress had found that organized crime had become sophisticated, diversified and widespread activity annually draining billions (now probably trillions) of dollars from the American economy by unlawful conduct and the illegal use of force, fraud, and corruption and in turn weaken the stability of the nation's system, harm the innocent, competing organizations, and interfere with competition, seriously burden domestic and foreign commerce, and undermine the general welfare of the nation. Here all of these elements are present.

327. What makes the Imm defendants' actions so shocking is that despite that fact that the Imm defendants have done these things they themselves through the "College Act" (See Act III) are about to get more power.  Imagine – the mob with governmental powers – authorized (by themselves) to 'invade' the United States (or any country) behind the cover of official right – as they have done. This USDC NJ may not be able to dictate what goes on in Canada, but the Court can sure say what is allowed into and go on in the United States, and thus the reason for the need for an injunction against the Imm Enterprise and Imm Defendants at this time (see at end of complaint).  By going through in detail to show how the Imm defendants have flouted and broke Canadian Federal law it in turn shows how 18 USC § 1962 et al is also being violated.

328. Justice Thomas said "our task is to interpret §§ 1964(c) and §§ 1962(d) in conjunction, rather than § 1962 standing alone. The obvious source in the common law for the combined meaning of these provisions is the law of civil conspiracy." This conspiracy is here, there, and everywhere in these matters committed by defendants. The conspiracy provision of § 1962 makes it illegal merely to conspire to violation subsections 'a,' 'b,' and/or 'c' of §1962 and liability under §1962(d) is not "coterminous with liability" with the other substantive subsections of § 1962.

329. Mr. Lawrence Barker not only allowed but caused all of the discipline complaints to go forward under terms of fraud and wire fraud – and in violation of the CNCA as well as 18 USC § 1962(a)(b)(c)(d) because as registrar off ICCRC, Mr. Barker signed each and every discipline complaints in record time whereas in the June 2017 report from the Parliament of Canada that recommended to deregulate ICCRC and start over again anew.  One of the grounds for this report was that the ICCRC was not disciplining members.  See Exhibit and Appendix link: Exhibit 36.

330. The Imm defendants at this point were on their knees getting ready for the government to deregulate them and then the bureaucrats took over and protected them. One the things that they needed to do was to make sure "Ryan Dean," was no longer a problem and that is why the problem in New Jersey popped up for Dean on August 9, 2017.  To Dean it was like a 'black hole singularity' suddenly appearing off of the port bow much like this United States District Court Civil RICO complaint (and all of the other fall out that is coming behind it."  The difference is that Dean was falsely accused whereas all defendants have earned this *American Justice*.

331. **Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.** This is a key statement as alluded to above and where appropriate it will be pointed out in comparing the Imm defendants' activities with the False accusers' activities. 18 U.S.C. § 3575(e) may also be in play as well and may be helpful in interpreting other sections of the RICO Act.  See Iannelli v United States, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed. 2d 616 (1975). RICO is to be read broadly as it was the intent of Congress' self-evident expansive language and overall approach to RICO so said SCOTUS (See United States v Turkette, 452 U.S. 576, 586-587, 101 S. Ct. 22524, 2530-2531, 69 L.Ed.2d 246). RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime Russello v. United States, 464 U.S. 16, 26-29, 104 S. Ct. 296, 302-303, 78 L.Ed. 2d.

332. Of course, if the Imm defendants insurance companies would have done their jobs none of these matters would have likely happened either.  Those defendants by name are: Smith Petrie Carr Scott Insurance Brokers Ltd, Diane Lebebvre, Encon Group Inc, Ana Alberto, Heather Mackie, Temple Insurance Company, Aviva Insurance Company of Canada, XLl Reinsurance America Inc, Arch Insurance Canada Ltd, Everest Insurance Company of Canada, & Lloyd's of London Insurance.

*333.* The insurance companies and their employees fraudulently denied insurance to Plaintiff Dean not once but thrice – all in writing.  In Act III, it will be shown that a confidential conversation between Ms. Nancy Salloum and the insurance company resulted in the insurance company giving the information to the Imm defendants and in turn the Imm defendants used it against not only Ms. Salloum, *but also* Plaintiff Dean in the Federal Matter T-834-20. Sounds like what Merv Hillier did to Dean after Chris Daw gave Hillier the confidential third party complaint.  Sounds like False accusers trying to convert a free $1,300 ticket Dean gave Bissell for a hedge fund conference into a full employment at Saga.

*334.* The actions of the Imm defendants and the Insurance defendants are in further violation of 18 USC § 1962(a)(b)(c)(d) – as they directly or indirectly assisted the Imm defendants in keeping control of the Imm Enterprise, and Nevada RICO (where the Insurance company was sending Dean emails) violations including conspiracy to commit Nevada RICO violations are present in this case. Each and every email that Plaintiff Dean received in the United States and directed to him in Nevada by the insurance company defendans was wire fraud. All defendants are culpable as they are principles to all of the schemes to defraud.

335. [A]ggrieved injured parties may be awarded punitive damages if a jury finds clear and convincing evidence that **the insurer is guilty of "oppression, fraud or malice."** Nev. Rev. Stat. §42.005(1) (1995). Nevada's punitive damages statute places certain limits on those damages—three times the amount of compensatory damages if they are more than $100,000, and $300,000 if compensatory are less than $100,000.…**But the same law adds that these limits do not apply to claims against "[a]n insurer who acts in bad faith regarding its obligations to provide insurance coverage.…" Accordingly, plaintiffs seeking relief under Nevada law may be eligible for damages exceeding the treble damages available under RICO.**   Maybe in hindsight, the insurance company defendants should have gotten Dean a few lawyers way back then and now instead are full RICO defendants.

*336.* The legal term "Res Ipsa Loquitur" means the "thing speaks for itself" and appears that Imm defendants will try nearly any maneuver to cling to power at the expense of the Members, the Public, and Plaintiff Dean as described herein. In the detailed and specific allegations below it will establish the proximate cause elements requisite to establish the predicate acts by defendants and the injuries sustained by Plaintiff(s) and Plaintiff(s)' property and business and that it will be shown that there is a directness to the injuries sustained and the injurious conduct by defendants. The injuries are direct, there is no need to apportion damages – it is only to Dean (Civil) and to the Saga Enterprise – which is Dean's property and business (as well as Klassen's). All of the predicate acts were all committed within the last ten years and amount to or pose a threat of or continued criminal activity. At this point defendants have taken all that Dean has away and whatever he is going to have and their only real act that they can do from this point on is commit actual murder – perhaps a humane conclusion for Dean attempting to fight corruption.

337. In the CNCA, and paraphrasing, it says that it is the duty of the Directors and Officer in exercising their power to act honestly, in good faith, exercise care, diligence and skill under 148 (1) and 148 (2). To Chris Daw, Chair and his Board and Officer Friends, that this was and still is not the case.

338. However, the Immigration Enterprise is distinct from the pattern of racketeering and distinct from the person(s) conducting the affairs of the enterprise. The Immigration Enterprise ongoing organization – is formal and informal – because there are central participants and those that help the organization by unlawful means from time to time as needed and it will be shown below in Acts I, II, & III that all of the Associates-In-Fact members function as a continuing unit. This can be said for the Immigration Association-In-Fact members and for the False Accuser Association-In-Fact members as stand-alone associates apart from each other as well as when they are confederating together to make Dean and the Saga Enterprises' reputation 'toxic.' The two Enterprises are distinct and separate and it is only by the defendants operating through and by the facilities and resources of the Enterprise(s) that they accomplish what they do.

339. Indeed, all defendants are connected and that is what makes all of this an entirely more egregious matter. In any event, both Enterprises as stand-alone entities, do not commit any predicate act in and of itself but do have structure – both formally and informally. The members of each association-in-fact will continue to use the Enterprise(s) to conduct illegal activity into the future not only against Plaintiff(s) but also likely against unrelated persons, including persons in the United States.

340. This is the business that the Imm defendants and False Accuser Association-In-Fact are in – criminality under the cover of a Canadian Regulator, law firms, and Canadian bureaucrats, and under US based Law firm(s) respectively. The whole purpose of the RICO Act was to prevent the infiltration by mobsters into legitimate businesses (or what is supposed to be legitimate on a prima facie level) and not allow what has transpired.

341. *What literally could be worse than mobster infiltrating Federal regulators reaching into the US and law firms with corrupt 'officer of the court' lawyers on the prowl for extortion takes, for instance?*

342. The Enterprise(s) is more than a combination of persons who committed the alleged predicate acts of racketeering; the Enterprise(s) will go on into the future creating more predicate acts on the innocent public. Moreover, there is no carve out in RICO the says "corrupt lawyers" or "False Sexual assault" accusers are protected, nor is there any carve out for foreign regulators operating in the United States with at least one director parked in Buffalo, New York at all times conniving the different schemes to defraud. The language repeats itself again and again in the Federal RICO statues and racketeering activity that *any scheme to defraud* is prohibited.

343. In these matters there is a "horizontal nexus" showing the relationship between one predicate act and another. There is a vertical nexus showing the relationship between a predicate act and the enterprise(s). There is a Causal Nexus showing the relationship between a criminal RICO violation and the Plaintiff's injuries.

Defendant(s) conducted the operations of the enterprise via their management, directorship, or under the direction of the management and/or directorship of the Enterprise(s).

344. SCOTUS thought that it was important to define the world "through" and they used Black's Law Dictionary to define the word "through" as "[b]y means of, in consequence of, by reason of. "Black's Law Dictionary 1481 (6th ed. 1990). The Oxford English Dictionary defines "through" as meaning, among other things, "[i]ndicating medium, means, agency or instrument: By means of, by the action of. ... By the instrumentality of." XVIII Oxford English Dictionary 11 (2d ed. 1989). Each of these phrases offers a way of proving the participation or conduct was "through a pattern of racketeering activity." A sufficient nexus or relationship exists between the racketeering acts and the enterprise if the defendant(s) were able to commit the predicate acts by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of his association with the enterprise. Plaintiffs reincorporate the same definition here.

345. The requirement "through a pattern of racketeering activity" has been met in several situations. When the defendant(s) used their position in the enterprise to commit the racketeering acts, the "through" requirement is fulfilled. In addition, when the resources, property, or facilities of the enterprise are used by the defendant(s) to commit the predicate acts, the "through" requirement is fulfilled. It is not necessary to make other showings in order to fulfill the "through" requirement. It is unnecessary for the pattern of racketeering to have benefited the enterprise in any way.

346. Clearly all defendant(s) have benefited or attempted to benefit from their predicate acts. The pattern of racketeering activity does not have to "affect the everyday operations of the enterprise," and the defendant need not have channeled the proceeds of the racketeering activity into the enterprise – which was done in any event. The evidence here was sufficient to meet the "through" requirement connecting the predicate act to the enterprise. Jurors, mindful of the adage that you are known by the company you keep, could easily infer that the methods used by the Imm defendants is the same or very similar to that used by the False accuser Association-In-Fact defendants.

347. Starting in 2016 when the Imm defendants did their illegal acts to hold onto the Immigration Enterprise, the Public Interest Director issue was at the forefront (kicking off a serious of CNCA and 18 USC § 1962 et al violations) because all director incumbents running for re-election lost and then in turn as the year progressed the Imm defendants' perverse appointment of many directors (cronies and friends), who are Imm defendants themselves, far exceeded the limitations of the ICCRC Articles of Continuance in years 2016 – 2017, 2017 – 2018 and 2018- 2019, and in turn took over the Immigration Enterprise in violation of 18 USC § 1962(a)(b)(c)(d), and this negatively affected hundreds of United States based immigration consultants working under this fraud and criminality. It also ended up with Dean being tossed "over-Board."

348. During the financial question and answer period of the Annual General Meeting of the Imm defendants during November 12, 2016, beamed out to the world and into the living rooms of some 400+ U.S. based Immigration Consultants, and in this case (and many other cases detailed herein) that non-disclosure, based on wire/mail fraud can be premised if there is an independent duty to disclose that the defendant has breached because the defendant had a statutory duty to disclose (See Eller v. Equitrust Life Ins., 778 F.3d 1089, 1092 (9th Cir.2015).

349. The question – and many others that will come up at trial - were asked in front of the entire membership whether or not there was a third party private corporation where money was being diverted out into and the answer was "no";  indeed there was a third-party private corporation that was being run out of Mr. Robert Kewley's living room and formed the core competency of the entire regulator of discipline complaints investigations, and in turn failure to answer these questions was in large part Mr. Hillier's basis for conducting his predicate act in filing a discipline complaint.  Mr. Hillier, under terms of the conspiracy also coordinated the whole scheme with other Imm defendants and most notably Ms. Kim Ly and Ms. Carla Gelbloom, the bulk "complainant defendants."

350. The next year Ms. Ly accepted her bribe to the CAPIC executive and Ms. Aileen Farrow, another "complainant," accepted her bribe to be the ICCRC ambassador and she beamed numerous messages into the USA with the fraudulent monthly ICCRC bulletin. With Imm defendants it is a show of "Quid Pro Quo."

351. The entire board and management and employees of ICCRC was sitting in the room watching and knowing that the third-party private corporation was not disclosed and this in turn makes all of the following individuals culpable under wire fraud, and 18 USC § 1962 (a)(b)(c)(d), and of course the corresponding provisions of the CNCA covered herein. Ron McKay, Joan Page, Tarek Allam, Alli Amlani, Peter Bernier, Edward Dennis, Richard Dennis, Merv Hillier, Javier Vinsome, Rhonda Williams, Lawrence Barker, Rodelio Ramos, Hafeeza Bassirullah, Daniel Roukema, and Dace Stripniecks. Other board members are not included as Plaintiff Dean believes that at that time that they did not have any knowledge of the third-party private corporation.

352. These are the remaining individuals that operated and/or directed the Immigration Enterprise from 2016 – 2021 Beata Paulauska, Christina Ashmore, Cindy Beverly, Alex Beraskow, Wendy Kelly, Stephen Ashworth, Stanislav Belevici, Melanie Wen, Samantha Psoch, Rosalee Van Stadiuum, Randy Boldt, Nancy Awwad, Marty Baram, Leanne Mcceachy, Latifa El – Ghandouri, John Burke, John Murray, Janice Brooks, James Hsieh, Russ Harrington, Christopher May, John Cockerill, Joan Page, James, Hsieh, Darlene Ryan, and Tim D'Souza.  Like all defendants, in the Civil RICO case information statement their individual Predicate Acts will be discussed (unless they have effected a settlement that is also approved by the various state prosecutors and federal prosecutors, if relevant).

353. Hafeeza Bassurallah, in 2017 then director of education of ICCRC was widely considered by the entire membership of ICCRC to produce *truly* worse-than-useless educational classes that each member was 'forced

fed' to take as a requisite to keep their license. One day Dean was stuck in the airport going back to Alberta to see his sick mother in the hospital and Dean was having technical difficulties attending a silly class because Dean's headphones were in the luggage. The class had been scheduled but Dean's mother going into the hospital was not scheduled – it was quite serious.  The class happened to be at the same time when Dean was in a layover in Minneapolis for a few hours.   The instructor, Lawrence Lang, teaching these worthless courses took it upon himself to kick Dean out of the class because Dean did not have the "proper headphone" equipment. Dean let it be known that he thought they were jokers and *gigantic waste of everyone's time.* For instance, one of the classes that they thought was so important to learn was "how to balance your checkbook." At any rate, Bassurallah called Dean from Canada into the United States, and at first Dean told her essentially that it had all gone too far, and that Dean would just skip that class, and take it another time.  Dean had heard about who Bassurallah was and she was widely known to be one of ICCRC's membership wide enforcers and the woman did not know how to "self-edit" and lacked a "filter" from how she spued her rhetoric.   Then she launched into some diatribe and tried to bully and Lord over Dean.  Dean pushed back and gave her some of her own medicine and the insults flew.  Nothing came of it until Dean ran for election for the Board of ICCRC as was about to become Bassurallah's boss, and then suddenly Bassurallah filed a "discipline complaint" against Dean and the conversation she recorded into the United States (wire fraud) was documented and become the basis for the complaint.  That phone call after the fact (that was recorded by Bassurallah months earlier before the discipline complaint was filed was logged into the ICCRC record) became a RICO predicate Act.  Bassurallah acted in conspiracy with the others who were also by then preparing their discipline complaints and all agreed to committed predicate acts and in violation of 18 USC § 1962 and under terms of conspiracy 18 USC § 1962(d).

> But there exists additional grounds to sustain  jurisdiction. It is the rule that where any interstate use is made to perpetuate the original fraudulent concealment or transaction, even though not part of the original solicitation or inducement of sale involved, that nevertheless the subsequent use of interstate facilities in furthering the scheme is sufficient to establish federal jurisdiction. Creswell-KeithJ Inc. v. WillinghamJ  264 F.2d  76, 80, 82 (8th Cir. 1959); see also 'Thomas  v. United States 227 F.2d 667, 670 (9th Cir. 1955) (use of automobile); Ellis v. CarterJ 291 F.2d 270, 274 (9th Cir. 1961) (use of plane); cf: Boone v. BaughJ 308 F.2d 711 (8th Cir. 1962).

354. *Here, Bassurallah used the recording that she had, did nothing with it, let the conspiracy take root, and then used the recording to commit more wire fraud under the cover of the discipline complaints.*

355. After Daniel Roukema was fired and/or quit ICCRC for racism and a number of other matters he told Mr. Watto all about the balance sheets not balancing and the conspiracy to cover it all up.  Of course, ICCRC discipline Dean about all of this as well. Here is the recording between Mr. Roukema and Mr. Watto.

356. Trouble is: it was an open secret within ICCRC that there was blatant fraud with the conspiracy to cover up the "balance sheets not balancing" (four sets of these exsit) and yet Mr. Roukema and the rest of the co-

conspirators let all of the discipline complaints against Dean go forward.  Mr. Roukema, as an officer of the Imm Enterprise had a duty to disclose this to Dean but he did not (fraudulent concealment) until well after the fact and the damage to Dean's reputation, and the reputation of Dean's business, and property to the Saga Enterprise had taken a massive hit. Therefore, Mr. Roukema is a co-conspirator to all of the wire fraud listed herein and in the attached and overall scheme to defraud. This is a conversation between M. Watto and Daniel Roukema.

https://www.dropbox.com/s/0wfz4fl89wj28st/RoukemaWatto.wav?dl=0

357. Wire and Mail fraud also apply in court proceedings where it goes beyond "irregularities." Here the tactics and the means of defendants is pure fraud and giving each other all kinds of cover by trying to keep evidence out – a common theme throughout these matters. When Dean exposed the third-party private corporation to the Parliament of Canada, the defendants suddenly shut it down and brought that function inhouse – just after removing Dean from the Board of the ICCRC without just cause and against the Canada Not For Profit Corporations Act ("CNCA") where only the members that elected Dean could remove Dean (130) check.  See the Toronto Star.  See link to the Exhibits and Appendix link: Appendix 27.  The Toronto Star is also broadcast into the United States and is another act of wire fraud and Dean's removal from the board has prevented him from sitting on any legitimate board in the United States since despite the fact that Dean has a top notch MBA from Rice University and of course should have been well known hedge fund manager by now as well as the Saga Enterprise would have and should have been growing exponentially.

358. The "conduct" and "effects" test to find that RICO applies to extraterritorial conduct where the defendant commits sufficient conduct within the United States that affects U.S. citizens and commerce within the United States. 21 16 Heller v. Deutsche Bank AG, No. 04-CV-3571, 2005 WL 281181, at *2-3 (E.D. Pa. Feb. 3, 2005). 17 Id. at *3; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-77 (1985). 18 Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137 (9th Cir. 2001); Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339 (11th Cir. 2008). 19 See, e.g., Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949); see also Morrison v. National Austl. Bank Ltd., 130 S. Ct. 2869 (2010). 20 See United States v. Noriega, 746 F. Supp. 1506, 1517 (S.D. Fla. 1990) ("Given the Act's broad construction and equally broad goal of eliminating the harmful consequences of organized crime, **it is apparent that Congress was concerned with the effects and not the locus of racketeering activities**."), aff'd, 117 F.3d 1206 (11th Cir. 1997). 21 Poulos v. Caesars World, Inc., 379 F.3d 654, 663-64 (9th Cir. 2004); see also Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339 (11th Cir. 2008) (holding that RICO applied extraterritorially where conduct in furtherance of the RICO conspiracy occurred in the United States but the effects of the conspiracy were felt elsewhere); Alfadda v. Fenn, 935 F.2d 475 (2d Cir. 1991) (holding that the defendants' commission of some predicate acts within the United States provided a basis for subject matter jurisdiction for the RICO claims, and noting that there is "no indication

that Congress intended to limit [RICO] to infiltration of domestic enterprises. **The mere fact that the corporate defendants are foreign entities does not immunize them from the reach of RICO**"); OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 365-68 (S.D.N.Y. 2005) (applying "conduct" and "effects" test), opinion adhered to on reconsideration, No. 02-CV-8993, 2005 WL 309755 (S.D.N.Y. Feb. 9, 2005).

**Public Interest Director (PID) Issue**

**November 2016 Board Meeting Immediately Following the Annual General Meeting**

*359.* In November 2016, New Board members were faced with the immediate agenda of the election of the Chair, appointment of the PIDs **("Public Interest Directors")**, and the committee positions "appointed." All three items were later shown to be a charade because there was already a list showing who would be where and on what committee; it was already decided before the meeting started as well as who the 2 (two) Public Interest Directors were without any say so from the Newly Seated Board contrary to the By – Laws, the Regulations, and the CNCA. Each and every board meeting that Dean attended at ICCRC also constitutes mail/wire fraud (see Pereira v United States 347 U.S. 1 (1954) because the false statements were made in person and the emails and regular mail all sent to the United States contained false representations and material deception and fraudulent concealment.

*360.* ICCRC to Plaintiff Dean's knowledge never published who was elected in November 2016 so Dean so states here: Ms. Lynn Gaudet, Ms. Gabrielle Fortin, Mr. Ali Ikram Belbachir, Mr. Chris Daw, Mr. Stanislav Belevichi, and myself, Ryan Dean for a total of 6 (six) elected Directors in 2016. This corresponds with the outgoing Directors of: Mr. Tarek Allam, Mr. Alli Amlani, Mr. Peter Bernier, Mr. Richard Dennis, Mr. Ron McKay, Ms. Joan Page, and Mr Merv Hillier (PID) – all of whom were part of the 'back room dealing' scheme to hold onto power and actually remained in power, despite not being supposed to be able to do so according to ICCRC's own By-Laws and each is culpable of violations of each and every year that they were on the committee. This is at a minimum a violation of the CNCA and 18 USC § 1962 for at least 2 years each. Mr. Richard Dennis, and Ms. Joan Page both lost in election but found themselves back on the board a short while later after some quid pro quo offering and accepting bribes were arranged. Both Mr. Dennis were residents of New York State during this entire time until at least 2018 when Mr. E. Dennis moved to the United Kingdom. Note: for all exhibits and appendix below see the Exhibit and Appendix link already noted above and again once more reproduced here as well as the Canada Not For Profit Corporations Act ("CNCA") that will come in handy for reference:

> https://www.dropbox.com/home/HVD/Exhibits%20and%20Appendix

> *-And-*

> https://www.dropbox.com/s/y9ef2ai4nr20kag/Canada%20Not%20For%20Profit%20Corporations%20Act.pdf?dl=0

**Exhibit 1 – 2016 – 2017 ICCRC Board of Directors at End of AGM**

361. The Government of Canada website quoting the Regulations under "Electing Directors" also agrees with Plaintiff(s)' position on all of these matters with respect to these appointments as well as the Quorum. The Quorum it turns out was much more important than merely these Director Appointments due to the subsequent actions of ICCRC.

362. The Regulations of the CNCA state under the heading "Electing the Directors" in Exhibit 2 below how to properly seat Directors in certain situations. Had the Imm defendant not been successful at this take-over-the-Enterprise maneuver, then perhaps all of this would have ended quite differently in 2016.  Instead, it keeps marching forward.

363. Today and in sum, a RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future. Applying the above analysis, the district court determined that, despite its earlier conclusion  finding  a  sufficient pattern, in light of *H.J., Inc.*, a different result was now warranted.

364. Here this matter is open ended as this matter is likely to grumble on well into the future despite being in violation of 18 USC § 1589. Instead of Plaintiff Dean becoming a full fledged Director, Imm defendants by way of their conspiracy to cover up their scheme made Dean their indentured servant by having him deal with a blizzard of unlawful discipline complaints – sent to him in Nevada – and made Dean work on them – where to this day these so called "discipline complaints" sit idle more than 4 years after the fact.

**Plaintiff given into "forced labor" so Imm defendants could attempt to cover up their scheme(s).**

365. At the time in 2016/2017 it occupied a great deal of Plaintiff Dean's time to figure out the ruse and indeed has extended from then until now where Plaintiff Dean had to read the By-Laws, then the CNCA, and the RICO act and generally has had to learn how to think and write like a lawyer in numerous jurisdictions at the same time.

366. For this service Dean received about $5,000 (Canadian) from Imm defendants before expense reimbursement for approximately 70 hours a week for 4 years uncovering their criminality and fighting their unjust lawsuits and so on and so forth – including staying out of prison et al.

367. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 was made for instances such as this.  18 USC § 1589 provides with respect to this instant case that:

> **(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> > **(1)**by means of **force, threats of force**, physical restraint, or **threats of physical restraint to that person** or another person;
>
> > **(2)** by means of **serious harm or threats of serious harm to that person or another person**;

**(3) by means of the abuse or threatened abuse of law or legal process;** or

**(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).**

**(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).**

368. Up to and including August 2, 2017, before the False Accuser Association-In-Fact became involved in these matters, the trafficking of Plaintiff Dean via sham Discipline Complaints in violation of 18 USC § 1962 and other violations both Federal and State, fell under 18 USC § 1589(1)(c)(d).  After August 9, 2017, when the False Accuser Association-In-Fact entered into these matters this because a whole-sale aggravated violation of 18 USC § 1589(1)(a)(b)(c)(d) and aggravated conspiracy to violate 18 USC § 1589 (1)(a)(b)(c)(d) and 18 USC § 1589(1)(b).

369. Moreover, with the passage of the Wilberforce Act, it is now a federal crime to obstruct, or attempt to obstruct, or in any way interfere with or prevent the enforcement of 1590 (trafficking with respect to peonage, slavery, **involuntary servitude**, or **forced labor**). Ms. Nancy Salloum (and Dean) was treated to the same abuse of process lawsuit in Canada that will be part of the subject of Act III.

370. For now, under 18 U.S.C. 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), SCOTUS held  (United States v. Kozminski, 487 U.S. 931, 948-503 (1988)) that the involuntary servitude statute encompassed **coercive servitude** but only to the extent that the coercion involved the use or threat of physical restraint or **abuse of legal process**. The board resolutions were additional coercive threats to cow to the Imm defendants' criminality.

371. It is quite something that criminal coercion is something that the False Accuser Association-In-Fact has committed and this is yet another data point showing the same means and ends of all defendants. A matter for a Jury to decide.

372. Sections § 1589 condemns violations accomplished by the use of physical restraint and abuse of law, but also by the threat of serious harm (Dean sent off to NJ State Prison for the rest of his natural life and/or murdered shortly thereafter), or by a scheme intended to convey the impression of such coercive threats (discipline complaints, board resolutions, for instance).

373. The Wilberforce Act provides yet further clarification with specific definition of the terms (a) serious harm ("physical or nonphysical ... psychological, financial, or reputational" harm which a similarly situated, reasonable person would consider serious. Yes, having ones' reputation trashed for calling out others' criminality with proof and authorized by election to do it and where the – the Imm defendants - are the ones who get to decide their

own fate with all kinds of help and cover from Canadian government officials and courts is certainly something that a 'reasonable person' – like a Jury member – would find disturbing. Abuse of law ("administrative, civil, or criminal" use of the law to cause another to engage in or refrain from conduct) also meets this definition and now all of this is definitely aggravated.

374. The new definitions re-enforce recent judicial interpretations that have construed the terms found in sections § 1589 broadly. The explanatory statement supplied the House immediately prior to passage emphasizes Congress's expansive view of the term "serious harm." The term "serious harm" refers to a broad array of harms, including both physical and nonphysical, and is intended to be subjectively construed in determining whether a particular type or certain degree of harm or coercion is sufficient to overcome a particular victim's will.

375. It is contemplated that these refinements will streamline the jury's consideration in cases involving coercion and will more fully capture the imbalance of power between trafficker and victim. A scheme, plan, or pattern intended to inculcate a belief of serious harm may refer to nonviolent and psychological coercion, including but not limited to isolation and punishments.  Being cast into NJ State prison would certainly qualify as "isolation," as well as the fact that even after being elected to the board Plaintiff Dean was not allowed on any board committee; at all times Mr. Richard Dennis had more power than Dean it will be demonstrated below.

376. The Wilberforce Act's definition of abuse of law is modeled after that found in the Second Restatement of Torts referenced in the earlier limited available case law (use of "a legal process, criminal or civil, against another primarily to accomplish a purpose for which it is not designed"). It expands upon the Restatement's definition to encompass threats of abuse and the abuse of administrative process, but confines application to coercive abuse (i.e., abuse exerted or threatened "in order to exert pressure on another person to cause that person top take some action or refrain from taking some action").

377. Again, all of these elements have been described herein and Imm defendants and in Act II it will be shown that False Accuser Association-In-Fact is culpable of all of these matters and indeed there is are stand alone conspiracies (Canada and USA matters stand alone conspiracies) and then USA matters combined with Canada matters conspiracies using coercion and extortion.

378. Under 18 USC § 1589(1)(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).  This flows directly into 18 USC § 1962(a)(b).

379. Here Imm defendants were able to hold on their regulator and their power and they are about to receive some $50,000,000 Canadian in public funding over the course of some years.  False accuser Association-In-Fact has been receiving payments from Imm defendants the evidence points to and will show in discovery.

380. Extraterritorial jurisdiction may also be considered consistent with international law when the overseas conduct has an impact within the United States (Ford v. United States, 273 U.S. 593, 623 (1927); United States v. Plummer, 221 F.3d 1298, 1304-307 (11th Cir. 2000)).  Plaintiff Dean is missing his life, his reputation and one hedge fund (the Saga Enterprise) for years and years  of effort that went into to preparing that so that all defendants can profiteer off of their criminality and punish those that out their crimes. Dean read over 1,200+ financial texts to craft his hedge fund, and now he is putting his speed reading to work and reading RICO materials and training himself to be a RICO expert and prepare for trial.

381. In addition to the extraterritorial jurisdiction that might otherwise exist, the Wilberforce Act establishes extraterritorial jurisdiction over various peonage and trafficking offenses when the offender is an American or when the offender is found in the United States.

382. Imm defendants really wanted Richard Dennis back (he never left) and he has never left the State of New York and by this account the federal jurisdiction over all defendants in this case. For State and Federal prosecutors to know: the judge or magistrate may order the pretrial detention of the accused upon a determination, following the hearing, that no condition or set of conditions can provide a reasonable assurance of public safety or subsequent appearance. For a few particularly egregious offenses, the law establishes a presumption that no such assurance will be possible – and in this case Imm defendants may run to their government officials and court and try any number of things to give themselves yet another 'pass.'

383. Restitution is the process by which a sentencing court orders a convicted defendant to repay his victims for the injuries he has caused them. It too may vary somewhat depending upon the crime involved. Imm defendants have essentially 'sold' an elected director into indentured servitude and now they want more power in Canada under the "College Act" to "regulate immigration consultants," as well as the fact that they ripped off the idea of the College in the first place (**and literally used portion's of Ms. Salloum's work to include in the Act itself and then turned around and punished Ms Salloum for their appropriating her IP and works**) from Ms. Sallloum (as Act III) will show.

384. 18 USC § 1590 states that *(a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or*

*life, or both. (b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the*

*enforcement of this section, shall be subject to the penalties under subsection (a).*

385. By paying and/or financing the False Accuser Associates-In-Fact and attempting to have Plaintiff Dean thrown in prison for the rest of his natural life and/or murdered for false claims (by False accuser Association-In-Fact defendants or "False accuser defendants") of aggravated sexual assault including vaginal, anal, and digit rape and false aggravated threats of murder also meets 18 USC § 1590 but also meets the definition of Extortion in the State of New Jersey.

> **2C:20-5. Theft by extortion**
> A person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion. A person extorts if he purposely threatens to:
> a. Inflict bodily injury on or physically confine or restrain anyone **or commit any other criminal offense**;
> b. **Accuse anyone of an offense** or **cause charges of an offense to be instituted against any person**;
> c. **Expose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute**;
> d. Take or withhold action as an official, **or cause an official to take** or withhold action;
> e. Bring about or continue a strike, boycott or other collective action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act;
> f. **Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or**
> g. **Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.**

386. When NJSA 2C:20-5 is combined with 18 USC § 1590 as well as conspiracy to commit NJSA 2C:20-5 and conspiracy to commit 18 USC § 1590 it becomes an altogether more aggravated and egregious situation. This is precisely what the Imm defendants and the False accusers defendants have done and it shows that Imm defendants and False accusers are using the same tactics and breaking essentially the same laws. A matter for the Jury to decide.

387. Without question under NJSA 2C:20-5, Plaintiff Dean has been falsely accused of extreme sexual criminality as well as he was accused of being an "about to be mass murder of *children*" by the False accuser Association-In-Fact. Charges were laid against Dean (but tossed out by the NJ Prosecutor), and a secret affair and a false secret sexual assault were both exposed that definitely subjected Dean to "hatred, contempt, ridicule – meant to impair his credit and business repute."  Clearly there has been official action taken against Dean as well as the False accuser Association has withheld testimony and information and the False Accuser Association has inflicted material harm to Plaintiff Dean. The Imm defendants are the ones that arranged this circus, and they are perpetrators and co-conspirators alike with the False Accuser Association-In-Fact and it is all of them that need to go to State Prison in **New Jersey for the rest of their natural lives**.  Imm defendants have also done these things to Dean in Canada (that is not subject to NJ law but if it were done in NJ it would likely strike off all of the elements).

388. That defendants have all profited and/or attempted to profit from their scheme is astounding Evil and all defendants are subject to 18 USC § 1594(b), conspiracy to violate 18 USC § 1590 & 18 USC § 1590.

389. There has been some serious misbehaving by defendants and their conduct is conduct not becoming an immigration consultant and the membership can call a Special General Meeting and revoke – in a straight up and down vote – those involved in these matters. Look in the By-Laws to see where it is provided for precisely. Aside from that, the Federal Court can also have an "up or down" vote by Judge and/or Jury with the following elements.

390. Clearly there is a violation of § 1594(a)(b)(c) and the Court ought to state that the assets of the defendants are frozen until such time that this matter is resolved.

>  (a)     whoever attempts to violate section 1581, 1583, 1584, 1589, 1590, or 1591 shall be punishable in the same manner as a completed violation of that section.
>  (b)     Whoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section.
>  (c)     Whoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both.
>  (g) WITNESS PROTECTION.—
>  Any violation of this chapter shall be considered an organized criminal activity or other serious offense for the purposes of application of chapter 224 (relating to witness protection).

391. With provision 18 USC § 1594(g), all of this has been orchestrated and perpetrated by defendants as retaliation to a witness, and therefore the full weight of this measure also should apply.  In doing all of these things all defendants have violated Plaintiff Dean's US Constitutional Right (As Amended)) XIII, § 1 against "involuntary servitude."

392. Defendants have conspired to oppress Dean and his Federally guaranteed civil rights.

393. 18 U.S.C. 241 (Conspiracy Against Rights) makes it unlawful for two or more persons to conspire to "injure, oppress, threaten, or intimidate any persons of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States (or because of his/her having exercised the same)."

394. There are color of state law deprivations that will be dealt with in Act II – but for now it is enough for all defendants to know that they have violated Plaintiff Dean's entire US Bill of Rights, for instance.

395. Dean has been deprived of Federally Protected Activities—18 U.S.C. §245 such as:

- Participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States
- Applying for or enjoying employment by any U.S. agency
- Participating in or enjoying the benefits of any program receiving federal financial assistance.
- Participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by a state or local government

- Applying for or enjoying employment, or using a labor organization or employment agency whether privately or publicly run

396. There are any number of Federal programs that Plaintiff could have accessed as a hedge fund manager including loans during COVID-19 and other related programs available to financial services, for instance, but that was all taken away on August 9, 2017 by defendants falsely accusing defendant of heinous sexual crimes. Plaintiff Dean's credit was great on August 8, 2017 and that all changed starting on August 9, 2017. Dean's reputation was building but that all changed after he was duly elected to the board of ICCRC.

397. Defendants are also culpable of the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act because Plaintiff Dean was a rising hedge fund star, and also a man, and these false accusations were motivated and orchestrated because Dean was a man (gender).  It is so easy to do in this world to accuse a man of sexually assaulting a women, and all Imm defendants were aware of this, and needed to do something to stop Dean from exposing their criminality. Ms. Bissell, knowing that she was not going to be the next Mrs. Dean or his full-time boyfriend contacted the Imm defendants and hatched the plan. See Act II.


**"Electing the directors" at the Immigrant Enterprise – Imm Defendants Unlawful Method.**

398. According to the CNCA:

> "…There are only two exceptions to the general rule that the members must elect the directors of the corporation. First, the articles can permit the directors to appoint additional directors between annual meetings to hold office for a term that must expire on or before the next annual meeting of members. **This is permitted as long as the total number of appointed directors is not more than one-third of the number of directors elected at the previous annual meeting (refer to subsection 128(8) of the NFP Act)….**The second exception allows a vacancy on the board to be filled by the directors, as long as there is a quorum on the board to participate in filling the vacancy."

**Exhibit 2 – Regulations of the Act Concerning Appointment of Directors and Quorum at ICCRC**

399. At this Board meeting, Chris Daw was hurriedly "elected" Chair because the newly appointed PIDs voted in his favor as they were obviously his friends. The PIDs appointments were supposed to follow the Chair election according to ICCRC By-Laws 54.1 (See Exhibit 5 – ICCRC By – Laws 2016 – 1 in the main link noted above). Mr. Barker said he was "the only one to see the ballots then destroyed them" just like no elections officer anywhere would do in Canada. ICCRC By – Law 54.1 Election of Chair and Vice – Chair:

> "At the first meeting of the Board held after each Annual Meeting, the Board will elect a Chair and Vice-Chair from among the Elected Directors…"

400. Imm defendants destroy evidence; false accusers destroy evidence.

401. 54.1 of the By – Law necessarily means that the Elected and duly seated Board would be the only ones who could vote for the Chair and Vice Chair and then that sitting Board would appoint the new PIDs, in that order.

402. Plaintiff learned that Mr. Javier Vinsome and Mr. David Collie had already been appointed Public Interest Directors by the Board a few days prior, by the previous Board, including seven individuals who knowingly had lost in their election or their term was expiring, and all were in their waning hours of being in office, hatched the plot to keep control of the Imm Enterprise.

403. Before the very first *full-day* Board meeting in December 2016 Plaintiff Dean sent a letter to the Board Chair Chris Daw stating that the **TWO** PIDs had been appointed incorrectly per the By – Laws and that the appointments were to occur **AFTER** the Annual General Meeting.

404. Mr. Daw who enjoyed being appointed Chair, because of the extra Public Interest Director votes in his favor, stated in a conflicted statement, that there was "no time" for this matter on the agenda. The ICCRC By – Laws further stated that 44.1 Make – Up of Board:

> (b) "one individual who is elected as a Public Interest Director (the "Elected Public Interest Director");
> (c) "two individuals who are appointed, **following the Annual Meeting**, by the Board of as Public Interest Directors in accordance with the Regulations."

405. There were also other appointments made to key positions by the out-going directors, *for the out going directors*, designed to hang on to power and ultimately overturn the will of the membership and the election (See below in multiple places throughout this Affidavit).   This meets the definition of Honest Service Fraud and because both Mr. Dennis' were involved in the scheme – it likely also includes United States Jurisdiction.  They are both Public Officials living in the State of New York at the time.

**Exhibit 3 – Point of Order and Chair Daw's Response**

406. Continuing under the heading "Director terms and vacancies on the board of directors" in Exhibit 2.

> "If a vacancy occurs on the Board of Directors, the remaining directors can continue to exercise all of the powers of the directors as long as the number of remaining elected directors constitutes a quorum….unless otherwise specified in your corporation's by-laws."

407. Since the By – Laws did have a quorum provision under 64.10 Quorum of the Board (see Exhibit 5), Chris Daw and his Board and Officers Friends had no choice under the Act but to call a meeting.  But as Plaintiff(s) will demonstrate throughout, the CNCA only concerned them when it best suited their self-interests. Plaintiff believes now more than ever that Imm defendants were hiding something very big – their actions increasingly became bolder and more contrary to the CNCA and perhaps other Canadian Laws as well as the American laws discussed herein.

408. The new board members were absolutely entitled to vote to select the new PIDs according the Regulations and CNCA but that did not happen, and besides there was no quorum anyways, and therefore this should have triggered another portion of the CNCA, but it did not.

409. The CNCA states in Calling a Meeting 132 (2) that:

"If there **is not a quorum of directors** or if there has been a failure to elect the number or minimum number of directors provided for in the articles, the directors then in office shall **without delay** call a special meeting of members to fill the vacancy and, if they fail to call a meeting or if there are no directors then in office, the meeting may be called by any member.

410. This failure to call a meeting is a violation of the CNCA 262 as well and underscores the beginning of *their overt dishonesty with respect to the appointments, elections, and their abuse of power* as detailed below. Dean was well into investigating their finances and all of that can be reviewed below.

411. At the very first board meeting all directors were treated to a "lecture" from the "Governance Guru" & Professor Richard LeBlanc from York University. Mr. LeBlanc seemed all wired up (on something - its not nice to say) and his main thrust was that "problem directors should be removed." Mr. LeBlanc did not say how such problem directors should be removed or why and LeBlanc must have repeated "remove problem directors" 20 times. It was farce. What Mr. LeBlanc did not mention, and it was never disclosed is that he worked with Mr. Hillier at York University in Toronto. It was such an obvious and flagrant attempt to intimidate Plaintiff Dean into not doing what he said he was elected to do. So, this too was more wire fraud, fraudulent concealment, and just another step in the scheme to defraud, and in this case it included Mr. LeBlanc and indeed York University. All of the subsequent uncovering of the scheme makes it wire fraud as well.

412. The **Only Publicly Elected** Public Interest Director **resigned in January 2017;** this Director never came to any of the 2016 – 2017 Board meetings at all either in person or via telephone/conference call and therefore did not attend any meeting to make the requisite quorum. Ms. Debbie Douglas did not hide her utter disgust of the previous Board in her resignation letter.

   **Exhibit 4 - Debbie Douglas Resignation Letter**

413. Side Note: At ICCRC the End of the Election and the End of the Annual General Meeting are one and the same because the results of the election, up to November 2018, were announced at the very end of the AGM thereby concluding the election cycle. At all times through this Application and this Affidavit Plaintiff(s) will be quoting from the ICCRC By – Law 2016 – 1, unless otherwise noted.

414. As a result, ICCRC **never had a quorum** right after the 2016 election and AGM because there was **not even one legitimate Public Interest Director – elected or appointed** at any meeting -- and according to the By – Laws and the Act, ICCRC should have called a Special General Meeting immediately to rectify the matter – but they knew the membership was in a "blow out the Imm defendants or those-still-in-power-kind-of-mood." According to the ICCRC By-Law 2016-1, Ratified at the Annual General Meeting of Members held on 12 November 2016. 64.10 Quorum of the Board:

   "A quorum for the transaction of all matters and business before the Board shall consist of a majority of the Elected Director, and at least one Public Interest Director."

**Exhibit 5 – ICCRC By – Laws 2016 -1**

415. The ICCRC By – Law 2016-1 was a document sent out to every member as well by email link as well as it was posted on the ICCRC website. It was not followed and therefore was done under false pretenses and is wire fraud and misrepresentation to the entire members. There are also Honest service fraud elements here.

416. As a further result of having no quorum no business whatsoever could be undertaken at ICCRC, including removing a Director and appointing numerous more (see below).

417. In Exhibit 1 above, ICCRC had already announced the PIDs at the end of the 2016 Annual General Meeting. It not only shows the composition of the Board and the appointed PIDs, but also shows that Chris Daw was elected Chair. See Exhibit 3 – Point of Order and Chris Daw's response (above)

418. Mr. Daw, in a further self-serving conflict of interest instead of calling **immediately** for a SGM, in writing, said this contrary to 132 (2) of the Act:

> "Your concern regarding the public interest directors has been shared with legal council who confirm that a legitimate resolution exists on the appointment and terms from the Nov 11 meeting. These minutes are posted in the meeting material."

419. This was flat out wire fraud and deception written by Michael Pace of Miller Thompson that Chris Daw sent to Plaintiff. It would turn out months later that indeed there was nothing legitimate about the whole scheme as the board erupted over it in February 2017. All board members saw this email exchange at that time or shortly thereafter – none of them responded in writing.

420. Plaintiff Dean left it at that until Ali Balbachir brought the whole matter up again in February 2017 some months later. Plaintiff was still getting familiar with ICCRC and only then had first reviewed a copy of ICCRC's By – Laws and at that point Plaintiff was totally unfamiliar with the CNCA and the Regulations.  Plaintiff knew he was being lied to but had other legal problems in the form of a blizzard of discipline complaints for *winning his election* as a director, and these complaints had to be answered promptly taking a great deal of Plaintiff Dean's time.

421. When Director Belbachir in February 2017 brought up the very same PID issue, Chair Daw immediately took up the matter and admitted that he lied – but he still did not call for a Special General Meeting under the Act 132 (2), and Plaintiff believes that this too was a bona fide Breach of Public Trust by a Public Officer(s) under Canadian Federal Law and the first overt proof by an admission of Chris Daw that it was indeed a matter with respect to 18 USC 1962(a)(b)(c)(d) and what he did next would confirm it.

422. With respect to Mr. Daw and his Board and Officer Friends. It was at this time that the other directors knew that it was a scheme (from a Canadian perspective) and they showed themselves and what they were doing to be totally dishonest and utterly corrupt process to retain and keep control of the Immigration Enterprise. The discipline complaints were simply a forced labor diversion and means to further support the extortion of not allowing Plaintiff the right to conduct the investigation that he was elected to do.

**Exhibit 6 – Director Belbachir Email to Elected Directors Regarding PID Issue**

423. Chris Daw, responded with:

> "Last week Ali Belbachir sent a message regarding the appointment process of our two Public Interest Directors Javier Vinsome and David Collie. Having had time to review these concerns, and after a lengthy conversation with our legal advisers, Ali is correct on the irregularity on the appointment of Javier and David…."

**Exhibit 7 – Chair Daw Responds to Director Belbachir PID Appointments**

424. Mr. Daw quoted numerous ICCRC By – Laws that were irrelevant and were designed – to protect themselves and ensure that they remained in power and hid their secrets at ICCRC, in my opinion.  In any event these quotations of the By – Laws went directly against what the Act and Regulations called for in a situation such as this.

**Exhibit 8 – FW PID Issue**

425. Director Fortin was now aware that Chris Daw and his Board and Director Friends were lying and she said this:***

> "This PID issue that you told Ryan was "solve" and now its not and its concerning."

> ***Side Note: directors Balbachir and Fortin's first language is French and therefore there are some minor English grammar issues; Plaintiff Dean can't speak any French – wish he could.

426. Mr. Daw in his response quoted from the By - Laws irrelevant passages that did not properly pertain to this situation; Mr. Daw and his Board and Officer Friends and conflicted Board lawyer Michael Pace (who was at the time Dean's lawyer too but Pace was representing only half of the board), could not say that they were not reading the Act because they were quoting parts of it, but clearly parts that did not apply to this situation, and therefore cannot claim incompetence or ignorance either.  This would not be the last time that Chris Daw quoted from the Act where it suited his needs and not the interests of the members and the Public (see Exhibit 18).

427. To Mr. Collie's credit, around this time he withdrew from the entire scheme, after he got a sniff that it was indeed a scheme, and he resigned as a director of ICCRC, and had no further participation in the matter.  Mr. Collie is not a defendant.

428. Furtherance of Imm defendants' crime was the bank fraud where Plaintiff was not paid for his entire services that the membership elected him to do and instead Mr. Vinsome got approximately between $100k - $250k per year to advance violations of CNCA and 18 USC § 1962 et al.  Plaintiff Dean managed to square away approximately $5,000 (Canadian) that was run through the bank and that is wire fraud as well because it was missing a number of zeros if Dean remuneration was indeed going to be a 'one time payment.'

429. Anyways, this is the least of the bank fraud issues and there is plenty more to come but Plaintiff will define the elements here and now.  "The bank need not be the immediate victim of the fraudulent scheme" and need not have suffered actual loss "as long as a defendant acted with the requisite intent." Under section 1344(2) bank fraud potentially arises even if the victim is not a bank and even if the bank  did not lose  any of its own  property pursuant to a scheme to defraud. A violation of subsection (2) is established with evidence that a scheme existed

to obtain moneys, funds, or credit in the custody of a federally-insured bank by fraud. The defendant participated in the scheme by means of material false pretenses, representations or promises; and the defendant acted knowingly. Bank Fraud is very closely related to wire fraud and schemes to defraud and using facilities in the United States to complete the crime and this little $5,000 Canadian cheque was run through a Federal Reserve Bank somewhere.

430. To have the specific intent required for bank fraud [under 1344(2)] the defendant need not have put the bank at risk of loss in the usual sense or intended to do so. It is sufficient if the defendant in the course of committing fraud on someone causes a federally insured bank to transfer funds under its possession and control.") (emphasis in original); Wiener v. Napoli, 772 F. Supp. 109, 119---20 (E.D.N.Y. 1991) (defendants violated section 1344(2) by forging endorsements on checks and by thus obtaining the funds of the depositor).

431. Imm defendants knew that they have unlawfully took control of the regulator and therefore they did not even have proper authorization to write even one check much less demand payment from any ICCRC member anywhere including all the ICCRC members in the United States. That means that there are literally tens of thousands and perhaps hundreds of thousands of transactions that went through US Banks via American Express, Visa, Mastercard, Paypal, Cheque, wire, and so on and so forth. Plaintiff will refer to this as the "soft" bank fraud.

432. The hardcore bank fraud is with respect to Mr. Richard Dennis (and Mr. Edward Dennis) receiving more than $10,000 USD/year over the Canadian/US boarder that are Laundering of monetary instruments (18 USC § 1956) and Engaging in monetary transactions in property derived from specified unlawful activity and (18 USC § 1957) that all Imm defendants are co-conspirators of and of course, from Plaintiff(s) perspective is the money funneled to the False accusers to perpetrate their crimes. Bank Fraud, Money Laundering, and Laundering Monetary Instruments are all present.

433. 18 USC § 1956 is defined as and is one of the longer statutes (the United States is really serious about this one Plaintiff supposes). For now Plaintiff will simply "bold" the areas that are in question herein and will periodically refer back to this paragraph and explain the situation from that point on as needed.

(a)

    **(1)Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—**

        (A)

            **(i) with the intent to promote the carrying on of specified unlawful activity; or**

            (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B)knowing that the transaction is designed in whole or in part—

**(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or**

(ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

**(2)Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—**

**(A) with the intent to promote the carrying on of specified unlawful activity; or**

**(B)knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—**

**(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or**

(ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

(3)Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

(b)PENALTIES.—

(1)IN GENERAL.—Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957, or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of—

**(A) the value of the property, funds, or monetary instruments involved in the transaction; or**

**(B) $10,000.**

**(2)JURISDICTION OVER FOREIGN PERSONS.—For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and—**

**(A) the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;**

(B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

**(C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.**

(3)COURT AUTHORITY OVER ASSETS.—

A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section.

(4)FEDERAL RECEIVER.—

(A)In general.—A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity.

(B)Appointment and authority.—A Federal Receiver described in subparagraph (A)—

(i) may be appointed upon application of a Federal prosecutor or a Federal or State regulator, by the court having jurisdiction over the defendant in the case;

(ii) shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and

(iii)shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant—

(I) from the Financial Crimes Enforcement Network of the Department of the Treasury; or

(II) from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General.

(c)As used in this section—

(1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2)      the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

(6)the term "financial institution" includes—

(A) any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and

(B) any foreign bank, as defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101);

(7)the term "specified unlawful activity" means—

(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

(B)with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—

(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

(ii) **murder**, kidnapping, **robbery, extortion**, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

(iii) **fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978)); [1]**

(iv)      bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;

(v)smuggling or export control violations involving—

(I)an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730–774);

(vi) **an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States**; or

(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

(C) any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);

(D) an offense under section 32 (relating to the destruction of aircraft), section 37 (relating to violence at international airports), section 115 (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 (relating to concealment of assets; false oaths and claims; bribery), section 175c (relating to the variola virus), section 215 (relating to commissions or gifts for procuring loans), section 351 (relating to congressional or Cabinet officer assassination), any of sections 500 through 503 (relating to certain counterfeiting offenses), section 513 (relating to securities of States and private entities), section 541 (relating to goods falsely classified), section 542 (relating to entry of goods by means of false statements), section 545 (relating to smuggling goods into the United States), section 549 (relating to removing goods from Customs custody), section 554 (relating to smuggling goods from the United States), section 555 (relating to border tunnels), **section 641 (relating to public money, property, or records)**, section 656 (relating to theft, embezzlement, or misapplication by bank officer or employee), section 657 (relating to lending, credit, and insurance institutions), section 658 (relating to property mortgaged or pledged to farm credit agencies), section 666 (relating to theft or bribery concerning programs receiving Federal funds), section 793, 794, or 798 (relating to espionage), section 831 (relating to prohibited transactions involving nuclear materials), section 844(f) or (i) (relating to destruction by explosives or fire of Government property or property affecting interstate or foreign commerce), **section 875 (relating to interstate communications)**, section 922(l) (relating to the unlawful importation of firearms), section 924(n) (relating to firearms trafficking), section 956 (relating to conspiracy to kill, kidnap, maim, or injure

certain property in a foreign country), section 1005 (relating to fraudulent bank entries), 1006 [2] (relating to fraudulent Federal credit institution entries), 1007 [2] (relating to Federal Deposit Insurance transactions), 1014 [2] (relating to fraudulent loan or credit applications), **section 1030 (relating to computer fraud and abuse)**, 1032 [2] (relating to concealment of assets from conservator, receiver, or liquidating agent of financial institution), **section 1111 (relating to murder),** section 1114 (relating to murder of United States law enforcement officials), section 1116 (relating to murder of foreign officials, official guests, or internationally protected persons), section 1201 (relating to kidnaping), section 1203 (relating to hostage taking), section 1361 (relating to willful injury of Government property), section 1363 (relating to destruction of property within the special maritime and territorial jurisdiction), section 1708 (theft from the mail), section 1751 (relating to Presidential assassination), section 2113 or 2114 (relating to bank and postal robbery and theft), section 2252A (relating to child pornography) where the child pornography contains a visual depiction of an actual minor engaging in sexually explicit conduct, section 2260 (production of certain child pornography for importation into the United States), section 2280 (relating to violence against maritime navigation), section 2281 (relating to violence against maritime fixed platforms), section 2319 (relating to copyright infringement), section 2320 (relating to trafficking in counterfeit goods and services), section 2332 (relating to terrorist acts abroad against United States nationals), section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section 2332h (relating to radiological dispersal devices), section 2339A or 2339B (relating to providing material support to terrorists), section 2339C (relating to financing of terrorism), or section 2339D (relating to receiving military-type training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act, section 11 [3] (relating to violations) of the Export Administration Act of 1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food and Nutrition Act of 2008 (relating to supplemental nutrition assistance program benefits fraud) involving a quantity of benefits having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, **any felony violation of the Foreign Corrupt Practices Act**, section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122) (relating to prohibitions governing atomic weapons), or section 104(a) of the North Korea Sanctions Enforcement Act of 2016 [3] (relating to prohibited activities with respect to North Korea);

ENVIRONMENTAL CRIMES

(E) a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.);

(F) any act or activity constituting an offense involving a Federal health care offense; or

(G)    **any act that is a criminal violation of subparagraph (A), (B), (C), (D), (E),** or (F) of paragraph (1) of section 9(a) of the Endangered Species Act of 1973 (16 U.S.C. 1538(a)(1)), section 2203 of the African Elephant Conservation Act (16 U.S.C. 4223), or section 7(a) of the Rhinoceros and Tiger Conservation Act of 1994 (16 U.S.C. 5305a(a)), if the endangered or threatened species of fish or wildlife, products, items, or substances involved in the violation and relevant conduct, as applicable, have a total value of more than $10,000;

**(8) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and**

**(9) the term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.**

**(d) Nothing in this section shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this section.**

(e)    Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

**(f)There is extraterritorial jurisdiction over the conduct prohibited by this section if—**

**(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and**

**(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.**

(g)NOTICE OF CONVICTION OF FINANCIAL INSTITUTIONS.— If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title, or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

**(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.**

**(i)VENUE.—**

**(1)Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—**

**(A) any district in which the financial or monetary transaction is conducted; or**

**(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.**

**(2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.**

**(3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.**

434. Again, Plaintiff(s) will refer to the above items **"Bolded"** in the paragraphs and discuss the elements as this complaint progresses.

**Imm defendants continuing to take over the Immigration Enterprise**

435. Here is what Chris Daw had to say, with respect to the PID issue, and then compare that to the foregoing of what has been described in the Act and Regulations above which explicitly details why the answers Mr. Daw gives below are unlawful.  Mr. Daw stated, in writing (Exhibit 7), on February 22, 2017 and this is all flat out wire fraud into the United States as it will be shown below.

"While the **GNC** {Governance and Nominating Committee run by Rhonda Williams added by: R. Dean} is working to correct the issue for future appointments, I have decided that we need to address the November 2016 Appointments at the upcoming meeting….

….Our bylaw Section 47.3 does indicate that once a public interest director's term is up, they are deemed re-appointed until a new appointment is made.  This is of course to work with our requirement to have a PID present for reasons of quorum.  So in the case Javier Vinsome has been acting in a deemed appointment since the AGM.

A concern was raised was regarding the validity of decisions made since the AGM. This is not a legal concern, the Canada Not For Profit Corporations Act has contemplated these types of mistakes and makes it clear that all acts of directors are still valid despite there being a defect in their appointment or election.

436. The problem is of course is that Plaintiff Dean brought all of this up before the first Board meeting in December 2016 and Imm defendants cannot claim CNCA 139 as a defense. In other words, had we all just discovered that there was a problem with the PID appointment in February 2017 then at that point Mr. Daw should have and could have called a SGM to deal with it under the Act.  More troubling is that they did know about the PID issue before the first board meeting and therefore it was not a mistake – it was a deliberate act to ignore Plaintiff Dean's Point Of Order with respect to the PIDs and the Quorum is the first place against the backdrop of their overall state of mind and strategy contained herein to hang onto power against the Act and Imm defendants knowing that they did not have a prayer to win any board seats by election. That Mr. Daw and his Board Friends and Officers continued to ignore Dean's point of Order and then Directors Belbachir and Fortin as well makes this another matter altogether.

437. And there it is: the matter speaks for itself. Mr. Daw had a "lengthy conversation with legal advisors" after Director Belbachir voiced his concerns "last week." Mr. Daw quoted from the Act 139 as his only defense ignoring the rest of the Act. Why was his conversation with the lawyer Michael Pace lengthy? The Act says to call the meeting *immediately* and implies that there is no discussion about it. Mr. Pace is an expert at the CNCA but he is actually better at being a corrupt lawyer. Below, what transpired in that "lengthy conversation" began to manifest itself outwardly at ICCRC slowly and surely as the scheme to defraud and to keep control of the regulator breaking the CNCA and US Federal Laws as well.

438. Notice that Chris Daw did not even mention Plaintiff Dean in his written response, as Dean was the one who originally brought up the whole PID issue in the first place, and the only reason Director Belbachir brought it up at all is Dean walked him through the steps of what was going on after he started to warm to Dean's ideas and could see the fraud. So, Plaintiff Dean sent Mr. Daw a letter that showed that his argument was totally spurious and dishonest. This would be just one instance of Chris Daw and his Board and Officers preventing Dean from doing his job as an elected Director.

439. In February 2017 while on the Board Plaintiff Dean called for a Special General Meeting so the membership could lawfully set everything straight and it was ignored. Plaintiff Dean did again on April 23rd, 2017 (exhibit 13) as did Mr. Belbachir on May 8th, 2017 (exhibit 14) where Mr. Belbachir copies all ICCRC Directors on email.

**Exhibit 9 – Director Ryan Dean Letter to Chair Daw Feb 2017 re PID Issue**

440. Ontario Lawyer Mr. Michael Pace, an expert in these PID matters and of the firm Miller Thomson, was then brought on phone in February 2017 to discuss the PID issue with the Board, and Dean in particular about the nuances between the words **"before"** and **"after" in the ICCRC By – Law 44.1(c) for a few hours. He can try the same act in front of the Jury and see how far he gets especially since he argued a few years earlier the precise opposite (and correct position: read more wire fraud and see below for evidence).** Michael Pace is corrupt fraudulent lawyer and just one of many that are involved in Act I, II, and III, and another common theme throughout.

441. It was clear then that Lawyer Pace was not representing the Board; he was representing Chris Daw and his Board and Officer Friends going out of their way to engineer a way around the law to keep the Immigration Enterprise. Since the Board already had sufficient votes to protect themselves, they voted that the PID issues were in fact no issues at all – just like mobsters would be expected to do. The Board and Officers then tried to "cover their tracks" to suit their then "current views," to get around the details of the meaning of the prepositional words "before" and "after" by having Lawyer Pace purposefully instill doubt into other Board members (whose first language was not English) about this issue as well as discredit Dean. This further harmed the interests of the members and The Public with the Trivial Detail of the necessity to immediately call for a Special General Meeting.

442. In 4.2 of the Board minutes it states that:

> "The Chair indicated that to an address a technical deficiency in the timing of the appointment of the two Public Interest Directors, it is appropriate for the Board of Directors of the Council to confirm the appointment of the two appointed Public Interest Directors."

443. This was the work of Ms. Dace Stripniecks, the author of the balance sheets not balancing and the woman that Roukema spoke about to Mr. Watto (see above) and this is more wire fraud sent into the United States to director Dean. This was no mere technical deficiency nor were the words "before" and "after" one and the same as Mr. Pace tried to unsuccessfully peddle on me from his conflicted lawyerly stance. It was a continuation of their manipulations of the By – Laws and ignoring the Act to protect themselves and their Board and Officer Friends.

**Exhibit 10 – Board Minutes February 23 & 24 (Lawyer Michael Pace, Guest)**

444. Moreover, to address the "technical deficiency" the By-Laws were gutted retroactively without being voted on in respect to largely all PID or 'PID related By Law Provisions' – see below for full discussion in Exhibit 12.  More violations of CNCA and 18 USC § 1962.

445. This is where Power was finally, unlawfully, dishonestly, and corruptly wrestled away from the membership, and their will, when Daw and his Board and Officer Friends were at the Rubicon of being found out, exposed, and ejected from ICCRC. But they stood their ground in an out-in-the-open totally dishonorable, and unblinking way that was oppressive to the membership under CNCA 253 (1).

446. At this moment, to say at the very least, Plaintiff was not pleased. Plaintiff had no difficulty in letting them know about it. Plaintiff started to call Daw "Fake Chair," as a direct result of his criminality and flouting federal Canadian laws and in turn Mr. Daw labelled Dean as "bully and intimidator."  The problem to Chris Daw and their friends – they wanted the world to know - was their hurt feelings and not the Imm defendants breaking federal Canadian laws and hijacking a regulator that was unlawfully reaching into nearly every country in the world.

447. At this point, the Board was still nearly evenly matched and in the next election cycle they would surely have lost their seats, as in the 2016 election, and therefore what Imm defendants next did with a series of unlawful Director appointments undid the will of the membership in a supposedly "Self-Regulatory Organization."  The plot itself had actually started in November 2016 immediately after the election. Extraordinary if not outrageous conduct by Pace et al in engineering the scheme to defraud.

448. The Michael Pace memo later surfaced and it clearly stated that the PIDs were to be appointed "after" the AGM, and not "before."  What smacks of corruption, in Dean's opinion, is that Michael Pace's memo was written well **before** in 2015 but **after** that February 2017 Board meeting he has never corrected his willful falsity or admitted his fault to Dean, nor has Chris Daw, and his Board and Officer Friends corrected their error – instead they sent

Jeffrey Larry et al to commit Fraud on the Canadian Courts. And Mr. Michael Pace was somehow supposed to be representing all director interests on the Board? Fraudulent concealment and wire fraud.

449. In short, Chris Daw admitted to everyone that he lied; Mr. Daw just did not admit the extent of his lie. Mr. Daw also forgot about another lie and that was evidenced in Exhibit 7 above when Chair Daw responded to Director Belbachir and stated (read wire fraud):

> "while the GNC is working to correct this issue for future Appointments..."

450. Yet ICCRC published the new By – Laws and sent out to the membership on the cover page the following (see below in Exhibit 12) and wire fraud:

> "Including Amendments Approved By the Board of Directors February 2017."

451. How could the Board approve the By – Laws while the Governance and Nominating Committee was working on correcting these matters?  What's more, in Exhibit 71, on June 1, 2017, ICCRC further said this Regulation for mid-term selection of Directors:

452. Below that, in Exhibit 71, under the title of Governance Review:

> "A company has been selected to conduct a Governance Review of ICCRC...best governance practices in mind." The governance review will include a governance documents review and a governance practices review."

453. Well govern Plaintiff(s) this? How is it that the "company" also did not compare the governance documents to the CNCA and Regulations, or was there something else going on?

454. The basic point is that the By – Laws supposedly passed by the Board in February 2017 were not passed at all and here is ICCRC, in writing, fumbling its ways around the CNCA in the Governance and Nominating Committee run by Rhonda Williams trying to proverbially "kick the can down the road," while they appoint their CAPIC friends to the Board as fast as they could starting in '2016 – 2017 Director Appointments' below. It is all fraud and a scheme to defraud.

**Exhibit 11 – The Michael Pace Memo from 2015 in Respect To the Appointment of PIDs**

455. Javier Vinsome, the PID in question and the Chair of the Legal Committee, also had this memo and yet again, in another conflict of interest, he did not do the right thing and resign.  How upside down for the CNCA and RICO statute is it under 18 USC § 1962 is it where the "deciding vote" at that time was represented by a clearly conflicted and unlawful "public <dis>interest director" whose goal was to keep control of the regulator so that they could defraud the public and enrich themselves and cover their crimes?  That is precisely what has happened.

456. Ms. Rhonda Williams, who was Chair of ICCRC in 2015 most assuredly received this memo and director at the time of this sub-scheme, and it "slipped her mind" to bring it up as well as did director Ed Dennis. Director Lynn Gaudet, and most assuredly Lawrence Barker (Acting CEO, Registrar, Elections Officer, Corporate Secretary) knew about this memo as well and they too were silent on it.  Chris Daw, Lynn Gaudet, and Phil Mooney founded ICCRC – remember what Mooney did in Vermont?

457. There were others who knew about this memo on the Board and Officers and it did not cross their minds to speak up and tell the truth either.  Chris Daw and his Board and Officer friend's moral, ethical, and legal flexibility was on full display as they showed their true selves. They were getting bolder adding new ways of creating unlawful 'outs,' and labeling Dean.

458. And there it is: Imm defendants were committing crime right out in the open and they could not accuse Dean of any crime.  Instead, they accused him of being a "bully and intimidator." In Act III, it will be shown the Imm defendants, like False accusers, would accuse Dean of crime and indeed did not have any Evidence because the crime never happened. It is the same methods and means by all defendants and a matter for the Jury to decide.

**Exhibit 12 – ICCRC By – Law 2016 (Unlawful and No Quorum Feb 2017)**

459. It is my belief that in February 2017, Chair Chris Daw, Director Rhonda Williams, Director Javier Vinsome, Director Lynn Gaudet, Registrar and Acting CEO Lawrence Barker and Lawyer Michael Pace et al, changed the By – Laws (Exhibit 12) without telling anyone in respect to the PID issue.  In Exhibit 71 (June 2017) ICCRC published to the membership that they were still working on this very problem. Changing the By Laws appeared in the minutes but was not voted on. Wire Fraud. Fraudulent concealment.  CNCA violations. RICO violations.

460. Think of it -- even if there was no in-fighting on the Board, does *anyone* really believe that the Board agreed to the language of these By-Law changes much less identified *where* and *what* By – Law had to be changed in the first place, so quickly, as it is in its current form today? The point: there was infighting on the Board and there was no time to discuss the nuances of the wording of these changes at all because most of the day was spent jousting with Lawyer Pace over the words "before" and "after." In military terms, this was simply a tactic for the Imm Defendants to get a 'toe hold' on the territory and then from there the cavalry was airlifted in (see all of the director appointments).

461. The SGM was not immediately "called" or ever "called;" instead the By – Laws were "culled."

462. Here are the sections of ICCRC's By – Laws that were altered and represented to the members that the Board agreed to this when it did not; these By – Law changes were published entitled:  By – Law – 2016 – 1 (Including Amendments Approved by the Board of Directors February 2017):

> 1(bb), 1(cc), 44(1)(c), 45(1)(o), 45(1)(r), 46.2 (last paragraph), 46.4(c), 46.4(b), 46.4(b)(iii), 46.6, 60.4, 60.6(a), 60.6(b), and 63.41.

463. One such resultant culling was By – Law 44.1 (c) and it is of note because it was central to the PID issue and it states, in its new and unauthorized version:

> "Two individuals who are appointed by the Board as Public Interest Directors in accordance with the Regulations at the Board meeting immediately preceding the Annual General Meeting, but whose one-year term will not commence until the close of such Annual Meeting."

464. This is still not in accordance with the Canada Not For Profit Corporations Regulations (Exhibit 2 above). The regulations do not allow this "crossover" from one Annual General Meeting to the Next. The way ICCRC has 44.1

(c) written now they could appoint the PIDs but their term would only last a few days (or weeks) until the end of the very near and upcoming AGM. Lawyer Michael Pace and Director Rhonda Williams tried to wordsmith their way around the Act and Regulations, again. It was more wire fraud blasted out to the membership.

465. This was also a violation under the CNCA,  Fundamental Changes 197(1)(c), 197(1)(L) and 197(1)(n) respectively:

> (c) – add, change or remove any restriction on the activities that the corporation may carry on.
> (L) – change the manner of giving notice to members entitled to vote at a meeting of members.
> (n) – add, changed or remove any other provision that is permitted by this Act to be set out in the articles.

466. Rhetorically speaking, why would ICCRC change its By – Laws wholesale with respect to the PID issue if it was no issue at all? They knew precisely what they were doing, and their state of mind was to skirt the CNCA and hold onto power. This is corroborated and documented next with all of the Friends appointed to Board of Director positions and Committees and the cavalry being "air lifted" in.

467. This is when Plaintiff Dean really started calling Mr. Chris Daw "Fake Chair," and insulting openly his Board and Officer Friends, because it was so undemocratic and unprincipled to say the least. Chris Daw and his Board and Officer Friends were stealing and committing fraud right out in the open and they expected Plaintiff Dean to go along with it – and Plaintiff Dean was having none of it.

468. As a member, and no longer "officially" a Director (but Dean states he is still technically a director to this day), on April 23rd, 2017, Plaintiff called for a Special General Meeting, still under the Act 132 (2) to deal with this PID issue, Dean's removal from the board, and other issues and ICCRC did not call a meeting of the members.

469. Former Director Ali Belbachir also called for a Special General Meeting 132(2) and copied all of the Board of Directors in his email, and he was ignored and this is a further violation of the Act 262 (2).

**Exhibit 13 – Mr. Ryan Dean Call For Special General Meeting April 23 2017**
**Exhibit 14 – Mr. Ali Belbachir Calls For a Special General Meeting May 8 2017**

**2016 – 2017, 2017 – 2018, & 2018 – 2019 Director Appointments**

470. What further transpired between the November 2016 election and November 2017 election was that no less than 9 (nine) directors were appointed to the Board in contravention of the CNCA under section 128 (8) Appointment of Directors and 132 (2). This probably constitutes bribery by and for public officials under New York Law as it all benefited Mr. Richard Dennis (see below) and his friends. This number of 9 includes the 2 PIDs that flowed from the breach of 132(2) of the Act Calling For Meeting and because all of these directors were appointed without a quorum, the Act 132 (2) therefore applies to all 9 appointments. To wit 128 (8) of the Act states:

> "The directors may, if the articles of the corporation so provide, appoint one or more additional directors, **who shall hold office for a term expiring not later than the close of the next annual meeting of members**, but the total number of directors so appointed may **not exceed one third of the number of directors elected at previous annual meeting of members**."

471. Only 6 (six) directors were elected in the November 2016 election (Exhibit 1 above) and this means that, at most, ICCRC could only appoint 2 *eligible* Directors in conformance to the By – Laws 44.1 (Exhibit 5), Regulations, and the Act.

472. This limitation of the CNCA and By – Laws was no matter to Chris Daw and his Board and Officer Friends *because* all the incumbent directors were swept out of office in the 2016 election cycle. Mr. Daw, and his Board and Officer Friends, filled each seat that became vacant with one of their CAPIC cronies who lost in that election and/or who were very friendly to the Board by design. Did Mr. Daw and his Board and Officer friends hope nobody adversely affected would take the time to read the CNCA and in turn the RICO Statute et al?

473. This is why the PID issue was so critical to all of this because it was the end of their holding onto power and controlling the Immigration Enterprise and had they lost there would have been a complete internal investigation of ICCRC.  Instead, Chris Daw and his Board and Officer Friend did what they did to hold onto power by any means including violations of the CNCA.

474. In any event, what happened with these appointments was definitely not the will of the membership or the public as further illuminated below.

**Mr. Richard Dennis**

475. The idea for this "second place wins the election" took root when Mr. Richard Dennis filed a complaint against Plaintiff Dean, for the grievous wrong of beating him fair and square in the November 2016 election in section 14 of his complaint.   Now it is clear that all of these discipline complaints were filed illegally, all funnelled through the third-party private corporation and that was a violation of the CNCA and 18 USC § 1962 each and every time Imm defendants sent anything or received anything from the United States and/or an ICCRC member in the United States.

476. Plaintiff Dean during this time was in Nevada, Philippines and New York City, NY as he was a hedge fund manager running the Saga Enterprise. New York Law applies to the Imm defendants.  All of the following fall under the NY Penal Code and are part of New York's Enterprise Corruption Laws (which are New York's equivalent to RICO laws). (1)Intentionally conducted or participated in a pattern of criminal activity (2) intentionally acquired an interest in or control of an enterprise by participating in a specific pattern of criminal behavior or (3) Participated in a pattern of criminal activity and invested proceeds derived from those activities in the enterprise. Here all three elements are present for all board members and/or managers of the Imm defendants and indeed all of those that are involved in these matters by virtue of their predicate acts federally and/or in any other state.

477. New York State has concurrent jurisdiction for all of the reasons contained herein and repeated and incorporated into this paragraph. In this case all members of the board – in whatever year by virtue of Mr. Dennis being a New York resident and that all directors are running a corrupt enterprise from New York State.

Mr. Dennis was put on the board by bribery and by accepting bribery. This applies to all of the Enterprise Corruption matters contained herein and immediately below.

478. Defining some of the larceny and bribery laws in New York State that have obviously been perpetrated by incorporating all of the elements already shown herein and are reincorporated here.

S 155.05 Larceny; defined.

1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

2. Larceny includes a wrongful taking, obtaining or withholding of another`s property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses;

(b) By acquiring lost property. A person acquires lost property when he exercises control over property of another which he knows to have been lost or mislaid, or to have been delivered under a mistake as to the identity of the recipient or the nature or amount of the property, without taking reasonable measures to return such property to the owner;

(c) By committing the crime of issuing a bad check, as defined in section 190.05;

(d) By false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.

In any prosecution for larceny based upon a false promise, the defendant`s intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed. Such a finding may be based only upon evidence establishing that the facts and circumstances of the case are wholly consistent with guilty intent or belief and wholly inconsistent with innocent intent or belief, and excluding to a moral certainty every hypothesis except that of the defendant`s intention or belief that the promise would not be performed;

(e) By extortion. A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (i) Cause physical injury to some person in the future; or (ii) Cause damage to property; or (iii) Engage in other conduct constituting a crime; or (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or (vi) Cause a strike, boycott or other collective labor group action injurious to some person`s business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or (vii) Testify or provide information or withhold testimony or information with respect to another`s legal claim or defense; or (viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to

affect some person adversely; or (ix) Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

S 155.10 Larceny; no defense. The crimes of (a) larceny committed by means of extortion and an attempt to commit the same, and (b) bribe receiving by a labor official as defined in section 180.20, and bribe receiving as defined in section 200.05, are not mutually exclusive, and it is no defense to a prosecution for larceny committed by means of extortion or for an attempt to commit the same that, by reason of the same conduct, the defendant also committed one of such specified crimes of bribe receiving.

S 155.40 Grand larceny in the second degree. A person is guilty of grand larceny in the second degree when he steals property and when:

> 1. The value of the property exceeds fifty thousand dollars; or

> 2. The property, regardless of its nature and value, is obtained by extortion committed by instilling in the victim a fear that the actor or another person will (a) cause physical injury to some person in the future, or (b) cause damage to property, or (c) use or abuse his position as a public servant by engaging in conduct within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely.

Grand larceny in the second degree is a class C felony.

S 155.42 Grand larceny in the first degree.

A person is guilty of grand larceny in the first degree when he steals property and when the value of the property exceeds one million dollars. Grand larceny in the first degree is a class B felony.

479. S 200.04 Bribery in the first degree. Here these individuals bragged about appointing each other in excess of the CNCA, the Federal RICO status and the New York Enterprise Corruption law while Mr. Richard Dennis was in New York State and against Plaintiff Dean, also in New York State.

> A person is guilty of bribery in the first degree when the person confers, or offers or agrees to confer: (1) any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced in the investigation, arrest, detention, prosecution or incarceration of any person for the commission or alleged commission of a class A felony defined in article two hundred twenty of this part or an attempt to commit any such class A felony; or (2) any benefit valued in excess of one hundred thousand dollars upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced. Bribery in the first degree is a class B felony.

480. S 200.11 Bribe receiving in the second degree.

> A public servant is guilty of bribe receiving in the second degree

when he or she solicits, accepts or agrees to accept any benefit valued
in excess of five thousand dollars from another person upon an agreement
or understanding that his or her vote, opinion, judgment, action,
decision or exercise of discretion as a public servant will thereby be
influenced. Bribe receiving in the second degree is a class C felony.

481. As above, and others may be culpable of the lessor crime if not the first degree as the Evidence may show. The

following may also apply to the numerous Imm defendants. At the time Dean, was flying all over the world but

his bases were in Nevada and New York and therefore, New York Applies just as does Nevada, and especially so

since Mr. Dennis is and was a resident of New York the entire time of the New York Enterprise Corruption was

being perpetrated.  In the Police Report, the police confirm that they obtained a copy of Dean's Nevada driver's

license. Plaintiff(s) list off the relevant NY statues that can be proved now and as well as other relevant statutes

that will likely be proved after discovery.

482. All of these NY Enterprise Corruption statutes will be applied to each defendant in the Civil RICO Case

Information Statement and for now are generally listed and Plaintiff(s) generally alleged all of the elements are

fulfilled by the allegations made above and will make some comments below.

483. S 200.12 Bribe receiving in the first degree.

A public servant is guilty of bribe receiving in the first degree when
he or she solicits, accepts or agrees to accept: (a) any benefit from
another person upon an agreement or understanding that his or her vote,
opinion, judgment, action, decision or exercise of discretion as a
public servant will thereby be influenced in the investigation, arrest,
detention, prosecution or incarceration of any person for the commission
or alleged commission of a class A felony defined in article two hundred
twenty of this part or an attempt to commit any such class A felony; or
(b) any benefit valued in excess of one hundred thousand dollars from
another person upon an agreement or understanding that such public
servant's vote, opinion, judgment, action, decision or exercise of
discretion as a public servant will thereby be influenced.
Bribe receiving in the first degree is a class B felony.

484. S 200.20 Rewarding official misconduct in the second degree.

A person is guilty of rewarding official misconduct in the second
degree when he knowingly confers, or offers or agrees to confer, any
benefit upon a public servant for having violated his duty as a public
servant. Rewarding official misconduct in the second degree is a class E felony.

485. S 200.22 Rewarding official misconduct in the first degree.

A person is guilty of rewarding official misconduct in the first
degree when he knowingly confers, or offers or agrees to confer, any
benefit upon a public servant for having violated his duty as a public
servant in the investigation, arrest, detention, prosecution, or

incarceration of any person for the commission or alleged commission of
a class A felony defined in article two hundred twenty of the penal law
or the attempt to commit any such class A felony. Rewarding official misconduct in the first degree is a
class C felony.

486. S 200.25 Receiving reward for official misconduct in the second degree.

A public servant is guilty of receiving reward for official misconduct
in the second degree when he solicits, accepts or agrees to accept any
benefit from another person for having violated his duty as a public
servant. Receiving reward for official misconduct in the second degree is a class E felony.

487. S 200.27 Receiving reward for official misconduct in the first degree.

A public servant is guilty of receiving reward for official misconduct
in the first degree when he solicits, accepts or agrees to accept any
benefit from another person for having violated his duty as a public
servant in the investigation, arrest, detention, prosecution, or
incarceration of any person for the commission or alleged commission of
a class A felony defined in article two hundred twenty of the penal law
or the attempt to commit any such class A felony. Receiving reward for official misconduct in the first
degree is a class C felony.

488. S 200.45 Bribe giving for public office.

A person is guilty of bribe giving for public office when he confers,
or offers or agrees to confer, any money or other property upon a public
servant or a party officer upon an agreement or understanding that some
person will or may be appointed to a public office or designated or
nominated as a candidate for public office. Bribe giving for public office is a class D felony.

489. S 200.50 Bribe receiving for public office.

A public servant or a party officer is guilty of bribe receiving for
public office when he solicits, accepts or agrees to accept any money or
other property from another person upon an agreement or understanding
that some person will or may be appointed to a public office or
designated or nominated as a candidate for public office.
Bribe receiving for public office is a class D felony.

490. S 200.56 Corrupt use of position or authority.

A person is guilty of corrupt use of position or authority if such
person:
1. While holding public office, or being nominated or seeking a
nomination therefor, corruptly uses or promises to use, directly, or
indirectly, any official authority or influence possessed or
anticipated, in the way of conferring upon any person, or in order to
secure, or aid any person in securing, any office or public employment,
or any nomination, confirmation, promotion or increase of salary, upon
consideration that the vote or political influence or action of the
person so to be benefited or of any other person, shall be given or used
in behalf of any candidate, officer or party or upon any other corrupt

condition or consideration; or

2. Being a public officer or employee of the state or a political subdivision having, or claiming to have, any authority or influence affecting the nomination, public employment, confirmation, promotion, removal or increase or decrease of salary of any public officer or employee, corruptly promises or threatens to use any such authority or influence, directly or indirectly to affect the vote or political action of any such public officer or employee, or on account of the vote or political action of such officer or employee; or

3. Corruptly makes, tenders or offers to procure, or cause any nomination or appointment for any public office or place, or accepts or requests any such nomination or appointment, upon the payment or contribution of any valuable consideration, or upon an understanding or promise thereof; or

4. Corruptly makes any gift, promise or contribution to any person, upon the condition or consideration of receiving an appointment or election to a public office or a position of public employment, or for receiving or retaining any such office or position, or promotion, privilege, increase of salary or compensation therein, or exemption from removal or discharge therefrom. Corrupt use of position or authority is a class E felony.

491. S 175.05 Falsifying business records in the second degree.

A person is guilty of falsifying business records in the second degree when, with intent to defraud, he:

1. Makes or causes a false entry in the business records of an enterprise; or

2. Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or

3. Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position; or

4. Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise. Falsifying business records in the second degree is a class A misdemeanor.

492. In the case above this applies to the "balance sheets not balancing," and there were four versions of it blasted out into cyberspace (read: wire fraud) and the one who actually did it – Ms. Dace Stripniecks – got a promotion and a raise for it all and was made an officer of ICCRC for her ill works. Dean of course was "disciplined" for outing it all to the membership. Pure Corruption.

493. S 175.10 Falsifying business records in the first degree.

A person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof. Falsifying business records in the first degree is a class E felony.

494. The first "balance sheet not balancing" was clearly done for "not above board reasons," and the subsequent 3 versions of the "balance sheets not balancing" was an attempted cover up of it all.  Conspiracy to cover up a crime is not the same as the actual crime.

495. S 205.55 Hindering prosecution in the third degree.

A person is guilty of hindering prosecution in the third degree when
he renders criminal assistance to a person who has committed a felony.
Hindering prosecution in the third degree is a class A misdemeanor.

496. All Imm defendants hindered prosecution by their involvement and/or support of the unlawful discipline complaints and by "disciplining" Plaintiff Dean for doing his job that he was elected to do and that was to investigate them and not for the Imm defendants to stop the investigation with false "forced labor" discipline complaints run through in violation of the Enterprise Corruption Law. They have also hindered the prosecution of the False accusers by keeping Dean busy.

497. S 205.60 Hindering prosecution in the second degree.

A person is guilty of hindering prosecution in the second degree when he renders criminal assistance to a person who has committed a class B or class C felony. Hindering prosecution in the second degree is a class E felony.

498. Here all Imm defendants were helping management and directors secure and keep control of the Immigrant Enterprise.

499. S 210.45 Making a punishable false written statement.

A person is guilty of making a punishable false written statement when
he knowingly makes a false statement, which he does not believe to be
true, in a written instrument bearing a legally authorized form notice
to the effect that false statements made therein are punishable.
Making a punishable false written statement is a class A misdemeanor.

500. Here the Management and Directors used Ms. Kim Ly and Ms. Carla Gelbloom to recruit and write discipline complaints for individuals that had very little idea of what in fact they were "complaining" about and this is in writing and Ms. Ly essentially said that it was of no matter and that these individuals could still complain.

501. A person is guilty of coercion in the first degree when he or she commits the crime of coercion in the third degree, and when: 1. He or she commits such crime by instilling in the victim a fear that he or she will cause physical injury to a person or cause damage to property; or2. He or she thereby compels or induces the victim to: (a) Commit or attempt to commit a felony; or (b) Cause or attempt to cause physical injury to a person; or (c) Violate his or her duty as a public servant. Coercion in the first degree is a class D felony.

502. Phil Mooney put it in writing and was the one who came up with the idea for using the discipline complaint system to protect himself and the other co-conspirators in keeping control of the enterprise. The intent and motive of Mr. Mooney was to criminally coerce Mr. Dean into dropping the investigation.  The discipline complaints were meant to destroy Dean's reputation and do damage to the Saga Enterprise and Mooney made

reference to Dean's securities licenses in the United States and that was his way of saying: "Mission Accomplished," from the "flight deck," with respect to a portion of their scheme.

503. Plaintiff Dean was denied insurance three times by ICCRC's co-defendant Insurance companies to defend against their scheme. Once was for the discipline complaints, once was for the removal of the board, and once was for what transpired in Act III. There are common law claims for this below. Additionally…

504. 176.30 Insurance fraud in the first degree. A person is guilty of insurance fraud in the first degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one million dollars. Insurance fraud in the first degree is a class B felony.

505. S 190.65 Scheme to defraud in the first degree.

> 1.  A person is guilty of a scheme to defraud in the first degree when he or she: (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons; or (b) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons; or (c) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person, more than one of whom is a vulnerable elderly person as defined in subdivision three of section 260.30 of this chapter or to obtain property from more than one person, more than one of whom is a vulnerable elderly person as defined in subdivision three of section 260.30 of this chapter, by false or fraudulent pretenses, representations or promises, and so obtains property from one or more such persons.
> 2.  In any prosecution under this section, it shall be necessary to prove the identity of at least one person from whom the defendant so obtained property, but it shall not be necessary to prove the identity of any other intended victim, provided that in any prosecution under paragraph (c) of subdivision one of this section, it shall be necessary to prove the identity of at least one such vulnerable elderly person as defined in subdivision three of section 260.30 of this chapter.
> Scheme to defraud in the first degree is a class E felony.

**Exhibit 15 - Richard Dennis Complaint Against Ryan Dean**

506. S 190.65 Scheme to defraud is essentially what Enterprise Corruption is about with respect to the Enterprise Corruption in the State of New York.

128

507. Plaintiff Dean at that point in 2016 had no other basis to even determine if the discipline complaints were legitimate or not and had ultimately to wait until 2020 when Ms. Sasch-Kate Marskell gave the emails in 2020 and showed the fraud and deception; it was at this point that Plaintiff Dean suspected that the Immigration Association-In-Fact in Canada and the False Accuser Association-In-Fact in the USA were somehow connected. In 2016 Dean did not even know that the CNCA existed or that that ICCRC by-laws were being grievously breached, much less that there were Federal and State RICO (or equivalent laws) that applied to this matter. But all of Imm defendants who were "lawyers" sure knew the laws and/or at least had heard of them and they were gaming the system to their own corrupt advantage.

508. Mr. Dennis not only called for the removal of an elected Director contrary to the CNCA but also for the appointment of the loser (himself). ICCRC and his Board and Officers Friends (Imm defendants) thought that it was such a good idea that they adopted this position for Mr. Dennis and then they did it again a number of times that year and more boldly so in later years for their other friends. These acts are what comprises of the Enterprise Corruption Predicate acts detailed above. It was only a matter of time for Imm defendants to deliberately execute their plot. In so doing, they kept Mr. Dennis around as a de facto board member immediately after his election defeat contrary to the By – Laws 51.3(s) (Exhibit 5) and officially appointed him to "his old board seat" in October 2017, and then again in November 2017 – November 2018, as a double "Thanks For Being a Good Friend Gesture" in Violation of the CNCA 197(1)(c), 197(1)(L), 197(1)(n), 128 (8) and 132 (2).

509. At that point in 2017 what did Imm defendants care – they thought that they had already got away with it all as I was long gone? Besides, they had already published their "Mid Term Appointment Regulation," so it was all *sold as being legal and legitimate to the membership,* in Exhibit 18. Wire Fraud

510. *In truth, the membership was not buying any of Imm defendants' undemocratic actions but if Imm defendants could ignore Parliament and the CNCA and kick Plaintiff Dean out of office after being elected, then what were regular members to do* (see below multiple sections)*? Most of these members are Immigrants themselves coming from all parts of the world where many places are undemocratic and truly dangerous places to live. Many of these immigrants were taught in their home country to not say anything or else suffer great retribution. What are they to think and do when they witness these types of undemocratic situations at Canada's Immigration Consultant Regulator? The answer: Think all they like to think but above all -- Stay Quiet – and they did in droves* (see Exhibit 86).

511. *Plaintiff* clearly remember that there was a "phone in Board and Officer meeting" in early 2017 where Chris Daw and Rhonda Williams first proposed these "second place appointment winners." Plaintiff immediately knew what they were trying to do because all of their incumbent friends were swept out in elections by the membership. Second place necessarily meant their friends. Suddenly, two minutes later, Mr. Barker had an announcement fully edited and ready to submit to the membership about these Director appointments to send

out to the membership. This reference can be found in Exhibit 9. It was wire fraud and another step in the scheme to defraud.

512. Acting CEO and Registrar Lawrence Barker, Chair Daw, Director Williams, Director Vinsome, Director Edward Dennis, Director Guadet and later Director Perram all thought that elections were trivial things and that appointing their friends in lieu of the written ICCRC By – Laws and the CNCA 128 (8), 132 (2), 197(1)(c), 197(1)(L) and 197(1)(n) were *much more* convenient, expedient and safe. Why risk elections and/or General Meetings, or even bother to inform the membership for the first few appointments, until things were tipped to their "voting balance" favor on the board? It was all meant to be a violation of Federal RICO statutes, Nevada RICO statute and NY Enterprise Corruption Laws as detailed herein.

513. The sure thing for Chris Daw and his Board and Officer Friends was to appoint their friends the membership just voted out. In subsequent years they became more bold and appointed candidates who came in nearly last in their previous election bids. In one case the "Special Lucky Friend" was even declared winner of his election in 2018, but alas was not even a candidate running in the 2018 election; this "Director" lost in election in both 2016 and 2017 **(see below in 2018 – 2019 Director Appointments)**. All this qualifies as an overt escalation violation of 18 USC 1962(a)(b)(c)(d).

514. The Imm defendants, after a few appointments and taking control of the Board finally got around to announcing to the membership this "Appointment of Directors Method" in the June 30th, 2017 Bulletin to the membership:

> "....following the Board's decision to implement a process to fill mid-term vacancies by using the next highest placing candidates from the recent election….."

515. Thousands of members relied on these bulletins and emails blasts that injured Plaintiff(s) and their property and business. Imm defendants made the bulletins out to true and legitimate and yet they are full of fraud and Imm defendants even like to have "fraud prevention month," as in prevention of the detection of their own fraud.

516. It will be shown that this is precisely what the False Accusers do as well. They project that they are the victims but really the ones committing the crimes. Imm defendants project that they are preventing fraud but they are the ones perpetrating most of it. Again, same tactics and designs using the Enterprise to perpetrate predicate RICO (and/or state RICO predicates).

517. Imm defendants had appointed 7 (seven) Directors up to this point in 2017 and three in this very month and did not give any notice to the membership under CNCA 132 (2) until of course after the fact. "Notice" means the announcement of something impending and a further play of the Board's willful manipulation of the prepositional words of "before" and "after" as in the PID issue above.

518. Instead, this was Imm defendnats' way of giving the members "notice," that members were about to receive a "notice," of the looming Official "Director Mid – Term Regulation," but that they were not deserving of prior "notice," of the fundamental change ICCRC was violating under CNCA 197(1)(c), 197(1)(L), 197(1)(n), 128 (8) and

132 (2) nor the violation of US Laws and probably a lot of other laws worldwide as well where other members reside in different countries.

**Exhibit 16 – ICCRC June 30 2017 Bulletin**

519. Imm defendants then published to the membership via a monthly email bulletin on August 1, 2017 (Exhibit 18) the "Director Mid-Term Selection Regulation" where there was explicit language contrary to the CNCA and the ICCRC's own Articles of Continuance with respect to the 12-month appointment intervals of appointed Directors.

520. This was ICCRC's way of giving members further "notice," that they were not entitled to "notice," under CNCA Officially, because it was an ICCRC Regulation that *really* mattered and that the Board had struck down (read: ignored) major portions of the Act with respect to ICCRC's activities.

**Exhibit 17 – ICCRC Director Mid-Term Selection Regulation**

521. In the ICCRC August 1 2017 Bulletin it said under "GOVERNANCE AND NOMINATING COMMITTEE (GNC) REPORT:

> "Board Composition Changes – The Board of Directors has approved several changes to the composition and size of the Board of Directors in Principal. By – Law amendments will be necessary to effect these changes, and members can expect proposals to be presented at the November AGM in order to take effect in 2018."

522. It is interesting that in Exhibit 12 above there was no report given to the members about the whole sale changes made to the By – Laws regarding the PID issue as those By – Laws were published to the membership as done and with no notice. The ICCRC "Director Mid-Term Selection Regulation" was just done in a matter-of -fact fashion and Directors were appointed undemocratically.  Members were then given notice in the ICCRC August 1, 2017 Bulletin and that they could consider "Board Composition Changes" through proposals at the next AGM.  Why's that?

523. Plaintiff Dean believes that Chris Daw and his Board and Officer Friends (also known as the 'Imm defendants') knew that these existing appointments were unlawful and not in accordance with the CNCA and that is why in 2018 – 2019 ICCRC made wholesale composition changes to the Board where there were now 5 Public Interest Directors (Exhibit 32).

**Exhibit 18 – ICCRC August 1, 2017 Bulletin**

524. The articles of the corporation in the form of the ICCRC "Articles of Continuance and Amendment, December 11, 2015" version, which was in force at the time, provided for under the section "Additional Provisions" the appointment of no more that 1/3 (one third) of the directors elected in the previous election cycle. When 6 (six) directors were elected in November 2016, the Articles of Continuance and Amendment allowed the appointment of no more than 2 (two) additional directors. This rule, and the Act 128 (8), was "overlooked" each year from 2016 – 2017, 2017 – 2018, & 2018 - 2019.

**Exhibit 19 - The ICCRC Articles of Continuance**

525. The By-Laws did contain an appointment of Director feature but not appointing the 'second place winner' provision.

**2016 – 2017 Director Appointments**

526. This is a summary of the appointments in 2016 – 2017 and the various breaches of the Act.

**Exhibit 20 - Summary of Appointments and Removal of ICCRC Board Members**

**Mr. Javier Vinsome Director Appointment**

527. Was one of the PIDs in question appointed before the 2016 Annual General Meeting (See Exhibit 1 Above).

**Mr. David Collie Director Appointment**

528. Was one of the PIDs in question appointed before the 2016 Annual General Meeting (See Exhibit 1 Above).

**Mr. Peter Perram Director Appointment**

529. Mr. Peter Perram, lost in his election bid in November 2016. He was then appointed to the Board in 2017 under suspicion of being in conflict of interest with Director Rhonda Williams. It was discussed at length on the Board, but he was appointed Director nevertheless.

**Exhibit 21 – ICCRC March 15 2017 Bulletin**

**Mr. Paul Fischer Director Appointment**

530. Mr. Fischer accepted the director appointment and then resigned before the first day of his appointment. He is not part of the scheme – but it still counts as one director appointment that the Imm defendants attempted to do.

**Exhibit 22 – April 1 2017 Bulletin**

**Mr. Alex Bersakow Director Appointment**

531. As well, under the ICCRC revised By – Laws (that were not voted on), 44(1)(c) is still not in conformance with the Act and Regulations (as in Exhibit 16) and Mr. Beraskow was appointed under the same terms as two original PID "directors" in 2016 – 2017, and still with no quorum.

**Mr. James Hseih Director Appointment**

532. As well, under the ICCRC revised By – Laws (that were not voted on), 44(1)(c) is still not in conformance with the Act and Regulations (as in Exhibit 16) and Mr. Hsieh was appointed under the same terms as two original PID "directors" in 2016 – 2017, and still with no quorum.

**Ms. Nancy Awwad Director Appointment**

533. See Exhibit 16.

534. In this month alone Imm defendants appointed 3 (three) Directors in violation of the Act 132 (2) and 128 (8). What followed next was a step up in their boldness.

**Ms. Joan Page Director Appointment**

535. When Gabrielle Fortin defeated Ms. Joan Page in election, and after Ms. Fortin resigned shortly after, Ms. Page was reseated and then was elevated to Vice Chair of ICCRC some months later for 2017 – 2018. See Exhibit 18, pg 3.

536. It did not bother the Imm defendants even a bit that Joan Page in her previous election was a bankrupt as Plaintiff Dean heard her say at an election orientation meeting in 2016, and this should have disqualified her to be a director then under 45.1(e) but under the ICCRC By – Laws to the Barker/Daw regime it was 'no problem.' The CNCA was clear under Qualifications of directors 126 (1)(d):

> "The following persons are disqualified from being a director of a corporation:
> (d)-a person who has the status of a bankrupt.

537. With friendship at ICCRC comes benefits, and this By-Law _and_ the Act were waived for Ms. Page (See Exhibit 17 above).

**Mr. Richard Dennis Director Appointment**

538. In the ICCRC November 1 2017 Bulletin it stated on page 9 of the MID – TERM DIRECTOR APPOINTMENT

> "NOTICE IS HEREBY GIVEN THAT Mr. Richard Dennis, RCIC (from **New York State, USA**) has accepted the mid-term appointment for the Board vacancy for the Atlantic Canada, Territories and International Region, replacing Mr. Ryan Dean." (emphasis added)

539. Mr. Dennis actually put in writing that Imm defendants bribed him, that he accepted the bribe, and in turn everyone involved was part of the conspiracy and then they all agreed and did authorize the wire fraud to blast this out into the entire membership and into the world. Mr. Dennis of course is a resident of **Buffalo, New York** when he "accepted" his bribe and arrogantly and publicly announced it and being the new "director" of the Atlantic, Territories, and International region, that did affect commerce in the United States for some then 500 ICCRC members (the membership was growing exponentially at this time). ("RCIC") is a Registered Canadian Immigration Consultant regulated by ICCRC. That in turn makes Mr. R. Dennis and his co-conspirators culpable of the Foreign Corrupt Practices Act – which is a money laundering offense – and the proceeds of any money that he has received in the last 4 years since the acceptable of his bribe are subject to forfeiture either criminally and/or civilly under 18 U.S.C. 1349 (Attempt and Conspiracy).

540. The bribery provisions of the Foreign Corrupt Practices Act (FCPA) are three: 15 U.S.C. §§ 78dd1 (trade practices by issuers), 78dd-2 (trade practices by domestic concerns), and 78dd-3 (trade practices by others within the United States).222 Other than the class of potential defendants, the elements of the three are comparable. They make it a crime to: (1) willfully; (2) make use of the mail or any means or instrumentality of interstate commerce; (3) corruptly; (4) in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to; (5) any foreign official; (6) for purposes of [either] influencing any act or decision of such foreign official in his official capacity [or] inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official [or] securing any improper

advantage; (7) in order to assist such [corporation] in obtaining or retaining business for or with, or directing business to, any person.

541. It is of note that had Dean accepted the Imm defendants' "board resolution," not only would Dean have agreed to join their scheme and offer to the "Join The Dark Side," but Dean would have also violated the Foreign Corrupt Practices act.  It is not nearly as dramatic as Darth Vader asking Luke Skywalker to "Join The Dark Side," but in reality, Foreign Corrupt Practices Act charges against Dean would also destroy his reputation and the Saga Enterprise.  Luke "just got his hand cut off" and jumped into the abyss; look what happened to Dean as he would have "jumped" to have a chance to "jump" to solve his problem(s). There is no escape it seems from False allegations of rape in the United States – even if a person gets it dismissed as Dean did in 2017 and it is not appealed –  unless a fraudulently concealed Police Report and a trail of documents follow the ever changing story of False accusers….just like the documents that are following the Imm defendants.

542. So Mr. Richard Dennis and the Imm defendants did violate the Foreign Corrupt Practices Act to obtain Dean's directorship, they did do "some" back room dealing, and then via a bribe scheme brought Mr. Dennis out of the darkness and back into the "official fold."

543. Baron in 2014 said it so succinctly with this and Plaintiff(s) reproduce it because everything Dean has experienced. He has felt, feared and suffered under False Accusers' and Imm defendants' cruel criminal intentions:

> "Being publicly accused of a crime one did not commit could lead a person to jump off a bridge. Once the information is out there, defending yourself, clearing your name, fighting suspicion and tolerating disdain is a horrible predicament.
>
> People with little information can form strong opinions and take unwarranted retaliatory action from expulsion from the clan to spreading the false word.
>
> ...If the accusations are not true, the person is in a situation that is similar to being bullied. Even if one is rich, successful, famous or "has it all," the psychological devastation can be ruinous. If you are not believed, if you cannot fight back with the true story, if now you are distrusted and under scrutiny, the sense of helplessness is overwhelming. People with inner vulnerabilities are easy targets. Others sense the fragility and find it thrilling to gang up or attack. Having a scapegoat can help a group form a strong bond and find meaning in what could be otherwise empty lives...
>
> It is widely known that people with certain kinds of pathology are brilliant at looking like victims when they are actually perpetrators. They can ruin the life of an innocent person."

544. But Plaintiff(s) are over that now and are ready to bring all defendants to US Justice.

545. In doing all of this and destroying Dean's reputation and as well as the Saga Enterprise – and causing others to take retaliatory actions - they accomplished domestic extortion under violation of the Foreign Corrupt Practices Act and many other predicate acts.

546. Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by … extortion or attempts or conspires to do so' has violated the Hobbs Act. Mr. Dennis

'obtained property" form Dean, under color of official right he was not entitled to. Dean and the Saga Enterprise was also injured by all of this in furtherance of the conspiracy to defraud him (and the membership of ICCRC).

547. Extortion "under color of official right" or under fear of economic harm are both actionable under the Hobbs Act. That Mr. Dennis also accepted the bribe and the Imm defendants reported in the bulletin (in fact all of these bulletins) are wire fraud for each person appointed and every time their name appeared in any document that was sent out to the membership – such as an annual report with all of the perpetrators – in the committees supporting the criminal acts. Here are all of the annual reports for ICCRC with this information:

548. Note again that in the Exhibit and Appendix link, Exhibit 36, that the Parliamentary Committee (in a 15-0 vote) voted to deregulate ICCRC.

https://www.dropbox.com/s/m602afkftgu0xf4/Exhibit%2036%20%20The%20Parliament%20of%20Canada%20CIMM%20Report%20June%202017.pdf?dl=0

549. Imm defendants were a disaster in 2017 and they are even more of a disaster now. See the link for all of the ICCRC annual reports since 2016 to date:

https://www.dropbox.com/sh/mg6lwvvi395clau/AAACyQoVtcgQySkndLfMwtxoa?dl=0

550. Each one of these annual reports is wire fraud, as well as evidence of the scheme to defraud violating RICO (both Federal and State) et al. The Imm defendants have taken control of a monopoly and have given themselves vast powers while infiltrating and operating the monopoly (Immigration Enterprise) with extreme criminality. Congress' intend was that where this was found that it was to be 'eradicated.' At the minimum, Imm defendants should be forbidden to operate in the United States now and forever.

551. The gravamen of the offense is simply the misuse of interstate communication facilities to execute "any scheme or artifice to defraud." 18 U.S.C. § 1343; See United States v. States, 488 F.2d 761, 767 (8th Cir. 1973). The prosecution condones no immoral bargain; it concerns itself with neither the victim's loss nor the defendant's gain.

552. Mr. Dennis did not accept the Director Appointment – he asked for it in his complaint (See Exhibit 15) and he and Chris Daw et al, were just bidding their time until it happened. "Second Place wins" had already bore fruit for them in the Joan Page Appointment above.

553. Furthermore, this was not notice that was given to the membership – it was already done. More importantly, this was the only Director Appointment announced in any ICCRC Bulletin in such a *formal way giving it the artificial appearance and credence that it was "official"* when of course it was contrary to the Act in multiple ways (see below in Board Trial and Breach of Parliamentary Privilege) but also because it was deceptive, dishonest and oppressive to the membership.

554. In the same ICCRC November 1 2017 Bulletin under the GOVERNANCE AND NOMINATING COMMITTEE UPDATE, Rhonda Williams writes:

"Board Appointment – GNC also **considered** the appointment to fill a vacant position the appeal of Ryan Dean to his removal from the Board failed. Richard Dennis has been appointed to the Board of Directors as of October 2017 as per the Director Mid-Term Selection Regulation."

555. They did not consider it – it was planned before Dean became a director.

556. Rhonda Williams herself was in deep conflict of interest herself and leading 20 others to operate way outside the Act (See Exhibit 44 below). Chris Daw and his Board and Officer Friends did not consider Mr. R Dennis' appointment – they planned it far in advance, as detailed above.

**Exhibit 23 – ICCRC November 1 2017 Bulletin**
**2017 – 2018 Director Appointment**

557. Imm defendants became more bold in 2017 - 2018 by keeping the appointments of Alex Beraskow, James Hsieh, Nancy Awwad, Richard Dennis and Joan Page.  According to the CNCA 128 (8), Beraskow, Hsieh, Awwad, Dennis and Page should **all** have ended their term at the 2017 AGM, but carried on because ICCRC's Board and Officers were continuing with their unconcern with something as trivial as the CNCA.  Mr. Haile Britu was also appointed during this time as well.

558. It was just more blatant violation of CNCA and 18 USC § 1962.

**Exhibit 24 – ICCRC November 2017 Election Results**

**Exhibit 25 – Summary of Appointments of ICCRC Board Members 2017 – 2018**

559. What's more, the most recent election in November 2017 had 6 Directors elected and therefore at most ICCRC could appoint only 2 Directors. The appointments in 2017 - 2018 could be almost anybody for a lawful appointment to a limit of two *except* for Mr. Beraskow, Mr. Hsieh, Ms. Awwad, Mr. Dennis and Ms. Page because they were already "appointed" in 2016 – 2017.

**Exhibit 26 – ICCRC 2017 – 2018 Annual Report**

560. This means that all of the Director appointments at ICCRC, in 2017 – 2018, were largely in *double violation* of the CNCA 128 (8) by extending the term of the Directors whose term should have ended at the end of the 2017 AGM as well as exceeding the limits of those allowed to be appointed.  Mr. Haile Britu although appointed in violation of 128(8) was not in double violation.

561. Whenever there is a violation of 128 (8) of CNCA it also means that there is a violation of 132 (2) of the CNCA.  In the case of double violation of 128 (8) Plaintiff believe it still counts as only one violation of 132 (2) as it is still one meeting per Director in question.

562. These unlawful appointments were wilfully designed to buy the Board and Officers time to manipulate their messaging to members in monthly bulletins in the wake of the damning Parliamentarian CIMM report with respect to ICCRC in June 2017 (Exhibit 36) and to discredit the critics like Plaintiff Dean and others, while they ignored the Act, and perversely abused their power.  It is of further note that Mr. R Dennis was appointed in October 2017 (with no quorum and in excess of the Act 128 (8)) when there was a perfectly good chance for him to be elected in November 2017. *Why* did Mr. R Dennis not run for the election in November 2017, and instead accept the sure

appointment and bribe? Mr. R Dennis was going to run in the 2017 election (See Exhibit 82 below) but then was suddenly appointed corresponding with Dean's Appeal to the Board being denied by the Appeal Committee and the Election Committee preventing me from running in elections (See Appeal Committee below as well as a note from the Election Committee in Exhibit 27).

563. This is further corresponding evidence that what occurred in New Jersey is connected – Imm defendant did not want to run the risk of all of this spilling out into the election. Plaintiff wanted to run again in election and was prevented from doing so by Imm defendants. This decision was sent from Lawrence Barker's email address in the capacity of elections officer and that was wire fraud as well.

564. Plaintiff is confident that Ret. Judge von Finckenstein, an election committee member, will not be pleased when he learns what Imm defendants have involved him in;  Dean state here that Dean believes Judge Finckenstein did not know the true facts of what was going on with Imm defendants and that Plaintiff(s) holds him harmless in all of this as far as Plaintiff(s) are concerned. However, as a suggestion, the Court may find Judge Finckenstein an unusually positioned source of information with respect to this matter, if the Court so chooses, and under the Rules of Federal Civil Procedure for the United States.

565. The Board and Officers (Imm defendants) alternatively are responsible for all of these matters as well as involving a Federal Judge to do their bidding and it is yet another instance of wire fraud by Mr. Barker et al.

566. The Board itself passed another Resolution on May 5, 2017 reaffirmed the original Resolution of April 20, 2017, and therefore it was another violation of the CNCA, Breach of Dean's Parliamentary Privilege and violation of Dean's due process (See below for more details).

567. What's more, three independent public representatives made this decision to deny Plaintiff's right to run for election.  Why did ICCRC not ask the members at that time in a Special General Meeting under the Act?

**Exhibit 27 – ICCRC Election Committee Decision**

568. Joan Page not only became a Director unlawfully through these appointments, in violation of ICCRC's By – Laws and the Act, but also became ICCRC's Vice Chair and Officer for 2017 - 2018. Why have a top ten business school graduate like Plaintiff look into ICCRC's finances when a bankrupt like Joan Page would do a much better job as well as run the entire organization?

569. At same time in nearly every monthly Bulletin in a Narcissistic Corporate Display of Predicate Activity, where the Imm defendants claimed to be fighting Fraud, but it was these very Bulletins where they admitted they were doing the very things described that they said they were supposedly fighting by appointing all of these Directors Contrary to the CNCA.

**Mr. Haile Britu Director Appointment**

570. When Lynn Gaudet resigned in November 2017 (Daw said December), the next Director in line was from the United Canadian Immigration Consultants Association ("UCICA") – run by Mr. Watto and another arch enemy of

Imm defendants at the time, where the overwhelming majority of the members had a membership at that time, and alas – the next in line was not appointed. Instead ICCRC changed its unlawful appointment rules again, just in time to protect themselves, ICCRC even delayed its own message about the resignation of Ms. Gaudet so they could figure out their next move.

**Exhibit 28 - ICCRC January 15 2018 Bulletin**

571. Mr. Daw wrote: sd

> "Sadly, I also need to let Members know that Lynn Gaudet resigned from the Board of Directors in December. We were hoping to share that message at the same time we did a recruitment callout for Directors, but following the By – Law amendment approved in November a Board approved skills matrix needs to be used as the basis for the appointment. That skills matrix is in development, and we hope to have more details on the recruitment out in the following weeks."

572. Ms. Nicki Wei, who was slated to be the next director in the 2017 and 2018 election was passed over because she was not ICCRC/CAPIC friendly. That "skills matrix" mentioned by Daw in the bulletin ended up appointing Mr. Haile Britu, some months later.

**Exhibit 29 – ICCRC June 15 2018 Bulletin**

**2018 – 2019 Director Appointments**

573. In the November 2018 election there were 5 (five) individuals elected, since the candidate from Quebec won by acclamation, it meant that ICCRC could at most make only 1 appointment by the formula of 1/3 times the total number of directors elected in the previous election per CNCA 128 (8) and ICCRC's own Articles of Continuance (Exhibit 19).  Since people cannot be a fraction, 5/3 is rounded down to 1 (one) appointment only limitation for 2018 – 2019, under the Act 128(8) and ICCRC's Articles of Continuance.

**Exhibit 30 – ICCRC November 2018 Election Results**

574. In 2018 – 2019 ICCRC has so far appointed 3 directors in excess of 128 (8) but these appointments are worth mention in detail here because they are exceptionally grievous to the membership and the Public.

575. Whenever there is a violation of 128 (8) of the Act it also means that there is a violation of 132 (2) of the Act.  In the case of double violation of 128 (8) I believe it still counts as only one violation of 132 (2) as it is still one meeting per Director in question.

**Mr. James Hsieh Director Appointment**

576. Mr. Hsieh was appointed yet again 2018 – 2019 and should not have been because he was appointed in 2016 – 2017 and 2017 – 2018 when he should not have been as per above. This is another *double violation* and perhaps a *triple violation*. Under the ICCRC revised By – Laws (that were not voted on), 44(1)(c) is still not in conformance with the Act and Regulations (Exhibit 12) and Mr. Hsieh was appointed under the same terms as two original PID "directors" in 2016 – 2017, and so his appointment was invalid from this perspective too.

**Exhibit 31 – ICCRC Board of Directors 2018 - 2019**

**Mr. Peter Perram Director Appointment**

577. In November 2017 Mr. Perram lost his election bid again, gaining only 7.1% of the vote, and coming in 6th out of 8 candidates.  Because Mr. Perram was a Very Good Friend of the Board and Officers, ICCRC went ahead anyways, contrary to the Act 128 (8), and in open deception, and contrary to the will of the membership, **"elected" Mr. Perram in 2018 *when he was not even in the running for election as announced in the ICCRC Bulletin*.** What does one call this? What does 132 (2) of the Act say about this where supposedly a meeting or election was called but it was not really called in the case of Mr. Perram?  For now, Dean call it both dishonest and deceptive practice against the membership and the public and it also counts as an "Oppressive Appointment" under the Act because Mr. Perram was not elected.  Outright scheme to defraud the entire membership comes to mind as well.

578. Mr. Perram, told Dean face-to-face, during a break at the Board Trial on April 20, 2017, to remove Dean, that "all boards are corrupt" and that is why Perram was voting Dean off with a wry smile.  The CNCA does not tolerate this dishonesty and deception in no under terms under Oppression, but apparently Imm defendants promotes it.

579. As it relates to Act II, at the ICCRC SGM, Mr. Perram asked Plaintiff Dean "how is business with your hedge fund" with again a wry grin on his face as if he knew something about the ongoings on the United States. Mr. Perram in his arrogance connected the two matters with respect to the Imm defendants and False accusers – but more proof was needed.

580. Here is how blatantly corrupt Mr. Perram is. In Exhibit 32 find the following:

> "2018 BOARD ELECTION RESULTS…Region: Atlantic Canada and Territories and International: Peter Perram."

581. Compare this with Exhibit 30 where Mr. Perram was not even on the ballot.  Mr. Perram was solely appointed originally in March 2017 to weigh the scales of the Board to remove Plaintiff with his extra vote in the case that Mr. Javier Vinsome could not vote for conflict of interest reasons (but did anyways) and where Dean's vote was not counted as he was deemed "conflicted."

**Exhibit 32 - ICCRC November 15 2018 Bulletin**

582. In Plaintiff Dean's election, he won nearly 50% of the vote in November 2016 among three candidates – according to ICCRC.  Mr. R. Dennis in his complaint against Dean (Exhibit 15) implied Dean in fact had won more than 50% of the vote in section 6 wrote:

> "The other two candidates from the same region….only received a fraction of the votes that Mr. Dean received."

583. It is just like False accusers where they cannot keep their own story straight.

584. This opens the door to forensic count of each and every vote in every election to see what's what and of course Mr. Barker's email to Plaintiff informing him of his election win may also be wire fraud as it may have undercounted the vote percentage that Dean received. It is no wonder that the Imm defendants removed Dean

from the board without benefit of the CNCA 130 where only the members who elect a director can remove that director.

585. So which is it? Did Plaintiff win nearly 50% of the vote in 2016 as Mr. Barker reported or was it the outgoing Director Mr. R Dennis who says that this number was much higher using the term "fraction?" This implies that the election results for 2018 and 2019 may also be invalid. **Exhibit 33 – Ryan Dean Elected Director November 2016 - CONFIDENTIAL**

586. It is also of further note that Mr. Dennis was also "elected" in November 2018 election but he was in violation of the ICCRC's  own  By – Laws Term Limits 49.1 (see Exhibit 5 above) and could not run except of course for the unwritten "backroom dealing clause," Director Douglas referred to in her letter of resignation (Exhibit 4).  "Friends of the Board and Officers" of ICCRC can and do virtually whatever they like and By Laws are not a problem either when it suits them. In truth, Mr. R Dennis never left the Board because he had Board like Powers even though he was defeated in election in 2016 by me (see below in Second Class Director At ICCRC).  Mr. Dennis at all times still had more power than me and Mr. Dennis and ICCRC are also in violation of ICCRC's own By – Law 51.3 (d) and 128(8) of the Act, as he was disqualified to be a director in 2018 – 2019 *because* of his appointments in October 2017 and again in 2017 – 2018. Mr. Dennis in 2021 is still on the board.

> "Effects of Cessation of Qualifications: An individual will cease to be qualified to continue to hold office as a member of any committee of the Council in the event of (d) in the case of a Director, ceasing to be a Director."

587. In Mr. R Dennis' "election campaign" in 2018 he states the following:

> "Richard Dennis: Knowledgeable. Capable. Dedicated….
> "….Served on the ICCRC Board of Directors for 5 years. Elected in 2012 for a 2 year term, served another 2 year term in 2014, and was asked by the Board of Directors to complete the remainder of a term when a Director left the Board in November 2017…."

588. It is of note that there were only a few campaign messages and these could be produced in less than 30 minutes – just like no legitimate politician running for office would do.

589. This certainly would not be the last time that this By – Law was waived for their friends (see Exhibit 23 & 70).

**Exhibit 34 – Richard Dennis Election Message 2018**

590. His statement respecting "November 2017" misleads as he was not asked to serve himself when a "Director left the Board in November 2017."  Mr. Dennis asked himself that the loser be declared the winner in election (exhibit 15).  Like Mr. Daw, Mr. Dennis only revealed half of his lie, and half of truth. The CNCA and US Law requires honesty – is this honest?  That fact that ICCRC was sending out these messages in one form or another with respect to Plaintiff Dean's removal from and the replacement to the Board was manipulative and oppressive to the membership and Dean.

591. In ICCRC's monthly Bulletins sent to the membership, started by Chris Daw to sculpt its monthly messaging and spin the truth, nearly without exception, ICCRC ironically and hypocritically proclaimed that it is against Fraud.

What does one call it when increasingly larger numbers of people conspire together to accomplish greater violations repeatedly in more and multiple parts of the CNCA and RICO (Federal and State) et al violations?

**Exhibit 35 – Total List of All Unlawful Director Appointments At ICCRC From 2016 – 2017, 2017 – 2018 & 2018 – 2019**

592. Mr. Daw and his Board and Officer Friends will of course try to claim ignorance in all of this but they cannot.  In the PID issue above (Exhibit 7) Mr. Daw was quoiting the Act.  In Exhibit 23 Mr. Daw states in his MESSAGE FROM THE CHAIR OF THE BOARD:

> "There were many proposals submitted this year. Several of these proposals are excellent ideas that ICCRC wants to support; however, the Canada Not-Profit- Corporations Act requires that proposals from Members must be dealt with exactly as submitted and cannot be amended, altered or broken down into multiple sections…."

593. The points are clear.  Firstly, Mr. Daw et al, were reading from the same Act, having a perspicuous analysis of it, as Plaintiff Dean has done. Secondly, yet again, Mr. Daw et al, were manipulating the Act for their own benefit because each year the proposals would come from largely one member, Mr. M Watto, their staunchest and most litigious critic.   Third, under the heading "GOVERNANCE AND NOMINATING COMMITTEE UPDATE" Rhonda Williams, GNC Chair spends pages 3 – 6 talking about all the changes to the structure of the Board with respect to Directors and nobody noticed all the violations of CNCA?  They even had access to the Governance Guru Mr. Richard LeBlanc and not nary a whiff of what the CNCA prohibited nor what US Law prohibited.

594. Mr. Daw and his Board and Officer Friends seem to always pick out the exceptions to the CNCA when it is to their benefit but miss the central points of the CNCA – like all the ways ICCRC can get dissolved and the ways the Imm defendants can be pulled into the United States with extraterritorial jurisdiction for reaching into the United States and committing numerous predicate acts of racketeering.

595. It is all too much to imagine that it was "just a mistake" or an "error" or some other "out" that the JURY will learn about when Mr. Daw and his Board and Officer Friends at various times were "caught" (see below for multiple instances) but always had a friend (another Imm defendant) to bail them out.  For instance, when Chris Daw was called to task about a provision in a 4-page double spaced Board Resolution document that had clear Parliamentary Privilege Breaches written in he said it was an "editing oversight."  Hon. MP Rempel seriously frowned before she responded for the other 14 Members of Parliament looking on.  See Board Resolution and Board Trial of Ryan Dean below for full details.

**Grounds for Dissolution 223(1)(b) of ICCRC under the Act**

596. "The Director or any interested person may apply to a Court for an order **dissolving a corporation** if the corporation has"

> (b) – contravened subsection **17(2)** or section 22, 23, 174, or 175.

597. Note Dean had filed an application with the Ontario Superior court and the Application was never heard; instead Dean's application was tossed based on the fact that the lawyers – Mr. Jeffrey Larry and Ms. Glynis Hawe of the

"law firm" Paliare Roland Rosenberg Rothstein LLP, and Mr. Evan Rankin and (Peter Wardel, Mr. Rankin's boss overseeing the matter) from Singleton, Urquhart, Reynolds, Vogel LLP all obtained the judgement by fraud by "deceiving" Judge Chozik. Judge Chozik was convinced her that she did not need to bother to read any of the contents of Dean's Evidence that the USDC is/will reading now. It was not due process.

598. Judge Chozik thought that essentially to ask for getting the ICCRC dissolved was "draconian." Not so – RICO is *draconian* and especially so that Federal and State concurrent jurisdiction and proceedings can be undertaken criminally while the Civil RICO goes forward is *draconian*. …But that was the express intent of Congress and the various State Legislatures when they crafted RICO law (or equivalent). At any rate, Plaintiff Dean has or will write to Justice Chozik to deal with the matter there as well as provide a copy of this document which Plaintiff Dean hopes will be read.

599. Mr. Larry, Ms. Hawe, Mr. Rankin, Mr. Wardel all thought that they were above the law and by virtue of their "law license" that they could say and do anything against a Pro Se litigant in Canada while at the same time firing numerous fraudulent emails over the US/Canadian border.  They have all swallowed the Jurisdiction 'hook' into the United States and just two emails makes them all full partners-in-crime to the Imm defendants. In USDC all of these pleadings and the Evidence is considered and Jeff Larry, Glynnis Hawe, and Evan Rankin did not want the Evidence in Canada heard.  Now the whole world is going to know what frauds they are.

600. Plaintiff Dean overheard Mr. Larry laughing with another lawyer that it was "fun" to sue "helpless" people and "take their money" and "beat them in court because they did not know the Court rules." Mr. Rankin and Ms. Hawe were laughing along with it all.  They ought to consider this note as their "Welcome To The United States" as well as they can "Try Their Luck In Las Vegas (Nevada)," for instance.

601. Mr. Larry even took it upon himself to send Plaintiff Dean a threatening letter into the United States (wire fraud) on a Sunday morning for the grievous wrong of taking a job (See Act III).  That alone guaranteed Mr. Larry a go at all of these matters in the United States with his written threat at the behest of the Imm defendants while they all knew that there was already two (connected) Federal Proceedings underway in United States District Court (2:19 and 2:20) in violation of 18 USC § 1512 and 18 USC $ 1513.

602. Section 17(2) of the Act Restricted **activities** or **powers** states:

> "A corporation shall not carry on **any activities** or **exercise any power** in a manner **contrary to the articles**."

**Any Activities under 17(2) Contrary to the Articles**

603. Refer to Exhibit 19. Clearly, appointing directors exceeding the limits imposed by the ICCRC "Articles of Continuance" in 2016 - 2017 is against CNCA 128(8) and sets off this dissolution if the entire year of appointments is only counted once.  If each instance of an unlawful Director Appointment is counted, then this is 9 different violations constituting grounds for discontinuance under the Act.

604. Then again in 2017 – 2018, ICCRC appointed the same individuals in excess of 1/3 of the elected Directors of the previous election and past the time limits imposed by the Act 128 (8), plus Mr. Britu, sets off this provision largely in double *violation*.  If the Court decides, then each individual Director Appointment can be either counted once or twice. If it is once then there are 6 individual violations; if it is twice then there 11 violations.

605. In 2018 – 2019 there were three more unlawful appointments and again taking this as a whole sets of the grounds for dissolution once.  If the Court instead counts each appointment separately then it sets off the grounds for dissolution thrice or four times if Mr. Hseih's violation is counted twice.

606. That is a total of at least 18 unlawful Director appointments under the Act for 2016 – 2017, 2017 – 2018, and 2018 – 2019.

**Exercise Any Powers Under 17(2) Contrary to the Articles**

607. Restating again the obvious, if the corporation is violating Canadian laws and then reaching into the United States it is violation each and every time that it was done and it is a violation of the Commerce Clause (in its entirety) and 18 USC § 1962 et al. In Plaintiff's case they had a big hand in slowing down a hedge fund and then with the False Accuser Association-In-Fact shut it down entirely.  How else are they affecting commerce (interstate and foreign) of the now some 700 ICCRC members operating out of the United States under the Immigration Enterprise controlled by the criminal Imm defendants? Clearly this all beyond "*de minimus*."

608. Between 2016 – 2017 there was no quorum and therefore ICCRC failed to call a 132 (2) Special General Meeting on 9 (nine) different occasions when each Director appointment was made. When Chris Daw and his Board and Officer Friends removed Dean from the Board (see below in Board Trial) that was also another instance of failing to Call for a Special General Meeting for a sub-total of 10 different instances of not calling for a meeting. There were other instances of violations is 132 (2) when I called for a Special General Meeting as did Director Belbachir (See Exhibits 13 & 14) making the total at least 12.

609. Under the ICCRC Articles of Continuance: CLASSES, OR REGIONAL OR OTHER GROUPS, OF MEMBERS THAT THE CORPORATION IS AUTHORIZED TO ESTABLISH

"The Corporation is authorized to establish one class of members. Each member shall be **entitled to receive notice** of attend and vote at all meetings of the members of the corporation."

610. It means that there are 12 separate counts to Dissolve ICCRC under the CNCA 17(2) for 2016 - 2017.

611. Under **Fundamental Changes Part 13 of the Act,** Fundamental Changes, Amendment of articles or By – Laws, 197(1)(c), 197(1)(L), 197(1)(n) ICCRC did:

"(c) – add, change or remove any restriction on the activities that the corporation may carry on.
(L) – change the manner of giving notice to members entitled to vote at a meeting of members.
(n) – add, changed or remove any other provision that is permitted by this Act to be set out in the articles.

612. ICCRC would just Appoint the Directors or remove the director and then tell the members about it later in their bulletins – there was never any notice. They just did it and this further supports the notice that ICCRC should be dissolved.

613. Then there were many members that wanted a Special General Meeting after Dean put a call for them to sign a form in April 2017.

614. There were far more members bravely calling for a Special General Meeting than there were members of CAPIC calling for my removal (See below in Complaints).  Dean has hesitated to include these notices herein as Dean believes that ICCRC will take retribution and retaliation against those members.

615. So, in short, there were 18 appointments violating the Act with respect to Any Activities under 17(2) Contrary to the Articles in 2016 – 2017, 2017 – 2018, and 2018 – 2019.

616. In 2016 – 2017 there were 12 notices that should have gone out to members to call a Special General Meeting but were not and under Exercise Any Powers Under 17(2) Contrary to the Articles are further grounds for dissolution of ICCRC.

617. In 2017 – 2018 and 2018 – 2019, there were 6 and 3 Director Appointments in violation of 128 (8), and members were still entitled to receive notice of a Special General Meeting *because* these appointments were never supposed to happen in the first place.

618. This is a total count of 21 incidents where a Call for a meeting of the members 132 (2) should have happened but did not and are grounds for dissolution of ICCRC.

619. So from 2016 – 2017, 2017 – 2018, and 2018 – 2019 ICCRC had a total of 21 Special General Meetings it should have called and did not; all are Grounds for Dissolution of ICCRC under the Act.

620. Any Activities under 17(2) Contrary to the Articles Total: 18

621. Exercise Any Powers Under 17(2) Contrary to the Articles: 21

622. The total amount under Activities and Exercising Power Contrary to the Articles: 39

623. Reaffirming the decision to remove me from the Board (See Exhibit 27) increases these numbers to 19 and 22 respectively.

624. This is a total of at least 41 Counts under the Act 223(1)(b) for grounds for ICCRC dissolution.

625. There are also 41 Counts under Fundamental Changes Activities and/or Power under 197(1)(c), 197(1)(L) and 197(1)(n) and are further *Grounds for Dissolution of ICCRC for a total of 82 Counts by Dean's calculations.*

**Grounds for Dissolution of ICCRC Triggered Under the Act 223(1)(c)**

626. ICCRC is also in breach of the Act Authorizing Continuance 212 (6):

> "Subject to subsection (9), the directors of a body corporate Incorporated or continued by or under a special Act of Parliament may, despite the charter of the body corporate, apply under section 211 for a certificate of continuance if the articles of continuance do not make any

amendment to the charter of the body corporate other than an amendment required to conform to the Act.

627. Subsection (9) of the Act is with respect to the Directors and Officers.

628. ICCRC could not have applied for the certificate in any year from 2016 – 2017, 2017 – 2018, and 2018 – 2019 because ICCRC was not in compliance with the terms of its own certificate with respect to the provision of only appointing $1/3$ of the previously elected Directors. Alternatively, if this certificate has not been applied for recently then it certainly is not in compliance with the existing certificate.  In either case ICCRC is in clear violations of it where there were *fundamental changes* made *without giving proper notice to the membership* under 128 (8), 132(2), 197(1)(c), 197(1)(L) and 197(1)(n).

629. Dean believes that these are further violations of **223(1)(c)** of the Act under Grounds for Dissolution for 2016 – 2017, 2017 – 2018, and 2018 – 2019, and constitute for Grounds.

**Exhibit 36 – The Parliament of Canada CIMM Report June 2017**

630. The Parliament of Canada was sickened to hear how the ICCRC conducted itself.  This is hardcore evidence that ICCRC was also operating in the United States as an not-so-lawful entity.

631. In ICCRC's own By – Laws 51.1 (Exhibit 5) says it is the members who remove a Director by Vote at a Special General Meeting and this further means that ICCRC applied for the certificate of continuance under an additional instance of Fraud pursuant to the Act 17(2) because of the **Fundamental Change** and this is a further ground **Grounds for Dissolution 223(1)(c) under the Act**. I believe that to further legitimize 223(1) Grounds for Dissolution that the Court needs to restore me to the rightful Status of Elected Director so that I may invoke this clause.

632. Total Grounds for Dissolution of ICCRC under 223(1)(b): 82

633. Total Grounds for Dissolution of ICCRC under 223(1)(c): 4

634. At this point there are, Dean believes, at least 86 different Counts of the reasons why ICCRC should be dissolved under the Act 223(1)(b) and 223(1)(c).

635. There were nearly a dozen ICCRC internal or paid lawyers in the background working all of this and it is unfathomable that none of them did not point out any of these "shortcomings."

636. ICCRC Oppressively Appointed 18 (eighteen) Directors Contrary to the Act 242(1)(a), 242(2)(b), 242(1)(c), 242(1)(d), & 253(1) in 2016 – 2017, 2018 – 2018 and 2018 – 2019.

637. RICO statute is also concerned with oppression as is the forced labor statute.

**Ryan Dean's Time On The ICCRC Board and How It Also Relates to CAPIC and the Corruption of the Third Party Private Corporation and Those Benefiting From It in Violation of 18 USC § 1962 et al.**

638. To augment all of these appointments Plaintiff Dean will now turn and give some of the highlights of what happened while he was on the ICCRC Board.  In the foregoing Dean was a Director for (4) of the appointments in 2016 – 2017 of  Mr. Vinsome, Mr. Collie, Mr. Perram and Mr. Fisher, and Dean opposed all of them vehemently.

639. Dean further states that every time ICCRC, The Board, The Officers, An Employee, or agent working for the ICCRC, broke one its own By – Laws was a violation of the CNCA 148(1)(2)(3)(4) in varying degrees as detailed below.

640. Dean was kicked out of the Board of Directors, and labeled a "bully and intimidator" as well as being "unfit," for doing what was right and standing up to protect the members and the Public.

641. ICCRC has for quite sometime now had Dean's proverbial head on display prominently in the current discipline section of its website as a warning to any and all members who would even *think* to dare and cross this regulator.

**Exhibit 37 – ICCRC Website Listing Discipline Cases Against Ryan Dean**

642. Furthermore, as a whistleblower, Dean's Parliamentarian Privilege was shredded.  What is the use of Parliamentarian Privilege if it does not work? Dean's due process also was revoked – did anybody really think Dean was going to get a fair "Board Trial" or Appeal, from the very people Dean was elected to investigate?

**Confidential Board Level Complaint Sent to Chris Daw**

643. November 15th, 2016, before the first Board meeting, Dean was a freshly elected-Director, who won his seat by the highest margin of any Director and Dean filed a Confidential Board Level Complaint to the Board Chair Chris Daw about the on – goings of the 2016 Annual General Meeting.

**Exhibit 38 – Confidential Board Level Complaint Sent to Chair Chris Daw**

644. What happened next was that Chair Daw in his November 28th, 2016 email to Dean stated:

> "You have also indicated in point 15 of your letter that no one has countered the financial analysis put forward in your campaign videos. However, ICCRC does not, and should not, respond to or comment on the **veracity** of campaign messaging."

**Exhibit 39 – Chris Daw Veracity Email**

645. Veracity was too big of a word for Chris Daw to write. This letter was written by Michael Pace. Dean now being a Pro Se lawyer and reading enough legal documents knows the phrase: "However, if there is something more" is akin to the legal phrase "without more" that is written here, there, and everywhere as a qualifier. This email was written by Michael Pace, not Chris Daw.

646. Mr. Daw in his supposed letter he wrote, he thought a Board Level Confidential Complaint *only* fell under the heading of ICCRC's "Code of Business Conduct and Ethics." Mr. Daw also stated that "Please be advised that as Chair of the Board I do not have any authority…." This authority or lack thereof would come up again in the Board Resolution matter below.  The parallel of this of course is where Chris Daw as Chair would rule who would be in conflict of the interest and who would not be conflict of interest.

647. That being the case: why did ICCRC go out of its way to organize bulk complaints and other complaints about really the same issue (Dean's election analysis and the questions Dean asked during the AGM) and expedite it through the regulator in record time with the penalty to "remove Dean from the Board" or some derivation thereof? Chris Daw, ICCRC Chair, said himself that Dean should not have been disciplined at all, since ICCRC should not "respond

or comment on "veracity" of election campaigns," but of course, Dean was disciplined anyways, en masse, and with the full support, power, encouragement and fury of the regulator, under Mr. Daw's Chairmanship, and all of these cases are still grumbling on.  This was Chris Daw written criminal cover up attempt to protect the members of the Imm defendants Association-In-Fact members.

648. The larger point here is that Chris Daw would say something and do something entirely different. He would not take Dean's board level complaint or look into the veracity of Dean's "election campaigns" on one hand but as Chair he would allow the entire infrastructure of ICCRC to mobilize against one of its own newly elected Directors.

649.  These are multiple violations of the CNCA and in turn 18 USC § 1962 et al.

**Mr. Merv Hillier ICCRC Director and Founding Chair**

650. Chair Daw and his Board and Officers Friends also abrogated their fiduciary duty on their backroom dealing hand by giving copies of Dean's _Confidential Board Level Complaint_ to the _subjects_ of Dean's complaint. One of the subjects of Dean's complaint, who was a non-member and now supposedly a former Director, Mr. Merv Hillier, CPA, used Dean's complaint to create an ICCRC discipline complaint calling for Dean's removal from the Board (because it is now proven that Hillier was lying to the entire membership about the existence of the third-party private corporation, and Hillier wanted to hide it from Dean by "disciplining him," and keeping him busy. This is among other things, wire fraud and fraudulent concealment in furtherance of a scheme to defraud. Section 14 of Mr. Hillier's complaint, which is contrary to the Act 130 (1) & 130 (2) and RICO statutes.  The ICCRC Registrar and Acting CEO, Mr. Lawrence Barker, also a subject of Dean's Board level complaint, signed the Discipline complaint against Dean. In Mr. Hillier's discipline complaint, section 13, they admit that they **used "Mr. Dean's letter to Mr. Chris Daw."**

651. Dean further reveals below what was really going on with Chris Daw and why he swept my Complaint under the rug. The ICCRC Board and Officers also knew that this was going on and I believe that this is a Breach of Trust by a Public Official(s).

**Exhibit 40 – Merv Hillier Complaint Against Ryan Dean**

652. The Act is very specific about these matters and responsibility of all Directors and Officers for the on-goings at the corporation. This portion of the Act applies to nearly everything in this application and according to the Act each Director and Officer is culpable.

653. Here the Imm defendants were in violation of U.S. Code § 186 Restrictions on financial transactions, yet another RICO violation because it:

(a)PAYMENT OR LENDING, ETC., OF MONEY BY EMPLOYER OR AGENT TO EMPLOYEES, REPRESENTATIVES, OR LABOR ORGANIZATIONS. It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

**(1)** to any representative of any of his employees who are employed in an industry affecting commerce; or

**(2)** to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

**(3)** to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

**(4)** to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

654. Here, the Imm defendants were all "experts" and/or "advisors" at that point in hiding the third-party private corporation that they were funneling money to and using as a facility to give supposed "legitimacy" to the discipline complaints that affected interstate or foreign commerce.  Significantly slowing down a hedge fund so Imm defendants could unjustly keep control of the Immigration Enterprise is a violation of U.S. Code § 186(a)(1)(2)(3)(4).

655. Under 29 U.S. Code § 501 Fiduciary responsibility of officers of labor organizations – another Federal RICO violation: It was 'Chair' Chris Daw and all Imm defendants had an obligation to verify the election campaign messages of Dean because Dean was the International director representing US Interests and members:

(a)Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

656. No other Director or Officer of the corporation had anything to say about these matters and thus there were multiple violations of the Act under 148(1)(2)(3)(4). To Wit:

"Duties of directors and officers 148 (1) – Every Director and Officer of a corporation in exercising their powers and discharging their duties shall

(a )- act honestly and in good faith with a view to the best Interests of the corporation; and

(b ) – exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

Duty to comply 148 (2) – Every director and officer of a corporation shall comply with:

(a ) – this Act and the regulations; and

(b ) – the articles, the by-laws and any unanimous member agreement.

657. Lawfulness of articles and purpose 148 (3) – Every director of a corporation shall verify the lawfulness of the articles of the purpose of the corporation. No exculpation 148 (4) – Subject to subsection 170(5), no provision in a contract, the articles, the by-laws or a resolution relieves a director or an officer from the duty to act in accordance with this Act or the regulations or relieves them from liability for a breach of this Act or the regulations.

658. The Officers of ICCRC under 150(2) are responsible for all of these matters contained herein as these actions and exercise of power were not done in good faith.

659. Mr. Hillier's complaint was processed in days – compared to real Immigration Consultant cases involving Bona Fide Immigrants in need that had been wronged, and that sometimes took years to get their complaint moving, if at all. How is that protecting the Public?

660. Mr. Arnold Atkin, a former RCMP (Royal Canadian Mounted Police) officer and then ICCRC Investigator, scampered into high gear and conducting an investigation(s) like no proper investigator should, for all of the discipline complaints filed against Dean.

661. Mr. Atkins, also did not wonder why all the CAPIC complainants were so repetitive in nature.  What did he care? He was getting all kind of cover and support in efforts to cover the true relationship and his involvement in all of this. Turns out as well in another Watto matter with ICCRC, Mrs. Kewley the owner of NR Discipline and Complaint Solutions Inc had never heard of Mr. Atkins despite the fact that he supposedly worked out of her living room for years. This is on transcript and was submitted by Dean in his testimony to the Parliament of Canada in May 2019.

662. Mr. Barker, by definition as ICCRC registrar, signed Mr. Hillier's complaint and fast tracked it through the discipline process while coordinating with Rhonda Williams and her upcoming bulk complaints she was organizing as Chair of the Governance and Nominating Committee in liaison with CAPIC.  It is so hypocritical of ICCRC because Mr. Hillier, CPA, himself lectured the membership at the 2016 AGM and said that anyone could send a complaint to the Chair of the Board and when Dean did as brand new member of the Board, they used the full power of the regulator, cutting corners and accelerated the process, ignoring their supposed fair and even-handed procedures, to protect themselves, and disenfranchise the members' and their votes, and Director Dean.

663. As all of this relates to the False accuser the parallel is that the false accuser lawyers knew how to manipulate the legal system and the Imm defendants knew how to manipulate their own 'legal system.' A matter for the Jury to decide.

664. At the time Dean believed that Chris Daw, ICCRC Chair, protected primarily the four people that Dean complained against, and also himself, as he was an original Director of ICCRC. Now Dean believes that Daw was protecting far more people.

665. When Dean brought up this Breach by a Public Officer(s) at the Board level, Chair Chris Daw responded by saying Dean was trying to "interfere with the Discipline process." What matters more?  Matters involving Indictable Offenses at the Board level because Dean's Board Level Complaint was willfully given to the member of the public and then swept under the rug or discipline cases about election campaign victories which are automatically trumped by his Charter 2b rights (Canadian Constitutional Rights)? Dean say the former.

666. But how perverse is it that the Imm defendants were hiding behind the discipline process and when a Director of the Immigration Enterprise started to ask questions about it was declared that it was "out of line" or "inappropriate" or "interference" with the Discipline process when the whole process was shrouded in a huge scheme to defraud not only Director Dean, but also the members but also the publica and then they were using these powers to reach into countries all over the world, including of course into the United States. Turns out that it was a full-blown violation(s) of CNCA as well as 18 USC § 1962.

667. Turns out they were also violating Dean's Canadian Constitutional Charter 2b rights did not matter to them anyways (See link below for Canada's Charter of Rights and Freedoms – the functional equivalent to the 'Bill of Rights' of the United States). Discipline cases were their focus to attempt to quiet Dean down and keep Dean very preoccupied (forced labor) while they hatched their plot to fill the Board Seats with their friends and get rid of Dean and keep control of the Imm Enterprise. They then overrode the Parliament of Canada twice, infringing on Dean's Parliamentarian Privilege on multiple occasions and conducted a Board Trial to remove me (see below). Then they did it all over again as noted in Exhibit 27.   And of course, ICCRC "struck down" many portions of the CNCA (as above) oppressively at the expense and disadvantage of the members, the Public and the Government of Canada and indeed the Government of the United States.

https://www.justice.gc.ca/eng/csj-sjc/rfc-dlc/ccrf-ccdl/pdf/charter-poster.pdf

668. Dean does not say it in jest: The ICCRC Board literally acted as if it was the "Supreme Court of ICCRC" and the "highest authority in Canada," where it came to _any decision_ with respect to Immigration Consultants, or how ICCRC operated, and it was all run by Mr. Chris Daw and his Board and Officer Friends, with their gaggle of lawyers in the background, helping them all collectively navigate their self interests as they ran it (through Mr. Richard Dennis based in the United States and from the Shadow) and then affected interstate and foreign commerce from 2016 until now – including when Mr. Dennis was an "official" ICCRC director.

### Discipline Cases

669. As already mentioned above, Dean repeats it again, but from different perspective. The Imm defendants abused Monopoly regulator power to protect itself against provisions of the CNCA and the protection of the public

(Canadian, US, and worldwide). These discipline complaints were coordinated by Chris Daw and his Board and Officer friends as well as the operatives at CAPIC.

**Mr. Phil Mooney ICCRC Former President and Director**

670. Another discipline case, filed by ICCRC Founding President Mr. Phil Mooney against Dean for winning his election, was designed to remove Dean from the Board by disqualifying Dean from election and then stating that the "member's election should be overturned (see Exhibit 12)." **The ICCRC Registrar and acting CEO, Lawrence Barker, took it upon himself to answer questions from Arnold Atkins,** the investigator, in the stead of two other ICCRC Officers. This answer from Mr. Barker was taken without question, from the Investigator, Mr. Arnold Atkins. All of this is wire fraud, deception, and scheme to fraud affected interstate and foreign commerce.

> **Exhibit 41 – Phil Mooney Complaint Against Ryan Dean**
> **Exhibit 42 – Phil Mooney Signs Letter To Remove Director Dean and Revoke License**
> **Exhibit 43 – Mr. Barker Answers For Two ICCRC Officers In An Investigation**

671. Notice in the emails that Mr. Atkin (if the man indeed exists at all) has already "decided" in his questioning that this was merely an "error," a priori, instead of conducting an evenhanded investigation.

672. Mr. Atkin's two emails to Mr. Roukema and Ms. Stripnieks, both ICCRC Officers, ask questions and received no response from either adult. Instead, Mr. Lawrence Barker responded for them. Since when do investigators ask questions of individual Officers of a National Canadian Regulator 'A' and 'B,' yet accept unchallenged a response from individual 'C,' their Boss? Answer: Nowhere but at ICCRC where "second place wins" and "before" and "after" are one and the same.

673. So, to review, Mr. Barker answers for two other ICCRC adult Officers for an investigation not using ICCRC letterhead, with no date nor signature, yet Mr. Atkin does use ICCRC emails and letterhead but does not work for the corporation, and maybe the man does not exist at all.  Mr. Atkin is not authorized by the ICCRC By – Laws to investigate (part of the third party that was denied existed to the membership), as ICCRC was not authorized to "contract out" governmental powers to a third party, unless there is written permission from the government and there is none. The French/English statement is used as their defense in the discipline case, but they omit it in their fourth and final annual report to the members, the Department, and the public.  Mr. Barker signed the complaint, and Mr. Atkin, a supposed former RCMP officer, saw no problem with any of this, and ICCRC is today *trying to explain that there is still nothing to see and gives a promotion and a raise to the one who did all of this in the first place with respect to the "balance sheets not balancing."*

674. Mr. Barker was already acting CEO, Registrar, Elections Officer and Corporate Secretary in a serious conflict of interest from multiple perspectives.

675. It is also further oppressively and contrary to ICCRC By – Law 28.2 "No Obstruction" states:

> "No person shall obstruct an investigator executing his or her duties or withhold from him or her or conceal, alter or destroy any document, computer file or thing relevant to the investigation or inspection."

676. This By – Law was strictly enforced at all times, except when it was not, which is the case here, where the Law was relaxed for Good Friends of the Board and Officers, such as Mr. Barker who was at the time, Acting CEO and Registrar of ICCRC.

677. As an aside, By – Law 28.2 assumed that this investigator was an "in house" ICCRC investigator, which Mr. Atkins was not.

678. Mr. Mooney also forgets that the state of Vermont tossed him and his partners out for Immigration Fraud. It is a bit rich for Mr. Mooney to say that Dean ought to have his license revoked in light of Dean's election victory and given a mandate by the membership to investigate them.

679. All of these communications sent into the United States are a scheme to defraud and constitute wire fraud and violations of 18 USC § 1962 et al given the foregoing and all of the corresponding Federal and State RICO (or equivalent charges).

**Ms. Rhonda Williams, Director, Chair of the GNC, and Former ICCRC Chair**

680. Sitting Board member Ms. Rhonda Williams, who was the former ICCRC Chair and then current Chair of the Governance and Nominating Committee, and Kim Ly, a CAPIC Executive, enlisted the help of some 30 members who are/were virtually all **CAPIC** members, to file 'bulk discipline complaint' where their remedy was in respect to Dean:

> "Removal from the Board."

681. They put it all in writing and then they sent it to Dean in Nevada as the Imm defendants projected their power around the world, including into the United States.

682. This of course is further contrary to the CNCA and US Law as above.  Since 30 + adults all got together and conspired to do something against and CNCA and US law, and was coordinated in concert by the Regulator, and none of them (exception: Ms. Marskell) have recanted their complaint or support of it, from nearly 5 years ago at this time, makes it a much weightier matter.

**Exhibit 44 -- Director Rhonda Williams and CAPIC Executive Kim Ly Lead Bulk Complaint Against Dean**

683. There are other discipline cases that were filed against Dean that had some sort of variation of being removed from the Board and contrary to the CNCA and in violation of 18 USC § 1962.  These members are also overwhelmingly all CAPIC members to Dean's knowledge, and CAPIC not only encouraged their members to complain against Dean but also CAPIC helped. CAPIC is definitely the "tail that wags the 'ICCRC' dog (See Exhibits 48 - 55).  It was all pushed forward by Dory Jade, Donald Igbokwe and Gerd Damitz and others.

**Exhibit 45 – CAPIC Executive Kim Ly, Rhonda Williams, & CAPIC Member Complainants**

684. ICCRC and CAPIC operatives (Imm defendans), being deceptive, tried to mix up the "list of CAPIC Complainants against Ryan Dean" without adding a date to it.  When Dean added the date and sorted it out it revealed that Rhonda Williams, ICCRC Director on the board with Dean, Governance and Nominating Committee Chair, Former

ICCRC Chair and Former CAPIC Chair used her power and influence to rapidly organize these complaints against Dean.

685. CAPIC is every bit as culpable as ICCRC in all of these matters.  CAPIC is the lobby group of ICCRC and really they are one and the same (See Exhibits 48 – 55).

686. ICCRC et al and CAPIC all had a hand in acting together in what appears to be a clear concentration of multiple violations of CNCA 130 (1) an 130 (2) with Offenses 262 being the primary remedy. Beyond there are other matters that perhaps are to be resolved by the Criminal Code.

687. Further, what is it called when two non-profit entities such as ICCRC and CAPIC conspire together with its common members and break the CNCA willfully, deliberately, and deceptively, multiple times and then use that power to project into other countries of the world, including the United States.

688. Legal counsel for ICCRC, Ms. Patricia Harper of the law firm Keel Cottrelle LLP, prosecuting all of the discipline cases against Dean, also wrote a report called "*Review of ICCRC's Intake Process for Disciplinary Matters and Recommendations for Change*" in January 31, 2015. Ms. Harper was a **major benefactor** in fixing the numerous problems with the 'work' of NR Complaint and Discipline Solutions Inc (the Third Party Private Corporation that Hillier emphatically denied to the world did not exist while the entire board and management of ICCRC looked on with approving silence), and received monetary compensation for her legal services.

689. Dean's discipline complaints were promptly moved out of NR Discipline and Complaint Solutions Inc and then fast tracked within ICCRC. Dean was, and still is, being Maliciously Prosecuted by Ms. Patricia Harper, ICCRC's lawyer and co-author of this same Andrew John Roman Professional Corporation report as on page 4:

> "Patricia Harper and I have reviewed a large number of complaint files, and have had to take steps to correct a fair number of them. This is not only a legal cost, but also creates more work for ICCRC's limited staff complement and for the C&D committees. Perhaps the greatest cost is the unquantifiable loss of reputation for ICCRC."

690. The report continues on page 4:

> "I hasten to add that these are not merely problems of individual personalities, but genuine problems of workflow and responsibility. Again, the investigators blame the ICCRC staff of most of these problems, or assert that the number of problem cases is exaggerated; the ICCRC staff present the opposite view. Clearly, this is not a happy, functional working relationship.  There is no reason to expect that it will improve in the future."

691. The Andrew John Roman Professional Corporation's report essentially states that the entire Discipline process at ICCRC has been a convoluted mess, but ICCRC represented to the government of Canada that they had the competency to handle its own discipline right from the beginning of ICCRC in 2011.

692. When Dean revealed this Third Party in the Toronto Star, Mr. Barker as the co-interviewee stated:

> "Many professional regulatory bodies, especially the smaller ones, contract investigative work to a third party in the early stage after their formation. The regulator planned to move the operation in-house later in 2017, he added."

693. Mr. Roman in his report says the opposite on page 3 of his report:

"Unlike most professional regulatory bodies, ICCRC contracts out the entire intake stage to an external independent contractor."

694. Mr. Kewley, running the Third Party, was the internal investigator at CSIC (The Canadian Society of Immigration Consultants) the previous regulator of Immigration Consultants.  Why was it that Mr. Kewley was not part of ICCRC's internal functions – there were only 4 investigators?

695. In short, all of this has been projected into the United States to affect foreign commerce of an international hedge fund and to make Dean's reputation and Saga Enterprise toxic.

696. Then Ms. Harper came along with an offer to settle Dean's discipline cases regarding the insults, while forgetting about all of the alleged "financial misrepresentation" in the election videos suggesting that the "financial misrepresentation Dean talked about" be dismissed for no apparent reason and because it was the "insults" that mattered and hurt most.   After Ms. Harper reviewed all of the evidence, she further realized that she was also a major beneficiary of said payments to a third-party private corporation and said nothing -  no wonder she all of sudden wanted to "settle." This would not be the first time that ICCRC tried to use the reason of "hurt feelings" to try to deflect away the truth of what was really going on with their criminality.

697. Dean has seen worse exchanges between Members of Parliament than what he did in his election campaigns; Canadian politics can be as nasty as US Politics.  Also, Dean did not include racism, sexism, and cultural bias in his campaign and nothing was said of those ICCRC Officers who did these things because they have one set of unwritten rules for themselves and another for the rest of us. See below for accusations that ICCRC is racist by others.

698. How about Ms. Harper writing on page 7 of the Andrew Roman Corporation report gushing about Carla Gelbloom:

"…particularly with the hiring of Carla Gelboom. She has had more than two decades of hands-on experience in the disciplinary process for nurses,….."

699. This being the case, Ms. Gelbloom knows that as the Complaints and Discipline coordinator at ICCRC, she has no business giving advice to CAPIC operatives how to file complaints that are designed to protect ICCRC and CAPIC and not the public. Mr. Atkins, the investigator was copied on these emails and it did not slow him down one bit. Ms. Gelbloom is a huge reason why the Imm defendants are all culpable of violations of CNCA and 18 USC § 1962 et al.

700. Ms. Gelbloom goal – taking direct orders from above was to keep control of the Immigration Enterprise by burying Dean with unlawful discipline complaints.

**Exhibit 46 – ICCRC Gives Advice To CAPIC Executive Of How To File Complaint Against Ryan Dean**

701. ICCRC also used the entire infrastructure of its regulator and abused its power for something that was not its stated purpose under the Articles of Continuance nor was it protecting the public and this too is another reason to dissolve ICCRC in my opinion.

702. In the letter(s) from Ms. Gelbloom it said this:

"The Immigration Consultants of Canada Regulatory Council (ICCRC/The Council) has received a complaint from XXXXX Person Name XXXXX regarding your practice as an immigration consultant (Or S) the service your employee or agent provided."

**Exhibit 47 - Letter From Carla Gelbloom re Complaint Dean Immigration Practice**

703. In ICCRC's By-Laws, 29.3, Complaints Committee Not to Refer, are being further ignored by Mr. Barker et al to protect themselves instead of the public:

"Complaints Committee Not to Refer
The Complaints Committee shall order the Complaint not be referred to the Discipline Committee if:

– the complaint does not provide evidence to an offense under the Code of Professional ethics, or

The complaint is:
Frivolous, vexatious or an abuse of power.
Manifestly without substance and does not warrant further consideration.
Made of an improper purpose.
Not in the public interest to proceed further.

704. "Made of an improper purpose," and here it is entirely an improper purpose. Imm defendants know not to abuse the legal process in violation of 18 USC § 1589, for instance. The other improper purposes are of course to attempt, under terms of conspiracy, to cover up the RICO Predicate Activity detailed herein.

705. Again, these are the same methods that the False accusers did to pervert their abuse of the legal process.

**CAPIC**

706. These exhibits between CAPIC and ICCRC link the two Not For Profit Canadian Corporations together and really shows that they are one and the same and CAPIC is equally responsible, with its officers and managers from 2016 until now for all of the violations of Canadian and US Law.

707. ICCRC signed a Memorandum of Understanding (MOU) with CAPIC in November 2016.  This email in exhibit 48 was the closest that Dean could get to the MOU because as a Director Dean was not allowed to get anything further according to Chris Daw and Lawrence Barker.

**Exhibit 48 – ICCRC Signs MOU with CAPIC, Per Director Gaudet Email of Feb 2017**

708. This was CAPIC endorsing ICCRC's bid for becoming the regulator of Immigration Consultants in 2011. It is no wonder that Mr. Mooney, Mr. Daw and Ms. Gaudet wanted Dean out of ICCRC as fast as they could unlawfully arrange it. (See Exhibit 87 below regarding Government Loans – something else Merv Hillier denied at the AGM.

**Exhibit 49 – CAPIC "Endorses" a bid by Mooney, Gaudet, and Daw Which Later Becomes ICCRC**

709. CAPIC is the lobby group for ICCRC:

**Exhibit 50 – CAPIC Informs As ICCRC Lobby Group**

710. ICCRC and CAPIC making joint strategy together with respect to the immigration consulting industry.

711. Note even in the 2020 annual general meeting that the members of this committee comprise of members who were no longer board members in 2016 and still control the organization from the Shadows and that they are all part of this complaint as well. See link above for the annual reports.

**Exhibit 51 – FW: Joint ICCRC/CAPIC Policy and Liaison Committee**

712. In Exhibit 16 above on page 4 under the headline UNITED CITIZENSHIP AND IMMIGRATION CONSULTANTS ASSOCAITION (U.C.I.C.A):

> "With respect to member associations, the Canadian Association of Professional Immigration Consultants (CAPIC) is the recognized member service organization for regulated immigration consultants."

713. Being the "member service organization" is really an unofficial way of saying that CAPIC is the subsidiary of ICCRC (or vice versa), in Dean's opinion. The By – Laws (Exhibit 5) also do not provide for this official relationship.

714. ICCRC and CAPIC sat shoulder – to – shoulder at the CIMM hearing where CAPIC acted as ICCRC's lobbyist. That behavior is about as formal a relationship one organization can have to another organization.

**Exhibit 52 – CIMM Committee Meeting (March 8, 2017)**

**Exhibit 53 – ICCRC March 15 2019 Bulletin**

715. In this Bulletin, which may yet be the boldest yet ICCRC has ever produced had a photo of the entire Boards of ICCRC and CAPIC combined into one – because they ARE one, in Dean's opinion. This is essentially a huge 'mug shot' of a great deal of the Association-In-Fact members. They all knew what was going on and had gone on and did nothing about it; they were interested in their self-interests and did not give a toss that they were breaking laws and projecting that lawlessness into the world, including into the United States.  The Bulletin further states under "A MESSAGE FROM THE PRESIDENT AND CEO:"

> "Speaking of MOUs, ICCRC is pleased to announce the renewal of its current MOU with the Canadian Association of Professional Immigration Consultants (CAPIC). At a joint meeting with both CAPIC and ICCRC Boards of Directors held on February 7th, the two organizations renewed their mutual commitment to work together to foster the development of Canadian Immigration Consulting as a true, self-regulated profession, and ICCRC received CAPIC's continued support to obtain the statutory authority it requires to better fulfill its Public Interest mandate."

716. This speaks for itself and clearly Dean believes that ICCRC is not a Self-Regulatory Organization in any sense of the word in light of all of the unlawful appointments, for instance. John Murray the ICCRC CEO is quoted in the Bulletin:

> "As the snow recedes, hope for spring increases, bringing with it new life and, at ICCRC, exciting new developments…"

717. One such development is described in detail in below is that there most assuredly appears to be Quid Pro Quo in the hiring of Mr. Murray himself.

718. In 2007 Phil Mooney became the CAPIC president and is re-elected again in 2009. In 2010 "CAPIC assists and supports the bid of ICCIP, later renamed as the Immigration Consultants of Canada Regulatory Council. Many of

its founding directors are former CAPIC executive directors who….” In 2013 Dory Jade is president and re-elected president again in 2015. Phil Mooney filed a complaint against me (Exhibits 41 – 43).

**Exhibit 54 – CAPIC's History**

719. Right around the same time Ms. Nuha Nancy Salloum is also suing Phil Mooney and others involved in this instant case. This link below is relevant to Act III because it speaks to the existence of Salloum's company CSIP and FSIC that the Imm defendants denied existed in 2020 in T-834-20. The statement of claim also had the name: CIPC "College of Immigration Practitioner of Canada" which was a precursor to the "College of Citizenship and Immigration Consultants," which was submitted in Salloum's 2010 big to the government of Canada that Imm defendants pretend that they know nothing about. Just like False accusers who take facts and twist them around to lie to courts. It is the defendants' regular way of doing business.

> https://www.dropbox.com/s/8doc7ekvd4qwppy/AMENDED%20STATEMENT%20OF%20CLAIM%20AUG
> UST%2021%20%20%20007%20%20%281%29.pdf?dl=0

720. Kim Ly is on the CAPIC Executive Committee, Governance and Nominating Committee and Policy and Lobbying Committee. Kim Ly had a lot of influence at ICCRC and CAPIC. Kim Ly is also the lead complainant in the Bulk Complaint against Dean (See Exhibit 45). She is also the one that is prominent in the Marskell email string above. The Imm defendants offered Ms. Ly a bribe and she accepted and that was being an executive of CAPIC for the task of organizing the discipline complaints and violating the CNCA and 18 USC § 1962 and keeping control of the Immigration Enterprise. The overall stated goal in these emails was to unlawfully retain control of the Immigration Enterprise. Ms. Ly used her company "Borders Immigrant" to send out these emails (wire fraud) and therefore Borders Immigration is a defendant.

721. Kim Ly is also the same individual Ms. Carla Gelbloom, the ICCRC Complaints and Professional Standards Administrator was giving Ms. Ly advice on how to file a complaint against Dean. How is that possible if ICCRC and CAPIC are not indeed the same organization? Was Ms. Gelbloom giving this advice to file a complaint so Ms. Ly could help the other CAPIC members file complaints too. Mr. Rankin says that they are not the same and no Judge has ever read this Evidence herein.

722. Does that sound fair and equitable and the activities of a National Canadian Regulator under CNCA 17(2) that they should be doing instead of protecting the public and reaching into the world and the United States affecting interstate and foreign commerce negatively?

**Exhibit 55 – Kim Ly on Executive of CAPIC and Two Other Committees**

**Board Resolution and Board Trial of Ryan Dean Contrary to the Act, Breach of Parliamentarian Privilege and Due Process, and witness tampering.**

723. On March 8th, 2017 the Dean testified before the Parliament of Canada as an elected Director and also as a Whistleblower. In his testimony he talked about the many things that he believed were happening at ICCRC including but not limited to the "undemocratic principles." The ICCRC Board of Directors responded with the

"Board Resolution," shortly thereafter that included the following excerpts which are in breach of Parliamentarian Privilege and contrary to the CNCA Removal of Directors 130 (1) and 130 (2). The Resolution under its title stated:

> "AUTHORIZATION TO OFFER RYAN DEAN AN OPPORTUNITY TO MEDIATE HIS DIFFERENCES WITH THE BOARD, AND, IF MEDIATION DOES NOT RESOLVE THOSE DIFFERENCES, TO DETERMINE WHETHER HIS CONDUCT DISQUALIFIES HIM FROM BEING ELIGIBLE TO SERVE ON THE BOARD AND/OR WHETHER HE HAS BREACHED THE CORPORATION'S CODE OF BUSINESS CONDUCT AND ETHICS."

> "the Board will make a determination whether Mr. Dean maintains his eligibility to serve on the Board under section 45.1 (L) of the By- Law 2016-1 of the Corporation ("the By-Law")" in section 13 (a).

> "**not communicate with or make any statements to** the media (including but not limited to social media) or **elected officials** that concern or are related to the corporation" in section 15(e)(i)

724. This board resolution was sent to Dean into the United States three times. This "offer" was a bribe offer, a threat of extortion, and forewarning of robbery all in one. It was clearly meant as economic fear to not only remove Dean from his directorship but also to affect Dean and Dean's property and business in the Saga Enterprise. It is a Hobbs Act violation(s) and wire fraud(s) et al.

725. The Chair of the Parliamentarian Committee, Mr. Borys Wrzenwsky, wasting no time when he read the "board resolution" wrote ICCRC a very unsettling letter on April 5th, 2017 addressed to Lawrence Barker (and cc'd to all Directors) and ICCRC was called back to Ottawa to specifically address ICCRC's infringement on Dean's Absolute Privilege with respect to his testimony and him _still_ being a witness at the Parliament of Canada and Dean's subsequent communication with the Committee.

726. Chris Daw stated to the Parliament of Canada that the provisions in the Board Resolutions were an "editing oversight" which is utterly false since this "Board Resolution" was on its third edition and reviewed by a dozen ICCRC Board members, additional Officers, and Miller Thomson's lawyers—who were experts in these matters. Let Chris Daw come to the USDC NJ and state that this was an "editing oversight" again.

727. Some how Dean was able to zero in on the illegality of this resolution the moment he read it while he was in the Philippines. The entire Parliamentarian Committee consisting of 15 (fifteen) Members of Parliament also had no difficulty ascertaining the Breach of Parliamentarian Privilege. The resolution was but four pages long and given their stance on a four page document reviewed three times, Plaintiff(s) reserve the right to state that they too have an "editing oversight" in the hundreds of pages submitted in these matters as well as the fact that the four year anniversary of Dean's removal from the board is looming on April 20, 2021 and thus this complaint is submitted on April 19, 2021 – while Dean et al are battling other legal matters on multiple fronts because their schemes to defraud.

728. Hon. Member of Parliament Ms. Michelle Rempel on April 10, 2017, in open CIMM Parliament Committee, blasted Chris Daw and ICCRC for their Breach of Dean's Parliamentarian Privilege. She stated in part:

"**We've had many witnesses essentially speak to the <u>dysfunction of your organization</u>**. I'll be blunt. I think it's *given great concern to all members of this committee across party lines.* With the time I have I want to express deep concern with the response to the letter from our Chair with regard to the resolution that was passed at your board.

When I read your response, and when I noted that you suggested this was an editing oversight, I found the timing quite suspicious and I thought this was very weak sauce.

….We have some serious allegations and testimony before this committee, and not just from this particular board of directors' member, but from the broader community in the efficacy of your organization to be able to address these challenges….."

729. On April 20th, 2017 before Dean walked into the Board Room where he was to be subjected to "Board Trial" and removal, Dean officially sent the Board an email at 5:27 AM EST after travelling to Toronto from the Philippines (and flying over Alaska en route for another Jurisdictional item), where Dean further detailed that there was a Third Party Private Corporation that was neither authorized in the By-Laws nor Contribution agreement pursuant to section 19.1 and it was "a mechanism that is wrapped in a cloak of secrecy and shrouded behind a veil of ignorance with a 'do not ask questions here' decree….." and then the Dean adds here ICCRC: used this Third Party to bully and oppress general members and in particular this Director contrary to the Act 130 (1) and 130 (2).

730. It was a "black box" that directors were forbidden to look into to and this was contrary to the CNCA and as it turns out 18 USC § 1962 et al.

731. Directors were not allowed to even ask about this topic according to Chair Daw, and especially Dean. This was one instance of Chris Daw stating that Dean was trying to "interfere" with the discipline process when he himself and his Board and Officer Friends were well underway interfering with the will of the membership and violations of CNCA, via this "Black Box."

732. The ICCRC and its entire infrastructure gave both power and money to a Third Party, despite it being unauthorized by the Department of Citizenship and Immigration Canada (nor IRCC). Dean's efforts to investigate this relationship were then used in part as a reason to remove Dean from the Board because as Chair Daw said: "that falls under the DARC and you are not allowed to talk about it much less investigate it – besides you have discipline complaints and that makes you (Ryan Dean) in "conflict of interest." ICCRC By – Laws 2.5 Non – Meetings did not include NR Discipline and Complaint Solutions Inc (See Exhibit 5).

733. DARC is an acronym in the ICCRC By-Laws that stands for: <u>D</u>iscipline Committee, <u>A</u>ppeals Committee, <u>R</u>eview Committee and <u>C</u>omplaints Committee. It does not include investigative powers given to the Third Party under the ICCRC By – Laws nor is it given under By - Law 28 Investigative Powers (See Exhibit 5).

734. The moment that Dean sent the email to the Board discussing the Third – Party, Duties of Directors and Officers 148 of the Act was invoked as Dean then had a much clearer understanding of what was inside this "Black Box." Dean was further indemnified of any wrong doing and culpability. Moreover, the Board not only violated this and

other parts of CNCA, but Daw and his Board and Officer friends **punished** Dean because Dean further disclosed the Third – Party details that were not provided for in the By – Laws nor given permission by the Department of Citizenship and Immigration Canada.

735. The ICCRC By – Laws (Exhibit 5) did not have any provision for a "Board Trial" nor Dean's removal and this is further evidence that ICCRC manipulated its own By-Laws to protect the interests of the few at the expense of the membership, The Public and Dean as well as unlawfully keeping control of the Immigration Enterprise.

736. Chris Daw did proclaim that he specifically had the "Authority" to call an Emergency Board meeting March 6th, 2017, where even Dean's own lawyer was not permitted to attend– two days before Dean was about to testify to the Parliament of Canada – and then shortly thereafter Imm defendants declared a Board Trial not provided for in the By – Laws nor CNCA. In his letter (Exhibit 38), Chris Daw said that he did not have "authority" when he slid Dean's Confidential Board Complaint under the proverbial rug and gave a copy to Mr. Hillier to file a complaint. Mr. Daw was really saying he was not going to use his authority as Chair to investigate Dean's Board Complaint on one hand and then create some authority he did not have under the By – Laws and CNCA to remove Dean from office on the other hand. Chris Daw either did not use the authority he had or created authority he did not have. In either case – it was for Chris Daw and his Board and Officer's Friends' self interest and at the expense and disadvantage of Dean, the membership and the Public in violation of CNCA and 18 USC § 1962.

737. Clearly the Immigration Enterprise is being operated as a Racket.

738. Dean further told the Board et al that they were "illegally" removing Dean from the Board and Chair Daw, the Board, the Administration, the Officers, and most certainly multiple lawyers knew, or should have known, that their actions were unlawful under the CNCA and US Law.

739. The lawyer Adam Stephens of Miller Thomson – the same firm as Michael Pace – listened in by phone for this "Board Trial."  Mr. Stephens bothered not to mention that to the Board, and advise the whole Board, that they were violating CNCA Removal of Directors 130 (1) and 130 (2) and subject to Offense 262 (1).

740. Just so it is said Miller Thompson is/was my own lawyer in another private unrelated non-immigration business and personal matter at that time and this was disclosed April 20, 2017 at the beginning of the Board Trial, but it did not mean anything to Lawyer Adam Stephens who refused to recuse himself. It was discussed at length and Mr. Stephens came up with reasons why it was not important. Is that how lawyers should behave in Canada under conflicts of interest because it mirrors the dishonesty of the False accusers lawyers and how they habitually operate.

**Exhibit 56 - Miller Thomson Ryan Dean Current Lawyer in Private and Business Matter**

741. On April 20th, 2017 the Board of Directors in a narrow vote of 7-5 voted to remove Dean from the Board. ICCRC makes it sound as if it was Dean against all Directors of the Board.  There were other Directors that could see that

there were serious problems at ICCRC and were clearly on Dean's side of the issues. It is of note that the 7 votes cast included the illegally appointed Public Interest Director Mr. Javier Vinsome as well as a Director who was appointed despite conflicts of interest circumstances to help artificially control voting power on the Board, Mr. Peter Perram.

742. In Dean's letter to the Board on April 20th, 2017 Dean also informed the Board that there were complaints filed with CPA Ontario and the apparent Quid Pro Quo hiring of ICCRC's current CEO. It includes Merv Hillier, who used to be president and CEO of CPA Ontario and they gave all kinds of help and cover with Ms. CPA Ontario et al here.

743. Ms. Elizabeth Cowie – yet another lawyer, and Ms. Theresa Tonelli gave all kinds of help and cover to Merv Hillier, under the direction of none other that Mr. John Murray, who at the time was the registrar of CPA Ontario. Murray is the one who signed Dean's complaints to CPA Ontario and then had them dismissed. John Murray, in accepted his quid pro quo bribery arrangement became the ICCRC president and CEO of ICCRC some months later. What an undisclosed coincidence and a matter for the Jury to decide. Discovery will likely bear out more defendants from CPA Ontario and their participation in these schemes to defraud. The corruption involves now two Canadian regulators projecting wire fraud into the United States where hundreds of US based immigration consultants were relying on their 4 different-cover-up-attempts-of-balance-sheets-not-balancing.

744. Of course, ICCRC also went contrary to their own By – Laws, CNCA 130(1), 130(2), 148(1)(2)(3)(4), 197(1)(c), 197(1)(L) and 197(1)(n) where it provided for how to remove a director. The By-Laws explicitly stated in 51.1 Members May Remove Elected Director:

> "An elected Director may be removed from office before the expiration of her or his term of office by Ordinary Resolution passed at a General Meeting called for that purpose and the Members may, at the same General meeting, by a majority of the votes cast at that meeting, elect any Member meeting the qualifications of Section 45.1 hereof in the place and stead of the individual removed for the remainder of term of the removed Director."

745. Because ICCRC knew that they could not possibly get the membership to go along with Dean's removal, the Board had to do it by unlawful and undemocratic means. They just skipped to section 45.1 of the By-Laws and purposely cut out the membership from the entire process. In Dean's appeal he showed exactly where ICCRC was manipulating their own By – Laws (See below Appeal of Ryan Dean Removal From the Board).

746. It is of further note that at least 6 (six) directors willingly resigned in 2016 – 2017 as they too could see that there were serious problems at ICCRC – they did not know how to deal with the obvious corrupt and "back room dealing." ICCRC and/or were not willing to go through what Dean has gone through to protect the public, Dean surmises. Directors Douglas and Belbechir resigned with scathing resignation letters, as did Paul Fisher, before he attended his first Board meeting.

**Exhibit 57 – Director Belbachir Resignation Letter**

747. It sure is illuminative that Miller Thomson, the law firm that produced the "Board Resolution," where Mr. Pace, Mr. Stephens and Mr. Saccucci all work and were heavily involved in the removal of Deam, published an article on

November 23, 2017 entitled: When Good Directors Go Bad – Removing Directors of Not For Profit Corporations.

It states in the article:

> "Generally the removal process for directors is set out in the organization's by-laws."

> "For federally incorporated organizations, section 130 of the Canada Not – for – profit Corporations Act (S.C. 2009, c.23) (the "**CNCA**" provides for the removal of directors by members, specifying that members may by ordinary resolution at a special meeting remove any director or directors from office."

**Exhibit 58 - Miller Thompson Official How To Remove A Director Under The Act**

748. *In other words, if ICCRC cannot make a director quit then they will call them unfit, as Chris Daw said to the* entire membership and the world with his ICCRC Blast Email, with respect to Dean.

749. *Chris Daw, by his own hand, admits that he did not give the membership notice under 132(2) to call a Special General Meeting to deal with this issue under 130(1) and 130(2) of the Act. Chris Daw and his Board and Officer Friends just did it and told the membership about it after the fact.*

750. *It was another instance of violations of the Act 148(1)(2)(3)(4) and 197(c)(L)(n) and wire fraud into the United States among the numerous violations of US Law.*

751. In ICCRC's E-Blast on April 21, 2017 they said this:

> "Effective April 20, 2017, **following a lengthy process**, Ryan Dean has been removed from the **Board of Directors under section 45.1(L)** of the ICCRC by-law, being deemed unfit for service on the Board.  This action was based on repeated incidents of bullying and intimidation of staff and Board members, an unwillingness to work productively with fellow Board members **as well as attempting to interfere in the complaints process.**

> Mr. Dean has the right to appeal the Board's decision to the Appeal Committee of ICCRC." (Emphasis added)

**Exhibit 59 - ICCRC Announces Removal Of Ryan Dean From Board April 21 2017**

752. By this point the Jury is going to think that the Immigration Enterprise is being run by unsavory and corrupt individuals and they would be right.  These individuals are worse than the mob – when the mob hits violently the police are called and then they do the rest.  Here, the corruption is not rampant that these Imm defendants do not even cow to the Parliament of Canada so that they can retain control of the Enterprise and project their unlawfulness through the world.

753. Imm defendants further published the following to the membership and the world with more wire fraud:

> "The Board voted to relieve Mr. Ryan Dean of his Board Responsibilities. He was determined to be unfit to serve as a director as a result of repeated incidents of bullying and other inappropriate conduct under section 45.1(L) of the *By-law*. Director Ali Belbachir has resigned from the Board effective April 21, 2017…"

754. Approximately one month from when Dean received the Board Resolution until Dean was removed was hardly a "lengthy process." It was about half of the time from the process in New Jersey for the TRO/FRO.  Defendants prefer the "hit and run" tactic where crime does not see the light until there is a lot of effort to uncover it.

755. Notice how the Imm defendants used 45.1(L) of the *By-law and not* By-Laws explicitly 51.1 (as above). It is illegal and it was yet another way that Imm defendants took control of the Immigration Enterprise as well as the fact that Chris Daw admits that the Board "punished" Dean from **attempting to interfere in the complaints process – which was asking questions about the third party private corporation and especially so just before Dean walked into 'Board Trial."**

**Exhibit 60 – ICCRC May 1 2017 Bulletin**

**Appeal of Ryan Dean's Removal From the Board**

756. Chris Daw gave Dean written reasons for Dean's removal from the Board:

> "The Council of the Member, Firm or RISIA may appeal to the Appeal Committee from a decision or order of the Discipline Committee or the Review Committee on the grounds of
>
> (a)-an error of law, fact or mixed law and fact, and denial of procedural fairness,
> (b)-the discovery of material new evidence that could not with due diligence have been available at the initial hearing.

757. An appeal may be brought provided that the notice of appeal is in writing and is filed with the Registrar within 30 days from the date of receipt of the decision and/or order from which the appeal is taken." The problem is though that any appeal does not include "Board Trial Appeal" because it was never provided for in the By – Laws nor CNCA at all. That is because it is contrary to the CNCA under 130 (1) and 130 (2) where *only* the members who elected the Director can remove that Director.

758. According to Chris Daw, the Appeal Committee could only hear matters that flowed from the Discipline or Review Committees – not the Board of Directors. It was flawed and was a breach of due process, and everything said here.

**Exhibit 61 – Reasons For Removal of Ryan Dean Authored By Chris Daw**

759. Imm defendant were trying to make each and every step of their scheme to defraud legitimate but at each step it shows that it is not provided for the By-Laws, the CNCA nor US law.

760. Also – how does one become unfit to serve? Dean cannot "un-become" an adult and Dean cannot "un-learn" what he has learnt. So exactly how does a person become unfit?  Dean was not a bankrupt like Joan Page, so Dean is not sure what they meant other than of course they were protecting themselves and unlawfully taking complete control of the Immigration Enterprise.

761. It was pretty clear that Barker, Daw and their Friends could not be trusted to give Dean an evenhanded hearing. In fact, there was no hearing at all; there was a just a note that the matter was no matter and that was the end of it. Dean did receive some case law that had to do with for profit corporations from Miller Thomson's lawyers but nothing involving the Canada Not For Profit Corporations Act.

**Exhibit 62 - Responding Submission of Board of ICCRC**
**Exhibit 63 - Brief of Authorities of Board of Directors of ICCRC re Ryan Dean Appeal**
**Exhibit 64 - Compendium of Board of ICCRC**

762. The appeals panel consisted of Mr. Louis-Rene Gagnon, Mr. Perminder Sidhu and Ms. Daniela Lima and they all voted to uphold the Board's unlawful decision and in turn their appeal panel's decision was contrary to the CNCA 130 (1), 130 (2), and they are all subject to 262 (1), as well as the US Laws since they affected interstate and foreign commerce under 18 USC § 1962 et al.  The Imm defendants are dripping with corruption – just like the False accusers.

763. What's more, the lawyer for the ICCRC was once again Mr. Adam Stephens, and this is another instance of his participation in violations of the Act 130(1) and 130 (2) again and another instance of being eligible to receive correction under CNCA 262 (1), and the Parliament of Canada and 18 USC § 1962 et al. He was in conflict of interest again per Exhibit 65 and Miller Thompson doing the transaction for the Saga Enterprise that specifically related to the United States give specific jurisdiction on Pace, Adams, Saccucci, and Miller Thompson in the United States.

**Exhibit 65 - Appeal Committee Decision**

**The Complaints Committee**

764. The Complaints Committee, consisted of Sherry Wiebe, Rochelle Dickenson, and Satpaul Singh Johal, are also culpable for each and every CAPIC coordinated discipline complaint they endorsed forward through the process in violation of CNCA and 18 USC § 1962. They wasted no time "rubber stamping" all of the discipline complaints on April 27, 2017 – exactly one week after Dean's unlawful Board Trial and removal. Of course, all of the complainants knew that these matters were happening as it was widely talked about in emails, social media, chat boards, and the like and this was a further Breach of the Act, Parliamentary Privilege, and due process.  The difference is that it also now brought all of the CAPIC discipline complainants into Breach of Parliamentary Privilege issues, as well as US law.

765. Side Note: Dean received such a notice as in Exhibit 66 for all of the complaints, but Dean list this one here and can produce the others if asked to do so. How could the complaints Committee review so many complaints on one day so fast or was Dean denied due process yet again by Chris Daw's friends? In any event, they 'rubber stamped' it and sent it off to Nevada via email.  Wire Fraud numerous counts on each discipline committee member.

**Exhibit 66 - Complaints Committee Decision on April 27 2017 Regarding Bulk Complaint**
**Tying the Appeal, the Appeal Committee and Complaints Committee Together**

766. Imm defendants, yet again, spent a good sum of the memberships' treasury on these huge lawyer documents protecting themselves and removing Dean as an elected director who clearly was 'on to something.'

767. Look what Dean found when ICCRC was willfully hiding out in the open with monthly Bulletins; imagine what Dean would have found had he been "allowed" to do his Director duties?

768. Andrew Roman, of the "Andrew Roman Professional Corporation" law firm, was the lawyer for the Panel of the Appeal Committee, read the appeal where Dean discussed the discovery of the Third-Party that was hidden from

the membership from the inception of ICCRC.  Mr. Roman co-authored the same report *"Review of ICCRC's Intake Process for Disciplinary Matters and Recommendations for Change"* as Ms. Patricia Harper above, and Mr. Roman knew that Dean was very concerned about the Third-Party that was hidden from the membership and indeed denied to them that it even existed.  Like Ms. Harper, Mr. Roman was also a major benefactor of this Third-Party.  Mr. Roman therefore had a major conflict of interest, and should have recused himself but did not. Instead, he did all he could to make certain that Dean's appeal was denied, which of course is contrary to the Act 130 (1) & 130(2) and US Law as the appeals committee arranged to have this scheme to defraud sent to Dean in the United States and of course affected all of the members of ICCRC in the United States.

**Exhibit 67 - Ryan Dean Initial Appeal to Appeal Committee**

**Exhibit 68 - Ryan Dean Second Response to Appeal Committee**

769. Carla Gelbloom, the ICCRC Complaints and Professional Standards Administrator worked closely with all on the Appeal, the Appeals Committee and the Complaints Committee as well as making the discipline complaints.  Normally, a Discipline Committee decision would list who the lawyer was for the Complaints Committee. In this instance it was conspicuously absent. Why is that?

770. Director Fortin at the time has virtually no cash nor financial resources and she surprised nearly everyone on the Board that she voted with Chris Daw and his Board and Officers Friends.  Mr. Fortin resigned shortly thereafter.  *What is going on here?* It appears that Ms. Fortin was offered and took a bribe as well.

**Exhibit 69 – Carla Gelbloom ICCRC Complaints and Professional Standards Administrator In Conflict of Interest.**

## The Second Class Director At ICCRC and The Obvious Corruption

771. While Dean was a Director, Dean was barred from even entering the offices of ICCRC from day 1 (one) of his Directorship and to date he has never seen the inside of the ICCRC head office; getting the records he wanted to see was problematic to say the least and this is contrary to the Act 21 (7) 'Directors' access to records:'

772. "The records described in subsections (1) and (3) shall at all reasonable times be open to inspection by the Directors.  The corporation shall, at the request of any director, provide them with any extract of the records free."  And…'Examination By Director 24(1)' under the Act was summarily denied as well by ICCRC.

773. Dean further states that he was shut out of one of the main electronic systems before being removed by the Board suggesting that the Board Trial was a mere formality.

774. While as Director,  Dean asked the Registrar for a list of the members under the Act 'Requirement to provide list 24 (2):'

> "The Director may require the corporation or its agent or mandatory to furnish to the Director within the prescribed period a list of members or debt obligation holders setting out the prescribed information and updated in accordance with the regulations."

775. The Registrar refused to provide this list.  Since Dean was the Director who received the highest percentage of votes in the 2016 election cycle and since the Board choose to not make the me part of any committee (until the very end just before removing me), Dean decided he would appoint himself as 'ombudsman' because the membership already gave him a mandate to investigate the many obvious problems within ICCRC. Dean obtained an 'ad hoc' list of ICCRC members as well as an ICCRC employee told him about the employee blast email address. Mr. Barker and Mr. Daw were not pleased at all and rebuked me at the Board level for interfering with their scheme to defraud.

776. Chris Daw and his Board and Officer Friends did like the idea of having an "ombudsman" but just not Dean.  See Exhibit 18 under GOVERNANCE AND NOMINATION COMMITTEE:

> "Ombudsman (or alternative title)…."

777. As a Director, Dean was prevented and barred, contrary to the CNCA of the 'Duty to manage or supervise management 124:'

> "Subject to this Act, the articles and any unanimous member agreement, the directors shall manage or supervise the management of the activities and affairs of a corporation."

778. The case is clear that ICCRC and its Board were in violation of this by preventing Dean the right to speak to members and/or ICCRC employees. By speaking to the employees, Dean would also be able to gauge the activities of management because the management was not speaking to Dean or giving information or access to it.  The entire ICCRC was a Black Box itself and as a Director Dean was prevented from looking into it and really getting the records that he wanted to see, over and above the previously aforementioned Black Box regarding the Discipline Process.

779. When Dean tried to get a resume of the prospective CEO candidates he was denied even this; when he tried to suggest to test the prospective CEO candidates with a Harvard Business School Case to get into their minds to see how they thought business wise this too was denied by two former Directors Merv Hillier and Richard Dennis, and this was contrary to not the Act but also to ICCRC's By – Laws (Exhibit 5). ICCRC was not concerned with details such as the Act and its own By – Laws **51.3 Effect of Cessation of Qualifications as well as more wire fraud by all of these individuals:**

> "An individual will cease to be qualified to continue to hold office as a member of any committee of the Council in the event of:
>
> > (d) in the case of a Director, ceasing to be Director."
> **Exhibit 70 - CEO Search Committee Lock Out**

780. As an elected Director, Dean literally had less power and rights at ICCRC than a member of the public and a member of ICCRC. Later, Dean realized that Mr. Dennis and Mr. Hillier were de facto Directors, with more power than Dean at all times, despite Mr. Dennis being defeated by Dean in election and Mr. Hillier at the end of his Director Term Limit 49.1.  Clearly violations of CNCA and 18 USC § 1962 et al.

781. The ICCRC made its CEO hiring decision and announced Mr. Stephen Ashworth As CEO.

**Exhibit 71 - ICCRC June 1 2017 Bulletin**

782. Then ICCRC made its firing decision 1 year later and fired Mr. Stephen Ashworth but while he was there he gladly helped in the cover up; ICCRC hired Lawyer Wendy Kelley as Interim CEO and while Ms. Kelley was the interim CEO she too gladly helped in the cover up. Dean was astounded that when he read this about Ashworth, and Dean realized that Mr. Hillier had a hand in hiring and firing three CEOs. Mr. Christopher Barry was hired as a permanent CEO and by all accounts was very competent (Dean never met Mr. Barry). Mr. Hillier constructively fired Mr. Barry because supposedly Mr. Hillier did not sign a form. Since when with this crew would the mere signature on one form be a show stopper to hire and keep a competent CEO?

**Exhibit 72 - ICCRC June 15 2018 Bulletin**

783. This goes to the heart of ICCRC protecting itself and not looking out for the interests of the members nor the public and Imm defendants violating the CNCA and 18 USC § 1962 et al. Just as in the Public Interest Director case as above, when the out – going Directors, in the twilight of their terms, picked new PIDs to surreptitiously tip the true balance on the Board, the CEO Selection Committee too is in the same light, but worse.

784. The out-going Directors who lost in election, selected themselves to be the Committee Members, who would next decide who the CEO would be. Does that sound right? Does that sound like democracy and Self Regulation at ICCRC?

785. Mr. Amlani, Mr. Bernier, Mr. Hillier, and Mr. Dennis all remained on the ICCRC CEO Search Committee and contrary to 51.3 of the By – Laws. Despite no longer being Directors as of November 12, 2016 these gentlemen were allowed to steer ICCRC's selection of the new CEO (Exhibit 1). Peter Perram, once he became a Director unlawfully (as above) was also placed on this Committee.

786. The most important thing that the Board of Directors can do is "hire" and "fire" the CEO. This right and duty was **expressly and oppressively** denied to all of the incoming Directors, and by extensions the membership and the Public, from the November 2016 to November 2017. It was yet another way of controlling the Enterprise.

787. The further point is that with all of these documented efforts above to control the Enterprise can anyone say (read Jury member) that it was not a scheme to defraud and a violation of CNCA and 18 USC § 1962 et al, and especially so since the Richard Dennis was a resident of Buffalo, NY at all times during this scheme to defraud? The Imm defendants knew each and every little button that they had to push to perpetrate the scheme to defraud.

788. It is of Dean's opinion that Dean was a Second Class Director at ICCRC director for his entire time on the Board. Dean was not even allowed to be on any committee until the very end just so they could "tick the box" before Dean was unlawfully removed; without exception Dean believes all other Directors were either Chair or Vice Chair of an ICCRC committee. Clearly, this "Second Class Director" is not provided for in the By – Laws, but absolutely happened as well in a conflict of interest 'ad hoc' director class creation which of course is a Fundamental Change

violation of the Act 197(1)(c), 197(1)(L) and 197(1)(n), and further violates the Act 148(1)(2)(3)(4). It is also just another way of retaining control of the Enterprise.

789. If ICCRC appointed directors in an "ad hoc" fashion (see exhibit 71) then they certainly could and did oppress one too.

790. Dean had a mandate from the membership to investigate and clean out the regulator and Dean was authorized by that fact alone but the ICCRC charter also further provided a very good vehicle to get something done right.

791. In Exhibit 19 **-** Articles of Continuance and Amendment of ICCRC: purpose of the corporation (a), (c), and (d) where it explicitly states:

> (a)—to promote and protect the public interest by governing and regulating the practice by governing….
> (c)—to promote and protect the welfare and interests of the corporation
> **(d) – to do all such things as may be necessary or incidental to the furtherance of the foregoing purposes.**

792. Dean believes that under the Article of Continuance (a), (c), & (d) above that Dean has indeed done all he can do.

793. What further smacks of corruption is that ICCRC plundered the membership's treasury, using the membership's money against the membership, to hire a gaggle of lawyers including, but not limited to:  Attorney Michael Pace, Attorney Andrew Roman, Attorney Patricia Harper, Attorney Adams Stephens, Attorney Elliot Saccucci, Attorney Natalie Leon, Attorney Nicole McAuley (Leon and McAuley are both of the "law firm" Forbes Chochla), Attorney John W. Murray (ICCRC CEO),  Attorney John Risk, Attorney Wendy Kelley, (past ICCRC Interim CEO), Attorney Michael Huynh, ICCRC Director of Professional Conduct, and two Board members who said they were an attorney (or one claimed to be an attorney in her election campaign in of 2016 but was under 'administrative suspension') and none of them knew about  the numerous violations of the Act, Breach of Parliamentary Privilege and likely the Criminal Code issues as well under conspiracy, fraud, aiding and abetting.  How could that be?  Look at all of these lawyers and together how many laws that they are breaking so they can profit from breaking the laws of Canada and the United States and many of these lawyers were likely trained in the United States at some point.

794. As for Natalie Leon, Nicole McAuley, and their 'law firm' Forbes Chochla, they played both sides of the Daniel Roukema issue and other issues, and tried to fraudulently conceal that from Dean.  Leon, McAuley, and Chochla reached into the United States on numerous occasions to attempt to threaten Dean and further the scheme to defraud Dean and the ICCRC membership. They attempted to affect interstate commerce in the United States.

> https://www.dropbox.com/s/hf3n7xi1opolnv4/Letter%20to%20Ryan%20Dean%20dated%20October%20%2C%202017.pdf?dl=0

795. It is of note that the timing of this threat of a "interlocutory motion," is the same way of saying "Temporary Restraining Order ("TRO"), and is it any coincidence that this threatening letter sent to Dean into Nevada was about three weeks after Judge Murray dismissed the TRO/FRO hearing with respect to the False accusers. A matter for the Jury to decide.  The threatening letter also states spurious reasons for the grounds that they state ignoring that overall picture and that is that there is extreme criminality at this point by Imm defendants trying to protect and retain control of their Enterprise.

796. There should be an injunction that prevents the Imm defendants from using the ICCRC treasury to defend against this Civil RICO complaint because the law says that they ought not benefit from their ill gotten gains and then use these same ill gotten gains to protect themselves.

**Exhibit 78 – ICCRC Lawyers**

797. Rhetorically speaking, is it really plausible that all of these Ontario Lawyers under the Law Society of Ontario "Complete Rules of Professional Conduct" all missed collectively that they were bound by but were breaking: "conflict of interest," Integrity 2.1.1, Ethical Competence 3.1-2, Honesty and Candour 3.2-2, Dishonesty, Fraud, ect.by Client and Others 3.2-7, Dishonesty, Fraud, ect. when Client an Organization 3.2-8, Duty to Avoid Conflicts of Interest 3.4-1, Acting Against Former Clients 3.4-10, Lawyer Due Diligence for non-lawyer staff, Withdrawal from Representation 3.7-1, Duty to Report Misconduct 7.1-3, Encouraging Client to Report Dishonest Conduct 7.1-4, Courtesy and Good Faith 7.2-1, Maintaining Professional Integrity and Judgement 7.3-1.

798. Moreover, paying all of these lawyers was far more expensive to the membership than running an election and/or having a Special General Meeting and that there was not one *honest lawyer among them?*

799. Or in short, mostly the entire Complete Rules of Professional Conduct of the Ontario Law Society were breached and violated in one way or another by all of the above Ontario Lawyers. How is it possible in Canada, because in my opinion, that is precisely what happened.

**Exhibit 79 - ICCRC Board, Officers, Involved Individuals for 2016 – 2019**

800. In Exhibit 82, page 4, below it showed that Mr. R. Dennis was scheduled to run in the November 2017 Election but of course he was appointed anyways in October 2017 and then again for the full year of 2017 – 2018 (see Exhibit 23, Page 9), skipping elections altogether. In Exhibit 23, Director Rhonda Williams, Chair of the GNC and quarterback of the Bulk Complaints against me was behind Mr. Dennis' "get out of election free" card.

**Exhibit 82 - ICCRC Bulletin September 29 2017**

801. Just like Javier Vinsome was given preferential Good Friend of the Board status and the Act was ignored, Mr. Alex Berkaskow and Mr. James Hsieh were also given "two kicks at the can" to stay on as Directors because Rhonda Williams liked them so much and this somehow made it out of her GNC committee.

**Exhibit 83 - Double Crack At The Being a PID Director By Appointment Or Election**

802. In the wake of the Election Committee Decision banning Dean from running in that year's election (Exhibit 27) Dean was further banned for 5 years by Chris Daw and his Board and Officer Friends and again, Rhonda Williams' GNC committee. The messenger was Ms. Patricia Harper.

803. So Good Friends of the Board can get not one but two chances of being a director; other Good Friends are appointed and not made to run in Election at all, and all of these are not provided for in the By – Laws (Exhibit 5). Not so good friends, such as me, are banned from running for election for 5 years.

**Exhibit 84 - ICCRC Bans Ryan Dean From Running In Election For 5 – Years**

804. Director Gabrielle Fortin, who signed a contract with Mr. Belbachir and Dean, betrayed us at Board Trial. Had she voted with us it would have been 6-6 but ended up being 7-5 against Dean.  Dean openly called Fortin the "Benedict Arnold" of the membership.  A few days after the Board Trial Fortin was saying that the membership was very angry that Dean had been removed from office and that she was getting a lot of very bad messages. Director Fortin wanted to know about the insurance that was in place for Directors. ICCRC was still copying Dean on their messages for quite some time past Dean's removal.

805. The further point is that the Directors knew that *they had done something wrong enough for at least one of them to start asking around for insurance.*  Y'all ("False accusers and Imm defendants") are going to need your insurance.

**Exhibit 85 – Director Fortin Asks About Insurance**

806. Look what the membership had to say about all of this by *not voting.* They were not happy to see Richard Dennis again at all as a Director.  In short, this affected commerce in the United States because Immigration Consultants did not even want to vote and apathy was setting in.

**Exhibit 86 - ICCRC Membership Voting Rates Plummet**

807. Here is the complaint that Dean made to the Speaker of the House of the Commons. Nothing happened with it and Dean never followed up.  He had been working on it and finished it up and never really looked at it again because Dean was dealing with the False Accuser Association-In-Fact. Still this complaint to the Speaker shows plenty of violations of 18 US 1962, witness tampering, wire fraud, et al.  To access the appendix noted in the complaint to the speaker there are included in the same link used throughout for the Exhibits and Appendix herein which will further corroborate all of the substantial fraud.  It further shows more details of the scheme to defraud by the Imm defendants point by point.

https://www.dropbox.com/s/d8plhad7i9y8qk5/SpeakerOfHouseOfCommonsComplaint.pdf?dl=0

# Act II

"One thing is already clear: some **unscrupulous lawyers** are trying to exploit the #MeToo movement for personal profit by helping women **file false** or exaggerated accusations against innocent men. If this tactic is allowed to succeed – if there are no consequences for levelling knowingly false accusations – it will spread and become a "racket." *Guilt by Accusation: The Challenge of Proving Innocence in the Age of #MeToo*, Alan Dershowitz, pg 62

"This is everyone's battle, not just mine. It is a battle for justice for all.  It is a struggle against those who bear false witness.  The Bible commands, "Justice, justice you shall pursue."  The word justice is repeated, because there must be justice *both* for the victim of false accusations *and* for those who falsely accuse.  I will not rest until "justice" comes to me, as well as to those who have borne false witness against me." *Guilt by Accusation: The Challenge of Proving Innocence in the Age of #MeToo*, Alan Dershowitz, pg 113

808. The False Accuser Associates-In-Fact defendants with the help and finance of the Imm defendants took away all that Dean had and all that he is going to have by simply having Ms. Bissell pointing and accusing Dean of incredible (false) sexual violence.  In creating all of the false chaos, False Accusers change nearly every aspect of

their story at least twice and sometimes three or four times. It has resulted in having to de-spaghettify all of the perjury, subornation of perjury, and fraud, and it is a very difficult job to unravel because so many of the pieces are interrelated. To further make this a difficult task the elements of each of the crimes have to be stated and woven into the fabric of the spaghettification.

809. The False Accusers wanted it this way because it is so difficult to untangle it all as well as discover it all as will be shown. The False accusers wanted the Court(s) to listen to the "shock" of what they are claiming at any one point but did not want the Court(s) to consider what False accusers told other Court(s) on the same time frame and subject - or the Police or someone else (with the Evidence). This is the same thing that Imm defendant Larry, Hawe, and Ranking did along with their 'law firms,' in trying to tangle up Dean as presenting the same claim as M. Watto. M. Watto's claim was about finances; Dean's claim was about democracy as well as the fact that they used their "officer of the court" status to deceive the court against a Pro Se litigant.

810. In creating this Civil RICO complaint document, the police report was acquired only recently and there was not enough time to edit in all the details with all of the changes and affects that it makes to the exculpatory case to Plaintiff Dean. Instead it is noted frequently herein that this was the situation before the police report was received and then a note about the police report is inserted. It will all be updated in due course.

811. This is that effort and it is an effort to unscramble scrambled eggs mixed in with Spaghetti. Like the Imm defendants, the False accusers twist the Truth and invent stories for the rest. The recipe to see that the False Accusers are perjurious criminals is to simply keep a tally of all of the documented lies and note how "material" it is to the overall story. There are a few dozen material lies that the False Accusers have been caught doing. The beginning of Act II is somewhat academic as the various predicate acts are rattled off and incorporated herein and defined and then Act II starts to pick up as all of the Perjury and Subornation is laid bare and the predicate act(s) is merely made mention of.

812. Ms. Bissell was in financial dire straits in May 2017 and Dean had made it clear early in the relationship that Ms. Bissell was not going to be Dean's next full-time girlfriend (nor the next Mrs. Dean).

813. Ms. Bissell knew who Dean's enemies were in Canada and mention of this is made throughout the text messages – she even helped him with a CBC Interview in late 2017. "Half wits" in the Bissell/Dean text messages is a direct reference to the Imm defendants. When Bissell figured out that she was not going to be the next Mrs. Ryan Dean, this was around the time that Ms. Bissell got the Evil Notion to contact the Immigration Associates-In-Fact and agreed to go into league with one another for the purpose of arranging for the undoing of Ryan Dean, and his business and property – the Saga Enterprise. Ms. Bissell knew that the Imm defendants were into bribery and backroom deals and so she approached them.

814. Ms. Bissell is a sinister figure who is not part of this RICO Civil Complaint but application will be made to the Court to remedy that – and especially so now that the police report has been obtained.

815. The Imm defendants had my social security number from my filing out their 'employment forms' on November 12, 2016, or thereabout.  Imm defendants gave this social security number to Bissell, who in turn gave it to the Private Detective that False Accusers hired. There was no other way for the Private Detective to get Dean's social security number because there was no permissible purpose: Dean did not know the extortion plot was well under way and there certainly was no court order at the time (see Police Report (below), pg 3, para 3) against Dean with respect to any matter in the United States. Compare this with the fact that the False Accuser Bissell then left all of Dean's identifying information – like his phone number – off of the original TRO. She likely deleted her text messages with Dean and did not know where he lived but somehow she was able to secure a copy of his Social Security Number and the only way for them to get that would be through the Imm defendants. That is a hard connection between the Imm defendants and False accusers and it will be a matter for the Jury to decide what to do with all of these hardcore criminals.

816. In this socially connected world the word rape is toxic and Ms. Bissell was good at "telling stories" and defendants decided they would "brand" Dean as a rapist.  What Ms. Bissell accused Dean of was to 'brand' him into being the equivalent of 'nuclear' toxic waste.

817. Ms. Bissell was looking for a quick "knock-out" of Dean and to send Dean off to prison for the rest of his natural life but she "forgot" her own story in front of Judge Murray, and it quickly began to deviate with each retelling of the story well into 2019. Since then, it has been a long time since Ms. Bissell has signed even one certification as even he lawyers know (it is/ obvious) that they have told her to "sit down and shut up," as these lawyers try to save their own careers and avoid Justice.  The Truth does not change but the liar's story does, and Ms. Bissell and her co-conspirators are on her 7th or 8th story now.

818. Along the way, False accusers have projected onto Dean and Klassen everything that they have Falsely Accused them of and there is no reason not to believe that False Accusers wanted Dean dead nor that they would/will not try another attempt at any time since these matters have dramatically escalated.

819. On March 18, 2021, Dean finally was able to secure a copy of the police report and it too is a "smoking gun" of the False Accuser Association-In-Fact ("False accuser" or "False accusers") where it shows the malice and evil that was poured into the scheme for profit and extortion takes if Dean survived on one hand and on the other hand it provided an "income" for the False accuser defendants as they egregiously abused the legal system. Clear violations of the RICO statute as will be outlined below.  It is further important to note that the police report was never discussed on the record with Judge Callahan nor Judge Murray.  At this time of writing the TRO in front of Judge Brindisi (08/09/17 is still being (attempted) to be secured but it the stated municipal policy of the Cedar Grove Police department to never give access to these recordings).

820. Unfortunately, for all defendants including the Cedar Grove defendants (see below for defined term) the Congress of the United States outlaws any scheme to defraud and that TRO recording is exculpatory evidence to Dean.

821. If what has transpired, and what the False Accusers and Imm defendants have done is allowed to stand, then anyone that is being justly accused of wrongdoing for anything need merely only to organize a false rape claim campaign - and Evil and Lawlessness will prevail - and the Innocent and Just gets destroyed. But that is precisely what is happening in our nation today because very little happens to the False Accuser – even if they are caught that is their baked into their calculation. But in this instance case these are full blown RICO Predicate Acts and Congress did not intent for *any* perpetrator to walk away from it – Congress intent was to exact furious Justice every time where racketeering was found in the United States and/or projected into the United States.

822. Consider herein the Evidence and the step – by – step words of the False accusers on the same subject matter and 'championed' by the various corrupt False accuser criminals with law licenses and all the while the Imm defendants have been pouring their malice and Evil intent into the scheme to defraud with Canadian Dollars into the United States.

823. This document is packed with references to the Evidence. Frequently matters will be gone over twice or even three times or more to compare to the difference of False accusers' statements on the Record and/or the 'attorneys' unblinking support of it. False accusers went to great lengths to create the criminality and "spin" and tangle the web of Fraud and Deceit in their scheme to defraud.  It has taken quite a bit to compile the records from various and Courts and compare – side by side – the Perjurious and ever-changing statements.

**PRELIMINARY STATEMENT**

824. As a preliminary statement, and because this is such a personal matter Plaintiff Dean will use 'first person' pronouns such as "I" and "me" and so on and so forth for a good portion of Act II, and then will switch back to Plaintiff Dean or Plaintiff(s) for the remainder of this document and it will so be stated where the change over is. I believe that the public will be mortified when it learns of what has been allowed to transpire on many levels.

825. As the Court knows, I have protested vigorously for having to deal with False Accusers' Perjury, Crime and Furtherance of Crime, not once but twice. Note: for these entire pleadings, wherever it says "perjury" or "subornation of perjury," it should also be taken to mean "false swearing" and all of the other implications of "crimes of moral turpitude." These items will be defined below.

826. That there are predator lawyers on the loose in New Jersey that have wrecked my life and the Saga Enterprse for extortion takes and profit – and had a hand in attempting to send me to prison for the rest of my life (and possibly be murdered) is astounding and that they have not been punished is unjust. These lawyers and their firms involved in these matters have created the most Evil fraudulent falsities that they themselves knew a priori

before they launched their treachery and extortion campaign is monstrous. That they have involved the Court system(s) is further disheartening as well. The following statute applies and should be invoked by the Court.

827. New Jersey Statute 19:34 – 26 (perjury and subornation of perjury): A person shall be guilty of willful and corrupt false swearing or affirming, or by any means shall willfully and corruptly suborn or procure a person to swear or affirm falsely, in taking any oath, affirmation or deposition prescribed or authorized by this title, he shall be deemed guilty of a crime of the third degree, and be deemed to be an incompetent witness thereafter for any purpose within this State, until such time as he shall have been pardoned.

828. On August 9, 2017, the False Accuser Bissell filed a false police report and Temporary Restraining Order ("TRO") with the Cedar Grove (New Jersey) police. At that point I did not have the Police Report and I could not get a hold of it until March 18, 2021 of this year. Here is what the False Accusers told the Police what happened after the supposed rape of February 7, 2017:

> "...Mr. Dean cleaned himself up and told her that she better not say a word about this or she will never work for him. They went to sleep and he left in the morning. [The police officer asked if alcohol was involved] and [Bissell] said they never drank more than two glasses of wine. Mrs Bissell said that they never spoke of that night again, but they did continue to communicate about business and even attend meetings together. She also wished Mr. Dean a "happy valentine's day" via text message. As time went on, business associates discovered things that weren't adding up with Mr. Dean, and it was discovered he wasn't a credible businessman. When Mrs. Bissell discovered this, she become withdrawn and depressed. She contemplated suicide and divorce to get out of the situation. In April, Mrs. Bissell filed for divorce from her husband. Also in April, Mr. Dean called her to say that he was back from a trip. It was at this point that she told him she was done with his company and wanted nothing to do with him" (Police Report, pg 2, para 3).

829. Among many other things this police statement foreclosed the possibly that Dean was "threatening" the False Accuser Bissell about the supposed re-Rape, but on February 27, 2017 that is precisely that Bissell claimed that she was being threatened with in reference to the (false) February 7, 2017 night again and again and again every time she and I spoke on the phone or in person to break and enter her home, re-rerape her, "just like last time," and then proceed to murder Bissell, her family and her *children*. Bissell was trying to shock the Court with theatrics and to ignore the Evidence. Thank God Judge Murray was a professional lie detector and read the text messages several times (see text message link above).

830. The text messages between the False Accuser and myself are one of the key documents to all of this sham litigation and scheme to defraud, and indeed the utter abuse of the law and legal process. In spring 2017, the False Accuser had asked me to delete my text messages and she thought I did – I did not. The False Accusers sprung their trap on me on August 9, 2017 and my text messages in large part saved me I believed then from spending the rest of my natural life in prison and likely being murdered in prison. Here the story begins.

831. After appearing before Judge Murray on August 17, 2017, shortly thereafter the False Accusers were given the *entire* text message history between Bissell and myself. The False Accusers knew that I did not have the police

report and were working with the Cedar Grove Police Department to conceal it from me. False accusers started to scheme out how to amend the Temporary Restraining Order ("TRO"). False accusers came up with a fabricated story about garage door codes and then in open Court (with no notice of these next allegations) that on every single face-to-face meeting and phone call I was very angry and I threatened the False Accuser Bissell that I was going to break into her home, re-rape her, then it would all be followed by grisly mass murder of Ms. Bissell, her family, and *her children*. It of note that Bissell on the police report made no mention of threat to re-rape nor Dean's "constant" and "repeated" threats to murder her children.

832. I have suffered grievously for the last four years because of this Evil and herein is the Evidence of all of the different stories that the False Accusers have perpetrated upon me, my business and my property, that has wrecked my life and 1 international hedge fund – the Saga Enterprise. Mr. Kevin Klassen, my business partner has also suffered as direct result of them wrecking the Saga Enterprise.

833. Everything that the False Accusers have done they have spun it around and made it seem like I (or Klassen and I) were the ones doing it. Herein is the Evidence (see text messages above and para 836 below) that for over ½ the time in question I was in Asia/Canada and not communicating with Bissell at all during the time in question from February 8, 2017 until May 1, 2017. See phone records and Dean airline ticket to Asia (that also includes the texts in word and text message statistics and other relevant exculpatory information).

Bissell Dean entire text history
https://www.dropbox.com/s/fwx63k3m0k7x957/Bissell%20Dean%20Text%20Messages.pdf?dl=0


Dean phone records showing how little he is calling Bissell and showing he is "roaming" in Asia/Canada
https://www.dropbox.com/s/kstboqrnkuxa0dw/Exhibit%2014%20%E2%80%93%20Ryan%20Dean%20Verizon%20Phone%20Records.pdf?dl=0

Text Messages reproduced in word, with statistics, and Dean's airline ticket to Asia
https://www.dropbox.com/s/13jnllxfh1hrxt3/Text%20Message%20Statistics%2C%20Texts%20in%20Word%2C%20and%20Airline%20Ticket.pdf?dl=0

834. Here is the "job description" (see link) that False False Accuser Bissell gave me in 2016. It includes:

- Under the "Why Lisa False Bissell" on page 1 it says that she is strong at "story creation" and then "story telling."
- Bissell knows that it is important to "need a VERY clear background of anyone associated with the corporate structure so that there are no surprises, and I know how to handle ANY situation.
- The press loves this angle since female executives are still considered a minority.
https://www.dropbox.com/s/hradr01w4bzcwxd/Exhibit%2022%20%E2%80%93%20Lisa%20Bissell%20Job%20Description.pdf?dl=0

835. Note each one of these links should be downloaded and printed off so the de-spaghettification can begin and to see the total scheme to defraud. Also, a word from the Supreme Court of the United States on the subject of "scheme to defraud."

> A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, Neder v. United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999), reasonably calculated to deceive persons of ordinary prudence, United States v. Brown, 79 F.3d 1550, 1557 (11th Cir. 1996) (construing the mail fraud statute).

836. The courts require a plaintiff to establish that the threat induced reasonable fear. See, e.g., United States v. Marsh, 26 F.3d 1496, 1500 (9th Cir. 1994) ("[T]he elements of economic extortion are (1) a threat of economic harm that is (2) made with the purpose of obtaining money from the victim (3) that puts the victim in reasonable fear of economic harm."); United States v. F!Jnt, 15 F.3d 1002, 1007 (11th Cir. 1994) (holding that a Hobbs Act "offense occurs when a defendant exploits a victim's reasonable fear of economic loss"); United States v. Billups, 692 F.2d 320 (4th Cir. 1982), cert. denied, 464 U.S. 820 (1983) ("[T]he government's burden of proof is satisfied if it shows that the victim feared an economic harm, and that the circumstances surrounding the alleged extortionate conduct rendered that fear reasonable.").

837. In this case this is precisely what the False Accusers have done within and outside of the legal proceedings and there has been economic fear – among other types of fear like prison and death – that qualify as Hobbs Act Extortion. All defendants are culpable and culpable under terms of conspiracy – which is a separate inchoate offense under Federal RICO. There is plenty more Federal and State criminality.

838. So, in short, False Accusers like to make stories up and then tell those stories, and that False Accusers can handle "ANY" situation – and from the history with False Accuser Bissell, that is not entirely true as she has not signed any document in over a year for the reason that her corrupt attorneys Mr. Dave Shivas ("Shivas"), Mr. Joseph Bell Jr, ("Bell") Mr. Brian Laskiewicz ("Laskiewcz") from the strip mall 'Better (not) call Saul' lawless firm Bell & Shivas, P.C., ("BS") do not want her to say a word at this point as there are so many documented differing stories from False Accuser Bissell. BS' assistants Victoria Kingdon ("Kingdon") and Kriti Ward ("Ward") push the paperwork along to help the scheme appear as if it is legitimate – it is not – and they are full partners in the scheme(s) to defraud.

839. False accuser BS does not want to have anything to do with GG, False accusers' 2017 attorneys – Darren Barreiro ("The Vice Chair"), Robert Flanagan III ("Flanagan"), of the "law firm" Greenbaum, Rowe, Smith, and Davis LLP ("Greenbaum Gang") or ("GG").  It is easy to see why because it will be proved herein that BS and GG both had a copy of the police report and committed a scheme to defraud as well as committed Fraud on the Court.

840. Let's meet one of the corporate False Accusers and that is Lisa Bissell's company named "Classic Luxury LLC." Bissell testified and certified to Judge Murray (2017) and to Judge Gardner (2019-2021) respectively that she was under a "non-compete" agreement with Pure Grown Diamonds – Bissell's former employer - until sometime

in 2018. In 2017 see False accuser promoting via Classic Luxury LLC on Facebook, the precise things False accuser was supposedly not supposed to be doing and this constitutes numerous counts of wire fraud for at least "Classic Luxury, LLC" and will be updated in the RICO civil case information statement.  For now, in the link below, it is easy to see that it is Bissell and Classic Luxury, LLC promoting the diamonds, gems, and jewelry, when they were doing it, and so on and so forth. Isn't it ironic that Robin Jones would use the word "gem" in her false hysteria to kick off Act III but Ms. Jones knew all about False accuser - Bissell and that is a matter for the Jury to decide.

https://www.dropbox.com/s/i9hymmohkweewfw/Classic%20Luxury%20LLC%20on%20Facebook.pdf?dl=0

841. Since the ever so exculpatory police report was released on March 18, 2021, all of these attorneys are in ever deeper 'hot water,' as their criminal schemes are now so apparent and together, they, along with the Chris Adams ("Adams") and Charles Vaccaro ("Vaccaro"), representing False Accuser Bissell and the Vice Chair of the Litigation department, Darren Barreiro, and Flanagan, are also part of the ruse.

842. Add in Mr. Craig Peretz, COO of Sierra Global Capital Management and Mr. James Bissell (who took part in filing the police report and had himself videotaped for the scheme), and this rounds out the False Accuser Association-In-Fact or "False Accuser" as defined above. Imm defendants are also incorporated into False Accuser.  Therefore, whenever the term "False accuser" is stated it also includes all Imm defendants from Act I as they are full partners-in-crime of this scheme. Nevertheless, and just to remind everyone of this "little gem," it will be stated False accusers and Imm defendants throughout as well.

843. Moreover, everything herein is charged against all defendants – the False accusers - in Act I and Act II under the specified law and under terms of conspiracy as defined herein. All of the laws herein in Act II are believed to be either Federal RICO, Nevada RICO, New Jersey RICO, Florida RICO and New York Enterprise Corruption laws, otherwise it will so be stated. There are also a litany of common law claims. Dean was a resident of Nevada and New York on 08/09/17, False Accuser Bissell was a resident of New Jersey and Florida, Peretz lives in New York. Imm defendants reached into the United States and these various states to put in motion and keep in motion these various crimes. The Pinkerton Doctrine applies.

844. In order to state a claim for "civil conspiracy" using Third Circuit based law, plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." State, Dept. of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc., 904 A.2d 775, 785 (N.J.Super.Ct. App. Div. 2006) (citing Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App.Div. 1993)). The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right

of action. In this case it is a "combination" of two Association-In-Fact members engaged in Federal and State RICO activity.

845. This is also a Federal Civil Rights Claim and there is conspiracy to violate Dean's Federal rights. Section § 1983 claim for conspiracy to prosecute maliciously. The Court of Appeals has recognized a Section 1983 § claim for conspiracy to engage in a malicious prosecution. See Rose, 20 871 F.2d at 352 (reversing district court's dismissal of malicious prosecution conspiracy claims). Fourteenth Amendment stand-alone claim under section § 1983 for fabrication of evidence.  In Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014), the court of appeals held that even if a Fourth Amendment malicious prosecution claim were not viable, a Fourteenth Amendment stand-alone claim for fabrication of evidence would be. It rejected the argument that "evidence-fabrication claims must be tied to malicious prosecution cases," concluding that "**no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence**." Id. at 293.  Dean incorporates this into his Federal Civil Rights causes of action below.

846. Here Dean is not saying that law enforcement "cooked up its own evidence," but instead the False Accusers as deemed state actors did, and the Imm defendants paid for/financed it all.

847. Pursuant to Halsey, a court should not foreclose a Fourteenth Amendment stand-alone claim for fabrication of evidence even if a Fourth Amendment malicious prosecution claim fails (for example) because of the existence of probable cause even without the fabricated evidence. **The abuse of process alleged by the plaintiff in Jennings involved the use of the prosecution as leverage for an extortion scheme**. Jennings, 567 F.2d at 1220 ("**The goal of that conspiracy was extortion, to be accomplished by bringing a prosecution against him without probable cause and for an improper purpose**.")  see Jennings v. Shuman, 567 F.2d 1213 (3d Cir. 1977).

848. "If prosecution or process is initiated without probable cause and with a bad motive, malicious use of process lies. If prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law, malicious abuse of process lies." *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977).

849. Clearly the conspirators have agreed to commit unlawful acts and lawful acts by unlawful means by inflicting false claims of rape and mass murder against Dean and in turn destroying the Saga Enterprise by malicious use of process and malicious abuse of process.  Of course, this applies to the Imm defendants as well as a separate stand alone for the activities described in Act I.

850. The amount of Perjury and Subornation of Perjury is unquestioned and documented and proven for nearly a year now and that it has taken almost 4 years of my life to learn the legal system at a cursory level to defend myself as a Victim of Crime and Furtherance of Crime and fighting off the illegal advances of the Imm defendants separate schemes to defraud as described in Act I. Of course, all of this has also destroyed the Saga Enterprise and clearly affected interstate and foreign commerce.

851. The injury is clear – there can never be a Saga Enterprise again and there is no way to get back all of the momentum that it once had.  I, along with Mr. Klassen, have spent our days in forced labor dealing with the abuse of legal process so the Imm defendants along with the False Accusers could Extort, and attempt to send me away to prison for the rest of my natural life, and likely have me murdered while inside prison. It has been like "cramming for final exams" for nearly 4 years straight – all because of False accusers and their confederation with the Imm defendants, and their protecting their schemes and trying to profit from it.

852. Because I was primarily a resident of Nevada at the time in 2017 when all of this happened, Nevada laws apply and are part of the RICO scheme; I was also a resident of New York as I spend plenty of time in New York as well. NRS 199.120 – Nevada Perjury & Subornation of Perjury Laws. The statute states: A person, having taken a lawful oath or made affirmation in a judicial proceeding … who willfully makes an unqualified statement of that which the person does not know to be true … is guilty of perjury. The elements are: "(1) must specify the statements that the plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

853. Act II does this in detail proving the perjury and subornation of perjury as well as incorporating from Act I NRS 91.230, NRS 199.150, NRS 205.320, NRS 199.400, NRS 199.480, NRS 199.480(2), NRS 205.377, NRS 200.030, NRS 200.463, NRS 200.220, and NRS 199.210. Applying the element of each of these crimes to each and every situation below whenever Fraud, Perjury, and/or Subornation of Perjury and/or any other malfeasance is so stated. All of this discussion should also apply to Florida, New York and New Jersey State RICO law through out this complaint.

854. As before in Act I, in Act II many of the crimes will be defined and mixed in with the Evidence therein.  Act II will also end with the Civil Rights Violations under 18 USC § 1983 and 18 USC § 1985.

855. There is so much criminality by the False Accusers that there is no Litigation Privilege, and indeed the Noerr-Pennington Exception exists.

856. The Public is going to find out what has transpired and that I, Ryan Dean, am utterly innocent of what has been allowed to grumble on and on and on. The Evidence herein shows that what has transpired is serious Criminality and it has all been perpetrated against myself, Mr. Klassen, and our once emerging bright star hedge fund – the Saga Enterprise by False accusers in search of extortion takes and Imm defendants in search of revenge, retaliation, and attempted murder. All defendants are equally culpable.

857. There is virtually no area of False Accusers false filings and testimony that has not been perverted into extreme criminality.

858. In every instance of accusations of sexual assault, the possibility must be considered that it is a "false rape report." The harbinger of a "false rape report" is when the story does not add up against the Facts and Evidence as well as the notion that "false rape reports" usually have the most extreme and vile accusations associated

with them with no evidence.  In this case, False Accusers have contradicted themselves on numerous key points that show that without question there is a plentitude of base foundational Fraud, Perjury, and Subornation of Perjury.

859. What's more, in the case of False Accusers and Dean, False Accusers had months and months to plan the initial TRO and Police Report attack on Dean in 2017 and Dean had virtually no time to react to all of the allegations to deal with the New Jersey Prevention of Domestic Violence Act ("NJ PDVA").  False Accusers truly used the whole ordeal as a "sword" and not a "shield."  False Accusers were trying to shock the Court into the allegations while throwing away and/or fraudulently concealing evidence to numerous court(s) in order to deceive the Courts – in the past three years.

860. This is the same tactic that John Murray did with Imm defendants in Act III, when he signed an undertaking.

861. False Accuser Bissell and her 2017 attorneys in the NJ PDVA proceeding in front of Judge Callahan and Judge Murray as well as the initial TRO Judge Brindisi is riddled and rife with criminality and falsehoods.

862. An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. Neither *Reves* (SCOTUS case) nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that many False accusers have the "good fortune" to possess the title "attorney at law (or equivalent)" completely irrelevant to the analysis dictated by the Supreme Court [in *Reves*] about what constitutes RICO predicate activity.

863. It is a federal crime for two or more persons to agree or conspire to commit any Predicate Act against the Plaintiff(s) - or their business and property - even if they never actually achieve their objective. A conspiracy is a kind of criminal partnership. In order for the Jury to find defendants guilty of conspiracy to commit an offense(s) against the Plaintiffs, the Jury must find that the following four (4) elements: First, that two or more persons agreed to commit an offense(s) against Plaintiffs. Second, that the defendants were a party to or member of that agreement; Third, that defendants joined the agreement or conspiracy knowing of its objective(s) to commit an offense(s) against the Plaintiff, and intending to join together with at least one other alleged conspirator to achieve (that) (those) 3 objective(s);that is, that defendants  and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal(s) or objective(s), to commit an offense(s) against the Plaintiff(s); and Fourth, that at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

864. (1) defendant knowingly or willfully committed, or attempted or conspired to commit, robbery or extortion, and (2) the defendant's conduct affected interstate commerce. See United States v. Powell, 693 F.3d 398 (3d Cir. 2012). In United States v. Traitz, 871 F.2d 368, 380-81 (3d Cir. 1989), the trial court gave the following instruction: In order to meet its burden of proving that the defendants committed extortion under the Hobbs

Act, the Government must prove each of the following elements: First, that the defendants induced **or attempted to induce others to part with their property;** Second, that the defendants did so with the victims' consent, but that this consent was compelled by the wrongful use or threat of force, violence or fear; Third, that interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree; and Fourth, that the defendants acted knowingly and willfully.

865. All of these elements have been met because Plaintiff(s) have "consented" to attend court against False accusers in their extortion attempts. They claim litigation privilege, but SCOTUS says there is none when it is sham litigation as in the Noerr-Pennington doctrine. False accusers used the legal process to 'legally extort' et al as did Imm defendants.

866. In a terse opinion by then-Chief Justice Rehnquist, the Supreme Court unanimously concluded that a violation of RICO does not require a plaintiff to plead and prove that a defendant had "an economic purpose" in engaging in the predicate acts.

867. It will be shown in Act II, that after the False Police Report and TRO were filed by False Accuser Bissell that Dean 'voluntarily' gave up his right to appeal the decision to the Canadian Federal Court (he had 30 days to do so from August 2, 2017) and that is when this all become an Hobbs Act Extortion Violation for all of the elements already described herein. So, in short, Dean was bribed, extorted, and robbed on April 20, 2017 and then extorted again to give up his right to file a Canadian Judicial Review as well as not to report the matter to the authorities (Federal, State, Local police and USDC) thereby defendants being in violation of 18 USC § 1512 and 18 USC § 1513 (as defined in Act I and reincorporated here). Dean was too busy trying to fight the TRO/FRO proceedings and making sure that he was not incarcerated for the rest of his life in New Jersey State Prison.

> To prove extortion by wrongful use of force or fear, one must establish that extortionist induced someone to **part with** money, **property**, or **other valuable right by wrongful use or threat** of force or **fear**; extortionist acted with **intent** to **obtain** money or **property** that extortionist knew he or she was not entitled to receive; and **commerce from one state to another was or would have been affected in some way**. 18 U.S.C.A. § 1951.United States District Court, D. Hawai'i. June 7, 1994 855 F.Supp. 1156

868. Plaintiff(s) very valuable right to run a hedge fund was obtained and it did affect interstate and foreign commerce.

869. Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. *See* 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. *See* 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

870. In short, it was the express command of the Congress of the United States not to mess with or retaliated against witnesses and victims – which were both violated by defendants – as Plaintiff Dean had a "Parliament of Canada do-not-touch-Dean" letter in hand, and of course he was going to report these matters. It was all escalating – not deescalating at that time. A matter for a Jury to decide. This command even applies to a gaggle of reprobate lawless lawyers who twist and manipulate the law for extortion takes and fees. A matter the Jury will have no troubling getting their heads around – nobody likes lawyers and everybody hates corrupt lawyers that are caught like these criminals. These lawyers swore to seek Justice – not to pervert it and capitalize upon it.

871. There is no requirement that the defendants actions have the intended obstructive effect. *See, e.g.*, *United States v. Murray*, 751 F.2d 1528 (9th Cir.), *cert. denied*, 474 U.S. 979 (1985); *United States v. Wilson*, 796 F.2d 55 (4th Cir. 1986), *cert. denied*, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." *See* 18 U.S.C. § 1512(a).

872. Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." *United States v. DiSalvo*, 631 F.Supp. 1398 (E.D. Pa. 1986), *aff'd*, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. *United States v. Wilson*, 796 F.2d 55 (4th Cir. 1986), *cert. denied*, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); *United States v. Patton*, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); *United States v. Chandler*, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). *Cf. United States v. Risken*, 788 F.2d 1361 (8th Cir.), *cert. denied*, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

873. In the links above with the airline ticket for instance, it shows that the document was submitted into USDC NJ and the Imm defendants knew that Federal Court was already underway, that they were connected to it, and that they did retaliate against Dean in T-834-20 as well as suspending his immigration consulting license et al.

874. Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening, or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. *Wilson*, *supra*.  In this case the Imm defendants sending Plaintiff Dean, a short time after his unlawful removal the decision of the complaints committee to move all of the

discipline complaints forward when Ms. Gelbloom sent over the complaints was clear harassment. All of these are provided in the Wire/Mail Fraud attachment.

875. All of the above also applies to the False accusers as noted throughout this complaint.

876. When the False Accusers filed the TRO they had thought that Dean had destroyed his text messages with False Accuser Bissell – he did not. Bissell fabricated evidence and then stated that she had not kept it (see bloody towel below). All of False accusers stories in Aggregate are clear and convincing Evidence that it was all a violation of 18 USC § 1512(a)(b)(c)(d) and 18 § USC 1513(a)(b)(c)(d)(e)(f) all apply as will be shown throughout herein demonstrating that all elements as described in Act I have been amply met. 18 USC 1956(c)(7)(A) also applies though out herein on the same basis as above.

877. In truth a case can be made as well for 1512(a)(1) as an attempt to kill. False Accuser Bissell tried to have me tossed into prison for the rest of my natural life and without question I believe that they would have tried to have me murdered in prison and therefore I am somewhat in hiding now that these matters are dramatically escalating; alternatively, just by having me in the prison with real rapist and murders also would have resulted in my death as noted above. In any event, by trying to unjustly and knowingly send me to prison for the rest of my natural life in and of itself is a 'major step' towards committing the crime. **A word from SCOTUS** on with respect to the Imm defendants: Ford v. United States, 273 U,.S. 593, 623 (1927) ("**a man who outside of a country willfully puts in motion a force to take effect in it is answerable at the place where the evil is done**"). Subsection 1512(k) has no specific overt act element, and the courts have generally declined to imply one under such circumstances. Regardless of which section is invoked, conspirators are criminally liable as a general rule under the Pinkerton doctrine for any crime committed in the foreseeable furtherance of the conspiracy especially since Imm defendants are all culpable, with False Accusers of 18 U.S. Code § 373 - Solicitation to commit a crime of violence (a) and (c) where (c) is aimed specifically at the reprobate bureaucrats at IRCC (or higher) who think they have immunity – they do not.

**(a)** Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

**(c)** It is not a defense to a prosecution under this section that the person solicited could not be convicted of the crime because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution or is not subject to prosecution.

878. Solicitation to commit an offense under subsection 1512(a), or any other crime of violence, is prohibited in 18 U.S.C. 373. "To establish solicitation under §373, it must demonstrated that the defendant (1) had the intent for another to commit a crime of violence and (2) solicited, commanded, induced or otherwise endeavored to persuade such other person to commit the crime of violence under circumstances that strongly corroborate evidence of that intent."

879. A reminder to all defendants that Any RICO predicate offense is by virtue of that fact a specified unlawful activity, that is, a money laundering predicate offense. Money laundering is punishable by imprisonment for not more than 20 years, a fine ranging from $250,000 to $500,000 depending upon the nature of the offenses, and the confiscation of related property.

880. Chris Daw the board trial tried to induce violence after everyone was seated, and after Plaintiff Dean had travelled to Burlington, Ontario from the Philippines (in lieu of his niece's funeral) and Daw "asked" Dean if he needed more time because of the Funeral and to attend the funeral.  An argument broke out and Daw was trying to incite Dean to commit violence – Dean did not take the bait but that was the clear intention of the Imm defendants (as it was again with Watto and their payment of 20 or so security guards at the 2017 AGM, see video above).

881. This in turn also means that defendants are culpable of a pattern of this: 18 U.S. Code § 1959 - Violent crimes in aid of racketeering activity:

> (a)Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—

> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
> (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;
> (3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;
> (4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;
> (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both; and
> (6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine of [1] under this title, or both.

882. Here it is clear the Imm defendants (and all defendants) are all engaged in violations of 18 USC § 1962 and numerous predicate acts of Federal and State(s) racketeering. By defendants attempting the overt act of sending

me to prison for the rest of my natural life if would have likely ended in my murder.  I did not join the criminals while on the board and would not join a criminal gang inside of prison. That in turn would likely lead to my 'beat down' or death as a proximate cause of defendants arranging my incarceration. Money came over the border from Canada to the United States for all of this to happen, and that is a violation of 18 USC § 1956 – Laundering of monetary instruments as described in Act I and fully incorporated herein.  Likewise, what defendants did was also a violation of 18 USC § 1957 – Engaging in monetary transactions in property derived from specified unlawful activity.  Unlawful activity again in are the Predicate Act described already herein and below.

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

(b)

(1) Except as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both. If the offense involves a pre-retail medical product (as defined in section 670) the punishment for the offense shall be the same as the punishment for an offense under section 670 unless the punishment under this subsection is greater.

(2) The court may impose an alternate fine to that imposable under paragraph (1) of not more than twice the amount of the criminally derived property involved in the transaction.

(c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

(d)The circumstances referred to in subsection (a) are—

(1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or

(2) that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant is a United States person (as defined in section 3077 of this title, but excluding the class described in paragraph (2)(D) of such section).

(e) Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General.

(f)As used in this section—

(1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution;

(2) the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense; and

(3) the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

883. Here an obvious violation of this is that each and every year for four years Mr. Richard Dennis has received more than $10,000 USD for his part in all of these matters.  More egregiously, far more proceeds have been coming across the border from Canada into the United States to pay for the False Accuser Scheme.  Even if the Jury finds that somehow the Imm defendants and the False accusers are not connected, the fact that both groups of defendants are influencing negatively commerce interstate and on an international basis still are RICO violations.

884. The defendants have used corrupt persuasion at nearly every turn in their scheme to accomplish their ill deeds.  See United States v. LaShay, 417 F.3d 715, 718 (7th Cir. 2005)("corrupt persuasion occurs where a defendant tells a potential witness a false story as if the story were true, intending that the witness believe the story and testify to it")(very much like the offenses elsewhere in subsection 1512(b) of "knowingly ... engag[ing] in misconduct toward another person" with obstructive intent); United States v. Farrell, 126 F.3d 484, 488 (3d Cir. 1997)(emphasis in the original)("Thus, we are confident that both attempting to bribe someone to withhold information and attempting to persuade someone to provide false information to federal investigators constitute 'corrupt persuasion' under §1512(b)"). **United States v. Gotti,** 459 F.3d 296, 343 (2d Cir. 2006)("This Circuit has defined 'corrupt persuasion' as persuasion that is 'motivated by an improper purpose.' United States v. Thompson, 76 F.3d 442, 452 (2d Cir. 1996).  Without question there has been an "improper purpose" to all of defendants' activities.

885.  When False Accuser Bissell went to the Cedar Grove Police she falsely and corrupted persuaded them and in turn each successive Court she visited with her suborning of perjury defendants, at the behest of the Imm defendants. False accuser persuaded false accuser Bissell to also try to persuade the police and on down the line it goes. In doing so, it was a further violation of 18 USC § 1512 and 18 USC § 1513 because the use of the NJ PDVA as a sword was meant to stop the impending USDC prosecution of all of the 18 USC § 1962 et al issues.

886. The same is to be said for Mooney/Damitz/Igbokwe falsely persuading those that participated in the discipline complaints.

887. "[T]he 'corruptly persuades' element requires the government to prove a defendant's action was done voluntarily and intentionally to bring about false or misleading testimony or to prevent testimony with the hope or expectation of some benefit to the defendant or another person"); United States v. Hull, 456 F.3d 133, 142 (3d Cir. 2006)("[T]here was ample evidence from which the jury could conclude that Hull knowingly attempted to corruptly persuade Rusch, with the intent to change her testimony."

888. Unlike §1512(b)(2), §1512(B)(3) makes no mention of an official proceeding and does not require that a defendant's misleading conduct relate in any way either to an official proceeding or even to a particular ongoing investigation.... There is simply no reason to believe that the Supreme Court's holding in Arthur Andersen

requires that we graft onto §1512(b)(3) an official proceeding requirement based on statutory language in §1512(b)(2) that does not appear in §1512(b)(3). As we already noted in [United States v. Veal, 153 F.3d 1233 (11th Cir. 1998)], the federal nexus required under §1512(b)(2) is distinct from that required under §1512(b)(3). Unlike the stricter an official proceeding requirement that appears in §1512(b)(2), §1512(b)(3) requires only that a defendant intended to hinder, delay, or prevent communication to any law enforcement officer or judge of the United States.

889. In any event by virtue of Dean having his Parliamentary Privilege smashed and the ICCRC appeal result being a sham the next step was to go the Federal Court for a Judicial Review as well as USDC and law enforcement (Federal, State, and Local) to start all of these matters. If the federal judicial, administrative, or congressional proceedings are obstructed, prosecution may be had in the United States even if the destruction occurs overseas, the proceedings are yet pending, or the offender is unaware of their federal character.

890. In the case of Jeffrey Larry's letter, it was sent to me just a few days after the Essex County matter was removed to Federal Court and this was more harassment under 18 USC § 1512(d).  More about this later in Act III.

891. As these matters relate to the False Accusers and their co-conspirators, whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both. Although its "relation to or contemplation of" clause may admit to more than one construction, the section's elements might be displayed as follows: I. Whoever II. knowingly III. A. alters, B. destroys, C. mutilates, D. conceals, E. covers up, F. falsifies, or G. makes a false entry in IV. any A. record, B. document, or C. tangible item V. with the intent to A. impede, B. obstruct, or C. influence VI. A. the investigation 1. of any matter within the jurisdiction of any department or agency of the United States, or 2. of any case filed under title 11 (relating to bankruptcy), or B. the proper administration 1. of any matter within the jurisdiction of any department or agency of the United States, or 2. of any case filed under title 11 (relating to bankruptcy), or C. 1.a. in relation to or b. in contemplation of 2. any such a. matter or b. case shall be fined under this title, imprisoned not more than 20 years, or both.

892. Again, each of these elements will be presented herein. Here is the definition of 18 U.S. Code § 1513 - Retaliating against a witness, victim, or an informant

    **(a)**

        **(1)**Whoever kills or attempts to kill another person with intent to retaliate against any person for—

            **(A)** the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

**(B)** providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings, shall be punished as provided in paragraph (2).

**(2)** The punishment for an offense under this subsection is—

**(A)** in the case of a killing, the punishment provided in sections 1111 and 1112; and

**(B)** in the case of an attempt, imprisonment for not more than 30 years.

**(b)** Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

**(1)** the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

**(2)** any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

**(c)** If the retaliation occurred because of attendance at or testimony in a criminal case, the maximum term of imprisonment which may be imposed for the offense under this section shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

**(d)** There is extraterritorial Federal jurisdiction over an offense under this section.

**(e)** Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

**(f)** Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**(g)** A prosecution under this section may be brought in the district in which the official proceeding (whether pending, about to be instituted, or completed) was intended to be affected, or in which the conduct constituting the alleged offense occurred.

893. Dean was going to out all of the Imm defendants in a criminal case with the USDC and Federal, State, Local law enforcement – but was seriously sidetracked by the False accusers. The Evidence and the Transcripts show that there has been extensive planning and execution of Perjury and Subornation of Perjury and Fraud as the Foundational Crimes (these crimes referred to as the "Foundational Crimes.") In turn and because of these crimes, my life and the life of Mr. Kevin Klassen has been devastated by it as well as the Saga Enterprise is on life support.

894. 18 USC § 1510 (relating to obstruction of criminal investigations)

(a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined under this title, or imprisoned not more than five years, or both.

895. In this case the Imm defendants bribed the False accuser defendants and they accepted and that is the conspiratorial transaction binding all defendants together under Pinkerton Liability.

896. 18 U.S. Code § 1344 - Bank fraud. Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

897. The statutory language is modeled directly after the mail fraud statute. It proscribes the use of a scheme or artifice either to defraud a Federally chartered or insured financial institution or to obtain any of the monies, funds, credits, assets, securities, or other property owned by, or under the control of, such an institution. The statute is, in other words, essentially a catch-all for any activity that may defraud a federal bank – and it is quite far reaching in scope.

898.  First, not only are acts of bank fraud subject to prosecution but also the statute also covers any attempt to commit bank fraud. The "scheme or artifice" used to defraud a bank under the statute "includes any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived." The term "fraud" requires "a misrepresentation or concealment of material fact."

899. Here because the False sccusers falsely accused Dean of vile rape and constant murder threats, and then brought Mr. Klassen into their circus in 2019-2021, it ended in the Saga Enterprise having to send back money on hand in the accounts via US Banks.  In turn, it also meant that other investors had lost 100% of their money and they and their banks were defrauded.  It was also all based on the fact that the defendants tried to gain $870,000 and $180,000 of the Saga Enterprises' money by extortion. All defendants are equally culpable.

900. The mere act of knowingly attempting to obtain or obtaining money or property owned by or under the custody of a bank under false or fraudulent pretenses, representations, or promises is all that is needed to be proved for conviction under § 1344(2). Therefore, a person can be charged with bank fraud for fraudulently stealing funds from another person if the funds are under the custody of a bank.

901. All of that Fraud is herein and below.

902. It is of note that 18 USC $1344 is meant to supplement 18 US $ 2113 – Bank Robbery and incidental crimes. To wit:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

903. Defendants are culpable of this crime (despite it not being CIVIL RICO) it nevertheless present and accounted for.  Additionally,  the money that the Saga Enterprise had in its control went back to investors in Western Canada the same definition essentially apply under 18 USC § 1201. Fraud, or any scheme or attempt to defraud,

by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978)) is also highly relevant for the same reasons as already covered under 18 USC § 1344 and 18 USC § 2113.

904. Bank Fraud is a curious creation of the United States Congress as it seems to have some of the harshest penalties and that is in direct relation to the United States' Commerce Clause which is the most expansive Clause in the United States' Constitution and with the farthest reach – and it just so happens that these are the matters that defendants have violated the most.

905. In defendants trashing the Saga Enterprise they also opened themselves up to State Securities fraud and State RICO liability as well, that will be covered in another section. Although an LLC membership interest is not explicitly included in this definition of a security, courts routinely consider the possibility that LLC membership interests may be considered an "investment contract" or "stock".  See Robinson v Glynn, 349 F.3d 166, 173 (4th Circuit 2003); Great Lakes Chemical Corp. v Monsanto Co. 96 F. Supp 2d 276, 287 (D. Del 2000); Sync Labs LLC v Fusion Mfg, Civ. No 2:11-03671, 2014 WL 37124 at *4(D.N.J. Jan. 6 2014). In SEC v WJ Howey Co the Supreme Court determined that an investment instrument is an "investment contract," and therefore subject to securities laws, if it involves (1) "an investment of money," (2) "in a common enterprise," (3) with profits to come solely from the efforts of others."  328 US 293, 301 (1946).  (See Fagan et al v Fisher et al, USDC NJ , Civ Action No: 14-7013 (FLW)(TJB), 01/28/16.  What do y'all think? Is a hedge fund LLC a security or not? Plaintiff(s) contend that they are that there is state securities fraud for all defendants.

906. Defendants destroyed the Saga Enterprise with their schemes and interference with commerce – both domestically and internationally. There are Florida, New Jersey, New York and Nevada Security violations.

Under Nevada RICO here that law:

NRS  90.570   Offer, sale and purchase.   In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:
1.   Employ any device, scheme or artifice to defraud;
2.   Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or
3.   Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

907. Here the Nevada statutes includes, like the Federal wire, mail, and bank fraud statutes, "catch alls," in items (1)(2)(3).  Because these crimes were perpetrated in all of these state jurisdictions all can be tried and convicted concurrently.  The good news for defendants is that there is no Federal Securities RICO violations as Congress removed that more than 10 years ago from federal RICO – so y'all don't need to worry about that in this action. The action for Federal Securities fraud is permitted to be filed in a separate action and will come later and in a different circuit court.

908. Flowing from the Foundational Crimes of False accusers, there is also Criminal Coercion, Extortion, Commerce Clause, Hobbs Act Violations, CIVIL RICO Violations, and other crimes (these being referred to as the "Leveraged Crimes.")

909. There is so much of this Fraud, Misrepresentation, and Misconduct that it has been quite a task to unravel the spaghettification of what False Accusers schemed to create.

910. They lacked virtually any evidence and hoped that these fabricated stories themselves would be enough to shock the Courts into believing their ruse. Part of ruse is the Courts rely on Officers of the Court such as Dave Shivas, Robert Flanagan III, and Darren Barreiro to tell the truth and to speed up the judicial process – certainly not to willfully, knowingly, and maliciously deceive the court(s) – as has been the case here. All of these lawyers had a copy of the Police Report and they knew that they were suborning perjury – Shivas has even based some of his recent discovery questions off of said police report and the results of the Bissell private investigator. See below for Police Report.

911. And when these lawyers are saying that a man is a heinous rapist that man tends not to get any quarter nor mercy from the Court at the onset. In this case that man, Ryan Dean, or your writer, and he knows that he is utterly innocent, and has compiled all of the differing stories of Ms. Lisa 'False-Accuser-In-Chief-Associate' Bissell and her confederating lawyers herein. It is of note that the 2017 'lawyers' from GG do not want to have anything to do with the BS lawyers and it is easy to see why and now crystal clear the police report has – finally been obtained.

912. Although there is a reason that I "won" in Judge Murray's Court in 2017, Judge Murray did not have all of the Evidence that I have compiled since much of the base perjury has now been proven with the 2019-2021 false submissions by false accusers. It is literally their way of perverting their stories from court to court to court.

913. In 2017, I had at least two obvious disadvantages in the NJ PDVA hearing. First, I was not afforded the chance to know the main allegation and that was the supposed constant threats of "mass murder" that False Accuser Bissell claimed throughout the proceedings. The frequency of these supposed threats also increased in real time in front of Judge Murray until finally my lawyer cornered Bissell with Judge Murray looking on and Bissell claimed each and every time that she spoke on the phone to me in person and/or on the phone that I was 'very angry' all of the time and that I threatened to break into her home, 're-rape' her (like the last time), followed by grisly Mass Murder of her, her family, and her *children. All of this is captured in Court documents, the transcripts and the investigation (for now note because the 2017 Judge Murray family court these transcripts and related materials have to be released through a Judge or other legal process and that will likely happen sooner rather than later).*

914. Second, it is very difficult to prove that something that did not happen and in fact did not happen.

915. On March 18, 2021, I finally receive the police report from the Cedar Grove Police Department (see link) where Bissell herself said to the police (see link to Police Report below):

> "Mrs. Bissell said that they never spoke of that night again, but they did continue to communicate about business and even attend meetings together." (Police Report, pg 2, para 3).

> https://www.dropbox.com/s/ie72mg4k75fh54e/Police%20Report%2017-14564%20Bissell.pdf?dl=0

916. One would think that the constant nefarious threats of murder of ones' own *children* would be front and center in the Police Report and indeed it was absent in the TRO and the Amended TRO. Only did I learn that I was being accused of these things once I was in front of Judge Murray at the actual FRO hearing. By Bissell having said that we never "spoke" of the night again in the police report makes all of her subsequent testimony pure Perjury and what the lawyers did from GG and BS is also pure subornation of Perjury - and all defendants are culpable as principles and of conspiracy to commit Perjury and Subornation of Perjury.

917. This is merely one of the debunked Evil Tales that Bissell told and I have had to spend considerable time spaghettifying the Evil Confederacy of all defendants in this reprehensible scheme to keep control of the Immigration Enterprise under 18 USC § 1962.

918. In 2019/2020, I now have all of False Accuser various stories compiled and nearly every time I come back and read the documents again, I notice something new as in the Super Key revelations about the CBC Interview and in the section "BISSELL'S FALSE CLAIMS THAT SHE SAYS SHE WOULD "NO LONGER COMMUNICATE WITH DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION" AND SO ON AND SO FORTH ARE FALSE BECAUSE THE PHONE CALL NEVER TOOK PLACE" (see below) and the phone call that happened, and the other phone calls, according to False Accuser Bissell, that did not happen. Easy to prove with phone records.

919. The Court now has this Evidence available to it, and it will be shocked at what has transpired.

920. I am shocked to learn that people this Evil actually exist and live in our society. What this has become is a story about Bissell becoming a fatal attraction like character akin to Glenn Close. She did not want to be 'ignored." I can see how a Court would listen to the stories of False Accusers, and skip the facts, because of the limitations of judicial resources as well as the fact that an "Officer of the Court" was feeding them the false facts. But now I ask the Court(s) to delve into the Evidence that I have painstakingly compiled here and be astonished at what the False Accusers have schemed, involved, and deceived numerous Court(s) into being part of, in violation of the CNCA and 18 USC § 1962 and many RICO predicate acts.

921. Imm defendants have been paying for and furthering False Accuser Bissell's schemes and Florida lifestyle, and financing all of her lawyers to propagate these crimes onto me, and the various states and courts in the context of this Fraud. In the civil complaint 02/05/19, para 65: "This has injured Plaintiff's reputation and, along with her mental and emotional distress, has resulted in her inability to obtain employment since the termination of her non-competition agreement." The Saga Enterprise's legal bills, if they had a lawyer would be well over

$1,500,000 – and Bissell's legal bills must be at least ½ of that by Plaintiff(s)' estimation.  Here is said civil complaint and read it along side the Police Report and the fraud is utterly apparent and when the transcripts are added it is a totally inexplicable scheme to defraud.

https://www.dropbox.com/s/1xibo9h4qsdcrdf/False%20Accusers%20Filing%2002-05-19.pdf?dl=0

922. That being said: I believe that either way the States have a vested interest in knowing whether or not there is a heinous rapist on the loose or if indeed the defendants have brutally and falsely accused an innocent man, and in turn his business partner Mr. Klassen of false accusations and accomplishing the goal of destroying the Saga Enterprise that we worked so hard to build with Extortion Attempts, inside false legal proceedings, and many other troubling matters contained herein.

923. Here is Nevada's   Perjury/subornation of perjury NRS 199.120 statute that is also Nevada RICO and applies to all defendants. NRS 199.120 means that a perjury charge may be sustained "only where the false statement was made in a judicial or other setting where an oath or affirmation is legally required." Licata v. State, 99 Nev. 331, 333, 661 P.2d 1306, 1307 (1983). We therefore noted the statement must be made "under an oath required by law."

924. **A perjury conviction is proper only where "an oath is not only authorized or permitted but actually required by law — occasions of such solemnity and gravity that the law demands the administration of an oath as the price of legal recognition of the act." People v. Lillis, 158 N.Y.S.2d 191, 194 (1956).** Where the statement is accorded the same legal recognition whether it is affirmed or not, it is not required by law and will not serve as a basis for invoking the perjury statute. *Id.* at 195. *White v. State*, 102 Nev. 153, 157-58 (Nev. 1986).

925. **There is a price for lying in legal proceedings and the trade off is that the witness is to believed initially.** Woe unto those who have done what defendants have done.

926. The False Accusers have done their perjury In New Jersey and Florida, but Nevada applies because at the time I was a citizen of Nevada, and in turn the Model Penal codes says that Nevada also has jurisdiction as essentially it has an interest in protecting one of its own citizens, and because the RICO statue was also violated in Nevada as detailed herein. In this case it is also aggravated perjury and subornation of perjury and conspiracy to commit both by all defendants.

927. Mr. Craig Peretz, the Godfather of Ms. Bissell's children, the best friend of James Bissell, the COO of Sierra Global Capital Management and the representative of all of these Bissell matters with the Saga Enterprise up to around mid-July 2017,  was present at the Court house on August 17, 2017, in New Jersey, and Peretz had a duty to stop all of these matters under 18 U.S.C. § 4 and not encourage it all on. Misprison of a felong occurs when an individual is aware that another has committed a felony offense and both parties fail to notify the authorities of its occurrence and affirmatively takes steps to aid in its concealment.

928. As the United States Supreme Court has recognized, the crime originates from the English common law's recognition of one's "duty to raise the hue and cry and report felonies to the authorities," and has further described the offense as "the concealment of a felony which a man knows, but never assented to [become] either principal or accessory." Branzburg v. Hayes, 408 U.S. 665, 696 (1972). This also applies to Mr. James Bissell.  Misprison of a felony is not a RICO offense but it gives another jurisdictional hook into New York State and Florida where Mr. Peretz and Mr. Bissell live respectively; all defendants are also liable for conspiracy to commit a misprison of a felony.

> "it is important to note that separate transactions are not necessarily separate conspiracies, so long as the conspirators act in concert to further a common goal." Dixon, 901 F.3d 13, 30 (1st Cir. 2018) (quoting United States v Richardson, 532 F. 3d 1279, 1284 (11th Cir. 2008)

929. It also becomes aggravated misprison of a felony for not only all False Accusers – notably the lawyers at GG and BS – because they did have the police report and what Bissell reported and what they told Judge Murray were two entirely different matters.  All defendants are culpable of misprison of a felony and gives further jurisdictional hooks to all defendants.

> "And when it comes to evaluating whether a single conspiracy existed (as opposed to two), we are clear to 'consider the totality of the circumstances, paying particular heed to factors such as (1) the existence of a common goal, (2) evidence of interdependence among the participants, and (3) the degree to which their roles overlap.

930. Part of the scheme was that False Accuser Bissell was running around with Mr. Peretz' resume and trying to promote herself with it.  It never made sense to me at first but now it does because it seems that there is a pattern to all of this, and the False Accuser Association-In-Fact have extorted or committed other crimes against people using this kind of ruse as discovery will show. All of this is a further aggravated violation of 18 USC § 875 as provided for in Act I and all elements are accounted for.  Mr. Peretz, Mr. Bissell and Ms. Bissell all making phone calls back and forth about all of this as early as June 2017 qualifies as well as False Accusers scheming with the Imm defendants.

**NEW JERSEY RICO**

931. Under New Jersey RICO, 2C:41-1. For purposes of this section and N.J.S.2C:41-2 through N.J.S.2C:41-6 there is (h)extortion, (n)theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes, (o)forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes, (p)fraud in the offering, sale or purchase of securities, (z)violation of section 1 of P.L.2005, c.77 (C.2C:13-8), human trafficking, (aa) violation of N.J.S.2C:12-1 requiring purposeful or knowing conduct, (2)any conduct defined as "racketeering activity" under Title 18, U.S.C.s.1961(1)(A), (B) and (D).

932. *A* "Pattern of racketeering activity" in NJ requires:

(1)Engaging in at least two incidents of racketeering conduct one of which shall have occurred after the effective date of this act and the last of which shall have occurred within 10 years (excluding any period of imprisonment) after a prior incident of racketeering activity; and

(2)A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

h."Trade or commerce" shall include all economic activity involving or relating to any commodity or service.

933. N.J.S.A. 2C:5-2 describes a conspiracy as follows and this definition applies to all the New Jersey Predicate Acts below:

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

There are four things that must be shown in order for a person to be charged with Criminal Conspiracy.

The first is that prosecutors must clearly prove what crime was being commissioned—e  e.g. Extortion, Murder, or Fraud.

The second is that there must be evidence of an agreement between the accused and one or more individuals.

The third is that the agreement must have involved one or more of the individuals committing or aiding in committing the crime.

The fourth is that there must be an "overt act" committed by one or more members toward the commission of the crime. This act could be attempting to have me locked up into New State Prison for the rest of my life and left to fend for myself against violent gang members, for instance.

934. Attempted murder – a NJ RICO predicate offense requires: The defendants intended and/or conspired to kill and the defendants **must have taken a substantial step toward the full commission of the crime**, the victim must not have died. A "substantial step" requires more than mere planning or arranging for a murder. **Rather, the accused must have taken some sort of direct action to put the plan into motion**. This means that – absent some outside factor or distraction – **the murder would have likely taken place as planned**. Without question that substantial step was to get me locked up into NJ State Prison for the rest of my life where I would have been at their mercy and/or met some "unfortunate accident," if not but for the proximate causation of what was intended.

"As he colorfully put it, the agreement to murder a man fifty miles away would suffice for conspiracy because "it does not matter how remote the act may be from accomplishing the purpose," but attempt liability could not so exist." Hyde v United States, 225 U.S. 347, 387-88 (1912)

935. On the police report, False Accusers arranged for the charge of NJSA 2C:14-2b, which is a level one indictable offense in New Jersey. It is about as high of a crime as a person can be charged without a lick of evidence and on the say so of the False Accusers.

"Conspiracy is a completed crime upon agreement or, when statutorily required, upon agreement and the commission of an overt act. Conviction does not require commission of the crime that is the object of the conspiracy….the crime of conspiracy is the agreement itself." United States v Jimenez Recio, 537 US 270, 274 (2003), United States v Dekalaita, 875 F. 3d 855, 859 (7th Cir. 2018)

936. NJSA 2C:15-1. Robbery defined – a NJ predicate offense. A person is guilty of robbery if, in the course of committing a theft, he:

> (1) Inflicts bodily injury or uses force upon another; or
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

937. On the other hand, conspirators may be prosecuted for conspiracy, for any completed offense which is the object of the conspiracy (Callahan v United States, 364 U.S. 587, 594-94 (1961).

938. Here this applies to the Imm defendants' appeal decision with respect to Dean's ICCRC board removal on August 2, 2017 for all defendants because it was so close to the False Accusers rape report of August 9, 2017, committing numerous NJ RICO and Federal RICO statute violations in combining the predicate acts using the resources and facilities of the Enterprises. There are numerous predicate acts that elevate all of this into first or second degree offenses in New Jersey for all defendants and conspiracy to commit NJSA 2C:15-1.

"A defendant may be charged, prosecuted, and sentenced for both conspiracy and the underlying substantive offense" United States v Wolff, 796 F. ed 972, 975 (8th Cir. 2015)

939. For instance, what False Accuses did in New Jersey also qualifies as extortion. To wit: This "exposing the "secret" of the Bissell/Dean affair - was before any legal proceeding in July 15, 2017 (or June 2017 according to Bissell) - and also meeting the definition of "Criminal Coercion, Elements 2 and 7 (and Extortion by Theft, Elements ('c' and 'g') by exposing the affair to Mr. Bissell as well as Mr. Peretz and sabotaging the relationship with Saga. The False Accusers' Evil was all just getting going into motion in June or July 2017. These are yet additional ways that it shows the Imm defendants operate the same way as the False Accusers.

**Criminal Coercion\* as defined by NJSA 2C:13-5 for elements 2 and 7 are:**
> 3.Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute.
> 7. Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or **personal relationships**.

940. **Theft by Extortion as defined by NJSA 2C:20-5 (a NJ Predicate offense) is for elements 'c' and 'g' are:** A person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion. A person extorts if he purposely threatens to:

> c. Expose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;

> g. Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.

941. Once the (False) Rape was reported to Mr. Bissell on August 1, 2017 (or July 30, 2017 as Bissell changes her story on the Police Report) as well as Mr. Peretz – he is a family member – and "god father" to the Bissell children, it became aggravated Criminal Coercion and aggravated Theft by Extortion by adding these elements respectively and crossed NJ/NY state lines:

> **Aggravated Criminal Coercion as of August 1, 2017:**
> -*Inflict bodily injury on anyone or commit any other offense*
> -Accuse anyone of an offense
> -Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute
> -Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or **personal relationships**.

> **Aggravated Theft by Extortion as of August 1, 2017:**

> > -Inflict bodily injury on or physically confine or restrain anyone or commit any other criminal offense;
> > -Accuse anyone of an offense or cause charges of an offense to be instituted against any person;
> > -Expose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;
> > -Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.

> > Note: that on the Police report, Bissell changed her story once again and said that she told Mr. Bissell about the affair in June 2017 where False Accuser Bissell "confessed she had an affair" (Police Report, pg3, para 1).

942.    It is not just threats that define Criminal Coercion and Extortion – it is also ACTIONS: Everything to date have sprung forth from these criminal coercion and extortive actions of False Accusers as of Mid July 2017 and August 1, 2017 – and this was clearly done outside of any litigation and therefore there is no litigation (again the recently acquired police report said both of these were sooner – Mid June 2017 and July 30, 2017 respectively (Police Report, pg 3, para 1)).  When False Accuser went to police and filed the TRO that did not enjoy litigation

privilege either and in fact, obviously, it was a Furtherance of crime from that day until the NJ Judiciary decides to put an end to it once and for all.

943. The case law as commanded by the Supreme Court of New Jersey – which is part of the Third Circuit - also says that an attorney(s) that confederate with their client will get "no help from the law."

> In re Selser: The privilege protecting communications between attorney and client takes flight if the relation is abused, and a client who consults **an attorney for advice that will serve him in the commission of a fraud will have no help from the law, but must let the truth be told.** The loss of attorney – client privilege which occurs when client consults attorney for advice that will serve him in commission of a fraud does not depend upon the showing of a conspiracy or proof that client and attorney are involved in equal guilt, but the attorney may be innocent and guilty client must nevertheless let the truth come out. The final determination of the existence of the attorney-client privilege rests with the court, and if court determines that the privilege does not exist, the attorney must testify as to the matters contained in the communication. Supreme Court of New Jersey. May 17, 1954 15 N.J. 393 105 A.2d 395

944. All attorneys were acting for Richard Dennis in New York and arguably for Dean as well.  All attorneys' work product and notes and emails do not enjoy any privilege and the crime fraud exception applies.

945. Remember, that because Extortion is mentioned in 18 USC 1961(A) it can switched out for state extortion on and this count all defendants are culpable of extortion and conspiracy to commit extortion in the State of New Jersey as well as Hobbs Act violations so both are on the menu of RICO offenses. Criminal Coercion also provides the element for Hobbs Act Extortion – which is basically Federally enhanced extortion when it is done to mess up interstate and international commerce – will clearly has happened here by the destruction of the Saga Enterprise and my property and business.

> And for any foreseeable offense committed in furtherance of the conspiracy. Pinkerton v United States, 328 U.S 640, 646-47 (1946)

946. With respect to criminal coercion the NJ Court had this to say: "This new amendment is particularly relevant in the present case, in that its language arguably provides one with legal protection from unwarranted economic abuse from a **defendant who either interferes with a victim's employment or otherwise threatens to do so.**"

> C.G. v E.G. 2016 WL 3921510(N.J. Super. Ch)(Trial Order) Superior Court of New Jersey, Chancery Division. Family Part, pg 4, para 1

947. In the context of domestic violence, an ex-partner's acts of obstructing, interfering with, or threatening to endanger one's job and **economic stability** can be as fear - inducing to a victim as physical abuse. In fact, there are arguably few threats **more potentially harassing and coercive** than threatening one's livelihood and employment.... **For people simply trying to make a living and pay their bills employment stability and security is an extremely important issue.  Hence any potential damage to such stability through an estranged, vindictive, or controlling ex-partner's wrongful and purposeful actions may logically hurt a victim, and**

naturally cause significant anxiety and distress, and constitute economic abuse." C.G. v E.G. 2016 WL 3921510

(NJ . Super. Ch)(Trial Order) Superior Court of New Jersey, Chancery Division. Family Part

948. **All defendants are culpable off theft by extortion and conspiracy to commit theft by extortion.**

"Conspiracy and attempt are both inchoate offenses, unfinished crimes in a sense. They are forms of introductory misconduct that the law condemns lest they result in some completed form of misconduct." United States v Rehak, 589 F. 3d 965, 971 (8th Cir. 2009); United States v Iribe, 564 F. 3d 1155, 1160 (9th Cir. 2009).

949. **Embedded into the NJSA 2C:13-8 Human trafficking – a NJ RICO Predicate offense – is criminal coercion along with abuse of legal process and by what the False accusers and Imm defendants have done ticks off all of the bolded elements below amply.**

1.Human trafficking. a. A person commits the crime of human trafficking if he:

(1)knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another, to engage in sexual activity as defined in paragraph (2) of subsection a. of N.J.S.2C:34-1 **or to provide labor or services:**

(a) by causing or threatening to cause serious bodily harm or physical restraint against the person or any other person;
(b) by means of any scheme, plan, or pattern intended to cause the person to believe that the person or any other person would suffer serious bodily harm or physical restraint;
(c)by committing a violation of N.J.S.2C:13-5 against the person;

**2C:13-5. Criminal coercion**
**a. Offense defined. A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct, he threatens to:**

(1) Inflict bodily injury on anyone or **commit any other offense;**
**(2) Accuse anyone of an offense;**
**(3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;**
**(4) Take or withhold action as an official, or cause an official to take or withhold action;**
(5) Bring about or continue a strike, boycott or other collective action, except that such a threat shall not be deemed coercive when the restriction compelled is demanded in the course of negotiation for the benefit of the group in whose interest the actor acts;
**(6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or**
**(7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.**
**(e)by means of the abuse or threatened abuse of the law or legal process;**

**(f)by means of fraud, deceit, or misrepresentation against the person; or**

**(2)receives anything of value from participation as an organizer, supervisor, financier or manager in a scheme or course of conduct which violates paragraph (1) of this subsection; or**

**b. An offense under this section constitutes a crime of the first degree.**

d. Notwithstanding the provisions of N.J.S.2C:43-6, the term of imprisonment imposed for a crime of the first degree under paragraph (2) or (3) of subsection a. of this section shall be either a term of 20 years during which the actor shall not be eligible for parole, or a specific term between 20 years and life imprisonment, of which the actor shall serve 20 years before being eligible for parole. Notwithstanding the provisions of N.J.S.2C:43-3, the sentence for a conviction for a crime of the first degree under this section shall include a fine in an amount of not less than $25,000, which shall be collected as provided for the collection of fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4) and forwarded to the Department of the Treasury to be deposited in the "Human Trafficking Survivor's Assistance Fund" established by section 2 of P.L.2013, c.51 (C.52:17B-238).

e. In addition to any other disposition authorized by law, any person who violates the provisions of this section shall be ordered to **make restitution to any victim. The court shall award to the victim restitution which is the greater of:**

**(1)the gross income or value to the defendant of the victim's labor or services; or**

950. *Plaintiff(s) believe that the proper restitution is the equivalent of the mid-point of any legal bill that has been presented and multiply the number of hours that Plantiff(s) have had to dedicate to fight off the various schemes to defraud.*

951. ***Here is the definition of*** Extortion at common law and is described in two ways and should be used to incorporate the definition for extortion in all State RICO extortion matters herein:

"Blackstone defined extortion as "an abuse of public justice, which consists of any officer's unlawfully taking, by color of office, from any man, any money or thing of value which is not due to him, or more than is due, before it is due." Blackstone Commentaries 141 (Lewis ed 1902).

"Wharton defined it similarly: Extortion, in its general sense, signifies any oppression by color of right, but technically it may be defined to be the taking of money by an officer, by reason of his office, either where none is due, or where none is yet due." (Wharton Criminal Law § 1904 (12th Edition, 1932)

"Black mail" was the term used at common law to indicate the obtaining of money by private persons through threats, force, or coercion."

"At common law a public official who under color of office obtained property of another not due to the office or the official was guilty of extortion. In many States, however, the crime of extortion has been statutorily expanded to include acts by private individuals under which property is obtained by means of force, fear or threats." 393 US 286 (1969), Extortion "Under Color of Official Right": Federal Prosecution of Official Corruption under Hobbs Act, pg 518

Today, the term "loss" as it relates to the first segment of the definition of extortion includes an intangible loss of the opportunity to undertake a new business deal (See: United States v Sopher, 362 F. 2d 523 (7ᵗʰ Cir)).

952. **Without question there is abuse of process going on in these matters as illuminated in all three Acts herein (Act I, Act II, and Act III).  Act I is all of the discipline complaints, the board trial, and the appeal process meant to not have me file an appeal in either Federal Court of Canada or the US for the Judicial Review and to report 18 USC § 1962 et al. In Act II, it is all of the chaos and destruction involving the False Accusers' aggravating filing of false cases, and in Act III the Imm defendants literally took the proverbial bait and went over the top in filing legal process in Canada (thinking Dean would not notice the absolute parallels with the False Accusers) but reaching into the US to do so for Dean literally taking a job and waiting to see what happens next, posting his name on Linkedin, and nothing more.**

953. **The means and tactics that happened within Act I and Act II shows that these two corrupt Associations-In-Fact are using the same tactics and methods to falsely accuse and that is a matter for the Jury to decide. All defendants are culpable of NJSA 2C:13-8 Human trafficking and NJSA 2C:13-5. Criminal coercion as well as conspiracy to commit NJSA 2C:13-8 Human trafficking and NJSA 2C:13-5.**

"The factors relevant to determining whether there was a single conspiracy rather than multiple conspiracies include 'whether the participants shared a common goal, were dependent upon one another, and were involved together in carrying out at least some parts of the plan."  Belanger, 890 F.3d at 30 (quoting United States v Fenton, 367 F. 3d 14, 19 (1ˢᵗ Cir. 2004)); United States v Sanders, 778 F.3d 1042, 1047 (DC Cir. 2015) quoting United States v. Lopesierra-Gutierrez, 708 F. 3d 193, 2017 (D.C. Cir 2013)

954. As the Jury starts to get familiar with the criminal reprobates over at BS, they will see that via Dave Shivas – a New Jersey attorney with a law license, for now, has made all defendants culpable of New Jersey Statutes – Title 2C The New Jersey Code of Criminal Justice – 2C:21-10 Commercial bribery (NJ RICO Predicate Offense) as well as culpable conspiratorially. Shivas (and his law partners) have operated their "law firm" as a criminal enterprise for RICO purposes for quite some time. According to this statute, a person commits a crime if s/he solicits, accepts or agrees to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which s/he is subject as:

-An agent, partner or employee of another;
-A trustee, guardian, or other fiduciary;
-A lawyer, physician, accountant, appraiser, or other professional adviser or informant;
-An officer, director, manager or other participant in the direction of the affairs of an incorporated or unincorporated association;
-A labor official, including any duly appointed representative of a labor organization or any duly appointed trustee or representative of an employee welfare trust fund; or
-An arbitrator or other purportedly disinterested adjudicator or referee.

955. *Forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes 2C:41-1 also fall under the NJ RICO Predicate Acts scheme that includes the following: N.J. Stat. § 2C:21-3, N.J.*

Stat. § 2C:21-4, N.J. Stat. § 2C:21-7, N.J. Stat. § 2C:21-9, N.J. Stat. § 2C:21-16 & N.J. Stat. § 2C:21-27. All defendants are capable of these crimes as well as conspirators.

i. N.J. Stat. § 2C:21-3- Frauds relating to public records and recordable instruments b. Offering a false instrument for filing. A person is guilty of a disorderly persons offense when, knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant. Here the False Accusers have made numerous public filings that are utterly false and the evidence is below.

ii. N.J. Stat. § 2C:21-4 Falsifying or tampering with records a. Except as provided in subsection b. of this section, a person commits a crime of the fourth degree if he falsifies, destroys, removes, conceals any writing or record, or utters any writing or record knowing that it contains a false statement or information, with purpose to deceive or injure anyone or to conceal any wrongdoing. False Accuser have knowingly made false public statements on the record.

iii. **N.J. Stat. § 2C:21-7. Deceptive business practices** A person commits an offense if in the course of business he: i. Makes a false or misleading written statement for the purpose of promoting the sale of securities, or omits information required by law to be disclosed in written documents relating to securities. False Accusers by making the false public statements made the market in the Saga Enterprise near zero and in turn made the entire hedge fund 'toxic.' It certainly qualifies as a 'toxic' sale.

iv. Section 2C:21-9 - Misconduct by corporate official A person is guilty of a crime when: c. He purposely or knowingly uses, controls or operates a corporation for the furtherance or promotion of any criminal object. If the benefit derived from a violation of this section is $75,000.00, or more, the offender is guilty of a crime of the second degree. If the benefit derived exceeds $1,000.00, but is less than $75,000.00, the offender is guilty of a crime of the third degree. If the benefit derived is $1,000.00, or less, the offender is guilty of a crime of the fourth degree. This statute mirrors the NJ RICO statute where it forbids operating a Enterprise with criminal intent.  Here Shivas, Bell, Laskiewicz, Kindon, and Ward have operated BS like a Mob-shop. Section 2C:21-27 - Degrees of offense; penalties; nonmerger a. The offense defined in subsections a. b. and c. of section 3 of P.L. 1994, c.121 (C. 2C:21-25 ) constitutes a crime of the first degree if the amount involved is $500,000.00 or more. False Accusers tried to extort $875,000 and this is a level 1 indictable offense.

202

v.   N.J. Stat. § 2C:21-16 - Securing execution of documents by deception. A person commits a crime of the fourth degree if by deception as to the contents of the instrument, he causes or induces another to execute any instrument affecting, purporting to affect, or likely to affect the pecuniary interest of any person. Shivas, Bell, Laskiewicz, Kingdon, and Ward have operated BS like a Mob-shop.

956. To Review, under the N.J. STAT. ANN. 2C:41-4(C) ("state RICO statute"). The state RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." N.J. STAT. ANN. 2C:41-2(c). Under N.J. STAT. ANN. § 2C:41-4(c), "[a]ny person damaged in his business or property by reason of a violation of N.J. STAT. ANN. § 2C:41-2 may sue" the violating party.

957. The Immigration Enterprise's common purpose is to be the Canadian Federal Immigration Regulator of Canadian Immigration Consultants.  The False Accuser Enterprise's common purpose is to trap mainly men and/or companies with schemes to extort and commit other predicate acts abusing the legal system and profiting off of it and the abuse of the legal system. Plaintiff are not the only ones that the False Accusers have schemed or attempted to scheme before.

958. Without question there is a pattern of racketeering activity just by the sheer number of counts of predicate RICO acts that are all interrelated as well as all of this has been ongoing since at least 2016 and will continue well into the future. All defendants are the proximate and direct cause of all of the injuries sustained by Plaintiff(s), and their business and property the Saga Enterprise. **These predicate acts – whether they be State or Federal have the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."** N.J. STAT. ANN. § 2C:41-1(d). Each of these offenses occurred after the effective date of the statute, within ten years of one another, and constitutes a predicate act of racketeering, as that term is defined in the state RICO statute. See N.J. STAT. ANN. § 2C:41-1 (indicating that "[r]acketeering activity" includes attempted murder, extortion, robbery, and numerous other offense as listed above.

959. New Jersey's RICO statute does not require that continuity be alleged, or even established (See Maxim Sewerage Corp. v. Monmouth Ridings, 640 A.2d 1216, 1222-1223 (N.J.Super.Ct. Law Div. 1993) ("New Jersey's statute does not require a showing of continuity . . . Federal RICO, however, is more restrictive"); State v. Ball, 632 A.2d 1222, 1259 (N.J.Super.Ct. App. Div. 1993) ("**since the New Jersey statute explicitly requires only a showing of relatedness among predicate acts**, there is no reason why the additional element of continuity, which is associated with Federal RICO, should be grafted onto New Jersey's statutory definition").   Nevertheless, continuity is alleged for Federal and other state RICO purposes.

960. Clearly, there has been a showing of the predicate acts of all accusers are related.

961. To the extent Plaintiffs' state RICO action is predicated on fraudulent practices and wire fraud, it must be pled with specificity, pursuant to FED. R. CIV. P. 9(b). See Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004); FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"), and that is so done with the link below showing all of the wire fraud and will be updated for the CIVIL RICO case information statement. "Plaintiffs may satisfy this requirement by pleading the `date, place or time' of the fraud, or through `alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id. at 224 (citing Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 675 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989); Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999)).

https://www.dropbox.com/scl/fi/8rrczfytbim6aub41umzn/Final-Wire-Fraud-04-19-21.xlsx?dl=0&rlkey=xf7aynqpakredjl3w49woduqd

962. Plaintiffs' state RICO claim alleges that "Defendants' conduct in the affairs of the enterprise(s) as that constitutes fraudulent practices thereby falling within the definition of racketeering set forth in N.J.S.A. 2C:41-1(a)(1)(o)." This statement is the only specific allegation going to the nature of the predicate act of "fraudulent practices." Plaintiffs have standing in this matter in Civil and State RICO claims because Plaintiff(s) have sustained a "real injury" when they lost the valuable chance to acquire hedge fund business via the Saga Enterprise. The Saga Enterprise was tracking on an unleveraged return of 25% (even after the first false accuser Bissell attack) and that is worth billions of dollars.

963. Plaintiff(s) and the Saga Enterprise have the tangible and intangible legal right to be a director and/or a hedge fund manager without interference and all of that has been taken away and converted for use by defendants for their own unlawful ends (See Mendoza v. Zirkle Fruit Co 301 F.3d 1163 (9th Cir. 2002) to protect their respective enterprise(s) for extortion profit and/or to keep power and hold onto the enterprise(s) as the case may be. The False Accusers have come into this matter with unclean hands and their ill works cannot go with impunity with their affirmative misconduct and active misrepresentation.

964. False Accusers used the term "Bully and Intimidate," just like Imm defendants against me and this was because I was calling Imm defendants and False Accusers alike on their painfully evident criminality. How it is that False Accusers adopted the term "Bully and Intimidate," is it because the two Associations-In-Fact were in contact with one another? These are same methods and tactics and it is not a "coincidence."

965. However, the False Accusers knew about Imm defendants and Vice-Versa and Imm defendants did not want to talk about False Accusers at all, despite doing a 'deep background dive on Dean,' and that is in Act III.  False

Accusers only tangentially want to talk about the Imm defendants because it is without question that False Accuser Bissell helped me with the CBC interview in late April 2017 and it is on the text messages as well as the fact that False Accuser Bissell admitted to Judge Murray that she helped me with the CBC interview.

966. For comparative purposes, in the RICO case of *Hunt v. Weatherbee* 626 F. Supp. 1097 (D. Mass. 1986) there were two specific incidents in *Hunt*—the alleged coercions regarding the dropping of criminal charges and the purchase of raffle tickets—formed the core of the allegations in the complaint against the union, certain of its officials, and the construction company. *Hunt* is significant because the essential factual allegations obviously related far more substantially to sex discrimination claims under the federal civil rights law than to civil RICO claims; stated differently, the *Hunt* claims were not the allegations normally associated with racketeering activity, even as that term has come to be more expansively used in recent years. But the case nevertheless went forward on two relatively insignificant grounds in comparison to the utter destruction that Plaintiff(s) and the Saga Enterprise have suffered as described herein. Plaintiff(s) believe – that even though they are men (save Ms. Salloum joining the complaint) that they have numerous and far more troubling grounds for these RICO matters to stick on defendants.

967. In this instant case, it involves false rape and mass murder allegations and of course there are hundreds of predicate acts. The point being that yes every woman should be believed when she says awful sexual related things happen to her but when it is found out that she is flat out lying – as in this case – the Court ought to show no quarter nor mercy against her, and those that conspired with her for extortion takes and the other evil perpetrated.

968. Likewise, lawyers are also not immune from RICO as in the case of *Handeem v. Lemaire* 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) so says SCOTUS where the lawyers in that case knowingly tried to abuse the legal system and skirt the law – just the same with the gaggle of American and Canadian 'lawyers' who are involved in these matters herein.

969. The word "reprehensibility" has particular resonance in RICO litigation, because RICO is, at its core, a criminal statute. In conducting the reprehensibility analysis, the Supreme Court has identified several factors: Did the conduct (1) cause physical harm, (2) demonstrate an indifference to, or reckless disregard of, the health or safety of others, (3) involve repeated actions, and (4) result from intentional malice, trickery, or deceit?

970. Clearly there has been physical harm to my health (and Ms. Nancy Salloum's health too (See Act III)) and there was clearly an indifference to the health and safety of others (Saga Enterprise) and what if False Accusers had sent a 'hit man' to murder me inside or outside prison because I was worried about that happening when I was served the TRO in August 2017 – would they have also killed an innocent by standard or child?  Note: Even prisoners can be "innocent bystanders" if there is violence in prison and a prison get killed as bystander, for instance.

971. Perhaps the Cedar Grove police would have really beat the hell out of me (they did not) as they were gathering about when I first met them, and it could have turned out differently. Maybe I could have a "George Floyd knee to the neck" – but that did not happen, but it could have as that is what Bissell wanted to do with the shock of what she falsely reported.   One need only turn on the TV and see there is plenty of evidence of police brutality. Perhaps Mr. Klassen and/or his family was next if parts of the initial plan was to incarcerate me. Any number of circumstances involving injury could have transpired from these matters. These matters are all repeating and aggravated and done with intentional malice, trickery, and most of all – deceit. Who is to say that defendants will not arrange to have me "wiped out" in the future?

972. At any rate, the Imm defendants have tried to exact extra judicial justice on me by reaching into the United States and confederating with the False Accusers.  It is such an easy thing to do because in this day and age where every woman is to believed, and if you do not believe her then you are automatically deemed guilty of "misogyny," for instance. Again, Plaintiff(s) state that every woman should initially be believed and alternatively and equivalently state that the story must be checked out and followed up on.

973. Moreover, the Imm defendants were counting on the fact that I would not sue them in the United States and bring to light what they have done for the reasons that the mere mention of "sexual assault" is taboo, and this alone would deter me.  And that is precisely why the injuries are so egregious and carry off well into the future and until my natural death (and maybe well after that in any Wikipedia posting, for instance).  It is now part of my history and the defendants are the ones that directly and proximately caused it all.

974. Everybody knows that even sexual harassment charges much less anal rape and threats of constant mass murder accusations (involving *children*) are utterly devastating to a man.  It is a new unchecked racket in our society that those try to hide behind with "litigation privilege.'

975. Now, inexplicably, False accusers have managed to position themselves behind an entire army of corrupt lawyers. How is that for a Spin Doctor – a matter for a Jury to decide? Note: I had absolute Parliamentarian Privilege first (read: aggravated violations of 18 USC § 1512 and 18 USC § 1513) and that in and of itself overrides any notion of "litigation privilege," as does the Supremacy Clause, and of course the Noerr-Pennington Doctrine Exception – which exists in this instant case.

976. More astounding is that False accusers and Imm defendants have also managed to arrange for the very same Police, Police department and Municipality that they used for their scheme to defraud to be a defendant(s) along with the False accusers.

977. **I recognize that all defendants will have to coordinate with the police department the truth regarding their perjury/false swearing to this very same police department – an uncomfortable proposition for all defendants indeed. The Cedar Grove defendants are not RICO defendants at this time, and were likely simply doing their jobs, and had a misplaced municipal policy not to release evidence.  That being said, the Cedar Grove**

**defendants are nevertheless entitled to all discussions and documents regarding the Imm defendants and the False accuser defendants' defenses and all discussions about all RICO et al matters herein for the reason that the Cedar Grove defendants may at some point in the future become RICO defendants, if discovery proves that is warranted. Until then the Police should be given the Truth, the Whole Truth, and Nothing But the Truth.**

978. Those that have grievously abused the legal process on an aggravated basis – and willfully, wantonly, and deliberately lied to the police - such as these Imm defendants and False accuser defendants did are apt to find themselves in a very *uncomfortable* and *unpredictable* 'twilight zone' reality that they wish was fiction – but is not.

979. Every single text message that False Accusers sent me was wire fraud from the moment that False accusers targeted me back in October 2016 and then was banting about with Mr. Peretz' resume. This in turn makes it wire fraud on all False Accusers and all defendants as well as conspiracy to commit wire fraud. The text messages are and in of themselves showing when they were sent, what the message was about, the general context, and who sent it. The text messages lulled me into a sense of safety and in my wildest dreams I did not ever think that I would be falsely accused of rape and threats of committing mass murder et al. There are hundreds of these texts. Once it is proven that what False Accusers have done to me it will be clear that all of the texts are wire fraud – a matter for the Jury to decide.

980. In turn, each and every mailing caused by False Accusers are mail fraud, and these have already been documented in 2:19 and 2:20 and are incorporated herein and it was all part of the defendants' scheme and conspiracy to scheme to defraud me from being a hedge fund manager and to destroy the Saga Enterprise.

981. The False Accuser went to great lengths to conceal her own activities at Pure Grown Diamonds during her sham litigation – Bissell did not leave on good terms at all with Pure Grown Diamonds discovery will reveal.

982. It will be shown that Mr. Shivas is trying to make me miss the April 19, 2021 filing in USDC NJ as he keeps stacking on the legal papers at the most inconvenient times – a time line will be submitted showing that the Imm defendants and the False Accusers walk "lock and step together" and have done so since the beginning of this ruse. This will be submitted in the Civil RICO Case Information Statement. False Accuser Shivas is even trying to punish the Saga Enterprise because we tried to follow the Securities and Exchange Commission requirements as well as the order of Judge Murray with respect to False Accuser Bissell's licensing of her series 7 and then subsequently to stay away from her and not retaliate.

983. With respect to my financial licenses and in direct and proximate cause of what has happened they all have lapsed: series 7, series 66, and series 24.  The Imm defendants will also revoke (if it has not already been done) by Immigration consultants license for something that has nothing to do with my practice as an Immigration Consultant.

984. Equally or even more importantly, the Third Circuit has an interest in knowing whether or not there are predator lawyers on the loose targeting men for Extortion Takes and committing Fraud on the Court(s) and damaging the Judicial Machinery.

985.  The answer to these questions and the Evidence and Transcripts in the material is detailed.  To detail the differences in the stories – False Accusers literally cannot keep their stories straight.  This was not an accident. To lie is a choice. The Truth does not change as the Perjury and Subornation of Perjury is documented and verifiable.

986. That numerous NJ Attorneys are involved in spinning and propagating their criminality needs to be dealt with harshly.  For instance, one of the require prongs in the NJ PDVA is the "immediate danger," and right after False Accuser Bissell filed the false TRO she moved to Florida just in time to complete the divorce with her husband and then move in with him and there she still lives in the same apartment with Mr. Bissell in Stuart Florida. In the Police Report Bissell said: "Their plan is to all go to Florida tonight to "heal" and get therapy." False Accuser Bissell has been orchestrating this whole ruse from Florida even since and Florida RICO applies which all defendants are culpable for as well as conspired to violate all of the Florida RICO statues.

987. Florida RICO provides for – like NJ – securities fraud under Florida Statutes Title XXXIII, Regulation of Trade, Commerce, Investments, and Solicitations § 517.312. Securities, investments, boiler rooms; prohibited practices; remedies:

> (1)  It is unlawful and a violation of this chapter for any person:
>
>> (a)  To offer or sell, in this state or from this state, any security or investment when such offer or sale is in violation of s. 517.301 or s. 517.311 ;  or
>>
>> (b)  To directly or indirectly manage, supervise, control, or own, either alone or in association with others, any boiler room in this state which sells or offers for sale any security or investment in violation of paragraph (a).
>
> (2)  Any purchaser of a security or investment sold in violation of subsection (1) is entitled to rescind such purchase at any time and recover damages as provided in s. 517.211(3)(a) , (4) , and (6).

988. In False Accusers' case they were not selling the Saga Enterprise as a "pump up" or as "boiler room," but instead were "selling" the security so that it would be "toxic waste" and that no investor would buy it under any circumstances.  Vile false and heinous accusations of mass murder and anal rape tend to make the market for a security become non-existent. Florida Statutes 517.301 – Fraudulent transactions; falsification or concealment of facts deals with precisely this point. False Accuser in her false civil filing of February 5, 2017 said that she was already working for Saga Global Capital Management LLC (see link below for filing), and despite not have a financial securities license she was fraudulently "selling" Saga (See Florida Statutes 517.021 since I had my principle license series 24 (by far the hardest securities license to obtain) I could have sponsored Bissell but she would not even study for the exam.

989. To affect the market with the express purpose of ensuring that the False Accusers could extort and make the market for the Saga Enterprise non-existent. § 517.301 says:

(1)   It is unlawful and a violation of the provisions of this chapter for a person:

(a)   In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:

1.   To employ any device, scheme, or artifice to defraud;
2.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
3.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.
(c)   In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

990. Clearly, the broad language "to employ any device, scheme or artifice to defraud parallels the wire, mail, and bank fraud provisions and this is precisely what False Accusers did and in turn they not only destroyed the Saga Enterprise but they also created their very own security instrument – whose unlawful prospectus amounts to all of the false filings by False accusers and in turn there is aggravated securities fraud. This same line of reasoning also applies to the New Jersey, Nevada & New York RICO (or equivalent) statutes. All defendants and coconspirators have engaged in securities fraud to destroy and Saga Enterprise and for this scheme to defraud they want to get "paid off" with extortion takes.

991. 817.03   Making false statement to obtain property or credit.—Any person who shall make or cause to be made any false statement, in writing, relating to his or her financial condition, assets or liabilities, or relating to the financial condition, assets or liabilities of any firm or corporation in which such person has a financial interest, or for whom he or she is acting, with a fraudulent intent of obtaining credit, goods, money or other property, and shall by such false statement obtain credit, goods, money or other property, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

992. In this case False Accusers have violated this on an aggravated basis as well and all defendants are culpable of this offense as well as conspiracy to commit this offense:

i.   False Accusers have obtained property and/or credit form the Imm defendants to pay for the lawyer to execute the scheme.
ii.   False Accusers have obtained property by having Saga Global Capital Management LLC's Answers, Defenses, and Counter claims struck with prejudice for the reason that Saga does not have a lawyer.

      iii.    False Accusers have false staked a claim against the Saga Enterprise, Mr. Klassen, and myself with wholly false claims based on the evidence that False Accusers created themselves.

      iv.    False Accuser Bissell states that she could go back to Pure Grown Diamonds at any time and the matter was just a "contract dispute." Discovery will show otherwise.

993. All defendants are culpable of as well as conspiring to commit and violate Florida's § **836.05    Threats; extortion.**—Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

994. On September 19, 2017, at 4:34 PM, from Stuart, Florida, both False Accusers (Lisa Bissell and James Bissell) called the Court in Essex County with Judge Callahan, Jr on the end to commit wire fraud and perjury, while Flanagan participated in the wire fraud and subornation of perjury in Judge Callahan's presence. This is all captured in transcript that the Court already has in 2:19 and 2:20, and therefore it shows precisely who said what.  Although Mr. Bissell is not on the transcript of September 19, 2017, he is on the Police Report of August 9, 2017, and Flanagan had the Police Report in hand when the False Accusers deceived Judge Callahan.  It became perjury in New Jersey and also in Florida, and affected Dean in Nevada and New York, since the call originated from Florida to New Jersey and all defendants are culpable of perjury and conspiring to commit perjury and Dean was the fraudulent and perjurious subject of it all.  Clear scheme to defraud commerce interstate and internationally.

995. Mr. Bissell participated in the filing of the Police Repot and TRO and he has been living with Bissell these last four years or so and never did he put an end to the notion that the false threats of mass murder of his own kids was utterly false and he therefore is as guilty as all each and every time Shivas made a false filing in any court.

996. False Accusers scheme to defraud in particular the problem that in the texts messages and they knew that there was an "unclaimed" booty call by Dean from Bissell.  Read the texts and see that Bissell is sending Dean a text whining at 1:36 AM on a Sunday/Monday morning. Much more will be said about this below but for now this is where the Bissell claimed that I said that I had the codes to her garage door and was going to break into her home and re-rape her et al but again this possibility is foreclosed on the police report. Utter perjury and fraud.

997. 837.02  Perjury in official proceedings -- (1)  Except as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, (2)  Whoever makes a false statement, which he or she does not believe to be true, under oath in an

official proceeding that relates to the prosecution of a capital felony, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, (3)  Knowledge of the materiality of the statement is not an element of the crime of perjury under subsection (1) or subsection (2), and the defendant's mistaken belief that the statement was not material is not a defense. Again, in this case, Bissell was trying have me tossed into state prison for the rest of my natural life. I did not know it at the time that the prosecutor declined to charge me, and I only "officially" found out when I received the police report on March 18, 2021. Nevertheless, like in any crime, if there is any "new information," even false information that Bissell was trying to peddle then the prosecutor could have opened up the case again and still tossed me into prison on false charges.  This makes this the False accusers' second attempt at having me thrown into prison for the rest of my life an aggravated attempted murder that all defendants are culpable of and conspired to do.

998. The Imm defendants and the False Accusers together form a hate group, and the following will quote the parts of the Florida Legislature intent and statute with respect to hate crime. Florida § 874.02 Legislative findings and intent and **bold** especially relevant parts to this instant matter:

(1)   The Legislature finds that it is the right of every person, regardless of race, color, creed, religion, national origin, **sex**, age, **sexual orientation**, or handicap, to be secure and protected from fear, intimidation, and physical harm caused by the activities of criminal gangs and their members.

(2)   The Legislature finds, however, that the state is facing a mounting crisis caused by criminal gangs whose members threaten and **terrorize peaceful citizens and commit a multitude of crimes.** These criminal gang activities, both individually and **collectively, present a clear and present danger.** Street gangs, terrorist organizations, and **hate groups** have evolved into increasingly sophisticated and complex organized crime groups in their **criminal tactics, schemes, and brutality.** The state has a compelling interest in preventing criminal gang activity and halting the real and present danger posed by the proliferation of criminal gangs and **the graduation from** more primitive forms of criminal gangs to **highly sophisticated criminal gangs**. For these reasons, **the Legislature finds that the provisions of this chapter are essential to maintain public order and safety.**

(3)   It is the intent of the Legislature to **outlaw** certain conduct associated with the existence and proliferation of criminal gangs, **provide enhanced criminal penalties**, and **eliminate the patterns, profits, proceeds, instrumentalities, and property facilitating criminal gang activity,** including criminal gang recruitment.

**874.03   Definitions.**—As used in this chapter:

(1)   "Criminal gang" means a **formal or informal ongoing organization**, **association**, or group that has as one of its **primary activities the commission of criminal or delinquent acts**, and that consists of **three or more persons who have a common name** or common identifying signs, colors, or symbols, including, but not limited to, terrorist organizations and **hate groups**.

(a)   As used in this subsection, **"ongoing" means that the organization was in existence during the time period charged in a petition, information, indictment, or action for civil injunctive relief**.

(b)   As used in this subsection, "**primary activities**" means that a criminal gang spends a substantial amount of time engaged in such activity, **although such activity need not be the only, or even the most important, activity in which the criminal gang engages**.

(2)   "**Criminal gang associate**" means a person who:

(a)   Admits to criminal gang association; or

      (b)   **Meets any single defining criterion for criminal gang membership described in subsection (3).**

  (3)   "Criminal gang member" is a person who meets two or more of the following criteria:

      (a)   Admits to criminal gang membership.

      (b)   Is identified as a criminal gang member by a parent or guardian.

      (c)   Is identified as a criminal gang member by a documented reliable informant.

      (d)   Adopts the style of dress of a criminal gang.

      (e)   Adopts the use of a hand sign identified as used by a criminal gang.

      (f)   Has a tattoo identified as used by a criminal gang.

      (g)   **Associates with one or more known criminal gang members**.

      (h)   **Is identified as a criminal gang member by an informant of previously untested reliability and such identification is corroborated by independent information.**

      (i)   **Is identified as a criminal gang member by physical evidence.**

      (j)   Has been observed in the company of one or more known criminal gang members four or more times. Observation in a custodial setting requires a willful association. It is the intent of the Legislature to allow this criterion to be used to identify gang members who recruit and organize in jails, prisons, and other detention settings.

      (k)   Has authored any communication indicating responsibility for the commission of any crime by the criminal gang.

Where a single act or factual transaction satisfies the requirements of more than one of the criteria in this subsection, each of those criteria has thereby been satisfied for the purposes of the statute.

  (4)   "Criminal gang-related activity" means:

      (a)   **An activity committed with the intent to benefit, promote, or further the interests of a criminal gang, or for the purposes of increasing a person's own standing or position within a criminal gang;**

      **(b)   An activity in which the participants are identified as criminal gang members or criminal gang associates acting individually or collectively to further any criminal purpose of a criminal gang**;

      (c)   **An activity that is identified as criminal gang activity by a documented reliable informant**;

      (d)   **or an activity that is identified as criminal gang activity by an informant of previously untested reliability and such identification is corroborated by independent information.**

  **(6)   "Hate group" means an organization whose primary purpose is to promote animosity, hostility, and malice against a person or persons or against the property of a person or persons because of race, religion, disability, sexual orientation, ethnicity, or national origin.**

999. Here all of the elements that are highlight in **bold** in the above paragraph are met. In this case I am a man and have been targeted by the False Accusers because I have a penis and like women. Since all of these False Accusations of Rape (vaginal, digital, and Anal) as well as supposed constant threats of Mass Murder were laid on me in August/September 2017 my life indeed has been terrorized through a multitude of predicate acts AND having to lift off the heavy albatross around my neck that indeed I am not a rapist nor am I (nor was I) ever in any danger of Murdering Bissell, her family and *her children.* I am not the only one who has been extorted by the False accusers and indeed the Imm defendants.

1000. I have described their criminality, schemes, and brutality herein with specificity. The defendants are only going to grow and learn from this experience if indeed they are allowed to walk away with impunity instead of facing stiff Justice. The criminal gang definition mirrors the Federal Definition of racketeering in 18 USC § 1962

and I incorporate those definitions that I have given herein and apply it to this 'gang' matter. I add that these associates are known by the documents by their own hand – going from court to court to court committing perjury and deceiving courts to ruin peoples' lives.  How much more sophisticated can it get than that?

1001.    Their primary purpose with respect to me was to promote animosity, hostility, and malice against a me and the Saga Enterprise.  Further, by arranging for my incarceration, I likely would have been murdered since it is a well known fact that "rapist" are scorned even more than "murders," in prison and most loathsome of all is any person that commits violence (and in this case the accusations of repeated threats of murder against more than one child) were meant to be my utter undoing in prison.  ...all because I have a penis, like women, and was set to be one of New York's most exciting hedge fund manager. All defendants are guilty of being 'gang members' and conspiring to be gang members to perpetrate this hate crime. I reincorporate 18 U.S.C. §245 mentioned in Act I here against all defendants and conspiracy to violate 18 U.S.C. §245.

1002.    Florida also has its own statutes with regard to § 914. 22 and § 9.14.23 related to tampering with or harassing a victim, witness, informant, retaliation against a witness and when applying this matter to the gang activity described above it really twists off for all defendants.

§914.22   Tampering with or harassing a witness, victim, or informant; penalties.—
(1)   A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to:
(a)   Withhold testimony, or withhold a record, document, or other object, from an official investigation or official proceeding;
(b)   Alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official investigation or official proceeding;
(c)   Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official investigation or an official proceeding;
(d)   Be absent from an official proceeding to which such person has been summoned by legal process;
(e)   Hinder, delay, or prevent the communication to a law enforcement officer or judge of information relating to the commission or possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding; or
(f)   Testify untruthfully in an official investigation or an official proceeding, commits the crime of tampering with a witness, victim, or informant.
(2)   Tampering with a witness, victim, or informant is a:
(a)   Felony of the third degree, punishable as provided in s. **775.082**, s. **775.083**, or s. **775.084**, where the official investigation or official proceeding affected involves the investigation or prosecution of a misdemeanor.

1003.    I reincorporate all materials related to 18 USC § 1512 and 18 § 1513 and apply it to Florida §914.22 and state that all defendants are culpable as well as conspiring to violate this Florida Statute.

1004.    Florida also has Fla. Stat. § 914.23 - Retaliating against a witness, victim, or informant and likewise incorporate the federal laws and evidence given to this Florida statute:

A person who knowingly engages in any conduct that causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for:

(1) The attendance of a witness or party at an official proceeding, or for any testimony given or any record, document, or other object produced by a witness in an official proceeding; or(2) Any information relating to the commission or possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding given by a person to a law enforcement officer;

or attempts to do so, is guilty of a criminal offense. If the conduct results in bodily injury, such person is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Otherwise, such person is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

1005.    The State does not have to prove that an official proceeding was pending or about to be instituted at the time of this alleged offense *§ 914.22(5)(b), Fla. Stat.* The State does not have to prove that the testimony or the record, document, or other thing was admissible in evidence [or free from a claim of privilege]. *§ 914.22(6)(a), Fla. Stat.* The State does not have to prove that the defendant knew or should have known that the official proceeding before a judge, court, grand jury, or government agency, was before a judge or court of the state, a state or local grand jury, or a state agency. *§ 914.22(6)(b), Fla. Stat.*

*Definitions. § 914.21, Fla. Stat. Give as applicable.*
"Misleading conduct" means:
a. Knowingly making a false statement;
b. Intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact and thereby creating a false impression by such statement;
c. With intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;
d. With intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or
e. Knowingly using a trick, scheme, or device with intent to mislead.

1006.    Without question, False Accusers, from Florida, called into New Jersey on September 19, 2017, to commit perjury and to further violate Fla. Stat. § 914.23 et al.

1007.    To prove the crime of [Attempted] Retaliating Against a [Witness] [Victim] [Informant], the State must prove the following two elements beyond a reasonable doubt:

1. (Defendant)
knowingly
a. [attempted] [threatened] to [cause bodily injury to (victim) ] or [damage the tangible property of (victim)]
b. caused [bodily injury to (victim) ] [damage to the tangible property of (victim) ]
2. (Defendant) did so, with intent to retaliate against [any person] [ (name of person) ]
for

a. the attendance of a [witness] [party] at an official proceeding.

b. any [testimony given] [record, document, or object produced] by a witness in an official proceeding.

c. information given by [a person] [ (name of person)]

to a law enforcement officer relating to the commission or possible commission of [an offense] [a violation of a condition of [probation] [parole] [release pending a judicial proceeding].

1008.    It is not necessary for the State to prove that the defendant had the intent to communicate his or her threat(s) to the witness nor that the defendant had the intent to carry out his or her threat(s). State v. Jones, 642 So.2d 804 (Fla. 5th DCA 1994).

1009.    A word from the Federal Courts about this matter: See United States v. Cofield, 11 F.3d 413, 419 (4th Cir. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994); United States v. Brown, 937 F.2d 32, 36 (2d Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991). The only intent requirement contained in the statute is that the defendant make the threats with the intent to retaliate against the witness; section 914.23 does not require that the defendant have the intent to communicate his threats to the witness or, even, that the defendant have the intent to carry out his threats. United States v. Maggitt, 784 F.2d 590, 593 (5th Cir. 1986). In this regard, section 914.23 is aimed at deterring both retaliatory bodily injury to a witness and retaliatory threats against a witness before the threats become reality. The proof of whether a defendant has knowingly engaged in conduct threatening to cause bodily harm to a witness with the intent to retaliate against the witness must turn upon the circumstances under which the threat was made. See United States v. Brown, 937 F.2d at 36. See also United States v. Frederickson, 601 F.2d 1358, 1362-63 (8th Cir.), cert. denied, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979). Intent is generally a question for the trier of fact because a defendant's mental intent is hardly ever subject to direct proof and must be established by surrounding circumstances. See Brewer v. State, 413 So.2d 1217, 1219-20 (Fla. 5th DCA 1982), rev. denied, 426 So.2d 25 (Fla. 1983). See also United States v. Brown, 937 F.2d at 36. In construing section 914.23's federal counterpart, courts have concluded that determining whether a defendant's statements and acts constitute threatening conduct is a question of fact generally reserved for the jury. Id.; United States v. Amor, 24 F.3d 432, 436 (2d Cir. 1994). Thus, the issue of Jones' intent or state of mind in the present case presented a jury question and was not a matter which could be decided on a "(c)(4)" motion. See State v. Evans, 394 So.2d 1068, 1069 (Fla. 4th DCA 1981).  State v. Jones, 642 So. 2d 804, 805-06 (Fla. Dist. Ct. App. 1994).

1010.    Dean reincorporate all items herein with respect to 18 USC § 1512 and 18 § 1513 and apply it to Fla. Stat. § 914.23 and state that all defendants are culpable as well as conspiring to violate this Florida Statute.

1011.    Florida has the § 918.13 Tampering with or fabricating evidence statute as well. While in Florida, False Accuser Bissell and all lawyers at BS created the wholly false February 5, 2019 "Civil Complaint." There are numerous instances of wire fraud with this document alone and that will come out during discovery. The Noerr-

Pennington Doctrine Exception eliminates any "litigation privilege" that GG & BS is at this point are cowering under as well as the Supremacy Clause under Federal RICO attacks and prohibits any scheme to defraud. 918.13 Tampering with or fabricating physical evidence.

> (1)    No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:

>> (a)    Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation; or
>> (b)    Make, present, or use any record, document, or thing, knowing it to be false.
>> (2)    Any person who violates any provision of this section shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

1012.        As will be shown below in all of the differing stories of the False Accusers these matters are indeed Florida RICO items. Just so it is stated in Florida and in many other jurisdiction there is this and below it will be shown that the False Accusers have been caught in dozens of material perjury items:

> **837.021  Perjury by contradictory statements.**--
> (1)  Except as provided in subsection (2), whoever, in one or more official proceedings, willfully makes two or more material statements under oath which contradict each other, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> (2)  Whoever, in one or more official proceedings that relate to the prosecution of a capital felony, willfully makes two or more material statements under oath which contradict each other, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> (3)  In any prosecution for perjury under this section:
>> (a)  The prosecution may proceed in a single count by setting forth the willful making of contradictory statements under oath and alleging in the alternative that one or more of them are false.
>> (b)  The question of whether a statement was material is a question of law to be determined by the court.
>> (c)  It is not necessary to prove which, if any, of the contradictory statements is not true.

1013.        The False Accuser Bissell is a self-professed marketing and "Spin Doctor" expert, and dared to come to the Court(s) to ply her trade under the ruse of perjury et al.  All False Accuser Bissell thinks that the Courts, Judges, and Juries "are stupid," for why else would she attempt to do what she is doing now even after she lost in Family Court in 2017? Is it because she is calculating that she is a such a good "Spin Doctor" that she can dodge her way through this process with and using Perjury and Criminality? Worse – how is that these NJ lawyers allowed themselves to caught up in this ruse in the first place?

1014.        I've got plenty of evidence and proof documented to back up that statement.

The Facts Related to the RICO and Other Crimes of False Accusers and Imm defendants.

1015.        Side note: for the rest of this document I will use the "third person" to conform what has already been previously written in the "third person," on December 21, 2020 CERTIFICATION OF RYAN DEAN, and will not be

using "I," "me," "us," and so on and so forth but from this point on but instead will be using "Dean" or "defendant(s)" as the case may be.

1016.    Shivas for his part in his letter of January 4, 2021 to Judge Gardner had this to say:

"Defendants intend to hold up the **appropriate administration of Plaintiff's claims** for another two months while they prepare a **baseless motion akin to the many other ones already filed in this court**, the appellate division and the federal district court. Beyond the **noise** of Defendants' 1,000s of pages is the **unmistakable and undisputed truth** that pursuant to R. 4:23-5(a)(2), dismissal of the answer and counterclaim on behalf of Saga with prejudice is warranted….Defendants' request to stay this motion is little more than an **attempt to muddy the waters and to join issues that are not connected**." (Emphasis added by Dean)

1017.    "Appropriate Administration" does not include Perjury and Subornation of Perjury.  "Attempt to muddy the waters and to join issues that are not connected" is Shivas doing all he can to not let the Evidence of False Accusers in 2017 be compared to the Evidence of what False Accusers said in 2019.  False Accuser Shivas has had the Evidence from August 31, 2020 and he is doing any and everything to back pedal from these stories and unbelievably get discovery on Dean from 20 years ago to create yet another story.

1018.    It is False Accuser Bissell, and her attorneys, and in particular False Accuser Dave Shivas, that have created all of the "noise" and "mud" as will be illuminated below – the legal name for this is Perjury, Suborning of Perjury, Fraud and numerous RICO violations.

1019.    There is so much that False Accuser Bissell et al have created out of thin air it helps to first see the "Revenge Plot" outline in the PACS (see immediately below for definition) below, as well as the "Highlights Of False Accuser Bissell's Life with Dean a month after the alleged attack," and the "Red Flags." The "False Accuser Bissell Spells" also richly illuminate all of the perjury and fraud – See below.  All of these items are then subsequently covered in the Predicate Acts Crime Story with references in the Evidence and Transcripts – that will in due course of this legal process come out.

1020.    Side Note: Any Federal Prosecutor, State Prosecutor, Federal Authority, State Authority, and/or Member of Canadian Parliament that would like a copy of the Unredacted Predicate Acts Crime Story PACS ("PACS") and Unredacted Transcripts need only send Plaintiff Dean a subpoena or whatever legal demand that is needed for your particular jurisdiction, and these materials will be forwarded.  Send email to rcic20xx@gmail.com  Side Note 2: The PACS was written and periodically updated in 2020.  The police report was not in hand until March 18, 2021.  The PACS will be updated in due course with the police report information.  Still even without the Police Report incorporated into the PACS, there is clear and convincing Evidence of Fraud, Perjury, Subornation of Perjury and a scheme to defraud, here, there, and everywhere by False Accusers.  The Police Report makes it ever so more obvious.

1021.     The PACS was the investigation that Shivas asked for in his interrogatories in ESX – L – 984 – 19  and became the basis to compare all of False Accuser Bissell differing statements. This is the Evidence that False accusers will do and say anything not to be considered – read more Fraud, Misrepresentation, and Misconduct.

1022.     False Accusers assertions are purposefully very vague, and False Accusers have less-than-scant, or nil evidence to back up their perjurious and fraudulent notions. All they have are ever-changing stories from Court to Court to Court while False Accuser Bissell threw away/did not keep the most critical evidence that would have sealed her case in her favor (if it had existed – which it did not).  Instead, False Accuser Bissell fabricated evidence of a bloody towel (that did not exist), did not disclose it to Dean before the 2017 FRO hearing, and did not preserve it.  This is fraudulent concealment and evidence destruction – an indictable offense – in the State of New Jersey.

1023.     Because Dean was a resident of Nevada and with respect to NRS 199.210 – Nevada "Offering False Evidence" Laws there is plenty of culpability as well. NRS 199.210 states that "a person who, upon any trial, hearing, inquiry, investigation or other proceeding authorized by law, offers or procures to be offered in evidence, as genuine, any book, paper, document, record or other instrument in writing, knowing the same to have been forged or fraudulently altered, is guilty of a category D felony and shall be punished as provided in NRS 193.130."

1024.     Because acts of perjury are indictable under obstruction of justice statues and RCIO statute specifies that acts indictable under obstruction of justice state are RICO predicate acts, acts of perjury may, under appropriate circumstances constitute RICO predicate Acts 18 USCA §§ 1503, 1621, 1961 (1)(B)  Streck v Peters, US District Court, Hawaii.

1025.     Of course, False Accuser Bissell also destroyed and/or fraudulently concealed her own text messages with Dean and it was Dean's burden of providing these exculpatory text messages – which she thought Dean had destroyed upon her request in April 2017. These text messages are key on so many levels as will be illuminated herein.

1026.     Destruction or concealment of evidence or attempts to do so (18 U.S.C. 1512(c)) and witness harassment to prevent the production of evidence (18 U.S.C. 1512(d)). Section 1512 also contains freestanding provisions that apply to one or more of the offenses within the section. These deal with affirmative defenses (18 U.S.C. 1512(e)); jurisdictional issues (18 U.S.C. 1512(f),(g),(h)); venue (18 U.S.C. 1512(i)); sentencing (18 U.S.C. 1512(j)); and conspiracy (18 U.S.C. 1512(k)).  In short, each and every filing by False Accusers from the beginning of their ruse has been an attempt to obstruct justice.  There are dozens of filings made by Shivas over the past few years with his express intent to lawyer his way through crime. All defendants are culpable of perjury and subornation of perjury and attempts to do so.

1027.    Indeed, virtually nothing that False Accuser Bissell has represented to this Court (or any other Court) is based in Truth. Instead, False Accusers take kernels of truth and then pervert it to create their wholly false narrative – and their ever-evolving stories. It took a lot of planning and deceit of the Court(s) by False Accuser Bissell et al to accomplish what they have done to done thus far.  It will be shown that this is also the tactic of Imm defendants in Act III.

**FALSE ACCUSER BISSELL SWEARS THAT DEAN IS HER BOYFRIEND ON THE TRO**

1028.    All of these items were fabricated by False Accusers Bissell, Flanagan, and Barreiro in concert working together in 2017 and after Judge Murray dismissed the TRO and Amended TRO, False Accuser Bissell plotted with False Accuser Shivas et al to repackage her same claims already presented, decided, and not appealed.

1029.    False Accuser Bissell swore Dean was her "boyfriend" on the August 9, 2017 TRO, and then it was removed on the Amended TRO (See PACS, pg 116). False Accuser Bissell would falsely and materially state:

> "The Police report characterized defendant Dean as my paramour because we had a sexual relationship prior to the rape. I never characterized defendant Dean as my boyfriend" (Certification of Plaintiff in Opposition to Motion for Summary Judgement, 45).  2019

1030.    On the police report, neither the terms "boyfriend," nor "paramour" appear, but both do on the TRO, and Bissell signed this TRO document on August 9, 2017, and then went into front of Judge Brindisi to commit perjury about it. Bissell claimed in the Police Report that "their encounters were very business -like and not romantic at all." On the TRO, False Accuser said that Dean was her "boyfriend/paramour."  Paramour according to dictionary.com means: "an illicit lover, especially of a married person."  Sounds like even more than simply "romance" as these were Bissell's words and not Dean's.

1031.    Again, after sex, they went to sleep and he left the next day" (Police Report, pg 2, para 1). False Accuser Bissell did thank Dean for the concert on Halloween, 2016, per text messages being that Dean is somewhat of a "Karaoke jockey," and two days later Ms. Bissell was having consensual sex with Dean at her home.

1032.    It is important to note at this point that Bissell claimed that she was "separated from her husband," and Dean was separated from his wife, who was living in Western Canada. The larger point, is that on the Police Report, it shows that Mr. Bissell moved to Florida in August 2016, where False Accuser Bissell was to follow, and approximately 2 months later Bissell was having sex with Dean (and who knows how many others).

1033.    This becomes important because False Accuser Bissell now wants this Court to believe that there was a business relationship prior to the sexual, dating, romantic relationship – when in fact, it was always sex first and proposed business second.

1034.    Also, this is material perjury and subornation of perjury as well as Misrepresentation as False Accuser Shivas is the one that approved False Accuser Bissell's 2019 statement of "I never characterized defendant Dean

as my boyfriend." In fact, whatever False Accuser Bissell has done it is also attributed to False Accuser Dave Shivas and his False Accuser partners at the False Accuser 'law firm,' Bell & Shivas, P.C.

1035.    Also, as any adult knows in this society, people write complaints, "sign them," and then the police write their report based on what is in the complaint. People know what is in the report, especially when they are given copies of the report, and then have to refer back to it, as Plaintiff(s) have had to do chasing down and obtaining the paper trail of destruction for the False accusers. Here, False Accusers knew that Dean was prevented from obtaining a copy of the Police Report until March 18, 2021.

1036.    The other subtle but material point here is that False Accuser Shivas and False Accuser Bissell in their February 5, 2019 false filing stated the "retaliation" was because False Accuser Bissell went to the police but, in the Judge Murray 2017 on September 26, 2017, it was clear that the Private Investigator, sent by Dean's attorney, was because of the TRO process - and not the police report – as there were no criminal charges pending at that point according to the Police who told Dean "Bissell is not filing criminal charges," and of course that was a lie. False Accuser Flanagan said in open Court on 08/17/17 that there was no criminal charges pending and on the Police Report the charges were in fact closed by then and Flanagan having a copy of the Police Report in hand knew that. Dean never was contacted by the Prosecutors office so what was there to retaliate against at that point – Dean only had barely enough time to get ready for the TRO/FRO process.

1037.    False Accusers subpoenaed the Private Investigator of Dean's attorney to testify on September 26, 2017 (See PACS, pg 226). False Accusers were trying to complain that Dean was "retaliating" inside his defense of the TRO/FRO hearing and Judge Murray, from Dean's perspective did not care about this PI, because it is not mentioned in the September 29, 2017 Judgement by Judge Murray. Dean (and Klassen as a privy to Dean) enjoy absolute litigation privilege. But yet False Accuser Bissell and Shivas are suing Dean in Law Division for something that Judge Murray already decided and False Accuser Bissell and Shivas attempted to fraudulently conceal this fact. What's more, False Accusers obtained Dean's Social Security Number unlawfully for the Imm defendants and this is one element that connects the False Accusers and the Imm defendants together. It also did not bother the Cedar Grove Police a bit that Bissell obtained Dean's information unlawfully and then proceeded to use it inside the Police Report – and this is one reason why the police have been working with False Accusers and withholding the report for so long, as a "matter of policy."

1038.    False Accusers Bissell and Shivas et al state (see link for false filing immediately below):

"Before she left for Florida, Plaintiff gave a statement to the Cedar Grove Police Department detailing the assault that had taken place on February 7, 2017. After defendants discovered that Plaintiff had made out a criminal complaint against Defendant Dean, Plaintiff received a telephone call from the CFO of her former employer. The CFO stated that they had been contacted by a private investigator who inquired as to why the Plaintiff had left her former company. In August, 2017, Plaintiff learned that an investigator claimed to be investigating her for the allegedly fraudulent activities. Plaintiff had never heard of any such investigation, and the allegation was false. Around this time, Plaintiff had been

receiving calls from companies in the diamond industry who had inquired about her availability upon the expiration of her non-competition term, which was set to expire in May, 2018." Civil Complaint, February 5, 2019, paras 57 – 60. See the Civil Complaint below and print off to follow along:

https://www.dropbox.com/s/kz5pby31gdzjdzo/False%20Accusers%20Filing%2002-05-19.pdf?dl=0

1039.    Recently the Cedar Grove Police have finally produced the police report after nearly four years and the receipt of that police report at the beginning of this ruse could have stopped the False Accuser Association-In-Fact much sooner. But the damage that has been done is irreparable and now there is Federal and State Civil Rights Violations transforming all defendants into State Actors.

https://www.dropbox.com/s/ie72mg4k75fh54e/Police%20Report%2017-14564%20Bissell.pdf?dl=0

1040.    As soon as False Accusers left the state of New Jersey (and made a trip back to Judge Murray's Court, it required Dean to go to New Jersey at least 50 + times since this circus erupted and it is a violation of 18 USC § 1961(1) that includes: 18 U.S. Code § 2314 - Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting and states (and in bold for the pertinent part herein):

**Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations,** or promises, transports or causes to be transported, or induces any person **or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more;** or

1041.    The "murder-for-hire" statute, 18 U.S.C. § 1958, was enacted as part of the Comprehensive Crime Control Act of 1984, Pub.L. 98-473, Ch. X, Part A (Oct. 12, 1984). Section 1958(a) provides:

Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay anything of pecuniary value, or who conspires to do so [violates this statute].

1042.    Every time I went to NJ I thought that I might get murdered.

1043.    Section 1958 renders it illegal: 1) to travel or use facilities of interstate or foreign commerce; 2) with intent that a murder in violation of State or Federal law be committed; 3) for money or other pecuniary compensation. See United States v. Ritter, 989 F.2d 318, 321 (9th Cir. 1993). The government is not required to prove that a defendant intended or knew that the mails or any other facility of interstate commerce would be used or that interstate travel would occur. United States v. Edelman, 873 F.2d 791, 794-95 (5th Cir. 1989). Rather, a defendant must use or cause another to use such a facility with the intent that a murder be committed. See United States v. Winter, 33 F.3d 720, 721 (6th Cir.), cert. denied, 115 S.Ct. 1148 (1994). Dean incorporates this into his § 1985 claims.

1044.       Federal jurisdiction may be established in one of three ways: 1) by travel in interstate or foreign commerce; 2) by use of the mails; or 3) by use of any facility of interstate or foreign commerce. On the Police Report it said that False Accuser James Bissell: "…left Florida that day and flew back up today so that he could support her while she reported the crime to the police. Their plan is to all go to Florida tonight to "heal" and get therapy." Clearly, the use of interstate travel was used to affect commerce both domestically and internationally and the False Accusers used the airport to do so. There is Federal Jurisdiction on this point alone. The term "facility of interstate or foreign commerce" is defined to expressly include "means of transportation and communication." § 1958(b)(2). Congress intended to give the term "facility of interstate or foreign commerce" the same scope and breadth encompassed by the Travel Act, 18 U.S.C. § 1952. S.Rep. 225 at 306 n.5. Each and every time that the False Accusers at BS send Dean mail, Fed Ex, UPS, it is the use "of the mails, including intrastate mailings, will furnish Federal jurisdiction" See United States v. Riccardelli, 794 F.2d 829, 830-33 (2d Cir. 1986); United States v. Heacock, 31 F.3d 249, 254 (5th Cir. 1994).

1045.       A single interstate telephone call will furnish Federal jurisdiction. United States v. Perrin, 580 F.2d 730, 733 (5th Cir. 1978), aff'd, 444 U.S. 37 (1979); United States v. Pecora, 693 F.2d 421 (5th Cir. 1982) and calling from Florida to commit perjury to Judge Callahan certainly qualifies. The fact that a call was incidental to the scheme does not matter, so long as the interstate phone call facilitated the crime. See United States v. Jones, 642 F.2d 909, 913 (5th Cir. 1981). In this case the call to Judge Callahan was utter and totally instrumental. Richard Dennis was the one that has gone back and forth across the US/Canadian border and the Imm defendants are the ones that "hired" the False accusers to do what they have done. Craig Peretz and Sierra Global Management LLC – both in NY State – like Mr. Dennis were also part of the scheme and they are as culpable as all defendants herein. The reason that Mr. Peretz was part of the scheme is because he knew that an innocent man was being targeted and he remained silent and indeed he was in on the take from the beginning.

1046.       Bissell told Dean that she had a bizarre relationship from Peretz since they were young and always had him 'wrapped around her finger.' Peretz had never been married nor even kissed a girl Bissell told Dean and Peretz always 'secretly' wanted to bed Bissell down even though he was best friends with Jim Bissell. Another ground for not wanting to make Bissell Dean's full-time girlfriend.

1047.       At any rate, Mr. James Bissell hired a Private Investigator to investigate Dean in June or July 2017 (Police Report), and his intent was at the beginning was to simply murder Dean but then Lisa Bissell came up with a more diabolical idea and that was to falsely accuse Dean of Rape and then surprise him with false threats of mass murder et al *and then* send Dean to prison for the rest of his natural life with real murders and rapists, and *have Dean murdered if it did not happen just by the happenstance of the environment (as above)*. That is when Lisa Bissell contacted the Imm defendants for financing and coordination of the multiple schemes. By using the

Bissell's private investigator, the False Accusers were using interstate facilities to carry out their schemes as well as schemed with the False Accusers of an extortion payoff.

1048.  Bissell could have extorted Dean and got him into a position of just about to face criminal trial and "stuck an "extortion bargain"" with Dean to hand over money, property, or equity in the Saga Enterprise. Who knows as it is all bad from any perspective and it is all RICO violations as the elements are there for each. A matter for the Jury to decide.

1049.  The False Accuser gave Dean's information that she knew he lived in Nevada and that is where the Cedar Grove Police secured a copy of Dean's driver's license. False Accusers caused the Cedar Grove Police to reach into Nevada and therefore the Nevada attempted murder statute applies as the state of Nevada has an interest in the well-being and safety of one of its citizens being targeted for extortion takes and murder attempts. Attempted murder in Nevada is when someone tries and fails to commit the Nevada crime of murder. The two main elements of this crime are: the defendant(s) intended to kill the victim, and the defendant(s) took a direct step towards carrying out the killing. (NRS) 200.010 and NRS 193.330 apply.

1050.  That being the case this murder attempt also falls under NRS 207.360 "Crime related to racketeering." "Crime related to racketeering" means the commission of, attempt to commit or conspiracy to commit any of the following crimes in this instant case: Murder, Robbery, Extortion, Grand Taking property from another under circumstances not amounting to robbery. All defendants are culpable of NRS 207.360 and conspiracy to commit this offense.

1051.  Nevada Revised Statute section 205.270 is the statute that defines the crime of taking property from another person in circumstances not constituting a robbery. According to the relevant statute, any defendant who takes property directly off another person in circumstances that don't rise to the level of robbery with the intent to misappropriate the property for his or her own use and without the consent of the person from whom the property is taken can be found guilty of a crime.   Here, the Imm defendants have (or about to) unlawfully take away Dean's Immigration Consulting license for something that has nothing to do with the practice as an immigration consultant. All defendants are culpable of this and conspiracy to commit this offense.

1052.  Grand larceny NRS 205.320 also qualifies as the Imm defendants, when they took Dean's directorship qualifies as Grand larceny over $100,000 since there was a budget of some $10,000,000 a year and divided by 15 directors is still greater than $100,000 for grading of this crime even when taking into account the currency exchange between the US dollar and Canadian dollar at the time in April 2017.

1053.  Likewise, the same crime has all of the elements of robbery of NRS 200.380 Definition:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of

his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

        (a) Obtain or retain possession of the property;
        (b) Prevent or overcome resistance to the taking; or
        (c) Facilitate escape.

1054.      The Imm defendants unlawfully ran a "board trial" not provided for in the CNCA or in the By – Laws and they simply "obtained or retained possession of the property," and then entered the United States again so Richard Dennis could accept his bribe and step out of the shadow where he was controlling the Enterprise. Of course, all of these matters also are conspiracy to commit money laundering, conspiracy to commit all predicate acts as described above.

1055.      In the section below entitled "FALSE ACCUSER BISSELL FABRICATES A NON-COMPETE CLAUSE WHILE PROMOTING HERSELF ON FACEBOOK DOING PRECISELY WHAT SHE SAYS SHE IS FORBIDDEN TO DO" there is a full build out with Evidence that in late April 2017, False Accuser Bissell is already pushing herself and her company "Classic Luxury, LLC" on Facebook and is already breaching this supposed non-complete agreement. For now, it is enough to know that in the Police Report, Mr. Bissell said (and contradicted False Accuser Bissell) that "She started networking and attempt[ed] to get a business running, but it continued to be unsuccessful" (Police report, pg 3, para 3), in direct reference to her diamond business.  It sure was not in reference to the Saga Enterprise because Bissell herself in the Police Report stated that "they continued to talk from time to time through phone calls and texts…" (police report, pg 2, para 1) and "they continued to keep in touch" (police report, pg 2, para 2). In Bissell's false complaint of February 5, 2019, she claims that she was working the first day she met Dean in October 2016.  False Accusers know this was never true per the Police Report and yet kept on with their extortion scheme to defraud and this will be covered below.

1056.      The Bissell's were out of money and yet there they live in beautiful Florida paying for lawyers in an epic legal struggle on multiple fronts with Dean and Klassen – this financing is coming from the Imm defendants in violation of 18 USC 1962 et al.

1057.      There is also material perjury by False Accuser Bissell tries to accuse Dean and Klassen of somehow "ruining her career" with a 3-minute phone call and this is precisely what False Accuser Bissell has done to Dean and Klassen with her reprehensible scheme that went into action 08/09/17. False Accusers have simply projected onto Dean and Klassen what False Accusers are doing themself and have falsely done to Dean and Klassen (but Dean and Klassen have done none of these things to her that she claims the Evidence shows). By her own account in the Police Report, what she says is false in the 02/05/17 false civil claim, because the way False Accuser Bissell said it, she was not working for Dean or Saga as of February 7, 2017 (See police report, pg 2, para 2) where False Accuser Bissell herself claims that Dean said: "..and told her that she better not say a word

about this or she will never work for him."   Dean never said "never work for him," False Accuser Bissell did and thinking that Dean did would never see the Police Report and indeed could not get it until recently, False accusers filed their fraudulent civil claim of 02/05/19.

1058.    Also, these False accuser claims where they said they said the PI called over and said that Bissell was being investigated for Fraud have been directly refuted in 2017 testimony by the Private Investigator in open Court in front of Judge Murray in 2017 – and False Accusers Bissell and Shivas knew this before their false February 5, 2019 filing – this is obvious Misrepresentation and likely more Fraud.

1059.    It is also more Fraud on the Court as False Accuser Bissell tries to falsely claim that she is the Victim - but the voluminous perjury herein shows that she is anything but the Victim, and it is all a massive scheme to defraud and all defendants are in serious violation of 18 § USC 1962 et al- and this Fraud is definitely aimed the judicial Machinery to deceive the Court, by definition, Obstruct Justice, and prevent Dean's testimony instead of it listening to the diversion of Bissell's False Accusations.

1060.    But there it is: in this world the of whisper sex harassment (much less brutal rape) causes nobody to want to talk about it because of social shaming and that in and of itself is the scheme so that criminals can escape with their ill-gotten gains and the whistleblower gets crushed.  Again, Federal RICO talks about the prohibition on any scheme….even if it is well thought out scheme with social pressures attached to it.

1061.    What we do know is that from late October 2016 to February 6, 2017, False Accuser Bissell is claiming that Dean was her "boyfriend/paramour" and this invalidates all of her false sex harassment and discrimination claims for this entire period. False Accuser Bissell herself had said that it was "Sex First" and "Business Second."

**BUSINESS PLAN WRITING IN THE BATHTUB, ACCORDING TO A RECONSTRUCTION OF FALSE ACCUSER BISSELL'S VARIOUS STORIES AND THE FOUR ENCOUNTERS AT THE BISSELL HOME**

1062.    Shivas in keeping with this vague repositioned version to play to Law Division (Essex County, NJ) stated in 2019 that (see link below to find doc):

> "Defendant Dean drew up the business plan for Saga during one meeting at Plaintiff's house to provide Plaintiff with sufficient understanding of the business (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, STATEMENT OF FACTS, PG 4, Para 1). 2019 See Link and print off to follow:
>
> https://www.dropbox.com/s/w4qmp470kylepz6/06-11-19%20-%20Brief%20in%20Opposition%20to%20Motion%20for%20Summary%20Judgment%20%281%29.pdf?dl=0

1063.    So, let us see about this "one meeting" that False Accuser Shivas mentions.   What follows is a discussion of the four encounters at the Bissell home and it lays the base before the hardcore perjury and

subornation of perjury and scheme to defraud is discussed in detail.  It is tedious (as if this whole complaint is not) but it lays the ground work for the real fraud and perjury.

1064.    Also, there are so many differing stories and sub stories during the same time frame and subject matter, a concept may be repeated several times so that it can be compared to a different story and again another story from a different angle.  It has been quite a job to get it all in under Federal Rules of Civil Procedure 9(b).  Having said that, this complaint as said before, could use plenty of more editing, but there is simply no more time and this document needs to be filed by April 19, 2021 with the Court.

1065.    The first sexual encounter at the False Accuser Bissell home with Dean was November 2, 2016 (see text messages between False Accuser Bissell/Dean of 11/02/16).  The False Accuser said the first meeting in the Police Report was November 13, 2017 (pg 1, para 1). It gives further credence that Bissell erased her own text messages (Spoliation of evidence is the intentional, reckless, or negligent "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or future litigation.") because the November 2, 2017 and November 13, 2017 rendezvous are clearly in the texts messages between False Accuser and Dean.  No business planning here either.

1066.    Dean was at the False Accuser Bissell home again on November 13, 2016 (see False Accuser Bissell/Dean texts of 11/13/16) – after driving 8 hours from Toronto, Canada in a rental car. November 12, 2016 Dean became a director of ICCRC and Bissell knew this. This was the second encounter at the False Accuser Bissell home for sex.   False Accuser Bissell did not mention the November 13, 2016 rendezvous on direct examination in the Judge Murray 2017 Court (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 11) but then on cross, False Accuser Bissell herself would specifically say in the Judge Murray Court 2017 altogether the encounter was "unmemorable" (See PACS, pg 226) – which means she did not remember the "sex" *or anything else* - but with the Shivas 2019 false pleadings it had all kinds of vivid details about the supposed "business meeting" of November 13, 2016 (See PACS, 225).   In the Police Report it was something different: "Then on November 13, 2016, Mr. Ryan [sic] went to her home in Cedar Grove to have dinner and she claims they started having an affair" (Police report, pg 1, para 1). Then Bissell says something different:

> False Accuser Bissell then states: Defendant Dean and I **again** met at my home in Cedar Grove in November, 2016 at which time we talked about my role with Saga and the marketing needs of the company. Defendant Dean reiterated that he and Klassen wanted me to join the business and provide services relating to marketing and business development. We discussed that I could work as either an independent contractor or employee without having the financial exam series that is required for analysts.  Certification of Plaintiff in Opposition to Motion for Summary judgement, 15 + 16

1067.    So, in the Judge Murray 2017 Court November 13, 2016 it was "unmemorable," and here – nearly two years after the Judge Murray Court, November 13, 2016 is suddenly vivid and all about business to the False accusers. This is material perjury as will be discussed below. Going with 'False Accuser Bissell's 'Judge Murray

2017 Court' version that it was "unmemorable," then there was no business plan and other documents drawn up this occasion either by False Accuser's own account.

1068.    So, there were only two encounters at the False Accuser Bissell home per Dean's text messages in November 2016 and this second meeting that False Accuser Bissell said was "unmemorable" to the Judge Murray 2017 Court all of sudden became memorable to defraud the Court (and the Saga Enterprise and Dean) in Law Division.

1069.    False Accuser Bissell said that the "financial exam series that is required for analysts" was somehow not required for False Accuser Bissell. However, False Accuser Bissell herself sent Dean a text message on February 25, 2017 discussing her "license," among other things to be covered below.  It was only after February 25, 2017, when False Accuser Bissell realized that she would actually have to study for, and pass the exam - Dean had sent her the series 7 study package - False Accuser Bissell did not want to put in the hard study work and tried to find a lazy way out and that is now being exposed with their extortion attempts with Imm defendants.

1070.    On November 13, 2016, False Accuser Bissell was busy texting Dean all of her T.V. appearances and how she was going to make Dean a "legacy" - and Dean did not answer any of these texts because he was sleeping as he had just finished driving from Toronto to Cedar Grove, NJ – an eight-hour drive.  The point being there was no business on this date either at the False Accuser Bissell home, debunking Shivas' falsities. The further point is that False accuser Bissell could not remember this date at all in the Murray 2017 Court and in her 2019 pleading she wrote "November, 2016," and not "November 13, 2017."  The text messages confirm all of this. Again, the Police Report says differently.  No business plan creation.

1071.    On January 9, 2017, False Accuser Bissell did not pick Dean up until 9:20 PM by the commuter train station in Cedar Grove (this was the third sexual encounter and again confirmed in text messages) and this was right after the first Peretz first face-to-face sit down so it was not this occasion either that a business plan or other in depth document was created in the wee hours of the night in between consensual sex – which False Accuser Bissell admits on the TRO and Amended TRO (see below).  False Accusers Bissell & Peretz, and Dean had met at a pub and there was alcohol, and it was late at night – not a business plan creating evening.

1072.    While at the False Accuser Bissell home these supposed "meetings" – which were really consensual sexual encounters – all which took place and started in the bathtub, where False Accuser Bissell herself totally debunks the notions of the creation of a business plan, trading methods, and so on and so forth (see below for some of these items). False Accuser Bissell said herself that Dean – while in the bathtub - talked about hedge funds (and False Accuser Bissell falsely claims that she did not join in the bathtub and sat on the edge of the tub), followed by consensual sex, followed by Dean leaving the next morning. This is what False Accuser Bissell testified to in Judge Murray's 2017 Court room (See PACS, pg 108).

1073.     Can anyone conceive or believe that Dean is "drawing up a business plan" or any other document in the bathtub?  Pen and paper, laptop, bubbles, & body paint? – it is ridiculous notion.  Moreover, there would be no time to draw up a business plan in the late evening, have sex, and then leave the next early morning.  There was time for a little bit of pillow talk and that was it. At any rate, since Dean would not risk electrocuting himself in the bathtub with his laptop, False Accuser Bissell cannot produce this supposed hand-written business plan or otherwise. In the Police Report, Bissell changed this yet again to "he took a bath while she sat outside the tub taking notes about the business….Mrs. Bissell said that their [consensual] encounters were very business-like and not romantic at all" (Police Report, pg 2, para 1).    In reality she was in the tub with Dean giving Dean a "Toe Job" – sucking and licking Dean's toes – Bissell somehow found *that* romantic.  But the sex was not romantic at all (Apologies to the Court for having to read the Truth, the Whole Truth, and Nothing But the Truth).

1074.     The last (consensual) sexual encounter was February 7, 2017, and this too can be found in the text messages.

1075.     There were four consensual sexual encounters at the False Accuser Bissell home and each of them started with the Bathtub. The first one of November 2, 2016 as above, False Accuser Bissell said that Dean took a bath.  On January 9, 2016, False Accuser Bissell said that Dean and False Accuser Bissell took a bath (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 14) and on February 7, 2017 False Accuser Bissell said that Dean wanted to "cleanup" which of course meant to take a bath as Dean (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 17). So, for three out of the four encounters False Accuser Bissell can "remember," involved Dean in the bathtub. Dean states here that False Accuser Bissell was in the bathtub with Dean on each of these occasions.  On the Police Report, Bissell said that the first meeting was on November 13, 2017 and that involved a bath too: "Then on November 13, 2016, Mr. Ryan [sic] went to her home in Cedar grove to have dinner…." In Judge Murray's Court, the False accuser said November 13, 2016 was "unmemorable."

1076.     False Accuser Bissell tried to make it out to Judge Murray that it was somewhat weird that Dean would take a bath and Dean stated it was totally normal for him.  He was a former hockey player and as it gets older his 'old injuries' are catching up to him and he hurts.  The baths help.  This was discussed in the Judge Murray 2017 Court (Exhibit M Part 3 - Sept 28 2017 Transcript – Unredacted, pg 133).

1077.     Of note is that False Accuser Bissell changes her story again in her CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT when she says in para 30: "Defendant Dean then told me that he was going to take a bath and that I should come and meet him in the bedroom." A minor point indeed between "clean up" and "take a bath," but Dean could only say one or the other, and not both – and False Accuser Bissell's testimony/court submission are riddled with these small and large inconsistencies everywhere. In any event, there was a bath on February 7, 2017, and the truth is False Accuser Bissell joined Dean in the bathtub, on each of the four consensual sexual encounters.

1078.    Shivas and False Accuser Bissell et al also state:

> At one such meeting in Cedar Grove, Defendant Dean drew up a business model and presented it to Plaintiff. The document contained the formula used by Saga to select and execute the trades in various markets (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12), 2019

1079.    If this is the case, then False Accusers Bissell and Shivas will have this document – in Dean's own handwriting - ready to go to present to the Court and False accuser Bissell herself can give a trading demonstration and show how it all works.  What a Fraud – Dean neither created this document, nor showed False Accuser Bissell what the trading formula was for the Saga Enterprise trades.

1080.    Creating hedge fund trading models take months and even years, and even then, they are closely guarded secrets and False accusers are claiming that Dean just handed over the formula for a hedge fund. Perhaps men do that to woman that they admire and are *seriously* infatuated with, but Dean was hardly paying attention to False Accuser Bissell the record shows and he demonstrated on May 1, 2017 (see below).  It is just not credible what she claims.

*1081.*    Also, people do not create business plans in an hour or two and Dean was preoccupied with False accuser Bissell in the bathtub (each visit) followed by sex, followed by leaving early the next morning. People also do not hand over the corporate "secret sauce" either – it took Dean ten years of intensive research and development to develop Saga's trading strategy – Dean certainly would not be offering that up for free – this is ridiculous. For False Accuser Bissell et al it is much easier to create a fabricated story of rape and constant threats of re-rape and mass murder (see below) - and Dean apparently handing over the trading formulas that took 10 years to develop - instead of doing the hard work that Dean and Klassen did to create their hedge fund. And since the Police Report was obtained on March 18, 2021, Bissell herself forecloses on any possibility of threats of break and enter, re-rape (like the last time), and mass murder as "Mrs. Bissell said that they never spoke of that night again…." (Police Report, pg 2, para 3).  *This is a key point that will come up over and over again herein as Bissell claims that night was brought up again and again each and every time that she and Dean spoke on the phone and face to face.*

1082.    Then False accuser Bissell and Shivas et al change their story again on their perjurious false notions. False accuser Bissell states (see link below):

> "Defendant Dean contacted me and asked to meet with me at my home in Cedar Grove. The stated purpose of the meeting was to discuss the business and my joining as either an employee or independent contractor. On November 2, 2016, defendant Dean came to my house in Cedar Grove. We had dinner and had romantic relations. During that meeting, defendant Dean again spoke about the business and how my skill set could benefit Saga. **Defendant Dean explained to me in great detail the operating model for Saga's business. This included a description of the methods he used to make trades and the types of clients he hoped to service through Saga.** He also requested that I draw up a job description for a role as director of marketing for Saga" (Certification of Plaintiff in opposition for summary judgement, 9, 10, 11 & 12).

https://www.dropbox.com/s/rlnzvihli046l7p/Exhibit%2027%20-
%20Certification%20Of%20Plaintiff%20In%20Opposition%20To%20Motion%20For%20Summary%20Jud
gment%20Signature%20of%20Ms.%20Bissell.pdf?dl=0

1083.      So, False Accuser Bissell here, in her perjury is stating that Dean "explained to me in great detail the
operating model for Saga's business. This included a description of the methods he used to make trades and the
types of clients he hoped to service through Saga." As above, Dean was in the bathtub with False Accuser Bissell
on November 2, 2016 and then he left early the next morning. Again, in the PACS, pg 108, False Accuser Bissell
herself says it was sex, sleep, then Dean left the next morning – no business.  Clear and material perjury on the
part of False Accuser Bissell.

1084.      As a relevant aside, if False Accuser Bissell had the "Keys to Saga," in the form of the business model,
and trading formula, and so on and so forth, then why would False Accuser Bissell need to get a "job" or a
"contract" with Saga when all she had to do was take the formula to her family member in the hedge fund
industry, Mr. Craig Peretz? False Accuser Bissell could have monetized the formula quite quickly with Peretz'
contacts and infrastructure in place at Sierra Global Capital LLC – which was making a paltry long term return of
around 7% whereas and had between $60,000,000 - $300,000,000 in assets depending on the year and return.
Saga on the other hand was trending towards 25% - even after the first False accuser Attack and it was only a
matter of time until the Saga Enterprise was making tens of millions of dollars a quarter. False accuser Bissell
could have taken the "formula" and sold it to any number of suiters if she had it – she does not. The bottom line
is that False accuser Bissell did not have the Saga Enterprise formula and False Accuser is clueless as to how
Dean trades stocks, and False Accuser Bissell could not even begin to articulate it.  Again, Plaintiff(s) will insist
that she give a full demonstration of the Saga Enterprise Trading Model she claims to have and then Dean will do
the demonstration right after for the Jury.

1085.      Under New York Common law and under NY's Enterprise Corruption statute, Sierra Global Management
LLC ("Sierra") did commit tortious interference with respect to prospective economic advantage and tortious
interference with contractual relations generally for all Saga Enterprise clients and/or prospective clients now
and forever.  The Saga Enterprise clearly had established itself as an emerging hedge fund and had a "reasonable
expectation of economic advantage."  Here the Saga Enterprise, while being attacked in 2017 by False Accusers,
and still was tracking on a return 3.5 times that of Sierra's return of some 7%, more or less. What next happened
through and by Mr. Craig Peretz, COO of Sierra was that he allowed and schemed with the False Accusers to
fraudulently interfere the Saga Enterprise and concealed the scheme to defraud with the *other* False Accusers.
This resulted in directly affecting the Saga Enterprise's prospective gain as a direct result of the injuries caused
to Dean, Klassen, and the Saga Enterprise, and all of it was done without justification nor excuse.

1086.     In short, it is a scheme to defraud and a competitive injury and indeed the scheme was designed to be, in part, an economic injury that had a negative effect on competition and violated the Commerce Clause et al.

1087.     What's more, False Accuser Bissell invited Dean over to her house in Cedar Grove and the purpose of the encounter was for sex.  Period.  See text messages of November 2, 2016 at 2:17 PM where Dean asks False accuser Bissell "So what is the plan for later?"  A few texts later False Accuser Bissell is giving Dean the address to her home. False accuser Bissell invited Dean, and not the other way around.

1088.     This is hardly the message from a potential recruit to her potential boss – here is my address for dinner and sex so said Bissell.  This is clearly the approach for an adult relationship.

1089.     False Accuser Bissell would change her story again with when the "job description" was delivered:

> During one meeting at her home, Plaintiff shared with Defendant Dean the job description she prepared at his request, for her prospective services to be performed for Saga (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1090.     In the PACS, pg 240 – 242, False Accuser Bissell would then say that she handed the job description to Dean and Klassen on two separate occasions. The job description said: "Sales and Marketing Director" and to do this "job," "contract," "analyst," "gig," or any of the other terms False Accuser Bissell assigned to it but the bottom line is that it required the series 7 license (or equivalent) and the resolution of that issue.  To do otherwise, would be securities fraud and/or violation if she was indeed was to receive a "percentage" per False accuser's February 25, 2017 text to Dean.

1091.     Again, in Judge Murray's 2017 Court Room False accuser Bissell left out these "detail[s]" of a "business plan," "operating model," "description of the methods he used to make trades" and the "types of clients he hoped to service through Saga" (See PACS, pg 108) for what False Accuser Bissell testified in Judge Murray's 2017 Court Room with what occurred that night of November 2, 2016 was something else and it did not include "business plans," "operating models," "trading methods," and "job descriptions." It included dinner, bathtubs, consensual sex, and Dean departing the next early morning.  She fabricated these new lies for the 2019 tort court – to go along with the fabricated employee, harassment, and discrimination claims.

1092.     Additionally, in the tort Court Bissell is actually stating that she is not only working for the company but creating correspondence for Mr. Klassen; in the Police Report there is not nary a note about Klassen and in Judge Murray's Court Klassen's name barely came up and he was not a defendant nor a witness nor even attended the proceedings – and definitely had nothing to do with Dean then lawyer Palumbo's private investor performing pre-hearing due diligence.

1093.     This is yet another example of material and proven perjury and subornation of perjury on the part of False accusers Bissell and Shivas et al to deceive Law Division and gain access to their "second (false) bite at the apple."

231

1094.      Above, this is just one example of where False accuser Bissell and her own attorneys cannot keep their own stories straight. Above it was a "business plan," and then it became "great detail the operating model," and then it was it "included a description of the methods he used to make the trades" – but no "formula."  The furthest Ms. Bissell got to see of a business plan was Dean drawing triangles in the bubbles in the bath.

1095.      The TRO and Amended TRO say the stated purpose of the "meeting(s)" was for sex.  The 2017 TRO says:

"PLAINTIFF AND DEFENDANT HAD A CONSENSUAL RELATIONSHIP WHICH INVOLVED CONSENSUAL INTERCOURSE ON TWO SEPARATE OCCASIONS WHERE A CONDOM WAS UTILIZED."

1096.      After the text messages were received from False Accusers Bissell, Flanagan and Barreiro, the Amended TRO was plotted out and it says (and Shivas did not deny it):

"PLA AND DEF HAD A CONSENSUAL RELATIONSHIP WHICH INVOLVED CONSENSUAL INTERCOURSE ON AT LEAST TWO OCCASIONS WHERE A CONDOM WAS UTILIZED."

1097.      In the TRO it was sex on "two separate occasions" and after receiving the text messages it was "at least" two separate occasions but in Judge Murray's Court it was "unmemorable," the November 13, 2016 rendezvous. We will learn that to Judge Callahan that False Accuser Bissell claimed she was seeing a "Councilor" to help False Accuser Bissell remember and that was a sham as well (see below) in many sections.  The Police Report states that Bissell was going to go to Florida and start seeing a Councilor so at the earliest to see a "Councilor" was August 10, 2017 (See Police report, pg 2, para 1 with respect to 'therapy.')

**THE KITCHEN VIDEO:**

1098.      In False Accuser Shivas' latest pleadings he whines that this video has taken four years to get; Dean Counters that had he had this police report 4 years ago this entire sham would have been over and never would have popped up again.

1099.      Shivas writes in 2019, [referring to the night of February 7, 2017, (the false rape report date)] "As she cooked dinner for him, defendant Dean was holding up his phone as if he were making a video and said to Plaintiff:

"Lisa, you're never going to sue me, right?" (Plaintiff Cert., ¶ 31) (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, PG 5, Para 5). 2019

1100.      Shivas leaves out the fact that False Accuser Bissell in her certification ¶ 31 also says:

"I was shocked and had no idea why he would say that to me."

1101.      What False Accusers Bissell and Shivas et al further leave out is that during this exchange Dean had first asked to False Accuser Bissell to tell the truth and that he wanted her to sign an acknowledgement that it was "Sex First" and "Business Second," which False Accuser Bissell refused, but then on February 25, 2017 False Accuser Bissell stated in texts "…before we start doing business…,"  The possibility that a business relationship could be formed with False Accuser Bissell and Peretz began to complicate the sexual/dating relationship – and

Dean was looking to clarify and document this. He also wanted to start to emphasis the business relationship and de-emphasis the sexual relationship.

1102.     So, Dean pulled out his phone and recorded False Accuser Bissell and she admitted that it was "Sex First" and "Business Second." False Accuser Bissell knew precisely what the conversation was about, as they were already talking about it, and it was no surprise to False Accuser. Dean never said "Turn around," he say "Hey you. Hey you. We had a personal relationship before a business relationship…tell the truth," to which False Accuser Bissell responded "yeah."

1103.     Shivas and False Accuser Bissell continue with:

"During dinner at her home, defendant Dean recorded a video of Plaintiff in her kitchen. He asked her "Would you ever sue me?" and he recorded her confused response to the question that had no context at the time (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1104.     Of course, what False Accusers Bissell and Shivas et al leave out is the fact that Dean first said that he wanted to clarify and document the true status of the dating relationship prior to moving into a potential business relationship as well – Dean wanted False Accuser Bissell to concede that it was "Sex First" and "Business Second," and not the other way around. False Accuser Bissell was not confused. She knew precisely what the conversation was all about. She even said that she was not going to sue Dean. She was happy and playful about the whole thing and even stuck her face in the camera with a big smile….and then turned around, walked away, and then kept cooking.

1105.     False Accuser Bissell and Shivas then change their story again with this by saying that False Accuser Bissell and Dean were "eating the dinner":

"Once at Plaintiff's house and eating the dinner that had been prepared by Plaintiff Dean took out his cell phone and held it up as if he was video recording. He asked Plaintiff if she was ever going to sue him. Plaintiff was confused and taken aback by defendant Dean's statement which lacked context and appeared to unrelated to any topic that they had been discussing over dinner." Civil Complaint, February 5, 2019, para 27-28.

1106.     False Accuser Bissell says that she and Dean were already eating Dinner and that is not true. It seems to be a minor point, but this is a discussion about a woman who had six months to think about the night of a supposed violent anal rape that would have turned her world into upheaval should be able to remember these details. Dean remembers all of the details with Imm defendants and false accusers alike as he has all of the documents and is able to reconstruct the scheme(s) to defraud.

1107.     The fact of the matter is that it is Dean's life that has been turned into the upheaval and he is the one having to reconstruct all of these details to prove False Accuser Bissell is a perjurious liar and her False Accuser attorneys are in subornation of perjury league with her. Each inconsistency lends more weight to the damning easy-to-prove perjury all covered herein and then points the connection between the False Accusers and the Imm defendants.

1108.    At any rate, Dean was already talking to False Accuser Bissell and talking about her signing an acknowledgement stating that she should admit that it was "Sex First" and "Business Second" and False Accuser Bissell said "stop" as if she was annoyed at it, but definitely not surprised and taken aback by it.

1109.    Dean had told Judge Murray that he inadvertently erased this video in the summer of 2017 – he had not heard from False Accuser Bissell in quite some time by then – per False Accuser Bissell's May 1, 2017 "radio silence" text (see below in many sections).

1110.    Dean nearly erased his text messages too – but he did not. He literally heard a voice in the room mid-July-ish 2017 saying "don't delete those - you are going to need them." Dean heeded the message and attributes it to God sending an Angel to do His work; False accusers and Imm defendants can laugh all they want – it did happen. False accusers are coached by the "the other guy."   After reading the text messages – ask where would Dean be without his text messages and *why* does Bissell not have her text messages. Dean is not embarrassed to say it nor that he believes he was totally protected that day and that this whole process is for some greater good.  Dean likes his cards he is holding in this Evil Game False Accusers and Imm defendants started.

1111.    Back to Bissell's kitchen February 7, 2017, for this 'grievous wrong' of taking video of Bissell and Dean trying to protect himself from the horror stories that he had heard from other men being exploited by women in legal proceedings, months later Dean would find himself being falsely accused by False Accusers Bissell, Flanagan, and Barreiro of GG of the most heinous things where they left virtually no area untouched by their provable perjurious and subornation of perjury falsities that are all coming up below. It was the worst horror story Dean had ever heard of and now he was the main character being falsely accused.

1112.    After reading this entire complaint consider whether or not you have even heard of a worse false accusation of rape et al that was proven utterly false.

1113.    It is important from this point on to keep what attorney was committing subornation of perjury for the False Accuser Bissell in what time period and under what sub-association of fact for the False Accusers:

     i.    2017 – Flanagan and Barreiro of GG (Greenbaum, Rowe, Smith, and Davis LLP)
     ii.   2019-2020 in cases ESX – L – 984 – 19, Family Court, and 2:20 – Shivas, Bell, Laskiewicz of BS (Bell & Shivas, P.C.)
     iii.  2019-2020 in 2:19 (Flanagan, Barreiro, Adams, Vaccaro of GG)

**FALSE ACCUSER BISSELL'S CHANGING FABRICATIONS ABOUT "JOBS," "RUIN [HER] FAMILY" AND "INDUSTRY."**

1114.    Shivas and False Accuser Bissell et al continue with:

After the assault on February 7, 2017, Defendant Dean threatened Plaintiff that if she reported the conduct, he would ruin her career and family (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 13).

1115.    These supposed threats about "family" did not make it into the TRO nor the Amended TRO nor did the threats about "mass murder."  See PACS, Exhibits 4 & 5.  Nor did the threat of "ruin her career and family" make it onto the police report.  The police report stated merely: "…she will never work for him."

1116.     The false notions about "ruin [her] career," also did not make it into the TRO either as it was about "no longer have a job with his company," which is "future tense." False Accuser Barreiro and False Accuser Bissell confirmed this later when Barreiro asks False Accuser Bissell about "potential business" (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 19).   Facts matter and all of these attorneys in the False Accusers Association-In-Fact have well, "flexible facts."

1117.     Nor did the notion of Dean saying that he would "ruin [her] family" make it into the Amended TRO as False Accuser Bissell falsely said: "HE WOULD MAKE SURE THAT SHE DID NOT WORK FOR HIS COMPANY."

1118.      Side note: the false notion with respect to "ruin [her] family" did not make it into the PACS either 1 + year ago when it was created, and even subsequently updated.  New evidence of False Accuser Bissell's ever-changing stories have been found along the way as her stories are compared from all the different angles that she fabricates.   There is just so much of it as Dean et al are criminally coerced and extorted and have to spend all of their time (forced labor) dealing with False Accusers perjury, subornation of perjury, abuse of legal process et al.

1119.     Supposed constant Mass Murder threats by Dean were sprung on him as a surprise to Dean, and Dean's lawyer, at the actual Judge Murray 2017 Court on September 28, 2017 and constant threats of mass murder was one of the central themes of the day (see below for many references to this mass murder threat). This was an effort by False Accusers Bissell and Barreiro to hide this escalation of supposed violence, and surprise, to shock the Court (and Dean), and draw away from the exculpatory text messages to Dean that he had recently presented. False Accuser Bissell tried to weaponize her "Spin Doctor" PR skills, with False Accuser Barreiro's suborning of perjury assistance, to make it all about a "credibility contest," and they lost.  Judge Murray zeroed in on False Accuser Bissell's credibility issues in Judgement on September 29, 2017. Again, the entire Judgement should be read for context here: Exhibit N - Sept 29 2017 Transcript – Unredacted.

1120.     False Accuser Bissell and her attorneys in the Judge Murray 2017 Court skipped that Dean supposedly said he would "ruin [her] family" after the supposed rape and continuous threats. Instead, it was False Accuser Bissell herself giving the false notion that she herself said that her family and everything was ruined because of the threats, and this was the reason that she was getting a divorce from Mr. Bissell (See PACS, pg 255). What? In the Police Report, pg 2, para 3, it states: "As time went on, business associates discovered things weren't adding up with Mr. Dean, and it was discovered he wasn't a credible businessman. When Mrs. Bissell discovered this, she became withdrawn and depressed. She contemplated suicide and divorce to get out the situation."

1121.     This goes to the very heart of what Plaintiff(s) have been saying all along and it is the PACS where one day Bissell is all happy and chipper but when Dean tells her (February 7, 2017) conversation with video that it is less sex and more hedge funds and that she is not going to be the next Mrs. Dean she get depressed.  Because of that Ms. Bissell sold Dean out to the Imm defendants and concocted this entire scheme to defraud and get Dean

tossed into prison for the rest of Dean's life for revenge and extortion profit and a steady payment plan from the Imm defendants.

1122.    Plaintiff(s) are missing 1 international hedge fund, their careers, and thetheir entire futures because of this Evil Stunt by False Accusers being financed by Imm defendants. There has been two attempts at murder (the TRO and Amended TRO) for the prosecutor was surely monitoring this process and had Dean lost in the Judge Murray Court 2017 things would have most assuredly been must worse for Dean.

1123.    Total RICO and state violations and Plaintiff(s) reincorporate each and every Predicate Act described herein and apply it to the above and what comes next.

1124.    Nearly everything that is shown to be provable perjury here is in the False Accusers Bissell and Barreiro first instance of "testimony" (See Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pgs 3 – 26), where it was so rehearsed and obvious that there was perjury and subornation of perjury going on. The "Happy Valentines' Day" volley back and forth is a prominent example (see below).

1125.    What's more, the notion of "ruin her family" is still far different than the supposed constant threats of "mass murder" that False Accuser Bissell perjured herself with in Judge Murray's 2017 Court room that each and every time that False Accuser Bissell and Dean spoke face to face and on the phone Dean threatened her with the threat of break and enter into her home, re-rape, then murder of her, her family, and her children as False Accuser Bissell herself use the words 'fuck [her] up' and 'fuck up her family' that would have resulted in the death of her children (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 19).

1126.    False Accuser Bissell admitted to Judge Murray that Dean had never met her family nor children (See PACS, pg 120).

1127.    To "ruin her family," still implies that everyone would still be alive.  With respect to the "ruin her career," this too differs from the TRO and Amended TRO – as these docs with respect to working were about a "job" with Saga. See PACS, Exhibits 4 & 5. In the Police Report, there were no mention of these supposed threats and instead just simply "she was done with his company and wanted nothing to do with him," for the reason that "he wasn't a credible businessman."

1128.    In short, False Accuser Bissell with respect to her family has the different meaning  of "get you," "fuck you up and them [family] up," "ruin your family," and "mass murder." (See PACS, pgs 33 – 40).

1129.    With respect to the job, it went from "jobs" to "industry" to "hedge fund industry," to "ruin Bissell's career," to "mass murder." (See PACS, pg 33 - 40). There are more iterations immediately below. Of note is that in the TRO and Amended TRO it was about "jobs," but in 2019 when Shivas drafted the (false) civil complaint it expanded by using "industry" and "hedge fund Industry."

1130.    This in turn morphed into (continued escalation) of supposed constant and unrelenting False Threats during every phone call and every face-to-face conversation – yes, False Accuser Bissell stated every time (See

PACS, pg 34-37 – and - PACS, pg 148-151) of re-rape during the commission of a break in and threats of mass murder in Judge Murray's 2017 Court.

**"FACE TO FACE" MEETINGS AND "PHONE CALLS"**

1131.        The Face-to-Face Meetings and "Phone Calls" are dealt in the PACS in detail here: "**PACS, pg 161-163, pg 168 – 173," "PACS, pg 178-183," "PACS, Dean Verizon phone records, Exhibit 14.**"  Note Dean's phone records between False Accuser Bissell and Dean are denoted by a handwritten ( * ) [an asterisk] beside the item.  Also note in the phone records between the dates of March 10, 2017 and April 9, 2017 bill it clearly shows Dean is [roaming] in Hong Kong and Philippines.  There is the corresponding blackout in Text messages where there is no communication with False Accuser Bissell and Dean (between March 10, 2017 to April 21, 2017), and there are Dean and Klassen's Airline tickets from the United States to Hong Kong (PACS, Exhibit 11).  That is 42 days of no text messages between the False Accuser and Dean.

1132.        That leaves February 8, 2017 until March 9, 2017 and a bit of time in late between April 26, 2017 and April 28, 2017 where there were the CBC Interview phone calls (corresponding with text messages as well), for all of these threats, complaints, and so on and so forth to supposedly happen.  Did the Court get that?  That is 31 days total. Literally, just over a month for Dean to do all of these horrible threats to Ms. False Accuser Bissell because the rest of the time Dean is not even in the United States to do any of the "face-to-face" meetings and there are no phone calls to make these threats.  **Just over a month for False Accuser Bissell to complain to Dean and Klassen.  2 phone calls from the period of February 8, 2017 to April 25, 2017 which is 77 days or eleven weeks. 2 Face to Face meetings from February 8, 2017 to May 1, 2017 is 83 days. Hardly conducive to constant threats and constant complaints nor Bissell working for Saga.**

1133.        **This is a scheme to defraud two hedge fund managers and destroy the Saga Enterprise with the means of using RICO Predicate Activity.**

1134.        **2 phone calls and 2 face to face meetings from February 8, 2017 to April 25, 2017 is not an environment where "constant threats" and "constant complaints" can exist.  Let's see about these 4 items specifically and debunk those as well:**

    A.  At the Peretz conference on March 2, 2017 False Accuser Bissell said that Dean said she "looked pretty in her dress" and nothing else. False Accuser Bissell said she said nothing back  (Normal for Dean to say this as in TRO False Accuser Bissell is claiming Dean is her "boyfriend" (See PACS, pg 39).

    B.  At the Hedge Fund Conference March 9, 2017, False Accuser Bissell claimed that Dean "threatened her to go prior…that included going to the conference" but there were no phone calls or face to face meetings for this to take place.  Dean's lawyer caught False Accuser Bissell in the lie in Judge Murray's Court room.  In Law Division the hedge fund conference became an "invite" then "request" (See PACS, pg 141-144 and PACS, 37 – 38).

C.  The February 27, 2017 Monday morning phone call at 7:05 AM where False Accuser Bissell called Dean. This was after an unclaimed 'booty call,' the same morning where False Accuser Bissell stated "obviously we did not connect last night...." in text messages. After the receipt of the text messages that False Accuser Bissell thought destroyed, on the Amened TRO, they created this fraudulent story about 'garage codes,' as cover for the fact that False Accuser Bissell was asking for more sex the night of February 26, 2017.  Compare it with the night of April 25, 2017, when Dean returned from Canada to New York (and False Accuser Bissell said she was sleeping (and flipped it into "I refused.") (See PACS, 33, 161-168, and paras 125, 127, 197, 199, 303, 373, 409, & 413 herein). There is a further discussion about garage codes below that is mighty relevant to all of this.

D.  On March 3, 2017, False Accuser Bissell in texts stated "We should talk," and there was a short 3 minute phone call.  False Accuser Bissell was trying to take the relationship the next level and Dean was gently but firmly not going to. The next day False Accuser Bissell is texting Dean a prayer <emoji> (See PACS, 162, 168 & 180).  Keep in mind that this is was before Dean even had the hedge fund conference ticket that would not come until March 6, 2017 – and False Accuser Bissell was worried that Dean was going away for six weeks.

1135.    This is the same period where all of the supposed sex harassment and discrimination took place but the number of face-to-face meetings are accounted for and debunked.  Also, this is the time that False Accuser Bissell is claiming to be constantly complaining to Dean and Klassen (Klassen lives in Western Canada) – see CERTIFICATION OF KEVIN KLASSEN, dated February 1, 2021 in ESX – L – 984 - 19, for Klassen has even more limited contact with False Accuser Bissell than Dean. In the Police Report, there is not nary a note about even one complaint about sex harassment nor discrimination. See below for Klassen certifications.

1136.    February 8, 2017 until May 1, 2017 Dean would see False Accuser Bissell exactly twice: once at the hedge fund conference (see above) and once at the Peretz event (See Face-to-Face Meetings (which also contains hedge fund event). Both very public places.  Dean would be on the phone with False Accuser Bissell during this time as well exactly twice from February 8, 2017 – April 25, 2017.

1137.    When one reads the text messages it debunks all of Bissell's notions and that was the reason the False Accusers created the amended TRO story – as the False Accusers needed to deliver "Dean's head on a silver platter" for the Imm defendants. Imm defendants were "paying for a service," and they demanded results. Bissell need to make the story so outrageous to try to take Judge Murray's attention away from the text messages. Thank God for Judge Murray's wisdom.

1138.    False Accuser Bissell would say that at the Peretz conference that Dean just told her she looked pretty in her dress – that is not a threat. This was normal as False Accuser Bissell herself claimed on the TRO (see above) that Dean was her "boyfriend." At the hedge fund conference Dean arrived late and left early as he had just flown in from Canada after testifying at the Parliament of Canada in Ottawa – another connection to the Imm defendants. False Accuser Bissell stayed to party with Dean's friends at the open bar and sent a picture in text messages to Dean. Dean never physically saw False Accuser Bissell again until the FRO hearing August 17, 2017.

1139.  So, if Dean did not threaten False Accuser Bissell at the Peretz event because he only said "you look pretty in your dress," a normal thing to say since Dean, according to False Accuser Bissell was her "boyfriend" in the TRO and False Accuser Bissell said in front of Judge Murray "I didn't say anything," (See PACS, pg 180) then this rules out Threats to False Accuser Bissell and Complaints by False Accuser Bissell to Dean that day.

1140.  Remember that False Accuser Bissell claims that Dean threatened her every time they talked on the phone and face-to-face (PACS, pgs 33- 47). Since Dean did not threaten False Accuser Bissell on this occasion it is perjury and constitutes exactly ½ of the face-to-face meetings despite False Accusers Bissell, Flanagan, Barreiro and Shivas et al making it out to be a whole lot more meetings that it was.   It was not.  Note: all of this was largely written before recipe to the Police Report so now it is 100% perjury and the threats are debunked.

1141.  Likewise, at the Hedge Fund Conference on March 9, 2017, False Accuser Bissell as far as Dean can tell has not mentioned March 9, 2017 as a "sex harassment" or "sex discrimination" day.

1142.  There was a February 27, 2017 7:05 AM phone call for phone sex after the previous evening's "unclaimed Booty call" and False Accuser Bissell's text of "obviously we did not connect…" on February 27, 2017 at 1:36 AM, that False Accuser Bissell later flipped into false threats about Dean having the "codes" to her "garage."

1143.  The "garage codes" perjury were not on the TRO nor in the police report and then only went on the Amended TRO when False Accusers Bissell, Flanagan, and Barreiro saw that False Accuser Bissell was pinning away for more sex on February 27, 2017 to Dean and invented this story. The False Accusers did have the police report where it clearly said that Bissell and Dean never spoke of the supposed February 7, 2017 incident again but on the Amended TRO, to Judge Callahan and Judge Murray, False Accusers changed their perjurious fabricated story from "never again" to "each and every time" Bissell spoke with Dean face to face and in person that he was going to break into her home, and re-rape Mr. Bissell and no one would 'hear her scream 'like the last time' and then followed by grisly murder of her and her *children*.  Pure Evil.

1144.  On the police report, the false accuser said that 'they' [Bissell and Dean] never spoke about the night of February 7, 2017 ever again but constant threats of "re-rape" and "just like last time" certainly qualify as a direct and proximate reference to the night of February 7, 2017. Utter and total perjury and subornation of perjury at an attempt to defraud a hedge fund in violation of the Commerce Clause. Think of the depravity of it all.  Who in the hell uses their *own children* as prop to commit this level of blatant extortion?

1145.  There was a short phone call after False Accuser Bissell confided in Dean "we should talk" on March 3, 2017, followed by text message prayers the next day from False Accuser Bissell to Dean.  Details and proof of all of this is again are in "**PACS, pg 161-163, pg 168 – 173," "PACS, pg 178-183," "PACS, Dean Verizon phone records, Exhibit 14.**"

1146.      False Accuser Bissell made it seem like Dean was pursuing her in nefarious ways, the records, the facts, and now Ms. Bissell thanks to the receipt of the near 4 year old police report - say differently, but False Accusers Bissell and Shivas knew this all along as well as Flanagan and Barreiro et al because it is all verified by the text messages and police report.

1147.      False Accusers Flanagan, Barreiro, Adams, and Vaccaro and GG have some serious Obstruction of Justice Issues that are now proven in 2:19 and they will be brought into this claim forthwith.  They have a Fraud on the Court issue pending right now and the Police Report and letter is on its way to Federal Judge Arleo in USDC NJ at this moment.

1148.      Because it is the text messages and because False Accusers Barreiro, Flanagan, and Shivas and their crew did what they did, it converts to definite conspiracy to Suborn Perjury on this one point alone as well – especially since they could not keep their stories straight - and this extends to all defendants. False Accuser Bissell's 2017 lawyers knew what False Accuser Bissell was going to say on the stand – they practiced the perjury and subornation of perjury, and it was obvious in the things like what "Happy Valentines' Day" meant (see below). Shivas' Suborning of Perjury is equally Evil, as it was so obviously perjurious when his and False Accuser Bissell's 2019 stories were so contrary to False Accuser Bissell's 2017 perjurious testimony.   All of it was meant to be a scheme to defraud and schemes are prohibited – especially in Court.

**FALSE ACCUSER BISSELL'S CHANGES OF THE FALSE FREQUENCY OF THE SUPPOSED THREATS**

1149.      The Police Report does not say that there were any "threats" other that "you will never work for [Dean]." That was false as well since Bissell left off the fact that Dean and mainly Klassen and Peretz (False Accuser's Agent) kept working together well into July 2017 trying to forge a business relationship. False Accuser Bissell would later flip – flop on this one point as well.  More about this later.

1150.      Then, according to False Accuser Bissell there were at best three supposed threats on February 7, 2017, February 8, 2017, and then again on February 27, 2017 with the "garage code" perjury (see below). In Judge Murray's Court it morphed into constant threats, each and every time, that False Accuser Bissell and Dean spoke face to face or on the phone.  It also morphed into constant threats about Dean breaking into her home, re-rape (just like last time), and then mass murder including False Accuser Bissell, her family, and *her children* (See PACS, pg 30-42) every time False Accuser Bissell and Dean spoke face-to-face and on the phone.  The "garage door codes" perjury was also interjected into this (see below for discussion(s) on "garage door codes" on February 27, 2017).

1151.      At any rate, in the PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12, False Accuser Bissell falsely states that it was a threat about "ruin her career and family." In the end, it is Dean's career that has been truly ruined by all of the perjurious criminality of False Accusers Bissell and Shivas et al; the

text messages are the true record of what happened and did not happen – not False Accuser Bissell et al's now 6th or 7th fabricated story and what False Accuser Bissell falsely claims simply did not happen. It is literally a blur at this point and a rainbow in the dark propagated by false light, and thus the voluminous writings to untangle it all.

**FALSE ACCUSER BISSELL USES FALSE CLAIMS OF THREATS THAT IRONICALLY ARE THE ELEMENTS OF ATTEMPTED MURDER, EXTORTION & CRIMINAL COERCION**

1152.    False Accusers have projected upon Dean, Klassen, and the Saga Enterprise, all of the falsities that they themselves have committed.  There is no reason to believe that they did not intend to Murder Dean. There is no reason to believe that all of this will stop.  There is no reason to believe that all of this criminality will not stop long after with other victims unless Justice stops it.

1153.    It is the Ultimate in Spin Doctor Mentality that False Accuser Bissell persists in using lies stating that she was (falsely) threatened but ironically it is "threats" that are the elements that constitute a concrete step towards Murder, Extortion and Criminal Coercion – and indeed nearly all of the other Predicate Acts mentioned throughout this instant case.

1154.    There was no chance for all of these threats from Dean to False Accuser Bissell to even happen because Dean and Klassen were out of the United States for more than ½ the time in question and while in the United States during the time in question (February 8, 2017 to May 1, 2017) there were only two phone calls and two face to face meetings, and it is all supported by the Record and the Evidence. What's more, the facts surrounding the CBC Interview and the "last phone call" obliterate False Accusers Bissell and Shivas' entire fraud with respect to her "work related claims." (See below for CBC Interview and "BISSELL'S FALSE CLAIMS THAT SHE SAYS SHE WOULD "NO LONGER COMMUNICATE WITH DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION," AND SO ON AND SO FORTH ARE FALSE BECAUSE THE PHONE CALL NEVER TOOK PLACE."

1155.    By February 7, 2017 and there was no business yet – it was all preliminary meetings with Peretz in January 2017 and the institutional meeting with Peretz and his investor group still would not happen until March 2, 2017.

1156.    False Accuser Bissell continues on with this as well:

On February 7, 2017, Dean contacted Plaintiff and asked her to pick him up from the Newark Airport, which she did (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1157.    This is a ½ truth as the text messages of 2/7/2017 reveal at 3:37 PM. Dean contacted False Accuser Bissell and did not get an immediate answer and then False Accuser Bissell came back with: "you can't ring my doorbell and then run away…."

1158.    It is yet another Misrepresentation to the Court that False Accuser Bissell and Shivas have made when the text messages show the entire context of really what happened. Each and every falsehood adds to the total weight of the Evidence in Dean's favor.

241

**THE FALSIFIED BLOODY TOWEL**

1159.      There was the supposed "Bloody Towel" testimony intended to shock Judge Murray in 2017, but then, on cross examination, False Accuser Bissell had conveniently destroyed/not kept this supposedly damning DNA evidence (See PACS, pg 122). Read: Fabrication of Evidence and Evidence Spoilation and violation of NJ RICO on these points. "No Condom used" during false rape but was reported for consensual sex (See TRO and Amended TRO, PACS, Exhibits, 4 and 5). It is of note that just before bringing up the notion of the "bloody towel," in describing the false rape False Accuser Bissell pretended to cry hysterically on the stand.  Dean will enter into Evidence some of False Accuser Bissell's "actress" skills for the Jury to Judge False Accuser Bissell's "credibility," but also her "Fraud on the Court," and how much she practiced her scheme with False Accusers Flanagan, Barreiro, and Shivas.

1160.      Think as well to make a "bloody towel" requires a lot of blood which requires more than a "little cut" in the flesh.

**DEAN'S PRE-EXISTING MEDICAL CONDITION**

1161.      Unknown to False Accuser Bissell at the time and until the September 28, 2017 hearing, Dean has a long-standing medical condition with his penis which ruled out forced, unlubricated (consensual and/or violent) anal sex (and definitely unlubricated anal rape - see Dean Medical reports, 2:20-cv-07393-MCA-LDW ("2:20"), interrogatories, and PACS pg 186). See interrogatories link and find Dean medical file and a whole pile of other documents including 2:20:

https://www.dropbox.com/sh/c36y6d2oe2lis60/AAABIO5zQranupjO70jjMkdPa?dl=0

1162.      That Dean has to expose this to the world is also part of the serious damages that all defendants have caused and it will be a matter for the Jury to decide how much punitive damages to make defendants pay; that being said if this keeps Dean out of prison for the rest of his life (or puts to rest any doubt that what Bissell claims happened to her 'anus,' then Dean has medical records. False Accusers before 09/28/17 had no idea that Dean had this condition until after they sprung their false anal rape story in Open Court. Bissell on the police report stated the she began to bleed from her 'anus' two months after the (false) rape but after hearing about Dean's medical condition it somehow slipped false accusers' minds to bring up this.

1163.      In any event, if False Accuser Bissell was bleeding from her anus (and especially so at the level of violence to make her supposedly bleed some two plus month later), then Dean would have bled to death from his penis injury, as has been his understanding from the doctors with respect to his pre-existing condition with his penis.

1164.      False Accuser Barreiro even tried to make the notion that was no difference between vaginal sex and anal sex – or at least objected to it.

1165.    Judge Murray zeroed in on the notion of forceable anal sex was the issue and understood the difference (Exhibit M Part 3 - Sept 28 2017 Transcript – Unredacted, pg 153-154). On the Police Report, Bissell said that after some 2 months of the February 7, 2017 supposed incident that "on April 10 [2017], she said she "began to bleed from her rectum again" (Police Report, pg 3, para 1).  Bissell admitted in the Judge Murray Court (September 28, 2017) that after February 7, 2017 she sought no medical help whatsoever and again (See PACS, 137 – 138) in the Police Report for the supposed April issue it says "she did not seek treatment from a doctor" (Police Report, pg 3, para 1) either.  Bissell also declined the DVRT services (Police Report, pg 3, para 2).

1166.    False Accuser Bissell also said she sought no medical treatment by stating she did not call anybody (See PACS, 137 – 138) (and Dean sought no medical treatment immediately either after February 7, 2017 for his penis anywhere) and Judge Murray made a list of all of the things that were absent from False Accuser Bissell in her utter lack of evidence of the (false) "sexual assault" (See PACS, pg 26-27 and See PACS, Exhibit 'N', pg 12) - that were not before the Court - that one might expect from a violent rape victim.

1167.    Now is a good time to remind the Court that it is Dean who has provided nearly all of the Evidence and all False Accusers have are changing stories.

**FALSE ACCUSER BISSELL MISSING HER OWN TEXT MESSAGES WITH DEAN – THIS IS FRAUDULENT CONCEALMENT OR WORSE, EVIDENCE DESTRUCTION.**

1168.    False Accuser Bissell threw out/withheld the text messages and had instructed Dean to destroy his too (so her husband would not learn of her affair) (See FRO Hearing, August 17, 2017 (PACS, Exhibit 'J') where False Accuser Flanagan talks about the text messages being "suspect" (pg 6), and it is clear that False Accusers Flanagan/Barreiro et al had not read the texts as of August 17, 2017, and they had the audacity to call the texts 'suspect.' They did not want the Evidence of the texts in and wanted a rush to Judgement – they literally did not want their scheme uncovered.

1169.    False Accusers Flanagan and Barreiro also did not say why the text messages were 'suspect,' and why their own "client" did not have these same "suspect" text messages.  The nature of the FRO is so fast that little mis-directions such as this are only thought about after the fact.

1170.    False Accuser Bissell also had this to say about Peretz, the Godfather to her own children, and best friend to Mr. False Accuser Bissell, and her agent in the Saga Enterprise dealings, and a little more (as above) which is totally not credible:

"…I never told defendant Dean that I did not want Craig Peretz to know about my relationship with defendant Dean (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 20).

1171.    False Accuser Bissell had asked Dean to conceal the affair and delete the text messages – this was also a big reason that she wanted "Radio Silence" on May 1, 2017 "per [her] family conversation" (see texts 05/01/17). Mr. Bissell likely would have checked Ms. Bissell's phone/text message history all things being equal but it will

be shown that all things are not equal as the Bissell faked their own divorce so they could perpetrate this scheme to defraud. That was the story that Bissell would likely have gone with; she also went with the story that she divorced Mr. Bissell in Florida to Judge Murray but the Court records show that Mr. Bissell divorced her – and then the moved in together. What?

https://www.dropbox.com/s/ywtyb7bfbd462qr/Exhibit%2026%20%E2%80%93%20Mr.%20Bissell%20files%20for%20Divorce%20against%20Ms.%20Bissell%20in%20Florida.pdf?dl=0

1172.    Dean kept the "Radio Silence" request because Dean did not want to interfere with the False Accuser Bissell's marriage – little did Dean know that they were plotting to scheme to defraud at that point – a revelation that the police report now shows.  Dean had never met Mr. False Bissell before the TRO fiasco in August/September 2017 and False Accuser Bissell herself said he lived in Florida and that they were having marriage problems and were likely getting divorce. Dean was having his own marriage problems and his wife lived in western Canada. False Accuser Bissell would change her story in the Judge Murray 2017 Court on this point as well when she called the affair a "secret" (meaning not tell Mr. Peretz either) and that she could not tell Mr. Bissell and that she told nobody and ended up filing divorce (See PACS, pg 152) in April or May of 2017 depending of which version Bissell tells.

1173.    To Judge Murray she said that she told Mr. Bissell of the affair in July 2017 and in the police report  it was June.

1174.    Also, Klassen and Peretz were working together until at least mid-July and when False Accuser Bissell supposedly told her "husband" of the affair in mid-July corresponds at the earliest when Peretz stopped communicating with Klassen. Clearly False Accuser Bissell sabotaged the relationship with the Saga Enterprise affecting interstate and foreign commerce.  Dean of course, was not served with the false TRO until August 11, 2017 and he immediately told Klassen about the (false) TRO once served. False Accuser Bissell writes:

"Due to my depression, my marriage was failing and I eventually filed for divorce in May, 2017. I eventually told my then-husband about my involvement with defendant Dean. This was in mid-July, 2017 after the filing of the Divorce. My husband had no knowledge of the affair until mid-July, 2017.  I told my ex-husband of the rape by defendant Dean in early August, 2017…" (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, paras 40-41).

1175.    In the police report, Bissell said that she filed for divorce in April (pg 3, para 1) and told her "husband" about the affair in June [2017] with "…she served him with divorce papers. He knew something was wrong and talked to her until she confessed she had had an affair" (police report, pg 3, para 1). Bissell then says "On July 30 [2017], just before her husband and son were going to go back to Florida, she told her husband she was raped and gave details (police report, pg 3, para 1).

1176.    The Jury will have a difficult time processing the notion that False Accuser Bissell "served" divorce papers in June (and elsewhere Bissell said Mid-July) and is when she told her "husband" about the affair.  That "little change" was so False Accusers Lisa Bissell and James Bissell would not have to explain away in Court how

it is they were going to get divorced and decided to spend the summer together in the same house in "not-so-marital/divorce bliss," because to Judge Murray Bissell testified that Mr. Bissell was coming home in May and that is what prompted the May 1, 2017 "radio silence" request.

1177.      Next up is the "little change" of False Accuser Bissell telling False Accuser James Bissell that that the "rape" was discussed on June 30, 2017.  In Judge Murray's Court, this date was August 1, 2017, the same day that False Accuser Lisa Bissell says that she filed for divorce against False Accuser Mr. Bissell.   Court Records show that it was the other way around (see above) and it was False Accuser James Bissell who filed for Divorce against False Accuser Lisa Bissell and then….they moved in together with one another in Florida in the same apartment and remain there today as Un-divorced Man and Un-wife.  This in and of itself qualifies as an "Association-In-Fact," and what an association it is indeed. All of this is documented below but it gives a good notion of the "Spin Doctor" mentality of the False Accusers and the amount of perjury and subornation of perjury they are willing to use – arrogantly believing that their paper trail of destruction they left would not catch up to them – a matter for the Jury to decide.

1178.      At any rate, Dean did not delete the text messages between Lisa Bissell and himself, and he has them in his phone to this day. Had those exculpatory text messages been deleted, Dean would not have any real total record of the true timeline and series of events. The text messages were a big reason Dean "won" in Judge Murray's Court.

1179.      False Accusers Flanagan, Barreiro, and Bissell thought that the text messages were in fact deleted on August 17, 2017, and called the text messages 'suspect,' and that Dean was on a fishing expedition, and that the FRO hearing should be held right there and then – when Dean had but only been served with the TRO a few days prior on August 11, 2017 (See PACS, pg 127 and Exhibit 4 for 'service of TRO date'). It was the equivalent to a request for a Court sanctioned 'drive-by-shooting."  Thank God Judge Murray denied their "request." Dean got to work figuring out how to extract the text messages from his phone with various software programs as these must be in printed form per New Jersey Court Rules and Dean was successful at this task.

1180.      Of course, during this time, Dean was not so successful at preparing his Canadian Judicial Review for being removed from the Board in Canada.  Nor was Dean in any position to report the crimes of the Imm defendants to the USDC or Federal/State/local authorities here – he would not have made a good witness as he was now currently defending himself from vile rape accusations and the looming FRO hearing.

1181.      Later Dean would learn who Judge Murray was and she was the former Essex County Sex Crimes Prosecutor Boss and then became a Judge. Now Judge Murray is high up in the New Jersey Attorney General's office. See link: https://nj.gov/oag/opia/cru-dir.html

1182.      On Dean's first trip in front of Judge Murray he was stone-cold terrified.  Dean knew he was being utterly and totally falsely accused in every aspect of what the False Accusers were claiming – and Dean was

learning about the *draconian* NJ PDVA, being used as a 'sword' first-hand - and Dean was on the receiving end of Judge Murray's frightful glare - as she read accusations that appeared to even take her breath away - of brutal vaginal, digital, and anal rape. Later, False Accuser Bissell would significantly escalate it all to include constant threats – each and every time that False Accuser Bissell and Dean spoke on the phone and/or in person - of break and enter, re-rape (like the last time), followed by grisly threats of Mass Murder of her, her family, and her *children*, and False Accuser Bissell claimed that it was tied to her working for the Saga or the Saga Enterprise making it a level 1 indictable offense in the State of New Jersey (See NJSA 2C:14-2b on Police Report). That is a situation that exceeds all levels of true fear, way beyond economic loss, as a requirement for Hobbs Act violations. Keep in mind of what else Dean was facing – he was facing a woman who was comfortable going onto TV and selling "lab grown diamonds" as better than a girl's best friend. Dean knew that Bissell had a bunch of sound bites rehearsed and that is part of where her falsities were discovered and she would recycle these falsities to questions that did not fit (see below).

1183.    The Amended TRO included the "like the last time" Perjury and Subornation of Perjury that defiled Judge Callahan's Court and in turn Judge Murray's Court and indeed, was done as a direct proximate result of False Accusers Bissell, Mr. Bissell, Mr. Peretz, Mr. Flanagan, Mr. Barreiro, and Greenbaum, Rowe, Smith, and Davis LLP's wanting extortion takes and trying to send an innocent man to prison (and one more file for Director Carolyn Murray's Conviction Review Unit to sift through). The public demands protection from reprobate lawyers such as Flanagan, Barreiro, Vaccaro, Adams, Shivas, Bell Jr, and Laskiewicz and their firms to keep the public confidence in the legal system high and the case load at the Conviction Review Unit lower.

1184.    That False Accusers Association-In-Fact Lisa Bissell, James Bissell, and Craig Peretz all discussed all of this as early as June 2017 and as late as August 1, 2017, as they set about their criminal coercion and 'theft by extortion' scheme to defraud (this may have also included Flanagan, Barreiro, GG as discovery progresses).

**Aggravated Criminal Coercion as of August 1, 2017:**
*-Inflict bodily injury on anyone or commit any other offense*
-Accuse anyone of an offense
-Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute
-Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or **personal relationships**.

**Aggravated Theft by Extortion as of August 1, 2017:**

-Inflict bodily injury on or physically confine or restrain anyone or commit any other criminal offense;
-Accuse anyone of an offense or cause charges of an offense to be instituted against any person;

-Expose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;

-Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.

Note: that on the Police report, Bissell changed her story once again and said that she told Mr. Bissell about the affair in June 2017 where False Accuser Bissell "confessed she had an affair" (Police Report, pg3, para 1).

1185.    Had Judge Murray found Dean guilty on September 29, 2017 that would surely have reached the Essex County Prosecutors' desk one way or another, and Dean would most assuredly have gone to prison for the rest of his natural life and/or been murdered inside prison.

1186.    When it was all said and done and Bissell lost and she failed to meet any of the prongs required under the NJ PDVA, all Dean could do was muster a "thank you for your wisdom" to Judge Murray as she got up herself hoping she had made the right decision. *Judge Murray made the right decision.* With the revelation of the police report that indeed there were never any threats – murder or otherwise - and clear and convincing evidence of Fraud on the Court in the 2017 Brindisi, Callahan, and Murray Court(s), this matter now turns back on False Accuser Bissell et al for their further Fraud on the Court(s) in 2019 until now.

1187.    It was all sham litigation and indeed a scheme defraud.

1188.    False Accusers Flanagan, Barreiro, and Bissell all knew that they were in the commission of the Furtherance of Crime then, including but not limited to Extortion and Criminal Coercion, as well as the Fraudulent Concealment of False Accuser Bissell's own texts.  All defendants are culpable of all of these matters and conspiracy to commit these matters.

1189.    The text messages capture the true relationship between False Accuser Bissell and Dean point by point (see above link to text messages).


**THE TEXT MESSAGES BETWEEN FALSE ACCUSER BISSELL AND DEAN**

1190.    Recall above that False Accuser Bissell had destroyed or fraudulently concealed the text messages between False Accuser Bissell and Dean and that False Accuser Bissell believed Dean had also destroyed his copy.  Judge Murray found these text messages central to the 2017 action and its dismissal – and read them several times in order to fully appreciate them and cast doubt on False Accuser Bissell's story(ies) (see PACS, 27). This evidence will again be of paramount importance to this Federal Court by proving the perjury and general Fraud, Misrepresentation, and Misconduct by False Accusers Bissell et al for the entirety of these matters but also specifically for 2019-2021.  Please read at the entire text messages (PACS, exhibit "J" (texts in Microsoft word) and Exhibit "P," (original texts)) and see if the "text messages" are "suspect," as False Accusers claimed, or if False Accusers Bissell, Flanagan, and Barreiro and indeed Shivas et al are "suspect(s)," and that Shivas has

misrepresented that 2017 has nothing to do with 2019 (see Transcript of January 24, 2020 in front of Judge

Zunic, pg 8) where Shivas says the claims are 'viable' and 'separate' from and Dean adds 2017 to 2019/2020.

Shivas in his letter to Judge Gardner on January 4, 2021 (as above) falsely noted: **attempt to muddy the waters**

**and to join issues that are not connected.**

1191.        These issues are entirely connected and reach far into Canada and other countries.

1192.        At the end of Act II in the Story using the Absolute Adjectives, Shivas et al come up with this in referring

to Dean's comparison of False Accuser Bissell et al's statements in 2017 to False Accuser Bissell et al's

statements in 2019/2020:

> **"an attempt to muddy the waters and create and illusion of several matters intertwined where no**
> **such interaction exists"**

1193.        NJ RICO statue says differently (N.J.S.2C:41-2 through N.J.S.2C:41-6)  A "Pattern of racketeering activity"

in NJ requires

> (1)Engaging in at least two incidents of racketeering conduct one of which shall have occurred after the
> effective date of this act and the last of which shall have occurred within 10 years (excluding any period
> of imprisonment) after a prior incident of racketeering activity; and
> (2)**A showing that the incidents of racketeering activity embrace criminal conduct that has either the**
> **same or similar purposes, results, participants or victims or methods of commission or are otherwise**
> **interrelated by distinguishing characteristics and are not isolated incidents.**

> Another Nevada RICO act that clearly is present here is the following NRS  205.377:    Multiple
> transactions involving fraud or deceit in course of enterprise or occupation. A person shall not, in the
> course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act,
> practice or course of business or employ a device, scheme or artifice which operates or would operate
> as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:

> (a)  The person knows to be false or omitted;

> (b)  The person intends another to rely on; and

> (c)  Results in a loss to any person who relied on the false representation or omission, in at least
> **two transactions that have the same or similar pattern, intents, results, accomplices, victims**
> **or methods of commission, or are otherwise interrelated by distinguishing characteristics and**
> **are not isolated incidents within 4 years and in which the aggregate loss or intended loss is**
> **more than $1,200**. Each act which violates subsection 1 constitutes a separate offense.

1194.        The other RICO statutes for other states mentioned herein in Act I, II, and III have similar language.

Federal RICO has nearly the identical language in the State Statutes as well as SCOTUS has spoken on the matter

as well and what SCOTUS says matters – not False Accuser Shivas and his co-reprobates Associates-In-Fact

criminals trying to back away from the scene of the crime and each other (Flanagan, Barreiro, et al in 2:19 want

nothing to do with BS and Shivas et al): "Pattern of racketeering activity" requires at least two acts of

racketeering activity committed within ten years of each other. 18 U.S.C.A. § 1961(5) (West 1984). Congress intended a fairly flexible concept of a pattern in mind. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195 (1989). The government must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. Id. Racketeering predicates are related if they have the **same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Id. at 240, 109 S. Ct. at 2901**; Ticor Title Ins. Co. v. Florida, 937 F. 2d 447, 450 (9th Cir. 1991). Furthermore, the **degree in which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions**. United States v. Indelicato, 865 F. 2d 1370, 1382 (2d Cir.), cert. denied, 493 U.S. 811, 110 S. Ct. 56, 107 L. Ed. 2d 24 (1989).

1195.     By now it must be starting to be clear that the issues from 2017 and 2019/2020 are the same and it is the testimony and submissions of False Accuser Bissell and her attorneys which are different. Shivas will try anything at this point for all of the Evidence to be considered and anything he does at this point is more Fraud on the Court.

## FALSE ACCUSER BISSELL DID NOT KEEP ANY SUPPOSED EVIDENCE FROM THE NIGHT OF FEBRUARY 7, 2017

1196.     In 2017 testimony, False Accuser Bissell claimed there was supposed crime scene evidence from February 7, 2020 and made sure to affirm this to Judge Callahan that she would have "proofs" (See PACS, pg 123) but instead showed up to the Judge Murray 2017 Court with no "proofs," and only "testimony," in order to shock the Court. False Accuser Bissell talked about the bloody towel (See PACS, pg 194) – moments after hysterically crying after her false rape "testimony" - to try to create the illusionary spectacle of the existence material physical evidence – but then conveniently stated on cross she had destroyed/not kept this evidence, or any other evidence (bed sheets, for instance) (see PACS, pg 122). This is a perjury as well because it the Police Report it talks about the "matrimonial bed" and if there was so much blood then the blood would still be on the bed with Dean's DNA mixed in – guess what? No evidence because there was no blood.

1197.     Bissell also mentioned that no condom was used and that was so she would not have to explain throwing out that DNA packed evidence item. In short, False Accuser Bissell told Judge Callahan that she would have proofs, as False Accuser Flanagan sat in Suborning of Perjury silence, but indeed she had no physical evidence whatsoever to give to Judge Murray in 2017.  No mention to Judge Callahan either that Bissell said on the Police Report that Bissell and Dean never talked of February 7, 2017 and that was for the reason that False Accusers Bissell and Flanagan could state that on February 27, 2017, Dean threatened Bissell of re-rape, "like the last time."

**THE PLANNING THAT REQUIRED TO GO AND DECEIVE JUDGE CALLAHAN IN 2017**

1198.　　　In the CERTIFICATION OF RYAN DEAN, dated December 21, 2020 (ESX – L – 984 – 19 and see link below), on pgs 43 – 48, it is critical to understand the major planning and Furtherance of Crime that was executed against Dean, and the Fraud on the Judge Callahan Court.  Kindly stop to look at this crucial evidence against False Accusers Bissell, Flanagan, and Barreiro et al.  This is the "Certification of Ryan Dean, Attachment 'A.'' Attachment "A" is simply a Motion for Fraud on the Court, that is currently pending in United States District Court New Jersey (2:19) – and that all Imm defendants are culpable for as well as conspiracy to commit violations of 18 USC § 1512 and 18 USC § 1513 it will be shown in Act III.  Keep in mind, when this document below was submitted there was no police report available to Plaintiff(s) but now there is,  this is all defendants' undoing. Being culpable of Federal Fraud on the United States District Court is a most uncomfortable proposition indeed – especially if you are a morally and legally reprehensible person with a law license that is the maker of the scheme(s) to defraud, like all of the New Jersey lawyers detailed herein, and all the Canadian lawyers attached to these matters.

https://www.dropbox.com/s/bnf0zk308cebem4/Cert%20of%20Ryan%20Dean%20%2812-21-20%20att%20A%29.pdf?dl=0

**TEXT MESSAGES OR NOT – FALSE ACCUSERS BISSELL, FLANAGAN, BARREIRO, SHIVAS ET AL ARE CAUGHT IN CRIME AND FURTHERANCE OF CRIME IN HELPING FALSE ACCUSER BISSELL WITH HER VOLUMINOUS PERJURY.**

1199.　　　This statement above applies to all defendants and co-conspirators. Taking another pause right here – whether False Accuser Bissell, Flanagan, Barreiro, and Shivas et al had the text messages or not - they were nevertheless, and still are, changing their story on the fly.  It would have made it a whole bunch more difficult to prove Dean's innocence but that is not the case here as the whole world has these text messages now. Just on this point alone shows that there was Perjury and Subornation of Perjury and a scheme to defraud – certainly Misrepresentation and Misconduct. But of course, False Accusers Flanagan and Barreiro et al did have the text messages in 2017 prior to False Accuser Bissell et al's Amended TRO and Fraud, Misrepresentation, and Misconduct to Judge Callaghan to the get the Amended TRO approved by the Court; they also had the Police Report. This makes them all the more culpable as their story was already changing, and they significantly escalated the perjury and subornation of perjury from this point on because of the receipt of the text messages. Extortion and Hobbs Act Violations with respect Federally and State mattes concurrently for all defendants.

1200.　　　To be clear there was never any "probable cause" in either the TRO and the Amended TRO – their was 100% deception of the Court(s). False Accusers Flanagan, Barreiro, Adams, and Vaccaro represented to the United States District Court in the Fraud on the Court Response that there was probable Cause and clearly there was not – in the 12(b)(6) filing of False Accusers Flanagan, Barreiro, Adams, and Vaccaro. Here is their one and only filing on the matter for Fraud on the Court.  In light of the Police report and the planning that went into the

Amended TRO as noted above, pages 2 & 3 confirm, by False Accusers Flanagan, Barreiro, Adams, and Vaccaro – all 'officers of the court' – for now, that Fraud on the Court is present in this case for all of the reasons that essentially the criminals with law licenses – False Accusers Flanagan and Barreiro – did not wrong.

https://www.dropbox.com/s/lumosdu9uckdy4a/FOC%20Transcripts%20Response%20Flanagan%20Nov%2023%202020.pdf?dl=0

1201.      Dean urges the Court and the Jury to read the Police Report & the TRO and then read the text messages and stop and see what it thinks. Then Compare the differences to the TRO with the Amended TRO (See PACS, pg Exhibit 8) – and of course incorporate the newly acquired Police Report, that will be prepared in due course. This not disclosing to Judge Callahan of the text message receipt, and the fact that Dean had not spoken to False Accuser Bissell since May 1, 2017 – at her "radio silence" request, the fact False Accuser Bissell had moved to Florida, the fact that Klassen and Peretz were working together until at least Mid – July 2017, and of course the fact that Bissell herself foreclosed on all of these new threats already on the Police Report - and all of this was fraudulently concealed from Judge Callahan, and it was all part of the scheme to defraud the Saga Enterprise, affect interstate and foreign commerce, commit fraudulent concealment, and an attempt at an extortion take.

1202.      For why else would the Vice Chair of the litigation department – Mr. Darren Barreiro - be poking around the Family Court? And "law (less)" partner Flanagan - to Judge Callaghan's Court?  This is and of itself Fraud on the Court because they tried to take down an international hedge fund manager when they knew there was no probable cause and further that they – being officers of the court – were willfully and skillfully fabricating and confederating evidence with the False – Accuser – In – Chief Lisa Bissell.

1203.      False Accuser Shivas and his Association – In – Fact criminal co-conspirators with law licenses Bell Jr. and Laskiewicz at BS and their assistants Kindgon and Ward have been pushing the scheme along since 02/05/19 and all of it is egregious Fraud on the Court (Fraud, Misrepresentation, and Misconduct) and in fact is debatably equal or even worse in 2019-2021 than what happened in 2017.  False Accuser Bissell had the text message history from Dean prior to the perjurious February 5, 2019 civil action and False Accuser Shivas and his 'law (less)' partners had access to all the Transcripts prior to their base perjury and fraud – but they willfully did not order them. Still, worse, after receiving the entire PACS and Transcripts Shivas denied receiving it – despite the fact of a trail of USPC mailings and emails to him with these precise attachments. This will be fully developed herein with Evidence.

**FACE TO FACE MEETINGS MADE OUT TO BE A LOT BUT THE TEXT MESSAGES SAY OTHERWISE – MORE FRAUD, MISREPRESENTATION, MISCONDUCT – MEETING THE DEFINITION OF "FRAUD ON THE COURT."**

1204.      False Accuser Bissell stated that these (False) threats were made during face-to-face meetings made it seem like there were many – but the text messages show only two face-to-face meetings between February 8, 2017 and May 1, 2017, (the March 2, 2017 meeting with Peretz' two institutional investor colleagues and the

March 9, 2017 Hedge Fund Conference) (See PACS, pg 170) and for one of these meetings False Accuser Bissell admitted on September 28, 2017, she indeed was not threatened by Dean (PACS, pg 37 – 39). Therefore, there is only one face to face meeting remaining on March 9, 2017 at the hedge fund conference that Dean arrived late to and left early from (before the conference was even finished) – and there were no threats – it was a very public meeting with context provided for by text history – it was all positive.  That is two face-to-face meetings for the entirety of February 8, 2017 to May 1, 2017, after which there was no contact (see below).

1205.      The phone calls in 2017 will be incorporated below and False Accuser Bissell herself ruled out any other means of communication meaning that there were just: texts, phone calls, and face-to-face meetings (See below in sections "Face to Face Meetings and "Phone Calls") and therefore no skype, facetime, and so on and so forth (PACS, pg 35, 37, & 39).

**TO BE ANGRY WITH AND GIVE ORDERS TO FALSE ACCUSER BISSELL EACH AND EVERY TIME THEY SPOKE - DEAN HAS TO BE TALKING TO FALSE ACCUSER BISSELL A LOT. HE WAS NOT AND THEREFORE HE WAS NOT "ANGRY EVERY TIME THEY SPOKE" EITHER.**

1206.      In the recently received police report, False Accuser Bissell did not accuse Dean of "threats" of "Mass Murder," nor was Dean 'very angry' each and every time that they were on the phone.

1207.      False Accuser Bissell in 2017 committing further Perjury and Barreiro et al in committing more subornation of perjury created the false narrative that Dean was "angry every time they spoke," trying to paint Dean into some kind of monster, (See PACS, pg 150) and this Perjury and Misrepresentation is directly at the Court that False Accuser Bissell was doing all kinds of work product and setting up meetings. False Accuser Bissell states:

> I continued to respond to his text messages and phone calls in order to comply with his demands so that he would not follow through on his threats. I also continued to exert energy towards helping his hedge fund business…"  CERTIFICATION OF PLAINTIFF IN OPPOSITION FOR SUMMARY JUDGEMENT, Paras 35-36

1208.      The police report did not make any mention of any demands by Dean either but did say: "did continue to communicate about business and even attend meetings together" (Police Report, pg 2, para 3).

1209.      There is a subtle change in paras 35-36 above as well (not taking the police report into consideration at all in this instance) because False Accuser Bissell is stating that these "demands" were not made face to face in this changing instant of what she says everywhere else with respect to his threats being face to face and on the phone. So, in short, in para 35-36 there is no mention of "face-to-face" threats, in this version of her perjury and the False Accusers' Subornation of Perjury.

1210.      Also, conspicuously absent were "demands" on the text messages – they were requests and it went both ways but mostly from False Accuser to Dean and not the other way around.  Sure, there was texts about Peretz that False Accuser Bissell herself was pushing along on her own initiative, but there were no outside

Peretz "demands." As for the phone calls there were but two between February 8, 2017 and April 24, 2017 (See below). False Accuser Bissell was not "exert[ing] energy" setting up meetings other than the Peretz meetings that would directly benefit her, if and only if, an institutional client was secured. Everyone should watch out because, according to False Accuser Bissell, if you pick up the phone and call a friend for a friend then that is "exerting energy." What a farce and especially so since False Accuser was the direct beneficiary of said farce (otherwise known as a step in the scheme to defraud). False Accusers Shivas and Bissell leave these major facts out to Law Division and this is Fraudulent Concealment.

1211.    False Accusers Bissell and Barreiro et al produced (and still cannot produce) any work product outside the Craig Peretz, COO of Sierra Global Capital Management ("Sierra") and Sierra related items – but for clarity, False Accuser Bissell did not provide any Work Product to Saga outside of the Peretz items either and False Accuser Bissell cannot produce any material emails of this nature including Saga Marketing Materials. False Accuser Bissell was leveraging her personal relationship with Peretz, on her own initiative, and trying to use this relationship with Dean to create a business relationship into the Saga Enterprise and False Accuser was pushing Dean along to move it forward – and never the other way around. Plaintiff Dean had plenty of other clients to chase around that was keeping him busy.

**WORKING FROM NEW JERSEY THEN AND IN THE FUTURE?**

1212.    Shivas in 2019 writes:

> "Prior to the incident, Defendants has promised Plaintiff a position as the Director of Marketing for defendant Saga Global Capital Management, LLC. In connection with the promise, Plaintiff exerted her professional efforts to assist Defendants in developing a marketing strategy and a pitch to prospective investors. **Defendants intended and understood that Plaintiff would perform services for them and Saga from her home office in New Jersey** (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PRELIMINARY STATEMENT, PG 1, PARA 3).

1213.    Well since False Accusers all had a copy of the Police Report (that was withheld from Dean as a policy of the Municipality of Cedar Grove) they knew that Dean could not get his hands on it – or they thought that Dean could not get his hands on it. On the police report it says: "Mrs. Bissell stated that her husband and child moved to Florida last August [2016]. She was going to sell the house, find work, and meet them there at a later date." So False Accusers, it is clear that y'all have willfully, knowingly, and malevolently put this matter that Bissell was going to work from New Jersey as a direct and proximate cause to take unjust jurisdiction over Klassen just on this one point. False Accusers knowing this also tried to get around one of the requisite prongs in the TRO/FRO process where there is an "immediate danger," and there could be no "immediate (physical) danger" to False Accuser Bissell if she is living with Mr. Bissell in the same Florida apartment that Dean had no idea about until he was served with the TRO. Even then, on the police report it lists False Accuser's address as New Jersey and not in Florida -even though on the police report it said they were all moving to Florida that very night.

1214.      False Accusers knew Bissell was not going to work from her "home" in New Jersey.  It up for sale about 1 year prior to Bissell ever meeting Dean (October 2016). Bissell admitted this to Judge Murray.

1215.      Moreover, FALSE ACCUSER BISSELL can neither show any email strings showing the development of a 'marketing strategy,' nor can she show a 'pitch' that she worked on. More Perjury and Subornation of Perjury on the part of False Accusers Bissell and Shivas et al. As will be shown in the CERTIFICATION(S) OF KEVIN KLASSEN (dated December 21, 2020 and February 1, 2021), False Accuser Bissell did not provide any work product or "exert" efforts outside of the Craig Peretz related items, False Accuser Bissell did not even bother to show up for her own compensation meeting nor could she be bothered to study for the series 7 exam. Here are those Certifications:

https://www.dropbox.com/s/1re8xloaqzilwgy/Cert%20of%20KK%2012-21-20.pdf?dl=0

https://www.dropbox.com/s/tb0j3zdthbe3fo9/Amended%20Cert%20KK%2002-01-21.pdf?dl=0

1216.      What's more, in the Police Report, Bissell said with reference to this period prior to February 7, 2017 that "they continued to keep in touch and Mrs. Bissell put Mr. Dean in touch with friends of her to further the business."  It was one "friend," and one "friend" only – Mr. Craig Peretz.  Also, Peretz was a family member, God father to the Bissell children, and best friends with Mr. Bissell and the agent of Bissell.  The larger point here is "keeping in touch" is not doing work product for outside matters not relating to Peretz and/or Sierra.

1217.      False Accuser Shivas goes on in 2019 and says:

"Defendant Dean sent frequent text messages to Plaintiff throughout the period of October, 2016 through April, 2017. (Plaintiff Cert., ¶ 7). The Communications related to the prospect of Plaintiff joining the Saga team as either a consultant or an employee working from her home in Cedar Grove, Essex County, New Jersey (Plaintiff's BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, PG 4, Para 1).

1218.      False Accuser Shivas states in 2019:

"Defendant Dean traveled to Plaintiff's Cedar Grove house on several occasions to discuss business and Plaintiff's role. Klassner [sic] reached out to Plaintiff in New Jersey throughout the period to time in which Plaintiff worked with Defendants" (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PRELIMINARY STATEMENT).

1219.      It sure is hypocritical that False Accuser Bissell herself destroyed/withheld these same text messages from Judge Murray's Court room in 2017, and now False Accuser Bissell tries to twist the entire meaning of the texts and leave out the personal relationship and planning for sex – which is the majority of the texts – as well as the fact that after February 7, 2017 chat about "sex first," and "business second," and that False Accuser was not going to be the next Mrs. Ryan Dean, he carried out that intention by not talking to her for over 6 weeks while in Asia/Canada and the texts show.   So in short, what False Accuser Bissell represents above including the number of sex rendezvous and phone calls as well as the 6-week black out – with no communication while Dean/Klassen are in Asia/Canada, for instance is a yet another step in the scheme to defraud by False Accusers. False Accuser Bissell too makes out that all of the "meetings" were in New Jersey leaving out the fact that the

encounters in New Jersey were all for sex per False Accuser Bissell's own words (See section above ("BUSINESS PLAN WRITING IN THE BATHTUB, ACCORDING TO A RECONSTRUCTION OF FALSE ACCUSER BISSELL'S VARIOUS STORIES") in Judge Murray's Court and all of the other "meetings" were in New York City. False Accuser Bissell herself was also frequently in Florida for these text messages, per the text messages.

1220.        For this non-sense about False Accuser Bissell working from her New Jersey Home as a **potential** contractor or employee **in the future** (maybe) is flat out Misrepresentation and likely material Perjury and Subornation of Perjury that was only included in False Accusers Bissell and Shivas' 2019 Law Division pleadings so they could deceive the Court into taking jurisdiction over Dean, Klassen, and their hedge fund.   False Accuser Bissell in the Judge Murray 2017 Court "testified" on September 28, 2017 that she essentially was *eventually* going to be on the team (See PACS, pg 43-44) and that far from being a current event. The Police Report also forecloses on the possibility that Bissell was going to work from NJ as False accuser wrote in their pleadings to Judge Gardner in Law Division – because Mr. Bissell says that she was going to be joining him in Florida shortly after August 2016 - and there they all live today.

1221.        In Judge Murray's 2017 Court Room, False Accuser Bissell had – yet again – something different to say where she stated that her husband and son had already moved to Florida and that she was looking for a job where she had the flexibility where she could be visiting Florida and up in New York and go up and down (See PACS, pg 235). Again, in the police report no mention about working in New Jersey.  False Accuser Bissell also told Judge Murray that she lived in New Jersey, even though she lived in Florida, and that it was "temporary" (See PACS, pg 114).

1222.        See below for the bizarre divorce story THE FLORIDA DIVORCE SHAM AND WHY AUGUST 1, 2017 MATTERS) where False Accuser Bissell claims she divorced her husband, but Court records show, he divorced her, and then they moved into together in the same apartment in Florida and are still there living together as "Un-Man and Un-wife" which is an Association-In-Fact according to the Eleventh Circuit in *Al-Rayes v. Willingham, in a unique demonstration of the scope of RICO* determined that a married couple can form an "association-in-fact enterprise separate and apart from [the] marital relationship." Throw in the bizarre back story that Bissell shared with Dean that Mr. Peretz – himself never married and apparently according to Ms. Bissell never "kissed a girl," and that Peretz had a one-way romantic interest in Bissell that was always repelled – so Bissell claims. A RICO "enterprise" can be "virtually any de facto or de jure association."  Throw in the fact as well that Florida does not recognize common law marriage and this is the basis of a unique Association-In-Fact indeed where the lawyers to their schemes can come and go and the Association-In-Fact stays intact – as evidence that even divorce will not separate them. See Seville Indus. Mach. Corp. v. Southmost Mach. Corp, 742 F. 2d 786, 789 (3rd Cir. 1984). All False Accusers and the Imm defendants have conspired to commit numerous reprehensive acts condemned by law (United States v Jimenez Recio, 537 US 279, 274 (2003). See PACS, Exhibit

26.  For the purposes here, Craig Peretz is not in fact in this association as he is the Sierra – Sub Association in fact.  But Mark Faber can certainly take Peretz' place and we will see what kind of further bizarre things that Mark Faber is going to come up with and see if in fact Faber actually did send Bissell a text message or not.  In Judge Murray they did not produced the text messages from the phone like Dean has done; instead they simply typed out the text messages on a piece paper and that constituted the whole of the physical evidence that False Accusers submitted into the record in 2017 and that was something that was likely in and of itself fabricated.

1223.    When False Accuser Bissell was served with a NJ TRO that Dean secured with Judge Spencer,  in Dean v Bissell, the False Accuser was found in Florida in 2020 - at this same apartment as Mr. Bissell (See PACS, Exhibit 32).

1224.    False Accusers Bissell and Shivas continue to commit perjury and play to Law Division and further Perjured themselves with this:

> The parties agreed that Plaintiff would be performing services for Defendants as marketing director from her home office in Cedar Grove, New Jersey (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1225.    The parties did not "agree" to the notion above.  Bissell herself in the police report said she wanted nothing to do with Dean nor his company.

1226.    It is also of note as well that the False Accuser Bissell home was up for sale for about 1 year before she ever met Dean (per False Accuser Bissell's testimony in Judge Murray's 2017 Court (See Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 27)) and False Accuser Bissell was in financial dire straits, her 401(k) was dwindling, and her home was in danger of going into foreclosure. Bissell had every motivation for revenge for the grievous wrong of not being the full-time girl friend of Dean and/or the next Mrs. Ryan Dean.

1227.    It brings into the central question who is, and has been paying/financing, False Accuser Bissell to pay for all of her lawyers and her lifestyle over the course of three years (going into four years), when False Accuser Bissell herself was broke and was unemployed and apparently not working as of May 1, 2017 and apparently is still not working. That question is answered by the Imm defendants who also had a motive to make sure that Dean did not become a director again of ICCRC, and this time with orders from the Federal Court to turn the ICCRC upside down to secure what he was looking for and prevented from getting from day 1 of his directorship. It further shows that False Accuser Bissell has a financial extortion motive(s). It also shows a motive why False Accuser Bissell would take the extra ordinary perjury risks that she has taken and are all documented herein with her Suborning of Perjury lawyers et al because she has taken bribe(s) and payoffs from Imm defendants to do what she has done.  Please see PACS, pg 84 for more False Accuser Bissell motives uncovered in the investigation. The lawyers, who heard "hedge fund" said "let's extort!" and by now with all of the lying it is clear that this is precisely what has transpired.

1228.　　　If that is not Fraud on the Court – then what is? To get financed to falsely accuse and extort et al a couple of "bright star," up and coming hedge fund managers, violating the Hobbs and CIVIL RICO Acts et al, inside numerous Court proceedings, with an utter scheme to defraud (prohibited by CONGRESS) then what qualifies as Fraud on the Court?  False Accuser Bissell took a bribe(s) to start this Extortion and Criminal Coercion Scheme.  Under Federal of Civil Procedure 60, the powers of the Court are unlimited to investigate this and get to the bottom of it because this 'football team' of corrupt (American/Canadian) lawyers who will most assuredly will not be so helpful get to the truth. The USDC merely needs to invoke jurisdiction over all of them and start the process. The Court has grounds that there has already been fraud on the Court due docket numbers 2:19 and 2:20.

**UNSOLICITED PRAYER WITH SUPPOSED ATTACKER FOR INVESTORS TO INVEST**

1229.　　　False Accuser Bissell offered a prayer <emoji> in text messages to Dean on March 4, 2017 (PACS, pg 169). Do real violent rape victims, who are constantly and relentlessly being threatened with re-rape in the commission of the break in of their home, re-rape ('like the last time'), followed by the grisly murder of themselves, their family, and their *children* –- offer unsolicited prayers to their "attacker" in text messages? Credible? Of course not.

**SUMMARY OF HAPPY AND BUSINESS-LIKE TEXTS BETWEEN FALSE ACCUSER BISSELL AND DEAN**

1230.　　　Here is a summary of the Happy and business-like texts between False Accuser Bissell and Dean after the supposed brutal and false rape of February 7,2017 (See PACS, pg 29); False Accuser Bissell created the false narrative to Judge Murray in 2017 that Dean was "very angry" every time she spoke with [Dean] face to face or on the phone (See PACS, pg 43 & 67). Of course, Dean is rarely speaking to False Accuser Bissell face to face or on the phone (see below for Evidence) and, by definition, this "angry" notion is a sham. False Accusers Flanagan and Barreiro et al try to use in 2:19-cv-18255-MCA-LDW [("2:19") in USDC – NJ] against Dean as being "Angry" and "Vindictive" – which further cements their participation in this ruse in 2017 (Family Court) and in 2:19 - 2019-2021. Again, the police report Bissell forecloses on the possibility of these threats and since Flanagan, Barreiro, Adams, Vaccaro, and GG had the police report – and Dean could not secure a copy of the police report – it means that this perjury and subornation of perjury is directed at the Court itself and is also Federal Obstruction of Justice and retaliation against a witness and victim under 18 USC § 1512 and 18 USC § 1513.

**ACCORDING TO FALSE ACCUSER BISSELL, DEAN WAS PRETTY SMART ABOUT NOT PUTTING SUPPOSED THREATS IN TEXTS; FALSE ACCUSER BISSELL IS PRETTY 'NOT SMART' ABOUT NOT SUBMITTING ANY OF HER SUPPOSED CONSTANT COMPLAINING IN ANY WRITTEN FORM – EVEN IN A SHORT TEXT TO EITHER DEAN OR KLASSEN – OR IS IT SIMPLY PERJURY AND FRAUD, WHICH IT IS.**

1231.    False Accuser Bissell in front of Judge Murray said that Dean "was pretty smart" about not threatening her in text messages (See PACS, 150), and comparing this to the very few phone calls and face to face meetings, is yet more Perjury and Suborning of Perjury by False Accuser Bissell and Barreiro et al. The phone calls and face to face meetings were few and the tone of the relationship could be gleaned from the text messages, as Judge Murray did and noted in 2017 when she stated that the business calls were all friendly and discussed "emerging or potential business" (see PACS, pg 27).

1232.    The Police Report clearly states that "they [Bissell and Dean] never spoke of that night [02/07/17] again," and the contents of the police report never came up in the Callahan nor Murray Court(s). It was the Cedar Grove Municipal policy to not give out these materials in violation of NJ Ct R 1:38-3(d)(9).

1233.    In fact, Sasha Perez, a Cedar Grove defendant recently told Dean that she called the lawyer on the letter [Chris Adams] and Adams told Peretz essentially that in fact NJ Ct R 1:38-3(d)(9) is not a ground to secure the TRO; of course, on the letter that is spoken of addressed to Federal Judge Arleo he states the opposite. That is Obstruction of Justice inside of a current Fraud on the Court Motion.

1234.    False Accusers in front of Judge Murray knowing that Dean did not have the police report and could not secure a copy was a 'green light' for False Accuser Bissell to perjure herself to Judge Murray with the Vice Chair of the Litigation Department Barreiro providing active Subornation of Perjury Assistance in the Scheme to defraud Plaintiff(s) and the Murray Court (and Flanagan and Bissell the Callahan Court too).

1235.    Bissell said to Judge Murray and made reference to the supposed rape of February 7, 2017 with the "like the last time" on the Amended TRO insertion, that became in real time in front of Judge Murray "each and every time" Bissell and Dean spoke on the phone and/or or face to face, and these threats connected to February 7, 2017, was done for the express purpose so the False Accusers could overcome the Truth of the text messages thought destroyed.  To the False Accusers trying to see Dean off to prison to face death and/or extorting him and the Saga Enterprise it was 'green light' to further, obstruct justice, and violate on an aggravated basis, each and every statue that has been presented in Act I & Act II of all defendants and scheme to defraud the court by officers of the court.

1236.    This comment by False Accuser Bissell that Dean was "pretty smart" about not putting the threats in text messages even gave Judge Murray some doubt and Judge Murray was deceived by it.  But now that the police report is secured there is no doubt – there were no murder threats.  What's more, *any* woman reading this cannot *deny* the fact that if her *children* were being constantly threatened with murder each and every time she spoke to a large man over a long period on phone and/or in person, those threats would be front and center in

any police report made by said woman against that man. Women may not want to report a rape for any number of reasons as Judge Murray said; but women will stop at nothing to protect their own *children*.

1237.    That being said, where are these threats in the police report? They are conspicuously absent because again, Bissell herself foreclosed on the possibility of such threats by saying 'they never spoke about that night again.' The notion of the threat "get you" (coming up below) was also meant to deceive Judge Murray and actually punish Dean for mounting a defense - and was an off-shoot to talk about the Imm defendants.

1238.    False accusers were also "pretty not smart" thinking that Dean would never get a hold of the police report; he will get a copy of the TRO eventually.

1239.    Furthermore, it turns out in 2:20, False Accuser Bissell was pretty "not smart" about not putting even one of her supposed complaints about "sex harassment" and "sex discrimination" in her texts to Dean or Klassen, or otherwise, but says in her 2019-2020 filings that she was constantly complaining to Dean and Klassen (see below "THE SHAM LITIGATION AND FRAUDULENT CIVIL COMPLAINT OF FEBRUARY 5, 2019 OF FALSE ACCUSER BISSELL AND SHIVAS ET AL THAT BY DEFINITION COULD NOT HAVE HAPPENED AS PERJURIOUSLY CLAIMED"). No complaints in the Police Report about this "sex harassment" and "sex discrimination" and more will be discussed about this perjury below.


**SAFE AND PROSPEROUS TRAVELS TO YOU AND RYAN!**

1240.    There is the unsolicited 'safe and prosperous travels to you and Ryan' email sent to Klassen (See PACS, pg 145 & Exhibit 9) just before Klassen and Dean departed off to Asia on March 11, 2017 and then Dean proceeded not to talk to False Accuser Bissell for some six plus weeks until later just before his return to the United States in late April 2017. Note, prior to leaving and not speaking to False Accuser Bissell for six plus weeks, Dean had already been trying to gently cool the sexual/dating relationship. Six plus weeks of no contact should have gotten the message home to False Accuser Bissell that she was not his girlfriend, she was not going to be his girlfriend and she certainly was not going to be the next Mrs. Ryan Dean. False Accuser Bissell, then, asked for and received "radio silence" from Dean on May 1, 2017 – per her family discussion. That leaves in total just 31 days for all of these horrible things False Accuser Bissell said happened to her all throughout this period (October 2016 to May 1, 2017) as well as this same period that False Accuser Bissell could have possibly been complaining about "sex harassment and discrimination." See Link for "safe and prosperous travels" and evidence of affecting foreign business:

https://www.dropbox.com/s/lv2nkh3s1rykyym/Safe%20and%20Prosperous%20Travels.pdf?dl=0

1241.    Of further note, is that in the Judge Murray Court, False Accuser Bissell said that after February 7, 2017 (false) rape that she was being "silent," "compliant," "told no one," and "did whatever [Dean] directed her to do. So up to at least February 6, 2017 everything was just fine in Judge Murray's Court and again on the TRO,

False Accuser Bissell called Dean her boyfriend.  In Law Division the "sex harassment started in Oct 2016 and False Accuser Bissell said that Dean made it a "condition" of her job. All of these things will be dealt with below and this is just to give the Court some perspective as Plaintiff(s) continue to de-spaghettify False Accusers' Perjurious spidery webs they have woven.

## PROOFS GO "POOF!"

1242.    False Accuser Bissell affirmed perjuriously (with Flanagan's Subornation of Perjury silence) to Judge Callahan on September 19, 2017 that she would be ready to go forward with Judge Murray with "Proofs" (PACS, pg 123) but Judge Murray said there was no physical evidence ever provided to the Court (See Entire Judgment, PACS, Exhibit 'N.')

1243.    Think of it – False Accuser Bissell claims that Dean was doing all of these predictable things to her constantly and she has zero evidence – but she and Flanagan **state or affirm to Judge Callaghan** that they do have the "proofs" in order to get the Amended TRO approved (and fraudulently conceal that the police report directly counters what is on the proposed Amended TRO). False Accusers have invented the most perverse stories that they can dream up – leaving out nearly no area of supposed sexual graphic violence and or other perversions of the Truth. There is not one recording of Dean's supposed predicable and constant threats during this entire time, despite False Accuser Bissell being a media whiz.

1244.    ...And then on top of that, Bissell said that she had a "bleeding" incident from her anus nearly two months after the supposed rape (Police Report, pg 3, para 1) – but Dean has a medical condition with his penis where he most recently had an emergency visit himself in September 2016 where he tore his frenulum and Bissell wants the world to believe that Dean is able to perform vile, violent, unlubricated anal rape to the extent that Ms. Bissell was bleeding from her anus two months later and sought no medical help whatsoever.  Dean sought no medical treatment anywhere after February 7, 2017 either – and that is because there was no rape – but this kind of story would give all kinds of help and cover the Imm defendants to make sure Plaintiff Dean did not file his Canadian Judicial Review and file in the USDC for their other crimes.

1245.    What's more, anyone who has had any sports injury knows that once they tear a ligament – any ligament – is never the same.  The frenulum is a ligament, and in Dean's case it has been a recurring issue for nearly 20 years – and Dean needs to be careful.   In Judge Murray's Court – after the False Accuser and the Vice Chair of the Subornation of Perjury Department at GG heard this, it slipped their minds to mention that False Accuser Bissell claimed that she was bleeding from her anus in April 2017.  Conspicuously absent from the criminal reprobate False Accuser Shivas and his derelict 'law (less)' partners in any of their false pleadings is mention of the False Accuser bleeding from her anus neither on February 7, 2017 nor in April, 2017.

**THERE IS NO PROOF FOR LAW DIVISION**

1246.    There is no evidence of False Accuser Bissell's supposed complaints in email or texts or otherwise. There is no contract with Saga – not even a draft version. There is no work product she claims she did.  False Accuser Bissell faked her own divorce (see above and below). False Accuser Bissell even lied about working in New Jersey going forward with Saga and on and on and on.

1247.    What there is, is the documented Perjury and Subornation of Perjury and Fraud here, there, and everywhere and this can only mean one thing inside the legal system: False Accuser Bissell and her False Accuser lawyers et al are guilty of Extortion (and many other troubling matters), Furtherance of Crime and Fraud on the Court and grievous scheme to defraud.

1248.    All Imm defendants are likewise culpable of each and every act of perjury and subornation of perjury as well as under terms of conspiracy of these entire matters for each legal matter contained herein on an aggravated basis.

**THE FLORIDA DIVORCE SHAM AND WHY AUGUST 1, 2017 MATTERS**

1249.    False Accuser Bissell fabricated evidence that she divorced her husband in mid - July 2017 in Florida in the Murray 2017 Court, but in fact Florida Court records show her husband divorced False Accuser Bissell August 1, 2017 – and then they moved in together in Florida - in the same apartment.  August 1, 2017, according to False Accuser Bissell, was the same day that False Accuser Bissell told her "husband" James Bissell of "the rape" (On the police report the date is given as July 30, 2017).  False Accuser Bissell said she and Mr. False Accuser Bissell "created" the TRO and (both went to the Cedar Grove Police to file the TRO).  After filing the TRO, Ms. False Accuser Bissell moved down to Florida and they are still there today - together living in Florida (See PACS, pg 254 – 257, PACS, pg 185, and PACS, Exhibit 26).  Fresh off a divorce to communal living and "common law marriage," which apparently does not exist in Florida and thus they are living together as "un-man" and "un-wife," for lack of a better term – but because False Accuser James Bissell is part of the Extortion Scheme as he and False Accuser Bissell went to the Cedar Grove Police Department together after crafting the false filing (See PACS, pg 257).

1250.    It is of note as well that on the Police Report it said that "their plan [was] to all go back to Florida [the night of August 9, 2017] to "heal" and get her therapy.  No mention that further plants to heal was to complete the Florida divorce that was just filed by Mr. Bissell, but claimed filed by Ms. Bissell to Judge Murray. Just like Bissell has a new meaning for "Happy Valentines' Day," apparently the new meaning for "healing" is "divorce." Who knew.

1251.     Mr. Bissell further was stalking Dean at the Family Court house September 26, 2017 and Dean has those photos; had Dean said one word to Mr. Bissell it would have been considered a criminal act. Mr. Bissell was likely recording it and he does not have even one syllable of Dean uttering anything.

1252.     False Accuser Bissell in her "Certification of Plaintiff in Opposition to Motion For Summary Judgement" states in para 40:

> "Due to my depression, my marriage was failing and I eventually filed for divorce in May, 2017. I eventually told my then – husband about my involvement with defendant Dean. This was in mid-July, 2017 after the filing of the divorce."

1253.     Again, in Judge Murray's Court the "depression" False Accuser Bissell came from all of the supposed threats of break and enter, re-rape (like last time) followed by mass murder each and every time False Accuser Bissell and Dean spoke on the phone and/or face to face. On the police report the "depression" was attributed to Dean not being a "credible businessman." Clear perjury and Barreiro Suborned this and in turn neither source of depression is true; the truth is that Ms. Bissell was not going to be Dean's full time girlfriend/next Mrs. Dean and in the PACS there is a full build out of this concept and now that the police report is in hand it totally validates the PACS.

1254.     Nowhere in False Accuser Bissell perjurious certification does she mention the August 1, 2017 divorce date where False Accuser Mr. Bissell filed for divorce in Florida; in fact – Ms. False Accuser Bissell does not mention the Florida August 1, 2017 divorce data at all to avoid the conflicting facts as illuminated here on this subject.

1255.     Moreover, the filing of the "first" divorce in New Jersey (that was subsequently moved to Florida August 1, 2017) did not happen in May 2017, it happened in April 2017 – just another inconsistency in telling the truth. False Accuser Bissell herself said so in Judge Murray's Court (See Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 44) where she was divorcing her husband because he and her children were coming home and False Accuser Bissell had to focus on her husband and children. Yes – that is what the evidence shows.

1256.     Keep in mind that Dean, up to late April 2017, was in Asia/Canada and had not been talking at all to False Accuser Bissell for six plus weeks and this was the time that False Accuser Bissell was preparing to file the divorce in New Jersey, Dean later learned. Moreover, False Accuser Bissell tried to blame Dean as the reason for the divorce which prompts a "this is non-responsive" from Dean's attorney (PACS, pg 183-184).

1257.     This "non-responsive" assertion from Dean's attorney in the Judge Murray Court had Mr. Perry just exasperated with Bissell's answering of the questions. Bissell was recycling all of her rehearsed and canned soundbites and was getting caught lying (More about this below).

1258.     Shivas, for his subornation of perjury part in all of this knew these material facts as well and approved of False Accuser Bissell's certification before it was fraudulently filed with the Court.

**IN JUDGE MURRAY'S COURT FALSE ACCUSER BISSELL SAID DEAN THREATENED HER TO GO TO A HEDGE FUND CONFERENCE; IN LAW DIVISION IT IS NOW AN INVITE, THEN A REQUEST.**

1259.     False Accuser Bissell would accuse Dean of supposedly threatened False Accuser Bissell "to go to a hedge fund conference" (See PACS, pg 37-38) on March 9, 2017, when the evidence is clear that she was invited by Dean and immediately and gleefully accepted (See texts 3/16/17 at 8:36 PM to 3/7/17 at 7:48 PM). False Accuser Bissell admits this fact in Law Division that it was an "invitation" by Dean and changes it to "at the request of the defendants," to take false jurisdiction over Klassen. Below are just a few examples of what she now claims in Law Division and there are more examples below.

> "At a hedge fund conference in March, 2017 that I attended at the invitation of defendant Dean…(CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, 37)." And….

> "At the request of defendants, Plaintiff attended a hedge fund conference in New York City on March 9, 2017…" Civil Complaint, February 5, 2017, para 49.

1260.     The record shows that Dean invited False Accuser Bissell to the conference and then False Accuser Bissell hounded Dean, and then Klassen (after Dean pawned her off to Klassen as Dean was preparing for his testimony at the Parliament of Canada in Ottawa (See PACS, Exhibit 23)) for hedge fund conference details, and False Accuser Bissell did not even know how to get a hold of Klassen as well as the fact that False Accuser Bissell claims that Dean threatened her to go to this conference (See PACS, pgs 141 – 143).  Also see the text messages (3/16/17 at 8:36 PM to 3/7/17 at 7:48 PM) that details all of the Truth with respect to it being an invite, the hound, and that Dean was going to be in Ottawa, Canada. The text messages also indicate that there was no "face to face" meeting to threaten her to go to this conference nor was there any phone call per Dean's phone records, and False Accuser Bissell notion that Dean "threatened her to go to the conference" is pure perjury. Keep in mind that the nature of the NJ PDVA and that the accused has very little time to prepare, and Dean could not have anticipated that False Accuser Bissell would turn a $1,300 free ticket for False Accuser Bissell to go to a hedge fund conference "invite" into some supposed "threat to go to the conference."  It just shows that False Accuser Bissell is at the absolute lowest level of moral depravity by even attempting to claim this perjury and for False Accusers Shvias et al to try to pawn this Evil off as Truth.

1261.     That False Accuser Bissell did not even know how to get a hold of Klassen is telling.  Although False Accuser Bissell misleads the Court(s), she had only minimal contact with Klassen outside Peretz.  Dean relies and incorporates the CERTIFICATION OF KEVIN KLASSEN, of February 1, 2021, herein as Klassen has plenty to say on this topic with his Evidence.

1262.     Yes, False Accusers Bissell and Shivas in 2019 falsely state this below about Plaintiff(s) "continuously" contact[ing] [False accuser Bissell] at her home.  False Accuser Bissell also leaves out the fact that she herself has been in Florida for a few times throughout this period as any meetings not involving sex took place in New York

City and not New Jersey per the entire text messages. As for Klassen contacting her "continuously" and "at her home" is outright Perjury and Subornation of Perjury as False Accusers Bissell and Shivas could look at the text messages and phone records between Klassen and False Accuser Bissell to determine this fact – unless she had deleted or fraudulently concealed those items too. No worries! Klassen has these documents, see link and text messages between Klassen and Bissell in exhibits immediately below:

> Throughout this period of time, defendants Dean and Klassen continually contacted Plaintiff at her home in New Jersey by text message and by telephone (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

> https://www.dropbox.com/s/tb0j3zdthbe3fo9/Amended%20Cert%20KK%2002-01-21.pdf?dl=0

1263.    False Accuser Bissell in her response to these "allegations" (read: 100% Truth) should produce these text messages with Dean and Klassen respectively (Bissell/Dean texts and Bissell/Klassen text) and show that False Accusers indeed have them on the Bissell phone and show how the contact was "continuous" with Klassen by texts and phone.

1264.    With respect to the police report, Bissell already herself stated at the onset of this circus (before the text messages were revealed as intact) that "they kept in touch" (police report, pg 2, para 1) and that "did continue to communicate and attend meetings together" (police report, pg 2, para 2).

1265.    False Accuser Bissell should also produce all of these phone calls with Klassen.  The Court will find out that indeed "all throughout" this period that Klassen was not texting and/or on the phone with False Accuser Bissell "continually."  Again, False Accuser Bissell makes it sound like it is so frequent like she did with all the supposed "threats" and her own "complaints," but for sure False Accuser Bissell is at best on Klassen's periphery, and what little communication there was it was mostly all initiated by False Accuser Bissell, and very little by Klassen.

1266.    Of note in the PACS, pg 35, False Accuser Bissell states that Dean essentially threatened her on the phone to go to the conference but Dean's phone records (See in sections "Face to Face Meetings" and "Phone Calls") show the two phone calls and two face to face meetings between "February 8, 2017 and April 24, 2017) – when taking into account the communication black out while Dean was in Asia/Canada per text messages (see PACS, pgs 141, 142, 143, 144, 151, 158, 159, 171, 246, 251, & 168). The Record shows that there was no phone call between False Accuser Bissell and Dean with respect to the Hedge Fund Conference as Dean secured the "conference ticket" for False Accuser Bissell on March 6th at the last minute, and there were no phone calls until April 24, 2017.

1267.    The text messages also show that there was no meeting between False Accuser Bissell and Dean between the offer of the Hedge Fund Conference Ticket and the Hedge Fund Conference itself.  Dean was in Ottawa, Canada for most of this time per the text messages between 3/6/17 at 8:36 PM and on 3/9/17 – the

hedge fund conference date.  False Accuser Bissell wanted the Judge Murray 2017 Court to believe that she was somehow threatened to go to the hedge fund conference and in Law Division False Accuser Bissell and Shivas just try to carelessly forget that False Accuser Bissell claimed it was a "threat" and now it is an "invite" then a "request" (because request is closer to a "demand"), that False Accusers Bissell and Shivas et al then try to parlay the invite into being her Saga Global Capital Management Employment Confirmation.  It is sick – but also, Fraud, Perjury, and Suborning Perjury and certainly Misrepresentation and Misconduct as well as a scheme to defraud.

1268.        Interestingly, Imm defendants worked with False Accusers to use this time as a supposed "threat" for Bissell to go to the conference, and really all of this is also a form of retaliation and intimidation under 18 USC § 1512 and 18 USC § 1513 because of Dean testimony to the Parliament of Canada the day before.

1269.        Here is what the text messages say. Dean said on 3/6/17 at 8:36 PM in text messages: "How would you like to go to a hedge fund conference on Thursday?"  At 9:14 PM False Accuser Bissell responds with: "I'm in, please give me the details so I can rearrange my week." Dean then pawns False Accuser Bissell off to Klassen to follow up with the ticket as Dean tells False Accuser Bissell on 3/7/17 at 7:45 PM: "Get with Kevin for invite. I will be in Canada CA for the day tomorrow" (which was March 8, 2017). Note False Accuser Bissell does not quibble with the word "invite." Instead, she says in reply at 7:48 PM: "Travel safety, which number does Kevin use here, Canadian or Connecticut cell?"

1270.        The further point that will be covered below is that all of this text messaging back and forth between False Accuser Bissell and Dean largely happens in the evenings and sometimes in the middle of the night. It is far more about a personal relationship than business. The Text Message Statistics section above and the link to the charts and raw data show this. See the text message statistics above.


**CLEAR AND CONVINCING OUTLINE WITH EVIDENCE OF PERJURY AND SUBORNATION OF PERJURY**

1271.        **In the PACS, from page 33 to 48 is CLEAR AND CONVINCING EVIDENCE of False Accuser Bissell, Flanagan, Barreiro, and Shivas et al's coordinated Perjury and Subornation of Perjury, and a scheme to defraud the Saga Enterprise as well as aimed at wrecking Dean's life (and Klassen's too) and it was paid for by the Imm defendants. Dean urges the Court to definitely pause and read PACS, pgs 33-48 of all of shocking and escalating fabrications of False Accuser Bissell and her attorneys.** Fabrication of threats going from 'a job' to 'get her' and 'no longer have a job with his company,' to outright fabrications of threats of break and enter, re-rape, followed by grisly 'mass murder' each and every time, "like the last time," (in direct reference to February 7, 2017, foreclosed on in the police report,) False Accuser Bissell and Dean spoke on the phone and met face – to – face (See PACS, pg 33 – 48).  That PACS do not contain allegations about the Imm defendants paying for this scheme to defraud.  Again, this has been a two step process: prove that the Bissell base allegations are utterly

fraudulent which is done and now step two is to connect the False accusers to the Imm defendants which is now well on the way.

**FALSE ACCUSER BISSELL ASKS DEAN FOR HELP WITH "FAMILY STUFF"**

1272.        There was False Accuser Bissell asking Dean for help with "Family Stuff" in texts (See texts 2/25/17 at 1:22 PM & PACS, pg 140). Rhetorically speaking, who asks a supposed hardcore rapist, 'hell bent' and "constantly threatening" to re-rape a woman after a break and enter and followed by murdering that woman, her family, and her *children*, for help with "family stuff?" The "help" was for Dean to make False Accuser Bissell her full-time boyfriend/next Mrs. Ryan Dean.  It is further Evidence that what False Accuser Bissell and her gaggle of attorneys et al have been trying to Extort Dean and get paid off for their extreme criminality and try to murder Dean by sending him off to State Prison for the rest of his natural life.

**FALSE ACCUSER BISSELL TEXTS DEAN AT 1:36 AM, THEN CALLS DEAN AT 7:05 AM. FALSE ACCUSER BISSELL SAYS DEAN THREATENS HER WITH 'HE HAS THE "CODES TO HER GARAGE."**

1273.        There was an early morning phone sex call on February 27, 2017 (obviously the call took place after February 7, 2017 – false rape report date), after an unclaimed 'booty call' by Dean the previous evening in the text messages (2/26/17 at 2:42 PM to 2/26/17 at 6:15 PM), False Accuser Bissell turns this early morning phone sex call at 7:05 AM the next morning on February 27, 2017 into a fabricated threat that "Dean has the codes to her garage" (See PACS, pg 161) that included the notion "just like last time" in the Amended TRO. In the Police Report the February 7, 2017 incident was supposedly never spoken of again except now it was spoken of each and every time Bissell and Dean spoke on the phone and face to face and in person under terms of extreme threats as well as Dean being "very angry." None of this supposed "anger" in the text messages between Bissell and Dean.

1274.        Keep in mind that the 'garage codes' did not appear in the original TRO and only appeared in the amended TRO, after receipt of the text messages to the False Accusers.  They had the police report and connived and schemed with one another to twist the February 27, 2017 texts into threats thinking the Dean would never get the police report.

1275.        First, the notion of the "Unclaimed booty call" of February 26, 2017, can be compared to the "Unclaimed booty call" of April 25, 2017.  On April 25, 2017, False Accuser Bissell said that Dean tried to return to New Jersey (See PACS, pg 166 – 167) which is true. Dean texted False Accuser Bissell on this day.  Dean had not seen False Accuser Bissell for over six weeks and she said she was sleeping (and then would say in Law Division "she refused," and that will be covered below in another section.  For this section it is sufficient enough to know that Dean came off an airplane and wanted to see False Accuser Bissell for more sex.  The same can be

said of February 26, 2017, when Dean came off an airplane yet again but this time it was False Accuser Bissell who wanted the sex, that was unclaimed by Dean.

1276.    False Accuser Bissell had texted Dean at 1:36 AM "Obviously didn't connect last night…" and then this is what False Accusers Bissell and Flanagan et al came up with on the Amended TRO after receiving the text messages about the text messages nor about the unclaimed "booty call" that they perverted into the "Garage Codes" Perjury.

1277.    Nor did they tell Judge Callahan about False Accuser Bissell in texts the next day on February 28, 2017 at 3:46 PM offering Dean a <emoji smiley face with wink>.  These are Key Subornation of Perjury matters on these points alone that warrants the disbarment of Robert Flanagan III and Darren Barreiro, Greenbaum, Rowe, Smith and Davis LLP's "Vice Chair of the Litigation Department."

1278.    None of these facts noted above made it before Judge Callahan but there was some serious Perjury and Subornation of Perjury in front of Judge Murray as False Accuser Bissell later labelled Dean's texts in front of Judge Murray as having a certain 'tone' (See PACS, pg 67) and that Dean was "pretty smart" about not including any threats in the text messages (See PACS, pg 150). Here is the series of sub-events:

   i.    For this February 27, 2017 text message problem where False Accuser Bissell at 1:36 AM was pining away to Dean, False Accuser Bissell and Flanagan et al would fabricate a story about Dean saying and threatening that he had the "garage codes," and would then "break and enter into False Accuser Bissell's home, re-rape her, and then murder False Accuser Bissell, her family, and her children," "like the last time." There was no motive given to Judge Callahan nor Judge Murray for Dean to do this.

   ii.   In Law Division (See Civil Complaint, February 5, 2017, para 45 below) – after subtracting out the mass murder threats (that also Judge Callahan did not hear about), False Accuser Bissell and Shivas et al added in that the supposed motive was that Dean had not sent some information over to the Peretz contacts – which is a few computer key strokes with readily available documents that Dean and Klassen had frequently done to many other prospective investors.

   iii.  In any event, the text messages of early February 27, 2017 show Dean in response to False Accuser Bissell saying in texts "…did you send that info to Craig's people for the meeting? They need time to review it and potential investors," to which Dean replied on 2/27/17 at 6:51 AM: "Will do first thing," and of course this Dean text also never made it into Judge Callahan's ears or eyes either, nor did the text on February 25, 2017 at 10:13 AM: "Just finished [h]ear with the half wits. We will send Craig's guys what they need this weekend.  Hope all is well."  "Half wits" is another term for Imm defendants that Dean used.

a. A few points here and that is clearly Dean is not threatening False Accuser Bissell about the information to be sent to the investors.   Dean is also being kind and gentle with False Accuser Bissell by saying in texts: "Hope all is well." False Accuser Bissell responds with "Thank you Ryan," and according to False Accuser Bissell, at this time, that is not a "complaint,' – yet.

b. It shows that Dean is not paying that much attention to False Accuser Bissell for he would not say "hope all is well," if he knew what she was up to and in turn that meant that he was actually not communicating with her that much.  It corresponds with what Bissell said in the police report with "keep in touch."

c. Records show that there was no face-to-face meetings nor phone calls between Dean and False Accuser Bissell from February 8, 2017 – February 26, 2017, until there was the February 27, 2017 "phone sex" call at 7:05 AM, right after Dean said "will do first thing," via text. False Accuser Bissell said in Judge Murray's Court that all threats were done in person or by phone, and that Dean was "very angry" every time that [Dean] spoke to [False Accuser Bissell] and that Dean was "pretty smart" about not putting any threats in the texts (See PACS, 150).

d. False Accuser Bissell committed perjury in the Judge Murray 2017 Court with respect to this very time frame by stating that she was furthering the hedge fund by facilitate[ing], and that she did what she was told to by [Dean] and that she thought [Dean] was going to *kill her kids*. Again, in the police report, Bissell foreclosed on the possibility of threats with respect to anything related to February 7, 2017, and break and enter, re-rape, mass murder, 'like the last time,' qualify to have "kill her kids" included under the scheme to defraud umbrella.

e. But since there was no Face-to-Face meetings and there was no phone calls during February 8, 2017 – February 26, 2017 (False Accuser Bissell said all the threats were done on phone and face to face thereby eliminating skype, facetime, and so on and so forth (see para 156 herein), then the only possible mode of communication left is text messages.

f. The texts from February 8, 2017 to February 26, 2017 show that indeed it is False Accuser Bissell telling Dean what to do in the text messages during this time including to have a "Happy Valentines' Day," and then that she wanted to know her "percent," and the Intentions financially," and asserting that it is the "proper way," that she "can't speak today," but wants help with her "family stuff," as well as a request to "help [False

Accuser Bissell] sort this out, to "Call [False Accuser Bissell] when you ([Dean]) land, as well as that she is making a 'booty call 02/26/17,' and her enquiry "did you send that info to Craig's people for the meeting? They need time to review it and potential investors."

g.   Peretz sent a reminder email on February 24, 2017 – a Friday evening - to Dean, Klassen, and False Accuser Bissell about this information that he wanted to go to the institutional people. See the Certificate of Kevin Klassen, February 1, 2021.

h.   False Accuser Bissell and Shivas et al were "pretty not smart" about all of this perjury and subornation of perjury and scheme to defraud the Saga Enterprise. False Accuser Bissell was the one who verbally asked Dean to set the meeting up with Peretz on February 8, 2017 before he departed by Uber that early morning, and Dean later followed up with False Accuser Bissell on February 8, 2017 to do so, and Bissell did set up this one meeting during this time. Judge Murray made note of this too (See PACS, pg 27).

i.   Here is what False Accuser Bissell and Shivas et al told Judge Gardner in Law Division that constitutes aggravated Perjury, Subornation of Perjury, and Fraud on the Court, that they brought forward from the Judge Callahan Court and the Judge Murray Court. It is literally "Fraud on the Court" of a "Fraud on the Court" of a "Fraud on the Court."

j.   Behold the (Fraud on the Court)[3]

> "When Plaintiff followed up regarding the lack of information provided by defendants prior to the institutional meeting, defendant Dean threatened Plaintiff, stating "I have the codes to your garage door, I can get into your house. It is big and remote, and nobody will ever hear me and no one will hear you scream like last time – am I clear?" Civil Complaint, February 5, 2017, para 45.

**NO ONE IS ABOVE THE LAW**

1279.      The law does not say that partners at big prestigious New Jersey law firms are above the law.  Of course, the Subornation of Perjury goes far beyond this and there are numerous other grounds to disbar all of these attorneys and sanction them to strip them of all they have, and all that they are going to have, and award their net wealth to Plaintiff(s) for the willful Evil Extortion and Criminal Coercion et al stunt that they are caught in and that they have perpetrated upon Dean, Klassen and the Saga Enterprise for extortion takes and the attempted murder.

1280.      Greenbaum, Rowe, Smith and Davis LLP also need to pay dearly, as they are having their own "Enron/Arthur Anderson" moment. The Public IS GOING TO FROWN on what has transpired herein, and the Public's CONFIDENCE in the NEW JERSEY LEGAL SYSTEM is going to be very low if _all defendants_ are not

punished severely and Plaintiff(s) not made whole for all of the damage, and suffering they have unjustly caused for Extortion Takes. The Constitution of the United States does not say "We the Lawyers" nor does it say that peoples' lives can be falsely turned upside down in legal proceedings with knowing willful false accusations, and when found out, and exposed, that lawyers get a "pass" because of Litigation Privilege.  Schemes to Defraud are outlawed by command of the Congress and Litigation Privilege does not override that nor does it override the RICO Statutes.  These reprobates owe Dean tens of Millions of dollars and must be made to pay dearly for the Public to look upon this matter that it has concluded justly.  Imm defendants are equally culpable for everything here stated as well as culpable of conspiracy to do everything stated herein.

**FALSE ACCUSER BISSELL FABRICATES A NON-COMPETE CLAUSE WHILE PROMOTING HERSELF ON FACEBOOK DOING PRECISELY WHAT SHE SAYS SHE IS FORBIDDEN TO DO.**

1281.    Fabrications that False Accuser Bissell's non-compete clause from her previous employer kept her from working in the diamond, gem, and jewelry business - but there she is on Facebook promoting herself via "Classic Luxury, LLC" doing precisely the things she claimed to Judge Murray that she was forbidden from doing by trying to promote diamond, gem, and jewelry (See PACS, pg 234) with voluminous entries during the supposed non-compete period. Shivas in 2019 also reiterates this supposed non-compete agreement by stating:

"After she left her previous employment, she was subject to a noncompetition agreement (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, PG 3, Para 3).

1282.    Mr. Bissell contradicts this notion and on the police report: "She started networking and attempting to get a business running, but it continued to be unsuccessful." Police Report, pg 3, para 3.

1283.    The whole point of False Accuser Bissell committing perjury on the stand in Judge Murray's Court room surrounding this issue on September 26, 2017 was so that she could pretend and mislead the Court that Dean had somehow paralyzed and permanently damaged Bissell's career by Dean's Lawyer's private investigator calling over to False Accuser Bissell's former employer Pure Grown Diamonds to ask questions in Dean's defense of the impending TRO/FRO hearing a few days away, and see about the reasons why Bissell was no longer there at Pure Grown Diamonds.  The Private Investigator enjoyed litigation privilege as does Dean. Klassen also enjoy Litigation Privilege as he is a privy to Dean but did not participate in any of the 2017 proceedings at all and certainly did not arrange for the Private Investigator.  Palumbo, Dean's lawyer, arranged for that.

1284.    Suffice it to state that Dean's attorney had good reason to take this action inside Dean's defense of the false TRO/FRO proceeding where Dean was, and still is today in Law Division, being willfully and knowingly falsely accused but it appears that this may be ending now that the police report has been secured in Plaintiff(s)' opinion.

1285.    Indeed, there is virtually no area of False Accuser Bissell's testimony or pleadings that stand up against the scrutiny of the Evidence, the Facts, and her own changing stories that has Truth as its underlying foundation.

False Accuser Bissell has literally found way a way to pervert nearly every aspect of her story. This next one is perhaps the greatest one of all and at the end of the day False Accuser Bissell will forever be known as the **"Happy Valentines' Day False Rape Accuser."**

### ACCORDING TO FALSE ACCUSER BISSELL - HAPPY VALENTINES' DAY MEANS WHAT?

1286.    Bissell did say on the Police Report that "she wished Mr. Dean a "happy valentine's day" via text message. Kindly indulge your litigant for a moment with the dictionary meaning of the words "wishing," "happy" and "valentines' day."

1287.    The meaning of "wishing" according to dictionary.com means by the root word "wish" the following:

      i.    To want; desire; long for (usually followed by an infinitive or a clause)
      ii.    To desire (a person or a thing) to be (as specified)
      iii.    To entertain wishes, favorably or otherwise
      iv.    To bid, as in greeting or leave-taking
      v.    To request or charge
      vi.    To desire, long, yearn and so and so forth.

1288.    Dictionary.com lists the word "happy" as:

      i.    Delighted, pleased, or glad, as over a particular thing: to be happy to see a person.
      ii.    Characterized by or indicative of pleasure, contentment, or joy: a happy mood; a happy frame of mind.
      iii.    Willing to be helpful, as with assistance, a contribution, or participation: We'll be happy to bring a couple of salads to the party.
      iv.    Favored by fortune; fortunate or lucky: a happy, fruitful land.
      v.    (used as part of an expression of good wishes on a special occasion): Happy Valentine's Day to my husband. Happy Birthday, Grandpa!
      vi.    Apt or felicitous, as actions, utterances, or ideas.
      vii.    Obsessed by or quick to use the item indicated (usually used in combination): He was a trigger-happy gangster. Everybody is gadget-happy these days.

1289.    "Valentines' Day" means accordingly to this article with some history and contemporary meaning (see link immediately below) that: Valentine's Day is most commonly associated with romantic love, with millions of Valentine's Day cards being exchanged each year. Gifts of flowers or a single red rose are sent with romantic messages to loved ones and couples spend special time together.

        https://www.dropbox.com/s/kzl5a6fq9wz06uz/What%20is%20Valentine%27s%20Day_%20Why%20do%20we%20celebrate%20on%20this%20day_%20_%20Roses%20Only.pdf?dl=0

1290.    False Accuser was surprised by the text message history being produced by Dean (recall that False Accuser Bissell thought these were destroyed by Dean), and the outlandish Fabrication of False Accuser Bissell's unsolicited wish of "Happy Valentines' Day" text to her "boyfriend" (Dean), according to False Accuser Bissell in the 2017 TRO (See PACS, pg 116), meant as she Perjuriously testified in Judge Murray's 2017 Court, that this text of February 14, 2017 was "her way of saying" she would be "silent," "compliant," "tell no one," and "do whatever [Dean] directed her to do." No longer did the ordinary meaning of "Happy Valentines' Day" – which

the world over is..."Happy Valentines' Day" suddenly apply to False Accuser Bissell and Dean (See PACS, pg 133, PACS, pg 148 - 151), according to False Accuser Bissell.

1291.     To the police, Bissell stated that she "wished Mr. Dean a "Happy Valentine's day" via text message. Keeping in mind usually when a person is having sex with another and wishing them "happy valentine's day" it implies some level of "romance," but in the police report Bissell falsely stated "[a]fter dinner, he took another bath, and then they had consensual sex in the bedroom with a condom. Mrs. Bissell said that their encounters were very business-like and not romantic at all" (Police report pg 2, para 1).  It is more outlandish that "business plans in the bathtub."

1292.     This is absurd what False Accuser Bissell claims, and Barreiro Suborned and supported this false Perjurious notion without even blinking – it is clear that they had rehearsed this "testimony" as they had to somehow get around this very inconvenient "Happy V-Day' text False Accuser Bissell sent on an unsolicited basis to Dean 1 week after some supposed heinous rape that left False Accuser Bissell bleeding from her anus (See PACS, pg 135 – 140) as well as the supposed threats that he was going to kill her and kill her kids (See PACS, pg 34).

1293.     Further, this "secret code" False Accuser Bissell sent Dean in the form of "Happy Valentines' Day" text was left to Dean to "decipher," as there were no phone calls, nor face to face meetings until the 7:05 AM "phone sex" call on February 27, 2017 for False Accuser Bissell to explain to Dean what obviously he missed interpreting "correctly" on February 14, 2017 that "Happy Valentines' Day" now meant "her way of saying" she would be "silent," "compliant," "tell no one," and "do whatever [Dean] directed her to do." No mention of this new meaning of Happy Valentines' Day to the police either.

1294.     On February 14, 2017, Dean responded to False Accuser Bissell's unsolicited text, with a text of his own and he said: "Happy Valentines' Day back…." Plaintiff(s) are predicating at some point that False Accusers will state that Dean's text of Happy Valentines' Day to False Accuser Bissell was indeed a veiled threat.

1295.     Back to reality. The text messages from February 14, 2017 to February 27, 2017 also do not contain any further "clues" to this "mystery code of the new meaning of Happy Valentines' Day" because obviously Dean did not get the "secret code" in the first place that False Accuser Bissell claims she was trying to communicate to Dean, for why else would Dean reply with a "Happy Valentines' Day" text to False Accuser Bissell?  In fact, there were two quick texts on February 15, 2017, and no texts again until February 25, 2017 – so there were no threats nor complaints and no face to face meetings, or phone calls as detailed herein.

1296.     What's more, is that False Accuser Bissell invalidate her own story with respect to this "Happy Valentines' Day" text and the "secret code" she mysteriously assigned to it.  According to False Accuser Bissell, she was already "complying" with the supposed "threats" on February 7, 2017 and February 8, 2017, by not contacting anybody or telling them of what (falsely) happened, and in turn, this means there would be no need

to wait a week later to say "Happy Valentines' Day" and to tell Dean (in "secret code") and that it was False Accuser Bissell's "way of saying" that she was going to be "silent," "compliant," "tell no one," and "do whatever [Dean] directed her to do" (See PACS, 122 & 211).

1297.　　　The text messages on February 8, 2017 show that False Accuser Bissell is happy and cheerful too and eager to set up a meeting with Peretz and even says "thank you."

1298.　　　How about this?  How about False Accuser Bissell sent Dean an Unsolicited Happy Valentines' day text on February 14, 2017 – because on that day she meant "Happy Valentines' Day" – no more and no less - and that False Accuser Bissell has twisted all of this into one of the greatest false rape accusation falsities in the history of our nation. Perjury and Subornation of Perjury "Kudos" go out to False Accusers Bissell, Flanagan, and Barreiro for trying to cover their Extortion tracks with this "Spin Doctor" Mentality. It almost worked but y'all are caught with the Imm defendants.

1299.　　　As another very important aside, there was an eye-witness that early February 8, 2017 morning when the Uber driver pulled up in front of the False Accuser Bissell house and saw False Accuser Bissell there helping Dean with his luggage that he had with him from the airport the previous night. Dean had more luggage than usual as he had come back from the Miami Hedge Fund conference. The Court needs to help Dean get a hold of this man as the police cannot find him and the police think he has left the country.  False Accuser Bissell falsely claims that she did not help Dean with his luggage early in the morning in the Judge Murray Court. The Uber Receipt appears in Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, Evidence D2. Dean and the Uber driver talked about it and there is a good chance that this Uber driver saw Dean and False Accuser Bissell in front of her house because it was a long trip from Cedar Grove to Staten Island.  Dean and the Uber driver talked about the woman (False Accuser Bissell).

**FALSE ACCUSER BISSELL CLAIMS SHE DID WORK PRODUCT FOR DEAN – WHERE IS THIS WORK PRODUCT?**

1300.　　　False Accuser Bissell claims that she continued to do whatever Dean directed her to do but Dean did not (outside of the Peretz related matters that False Accuser Bissell herself was originally pushing along so she could get a 'gig' with Dean's company) direct False Accuser Bissell to do anything. There was a little bit of prep in a short phone call for the CBC interview after Dean returned from his Asia/Canada trip in late April 2017 (Read herein Entire Text messages and CBC Interview portion at the end of April 2017 as it is critical to expose the Fraud on the Court as well as "BISSEL'S FALSE CLAIMS THAT SHE SAYS SHE WOULD "NO LONGER COMMUNICATE WITH DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION" AND SO ON AND SO FORTH ARE FALSE BECAUSE THE PHONE CALL NEVER TOOK PLACE."

1301.　　　False Accuser Bissell claims she produced Work Product for Dean (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, Paras 17, 25, 36,) which was minimal and related to

Peretz – False Accuser Bissell did not create any Work Product or "correspondence" for Dean for any outside Peretz matters. Dean challenges False Accuser Bissell et al to produce all of this work product as well as the references in the text messages or emails or otherwise showing where Dean is requesting (or demanding) any of this Work Product from False Accuser Bissell, and False Accuser Bissell delivering Work Product to Dean via email or other electronic communication. Saying that she handed it over to Dean in the bathtub will not do. Sucking on toes is not "work product."

1302.    Any of this work product is also definitely not done over the phone either nor face to face – as this is deliverable work product – and these infrequent phone calls and face to face visits are too few and are accounted for in detail (See sections "Face to Face Meetings and "Phone Calls"). The text messages too, outside of the Peretz matter, do not talk about other activities False Accuser Bissell is performing for Dean, Klassen, or Saga. And because it is work product, there should be emails with this work product and there is not anything outside of the Peretz matter – but that is between Peretz and Saga – none of which was produced by False Accuser Bissell (see the CERTIFICATION OF KEVIN KLASSEN, dated February 1, 2021) for more information). Saying she handed to Dean on a napkin this work product is not going to "cut it" either at this point. It is entirely a scheme to defraud and False Accusers et al are caught.

1303.    The overall point is this – just as False Accuser Bissell is puffing up the number of phone calls and face to face meetings by using terms such as "Each and Every Time," and using words such as "continuously," and "constantly," with respect to the supposed threats and her supposed reporting of "sex harassment" complaints, this too is a case where she makes the Peretz items seem like it pertains to many other outside Peretz matters – when without question it does not. Finally, False Accuser Bissell says that she was being threatened to do all of these things and that she was complying and "doing whatever [Dean] directed her to do," the question is: where are all these directions in texts or elsewhere? Dean is hardly communicating to False Accuser Bissell and her False Accuser Associates-In-Fact know this too and yet the persist in their scheme to defraud.

1304.    False Accuser Bissell and Shivas et al's entire pleading is an utter sham and meets the definition of Fraud on the Court and they should be stripped of Litigation Privilege.

**DEAN AND KLASSEN IN ASIA/CANADA FOR MORE THAN HALF OF THE TIME FALSE ACCUSER BISSELL CLAIMS THE TERRIBLE THINGS SHE SAYS HAPPENED TO HER BETWEEN FEBRUARY 8, 2017 AND MAY 1, 2017 - AS WELL AS WHEN AT THE SAME TIME SHE WAS SUPPOSEDLY "CONSTANTLY COMPLAINING" AND RECEIVING ORDERS FROM DEAN AND PRODUCING ALL OF THIS 'VAGUE' WORK PRODUCT**

1305.    The Fabrications that Dean was threatening False Accuser Bissell was something that Judge Murray did not buy herself (See PACS, pg 17). The supposed constant threats et al between February 8, 2017 to May 1, 2017 did not happen, and simply could not have happened for more than half of this time False Accuser Bissell claims it did, because Dean and Klassen were in Asia/Canada as the text messages show (See March, 10, 2017 – April

21, 2017 (THE BLACKOUT)). See Dean's phone records (See PACS, Exhibit 14) showing Dean was [roaming] in Hong Kong and the Philippines and his airline ticket (See PACS, Exhibit 11) confirms this (See sections "Face to Face Meetings and "Phone Calls" and "PHONE RECORDS, AIRLINE TICKETS, AND ROAMING IN HONG KONG/PHILIPPINES. TEXTS CONFIRM THIS AS THERE IS A COMMUNICATION BLACKOUT DURING THIS SAME PERIOD" for much more detail.

1306.      Dean only spoke with False Accuser Bissell twice on the phone from February 8 to April 24, 2017 (as detailed herein). See also PACS, pg 154, for total of 85 days in USA and days outside USA during the period of February 8, 2017 and May 1, 2017.

1307.      Likewise, if Dean is not around to "threaten" False Accuser, Bissell he is certainly not around to receive her complaints, and especially so if there are on phone calls or face to face meetings. Dean is also not around to direct her to do all of this supposed work product and False Accuser Bissell is not giving Dean all of this work product. Again, no mention of threats and complaints on the police report.

1308.      Monstrously, False Accuser Bissell herself claimed in Law Division "throughout this time," which meant from March 9, 2017 to April 25 that Dean was harassing her.

"...Plaintiff attended a hedge fund conference in New York City on March 9, 2017...Defendant **Dean continued to contact Plaintiff with requests for her assistance. Plaintiff was too afraid not to do as directed by defendant Dean because he repeatedly** told her he would "**get her**." Though out this time and up until the end of April, 2017....During this time, Plaintiff's depression worsened and she was in a constant state of fear and anxiety relating to the February 7th assault and defendant **Dean's ongoing harassment** of her." (Civil Summons, 49-53, 2019)

1309.      In the police report there is not nary a note of the term "get her," but like "Happy Valentines' Day" and "business plans in the bathtub," this "get her" also had a purpose and that was that if Plaintiff Dean tried to defend himself from this scheme to defraud, False Accusers would twist that into somehow Dean was "retaliating." Look at what False Accusers did with a three – minute phone call made by a private detective to Bissell's former employer Pure Grown Diamonds.

1310.      According to the Police Report, this "depression" was because Dean was supposedly not a credible businessman and that is when Bissell because "withdrawn and depressed. She contemplated suicide and divorce to get out of the situation." In Judge Murray's Court there was no mention of suicide but instead these supposed threats were related to "like the last time," re-rape and Mass murder and so on and so forth were what was driving the Bissell's depression.

1311.      Here are the possible days that Dean could possibly be doing this harassment (see Face to Face Meetings herein and Dean's phone records (PACS, Exhibit 14):

              1 Face to Face: March 9, 2017

              6 Phone calls: April 26, 2017 – April 28, 2017

1312.          There are four main points to glean from this Perjury and Subornation of Perjury above in the Civil

Summons, para 49 – 53. First, the 6 phone calls between April 26, 2017 – April 28, 2017 are explained in the CBC

Interview herein and "BISSELL'S FALSE CLAIMS THAT SHE SAYS SHE WOULD "NO LONGER COMMUNICATE WITH

DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION" AND SO ON AND SO FORTH ARE FALSE BECAUSE

THE PHONE CALL NEVER TOOK PLACE" and that totally further obliterates False Accusers entire false claims.

1313.          Second, False Accuser Bissell is saying "Dean continued to contact Plaintiff with requests for her

assistance. Plaintiff was too afraid not to do as directed by defendant Dean because he repeatedly told her he

would "get her." Of course, "get her" was not on the TRO but appeared on the Amended TRO so she could

create hysteria about the Private Investigator (See below in para 228).  "Though out this time" and up until the

end of April, 2017" is utter and total Perjury, Subornation of Perjury, Misrepresentation and Misconduct, and a

scheme to defraud because from March 10, 2017 to April 21, 2017 there is a text message "blackout" between

Dean and False Accuser Bissell.   Dean's Airline ticket to Asia and no phone calls to False Accuser Bissell

corroborate this.

1314.          Third, here False Accuser Bissell uses the term "get her," but in Judge Murray's Court it was all about

"Mass Murder" (See PACS, pg 17 and pg 34) and "get her," was not mentioned to Judge Murray.  Of course, "get

her" also did not appear on the TRO but did on the Amended TRO for the reason that False Accuser Bissell used

her "Spin Doctor" mentality skills to twist the Private Investigator's 3 - minute phone call to ask questions into

putting into the Amended TRO – after the fact - and not on the TRO: THE DEF THREATENED THE PLA BY SAYING

THAT IF SHE EVER SAID ANYTHING ABOUT THE ASSAULT HER WOULD 'GET HER.' In Law Division, it changed

again as False Accusers Bissell and Shivas 'word-smithed' with this: "Within three days of defendant Dean being

served with the complaint and application for restraining order, he hired a private investigator to contact my

former employer in Iselin, New Jersey and falsely stated to that employer that I was under investigation for

fraud. This was a false statement but it was consistent with defendant Dean's prior threats to me that he would

"**ruin me**" if I ever told anyone what had happened in my home that night (CERTIFICATION OF PLAINTIFF IN

OPPOSITION TO MOTION FRO SUMMARY JUDGMENT, para 47).

1315.          "Ruin me" is not on the TRO nor is it on the Amended TRO nor the police report.  "Ruin me" did appear

in the Judge Murray Court but in a different context (See PACS, pg 220) where False Accuser Bissell essentially

said her family was (already) ruined because of the supposed threats (that on the police report were

foreclosed), and that she was going to get a divorce because of these supposed threats, and in fact everything

was ruined because of these supposed threats that had taken place, and that she had to separate from her

family.

1316.          By now the Court will appreciate the term "de-spaghettify" a little better as it has been quite task to

document and detail these matters; a lot of thought and effort by the False accusers went into this scheme to

defraud. It took a lot more effort to catalog and detail it all and again try to make sense of it all.   Admittedly, this complaint could have used a few more major edits but again because of the looming April 20, 2021 four-year anniversary of the Board Trial (April 20, 2017) and because Plaintiff(s) are fighting on numerous legal fronts all at one this is the very best Plaintiff(s) can do at this time.

1317.     But False Accuser Bissell was not quite done as she stated: "Defendants' contact with my former employer was a definite step in Dean's making good on his **promise** to "get me" and "ruin me" if I ever reported his assault (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 50). In False Accuser Bissell's CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, para 39 states: "…I feared that he would hurt me **OR** my family, but I could not longer handle the stress." Shivas in PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, Pg 5-6 would use the word "**AND**." In any event "hurt False Accuser Bissell or her family" in this context could be financial or whatever but it is **still NOT THREATS OF MURDER** flowing from re-rape and break and enter per what False Accuser Bissell claimed in Judge Murray's Court. Finally, False Accuser Bissell has one more spin because she falsely says that all of these things are "threats" but now it is a "promise."  It is an utter and complete scheme to defraud.

1318.     As Plaintiff(s) somewhat appreciated the discounted extortion offer from $875,000 to $180,000 from False accuser Shivas (See PACS, Exhibit 2 and the "offer of judgement submitted by Shivas into the Record May 19, 2020) Plaintiff(s) also somewhat appreciates that False Accuser Bissell is no longer calling Dean a "heinous about to be mass murderer in Law Division," but instead "just" says Dean is threatening to "hurt" her family (discounted threat perhaps?):

> "Defendant Dean's telephone contact with me ended around May 1, 2017. I was no longer able to communicate with him. I had become severely depressed and I could not go on speaking with him.  I still feared that he would hurt me or my family, but I could no longer handle the stress that I was under and the depression that I had experienced" (CERTIFICATION OF PLAINTIFF IN OPPOSITION FOR SUMMARY JUDGEMENT, Para 39).

1319.     In the police report it appears that Bissell said that the contact ended before April 10, 2017 (See pg 3, para 1) and this is more evidence that she deleted her own text messages.  The text messages say May 1, 2017 and that is easy to find because Dean did not destroy/conceal his text messages.

1320.     That being said, what False Accuser Bissell and Shivas are doing here by dialing back the supposed constant "Mass Murder Threats" - that were central to the Judge Murray 2017 Court - supposedly involving False Accuser Bissell, her family, and kids, now eliminates the "Murder" and is a "get her." False Accuser Bissell changes her story again on this subject in Law Division where she cites her family and in the CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 39, and this should be added to the CBC Interview post perjury and "BISSELL'S FALSE CLAIMS THAT SHE SAYS SHE WOULD "NO LONGER

COMMUNICATE WITH DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION" AND SO ON AND SO FORTH ARE FALSE BECAUSE THE PHONE CALL NEVER TOOK PLACE."

1321.    Fourth, False Accuser Bissell would say to Judge Murray (2017) something different where False Accuser Bissell stated that every time Dean threatened her it made her depression worse and that was what made her supposedly "keep going" (See PACS, pg 219-220). In the Police Report, it was that Dean was not a "credible businessman" and that the False Accuser Bissell essentially was not going to get the 'big payoff.' In another words, Bissell is saying the police report, that Dean was not a credible businessman and in turn that meant there was not going to be any money and in turn this was the true source of her depression – according to Bissell.

1322.    Bissell herself in the police report all but admits that her scheme to defraud is all about money and extortion and Bissell, by all her lies, has made this clear and all defendants are culpable of extortion and conspiracy to commit extortion as well as attempted murder to try to extort and innocent man and send him to prison for the rest of his natural life as well as all of their other predicate acts.

1323.    Bissell was not going to get the 'big payoff' because Dean made it clear to her that she was not going to be the next Mrs. Ryan Dean and that is what really had her depressed and not any threats or lack of Dean being a good and credible business man. Dean did not even call her once while he was in Asia/Canada for six weeks + to drive home the point that she was not going to be the next Mrs. Dean – but she and Dean could have casual sex from time to time.

**PHONE RECORDS, AIRLINE TICKETS, AND ROAMING IN HONG KONG/PHILIPPINES. TEXTS CONFIRM THIS AS THERE IS A COMMUNICATION BLACKOUT DURING THIS SAME PERIOD.**

1324.    Had False Accusers Flanagan/Barreiro et al not violated Dean's Federal Due Process rights in 2017, and put these allegations in the TRO/Amended TRO, about supposed constant threats of "mass murder" all throughout this period (instead of the 'surprise the Court and Dean' maneuver they pulled), Dean would have produced the airlines tickets (PACS, Exhibit 11) for Klassen and himself, and then pointed to the BLACKOUT in texts, as well as Dean's phone records (See PACS, Exhibit 14) showing Dean is "roaming" in Hong Kong and the Philippines during said BLACKOUT. Had they produced the police report they would not dared try the "murder threat" false perjury and subornation of perjury. The further point is that nearly all of this information can be gleaned from the text messages the "Text Messages Statistics" below illuminate the true state of facts.

**MONTHS TO PLAN THE SHAM LITIGATION FOR FALSE ACCUSER BISSELL ET AL; ONLY MOMENTS FOR DEAN TO REACT IN 2017 COURT**

1325.    Consider also that False Accusers Bissell, Flanagan, and Barreiro et al had months to plan what they were going to accuse Dean of for the **entire fabricated story** and its changing escalations of it and Dean had no time whatsoever to **prepare for it all** as much of it was not in the TRO and/or Amended TRO – even though it contains some of the most damaging accusations.  They simply surprised Dean with this and tried to shock the

Court with more fabricated stories including supposed constant threats of mass murder (each and every time False Accuser Bissell and Dean spoke face to face or in person). False Accuser Bissell, Flanagan, Barreiro, and in 2019 Shivas too can glean from the texts when the phone calls were made, and when the face to face meetings were made, as well as the fact that they have access to False Accuser Bissell's phone records.

1326.    It took Dean months to unwind the spaghettification of what False Accuser Bissell/Flanagan/Barreiro/Shivas et al plotted and schemed in the form of the investigation of the PACS – that Shivas asked for and received in his interrogatories but denied receiving (so he was recently sent another copy).

**THE TEXT MESSAGES HAVE ALL OF THE RELEVANT INFORMATION TO PROVE DEAN IS INNOCENT AND THAT FALSE ACCUSER BISSELL AND HER LAWYERS ARE FRAUDS, AND SCHEMED TO DEFRAUD, AND HARDCORE CRIMINALS**

1327.    By using the text messages as the 'base document,' the text messages alone are enough to prove the perjury and show that Dean was not communicating with False Accuser Bissell through this entire period while he was in Asia/Canada and Flanagan and Barreiro et al knew this in and of itself is a major portion of their egregious subornation of perjury.  Also, the texts contain friendly texts, personal relationships, and a potential for business – they contain none of the threats OR TONE (See PACS, pg 67), complaints, demands of work product that False Accuser Bissell perjuriously claims over this period.

1328.    Again, Dean did not bring this up at the FRO hearing as it all was moving way to fast and there was simply a blizzard of fraud to deal with in one day – as a lot of it was Dean's first-time hearing/reading all of the false allegations.

1329.    But False Accusers Bissell, Flanagan and Barreiro knew what they were perpetrating because they knew the allegations that they were about to make were false and the text messages had all of the information that they needed to prove Dean's innocence, but they willfully ignored it all and instead subjected Dean to this misery. They knew that False Accuser Bissell said something different in the police report but Dean did not have a copy.

1330.    This is an Evil Extortion and Criminal Coercion Group of False Accuser Bissell and a gaggle of corrupt New Jersey Lawyers.

**ROCK STAR WITH ERECTILE DYSFUNCTION – FALSE ACCUSER BISSELL STILL PURSUES.**

1331.    False Accuser Bissell texted Dean that he was a "Rock Star" but would make out in the FRO that Dean had "Erectile Dysfunction," yet she wanted more sex after February 7, 2017 (see unclaimed 'booty call' above) and the fact False Accuser Bissell is pinning away for more sex (while also claiming all the threats and sex harassment complaints et al" is not 'inherently believable' (See PACS, pg 161). After Dean returned from Asia/Canada False Accuser Bissell herself would say in 2:20/Law Division that "she refused," but the texts clearly say that she said she was "sleeping" (See PACS, pg 166-167).

1332.    Remember Happy Valentines' Day as the # 1 disturbing twist of what it really means, because these two entries above about "obviously we didn't' connect last night," and "I was sleeping" are second and third place finishers, to the Happy Valentines' Day Perjury. "Business Plans in the bathtub," and "Safe and Prosperous Travels" fill out the top 5.

1333.    Another obvious point is that a man would NEVER be allowed to state this garbage in Court and have any kind of chance of getting away with it. How is False Accuser Bissell even still a free woman? We are not talking about one or two little isolated items of lying – we are trying about her and her lawyers engaging in legal proceeding, abusing legal proceedings, in a total and utter scheme to defraud, and trying to willfully "stick handle" around the conspicuous Evidence right in front of them for Extortion Takes. This is the utter definition of Fraud on the Court and Scheme to defraud.

**FABRICATED SEXUAL ASSAULT AND CHANGING DETAILS OF IT.**

1334.    This next section discusses Dean's ongoing medical issue and then he ties in material covered above and it may seem to be a repeat of the section(s) already above. But it is not - here Dean takes it into a different direction to show the massive Perjury, Subornation of Perjury, Fraud, Misrepresentation, and Misconduct on Dean and of course Fraud on the Court.

1335.    …And of course, the fabricated "sexual assault" itself, with the changing stories of that false event (See PACS, pg 135 - 140) where False Accuser Bissell claims that she was bleeding from her anus (after February 7, 2017) and again on (April 10, 2017 per police report), suffered permanent physical damage but sought no medical attention or validation whatsoever. Dean has produced medical records showing he had a tear on his frenulum (ligament on his penis) (See 2:20/Law Division, interrogatories, as above) – and a trip to the emergency room at the hospital one month before Dean met False Accuser Bissell in September 2016. Dean has had a related problem with his penis for over 20 years, meaning Dean was physically unable to do what False Accuser Bissell said Dean did (See PACS, pg 186). False Accuser Bissell was unaware of Dean's medical condition until after they had filed their false sexual assault and escalating violence and she learned of the medical condition on September 28, 2017 in the Judge Murray 2017 Court.

1336.    Shivas of course also twisted the facts of this again with this:

"…When Plaintiff got to the bedroom, defendant Dean had an aggressive look in his eyes and he forced himself on her sexually. (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, STATEMENT OF FACTS, PG 5, Para 4).

1337.    The February 7, 2017 sexual tryst was completely consensual and only involved vaginal sex – False Accuser Bissell and Dean's fourth time for sex. What Shivas leaves out is that False Accuser Bissell at this point was already undressed as well per False Accuser Bissell's Certification ¶ 31. False Accuser Bissell also testified in Judge Murray's Court that she had already taken off her clothes (Exhibit M Part 1 - Sept 28 2017 Transcript –

Unredacted, pg 17). By taking off her clothes, False Accuser Bissell avoiding having to say that her cloths were torn off and skipped documenting the accompanying bruises that she would have likely had if this violent sexual assault had occurred – it did not.  Additionally, Shivas and False Accuser Bissell say:

> "Afterwards, defendant Dean told Plaintiff "you better keep your mouth shut and never tell anybody about his or I will get you and your family." (Plaintiff Cert. ¶ 33). False Accuser Bissell further states in ¶ 33: "He repeated this threat to me that night and the next morning as he left."

1338.    Of course, the TRO (August 9, 2017) states something different.
> "…THE DEFENDANT TOLD HER THAT IF SHE WERE TO TELL ANYBODY ABOUT THIS INCIDENT HE WOULD SEE TO IT THAT SHE NO LONGER WILL HAVE A JOB WITH HIS COMPANY."

1339.    The police report foreclosed on these threats the next morning as Bissell says: "They went to sleep and he left the next morning."

1340.    Here False Accusers Bissell and Shivas add "family" whereas it was left off the TRO and Amended TRO. See below.

1341.    The Amended TRO September 19, 2017 states something different again:

> "…THE DEFENDANT THREATENED PLA BY SAYING TO KEEP HER MOUTH SHUT OR HE WOULD 'GET HER', AND IF SHE SPOKE, HE WOULD MAKE SURE SHE DID NOT WORK FOR HIS COMPANY.

> -And-

> "FEBRUARY 8, 2017 – THE DEF THREATENED THE PLA BY SAYING THAT IF SHE EVER SAID ANYTHING ABOUT THE ASSAULT THAT HE WOULD 'GET HER.'

1342.    Of course, by the time False Accuser Bissell was on the stand in front of Judge Murray it morphed into constant (false) threats of break and enter, re-rape (like the last time) and then the mass murder of False Accuser Bissell, her family, and her children, each and every time that False Accuser Bissell and Dean spoke face-to-face and on the phone (See PACS, pg 33 – 48 for a full build out of all of False Accuser Bissell's changing stories).  The issue about False Accuser Bissell having a "job" or not having a "job" with Saga was dealt with in the Murray 2017 Court.

1343.    Notions of constant threats of mass murder – after Judge Murray called False Accuser Bissell out on her lying and credibility issues (see PACS, pg 17) – are conspicuously absent from the Law Division matter.

1344.    **False Accuser Bissell was telling Judge Murray that she was in constant fear of her life and the lives of her family and children on one hand and remaining "silent," "compliant," "telling no one," and "doing whatever [Dean] directed her to do."  On the other hand, in Law Division, False Accuser Bissell said that she was complaining constantly with respect to all of the supposed sex harassment and discrimination to not only Dean BUT ALSO to Klassen. Aside from the fact that these two False Accuser Bissell positions (which are repeated many, many times in 2017 or 2019/2020 as the case may be) cannot exist at the same time and are**

**extremely material – this alone is clear and convincing perjury and subornation of perjury that rises to the level of Fraud the Court.**

1345.　　False Accuser Bissell cannot be in overwhelming and mortal fear of her and her family and children's lives on one hand and telling no one (as she claims in 2017 testimony) and at the same time also complaining non-stop (in 2019/2020 to play to the tort Court) on the other, and also telling the police that there was never any discussion about February 7, 2017 ever again.  What the Truth is that none of these false perjurious notions are true.  What is also the Truth is that this is OBVIOUS AND CLEAR Perjury and Suborning Perjury and Fraud – the Court should have to look no further on False Accuser Bissell et al's criminality.

**FALSE ACCUSERS BISSELL, BARRIERO, FLANAGAN ET AL KNOW THEY ARE MISSING A REQUIRED PRONG GOING INTO 2017 FRO**

1346.　　False Accusers Bissell, Flanagan, and Barreiro et al, knew that their FRO hearing application was a fraud because Barreiro stated near the beginning of the FRO hearing on September 28, 2017 that essentially False Accuser Bissell and Dean had not spoken since May 1, 2017 and False Accuser Bissell filed the TRO on August 9, 2017 anyway (See PACS, pg 148) (read: Misrepresentation and Misconduct). In other words, False Accusers Bissell and Flanagan failed to tell Judge Callahan that Bissell was living in Florida and at the beginning of the hearing on September 28, 2017, Barreiro admitted that Bissell was living in Florida, but really it was just "temporary."  The scheme was planned to deceive Judge Callahan and Judge Murray and to be Plaintiff Dean and the Saga Enterpirse's undoing.

1347.　　To the police it was a permanent move that Bissell was planning for the move to Florida.  Right there it is clear, that Barreiro, as lawyer knew (read Subornation of Perjury) that he was missing one of the requirements to get a FRO in the first place and that he would fail – but he persisted anyways with the scheme to defraud Dean and the Courts. They were using the NJ PDVA as "sword" to soften Dean up for Law Division later.

**'RADIO SILENCE' ALSO MEANS DON'T TELL JUDGE CALLAHAN THERE HAS BEEN NO CONTACT FOR THREE MONTHS**

1348.　　Flanagan and False Accuser Bissell did not bother to tell Judge Callahan that Dean had not spoken to False Accuser Bissell for more than 3 months either in Amending the TRO.  This is Misrepresentation, Misconduct, and Fraudulent Concealment.

1349.　　Also, no mention of this fact to Judge Callahan that there was no communication between Dean and False Accuser Bissell for months, despite the fact that they had it in their text messages (Read: Flanagan Subornation of Perjury) and that Dean was complying with False Accuser Bissell's "radio silence" request of May 1, 2017 and that False Accuser Bissell had already moved to Florida.

1350.        After fraudulently concealing to Judge Callahan that there was no contact with False Accuser Bissell and Dean for three months starting on May 1, 2017, and then admitting to Judge Murray right off the bat on September 28, 2017 this fact, as well as that False Accuser Bissell was living in Florida (temporarily), (See PACS, pg 148), False Accuser Bissell and Shivas then fraudulently concealed the same fact to Judge Gardner who relied on this statement in denying summary judgment on June 21, 2019:

> "In August, 2017, after several months of working with Dean out of fear of his threats, Plaintiff filed an application for temporary restraining order in Essex County Superior Court." PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 13

1351.        The truth is this:  On August 9, 2017, after several months **of no contact between False Accuser Bissell and Dean whatsoever per her "radio silence" request for "Family Reasons,"** False Accuser Bissell filed an application for temporary restraining order in Essex County Superior Court."  The further truth is that after May 1, 2017, Klassen and Peretz kept working together until at least mid-July 2017 from which False Accuser Bissell would have benefited.  False Accuser Bissell herself said herself that she would have "eventually" joined the team. (See PACS, pg 43-44). See below in section "FALSE ACCUSER BISSELL SABOTAGES HER RELATIONSHIP WITH SAGA AND APPARENTLY SELLS OUT DEAN FOR A BRIBE(S) WITH A THIRD PARTY TO FIX HER FINANCIAL SITUATION."

1352.        Suddenly Craig Peretz and Sierra went silent in the scheme to defraud and are culpable of New Jersey's theft by extortion and New York's Grand Larceny statute as well as numerous counts of wire fraud, for instance. They were part of the scheme to defraud from the beginning.

1353.        Moreover, this is the second time False Accuser Bissell et have committed the same fraudulent concealment with respect to the May 1, 2017 date of being the last contact Once in the Judge Callaghan 2017 Court to get an amended TRO accepted and again in 2019 to misrepresent and deceive Judge Gardner's 2019 Court.

1354.        Potentially, also False Accusers did this in the original TRO Hearing as well (Dean has requested this Transcript from this Court (as well as USDC NJ in 2:19) in order to verify this – see MOTION TO VACATE THE ORDER OF APRIL 9, 2020, STRIKING THE DEFENDANT(S)' ANSWERS, DEFENSES, AND COUNTERCLAIMS AND THE RESTORATION OF THOSE ANSWERS, DEFENSES AND COUNTERCLAIMS PURSUANT TO NJ CT R 4:23-5 - conclusion and its attached order).

1355.        In between, in Judge Murray's Court on September 28, 2017, False Accuser Bissell and Barreiro admitted the fact – before even being asked about it in cross examination that there was no contact since May 1, 2017 precisely on this point.  There was never any "probable cause." There was "Fraudulent Cause," and this is Fraud on the Court.

1356.        On May 1, 2017 False Accuser Bissell wrote to Dean:

"Radio silence for the next month, per my family conversation-please don't communicate. If there is business stuff we will discuss in June. Good bye Ryan." Dean responded with "k," and proceeded to never contact False Accuser Bissell ever again, and instead waited for her to contact Dean.

1357.    Judge Murray said that it was an undisputed fact that False Accuser Bissell and Dean had no contact whatsoever after May 1, 2017. False Accuser Bissell herself said that she requested this because her "husband was coming home" (See PACS, pg 184). Yet, in False Accuser Bissell and Shivas et al's PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 13, they make it seem like Dean has been in contact with False Accuser Bissell continuously with the false notion of "In August, 2017, after several months of working with Dean...."

**FALSE ACCUSER BISSELL SABOTAGES HER RELATIONSHIP WITH THE SAGA ENTERPRISE AND BETRAYS DEAN FOR BRIBE(S) WITH IMM DEFENDANTS TO FIX HER FINANCIAL SITUATION**

1358.    In the false civil complaint of February 5, 2019, Shivas and False Accuser Bissell et al would write these falsities to deceive Judge Gardner and play to the tort court with:

"Finally, in early May, 2017, Plaintiff spoke to defendant Dean and told him that she could not take it anymore and that Saga Global Capital had failed to provide any commitment to her despite their promises to do so. Plaintiff told defendant Dean that she would no longer speak to him" (Civil Complaint, February 5, 2019, para 54).

1359.    In the Police Report the False Accuser Bissell said "Also, in April, Mr. Dean called her to say he was back from a trip. It was at that point that she told him she was done with his company and wanted nothing to do with him." Of course, in the May 1, 2017 "radio silence" text she said she'd talk in June if there was business, meaning that she was still monitoring the situation with Mr. Peretz and Mr. Klassen. There was no mention in the Police Report about not wanting to talk to Dean with respect to any threats to her, her family, and her *children*.

1360.    Another related and mucky situation is that on the police report Bissell states "it was at this point she told him she was done with his company and wanted nothing to do with him" but this is a fraudulent statement given to the police in a complaint positioned Dean to be sent to prison for the rest of his life under NJSA 2C:14-2b. The Truth is that after Dean returned from his trip, Bissell proceeded to help him with a CBC interview about the Imm defendants. That will be covered below, and it is another rabbit hole of perjury and subornation of perjury and scheme to defraud. For now, continuing with the notion of when the contact with Bissell ended using her own statements.

"Defendant Dean's telephone contact with me ended around May 1, 2017. I was no longer able to communicate with him. I had become severely depressed and I could not go on speaking with him. I still feared that he would hurt me or my family, but I could no longer handle the stress that I was under and the depression that I had experienced" (CERTIFICATION OF PLAINTIFF IN OPPOSITION FOR SUMMARY JUDGEMENT, Para 39).

1361.    Peretz, Bissell's agent, kept working with Klassen but in the Police Report, Bissell claims that she said that she "was done with his company and she wanted nothing to do with him [Dean]." Is it credible that she would let her "friend" and agent, Peretz keep working with Klassen (who Bissell calls a co-conspirator) and then in Mid-June (or Mid – July depending on which story Bissell ascribes to) when the affair became "public knowledge" that then, and only then, did Peretz stop communicating with Klassen? Of course not. Then consider this:

> "I had no telephone or in person contact with either defendant Klassen or Dean after May 1, 2017. **Without my knowledge**, Craig Peretz worked with Saga for approximately three months after I ended contact with them. Peretz apparently worked on a due diligence package for Saga. During this period of time, I was suffering from severe depression relating to the sexual assault. Peretz had no knowledge at that time that I had been assaulted by Dean ((CERTIFICATION OF PLAINTIFF IN OPPOSITION FOR SUMMARY JUDGEMENT, Para 39)."

1362.    Again, in the Police report the supposed depression was because of the "[Dean] was discovered he wasn't a credible businessman….when Mrs. Bissell discovered this, she became withdrawn and depressed. She contemplated suicide and divorce to get out of the situation," and not supposed threats of mass murder, re-rape, and other Perjury and Subornation of Perjury covered above ad nauseum.

1363.    If Dean was a about to be "mass murderer," one would think that she would warn off Mr. Peretz of the impending doom from the Menace Ryan Dean. If Dean was such a bad businessman, Bissell would surely warn off Peretz saying "waste of time," or any number of things but she did not. She comes up with the "without my knowledge" perjury as above.

1364.    With respect to Peretz and "without my knowledge," False Accuser Bissell knew and she admitted it in Judge Murray's Court (See PACS, pg 252) that Klassen and Peretz *were working together*. False Accuser Bissell again was in financial dire straits, and she needed money fast, and this was the approximate time it appears that she started to receive payment(s) or bribe(s) from a third party(s) – the Imm defendants - to do what she did which was to put into action her "reprehensible scheme to defraud in motion," and sabotaged her, Peretz and Sierra's relationship with the victim Saga Enterprise and of course Dean and Klassen individually. Peretz and Sierrra in fact knew that was the plan all along – why get 7% when a piece of 25% + of the Saga Enterprise would be a lot better.

1365.    At this point False Accusers and Imm defendants know that the Saga Enterprise have been grievously injured by their scheme to defraud.

**THE CBC INTERVIEW AND FALSE ACCUSER BISSELL'S CLAIM THAT SHE SAYS SHE WOULD "NO LONGER COMMUNICATE WITH DEAN" AND "THAT SAGA FAILED TO OFFER HER A POSITION" AND SO ON AND SO FORTH IS FRAUD BECAUSE THE PHONE CALL NEVER TOOK PLACE.**

1366.        **This is a discussion surrounding the CBC Interview** AND WHY IT IS **KEY** TO SHOWING THAT WHAT FALSE ACCUSER BISSELL AND HER ATTORNEYS HAVE DONE IS PURE FRAUD, PERJURY, SUBORNATION OF PERJURY, MISREPRESENTATION AND MISCONDUCT.

1367.        FIRST OFF, with the recent receipt of the police report, it says that "Mr. Dean called her to say he was back from a trip. It was at this point that she told him that she was done with his company and wanted nothing to do with him." What follows was written before the receipt of the 'facts' of the police report and it will be sprinkled in where appropriate.

1368.        False Accuser Bissell, Flanagan, Barreiro, and Shivas et al had this police report and instead have been so busy creating different stories about the content of the last phone call in late April 2017 they purposely did not want the fact to come out that the date of the last phone was even before all of their false "last phone call dates" (excepting for the false date in the police report that was hidden itself that essentially says before April 10, 2017 as an outlier date. Confused?).

1369.        Plaintiff(s) were too and this is a MATERIAL ITEM and intentional fraud to keep even Dean from noticing it.  Well Dean has noticed it.   Starting with the last text message between Bissell and Dean - that was on May 1, 2017.

1370.        The last phone call between False Accuser Bissell and Dean as evidenced per Dean's phone records in the PACS, Exhibit 14, pg 170, Book 1, was a two-minute phone conversation at 9:05 AM on April 28, 2017 – just before the CBC Interview.  Why this is important is because after the interview Bissell is giving Dean Kudos on the CBC interview.   Also, no mention on the police report of this CBC Interview and therefore False Accuser fraudulently concealed this fact to the police.

1371.        Aside, from the fact that the phone call is at most 120 seconds, can anyone conceive and believe that False Accuser Bissell would accomplish the things she claims she said to Dean in the Judge Murray Court about "divorce," "affairs," "family being ruined," "getting out of the [family] situation, and "separating from her family." See False Accuser Bissell's bizarre answer about all of this (PACS, pgs 220 – 221). Similarly, could False Accuser Bissell as she claims in Law Division say all of these things with respect to "failure to hire," and "gender discrimination" and so on and so forth. Again, see in the section "THE SHAM LITIGATION AND FRAUDULENT CIVIL COMPLAINT OF FEBRUARY 5, 2019 OF FALSE ACCUSER BISSELL AND SHIVAS ET AL THAT BY DEFINITION COULD NOT HAVE HAPPENED AS PERJURIOUSLY CLAIMED."

1372.        The point is because False Accuser Bissell told Judge Murray one thing and told Law Division another and told the police yet another thing makes all of this aggravated perjury by definition and aggravated subornation of perjury by the lawyers and everyone else that had a hand in it: Imm defendants.

1373.     After the CBC interview was done there were no further phone calls between False Accuser Bissell and Dean where she stated that she would no "longer communicate with him" because of supposed "threats" and "depression," and "not credible businessman" and so on and so forth. Instead, this is what False Accuser Bissell had to say to Dean in texts starting at April 28, 2017 at 10:16 AM **after the last phone call**:

> "Good luck, don't be nervous speak slowly and with conviction. Smile into the camera when it is appropriate, remember people are watching your expressions and body language. You will be great!!

1374.     At 12:32 PM False Accuser Bissell said in texts to Dean:

> "That's great, I am very proud of you!!"

1375.     At 1:05 PM False Accuser Bissell said to Dean in texts – after Dean sent False Accuser Bissell a text of a photo of himself during the CBC interview at 1:02 PM:

> "You looked great!! Thank you for wearing a suit."

1376.     At 1:10 PM False Accuser Bissell said to Dean in texts:

> "Good job Ryan."

1377.     At 1:10 PM False Accuser Bissell said to Dean in texts:

> "Bye, for now."

1378.     Against these texts, and against the fact that there was no phone calls after these texts, as well as all communication stopped on May 1, 2017, per her "radio silence….per her family conversation,' request means that False Accuser Bissell could not have stated her claims that she told Dean she would no longer communicate with him because of the supposed "threats" or not "not credible businessman" and all of the other perjurious nonsensical notions and it is all totally and completely debunked.  **IT ALSO MAKES ALL OF FALSE ACCUSER BISSELL'S LEGAL PROCEEDINGS AGGRAVATED FRAUD ON THE COURT AS WELL AS AGGRAVATED CONSPIRACY ON THE COURT and this notion transfers to all defendants as well.**

1379.     If Dean is such a menace, and if False Accuser Bissell has already told Dean that she will "no longer speak to him," then why was she going out of her way to help Dean and give him advice before the CBC interview? False Accuser Bissell, according to her many versions, instead would want Dean to "crash" and "burn" and have no help.  Also, telling Dean he "looked great" and "good job" and "Bye for now…" are the hallmarks of a woman who does not want to get caught in an affair by her husband coming home…

**FALSE ACCUSER BISSELL'S VERSIONS OF THE LAST PHONE CALL; SOLVING THE 'RUBIC'S CUBE OF EVIL'**

1380.     In Judge Murray's Court it was different where False Accusers Bissell stated (and Barreiro suborned) that the phone calls definitively came to an end on May 1, 2017 (See Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 21) but this was not true either.

1381.     In Law Division in the CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 39, False Accuser Bissell had this perjury to say:

Defendant Dean's telephone contact with me ended around May 1, 2017. I was no longer able to communicate with him. I had become severely depressed and I could not go on speaking with him. I still feared that he would hurt me or my family, but I could no longer handle the stress that I was under and that depression that I experienced.

1382.    In Judge Murray's Court it changed again. TWO DAYS BEFORE THAT REFERENCE TO MAY 1, 2017, FALSE ACCUSER BISSELL SAID SHE AND DEAN SPOKE FOR THE LAST TIME – which would be on April 29, 2017 and not May 1, 2017 (See Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 42), and this April 29, 2017 date is not true either according to Dean's phone records. This is key as False Accuser Bissell knew that the last phone call was before the CBC interview and they'd hoped that Dean would not recognize it, and they have kept him busy de-spaghettifying all of the other perjury and non-sense they created as well as keeping the police report concealed. It has been like solving a "Rubic's Cube of Evil" for a Pro Se Litigant who is utterly innocent the Court(s) can by now see.

1383.    False Accuser Bissell testified to another "set of facts" when she told Judge Murray on the last call they discussed and it was about "divorce," "affairs," "family being ruined," "getting out of the [family] situation, and "separating from her family." In Law Division, False Accuser Bissell claims something entirely different with respect to the "work related" (false) claims. See Section below "THE SHAM LITIGATION AND FRAUDULENT CIVIL COMPLAINT OF FEBRUARY 5, 2019 OF FALSE ACCUSER BISSELL AND SHIVAS ET AL THAT BY DEFINITION COULD NOT HAVE HAPPENED AS PERJURIOUSLY CLAIMED." It is a whole list of False Accuser Bissell and Shivas et al's own "works" detailing their Furtherance of Crime in Law Division.  It is pure Perjury, Fraud, Misrepresentation, and Misconduct as False Accuser Bissell did not say anything to Dean about failure to hire and so on and so forth. To the police she represented that she was the one who wanted nothing to do with Dean or his company and not the other way around.

1384.    Also, there is no reason why Klassen and Peretz would not keep working together on the DDQ and progressing the relationship, which was to benefit False Accuser Bissell, in part, if Peretz was truly legit (he was not and he was part of the scheme to defraud) successful in having his clients and contacts invest in the Saga Enterprise.  Afterall, False Accuser Bissell just said "Bye for now…" in text messages and then on essentially on May 1, 2017 she would pop up again "if there was business."  It is clear that False Accuser Bissell sabotaged the Saga Enterprise and Peretz knew about the scheme to defraud.

1385.    Shivas himself would commit subornation of perjury to Judge Gardner with this:

"Everything was okay, as long as they were benefiting from the services that she was providing.  When they decided to stop it, based on the improper discrimination, the improper intentional actions, then they want to argue that they had nothing to do with New Jersey. You can't have it both ways…" (Transcript June 21, 2019, Summary Judgement Hearing, pg 17). This is the Law Division transcript and the world can see this now. See link:

https://www.dropbox.com/s/1vhndumf4ezrtsd/Lisa%20Bissell%20vs%20Saga%20Global%20Capital%20Management%2C%20et%20al.%20062119_24%20%281%29.pdf?dl=0

1386.    Well, Shivas cannot commit fraud on the court have it both ways either and not admit that he used the police report to create questions about Dean from the police report itself as well as do discovery flowing from Mr. Bissell's private investigator as was submitted by motion in April 2021 in Law Division. So again, Bissell was not providing "any services" and the Saga Enterprise did not "stop it," based on "improper discrimination" nor the "improper intentional actions."  False Accuser "stopped it" according to the police report because Dean was "not a credible businessman." Notice also that Bissell herself admits that Dean was on a "trip" – and this was the Asia/Canada trip and she implies that she had not talked to him in quite some time and that is because she hadn't talked to Dean for quite some time.  Dean was purposefully ignoring here. After losing in Judge Murray's Court, Bissell concocted this new false claim about "failure to hire" and "improper intentional actions," which in part include these supposed "threats" of re-rape and "hurting her family" (scaled down from mass murder) but still at this point very similar *in tone and concept.*

1387.    Shivas suborns more perjury with:

> But, Your Honor, the actual act of deciding to discriminate against my client and not hire her, is an intentional act that has implications and targets my client in New Jersey. That is the basis for the intentional jurisdiction (Transcript June 21, 2019, Summary Judgement Hearing, pg 21).

1388.    The ONLY Act Dean did was to comply with False Accuser Bissell's May 1, 2017 "radio silence" request and Klassen and Peretz kept working on the DDQ that would have benefited False Accuser Bissell in the end had they not been frauds. The perjury and subornation of perjury that is now proven is that according to Bissell she told "[Dean] she was done with his company and wanted nothing to do with."  Shivas had the police report, but he instead chose to create a false Federal Question(s).

1389.    Nearly four years later – it is now proven that Bissell wanted everything to do with Dean as she had connived her way to attempt extortion takes et al and has gone in league with all Association(s)-In-Fact defendants to use criminality inside of court, police proceedings, fake 'board trials,' and a host of other unlawful means to conspire to take everything away from the Saga Enterprise everything it had and everything it was going to have as well as try to send Dean off to prison for the rest of his natural life and attempt murder next to finish the job.

**THE SERIOUSNESS OF WHAT FALSE ACCUSERS BISSELL AND HER ATTORNEYS HAVE DONE.**

1390.    The way False Accuser Bissell and her lawyers have manipulated this whole scheme to defraud, had Dean sent False Accuser Bissell so much as a text message after May 1, 2017 saying "hi" he might very well have an FRO against him and maybe worse be in prison for the rest of his life (or dead) – in prison Dean would have been no position to gather the evidence he has, learn the various legal systems in the United States and Canada,

and of course get the police report.   Instead, False Accuser Bissell wanted the Court(s) to believe all of her

various stories and Evil as she weaponized her PR skills.

1391.        As an important aside, if for example Mike Tyson (the fearsome boxer) goes on the street and assaults a

person, Tyson is charged at an elevated level because he is a trained boxer and likely considered a "deadly

weapon." How is Bissell any better in what she has done?  It is likely worse, as Plaintiff(s) literally would have

"loved" to have the beating from Tyson than have to suffer through all of this Pure Evil Scheme to Defraud over

the course of years.  That would have been _fun_ compared to what Plaintiff(s) have suffered with the False

accusers and Imm defendants.

1392.        Justice is not a "damned if you do" and "damned if you don't" and "damned if you won't" proposition

but this is precisely the position that False Accusers Bissell et al have tried to place Dean, Klassen & the Saga

Enterprise into.

1393.        Judge Murray in 2017 in preliminary matters with respect to the statute on August 17, 2017 stated to

Dean:

> "Your name would be listed in the central registry of DV offenders that can affect employment, that can
> affect professional licensing. Violations of a final restraining order, if there are any, are criminal matters
> handled by the prosecutor's office. Final orders can restrict freedom." Exhibit J - Aug 17 2017 Transcript
> – Unredacted, pg 9.

1394.        False Accusers Bissell et al were not only aiming at Dean's reputation and freedom – they were also

aiming for all of Dean's financial and Immigration license(s) via a "credibility contest" inside the NJ PDVA hearing

where False Accuser Bissell – being a self-professed PR/Marketing Spin Doctor "blind-sided" Dean with her Evil

Perjury, and did not even give Dean Due Process of all of the most egregious (false) allegations.


**DEAN IS BEING SUED FOR NOT COMMITTING A CRIMINAL ACT**

1395.        Shivas writes in 2019:

> "...employment – related claims for discrimination and retaliation in refusing to hire or contract with
> plaintiff following her reporting of the assault (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR
> SUMMARY JUDGEMENT, STATEMENT OF FACTS, PG 3).

1396.        Well isn't this a 'gem,' just like Robin Jones said – See Act III.

1397.        In the Police Report, Bissell says that she wants nothing to do with Dean and his company (as above) and

that is in April 2017 and then she requests "radio silence" because of her "family reasons," on May 1, 2017.  The

"report" was on August 9, 2017 and here False accuser Shivas et al writes that it was "retaliation in refusing to

hire or contract with plaintiff following her reporting of the assault."

1398.        When False Accuser Bissell filed the TRO on August 9, 2017, Dean had not contacted False Accuser

Bissell for over 3 months pursuant to False Accuser Bissell's "radio silence" request of May 1, 2017.  She was

going to initiate communication if there was business – Peretz and Saga (mostly Klassen) continued to work on

the DDQ to support funding and negotiate potential compensation – there was no failure to hire into July 2017 nor did the members of the Saga Enterprise know that a plot was well underway against them.  After the TRO had been filed on 08/09/17, if Dean had tried to even contact False Accuser Bissell, much less offer her a position at Saga, it would have been a violation of the TRO and a criminal act and yet False Accuser Shivas is trying to sue Dean, Klassen, and Saga for this.

1399.    But there was no position to offer False Accuser Bissell at that point because her false accusation had the effect of stopping the Saga Enterprise dead in its tracks (Hobbs Act, Extortion by Theft & Criminal Coercion violations et al)  The truth of the matter is that her false accusation had the effect also of stopping the progress being made with Mr. Craig Peretz and Sierra Global Management, LLC in arranging for an institutional investor (or other large client) for the Saga Enterprise and this, in turn, would have opened the door for False Accuser Bissell/Saga Enterprise pending series 7 exam resolution and the Saga Enterprise, Peretz, Sierra, and False Accuser Bissell landing on the engagement agreement. Dean has lost all of his licenses as a direct proximate cause of False Accusers Bissell and her attorneys have perpetrated and their scheme to defraud being paid by the Imm defendants.

1400.    False Accuser Bissell et al has utterly sabotaged nearly every aspect of the lives of Dean, Klassen, and the Saga Enterprise with her corrupt Extortion and Criminal Coercion bent lawyers and wants to get paid off for the Furtherance of Crime by somehow blaming Dean for all of her contrived falsities.  Monstrous.

1401.    This is the Noerr-Pennington Exception that makes the Litigation Privilege evaporate for False Accusers Bissell, Barreiro, Flanagan, and Shivas et al because the litigation is a sham both objectively and subjectively and because there is a direct competitor involved – Sierra and Peretz – False Accuser Bissell's representative to Dean, Klassen, and Saga.

**FALSE ACCUSER BISSELL THINKS THAT JUST BECAUSE SHE SAYS SO THAT SECURITIES FRAUD IS OK**

1402.    False Accuser Bissell further falsely writes:

"…We discussed that I could work as either an independent contractor or employee without having the financial series that is required of analysts" (Certification of Plaintiff in Opposition to Motion for Summary Judgement, 16).

1403.    This is in direct contrast to False Accuser Bissell's text message to Dean on February 25, 2017 at 1:09 PM with respect to the financial license, percentage, and BEFORE THEY STARTED TO DO BUSINESS.

"Thank you Ryan, I appreciate that. Hope you are doing well too. When Craig spoke with Kevin he asked him about compensation as a percentage before I get my license.  Kevin asked if I had a corp set up as a consultant, Craig told him yes, and Kevin did not give him that number. I need to know the intentions financially before we start doing business please, it's the proper way. Thank you!"

1404.    There is so much in this one text message:

A.  False Accuser Bissell says that she needs to know percentages BEFORE starting work.  Obviously, on February 25, 2017, False Accuser Bissell is not working yet. To the police, False accuser says she was done by

April 10, 2017 (as it is written and implied). May 1, 2017 is what the text messages say is the last point of contact and even then Bissell said she would essentially pop up in June [2017] if there was business meaning that she was monitoring the progress of Peretz and Klassen.

B.   False Accuser Bissell wants to link compensation as a percentage to Peretz' cap raising – that requires a financial license – according to US LAW and the Securities and Exchange Commission.  As Dean and Klassen are saying – this would be illegal without a license and securities fraud on just this one point alone (see Klassen – Dean text, which Klassen explicitly states this) that has been submitted with the Interrogatories and CERTIFICATION OF KEVIN KLASSEN dated January 21, 2021.

C.   By law – if a person gets paid a fixed amount linked to a capital raise – they need to have a SEC license. The Saga Enterprise including the Saga fund documents that cost a lot and took a long time to create and get Saga totally legal were just complete when Bissell launched or schemed her plan, but False Accuser Bissell wants the Court to believe that "Defendants" would just skip this requirement for False Accuser Bissell to have a financial license and risk big problems with the SEC et al and get the Saga Enterprise shut down. Ridiculous.

D.   False Accuser Bissell has no interest in studying for her licensing test. With what has been shown herein – she is just a selfish Evil person who will stop at nothing to get money and cares not who she hurts.  This is the description of a criminal and Dean believes that he has demonstrated the mens rea and Evil intent of False Accuser Bissell et al throughout this document.

E.   Dean and Klassen were saying – False Accuser Bissell needs to have a license (to False Accuser Bissell and to Peretz) – in the Certification of Plaintiff in Opposition to Motion for Summary judgement, 16 she is lying that Plaintiff(s) Dean and Klassen said otherwise.

F.   Peretz thought there was a legal way around the license – "Defendant(s)" stated we could look at that – but "Defendant(s)" needed to understand and vet that through "Defendant(s)" legal counsel – to "Defendant(s)," False Accuser Bissell needed a financial license (False Accuser Bissell is just projecting Peretz' belief onto Defendant(s) (as if we said that – which we didn't).  If Peretz does not come up with a plausible way around this requirement it is prima facie proof that he and Sierra were also part of the scheme to defraud from the beginning and they lured the Saga Enterprise into a false sense of security.

G.   Bottom line: False Accuser Bissell did not have her series 7 license (or equivalent), and by definition could not get compensation as a percent as well as the fact that Peretz and Klassen were stewarding towards that process that was going to take longer than False Accuser Bissell wanted.

H.   All defendants are culpable of this and conspiring to do so.

**FALSE ACCUSER BISSELL IS NOT WORKING AT SAGA BUT THEN SHE SAYS THAT SHE IS, BUT HER SUPPOSED 'SUPERIORS' DEAN/KLASSEN ARE IN ASIA/CANADA.**

1405.    False Accuser Bissell then commits more perjury with this 'gem' in the wake of her text message above:

"Because defendant Dean was Plaintiff's direct supervisor and defendant Saga Global Capital had no sexual harassment policies, Plaintiff had **nowhere to turn** to for assistance while working under the employment of defendants" (Civil Summons, 102 and PACS, pg 211).

1406.    Bissell had "no where to turn to for assistance" because she was not working at the Saga Enterprise at all and even if she were – she wasn't – Dean and Klassen were in Asia/Canada and not communicating with her. To be sexually harassed, Dean had to be in the same room as Bissell and not on the other side of the planet or continent. This little 'gem' is the same means that Imm defendants used when they said that Dean sent the

membership a letter but no letter was sent; only the little 'gem' from Ms. Robin Jones, Phil Mooney's false

victim, like Bissell, to kick off the madness.  An item the Jury is for certain going to hear about. See Act III.

1407.      According to the Police Report, Bissell was too depressed thinking that Dean was "not a credible

businessman" and nowhere on the police report state that she was working for the Dean, Klassen or Saga or the

Saga Enterprise.  Instead, it stated that "she will never work for him" which is future tense.  The TRO wording

was present tense.  Remember the text of February 25, 2017 – "before we start doing business." Does "doing

business" sound like a "job?"

1408.      So, on one hand on February 25, 2017, False Accuser Bissell in her text to Dean is stating that she needs

to know her percentage "before we start doing business" (as above). False Accuser Bissell cannot be not working

at the Saga Enterprise on one hand – then on the other hand False Accuser Bissell claims she is working and

being harassed at the same time. OBVIOUS AND CLEAR Perjury, Suborning Perjury, and Fraud in the February 5,

2019 civil action.  See list of these perjurious ironies below "THE SHAM LITIGATION AND FRAUDULENT CIVIL

COMPLAINT OF FEBRUARY 5, 2019 OF FALSE ACCUSER BISSELL AND SHIVAS ET AL THAT BY DEFINITION COULD

NOT HAVE HAPPENED AS PERJURIOUSLY CLAIMED."

1409.      In addition, on February 25, 2017, False Accuser Bissell is stating that she needs to know her percentage

"before we start doing business," alternatively she is complaining of employment based "sex harassment."  Keep

in mind that there was no office and Dean was not paying very much attention to False Accuser Bissell and only

saw her two times after February 7, 2017 before leaving to Asia/Canada on March 11, 2017.

1410.      Dean also was going to leave to Asia without a big kiss or a text or a phone call saying "good bye" – and

guess what – he did not. Instead, Klassen received this unsolicited email from False Accuser Bissell dripping with

admiration of Dean and Klassen. See the "Safe and Prosperous Travels" email that can be found in PACS and this

one can be released now:

https://www.dropbox.com/s/lv2nkh3s1rykyym/Safe%20and%20Prosperous%20Travels.pdf?dl=0

1411.      For Imm defendants, this is what an email looks like and this is called 'wire fraud,' because it was sent,

received, had a topic and the date and time are stamped on it, and was in furtherance of a scheme to defraud.

The little 'gem' that Robin Jones used in the supposed "letter that Dean sent" had none of these elements

present, and then Dean was sucked into T-834-20 (Act III). False accusations are the way and habit of all

defendants.

1412.      Back to False accusers. Does this in anyway sound like a depressed person? Of course not.

1413.      The two face to face meetings between February 8, 2017 and May 1, 2017 are as follows: Once in

Peretz' office March 2, 2017 and once at the hedge fund conference March 9, 2017. Dean never physically saw

False Accuser Bissell again (See herein in sections "Face to Face Meetings" and "Phone Calls") which discusses

the two phone calls and two face to face meetings between "February 8, 2017 and April 25, 2017") – when taking

in the communication black while Dean was in Asia/Canada per text messages (see PACS, pgs 141, 142, 143, 144, 151, 158, 159, 171, 246, 251, & 168).

1414.    For those of you who cannot read the PACS (yet) kindly find the Bissell Spells that was created before receipt of the police report.  Nonetheless, the Bissell Spells highlights the absurdity of the scheme to defraud the Saga Enterprise:

https://www.dropbox.com/s/wgfyh6v04t1svzv/Bissell%20Spells.pdf?dl=0

1415.    And then in an expanded timeline in the same February 5, 2019 civil complaint, False Accuser Bissell has stated that she is complaining constantly to Dean AND to Klassen about sex harassment and discrimination from October 2016 to May 1, 2017 (See Civil Summons 98, 99, 100 and 101 and PACS, pg 211) – but, of course, nothing is ever put in writing about these complaints – how convenient for a perjure – and another link to Imm defendants in their habitual lying.

1416.    Again, False Accuser Bissell claimed in the TRO Dean was her "boyfriend/paramour" and that covers this period up to February 7, 2017, at minimum. February 7, 2017 for the record was entirely consensual and even as of March 2, 2017 False Accuser Bissell admits that I said that she "looked pretty in her dress."

1417.    A further inconvenience for False Accuser Bissell and Shivas et al is that Mr. Klassen's phone records (See CERTIFICATION OF KEVIN KLASSEN dated February 1, 2021) shows that Klassen's very first phone call, one on one, with False Accuser Bissell is on February 27, 2017 to update on the Peretz meeting and book a meeting to discuss compensation – this was the only day False Accuser Bissell and Klassen would speak via phone.  Keep in mind that February 27, 2017 is date of the "unclaimed booty call" and the same date that False Accuser Bissell is stating that because of the lack of follow up with the investors Dean threatened False Accuser Bissell with her "garage codes," and "like the last time." In the Police Report Bissell claimed she and I never spoke of February 7, 2017 again but now it was referred to each and every time that she and I spoke on the phone or face to face in Judge Murray's Court.

1418.    Since False Accuser Bissell says that Dean did not harass her at the Peretz meeting on March 2, 2017 (see below) that would only leave the hedge fund conference on March 9, 2017 that Dean arrived late to and left early from (see below) – a larger, public event – and then False Accuser Bissell stayed to party at the open bar. Then, on March 11, 2017, Dean was off to Asia/Canada with Klassen.

1419.    Although False Accuser Bissell claimed in the Judge Murray 2017 Court that he supposedly threatened False Accuser Bissell, each and every time, they met face to face or on the phone. False Accuser Bissell in Law Division does not mention that she was "sexually harassed" by Dean on March 9, 2019 in any of her "pleadings" that Dean has found.

1420.    So, what day is False Accuser Bissell claiming is her supposed hire date – as a contractor or employee? To this Law Division, she is claiming multiple hire dates starting from the very first time Bissell and Dean met on

October 24, 2016 – which is absurd. However, False Accuser Bissell stated she wasn't working on her February 25, 2017 text ("before we start doing business") – so it would be sometime thereafter.  Presumably her hire date would be after compensation was agreed upon (as per her February 25, 2017 text) – but the Klassen compensation meeting for March 2, 2017 never happened and was postponed (see Certification of Kevin Klassen, February 1, 2021) – and Peretz and Klassen were addressing this compensation link to Peretz capital raising into July 2017. However, it seems March 9, 2017 is her only possible "hire date," according to False Accuser Bissell as she claims in her February 5, 2019 complaint – and then to the Police the "quit date" was sometime before April 10, 2017.

1421.       Bissell twists the invite to the hedge fund conference of March 9, 2017 into perjury that she was employed as "Saga's Marketing Director" but then later changed her story and engagement status to Branding Manager (Consultant)" (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 19, as she is trying to pervert, and convert, her free pass to the hedge fund conference as confirmation that she was already hired, and was "Saga's marketing director" or "Branding consultant" depending on which False Accuser Bissell version is taken as well as she claims that she was a "team mate."

> "At the request of defendants, Plaintiff attended a hedge fund conference in New York City on March 9, 2017 with defendant Dean, defendant Klassen….During that event, defendant Klassen introduced Plaintiff to several people as "Saga's marketing director." He also referred to Plaintiff as "teammate" in the Saga business."  Civil Complaint, February 5, 2019, para 49.

1422.       So in short, between March 9, 2017 and March 11, 2017 – False Accuser Bissell is claiming that she has "nowhere to turn to for assistance while working under the employment of defendants" (Civil Summons, 102 and PACS, pg 211 and above in para 296) but on March 11, 2017 Dean and Klassen left the United States on their trip to Hong Kong (See PACS, Exhibit 11 for airline tickets) and the communication blackout started the day before on March 10, 2017 from Dean's perspective.  That leaves precisely one day for the "sex harassment," "gender discrimination," and other related employment non sense to start on and finish on March 9, 2017 at the hedge fund conference – an event Dean was late to and left early from.

1423.       False Accuser Bissell continues with her perjury with this Fraud, Misrepresentation, and Misconduct – with Shivas et a suborning it all with this:

> Defendant Dean continued to contact Plaintiff with request for her assistance. Plaintiff was too afraid not to do as directed by defendant Dean because he repeatedly told her he would "get her." Throughout this time and up until the end of April, 2017, defendant Dean spoke to Plaintiff about securing for her a commitment for her employment at Saga Global Capital. He mentioned finalizing an agreement by texts, in telephone conversations and in person on many occasions. Civil Complaint, February 5, 2017.

1424.       Pure Perjury, Subornation of Perjury, Fraud, Misrepresentation and Misconduct. To the police, Bissell said that she was already done with Dean and Saga by April 10, 2017.

1425.     In Judge Murray's Court it was about break and enter, re-rape (like the last time), and mass murder. False Accuser Bissell "dials" it down in Law Division, because Judge Murray already called her out on the credibility issues in Judgement (Exhibit N - Sept 29 2017 Transcript – Unredacted). See above where this Perjury and Fraud in amply explained.

1426.     Dean is in Asia/Canada and is not communicating with False Accuser Bissell until he texts her on April 21, 2017 (while still in Canada saying he is coming back in 4 days) and calls False Accuser Bissell on April 25, 2017. "Throughout this time" was the communication blackout per phone records and text messages between March 10, 2017 and April 21, 2017.

1427.     If Dean is not speaking to Bissell for six + weeks while in Asia/Canada how can False Accusers say: "Throughout this time and up until the end of April, 2017, defendant Dean spoke to Plaintiff about securing for her a commitment for her employment at Saga Global Capital. He mentioned finalizing an agreement by texts, in telephone conversations and in person on many occasions." There is no such "finalizing agreement" in texts anywhere and so we are left to go on the "scouts honor" of False-Accuser-In-Chief Bissell?

1428.     The more accurate and truthful account of what happened is that Dean was gently telling False Accuser Bissell – "less sex, more hedge fund business" and Dean was deescalated their personal relationship as evidenced by Dean not contacting False Accuser Bissell for more than six weeks while in Asia/Canada.

1429.     For that Grievous Wrong of deescalating the "personal relationship," Dean and and Klassen indeed their property and business, the Saga Enterprise has suffered and paid a steep price in nearly every aspect imaginable because of False Accuser Bissell et al's Perjury, Subornation of Perjury, Fraud on the Court and scheme to defraud and as well because Imm defendants paid for it all.

1430.     False Accuser Bissell and Shivas et al's Perjury and Subornation of Perjury is then followed up with this expanded version of fraud. There is so much here that Dean is splitting the quote into pieces and the whole quote of False Accuser Bissell and Shivas et al can be found in: (Civil Summons 98, 99, 100 and 101 and PACS, pg 211).

          Plaintiff performed services and tasks for and on behalf of Saga Global Capital during a period from October 2016 through April 2017.

1431.     So to Judge Murray and the TRO, False Accuser Bissell was Dean's boyfriend and "potential business" but in Law Division False Accuser Bissell was hired the same day she met Dean (see PACS, TRO, Exhibit 4, and PACS, pg 116).

          Plaintiff acted as the marketing director for the company and arranged for meetings with her contacts, prepared and revised marketing materials, and engaged with third parties to set and achieve Saga Global Capital's marketing goals.

1432.     In the Police report, it was "they continued to talk from time to time through phone calls and texts" and "they continued to keep in touch" with respect to October 2016 to February 2017.  Bissell makes reference to

the "business trip" which was the six plus weeks in Asia/Canada.  The only other services and task for "Saga Global Capital" during this time is making a few phone calls and attending the meeting of her "friend" and "agent" Peretz and Sierra to see about getting something put together that would benefit False Accuser Bissell.

1433.    This is also the same thing that Mary Kennedy, Gervais Wall, Michelle Noonan, and their "law firm," did in T-834-20 where ICCRC produced affidavits and one fabricated and edited evidence and the other did not.  As well, one said that CICC was not holding itself out as the regulator and one did. Again, the same methods and tactics of the False accusers and Imm defendants are being used and they are one of the same for RICO purposes.

1434.    So here other than the Peretz meetings, False Accuser Bissell produced no other meetings, as those would have been discussed in the text messages and are conspicuously absent. False Accuser Bissell prepared no "marketing materials," and cannot produce the emails where she sent these marketing materials outside of anything to do with Peretz. Likewise, she did not "engage with third parties to set and achieve Saga's…marketing goals."  False Accuser Bissell et al and Shivas when they wrote this Perjury and Subornation of Perjury knew that they had none of this evidence and Dean puts them to the Evidence in their response. They did know that the police report existed the Bissell created and that it was total perjury.

> During this time, plaintiff was continuously harassed by defendant Dean, who made harassing and threating sexual remarks and **unwanted physical contact** a condition of her job.

1435.    By definition this "during this time, Plaintiff was not continuously harassed as they were in a "consensual sexual" relationship from November 2, 2017 to at least February 6, 2017 – by False Accuser Bissell's own account, because on the TRO Bissell stated that Dean was her "boyfriend/paramour."

1436.    From March 10, 2017 to April 21, 2017 there was no communication with False Accuser Bissell and Dean for over 6 weeks as Dean is in Asia. False Accuser Bissell did send the "Safe and Prosperous Travels to you and Ryan!!" to Klassen (See PACS, Exhibit 9) and as above. False Accuser Bissell did receive a few copied emails from Klassen sent to Peretz during this time. With respect to phone calls from February 8, 2017 to April 25, 2017 there were 2.  **2 phone calls and 2 face to face meetings from February 8, 2017 to April 25, 2017 is not an environment where constant threats and constant complaints can exist nor where work product is produced to the extent that False Accuser Bissell wants the world to believe it was.** False Accuser Bissell herself says that Dean did not threaten False Accuser Bissell at the March 2, 2017 Peretz meeting  - she said Dean told her she looked pretty in her dress (See PACS, pg 39). False Accuser Bissell and Dean spoke about the CBC interview in late April 2017 on the phone a few times. The last time was on April 28, 2017 at 9:05 AM – just before the CBC interview followed by False Accuser Bissell's gushing text messages to Dean.  The text messages corroborate this. For full discussion of all of the Evidence go to: "FACE TO FACE MEETINGS AND "PHONE CALLS" above and see "PACS, pg 161-163, pg 168 – 173," "PACS, pg 178-183," "PACS, Dean Verizon phone records, Exhibit 14." False Accuser Bissell has this to say:

Neither defendant Dean nor his partner, defendant Klassen did anything to address Plaintiff's complaints, and the defendants enabled Dean to **intimidate** and **threaten Plaintiff**. Because defendant Dean was Plaintiff's direct supervisor and defendant Saga Global Capital had no sexual harassment policies, Plaintiff had nowhere to turn to for assistance while working under the employment of defendants. (Civil Complaint, paras 101 – 102)

1437.     The word "intimidate" came directly from the Imm defendants as they used the words "Bully and Intimidate" in their bulletin as the reason that they removed Dean from the board via board trial. The threats also did not happen for all of the discussion about it already above.

1438.     Also, for the "unwanted physical contact" that did not occur because that would have happened right in front of Mr. Peretz and his contacts - it was a secret affair (See PACS, pg 41) – and Peretz and Klassen did not know about it (Peretz was one of False Accuser James Bissell's best friends and Klassen was one of Dean's best friends – see a few paragraphs below for more discussion on this point and bizarre logic about what False Accuser Bissell peddles). This fact is another obvious perjury item that False Accuser Bissell was complaining to Klassen about 'sex harassment' – this was a consensual, secret affair. Bissell wants the world to think that she "confessed" the affair to her husband in June 2017 (or mid-July depending on the version Bissell tells) but she did not 'care' if Peretz knew about the affair knowing that Peretz – like any other 'guy friend' would tell his friend, or least Bissell would not risk it and then see what Mr. Peretz would have or would have not done. Mr. Peretz also had "thing" for Bissell so there was that factor too. False Accuser Bissell even testified in 2017 Judge Murray Court that no one knew – she told no one about any of these sexual activities (See PACS, pg 254).

1439.     And, just so it is said, this "unwanted physical contact" certainly did not happen at a full room hedge fund conference which would have happened right in front of Klassen and others (see also Certification of Kevin Klassen, February 1, 2021). Coincidently, Dean arrived late to and left early from that specific conference, per text message where False Accuser Bissell is sending Dean a text "Big glass is yours!! This is from your teammates" 3/9/17 at 6:32 PM. Conspicuously, False Accuser Bissell did not say "our" teammates and call herself a teammate because she wasn't.

1440.      False Accuser Bissell cannot produce any "prepared and revised marketing materials" and she did not engage with "third parties to set and achieve Saga Global Capital's marketing goals." There are no emails outside of the Peretz-led matter. It is pure Perjury and Subornation of Perjury by False Accusers Bissell and her attorneys et al. This is the same situation in T-834-20 for Imm defendants.

1441.     Dean puts False Accuser Bissell et al to the Evidence Test to produce any of these items as well Imm defendants in T-834-20.

**FALSE ACCUSER BISSELL'S FALSE CLAIMS AND FALSE LOGIC**

1442.    False Accuser Bissell and Shivas' logic is flawed with respect to her false claims and with respect to "sex harassment" and "discrimination" et al in regard to False Accuser James Bissell, Mr. Peretz, and Mr. Klassen. Consider the following that False Accuser Bissell falsely claims:

> "…..Peretz had no knowledge at that time that I had been assaulted by Dean" (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 62)

> "My husband had no knowledge of the affair until mid-July, 2017…." (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 41)

1443.    But False Accuser Bissell is supposedly complaining non-stop to Klassen about "sex harassment," and "discrimination," as has been detailed throughout this document. If this was the case, then why in none of False Accuser Bissell's pleadings does she say that she also complained to Peretz or her husband about the supposed "sex harassment?"

1444.    What was stopping Klassen from telling Peretz about these supposed complaints that False Accuser Bissell (falsely) claims that she says she was saying to Klassen?

1445.    At this point, what is stopping False Accuser Bissell about telling Peretz about the "sex harassment,' and so on and so forth? False Accuser Bissell essentially says that she has no qualms about Dean telling Peretz about the sexual affair with False Accuser Bissell:

> "I had no "sway" with Craig Peretz beyond my friendship with him. Rather, he helped Defendants in their business out of kindness at my request. **I never told defendant Dean that I did not want Craig Peretz to know about my relationship with defendant Dean** (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 20).

1446.    Here False Accuser Bissell claims that she is in a "friendship" with Peretz, but to Judge Murray Peretz was a "member of her family" (PACS, Exhibit 17).  As an aside this point also talks about Peretz helping the Saga Enterprise, but after Bissell supposedly stopped talking to Dean and Klassen, would it not follow that she would also specifically tell Peretz about this and in turn Klassen and Peretz would stop working together too? Of course, Klassen and Peretz kept working until Mid-July when False Accuser Bissell committed Extortion by Theft and starting breeching that statute. It was Dean and Klassen who were in the dark about the scheme to defraud and Bissell and Peretz and James Peretz knew precisely what was being schemed. Keep in mind, that according to False Accuser Bissell she 'only' talked about the 'secret affair,' and only spoke of the supposed 'rape' on July 30, 2017 (or August 1, 2017 depending on which version False Accuser Bissell tells). Just the mere "secret affair" was enough to have Peretz stop contact with Klassen and supposedly trigger James Bissell to hire a private detective. More perjury and Subornation of Perjury by False Accusers Bissell and Shivas et al.

1447.      Also, if False Accuser Bissell says that she is having problems with Dean **and** Klassen. What is stopping False Accuser Bissell from telling Peretz about Dean and Klassen?  Or just even Klassen? Peretz in truth already knew about it all and like Bissell was luring Dean, Peretz was luring Dean, Klassen, and the Saga Enterprise.

> Neither defendant Dean nor his partner, defendant Klassen did anything to address Plaintiff's complaints, and the defendants enabled Dean to intimidate and **threaten Plaintiff**.  Because defendant Dean was Plaintiff's direct supervisor and defendant Saga Global Capital had no sexual harassment policies, Plaintiff had nowhere to turn to for assistance while working under the employment of defendants. (Civil Complaint, paras 101 – 102)

-And-

> Plaintiff has been subjected to gender discrimination by her fellow coworkers and suffered adverse employment consequences on the basis of her gender in **retaliation for complaining about the discriminatory conduct of her co-workers** (Civil Complaint, paras 109).

1448.      It is clear by now that all of this is perjury and subornation of perjury inside the court system and is a scheme to defraud the Saga Enterprise. Below the point is belabored a bit more from a slightly different angle.

1449.      But False Accuser Bissell always had a place to turn (other than False Accusers Barreiro, Flanagan, and Shivas et al) and that was Peretz and when word got out about the 'affair' in Mid-July 2017, that was enough for Peretz to end contact with Saga, as neither Dean nor Klassen heard from Peretz ever again for 2017. But Peret already knew and that is part of the scheme to defraud. False Accuser Bissell claims to Law Division that she had been working with Dean up to and including August 2017:

> "In August, 2017, after several months of working with Dean out of **fear of his threats**, Plaintiff filed an application for temporary restraining order in Essex County Superior Court." PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 13

1450.      Yet again, the supposed threats are foreclosed upon by the police report.

1451.      The supposed rape was not reported until August 1, 2017 (or July 30, 2017) per False Accuser Bissell's various accounts of this day so False Accuser Bissell, according to her (false) writings was in fact "working" with Dean (despite not communicating with Dean and Klassen since May 1, 2017), and that is when she did (supposedly) turn to Peretz (mid July 2017), who was always available being "False Accuser Bissell's Family member" and agent to Saga et al – despite False Accuser Bissell's assertion to Law Division that:

> "...without my knowledge, Craig Peretz worked with Saga for approximately three months after I ended contact with them. Peretz apparently worked on a due diligence package for Saga…"

1452.      In short, according to Bissell, Peretz got into the deal because of a request by Bissell, for Bissell's benefit, but Bissell is implicitly claiming that around May 1, 2017 she did not cancel that 'request' to Peretz and let him keep on working with Klassen. Not credible and it is all a scheme to defraud by Bissell, Peretz, and discovery will likely show James Bissell as well much earlier than what Bissell is stating. On the police report there is not nary a note about Peretz because by Klassen and Saga working with Peretz is a far cry from being "done with his company and wanted nothing to do with him."

1453.     In Judge Murray's Court, False Accuser Bissell said that she did know that Peretz kept working with Klassen (See PACS, pg 146-147). Peretz was one of the first persons that False Accuser Bissell called to tell about the affair (not supposed rape) and that corresponds to the Sabotage where Peretz stopped speaking with (as planned) the Klassen and the Saga Enterprise in mid - July.

"...This was the first time I had told anyone about the rape that had taken place on February 7, 2017." (CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 41).

**LITIGATION PRIVILEGE APPLIES TO DEAN WITH RESPECT TO HIS DEFENSE OF THE TEMPORARY RESTRAINING ORDER.**

1454.     Shivas in 2019 states that:

"Plaintiff was sexually assaulted by defendant Dean on February 7, 2017 in Cedar Grove, Essex County. Thereafter, Dean and his partner Defendant Klassen retaliated against Plaintiff when she reported the assault to the Cedar Grove Police Department. (PLAINTIFF BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PRELIMINARY STATEMENT, PG 1, PARA 3).

1455.     Pure Perjury and Subornation of Perjury. In the Judge Murray 2017 Court on August 17, 2017, Judge Murray asked "No criminal matter pending?", and Flanagan stood up and stated "no your honor, not currently." Flanagan had a copy of the Police Report and on the Police Report the Prosecutor said the matter was closed on (see police report, pg 3, para 4) August 16, 2017 (one day before the first hearing in front of Judge Murray).

1456.     On the Amended TRO it states that: "ON AUGUST 15, 2017 – THE PLA RECEIVED A TEXT MESSAGE FROM A FORMER CO-WORKER STATING THAT A 'MARK RUSIN' CALLED HIM."  Mark Rusin called the "CO-WORKER" (Mark Faber) inside the confines of the TRO proceeding (and this enjoys litigation privilege) and at that point there were no "criminal charges pending" against Dean, and thus no reason for Dean to "retaliate" due to a "police report," that at that point Dean did not even know for sure if existed.   Dean was dealing with the upcoming FRO hearing in a few days and not worrying about police/prosecutor charges that did not exist (and never existed) at that point.

1457.     Dean, and Dean's 2017 lawyer, have absolute litigation privilege to find out the circumstances surrounding why False Accuser Bissell was terminated from her previous employment at Pure Grown Diamonds and Dean's attorney directed his private investigator to make 1 phone call to ask questions – all of three minutes. False Accuser Bissell's background was being investigated because at that point Dean had never ever seen False Accuser Bissell's resume – she was mostly a dating interest.

1458.     False Accuser Bissell herself stated in Judge Murray's Court that this Private Investigator made the call with respect to the TRO and False Accuser Bissell answered: "I guess."

1459.     In the September 26, 2017 FRO Judge Murray hearing all of this was dealt with, Klassen was not part of this discussion and False Accuser Bissell and Shivas et al only added Klassen in 2019 despite the Private Investigator ("PI") stating he had no knowledge of Saga and didn't know who Ryan Dean was (See PACS 226 – 231).

1460.    Regardless, the PI was brought on the stand and testified – his testimony refutes False Accuser Bissell's claims in 2017.  Nevertheless, she still recycles them in 2019 – despite testimony to the contrary and her own acknowledgment with "I guess," that did not include Klassen.

1461.    Shivas in 2019 hypocritically continues on with this:

"This retaliatory and fraudulent act was taken for the express purpose of causing Plaintiff harm in New Jersey. Defendants now disingenuously assert that they lack even minimal contact in New Jersey. In so doing, they ignore that the assault took place in New Jersey, Plaintiff performed services pursuant to an agreement to hire or contract with her in New Jersey and they took retaliatory and discriminatory actions against her with effects in the State" (PLAINTIFF BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PRELIMINARY STATEMENT, PG 2, PARA 1).

1462.    Now that the police report is in hand this statement by Shivas et al is clear perjury and subornation of perjury and yet another step in the scheme to defraud.

1463.    Shivas attempts to claim litigation privilege for False Accuser Bissell and himself with all of the Perjury and Subornation of Perjury chaos and upheaval that they have created out of thin air that is documented herein but for Dean, who was blindsided by the false accusations.

1464.    Klassen again was not part of the entire process in 2017 – False Accuser Bissell's attorneys elected not to involve Klassen – since False Accuser Bissell's story then was that she was "silent," "compliant," and "told no one" and "did whatever [Dean] directed her to do" - unlike her 180-degree reversal in 2019 Law Division where she says she is constantly complaining for the entire period. READ PERJURY, SUBORNING PERJURY, AND FRAUD and even so Klassen is a privy to Dean and Klassen in turn enjoys litigation privilege.  See also PACS, pg 157 - 158.

1465.    It is of note that Judge Murray did not mention anything about the Private Detective in her Judgement. To Judge Murray it seems it was a "nothing burger."

1466.    After this Court satisfies itself with their ruse (See ENTIRE PACS AND TRANSCRIPTS), compare False Accuser Bissell's iambic pentameter "doth protest too much" [Hamlet, Act III, Scene II, Line 230] with respect to this three-minute phone call where the PI asked QUESTIONS about why she didn't work there anymore (read entire exchange in the PACS, pgs 226 - 230) to what False Accuser Bissell and Shivas et al have done to Dean et al with their utter falsehoods – including falsities with respect to 'anal rape' and 'constant threats of mass murder,' for over three years (going into year 4) where False Accuser Bissell et al do not enjoy litigation privilege in the Furtherance of Crime and because the Noerr-Pennington Exception exists in this case. Also consider that it was the False accusers that were using a private investigator outside the confines of a legal proceeding.  It is stunningly Evil what False Accusers Bissell et al have done. Pure Evil. And, Perjury, Fraud, Coercion, Extortion, RICO Predicate Acts, and a bunch of other crime and furtherance of crime – with money flowing over the USA/Canada border to finance it all. All defendants are culpable of these crimes and conspiracy to commit these crimes.  ....a matter for the Jury to decide.

**FALSE ACCUSER BISSELL WEAPONIZED PR SKILLS FOR A GO AT PERJURY AT THIS COURT, THEN THAT COURT, AND THOSE COURTS.**

1467.    In the end it was so clear and apparent that False Accusers Bissell, Flanagan, Barreiro, and Shivas et al have created this ever- changing plot and they were confident enough that False Accuser Bissell would be able to perjure her way through the whole FRO hearings in front of Judge Murray to wreck Dean's life and the Saga Enterprise because she was weaponizing her PR Skills that False Accuser Bissell had numerous times taken to TV to sell "lab grown diamonds." The professional liar (False Accuser Bissell) however ran into the professional lie detector (Judge Carolyn Murray).  When the 2017 ruse failed, False Accuser Bissell just reloaded with another confederating lawyer, Shivas and his 'Law (less) Firm,' and they thought that they'd have a go with Judge Gardner in Law Division in 2019, and deceive him. Flanagan and Barreiro were in the background rubbing their corrupt hands and hoping that Shivas would finish the task. Here is the False Accuser Bissell on TV peddling Lab Grown Diamonds.  Note how she uses the same catch phrases over and over and over.  She tried the same technique in front of Judge Murray for different questions and her credibility in the end was called into question.

https://www.dropbox.com/sh/bal87c1o8yq4jmv/AAAANDV2miArnkEnRdU5vhqCa?dl=0

1468.    By now it ought to be painstakingly evident that False Accuser Bissell and her attorneys are criminals, hell bent on Extortion and Criminal Coercion Profits et al, through extensive Perjury and Fraud, and have met the "deceived the Court" standard warranting a ruling of Fraud on the Court.  Read on for more.


**THAT'S NOT THE ANSWER TO MY QUESTION EITHER**

1469.    But look what happened when the questions started to get down to the 'nitty gritty' in 2017 and False Accuser Bissell was not prepared with a sound bite that fit the line of questioning she anticipated and that was not already used (See PACS, pg 183 and pg 221), so she 'recycled' the ones she already had.  False Accuser Barreiro tried to get it all back on track by Suborning more Perjury with False Accuser Bissell and "blocking and tackling" for her. It is so evident now that what False Accusers Barreiro, Flanagan, and Bissell et al did was a Fraud on the Court in 2017, and in turn in New Jersey courts in 2019/2020, in both state court and the USDC NJ. In Act III, it will be shown that the Imm defendants have the "same habits" as a regular way of doing business in Canadian Court. False Accuser Shivas et al have only aggravated the whole ruse and brings discredit to what a lawyer is supposed to be; Shivas, and False Accuser Bissell's other corrupt lawyers, and the now-defendant-Canadian-lawyers are all "liars for hire," being processed through the United States Justice System.

1470.    Dean believes that the Court will have no difficulty finding that these matters are Fraud that are directed at not only Dean but to the Court(s) in blatant numerous attempts to deceive various Courts, including the USDC NJ, Law Division, and of course Family Court, and rises to the level of the "most egregious misconduct directed to the Court(s) itself, "and that [is] "…supported by clear, unequivocal and convincing evidence." The perjury is so extensive, obvious, and shameful that Dean holds fast to:

"In the court In re Lavander held that perjury, by a single non-party witness, can rise to the level of fraud on the court." However, the perjury must be so **detrimental to the entire....proceedings that it defiles the court itself**. See In re Lavander, 180 F. 3d 1114, 1120  (Emphasis added by Dean)

1471.      Here we are not just talking about one "defilement." Here, we are talking about non-stop defilement where nearly every single material thing that False Accuser Bissell claims to be true is perjury.

1472.      The word "defile" according to dictionary.com means: to make foul, dirty, or unclean, pollute, taint; debase. A fabricated story of vile anal rape – with no lube – to the point of making False Accuser Bissell bleed from her "anus," and then again two months later, where in fact Dean has a pre-existing condition with his penis preventing (that False Accuser Bissell never knew about until the FRO hearing)  him from doing this vile act– ought to qualify as extreme "defilement." And that is only ONE DEFILEMENT (See PACS, pg 186).

1473.      Apologies to the Court to have to read this foulness at all; False Accuser Bissell fabricated it – Dean has to defend it, deal with it, and prove it utterly false, again. This is just one of many, many examples that False Accuser Bissell and her lawyers invented, and presented, and the "Legacy" Dean has that False Accuser Bissell created (See text messages, November 13, 2016, 7:58 PM).

1474.      There are so many of these fabricated notions that are covered in detail in the Unredacted Predicate Acts Crime Story (PACS) and Unredacted Transcripts; the above brief list is not comprehensive. Here are some other major fabrications.

**THERE IS NO DOUBT – IN FACT - IT IS ALL DOUBT**

1475.      Just on that fact alone that False Accuser Bissell did not have her own text messages is plenty of reason for False Accuser Barreiro and Flanagan et al to have plenty of doubts about False Accuser Bissell's story and believing her. But for Flanagan to sit idle while False Accuser Bissell told Judge Callahan about her "memory problems" (when he had the police report and the text messages tucked into his briefcase (or whatever Flanagan uses) – and not that they were fitting the amended TRO to fit the texts - like the time of the false rape report time (on TRO) because of a Dean alibi embedded in the texts of being on an airplane on February 7, 2017) is Perjury and Subornation of Perjury.

**DESTRUCTION OF EVIDENCE**

1476.      Destruction of evidence is the top of the list for false accusers.  Not having evidence is one thing; discarding/throwing evidence out/withholding it from the proceeding and/or the defendant [Dean] before the proceeding is an entirely different matter (read: indicatable offense in the State of New Jersey) – and that is precisely what Barreiro, False Accusers Bissell, and Flanagan did in agreement and under terms of conspiracy and they are equally responsible for all of this as False Accuser Bissell.

**FALSE ACCUSER BISSELL CLAIMS SHE WAS "SILENT," "COMPLIANT," AND "TOLD NO ONE" AND "DID WHATEVER [DEAN] DIRECTED TO HER TO DO" (2017) EXCEPT NOW (in 2019/2020) WHEN SHE SAYS SHE WAS COMPLAINING CONSTANTLY TO DEAN AND KLASSEN AND SEEING A COUNCILOR – NO MENTION OF THESE COMPLAINTS NOR THIS COUNCILOR TO JUDGE MURRAY**

1477.        Another issue is that False Accuser Bissell represented to Judge Murray that she told "no one" (See PACS, pg 40-41) about the supposed rape because she was in fear of her life and the life of her family until August 1, 2017 (of July 30, 2017) when she told her husband False Accuser James Bissell – no mention of the Councilor to Judge Murray and definitely no mention about having "memory" issues in any FRO Hearing day. No issues about memory to the Police either. But to Judge Callahan she said that she was seeing a councilor to help her with her memory problems and that was because the text messages between Bissell and Dean are utterly exculpatory to Dean. That Barreiro and Flanagan had the police report and willfully were falsely angling to have Dean spend the rest of his life in prison.

**FALSE ACCUSER BISSELL SAYS SHE CANNOT REMEMBER BUT TEXT MESSAGES SAY OTHERWISE.**

1478.        False Accuser Bissell claims that she did not remember what happened leading up to the 20 minutes before the presentation (March 2, 2017 texts) where Peretz and his guests were in attendance and Dean, Klassen, and False Accuser Bissell were right under their noses (See PACS, pg 180). Of course, on the texts Dean is asking False Accuser Bissell about whether there is a printer at Craig's office we could access (PACS, pg 180). More Perjury and Subornation of Perjury.  False Accuser Bissell's fall-back position is "I don't remember," if she has not thought about the angle and have a pre-planned sound bite rehearsed.

**HEDGE FUND START UP**

1479.        Is it credible that False Accuser Bissell would sticking around for a hedge fund start-up, that at that point in 2017 did not even have a physical office, that the fund was trying to get their first big (and hardest to get) client trying to press Dean for a "percentage," if all any of these awful things really happened to False Accuser Bissell?  Not Credible.

1480.        That Dean and Klassen were able to get the hedge fund industry to waive their minimum capital requirements (between $10,000,000 to $50,000,000) was quite an accomplishment as well because the industry said they had "never seen that before." Bissell was slobbering all over herself trying to be the next Mrs. Ryan Dean and when she learnt she was not going to be she schemed this plot herein with the Imm defendants.

**A PERCENTAGE OF PERETZ CLIENT INVESTING IN THE SAGA ENTERPRISE MAYBE OR STAY FOR NEAR CERTAIN DEATH OF FALSE ACCUSER BISSELL, HER FAMILY, AND *CHILDREN*?**

1481.        Before the police report was secured this was the position that False Accuser Bissell was trying to peddle onto the Court(s). False Accuser Bissell was actually trying to pursue Dean for a long-term percentage

contingency contract and in turn to 'sign up' for more supposed abuse and risk to her and her own kids of murder if she did not comply and re-rape (like the last time)? This included 2017 (false) accusations of constant threats of break and enter, re-rape, and mass murder of her family each and every time they spoke on the phone and/or in person. What? It is just bizarre.

1482.        Moreover, False Accuser Bissell was claiming that Dean was threatening False Accuser Bissell to do all of these things, but the record shows Dean was neither threatening False Accuser Bissell nor was she producing work product outside of the Peretz related items. Just continuous lies of False Accuser Bissell in 2017 and 2019/2020. These were the arguments that Dean and Klassen were having to make and False Accuser Bissell and her corrupt lawyers were letting these arguments play out all the while knowing that Bissell herself foreclosed on the possibility of these supposed threats in the initial police report and while she thought the text messages were enough.

1483.        It quite literally had twisted off into become a scheme within a scheme and there are numerous officers of the court involved and Imm defendants paid for it all.


**THERE WAS NO MOTIVE FOR DEAN TO DO WHAT FALSE ACCUSER BISSELL CLAIMS HE DID**

1484.        Dean and Klassen had worked for years and were just about to launch their fund and False Accuser Bissell wants the Court(s) to believe that Dean was "betting it all" on False Accuser Bissell remaining "silent," "compliant," "telling no one" and "doing whatever [Dean] directed her to do," otherwise, Dean, according to False Accuser Bissell, was going to come "busting through her door" and secure a place on front page news for all of the wrong reasons - with grisly mass murder and re-rape – just like last time.

1485.         It was all calculated to destroy Dean and destroy the Saga Enterprise by any way possible to any authority that would listen, and it almost was 100% successful and it is entirely in the zone-of-interests of the Evil Scheme.

1486.        Now that the police report is in hand, consider for a moment that there was no police report in hand. What precisely would Dean be betting on? False Accuser Bissell cannot point to any demands in writing.  False Accuser Bissell can't point to Dean demanding anything in texts. False Accuser Bissell certainly did not record any demands, because they did not happen. False accuser did not record even one of these supposed and constant predictable threats. False Accuser Bissell can't even show that after the May 1, 2017 "radio silence" request that Dean even contacted False Accuser Bissell once. False Accuser Bissell can't point to any of her supposed complaints – written or otherwise.  What was Dean getting back from False Accuser Bissell for "betting it all," the night of February 7, 2017, and then supposedly constantly threatening False Accuser Bissell from that point on? Dean did not ask anything from False Accuser Bissell other than normal "Peretz" stuff – to

which she would have benefited from if she did not sabotage it all, and if indeed Peretz brought in the institutional client(s).

1487.    Dean was not pressing False Accuser Bissell on Peretz either – that was already happening because Peretz told Klassen that the DDQ needed to be developed for his and Sierra's contacts (PACS, Pg 252) and it was being developed well after the May 1, 2017 "radio silence" request between largely by Klassen and Peretz.

**GETTING ADVICE FROM FALSE ACCUSER BISSELL FOR THE CBC INTERVIEW**

1488.    Furthermore, Dean was an elected director of the Immigration Consultants of Canada Regulator Council (ICCRC), a federal regulator in Canada (Act I and III), and Dean was elected to investigate their "alleged" internal corruption, and Dean was appearing in front of the Parliament of Canada (PACS, pg 171 – 173). Even the dumbest of criminals would not use the victim of their supposed vile and perverse rape and the supposed constant threat of "re-rape, break and enter (like the last time), and mass murder," to help them in preparing for media interviews on Canada's largest broadcast network.  But this is what False Accuser Bissell wants the Court(s) to believe.

1489.    But that is why the False accusers do not want to talk about the Imm defendants and vice versa – and that *is because they are connected.*

1490.    False Accuser Bissell said that Dean was "pretty smart" about not putting threats in the text messages (See PACS, 150) but according to False Accuser Bissell, he was left wide open to Canada's media and Parliament if at any time False Accuser Bissell decided she did not want to supposedly "comply." Remember, Judge Murray who witnessed False Accuser Bissell said that the Court had to go with what was "inherently believable" (See PACS, pg 27).

1491.    Just so it is said there is also nothing in the police report about "failure to hire."

1492.    Liars should not be allowed to prosper, and this has long been a central tenant to the moral fabric of our society and one of the underpinnings of the legal system. Nor should criminals with law licenses be allowed to skate away free and clear when they have committed Fraud on the Court and intentionally and needlessly inflicted so much misery on an innocent person(s) and their business and property for Extortion takes.

**RECEIVE TEXT MESSAGES; CHANGE STORY – MARKEDLY INCREASE LEVEL OF SUPPOSED VIOLENCE AND THREATS IN REAL TIME IN COURT.**

1493.    After the receipt of the text messages their story changed, and criminality escalated significantly. To Judge Callahan there was no mention of these texts being received at all nor the May 1, 2017 "Radio Silence" Request by False Accuser Bissell to Dean – in which Dean complied and proceeded to never contact False Accuser Bissell again – nor the fact that False Accuser Bissell had moved to Florida.

1494.        Instead, False Accusers Flanagan and Bissell markedly increased the level of the supposed sexual violence levied against Dean. This was the basis of getting the Amended TRO, but had they mentioned to Judge Callahan that Dean had no contact with False Accuser Bissell for over 3 months, and that she had moved to Florida the Amendment would have very likely been denied - and just on this point alone there was never probable cause to issue the Amended TRO.  There was Fraudulent Concealment, Fraud on the Court, Perjury and Subornation of Perjury et as the tools in a scheme to defraud. Find the Entire Judge Callahan transcript here: Exhibit K - Sept 19 2017 Transcript - Unredacted

1495.        To emphasis how premeditated their scheme was, False Accuser Barreiro, the Vice Chair of the Litigation Department at Greenbaum, Rowe, Smith, and Davis LLP then kicked off early his Subornation of Perjury support of False Accuser Bissell's Perjury with (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 6, Ln 14) her saying that she lives in Florida and that all communication with Dean ended on May 1, 2017 (Exhibit M Part 1 - Sept 28 2017 Transcript – Unredacted, pg 22, Lns 11-19 AND pg 26, Ln 9-22). Keep in mind that this was nearly at the beginning of False Accuser Bissell "testifying" for the first time where Dean was present in the room and they were telling 2 different Judges 2 different stories – Plaintiff(s) learned later after securing the Callahan transcript.  Note: the original TRO transcript *still* has not been secured at this point as the Cedar Grove Police's policy to withhold these items (Read: Color of State law on Bissell et al and all Imm defendants).  Go to CERTIFICATION OF RYAN DEAN, dated December 21, 2020, pg 43 (as above) to see all of the steps that needed to be done once the text messages were received and how False Accuser Bissell et al changed the story to try to bury the Truth in the text messages. The Vice Chair False Accuser also knows what False Accuser Bissell said in the Police Report that she was going to "sell the house, find work, and meet them [her family] there [Florida] at a later date."

1496.        Dean had not had a chance to present anything in his defense to call out the different stories but the transcripts side by side show the whole ruse and it belies that False Accuser Bissell, Flanagan, and Barreiro, et al knew that they had "gamed" Judge Callahan and that they were going to try to "game" Judge Murray with the upcoming and not-yet-revealed constant threats of "mass murder," for instance.

1497.        The Vice Chair False Accuser, Barreiro, had a copy of the false police report and he used it to suborn perjury with a question on September 28, 2017, in front of Judge Murray of whether or not Dean heard Ms. Bissell crying or not and Dean said 'no' because she was snuggled up beside him. The Vice Chair demurred.  False Accuser Bissell to Judge Murray on the same day said in front of Judge Murray that she essentially spent the whole night crying hysterically and in the fetal position.  On the police report it was: "They went to sleep and he left in the morning."

**THE FALSE ACCUSER BISSELL FEAR TIME-LINE KEEPS GETTING PUSHED BACK AND BACK.**

1498.    Again, this portion below was written before the Police report was obtained but even then it is utter Perjury and Subornation of Perjury and that the Imm defendants paid for in their scheme to defraud.

1499.    Tellingly, False Accuser Bissell by February 14, 2017, with her new definition of what "Happy Valentines' Day" supposedly meant that Happy Valentines' Day was in code that really meant that she was telling Dean that she would be "silent," "compliant," "tell no one" and "do whatever [Dean] directed her to do." Who would actually believe this? But, that is just one instance of the level of outright volume of nonsense and lies False Accuser Bissell throws at the court room walls – hoping some of it will 'stick.'

1500.    Then, False Accusers Shivas and Bissell et al in 2019 change this "fear timeline" again by stating:

"**Dean repeated the threats** and added that he knew the code to her garage door and that no one would hear her scream. (Id). From that time forward, Plaintiff was terrified of defendant Dean and did what he told her out of fear that he would hurt her and her family. She told no one of the assault and continued to respond to his text messages and phone calls in order to comply with his demands so that he would not follow through on his threats. Plaintiff also continued to exert energy towards helping the hedge fund business by setting up meetings for the Defendants. (Plaintiff Cert., ¶ ¶ 35 – 36). (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, Pg 5-6) and also See PACS, pg 36-37.

1501.    Then, False Accuser Bissell would claim she was not able to stay in her Cedar Grove Home alone and that the presence of her daughter made her feel protected because False Accuser Bissell essentially stated that she had not told the police yet [of the (false) rape], and so nobody knew about it. This IS A MAJOR POINT BECAUSE FALSE ACCUSER BISSELL'S FEAR KEEPS GETTING PUSHED BACK AND BACK AND BACK AND SHE SAYS THAT "nobody knew about it."

1502.    If what False Accuser Bissell did say was true, and if Dean was threating to kill False Accuser Bissell, her family, and her children, why would False Accuser Bissell have her daughter stay with her and somehow feel safe in her home? What? See PACS, pg 147 to hear what False Accuser Bissell told Judge Murray with respect to her fear for her children and that she "had to be protected." Yet for more than three months between May 1, 2017 and August 9, 2017 Dean did not try to contact False Accuser Bissell even once. An undisputed fact Judge Murray said.

1503.    Later, False Accuser Bissell would change her story yet again – as the "fear timeline" gets pushed back again where False Accuser Bissell says that on that August 9, 2017 – after having no contact with Dean for over 3 months that the "fear" became real after visiting the Cedar Grove Police Department with the (false) rape report and filing the (false) TRO (See PACS, pg 210).

1504.    In short, False Accuser Bissell just tries to use hysteria and stories to have the Court frown upon Dean as False Accuser Bissell plays the Victim. Not credible – False Accuser Bissell is a hardened criminal and needs a long think in the 'clink,' as do all defendants who paid for this scheme to defraud, and attempt murder.

1505.        Of course, with the police report in hand, none of the threats took place with respect to re-rape (like the last time), break and enter, and mass murder.  Again, had any of this taken place, Bissell would have reported it to the police like any woman would do to protect her *children*.  What's more, would any woman put her children at risk for a start up like this and wait so long to report it in the first place. No credible.

1506.        Again, the reasons the threats became part of the Amended TRO and then in open Court in front of Judge Murray is because False Accusers Barreiro, Flanagan, and Bissell without question are fraudster and schemed to defraud.

**JUDGE MURRAY REVIEWED THE TEXT MESSAGES SEVERAL TIMES.**

1507.        Judge Murray in referring to the text messages said essentially that the Court reviewed the text messages several times in D – 1 (Exhibit N - Sept 29 2017 Transcript – Unredacted, pg 8, Line 14) and Dean urges this Court to do the same and then read Judge Murray's entire Judgement of September 29, 2017.

1508.        Also be sure to read the entire text message statistics that are included at the beginning of Act II as they show many revealing things, and in the discussion below.

**RYAN DEAN MEETS LISA FALSE ACCUSER BISSELL**

1509.        Ms. Lisa False Accuser Bissell and Mr. Ryan Dean met at a Social Networking event in New York City in October 2016 – it quickly turned romantic and sexual – False Accuser Bissell swore that Dean was her "boyfriend/paramour" (PACS, pg 116, # 8) as well as False Accuser Bissell was unemployed; conversely, Dean was about to launch his inaugural hedge fund.   Formerly, False Accuser Bissell was the CEO of Pure Grown Diamonds and a self-professed branding expert and spin doctor and was comfortable going onto National TV shows such as Squawk Box, for instance (See 2:19, Doc 8, para 70). Dean was an emerging hedge fund manager (See 2:19, Doc 8, para 67), the brainchild behind an innovative trading strategy that was attracting considerable attention on Wall Street, an impending hedge fund launch, and had his requisite financial services licenses series 7, 24 and 66 in place - Dean had a great future and was at the cusp of breaking into the New York hedge fund scene after dedicating approximately 10 years of his life to research and develop an exciting trading strategy with exceptional profit potential which he often heard from Wall Street Players 'I have never seen that before' after completing the trading demonstration.  Obviously, Dean had no criminal record (just so this is so stated). Wall Street welcomed Dean and his business partner Mr. Klassen after they saw what Dean could do in the stock market – they viewed Klassen as an accomplished administrator. The two men had a very bright future. Together this was the Saga Enterprise and there were other individuals that were identified that were going to be part of the Saga Enterprise as contractors until False Accusers did what they did.

1510.        Of note a Final Restraining Order would have affected all of these licenses and Dean's "employment" and definitely his reputation and the Saga Enterprise.  Judge Murray covered a lot of this on August 17, 2017 just

before she gave the adjournment and was telling Dean about what the TRO/FRO process meant.  Exhibit J - Aug 17 2017 Transcript – Unredacted, pg 6 - 8.  False Accuser Bissell and her attorney wanted to cripple Dean that day and did not want the text messages in evidence because that was a "fishing expedition," and a "ploy to delay" the proceeding according to Flanagan. A FRO is a life sentence.

1511.    What was the Vice Chair of the Litigation Department doing poking around the Family Court committing a Hobbs Act (or NJ Theft by Extortion) violations along with Flanagan? Here are their respective bios:

> https://www.dropbox.com/s/es8n89tiqt7pzb3/Robert%20Flanagan%20III%20Bio.pdf?dl=0
> https://www.dropbox.com/s/npbhh2k66t8nzku/Darren%20B%20Bio.pdf?dl=0

1512.    The truth shows that it was Fraud on the Court as well on August 17, 2017 where False Accusers Flanagan, Barreiro, and Bissell tried and failed their "hit and run" mob job that day when the entire ruse was only days old for Dean.  How many other schemes like this have these "lawyers" done to other people who were venerable?  If these "lawyers" tried this with hedge fund managers – how many other innocents have they perpetrated their schemes with?  Please know that Plaintiff(s) are here and dedicated as your *personal private attorney generals* to help and help y'all on your long journey to solid citizenry again.

1513.    During the (False Accuser Bissell/Dean) dating relationship, Mr. Dean was very busy, with his business partner Mr. Kevin Klassen, getting the Saga Enterprise ready, "the Fund," Investor(s), finalizing Fund partners, Fund document preparation, and other internal requisite matters – a long intense process that Klassen and Dean had largely done themselves because yet again due to the tightness of capital at that time.  Dean and Klassen were on course to get their first big, foundational investor into the fund – outside of Peretz and were in no way dependent upon Peretz.

1514.    Dean and Klassen were doing what emerging hedge fund managers do and that was to court the investors at expensive big-league hedge fund events in targeted, ongoing face-to-face meetings to support the Fund launch phase.  It was a delicate, high touch process. Investors were getting to know Dean and Klassen and vice versa.  Dean and Klassen's backgrounds would be investigated before any large investment was made into their fund and what False Accuser Bissell and her attorneys did willfully and unjustly torpedoed all of that and likely permanently. It took Dean more than 10 years to get to that point – he had read over 1,200 financial textbooks. He had attended Rice University to get his MBA (conversely Ms. False Accuser Bissell would not even do the study materials to take the series 7 exam) (Exhibit M Part 2 - Sept 28 2017 Transcript – Unredacted, submitted into the record August 31, 2020, 70, Ln 21-24) and graduated from place called "Alfred University." False Accuser Bissell must have graduated with straight "A"s in Extortion, Criminal Coercion, RICO Act Violations, for instance – just look at her "results."

1515.    Shivas writes in 2019:

Defendants considered entering into a contract with Plaintiff as a consultant if she did not have the necessary certifications to be an employee (Plaintiff Cert., ¶¶ 16, 60). Plaintiff provided consulting to Defendants as to certain aspects of the business including how to best market the business for prospective clients and investors. She provided these services from her home office in New Jersey to Defendants (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, PG 4, Para 3).

1516.    It was a prospective contingency agreement and was to be a function of whatever Mr. Peretz (it was initially assumed he was even handed and not part of the scheme to defraud) came up with in terms of a client – how could an agreement be reached between False Accuser Bissell and the Saga Enterprise. Until Mr. Peretz had a viable investor ready to invest into Saga there was no prospective contract. Moreover, False Accuser Bissell cannot provide copies of emails of all of these consulting services that she claims that she provided to Dean and Klassen.

1517.    After luring Dean into sex and telling Dean to keep the texts "sanitized" at the beginning of the relationship, False Accuser Bissell began trying to convert her sexual relationship with Dean into a business gig as well, and after several attempts, in early January 2017 she had Dean meet her family member/friend, Mr. Craig Peretz – who was a Chief Operating Officer ("COO") in the Hedge Fund Industry (12/27/16 text message string where Dean says: "who is Craig."

1518.    Mr. Peretz was "wowed" by what Mr. Dean could do in the stock market and he was impressed by Mr. Klassen also. Mr. Peretz decided he was going to do Dean, Klassen, and their Hedge Fund a "favor" for Lisa and help get a large institutional client to invest in the Saga Enterprise, and Peretz also felt he could direct many of his existing clients at Sierra Global Management, LLC ("Sierra") to also invest capital.  Bissell said she had "no sway" over Peretz yet he was going out of his way to help Lisa and do a favor.   He stated he wasn't currently looking for a 'take' for this, but his expectation was that it would directly benefit Bissell in some fashion such as a percentage (11/17/16 at 1:02 PM and 2/25/17 texts) of invested capital procured through his and Sierra's network. Peretz became False Accuser Bissell's "representative" and in Judge Murray's words "in the attempt to forge a business relationship" (Exhibit N - Sept 29 2017 Transcript – Unredacted, submitted into the record August 31, 2020, pg 7, Lines 18-20) and "**emerging and potential business**" (Exhibit N - Sept 29 2017 Transcript – Unredacted, submitted into the record August 31, 2020, pg 8, Lines 2-3).

**THE BUSINESS COMPETITOR MR. PERETZ AND/OR SIERRA**

1519.    False Accusers Flanagan, Barreiro, Shivas, and Bissell et al never addressed the "business competitor" aspect of the Noerr – Pennington Doctrine Exception and yet here it is in the text messages between False Accuser Bissell and Dean and Judge Murray's judgement (Exhibit N - Sept 29 2017 Transcript – Unredacted, submitted into the record August 31, 2020, pg 9, Ln 3-12). Shivas et al knew all along and have not admitted that

there was this exception. Given the extent that Plaintiff(s) have gone to 'out the sham' – can anyone say that this is not a sham?

1520.     All of the False Accusers and Imm defendants are now going to have to answer this complaint in detail.

1521.     In any event, what False Accuser Bissell et al have done are Hobbs Act and CIVIL RICO Violations by at the State(s) and Federal Levels and all defendants are culpable and under terms of conspiracy of 18 USC § et al.

1522.     In Judge Murray's Court, False Accuser Bissell was claiming that she was being "compliant," with everything Dean "directed" her to do and here clearly Ms. False Accuser Bissell did not want to get her series 7 license, at "Dean's request," and wanted to take the easy way out with her Classic Luxury LLC company and attempt to forgo the series 7 license altogether. Again, this is yet another example of Subornation of Perjury that False Accuser Barreiro did in Judge Murray's Court in 2017 and all defendants did in the NJ (both State Court and USDC NJ) in 2020.

1523.     Another way to look at it as well is that Peretz said he knew a "way around the series 7" requirement and never produced this work around.  It is further evidence that Peretz and Bissell et were luring Dean, Klassen, and the Saga Enterprise into the scheme to defraud.

1524.     They were all trying to take the easy way out and what better way than to have False Accuser Bissell cry "rape," and "threats of mass murder," and then try to Extort the Saga Enterprise and deceive the Courts to going along and helping with the ruse.

1525.     In late January 2017, Dean was at the biggest hedge fund conference of the year (over 600 hedge fund managers and an estimated 3 trillion USD in assets represented) with Mr. Klassen in Miami, Florida, and Saga had an outstanding showing. False Accuser Bissell even told Dean just before he departed for the conference: "I want to wish you and Kevin the best at the conference. Be the rockstar that I know you are!!" (1/30/17 text). Dean returned February 7, 2017 exhausted but on a high – Ms. False Accuser Bissell picked Dean up at the Airport in her vehicle (2/7/2017 texts) and they went back to her home for sex and Dean's insistence that it was time to cool the personal relationship as Peretz seemed like the real deal.

https://www.dropbox.com/sh/e3o6bhmnf0eadpy/AAA6ylXaw8IhP1lJRz-nEzCOa?dl=0

**COUNCILOR**

1526.     Nowhere in the Final Restraining Order Hearing ("FRO") of September 28, 2017 does False Accusers Bissell nor Barreiro mention the "Councilor."  Instead, they went with the  "False Accuser Bissell told no one" story and that she remained "silent" and "compliant," (See PACs, pg 32-48) until August 1, 2017 – the same day that she was divorcing her husband in Florida (the record shows that it was the other way around and it was False Accuser James Bissell divorcing Ms. False Accuser Bissell) and then they proceeded to move in together in Florida where they live today. (See PACS, pgs 254 – 257).

**THE PERETZ MEETING AND THE HEDGE FUND CONFERENCE**

1527.     On March 2, 2017, Dean and Klassen met with Peretz and two of his institutional client contacts and the meeting went very well – False Accuser Bissell also attended this meeting (3/2/17 texts) said that Dean did not threaten her at this meeting (one of **ONLY** two meetings (both public) during the time in question).  Four days later, after receiving 2 promotional tickets (valued at $1,300 each) from the organizer, Dean invited False Accuser Bissell to a very public and well attended March 9, 2017 hedge fund conference and False Accuser Bissell was eager to go (3/6/17-3/7/17 texts). See "FACE TO FACE MEETINGS AND "PHONE CALLS" and "PACS, pg 161-163, pg 168 – 173," "PACS, pg 178-183," "PACS, Dean Verizon phone records, Exhibit 14."

1528.     Yet Barreiro led False Accuser Bissell through her perjurious testimony and Shivas brought forward into her 2019/2020 perjury ridden claim where False Accuser Bissell said Dean "made her go to the conference."  See PACS, pg 37. Of Course, False Accuser Bissell would change this in law division and call it an invitation (and then a request) [See PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, 37, and Civil Complaint, February 5, 2019, para 49).  Yet, these lawyers knowing that this was Perjury and Subornation of Perjury represented to the USDC NJ and Law Division that everything was legal and above board.  It was not. It was Obstruction of Justice.

1529.     Dean was telling Ms. False Accuser Bissell that Mr. Peretz, his company and his network seemed like the "real thing" and it was time for "less sex and more hedge fund business" in response to her "we should speak" text where she was really trying to take the relationship to the next level (3/3/17 text). Dean shut that down gently, firmly, and quickly. Also, on this point, why would False Accuser Bissell want to "speak" if she was being constantly threatened and harassed. What?

**PERETZ IS FALSE ACCUSER BISSELL'S FAMILY MEMBER BUT FALSE ACCUSER BISSELL DOES NOT WARN HIM OF SUPPOSED "MURDER."**

1530.     Mr. Klassen then started to work closely and diligently with Mr. Peretz developing certain Saga materials that Peretz said were needed for his investor base and company – the main document was the preparation of a detailed and voluminous Due Diligence Questionnaire (the "DDQ"). This document and whatever else Peretz needed Plaintiff(s) to do was requisite to get an investor and in turn for False Accuser Bissell to be compensated (pending her series 7 resolution). Did the Court get the point? Klassen started to work with Peretz in developing the DDQ materials and this was after False Accuser Bissell claims she was violently raped and during a period when False Accuser Bissell claims Dean was "constantly" threatening her with mass murder threats.  Credible?

1531.     Add in that Mr. Peretz kept working with Mr. Klassen in developing the DDQ and the sham litigation, both objectively and subjectively, with a competitor being present is sealed. Add it that Peretz floated the idea that there was a way around the series 7 requirement for Bissell to sell Saga Enterprise matters.

1532.    Is it credible that to Judge Murray in 2017, False Accuser Bissell said one thing about her knowing that Peretz and Klassen were still working together and then to Law Division she claims that she did not know that Peretz and Klassen were working together after May 1, 2017? See PACS, pg 146-147.  Mr. Peretz and Sierra are full partners to the crimes detailed herein.

1533.    Just think of it and how False Accuser Bissell is trying to paint Dean as being a cross between the infamous and now deceased "Jeffrey Epstein" and "Hannibal Lecter" (Silence of the Lambs), and imagine if Epstein and/or Lecter received a text messages from their victim saying "radio silence" and Epstein and/or Lecter said "ok" and proceeded to never contact them again. It would be a great scene on say "Saturday Night Live," for instance, but this is not "Saturday Night Live," is it.

1534.    The truth of the matter is that Dean acted like just some guy who had been told by a woman: "hey, I need "radio silence" because my husband is suspecting of the affair and don't contact me."  When Dean says "k" *because* this is what Dean wants too.  Less sex, more hedge fund business and Dean acts precisely like this by NOT contacting False Accuser Bissell anymore and letting the matter with Peretz and Klassen develop.  Instead, it is revealed that it was instead a scheme to defraud that involved all False accusers and Imm defendants paid for it.

1535.    If Dean was really the heinous rapist and about to be mass murderer that False Accuser Bissell claims he was, and that False Accuser Bissell had ended "all communications" with Dean then why would Dean let Klassen continue working with Peretz well into mid-July 2017?  Why would False Accuser Bissell let Peretz keep working with Mr. Klassen as she claimed that Klassen was essentially Dean's co-conspirator in all of this (See Civil Complaint, February 5, 2019, para 119)?  Peretz was a "family member" of False Accuser Bissell's according to False Accuser Bissell (See PACS, Exhibit 17) and since Dean was going to commit "mass murder" against her "family," then why did False Accuser Bissell not warn Peretz until at least mid-July 2017? Even to Peretz, False Accuser Bissell is a terrible family member, if what she says was true – which it isn't.  It is just another hole in her lie. It also shows that Peretz and Sierra lured the Saga Enterprise in for extortion takes because Peretz is going to have a hard time convincing the Jury – that a family member and 'agent' of Bissell that somehow he did not know about and/or was part of the scheme to defraud.

1536.    It is because all of what False Accuser Bissell is claiming is Fraud and Perjury and she is one of the most vile false rape accusers in our nation's history.  Yet, again the police report debunks the material accusations Bissell states with respect to the threats and so much more.

**FALSE ACCUSER BISSELL AND HER CORRUPT NEW JERSEY LAWYERS DECEIVED THE COURTS – WHAT ELSE COULD THEY ACCUSE DEAN OF?**

1537.    These False Accuser Bissell stories (2017) versus False Accuser Bissell stories (2019) is the very definition of Perjury, Subornation of Perjury, Fraudulent Concealment, Fraud on the Court, Scheme to Defraud, and

Evidence Destruction et al because False Accusers Bissell and Flanagan et al willingly left out major material information to Judge Callahan, but used it in Judge Murray's Court – all in 2017.  What's more, because it was an *ex parte* hearing in front of Judge Callahan, all of what they did was directly aimed squarely at the Callahan Court (and then the Murray Court because at the time Dean did not know about any of it until recently), and in turn False Accuser Bissell et al represented to the USDC NJ and Law Division that everything was done legally. Clearly it was not, and therefore there is Fraud on the Court directed at the USDC NJ, Law Division, and Family Court as well.

1538.     Shivas knowing all of these falsehoods just changed the story and said that none of the items in 2017 were before any Court. That it was all somehow 'separate' and an '**attempt to muddy the waters and to join issues that are not connected' (See Shivas letter to Judge Gardner, January 4, 2021).  Can anyone say that 2017 and 2019/2020 is somehow not "connected?"**

1539.     False Accuser Barreiro for his part – and with police report in hand - ran with the "constant threats of mass murder et al" with False Accuser Bissell and together in perjury and subornation of perjury they escalated the frequency of these threats in real time in front of Judge Murray. **Then in 2:19 they reiterated it all to Federal Judge Arleo in Doc 10-1, pg 13, paras 1-2**:

> "The Amended Complaint is filled with hyperbolic, slanderous and unsupported accusations…The Amended Complaint remains that Mr. Barreiro and Mr. Flanagan suborned perjury and fabricated evidence in connection with their representation of Ms. Bissell in the PDVA proceeding for the purposes of destroying Dean's life. Dean has also named Mr. Adams and Mr. Vaccaro as defendants as a result of their representation and defense of Mr. Barreiro and Mr. Flanagan in this matter.  Putting aside the fact that these allegations lack any legal support, all of them are devoid of facts."

1540.     That police report is hardcore evidence of precisely what Dean claimed above and indeed they are culpable.

1541.     Moreover, it is all captured (See PACs, pg 32-48).  False Accuser Shivas then forged a new path than 2017 and shockingly ignored False Accuser Bissell's sworn 2017 testimony of "silent," "compliant," "told no one," and "did whatever [Dean] directed her to do," and instead fabricated, authored, and championed a new set of fabricated stories where False Accuser Bissell was now supposed "constantly complaining" of harassment by Dean and discrimination by both Dean AND KLASSEN.  When held to task, False Accuser Shivas then directed his Fraud, Misrepresentation, and Misconduct Court itself.  Knowingly, Willful, and purposefully – perjury, suborning perjury, fraud and much, much more.

**DESTRUCTION OF THE SAGA ENTERPRISE FOR EXTORTION PROFIT POTENTIAL**

1542.     All momentum in the hedge fund and years of work were lost in an instant because of the calculated Evil Scheme of Ms. False Accuser Bissell, and her lawyers et al.  During this entire 2017 Murray Court episode, there was a two-month period where there was very little going on with the fund – but this was the most critical time of all as funds were low, but investors were very interested. They were called "seeder" investors and the first

one in got essentially the best deal.  They were looking at us and we were looking at them.  An attractive opportunity for both parties – that is now destroyed – forever.

1543.　　　Once the fund kicked into gear and word got out that the Saga Enterprise was the real deal investors would trip over themselves to get 25% unleveraged return or more per year. The return would have been likely higher if not but for the first attack but the second attack sent Dean over the edge and he was gearing himself for a long protracted battle with these criminals.

**THERE WAS DISCOVERY IN THE JUDGE MURRAY 2017 COURT**

1544.　　　On August 17, 2020, Dean and False Accuser Bissell and attorneys from both sides appeared before the 2017 Judge Murray Court and the Court told False Accuser Bissell she could access discovery (See PACS, pg 126 – 128).  After False Accuser Bissell received Dean's copy of the exculpatory text messages (which False Accuser Bissell thought were destroyed), she materially amended her TRO (See PACS, Exhibits 5 & 8) with False Accuser Flanagan escalating the alleged violence against Dean significantly and to counter Dean's alibis embedded in text messages – this is obviously very important.

1545.　　　The further point is that during this time of discovery, False Accusers Bissell, Barreiro, and Flanagan, did not use the time to get any more discoverable items – and thusly waiving their discovery rights given by Judge Murray for then and the future, and instead spent their time studying the text messages and coming up with the perjury and fraud with respect to "Happy Valentines Day," and the unclaimed booty call turned to "garage door codes" falsities, for instance, and undisclosed mass murder scheme.  This is Fraud on the Court and a scheme to defraud the Saga Enterprise.

1546.　　　Of course, Shivas would deny that there was any discovery at all:

"…there was no period of discovery and the case was decided as a summary proceeding before Hon. Carolyn A. Murray, J.S.C. (Plaintiff Cert., ¶ 52) (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, STATEMENT OF FACTS, Pg 7, para 2).

1547.　　　The hearing took place over September 26, 2017 and September 28, 2017 aside from the initial hearing of August 17, 2017.  Judge Murray ordered discovery on August 17, 2017 and documents were exchanged – namely the text messages that False Accuser Bissell's attorney Flanagan called suspect (PACS, pg 126-127).  After studying the text messages for nearly a month False Accuser Bissell and Flanagan et al amended the TRO and went in front of Judge Callahan and committed perjury and suborned perjury.  The CERTIFICATE OF RYAN DEAN (December 21, 2020) details this out. As a small aside before dealing with the "discovery issue," here is what False Accuser Bissell has to say in her CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, Para 51-55:

"Upon my filing of the application against Defendant Dean, the Court granted me a temporary restraining order and set a date for the hearing on the final restraining order. The date was set within a month of the initial filing. That hearing date was adjourned for a short time and the FRO hearing was set down for August, 2017."

1548.     If the TRO was filed on August 9, 2017 and a month was given for the FRO hearing then how is it that False Accuser Bissell is representing in writing that the hearing took place in August 2017? Just a minor item but another lie.

1549.     They choose not to fully use the opportunity for discovery granted to them.  False Accuser Bissell et al, then used this time to not access discovery (as Judge Murray granted), but to craft a strategy, to get an Amended TRO (to counter the embedded alibis) with a NEW time, AND invented fabricated escalating violence (that they would surprise the Court on) and invent a "new, nonsensical obscure language" where False Accuser Bissell would invent new meanings for common phrases (see Happy Valentines' Day herein, "The False Accuser Bissell Spells" in the PACS, Exhibit 10 and above) so she could counter the friendly tone and exculpatory language of the text messages. They even came with "Ryan had a certain tone in his texts," (see PACS, pg 150), to counter the fact that there are no "threats" in the text messages whereas before they had the texts they were "suspect."   The texts, she likely destroyed.  If False Accuser Bissell had all these texts on day 1, then why spend a month studying the text messages, and then Amend the TRO with all of the next violence and "mass murder" fabrications and "garage door" perjury?

1550.     The transcripts show clearly what happened when and after the initial FRO hearing date of August 9, 2017 there was the amended TRO date of September 19, 2017. Continuing with the "discovery issue," False Accuser Bissell states:

> "On August 17, 2017, the hearing for the application for final restraining order began before Hon. Carolyn Murray, J.S.C. The hearing was conducted over approximately 5 non consecutive days and it concluded on September 29, 2017. During the proceedings, I presented testimony relating to the sexual assault by defendant Dean. I also called my former New Jersey employer, Mark Faber to testify regarding Defendants' false statements. Due to the rules governing the final restraining order, I was not afforded the opportunity to conduct discovery in the case prior to the hearing. The parties did not exchange relevant documents or answers to interrogatories…."

1551.     Total and utter perjury. There was discovery.  There were 3 hearings and 1 day of judgement. Not "approximately 5 days." This also indicates that False Accuser Shivas did not even bother to order the Transcripts before he involved BS and his lawless partners into this scheme to defraud. Mark Faber perpetrated another step in the scheme with his 'suspect testimony.'

1552.     The text messages – that were a big reason that Dean won in Judge Murray's Court – were most assuredly given to False Accuser Bissell as False Accuser Bissell did not present them to the Court (withheld them) and/or had destroyed them. What's more, after receipt of the text False Accuser Bissell et al did not ask for any more discovery because she was busy studying the text messages and seeing how to create further perjury along with her suborning of perjury lawyers Flanagan and Barreiro et al. To Law Division False Accuser Bissell and Shivas falsely and perjuriously deny that there was any discovery in Judge Murray's Court room all. It

was not a summary hearing – it was a full trial – where Dean "won" and False Accuser Bissell lost and did not appeal.

1553.        But just think of it and all of the differing that False Accusers Told – and Dean had but his text messages and very short time to prepare for it and no time to prepare for the threats of murder.  Rhetorically speaking, Dean ought to suing defendants *for not murdering him and doing so right at the beginning August 2017* because all of this has been quite some burden to bear.  1. Prove that he is not a rapist/about to mass murder and going up against a TV personality self-professed "Spin Doctor" in the #MeToo age and 2. Learning how to be a lawyer so he can prove all of these travesties in Court.  Part 1. is complete Plaintiff(s) believe after all of the Federal Rule of Civil Procedure specificity with pleading fraud herein (and again yes, this needs to be edited again a few times – apologies because Plaintiff(s) are out of time and must file no later than April 19, 2021.

**FALSE ACCUSER BISSELL AND SHIVAS MISQUOTING AND MISREPRESENTING JUDGE MURRAY'S 2017 JUDGEMENT TO LAW DIVISION IN 2019 – FRAUD ON THE COURT BY MISREPRESENTING WHAT ANOTHER COURT SAID.**

1554.        Shivas in 2019 falsely and willfully states in his one-sided misrepresentation of what Judge Murray said in Judgement:

> "The Court did not conclude that Plaintiff could not prove the sexual assault. Instead, it was noted that there were divergent stories told by each party and that the Court could not conclude definitively which story was more credible and that it would not be legally appropriate to issue a final restraining order. The Court explicitly found that defendant Dean's actions were troubling and unexplained" (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, STATEMENT OF FACTS, Final Restraining Order Hearing, pg 7, para 3).

1555.        Clearly the Court did conclude that False Accuser Bissell did not prove the sexual assault in the Order of Dismissal where it states in the check box dismissal of September 29, 2017:

> "The Court having determined that the plaintiff's allegation of domestic violence have not been substantiated." And "IT IS HEREBY ORDERED on the 29th day of September 2017, that the Domestic Violence Complaint, dated 09/09/2017 is DISMISSED AND THE ☑ TEMPORARY RESTRAINING ORDER dated 09/19/2017 is/are vacated. IT IS FURTHER ORDERED THAT: ☑ OTHER: THE TRO/FRO IS DISMISSED. PLTF'S ALLEGATION OF DOMESTIC VIOLENCE IS NOT SUBSTANTIATED."

1556.        Here is the dismissal order by Judge Murray that was never appealed:

https://www.dropbox.com/s/jtoae09d3cd87lw/Judge%20Murray%20Order%20of%20Dismissal%20%28Clean%20Copy%29.pdf?dl=0

1557.        Shivas is just flat out lying to the Court – it is obvious what the TRO Dismissal reads.

1558.        Judge Murray also did not call Dean out on his credibility.  The Court said it had to go with what was "inherently believable." Judge Murray said she was "not impressed" with Dean taking the video of February 7, 2017, and that is not a credibility issue nor is it a crime. That's an opinion.

1559.        Search Judge Murray's Judgement of September 29, 2017 and these false notions below are not found, despite False Accuser Bissell and Shivas et al representing that they do:

"The Court explicitly found that defendant Dean's actions **were troubling and unexplained**."

**JUDGE MURRAY'S JUDGEMENT**

1560.    In the 2017 Murray Court (September 28, 2020) – False Accuser Bissell further escalated the alleged violence and constant threats of mass murder that Judge Murray said "frankly did not strike the Court as being entirely credible" and caused the Court "concern" (Exhibit N - Sept 29 2017 Transcript – Unredacted, pg 12, Lines 13-14).

1561.    The Court was certainly concerned about the outlandish claims made by False Accuser Bissell (including threats of mass murder, break and enter, re-rape) but the Court recognized the friendly ongoing nature of the substantial text messages, zero physical evidence, testimony from False Accuser Bissell that the Court did not find entirely credible, and a simple "radio silence" text on May 1, 2017 request that Dean respected and never contacted False Accuser Bissell again.  Of course, the sheer gravity of the false accusations and over the top escalations of the threats culminating into each and every time False Accuser Bissell and Dean spoke in person and on the phone were very concerning to the Court – meaning that False Accuser Bissell et al's contrived false third story (in 2017) had successfully shocked the Court for sure, but the Evidence and Dean's demonstrated behavior in the text messages certainly did not support it.

1562.    Reading these passages, it is clear that Judge Murray was calling False Accuser Bissell a liar and for False Accuser Bissell and Shivas et al to represent that this was not the case is more Fraud, Misrepresentation, and Misconduct.

1563.    If Judge Murray is saying these kinds of things how can False Accuser Bissell and Shivas et al misrepresent to the USDC NJ and/or Law Division something that is not true? It is of note that Shivas before launching his extortion campaign did not even both to order the Transcripts from 2017 (See PACS, Exhibit 33).

1564.    Further, Judge Murray stated there was (PACS, pg 17) no crime scene evidence and no physical evidence. Flanagan represented to Judge Callahan that they had "proofs."

1565.    And then there is the police report.  Plaintiff(s) can only wonder how Judge Murray is going to feel about wasting 4 days of her time when this police report was being fraudulently concealed from the Court.

**THE FALLOUT IN DEAN'S LIFE AND THE SAGA ENTERPRISE BECAUSE OF FALSE ACCUSER BISSELL'S EXTORTION STUNT ET AL – FALSE ACCUSER BISSELL WAS OUT OF MONEY. IMM DEFENDANTS HAVE BEEN PAYING FOR IT ALL.**

1566.    Following the two-month period when Dean "won" in Judge Murray's Court Room, he was in no position to pick up the momentum of where he was before defendants and False Accuser Bissell's unprovoked sneak attack; it was by then also too late to apply to Canadian Federal Court for the Judicial Review. Judge Murray also warned Dean not to retaliate in any way whatsoever and that precluded Dean connected Imm defendants and the False accusers at that time.

1567.     Indeed, what False Accuser Bissell and defendants did was to kill all of the momentum of the Fund and made the 2017 launch of the hedge fund a total write off.  Also, Dean was utterly devastated – mentally, emotionally, physically, and it took him 6 months+ to begin to recover his health from the ordeal. His health has significantly further deteriorated from that point now that he is embroiled in a much-expanded circus of Suborning of Perjury lawyers and False Accuser Bissell's ever-changing stories – all extending from the defendants' Perjury, Subornation of Perjury, Fraud, Misrepresentation and Misconduct and having to deal with the Imm defendants circus in Canada.

1568.     None of the lawyers have directly answered any of these matters with exactitude and showed proof. Of course, defendants are welcome to plead the 5th Amendment if they so choose – after all, criminals have that right under the Constitution and here they are being given full notice of their crimes. They are ones that have been dodging this daily and not Dean – Dean has been going at them as best as he can being a Pro Se litigant being extorted and criminally coerced et al and dealing with all of their other criminality.

1569.     False Accusers Flanagan, Barreiro, Vaccaro, and Adams answered in 2:19 with an 8-page letter in lieu of motion for their Fraud on the Court and a letter will be going out to Judge Arleo with the Police Report; lets see what the Judge thinks about it all.

https://www.dropbox.com/s/7ts038v0rtasmdt/FOC%20Transcripts%20Response%20Flanagan%20Nov%2023%202020.pdf?dl=0

**FALSE ACCUSER BISSELL AND SHIVAS FRAUDULENTLY STATE THAT ON TEXT MESSAGES DEAN STATED THAT FALSE ACCUSER BISSELL WAS PART OF THE SAGA TEAM AND THAT HE WAS FINALIZING DETAILS AND LOGISTICS. THOSE TEXT(S) DO NOT EXIST.**

1570.     Bissel and Shivas offer this Perjury on to the heap they have created.

Defendant Dean sent a text to Plaintiff stating that she was "part of the [Saga] team and that he was finalizing the details and logistics of her position with Saga" (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1571.     This is pure PERJURY as nowhere in the texts between False Accuser Bissell and Dean does it say this. What it does say is that on 3/9/17 at 6:32 PM, False Accuser Bissell sent Dean a photo of Mr. Klassen and another gentleman not affiliated with Saga in any way where False Accuser Bissell said:

"Big glass is yours!! This is from your team mates!!," followed up with "They made me send that."

1572.     The point is that Dean had already left the hedge fund conference and False Accuser Bissell did not say "our team mates" she said "your team mates." Furthermore, she was attributing people that were not part of Saga as being Dean's "Team Mate." The further point is that Dean did not say to False Accuser Bissell that she was "part of the [Saga] team and that he was finalizing the details and logistics of her position with Saga."  Nor, did Klassen introduce False Accuser Bissell as a "team mate" as False Accuser Bissell claims (Civil Complaint, para 49) – otherwise, in False Accuser Bissell's text to Dean she would have said "from OUR teammates."

1573.     False Accusers Bissell and Shivas further write:

"Plaintiff assisted the business with the understanding that she would be retained as the marketing director. She worked from her home in New Jersey and consulted with defendants Dean and Klassen as to ideas for promoting and growing the business (Plaintiff Cert., ¶ 25). The parties reached into New Jersey to retain and direct Plaintiff to provide her input for various projects and marketing activities of the business (Plaintiff Cert., Exh. "B"). Klassen introduced Plaintiff to outsiders as Saga's "marketing director" and defendant Dean confirmed on several occasions that Plaintiff was "part of the [Saga] team". (Plaintiff Cert., ¶¶ 17, 26) (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 19).

1574.    Again, the police report was recently received and totally debunks this but before the police report was received this was Plaintiff(s) take on this part of the scheme.

1575.    First off, it was False Accuser Bissell who was reaching into New York to push the notion of Craig Peretz onto Dean and not the other way around (See texts of December 27, 2016) where Dean says "Who is Craig." Also, when this happened False Accuser Bissell was in Florida and not New Jersey (See text messages 12/18/16 at 8:50 AM).

1576.    Dean did not confirm on "several occasions" that Plaintiff was "part of the [Saga] team," and this is obvious from the point above where False Accuser Shivas and Bissell et al try to create text messages that do not exist. Likewise, Klassen did not "introduce" False Accuser Bissell at the hedge fund conference as the "marketing director," and she has no proof of it – she was labelled as a "Branding Manager (Consultant)" and a guest of Saga (it was Saga's free ticket – so it showed on the badge presumedly) so she could simply gain access to the event. Just another lie by False Accusers Bissell and Shivas et al – see below for the statement.

1577.    Neither Dean, Klassen, nor Saga "retained" False Accuser Bissell either as evidenced that there was no contract and no invoice – there was not even a draft – what there was continuing discussions and information exchanges between Peretz/Sierra and Klassen/Saga into July, 2017 in an attempt to progress and agree to a business arrangement.

1578.    False Accuser Bissell's own statement is different than what Shivas has to say in PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 19.  False Accuser Bissell states:

Defendants Dean and Klassen promised that I would be engaged as marketing director for Saga. In fact, Klassen introduced me as Saga's marketing director at a hedge fund conference in New York City on March 9, 2017. In January, 2017, Dean sent a text message to me stating that I was "still in the band" relating to her role at Saga. Dean also sent texts to me in April 2017 indicating that he "was working on" finalizing my position with Saga. On March 7, 2017, Defendant Klassen registered me for a hedge fund conference as "Branding Manager (Consultant) for Saga".  Attached hereto as Exhibit "B" are a series of emails and attachments related to my work on behalf of Saga and my efforts to facilitate Saga's marketing efforts (CERTIFICATE OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PARA 17).

1579.    With respect to the comment of "being in the band" False Accuser Bissell leaves out the fact that she is the one who called Dean "rockstar." On January 30, 2017 at 11: 21 AM False Accuser Bissell said:

"I want to wish you and Kevin the best at the conference! Be the rockstar that I know you are."

1580.     Dean responds with:

"Don't worry – you're still in the band. Call me." Dean said "don't worry"

1581.     Because False Accuser Bissell had told him that she was jealous of Dean going to conference where there would be plenty of beautiful women.  False Accuser Bissell was having a Mars/Venus moment (See texts January 15, 2017 at 12:03 PM) where False Accuser Bissell laments that "Never mind, Mars/Venus moment" after she whined about "attention" – more accurately, lack of attention - the previous night. Of course, False Accuser told the Police that their relations were not "romantic" and yet there is Mars/Venus in black and white by False Accuser Bissell to Dean. Yet False Accuser Bissell and Shivas try to spin it into False Accuser Bissell's "role in Saga." False Accuser Bissell would send Dean at text on 1/6/17 at 10:47 PM: "The silence is deafening." What a farce.

1582.     Similarly, False Accuser Bissell tries to state that Dean's text message of 4/28/2017 at 1:11 PM of is "finalizing an agreement" (See Civil Complaint, para 51):

"K. Let me know what you need from me besides the obvious. I am working on it."

1583.     The Police report reveals that Bissell had at this point already told Dean that she was essentially done with him and his company, and if that is the case why would Dean be even saying "working on it" in late April 2017?

1584.     Without the knowledge of the police report the text message also had a few meanings. First, it was with respect to working with Mr. Peretz to move things along and that was no quick task and Klassen and Peretz were working together into at least mid - July 2017 and well after the May 1, 2017 "radio silence" request.  Getting a large institutional client required a lot of work and, until there was an agreement in place for the client(s), there could be no 'gig' for False Accuser Bissell as her compensation would be a function of whatever deal the institutional client deal looked like. "Working on it" means it is a process. False Accuser Bissell also needed to pass her series 7 test which she had not even started to study for or come up with a viable alternative (yet False Accuser Bissell claims that from February 7, 2017 she did whatever [Dean] directed her to do due to her fear). Non-sense.   Total scheme to defraud by all False accusers.

1585.     Second, the text was also a reference to helping False Accuser Bissell pursue her reconciliation with her husband who was coming back to New Jersey. Dean was happy to step out of the way.  False Accuser Bissell talked about this in her 2017 Court Testimony. Now that Plaintiff(s) are in receipt of the police report it is clear that it was a scheme to defraud with Peretz and Sierra helping.  They were not "reconciling," they were getting ready to fake their own divorce and scheme and defraud a hedge fund for extortion takes and try to send an innocent man to prison for the rest of his natural life to be probably murdered next.

1586.    Finally, this April 28, 2017 text was just before False Accuser Bissell's own May 1, 2017 "Radio Silence" request for "Family Reasons." That April 28, 2017 said "Bye for now…"  Again, police report debunks it as it was a planned schemed.

1587.    As for Klassen "reaching into New Jersey" is just non sense as well.  Klassen never went to New Jersey – and Klassen certainly never met False Accuser Bissell there and never contacted her at her 'home' – they had one phone call and very limited texts on a mobile device (that False Accuser Bissell could be anywhere) conducted in response to a False Accuser Bissell initiated question (see Certification of Kevin Klassen February 1, 2017). False Accuser Bissell did not even know how to get a hold of Klassen to get her free ticket to the hedge fund conference.

1588.    False Accuser Bissell and Shivas perjurious state that:

Defendants refused to retain Plaintiff as marketing director for Saga and denied her the position promised to her throughout the time that she was involved in performing marketing services for Saga (PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, PG 12).

1589.    This is pure perjury as well – see police report.  On May 1, 2017, at False Accuser Bissell's own "radio silence" request, Dean was waiting for her to pop back up as she stated (May 1, 2017 text message).  Dean did not "refuse" False Accuser Bissell anything – he was complying with her "radio silence" request. Meanwhile, Klassen and Peretz (supposedly) kept pushing the project forward up to Mid-July 2017. On the other hand, after the TRO was filed had Dean "offered the position of marketing director to False Accuser Bissell" would have been in contempt of the TRO and a criminal offense.

1590.    False Accuser Bissell follows up this perjury with more perjury with this:

"Despite Plaintiff's qualifications, she was rejected for the position of marketing director for Saga Global Capital. Upon information and belief, after Plaintiff was rejected, the position of marketing director for Saga Global Capital remained open and the company continued to look for others to fill that position. Defendants rejected Plaintiff for the position of marketing director based on her protected status as a woman (Civil Summons 89 + 90 + 91) and PACS, pg 206.

1591.    See police report. False Accuser Bissell was not qualified – she did not pass the series 7 test and had offered no legal way around this requirement. She was also not "rejected" for anything either – she asked for and received "Radio Silence."

1592.    False Accuser Bissell furthers her reprehensible scheme with this:

"Throughout this time and up until the end of April 2017, defendant Dean spoke to Plaintiff about securing for he a commitment for her employment at Saga Global Capital. He mentioned finalizing an agreement by text messages, in telephone conversations and in person on many occasions" (Civil Summons 51, and PACS, pg 206).

1593.    Just like the false constant and nefarious threats done face-to-face and in person these "offers to finalize" her "employment" would have had to happen at the same time as well as her constant complaints of sex harassment and discrimination.

**THE SHAM LITIGATION AND FRAUDULENT CIVIL COMPLAINT OF FEBRAURY 5, 2019 OF FALSE ACCUSERS BISSELL AND SHIVAS ET AL THAT BY DEFINITION COULD NOT HAVE HAPPENED AS PERJURIOUSLY CLAIMED**

1594.    False Accuser Bissell also perjuriously writes in her "civil complaint" February 5, 2019 in referring to the time period of October 2016 to April 2017 for Counts 4 to Count 12. It is of note that Defendant(s) did not have a physical office by False Accuser Bissell own account (See PACS, pg 199 – and again this list was prepared before the receipt of the police report but here goes:

a.  "Despite Plaintiff's qualifications, she was rejected for the position of marketing director for Saga Global Capital (para 89).

b.  Upon information and belief, after Plaintiff was rejected, the position of marketing director for Saga Global Capital remained open and the company continued to look for others to fill that position (para 90).

c.  Defendants rejected Plaintiff for the position of marketing director based on her protected status as a woman (para 91).

d.  Specifically, defendant Dean decided not to offer Plaintiff the position after she refused to comply with his sexual harassment and threats based on her gender (para 92).

e.  Plaintiff has been subjected to gender discrimination by her superiors, namely defendants Dean and Klassen, and has suffered adverse employment consequences on the basis of her gender and in retaliation for complaining about the discriminatory conduct (para 95).

f.  "During that time, Plaintiff was continuously harassed by defendant Dean, who made harassing and threatening sexual remarks and unwanted physical contact a condition of her job (para 100).

g.  Neither defendant Dean nor his partner, defendant Klassen did anything to address Plaintiff's complaints, and the defendants enabled Dean to intimidate and threaten Plaintiff (101).

h.  Because defendant Dean was Plaintiff's direct supervisor and defendant Saga Global Capital had no sexual harassment policies, Plaintiff had nowhere to turn to for assistance while working under the employment of defendants (para 102).

i.  By subjecting Plaintiff to the adverse treatment as described above, Defendants created and perpetuated a hostile work environment (para 105).

j.  Defendants' actions were motivated by Plaintiff's gender, and were taken intentionally and with knowledge that they would create a hostile work environment (para 106).

k.  Plaintiff has been subjected to gender discrimination by her fellow coworkers and suffered adverse employment consequences on the basis of her gender and in retaliation for complaining about the discriminatory conduct of her co-workers (para 109).

l.  Plaintiff has suffered adverse employment consequences as retaliation for her complaining about the harassing and threatening conduct of defendant Dean (para 112).

m.  Plaintiff has engaged in a protected activity by making such complaints of unlawful behavior of gender discrimination to her supervisors (para 113).

n.  Defendants Klassen and Saga Global Capital, based upon the allegations set forth above, have aided, abetted, incited, compelled, and/or coerced the doing of acts, against Plaintiff, that are forbidden under the Law Against Discrimination, in violation of, among other things N.J.S.A. 10-5-12(e) (para 119).

o.  Defendants failed and refused to offer Plaintiff the position as marketing director of Saga Global Capital (para 123).

1595.    Counts 1 – 2 related to the (false) "sexual and physical assault" (para 69) already decided that it did not happen by Judge Murray 2017 Court. With all of False Accuser Bissell's provable perjury there is no doubt that she is one of the nation's worst false rape accusers - ever.

1596.    Count 3 says: "Defendants Dean and Klassen acted intentionally in fabricating false allegations against Plaintiff and disseminating those allegations to at least one individual in the jewelry industry" (para 77).  Here False Accuser Bissell and Shivas attempt to deny Dean his litigation privilege - and his lawyer's right to conduct due diligence on his client's defense against Plaintiff's false allegations - because this was the central topic for the whole day 09/26/17 in the Judge Murray Court. Klassen was not mentioned and here Shivas and False Accuser Bissell do not mention this either.  It was also meant that Dean would be attacked for merely putting up a defense.

1597.    One of the key items driving all of this is that the final phone call that False Accuser Bissell claims happened where she said, among other things, that she would no longer communicate with Dean is relevant because during this phone call Dean, according to False Accuser Bissell would have also had to refuse her the "job" in the same phone call.  Of course, the text messages show that False Accuser Bissell is happily helping Dean with his CBC interview.  See police report.

1598.    There were 2 face-to-face meetings and only 2 short phone calls between Dean and False Accuser Bissell over the applicable eleven-week time period (as above).  Again, Dean and Klassen were in Asia/Canada for a 6-week+ black out period and not speaking with False Accuser Bissell at all. There were two phone calls and two in person meetings (Peretz meeting and hedge fund conference) after February 7, 2017 and March 11, 2017 and then the Asia/Canada black out period started. Then there was the CBC interview phone calls and no face to face meetings. See FACE TO FACE MEETINGS AND "PHONE CALLS" and "PACS, pg 161-163, pg 168 – 173," "PACS, pg 178-183," "PACS, Dean Verizon phone records, Exhibit 14," for full details.

1599.    There is no "finalizing an agreement" in the text messages either between False Accuser Bissell and Dean. Fraud.

1600.    In Judge Murray's Court, False Accuser Bissell had yet another story/version of how things transpired, and it was definitely not Dean and Klassen rejecting her for the position of marketing director.  Instead, this False Accuser Bissell story stated that she was scared and could not go on any further because of the repeated threats in between (See PACS, 218).  See police report.

1601.    False Accuser Bissell in Judge Murray's Court had also stated that her husband was coming home around May 1, 2017.  Again, the timeline shows that between February 8, 2017 and March 11, 2017 was 31 days when Dean was in NYC, and a few days in late April 2017, and the only opportunity for Dean to threaten False Accuser

Bissell was during this time period and was not "months" (See PACS, pg 221). 2 phone calls and 2 face to face meetings from February 8, 2017 to April 25, 2017 is not an environment where constant threats can exist. See police report; threats did not happen.

1602.    Of course, there was no opportunity for False Accuser Bissell to say this below as per the CBC interview where she is encouraging Dean in texts after the interview and there were no phone calls.

1603.    False Accuser Bissell falsely further states that:

"Plaintiff performed services and tasks for and on behalf of Saga Global Capital during a period of October 2016 through April 2017….During that time, Plaintiff was continuously harassed by defendant Dean, who made harassing and threatening sexual remarks and unwanted physical contact a condition of her job. Neither defendant Dean nor his partner, defendant Klassen did anything to address Plaintiff's complaints, and the defendants enabled Dean to intimidate and threaten Plaintiff (Civil Summons, 98-101).

1604.    Yet again, aside from the Peretz matter that False Accuser Bissell was pushing along herself for her own agenda she cannot show any other "services and tasks" that she performed for the Saga.  What's more, the notion that Plaintiff was "continuously harassed by defendant Dean" is pure fiction and perjury.  In the text message of January 14, 2017 at 7:20 PM False Accuser Bissell is whining about not getting "attention." So, from October 2016 to January 2017 this shows that False Accuser Bissell is flat out lying.

## FALSE ACCUSER BISSELL DID NOT GET ANY MEDICAL TREATMENT FROM FEBRUARY 7, 2017

1605.    False Accuser Bissell states that:

"As a direct and proximate result of the physical assault by defendant Dean, Plaintiff suffered serious permanent injury to her body and mind" (Civil Summons 70 and PACS, pg 124).

1606.    Here False Accuser Bissell et al spins the false sexual assault that did not happen – and she certainly could not prove, as evidenced by Judge Murray's dismissal of domestic violence - and used the same incident and simply re-labeling it a "sexual and physical assault" (Civil Complaint, February 5, 2019, para 69).  At the onset of these matters (or shortly thereafter), False Accuser Bissell was supposed to submit a medical certificate and/or a councilor certificate as requisite ground to this "sexual and physical assault," but she did not. False Accuser Bissell should produce these medical documents, and also produce her payments to the councilor, that she states that she was seeing for this this entire episode, and the dates and times and name and address, of the councilor and/or doctor.  Since the recent receipt of the police report this is going to complicate this ever so more for the False Accusers and Imm defendants.

1607.    Again, to the police it was the notion that Dean is not a credible businessman that was causing all of the supposed depression.  Whatever Bissell has done to her own mind is her problem as she reads the lies that she is caught in and that that she and her co-conspirators are responsible for.

## THE TEXT MESSAGE STATISTICS

1608.    As noted above, the text message statistics can be found in this link:

https://www.dropbox.com/s/13jnllxfh1hrxt3/Text%20Message%20Statistics%2C%20Texts%20in%20Word%2C%20and%20Airline%20Ticket.pdf?dl=0

1609.    The Chart entitled "False Accuser Bissell v Dean Text By Week" shows that the trend line is tending down as well as the "black out" period of six plus weeks greatly contributes to this downward trend.

1610.    The Chart entitled "Total Texts between False Accuser Bissell and Dean" shows that the most texts were at the beginning of the relationship and then dropped off significantly between weeks 5 and 10.  Then the texts spike back up when the Peretz matter emerges – which also includes the "false rape date." Then the texts drop off around the Hedge Fund Conference and then go to zero while Dean is in Asia/Canada.  Then the texts pop up again in for the CBC interview. Dean is hardly pursuing Ms. Bissell, certainly in no nefarious way, as the text message math shows.

1611.    The Chart "All Texts Compared to Main Events: Mr. Peretz Institutional Meeting, Hedge Fund Conference, and CBC Interview" breaks down the statistics further.

1612.    The Chart "CUMULATIVE TEXTS INITIATED BY MS. FALSE ACCUSER BISSELL V MR. DEAN OVER TIME" shows that before and after February 7, 2017 there is no discernable or obvious change in False Accuser Bissell's text message behavior towards Dean or vice versa.

1613.    There is raw data that shows the early morning and "after hours" texts initiated by Ms. Bissell and Mr. Dean.  After February 7, 2017, Ms. False Accuser Bissell keeps on texting Dean in "after hours," just as she had done before.

1614.    The Chart "Cumulative Early Morning Or After Hours Texts False Accuser Bissell v Dean" shows that False Accuser Bissell is way ahead of Dean in texting at all after hours occasions.  Nearly triple the rate of Dean.

1615.    The Chart "From Oct 2016 – May 2017 Total Text Messages Initiated by False Accuser Bissell and Dean respectively and the Number of Text Differential." This chart shows that False Accuser Bissell's communication with Dean is linear and that False Accuser Bissell's behavior with Dean does not change materially.

1616.    Finally, there is raw data that shows the "number of days that there was no text messages between Ms. False Accuser Bissell and Mr. Dean." False Accuser Bissell is representing to various Courts that Dean was her "boyfriend" from October 2016 until February 7, 2017 (and potentially longer) but Dean does not communicate with False Accuser Bissell at all for days at a time in the texts frequently. Especially so for 42 days while Dean is in Asia/Canada.

1617.    With respect between the time of February 8, 2017 and March 11, 2017, the day Dean went to Asia there are 1, 3, 9, 1, and 1 days between text messages.  That math shows that for the total time of February 8, 2017 to March 11, 2017 there are 31 days.  Eliminating the addition of (1 + 3 + 9 + 1 + 1) 15 leaves just 16 days as the "window" for Dean to be constantly and continually threatening False Accuser Bissell. Of course, with 2 face to face meetings and 2 phone calls it drops to 4 days total as False Accuser Bissell herself said that all the threats were done in persona and on the phone.  Add in when Dean returns from Canada in late April 2017 and does not

328

physically see False Accuser Bissell and this number increases a bit for phone calls between April 26, 2017 and April 28, 2017. But of course, per the CBC interview discussion above there is no phone call for False Accuser Bissell to call it all off forever.

1618.    Also, after False Accusers Bissell and Shivas were in receipt of the Redacted PACS, in June 2020 in USDC NJ 2:20, they invented a 4th story (maybe 5th or 6th story – who knows, it is tough to keep track of them and classify it all) using "absolute adjectives" in the Appellate Court for Dean v Bissell (TRO) and will likely try to use it in Law Division or invent another story. Here are the absolute adjectives in the face of the Truth above:

**Another Story Using "Absolute Adjectives: The Lawyer Confederacy With Client's Spin Dr. Mentality Revenge Plot Outline Using 'Absolute Adjectives' to Project Onto and Minimize Victim.**

- "A blatant attempt to erase what has happened to date in the case and essentially start over again free of the rulings of Superior Court."
- "baseless motion"
- "little more than another manifestation of **bullying and intimidation** distracting from the true issues raised in Plaintiff's complaint"
- "fantasy allegations"
- "thinly veiled effort"
- "blatantly bad faith tactics"
- "tried and true tactics of distraction and diversion to paint himself as the victim…"
- "His outrageous conduct…"
- "desperate attempt…."
- "baseless removal notice…."
- "outrageous and reckless…"
- "untethered by any restraint"
- "frivolous nature."
- "Defendants fail"
- "improper and wholly meritless"
- "Irrational and pointless arguments"
- "Of course, this is absurd…"
- "desperate attempt…"
- "Certainly, no showing has been made…"
- "This motion is complete fiction."
- "….void and completely misguided…"
- "rant of a litigant…"
- "not even a conceivable basis…"
- "**an attempt to muddy the waters and create and illusion of several matters intertwined where no such interaction exists.**"
- "…nothing more than a tactic at intimidating Plaintiff."
- "unintelligible."
- "fundamental misunderstanding of the law."
- "Defendant Dean's diatribe."
- "…among the most egregious aspects…."
- "Obviously, the request is absurd and would fly in the face…"
- "…unfounded and misguided allegations."
- "dangerous irresponsibility."
- "frivolous and unfounded…."

- "crosses the line of the law and decency."
- "....demonstrates the desperate place...."
- "stifle attempts...."
- "wild allegations...."
- "creating this fantasy..."
- "must be admonished...."
- "Without any merit, his request is egregious and undisputedly unethical."
- "adopt their rendition....without regard..."
- "Ironically, Defendants have strenuously opposed..."
- "entirely inconsistent...."
- "intent to push the limits"
- "straight forward application..."
- "undisputed that the Order dated April 9, 2020...."
- "Also undisputed that Defendants were properly served with the Order...."
- "By virtue of their conduct..."
- "...true motive.."

**MEET DAVE SHIVAS: REPROBATE WITH NJ/NY LAW LICENSE**

1619.     In this case reasonable "attorney fees" is not going to cut it.  This case is not about a "fender bender," it is about Ms. Lisa "Happy Valentines' Day False Rape Accuser" Bissell – former CEO of Pure Grown Diamonds – falsely accusing Mr. Ryan Dean of forcible sodomy to the point of making her bleed as well as constant threats of mass murder while Dean is hardly paying attention to her while in the United States and not at all when he is in Asia/Canada. Just so it was said, Dean was trading at a blistering track record similar to the returns George Soros had in the Quantum at its beginning. The ONLY REASON that Dean has been able to prove that False Accuser Bissell is a criminal habitual perjurious liar is because she has gone on the Record in so many Courts telling different stories and of course because of the police report. These New Jersey Attorneys knowingly and willfully and purposefully could recognize that False Accuser Bissell was a liar from the onset after she was missing her own text messages for instance in August 2017 and certainly when the text messages were produced by Dean, False Accuser Shivas, of course, simply started extorted from the onset with a different story.

1620.     Defendant(s) submitted significant interrogatories to Shivas on July 13, 2020.  The 2017 Transcripts were readily available at the end of 2017 – Shivas simply choose not to conduct any basic and expected due diligence and made a choice to being to suborn perjury and fraud, extort and then commit fraud on the Court and other criminality.

1621.     See the Link for Doc 9 that Shivas submitted into 2:20 USDC NJ and see how he will not answer any of the "Fraud on the Court." Note how Shivas will not answer any of the issues in the Fraud on the Court and accused Dean of not answering any of the issues in the USDC NJ as well.  Clearly, in the Motion to Reinstate as well as this Rule 4:50 Motion Dean has dealt with each and every one of False Accuser Bissell's "complaint" counts and showed that they are all perjury and fraud.  Now it is this slithering lawyer's turn to debunk all of the Fraud, Misrepresentation, and Misconduct that he and False Accuser Bissell et al have perpetrated going into 4 years.

https://www.dropbox.com/s/d91b6qlz4zp24yt/Opposition%20For%20Fraud%20on%20The%20Court.pdf?dl=0

1622.    In the wake of what has been submitted herein by "Defendants," here is a sampling of some of the pure trash that Shivas is going to attempt to deceive the Court(s) with and on Page 4, Shivas writes to Federal Judge Arleo in the United States District Court New Jersey (Bold added by Plaintiff(s)):

"This is little more than another manifestation of **bullying and intimidation attempts** aimed at delaying the case and **distracting from the true issues raised in Plaintiff's complaint**.  Defendant Dean's **fantasy allegations** against Plaintiff and her counsel are brought only to attempt to disrupt the prosecution of her claims in a thinly-veiled effort to create a conflict so as to disadvantage Plaintiff in the case. **These blatantly bad faith tactics** should not be countenanced by the Court. **Defendant Dean seeks to make this case about everything except for the allegations of Plaintiff's complaint.** This is a case about a violent assault and the **related illegal employment actions taken by Defendants against Plaintiff.**  Defendant Dena used the tired and **true tactics of distraction and diversion to paint himself as the victim of a concerted conspiracy of some sort**.  His outrageous conduct and disregard for the rulings of the New Jersey Superior Court to date are simply part of a desperate attempt to put off forever (or as long as possible) this having to answer for the allegations.

1623.    "Bullying and intimidation" a phrase that Imm defendants used and quoted by Mr. Chris Daw in blasting out the email of Dean's removal to the board on April 21, 2017 – as noted above.

1624.    On page 9 of his July 6, 2020 Brief that:

"Defendant Dean's constant refrain of "fraud on the Court" is an **unproven rant** of a litigant who has been unable to convince any Court to date that he is a victim."

1625.    Shivas states on page 9 of his Brief of July 6, 2020 that:

"Defendant Dean's contemplated amended answer and counterclaims was expressly rejected by the Court."

1626.    Shivas then states this on page 10 as well:

"The entirety of Dean's allegations can be stated as follows: "**Plaintiff has committed fraud on the Court by making allegations that I dispute. That is the argument. If this was actionable, then every defendant would merely allege fraud on the Court when presented with allegations he/she disputed. It would undermine the legal system as we know it.**"

1627.    Here Plaintiff(s) have to stop and have the Court pause at this statement above.

1628.    And perhaps pause again for an instant….

1629.    Mr. Shivas then goes on to say on the top of page 12 his Brief:

"If ever the litigation privilege were to apply, these facts present such a case. Furthermore, **the litigation privilege applies as a function of law. Courts do not have the discretion to determine that the litigation privilege does not apply.**"

1630.    See how smart Shivas is? Again – he uses another absolute – "if ever," and he says that the Courts "do not have discretion" and he is correct, except when he is not correct, which is the case here.  The Courts are not removing the litigation privilege as provided by the US Supreme Court and the NJ Supreme Court – the Courts are removing the litigation privilege *after* considering the facts made that there is Fraud on the Court and/or Furtherance of a Crime – which is supported by the unredacted PACS and the transcripts that Mr. Shivas does not want the Court(s) to consider as well as the "fact" that Shivas has no "facts."  The Court(s) has ample, proven grounds to remove the litigation privilege and then make the attorney "tell the truth" by doing whatever the Court thinks it needs to do to get that truth and set justice straight.

1631.    Mr. Shivas then falsely states this notion on page 12:

> "As true of other aspects of his motion, Defendant Dean cities no law in support of the request to "remove" the litigation privilege. This is simply an unfounded and unsupported statement and request."

1632.    Mr. Shivas then inserts this rich statement in his (Brief) pleading on page 13 with respect to "risk[iug] exposing the truth:

> "Defendants have ignored this requirement in the Superior Court (where they would have to produce discovery responses and **risk exposing the truth**) and now ignore it again in this case."

1633.    Risk exposing the truth?  This is the ultimate Spin Doctor Evil right there.  They do onto Plaintiff(s) all of these things and then turn around and blame us for it.  That is the Truth and they are exposed.

1634.    Here Shivas says this on page 14 the following:

> "Defendant Dean demonstrates his dangerous irresponsibility in making a motion to refer the Plaintiff's attorneys to the prosecutor for investigation of criminal charges.  This is a clear violation of the prohibition against the use of the prospect of criminal charges to gain advantage in a civil case."

1635.    At this point with all of the documented Perjury, Subornation of Perjury, Fraud, Misrepresentation, and Misconduct, Shivas' best course of action is try to figure out how to get Defendant(s)' Answers, Defenses, and Counterclaims struck with Prejudice – but he must answer this Fraud on the Court finally as to date all he has done is suborn around the issue.

1636.    False Accuser Bissell has so perverted the Justice System using false and malicious prosecution that she stopped an international hedge fund dead its tracks stopping all momentum and "locomotion" and have held "legal hostage" of two men while their lives crumble so she can Extort and Criminally Coerce et al based a wholly false TRO/FRO process and then radically and materially changing her story in a perjury and fraud-ridden 2019 Civil Complaint…and the Imm defendants paid for it all.

1637.    If this is allowed to stand in New Jersey and Dean, Klassen, and the Saga Enterprise are not made whole then it is the most unjust result. The case law below is from the Supreme Court of North Carolina and it echoes nearly everything that Plaintiff(s) have been saying with respect to criminal coercion, economic coercion, third party coercion, extortion et al (See PACS, ENTIRE DOCUMENT).  Because of what False Accuser Bissell has done "Plaintiff(s) cannot be hedge fund managers and instead are unjustly taken 'legal hostage' so False Accuser Bissell can "prosecute" her false claims and in Dean's case so Imm defendant(s) can "prosecute" their falsities while running a RICO Enterprise and reaching into the United States to do criminality. They all must be made to pay.

1638.    Now that the Court has this document in its hands - it ought to strike all of these lawyers' law licenses and take away all they have and all they are going to have.  These 'lawyers' are a menace to society that belongs in prison for a real long to think about what they has done.

1639.    These "absolute adjectives" above are the product of corrupt lawyers at BS and False Accuser Bissell, the Self-Professed Professional Spin Doctor, breaking out the dictionary and the thesaurus as a last resort trying to

distract, and cover matters up.  Moreover, what they are trying to do with these colorful adjectives is quite literally project onto Plaintiff(s) their shortcomings and to try to divert the Court's attention away from the evidence and the proof in the unredacted PACS and transcripts (and the heretofore hidden police report), while they "sprinkle," or more accurately "pour," "Spin Dr. Mentality" and "Revenge Plot" into the mix.  Lisa Bissell is a self-professed expert at these things as she once bragged to Dean in text messages:

> "Thinking about a short term media fix, there is another team of PR guys I worked with briefly, who **we could "short term" hire to help the revenge plot.** They are primarily radio guys, not TV, but hopefully are signed up for the media services in order to push a press release, etc"
> > Lisa False Accuser Bissell, False Accuser Bissell Dean Texts, 11/1/16 3:38 AM

> "Have a good one. Remember, **PR is not the initial strategy, it is just an example of the spin Dr mentality for building your brand**. Night"
> > Lisa False Accuser Bissell, False Accuser Bissell Dean Texts, 11/13/16 9:54 PM

1640.    In False Accuser Bissell's CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, there is a whole trite one-page section that False Accuser Bissell submits entitled: Defendants' Misrepresentations. What a joke.  Is it not ironic that during this whole process that False Accuser Bissell has falsely accused Dean that she writes Defendants' Misrepresentations,' at nearly the beginning of the 2019 Law Division fiasco  it is clear there is "fraud, "misrepresentation" and "misconduct" by the opposing party. False Accuser Bissell writes:

> "Many of the statements made by Defendants in their motion are inaccurate and misleading."
> CERTIFICATION OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT, para 57

1641.    False Accuser Bissell is without question the most depraved 'person' Dean has ever met - man or woman.  Look at the misery she has inflicted on Dean et al.  Dean often shakes his head when he reads this text from False Accuser Bissell of 10/30/16 in referring to herself (see below 'maintenance' and compare it to her revenge plot text (See, text November 1, 2016, at **3:38 AM and** PACS, pg 69) and the revenge plot False Accuser Bissell constructed against Dean et al (See PACS, pgs 72-77).  The Court needs to stop this criminal, and her corrupt attorneys, the Imm defendants and end this nightmare for Dean et al.  This has been anything but "low maintenance."

> "Sooooo low maintenance…."  (10/30/16 text, 9:23 PM)

1642.    Dean often think about the February 7, 2017 visit to False Accuser Bissell's home where she told Dean in Public Relations ("PR"), these people would "stab you in the back, twist the knife, and then fuck you in the ass." Dean dismissed it then as just "kitchen chat," and False Accuser Bissell trying to puff up her PR skills to let Dean know how important she thought she was.  But now Dean know it was a grievous veiled threat that was and is still being acted upon. Dean believes that she has accomplished her threat in the most extreme way imaginable. That was the first day that Dean was being Criminal Coerced and Extorted and Dean did not even know it. Dean thinks she told him this veiled threat a few minutes later after the kitchen video. Dean was lured into the sexual

relationship and targeted because he was a man and was about to launch an exciting international hedge fund and that is what forced labor is all about (see above).

**Constitutional Violations**

1643.    The constitutional violations have all been astounding as well flowing from the Cedar Grove Police's behavior in these matters. Note: The Cedar Grove Police Department, any Officers and/or employees associated with the Cedar Grove Police Department, and the Township of Cedar Grove (and any officers and/or employees) are not defendants at this time in any of the RICO matters, pending further discovery.

1644.    For Color of State Law issues the "Cedar Grove Defendants" are: Detective Tower, Detective Carolyn Lynch (Zajack),  Det. Sgt. Robert McDermott, Lt. Francis Pumphrey, Thomas Tucci  (the Township manager), the Cedar Grove Police Department, and the Township of Cedar Grove, at this time.

1645.    To the Cedar Grove Police/Township of Cedar Grove's credit, here are the things they did right.

  i.   They investigated the complaint of a woman who said she had been brutally raped by a man; every woman should be believed when *any* female reports *any* rape.
  ii.  The Cedar Grove Police, when Dean met them at the Police Station to get served the TRO, did *not* give Dean the 'beat down.' The police did not lay one finger on Dean in anger or otherwise. It is important to say that because it seems every time we turn on the TV there are reports of police brutality – this not the case here. The Police are good and necessary thing. The Cedar Grove Police acted professionally from a physical perspective.
  iii. When Dean invoked his right to speak to his attorney, quite early in the process, it was respected, and all questions stopped.

1646.    The Plaintiff(s) view is that the police have an exceedingly difficult job to do in general and by them having to deal with 'hedge fund managers turned wanna-be lawyers-with-a-serious-ax-to-grind,' that too has knock on effects that stops the Police from doing their job to protect other needy victims in other unrelated matters to this instant case.

1647.    As Plaintiff(s) said above, Dean was on the receiving end of Judge [Carolyn] Murray's frightful glare 08/17/17- as she read accusations that appeared to even take her breath away.  Likewise, Dean was on the receiving end of Det. Lynch's "cold and piercing blue eyes" as she calculated - whether or not - she was going to waive her finger and 'order' the-all-too-eager-other-officers-gathering-about to arrest Dean right there and then.  Det. Lynch did not have Dean arrested – but It was one of the most fearful moments in this Plaintiff's life. Side note: Detective Lynch is now Detective Zajack of if Dean has that backwards apologies to the Detective.

1648.    To this day the mere mention of the name "Carolyn" invokes a pavlovian response of fear in Dean. "Judge Carolyn" and "Detective Carolyn" – it is just a bit too much. Just sayin'

1649.    So, what *is* the problem with the Cedar Grove Defendants?

1650.    First off, they would not release the Police Report in 2017. It is the policy of the Cedar Grove police via the Township of Cedar Grove not to release any of these materials (especially when in 2017 they told Dean that there were "no criminal charges at this time" – when clearly there were -as Dean found out well after the fact.

Had they told the truth Dean's lawyer would have had a much better chance at getting the Police Report in the first place and stopping this matter early. When Dean again asked for these materials in 2019, he went to the Cedar Grove Police department on or around April 19, 2019, in response to the Essex County 'Civil' Law Suit filed by the False Accusers erupting and Dean was denied this request to get the police report (they had lied to Dean in 2017 and Dean just assumed that there was a report) and related materials and instead Dean was told to have his attorney write a letter. When Dean's then attorney did write a letter to the Cedar Grove Police, this was the Cedar Grove Defendants' written reply (see link below).

https://www.dropbox.com/s/scitzjrk5yuewb0/15%20-%20Cedar%20Grove%20Police%20Letter.pdf?dl=0

1651.    Note that in the letter it states NJSA 2C:25-33. But there is an exception to this rule which False Accusers own lawyers Flanagan, Barreiro, Adams, and Vaccaro at GG stated themselves on page 7 with respect to the NJ Ct R 1:38-3(d)(9) to NJSA 2C:25-33. See link below.

https://www.dropbox.com/s/7ts038v0rtasmdt/FOC%20Transcripts%20Response%20Flanagan%20Nov%2023%202020.pdf?dl=0

1652.    That being said, the Supremacy Clause overrides all of this and when these officials saw the phrase "Hedge Fund" they *knew* or *should have known* that was a Federal Commerce Clause matter, and in turn a Supremacy Clause matter, and a Federal matter especially since Dean was pulled into this matter from out-of-state. When New Jersey signed up to the Union, they also signed up to the Constitution of the United States. The United States Congress in enacting any of its laws and in particular the Hobbs Act and RICO statues did not make any carve outs for the concealment of false police reports in the furtherance of crime – and that is precisely what has happened in this case and the Cedar Grove Police, its officers, and the township of Cedar Grove – with its policies in place – are proximate cause the violations of nearly all of Dean's Federally constituted rights. It is their stated municipal policy.

1653.    None of this scheme to defraud would have taken root had Dean been provided the exculpatory police report early on in 2017; there could have been a quick plenary hearing and the text messages stopped the entire process and in turn would have prevented the Amended TRO, the full FRO hearing, the filing of the Civil Case on 02-05-19, and in turn the Imm defendants would have been standing tall in Federal Court and Dean would have filed his Canadian Judicial Review (and in so doing Dean's Canadian Federal Constitutional Rights have also been violated and that is another matter).

1654.    Now at this point the take-away for all stakeholders in Plaintiff(s)' opinion remains that each and every female should be believed when she claims she was raped – but in each and every report of rape the possibility must be considered that it is a false report. A prominent lawyer like Alan Dershowitz (as quoted at the beginning of Act II) has said that false reports are likely to fast become a racket.

1655.     What's more, Plaintiff Dean has not been able to get a copy of the TRO transcript in front of Judge Brindisi (08/09/17).

1656.     Dean was on the phone in 2019 with the Essex County Court and the Township of Cedar Grove conference call and Cedar Grove could not locate the recording; Essex County did not have the recording either but had already successfully processed all of Dean's request to obtain the various court recordings and order transcripts.

1657.     Ms. Sasha Perez at the Cedar Grove Police Department and Township of Cedar Grove in April 2021 emphatically has stated that they never release the TRO recording to anyone and that means that is a policy of the township and in turn that is a major color of state law issue; she also mentioned that *ex parte* hearings recordings were never given out nor released.

1658.     That certainly begs the question how it is that Dean merely needed to fill out a form to get the recording for the Amended TRO hearing from Essex County by completing transcript request form and sending in $10 – and presto the recording and the transcript (after paying additionally for that through a licensed third party) in his possession. The Cedar Grove Police Department and the Township of Cedar Grove by their collective 'policy' to purposefully withhold this material (which is highly exculpatory) has resulted in the Federal unequal protection of the law, due process violations,  and the violation of Dean's entire Bill of Rights, as well as it has transformed all defendants into *deemed state actors.* That defendants' conspired to violate Dean's Federal Civil Rights does not need the help of the police and therefore Dean elects not to include the Cedar Grove defendants in any claim with respect to conspiring to deprive Dean of his Federal constitutional rights.

1659.     The question with respect to the how did Plaintiff Dean finally come by the police report, and the answer is it was sent to Dean by the Cedar Grove Police department on March 18 2021 in response to a "notice in lieu of subpoena" that quoted NJ Ct R 1:38-3(d)(9) for a request for the TRO recording.  Dean did not request on this occasion the police report but nevertheless it was sent and there no restrictions on that.

1660.     The Sixth Amendment provides that a person accused of a crime has the right to confront a witness against him or her in a criminal action (the TRO/FRO process in New Jersey is considered "Quasi Criminal") and police reports sent to the state prosecutors *are* criminal.  This  includes the right to be present at the trial (which is guaranteed by the Federal Rules of Criminal Procedure Rule 43). As well as the right to cross-examine the prosecution's witnesses. The Clause was intended to prevent the conviction of a defendant upon written evidence (**such as depositions or *ex parte* affidavits**) without that defendant having an opportunity to face his or her accusers and to put their honesty and truthfulness to test before the jury. In Mattox v. United States, 156 U.S. 237 (1895), the Supreme Court enunciated the three fundamental purposes that the Confrontation Clause was meant to serve:

      i.     To ensure that witnesses would testify under oath and understand the serious nature of the trial process;

      ii.    To allow the accused to cross-examine witnesses who testify against him; and

     iii.   To allow jurors to assess the credibility of a witness by observing that witness's behavior.

1661.     Can anyone say that the Framers of the Constitution would prohibited exculpatory written material for the defendant to be excluded that was created by the one filing the complaint? – because that is precisely what we have here with the band of False Accusers Association-In-Fact members – and at the same time violated the Commerce Clause, for instance. In Coy v. Iowa, 487 U.S. 1012 (1988), the Supreme Court held that that taking other interests into account should not be interpreted as creating exceptions to "the irreducible literal meaning of the clause," reaffirming that a defendant has the right to confront his alleged victim "face-to-face."

1662.     In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court held that in order to fulfill the procedural due process inherent in the Confrontation Clause, **a criminal defendant must have the opportunity to cross-examine testimony that has been made against him.** In an analogy the Melendez-Diaz Court made, "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

1663.     When Plaintiff Dean went to the Cedar Grove Police Department on or about April 19, 2019 he first encountered Lt. Eileen O'Toole and told her who he was and why he was there – and that was to file a criminal complaint against Ms. Lisa Bissell. Lt. O'Toole curtly told Dean to go and file in "your own" jurisdiction which was not correct because the crime was set in motion in that very police station. The Constitution happens to provide for that precise point as well.

1664.     Since the Police Report was finally obtained on March 18, 2021, tolling and equitable estoppel apply.

1665.     Det. Sgt. Robert McDermott and Lt. Francis Pumphrey were up next to "greet" Dean in the lobby of the Township of Cedar Grove.

1666.     To Det. Sgt McDermott, Dean's guilty and innocence turned on the notion of his pronunciation of the False-Accuser-In-Chief as well as the location of "Cedar Grove." First off, it was true that Dean had been in the town of Cedar Grove but to Dean he knew it as the commuter train station named "Upper Montclair." Nowhere in the text messages between Bissell and Dean does it say "Cedar Grove." After nearly four years, clearly Dean knows that the False Accuser Bissell lived in "Cedar Grove, NJ," but he did not know that precise fact when Det. Sgt McDermott called.

1667.     Second, the way Det. Sgt McDermott pronounced the name of the False Accuser in Chief Bissell was not the way Dean had heard it. To Dean, the way the Det. Sgt McDermott pronounced it made it sound like an Arabic name or middle eastern. Hear the difference between AllizaBisel and Lisa Bissell:

     https://www.dropbox.com/s/g872kofrszi8ado/How%20to%20say%20False%20Accuser.mp4?dl=0

1668.          When the Detective first called, Plaintiff(s) Dean's mind was racing to figure out who it was this police officer was referring to as well as Dean was so shocked at the content of the call and Plaintiff Dean's utter incomprehension of being accused of anything requiring a TRO he thought that they had the wrong "Ryan Dean," and Plaintiff Dean did abruptly hang up the phone. In hind-site perhaps it would be better to spell the first and last names in situations such as these. Perhaps it was Dean's Canadian accent, or Det. Sgt. McDermott's New Jersey accent, or a combination of both.

1669.          Still, it all troubled Dean and he started going into high gear to figure out what was going on and was directed by his attorney to go and pick up the TRO. Lt. Francis Pumphrey served the TRO on August 11, 2017 at around noon and he pointed to the name "Lisa Bissell" and asked if Plaintiff Dean knew the name and Dean immediately said 'yes,' and then Dean scanned the TRO and saw the words "rape," and "anus" and Dean needed to sit down before he fell down. It was a devastating moment that False Accusers had arranged for Dean and the Saga Enterprise. Instead of launching the fund in a few weeks or months, Dean was now embroiled in this frame up job.

1670.          In Judge Murray's Court on 09/28/17, False Accuser Barreiro even admonished Dean that he was not pronouncing "Bissell" correctly – and Dean then referred to his Canadian Accent. To avoid any confusion going forward "*the Happy Valentines' Day False Accuser*" is something that everyone can get right the first time with no errors.

1671.          In returning to the Cedar Grove Police April 19, 2019, Dean had requested to see Det. Lynch but she would not give him the time of day indicating bias despite the fact that at that point Judge Murray had already ruled in Dean's favor after a full trial.   Dean by then had learnt a number of things from the police and that was that they also lied to Dean on August 9, 2017.  They expressly told Dean that Bissell was not going to show up to the TRO she just filed because they have already moved to Florida (which also defeated the whole process of the TRO as there needed to be "immediate danger"). They expressly also told Dean there were no criminal charges filed and that in part was so Dean would not ask for a police report in the first place. There are more reasons as well.  Nevertheless, False Accuser Bissell showed up to the TRO/FRO hearing in the Judge Murray Court 08/17/17 and so did Dean and his lawyer. False Accuser Flanagan wanted to have the hearing right there and then because False Accuser Bissell was "entitled" to a quick resolution of her "claims," and that would have resulted in a "life sentence" of a FRO against Dean for starters.

1672.          Lt Pumphrey was the one that spent most of the time with Dean and took the time to read the entire text messages from beginning to end and Dean answered each one of their (Sgt. Det McDermott was there as well for a good bit) questions as straightforwardly as he could and it covered good portions of what was discussed in the TRO/FRO. What Plaintiff did not know then was that the police report was exculpatory to Dean with respect to the "threats" and "like the last time" and "planning to move to Florida in 2016" and "private

investigator" and so on and so forth and that had Dean received a copy of the police report, instead of the police

saying that there were no criminal charges, that would have for certain short circuited the civil compliant of

02/05/17 and Dean would still be a hedge fund manager, and the Saga Enterprise would have been making

progress, and Dean would have had the time to defeat the Imm defendants on Canadian soil instead of wasting

all of his time dealing with the False Accusers in the United States.

1673.     Dean told Lt. Pumprhey to go ahead and copy the text messages between himself and Bissell and he said

that there was no need.  Twenty minutes later he returned and handed back the text messages to Dean (clearly

the Police took a copy of the text messages that day, discussed the contents of the text messages, and made the

decision to withhold the police report, TRO, ect that were all exculpatory to Dean), and now in 2021, Dean

confirms that this is the stated policy of the Cedar Grove Police Department and the Township of Cedar Grove

because he has it in writing, was told face to face, and was told on the telephone by Ms. Sasha Perez – despite

the fact that False Accuser's Attorneys stated that Dean is legally entitled to these materials (and then when this

attorney talked to Ms. Perez in April 2021, he recanted his own writing that he made to USDC NJ and this is

obstruction of justice by this attorney, Chris Adams).

1674.     At the end Lt. Pumphrey seemed actually sympathetic to the whole thing from Dean's perspective.  Lt

Pumphrey's 'advice' was to watch out with respect to the women that Dean dated, and that he was sorry that

Dean got mixed up with Bissell, but he nonetheless he fell into line, and listened to the policy of the

department/township and instead of doing what was right, and that was charging the False Accuser Bissell with

various criminality.

1675.     In leaving, Det. Sgt McDermott was laughing at Dean and stated "I bet that since all of this started your

life has been a whole bunch different ha ha ha." Dean had to bite his tongue, bide his time, and continue with

the quest for Justice to clear his name.

1676.     This is the training and the policy that has been provided and accepted by the Township of Cedar Grove

which is run by the township manager Mr. Thomas Tucci – who is ultimately responsible for all of these policies

training, and behavior issues.

1677.     The statute of limitations in New Jersey for civil rights violations are two years but here tolling,

equitable estoppel, via the "discovery rule" apply because these documents were at all times exculpatory to

Dean and in the case of the False Accusers it was fraudulent concealment as they changed their story after being

done with the Cedar Grove Police Officials:

> While the discovery rule postpones the accrual of a cause of action, equitable tolling acknowledges the
> accrual of the action but tolls the statute of limitations because the plaintiff lacked vital information that
> was withheld by a defendant. Id. at 45-46, 775 A.2d 700. Equitable tolling may be applied where "the
> complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to
> pass." Dunn , supra, 301 N.J. Super. at 280 (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct.
> 453, 458, 112 L.Ed. 2d 435, 444 (1990)). Freeman v. State, 347 N.J. Super. 11, 31 (N.J. Super. 2002).

1678.    Again, both are present here.  First, Dean was told by Det. Pumphrey that there was no police report in 2017 and then when they acknowledged in a letter in May 2019 that materials had been sent to the Prosecutor's office,  the Police Department would not release the Police report and related materials either.  It is of note that the other materials – that still have not been released – likely have more exculpatory information such as the Video of False Accusers Bissell and James Bissell and the Private Investigator that they hired.  Again, the TRO recording has been withheld for all of this time.

1679.    Because the state actor defendants (False Accusers and Imm defendants) are the ones that arranged for all of this and because the police were giving all kinds of help and cover to the False Accusers (because the police *believed* the story) it now involved everyone with color of state law issues and the violation of Dean's constitutionally secured Federal Civil Rights.

1680.    SCOTUS has ruled on despicable cases such as this and in the case of the *Kemp v. American Telephone & Telegraph Co* 393 F.3d 1354 (11th Cir. 2004) utilized the general Fourteenth Amendment Due Process analysis to punitive damage awards delineated by the Supreme Court in 2003 in *State Farm Mutual Automobile Insurance Co. v. Campbell* 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).  The original amount in question in the Kemp Court was $115.05 and it requires as a test to determine the degree of reprehensibility of the defendants' conduct; *second*, the disparity between the actual or potential harm suffered by the plaintiff, and the punitive damages award; and *third*, the difference between the punitive damages awarded by the jury in the at-issue case and those imposed in comparable cases.  The 11th circuit awarded $1,000,000 and SCOTUS reduced it to $250,000.

1681.    It is a good time to remind that Court that one of the Imm defendants is Immigration, Refugee, and Citizenship Canada ("IRCC") – an agency of the Federal Government of Canada who failed to protect Dean with respect to the testimony at the Parliament of Canada twice and his parliamentary privilege and then being part of the scheme to defraud Dean in Act I and Act III.  Had IRCC protected Dean instead of helping Chris Daw and his friends ignore Dean's parliamentary privilege, this would also likely have been short circuited and False accusers would not be getting any financing for their schemes in the first place because ICRR would have (and should have) put a stop to all of the nonsense long before it ever took real root.

1682.    Dean will be reminding the Jury that the Canadian Government actually paid a terrorist for killing a US Soldier in Afghanistan – just to help keep things in perspective and to highlight that the every-day-Joe Canadian is still outraged this payment happened at all (Canadians in general are sickened by it) – as this Canadian is sickened at the Imm defendants and their lawlessness.

https://www.dropbox.com/s/5an3gxbzs54lfdr/Canada%20pays%20terrorist.pdf?dl=0

1683.    The two Canadian Minister that are responsible for IRCC, and in turn the Imm defendants' actions, have enabled and conspired with the Imm defendants are Mr. Ahmed Hussein and Mr. Marco Mendicino.  Both Hussein and Mendicio are Canadian lawyers who think they can rip-off Ms. Nancy Salloum's Intellectual Property et al and then send the Imm defendants to get Dean in the United States for taking a job with Ms. Salloum's organization CICC. Additionally, the IRCC has enabled Imm defendants to arrogantly carry on their organization in violation of not only the CNCA – flouting Canadian law – but also from the American perspective to let such a corrupt organization under 18 USC § 1962 reach into the United States to create chaos for Dean and the Saga Enterprise.  See Act III for full details.

1684.    Further putting this into perspective and by way of jest and as a comparative example purpose - had Dean "only" been accused of being a "terrorist," he could have plied his "hedge fund trade" in any country that welcomes "terrorists" – and of course this is said in jest only but to make the point that even terrorists are welcome "somewhere" where "rapists" are widely condemned everywhere for the rest of their lives. Rapists and about-to-be-murders-of-*children* are not even 'welcome' in prison. That "bell" cannot be "un-rung" in our global internet connected world.

1685.    That is why Plaintiff Dean without question has Article III standing of the Constitution of the United States and jurisdiction: SECTION 2. Clause 1. The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party;—to Controversies between two or more States; between a State and Citizens of another State; between Citizens of different States,—between Citizens of the same State claiming Land under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

1686.    The constitutional Standards for Article III standing are that there is an: Injury in Fact, Causation, and Redressability.

        i.    Suffered some actual or threatened injury
        ii.   That injury can fairly be traced to the challenged action of the defendant
        iii.  That the injury is likely to be redressed by a favorable decision.

1687.    Although under Article III standing "a wrong which directly results in the violation of a legal right," is not requirement any longer this element is clearly present in the chaos caused by all defendants – including the Cedar Grove Defendants.

1688.    The Court announced that parties had standing when they suffered "injury in fact" to some interest, "economic or otherwise," that is arguably within the zone of interest to be protected or regulated by the statute or constitutional provision in question.  The injury required for standing need not be actualized. A party facing

341

prospective injury has standing to sue where the threatened injury is real, immediate, and direct (Davis v FEC, U.S. 724, 734 (2008).

1689.        Political, environmental, aesthetic, and social interests, when impaired, now afford a basis for making constitutional attacks upon governmental action and Plaintiff Dean clearly has satisfy the injury-in-fact requirement. Second, the Court has required plaintiffs seeking equitable relief to demonstrate that the risk of a future injury is of a sufficient likelihood; past injury is insufficient to create standing to seek prospective relief. Here Plaintiff Dean seeks complete relief from any actions of Imm Defendants or related parties in Canada while Dean is in the United States. The False Accusers as well have caused this injury-in-fact. The Cedar Grove defendants surely helped.

1690.        The media is packed full of men whose backgrounds from decades ago are catching up to them now; there is no way that what false accusers and imm defendants have arranged for Dean will not be with him for the rest of his natural life.  The whole world knows about this now and it does not forget about things like this. They have "O.J. Simpson-ed" Dean, and maybe worse.

1691.        The Court has articulated the threshold of likelihood of future injury necessary for standing in such cases in various ways generally refusing to find standing where the risk of future injury is speculative. More recently, in Clapper v. Amnesty International USA, the Court held that, in order to demonstrate Article III standing, a plaintiff seeking injunctive relief must prove that the future injury, which is the basis for the relief sought, must be "certainly impending"; a showing of a "reasonable likelihood" of future injury is insufficient.

1692.        Here when CICC announced Dean was the new CEO/Managing Director of CICC, the Imm defendants crafted an illegal 'urgent' motion to suspend Dean using the Immigration Enterprises' facilities.  When Dean resigned his position as member of ICCRC, the Imm defendants did not accept that still came after him while he was in the United States and blasted into the United States that Dean tried to 'appropriate' money from the ICCRC membership when they knew that it was a godaddy.com issue (see Act III) and that no letters were sent to any member ever with respect to CICC by Dean.  This non-sense is not going to stop.

1693.        The bigger future injury of course is that False Accusers and Imm defendants conspired and confederated together under terms of a scheme to defraud (invoking Fed. Rule Civ. Procedure 9(b)) to "brand Dean," give him a "legacy" at best as "that guy *who used to be accused* of anal rape and mass murder threats." Those "bells" can never be un-rung for a hedge fund manager whose background is vigorously screened before any major client invests in the Saga Enterprise. These are the injury-in-fact. This injury would not have been caused but for the fact that the Cedar Grove Defendants – helping and giving aid to the False Accusers – refused to release the exculpatory evidence to Dean where False Accuser Bissell admitted that there were no threats with respect to break and enter, re-rape, and that "no one will hear you scream" and "like the last time" and the

constant threats, by phone and in person (each and every time), of mass murder of Bissell, her family, and her *children*.

1694. By the Federal Court bringing down the gavel and giving Plaintiff Dean relief will help offset this greatly because it will then be: "that guy *who used to be accused* of anal rape and mass murder threats…but the Federal Court gave the defendants huge compensatory and punitive damages for violating all of that Dean's Federal civil rights and conspiring to do so." At that point, hedge fund investors might even find that an interesting point of topic to chat about – before they say "no" because in the back of their minds Dean was still once accused of these things.

1695. Here is the list of Federal Civil rights and/or causes of actions that as a direct proximate cause of the Cedar Grove Defendants' actions/non-actions that would not have happened if but for not handing over the Police Report and still not handing over the other exculpatory materials violated the following. Again and to be clear, the Cedar Grove Defendants did not act under terms of conspiracy with the False Accusers and Imm defendants (unless discovery proves otherwise) in violating this long list of Federal Rights violations – and instead the Cedar Grove Defendants acted under a Cedar Grove Police/Township of Cedar Grove policy that False Accusers took grievous advantage of that transformed the False Accusers and Imm defendants into deemed state actors.

1696. This will be Plaintiff(s)' position on this unless discovery reveals something else with respect to the Cedar Grove defendants. But…for the False Accusers and Imm defendants they did breach all of these Federal Guaranteed rights directly and under terms of conspiracy. Moreover, False Accusers and Imm defendants used RICO predicate acts to violate Dean's Federally guaranteed civil rights et al.

i. Conspiracy to Interfere with Civil Rights (42 U.S. Code § 1985, sub sections 2 & 3). Conspiracy to Interfere with Civil Rights (42 U.S. Code § 1985, sub sections 2 & 3). Here Ms. and Mr. False accusers Bissell(s) went on the highway and filed false police reports and then immediately fled the state of New Jersey and went on the highway (again) in disguise a real "rape victim." they have been obstructing justice since that time and have added numerous additional parties into their scheme.

ii. Intentional Infliction of Emotional Distress: intentional infliction of emotional distress (the defendants' acts and conduct is outrageous, the defendants acted for the purposes of causing the victim emotional distress that is so severe that it could be expected to adversely affect mental health, and the defendants' have caused such distress.)

iii. Fabricated and/or Destroyed Exculpatory Evidence (42 U.S.C. § 1983) Defendants have fabricated and/or destroyed, or concealed exculpatory evidence (42 USC § 1983 cause of action) (fabricated evidence is fictitious testimony or documents offered to a court or jury in order to mislead them. Fabricating evidence involves arranging or manufacturing circumstances or indica, after the act is committed with the intention to use them as evidence and may be wholly forged and artificial, or it may consist in so warping and distorting real facts to create an impression in the minds of those who observe them as true and genuine.). Here the threats of mass murder, re-rape, "like the last time" and "no one will hear you scream," and "break and enter" et al qualify for a cause of action under 42 USC § 1983.

iv.   Malicious Prosecution (Fourth Amendment Violation) (42 U.S.C § 1983) malicious prosecution (fourth amendment violation) (42 USC § 1983 cause of action) (the filing of a lawsuit for an improper purpose, and without grounds or probable cause. the lawsuit may either be civil or criminal or nature. to remedy an act of malicious prosecution, an alleged victim files a tort claim by the same name.). Here defendants tried to send Dean to prison for the rest of his natural life and have him murdered (as above) and indeed is forced labor under violation of 18 USC § 1589 et al.

v.    Abuse of Process  22 USC § 7102(1) (the term "abuse or threatened abuse of the legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. Clearly this has been covered in Act I and Act II in detail and nearly everything that has been done by the False Accusers and Imm defendants has been an abuse of process.

vi.   Criminal Coercion NJSA (Section 2C:13-5) (covered at length in the unredacted PACS unredacted Transcripts and applies to everything herein for all other predicate acts) and as above.

vii.  Numerous RICO violations (as above)

viii. First Amendment Violations: Defamation, Slander and Libel (28 U.S.C Code 4101). Furtherance of crime is not covered in litigation privilege and neither are False accusers false filings, perjury, subornation of perjury – public, private, or otherwise. Clearly all of the elements of these offenses have been described in detail throughout this document.

ix.   Second Amendment Violation, US Constitution Right to Bear Arms. Second amendment violation, US Constitutional right to bear arms. Although Dean never owned a weapon while in the state of New York when this all started on 08/09/17 this right was summarily taken from Dean.  A small violation indeed but nevertheless a violation.

x.    Fifth Amendment Violations, US Constitution. Here and most recently by False Accusers and Imm Defendants' actions trying to witness tamper, obstruct justice et al under terms of conspiracy with all defendants.

xi.   Sixth Amendment Violations, US Constitution. In this instance Dean's due process rights were violated in 2017 because he did not know all of the charges against him and because the exculpatory evidence was kept from him.  Additionally, there was a witness (the uber driver) who saw False accuser Bissell give Dean a goodbye kiss on the early morning of February 8, 2017 as well as identified her helping Dean with his luggage in front of the Bissell home – but Bissell waited too long to launch her second attack and now this driver cannot be located and apparently he is not even in the USA any longer according to the police.

xii.  Eighth Amendment Violations, US Constitution. This entire process has been cruel and unusual and because Dean is a male and he has been subjected to utter criminality where it is clear that False accuser Bissell has been lying and her co-conspirators have been helping it all along in subornation of perjury and financing the scheme to defraud. It is further cruel and unusual in the fact that because Dean is the victim he has to defend himself as if he is/was a perpetrator of brutal sexual assault/constant threats of mass murder but now that the police report is in hand False accuser Bissell can no longer keep changing her stories. Excessive fines imposed?  how about tens of millions and millions of dollars of lost business because False accuser Bissell made False accusations and then kept changing her story. Cruel and unusual?  To have to stand trial all over again after Judge Carolyn Murray (a professional lie detector) found False accuser Bissell's testimony to be not entirely credible and that the court had to go on what was inherently believable – and Bissell did not appeal Judge Murray's decision.

xiii. Ninth Amendment Violations, US Constitution. All of Dean's unenumerated rights have been trashed and shredded.  It cannot be calculated the amount of damage that False accuser Bissell et al have inflicted on

Dean with her ever-changing stories and the help of her various corrupt attorneys et al. This is why there is Article III standing.

xiv.    Thirteenth Amendment Violations, US Constitution.  Thirteenth amendment violations, US Constitution. Not only did False accuser Bissell et al 'obtain' the rights to Dean and Dean's hedge fund to run the Saga Enterprise she has attempted to profit from it. She lured Dean under terms of sex and was planning what she did for quite some time while Klassen was working with Peretz (and he was part of the scheme too) and well before. False accuser Bissell et al 'obtained' Dean's free labor so that he has had to do essentially nothing else day and night than to write out pleading after pleading to combat the criminal reprobate lawyers including False Accuser Dave Shivas, Flanagan, Barreiro  et al.

xv.    Fourteenth Amendment Violations (Violations of Equal Protection Under the Law), US Constitution. US constitution. In 2017 dean's due process rights were taken by the Cedar Grove Defendants and  False accusers Bissell et al (and given back by the court) and in 2019-2020 it was aggravated color of state law violations. Bissell could keep changing her story, yet the police withheld the exculpatory police report evidence.

xvi.    18 U.S. Code § 1962 (Prohibited Activities and Predicate Acts – state and Federal as described herein).

xvii.    18 U.S.C. § 1589 et al as described herein.  False accuser Bissell et al 'obtained' Dean's labor to work on dealing with her false accusations (forced labor) and state violations of forced labor. This also applies to the Imm defendants' for their separate actions in Act I and because they are connected to the False Accusers.

xviii.    Commerce Clause US Constitution, Art I, sections 2 & 3. Commerce clause US Constitution, Art I, sections 2 & 3. The Commerce Clause has traditionally been interpreted both as a grant of positive authority to Congress and an implied prohibition of state action that interfere or discriminate against interstate and foreign commerce.  By not giving the exculpatory evidence to Dean twice makes the Cedar Grove defendants culpable of aggravated Commerce Clause violations and makes all defendants state actions for RICO Purposes for Federal and State.

xix.    18 USC § 1621 (perjury).

xx.    18 USC § 1622 (subornation of perjury).

xxi.    18 USC § 241 (Conspiracy against rights, 2 & 3).

a.    If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.  Here this not only includes Federal Court but also includes State Court and all of them have been violated on an aggravated basis by False accuser and Imm defendants.

b.    If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal

protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In this case, the False Accusers Bissell and James Bissell did just that.  They went to the Cedar Grove department via the highway disguised as False Rape Victims and then fled using the highway and then the airport to go to Florida.

xxii.   18 USC § 242 (Deprivation of rights under color of law) and this is what makes all defendants 'state actors,' as will be much more full developed below.

xxiii.  42 USC § 1983 (Civil Action for deprivation of civil rights) – as described herein.

xxiv.   18 USC § 249 (The Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act). At the root of what False accuser Bissell et al have done to Dean because he is a male and targeted Dean because in this day and age it so easy just to say "rape" and the whole world falls in on the accused and they are "guilty by accusation."  Turn on the TV and it is replete with examples – plenty of men are guilty (or are they?) – but the media is quick to condemn. If the allegations are true that is one thing.  If the allegations turn out to be in a "grey area," then that is another matter.  But if the allegations are wholly false and there is exculpatory evidence that the allegations ARE wholly false and done and paid for by Dean's political enemies in Canada then that is a hate crime motivated by malice and revenge.

xxv.    18 USC § 245 (Federally Protected Activities)  - this has already been covered amply herein.

xxvi.   28 USC § 1746 (Unsworn declarations under penalty of perjury). This refers to all of the false documents that have been used against Dean by the defendants and these documents already exist or have been referred to by the defendants in 2:19 & 2:20.

xxvii.  28 § USC 1342. (Fictitious name or address).  Bissell used the fictious name and address by saying she lived in Florida to the police but to Judge Murray she was "really" living in New Jersey.  And of course, the Bissell's fake their own divorce as yet another step in the scheme to defraud.

1697.   All of these matters described herein show that violating Dean Constitutionally Guaranteed Federal Civil Rights et al are a regular way of doing business for the False accusers and the Imm defendants.

1698.   42 U.S. Code § 1983. Civil action for deprivation of rights is not a source of federal rights but instead is a cause of action and Dean invokes it here for everything noted above along with 42 USC § 1985 (see below). It says: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or

declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

1699.    Here is a word from the Congress of the United States with respect to Section § 1983: "Now, the 'deprivation' of any right secured by that act, or rather the means employed to effect the deprivation, might in law be an assault and battery, a riot, or imprisonment, mere misdemeanors, ordinary punishable exclusively in the State Courts. But because these acts, whatever they were, related to a class of persons whose rights were placed under the guardianship of Federal Legislation, they became offenses against the United States and punishable in their courts." Cong. Globe, 42d Cong, 1st See. 504 (1871).

1700.    "When a State Official, acting under color of state authority, invades, in course of his duties, a private right secured by the Federal Constitution, that right is violated, even if the state officer not only exceeded his authority but disregarded special commands of the state law." Iowa-Des Moines Natl. Bank v Bennett, 284 US 239, 246 (1931)."The state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy." See Parratt v Taylor (451 US 527 (1981) and Hudson v Palmer (468 US 517 (1984)).  At this point it is a "little too late" to put Humpty Dumpty the Saga Enterprise back together again and to un-ring the Bell that Dean has been accused of anal rape and repeated threats of mass murder.

1701.    Deemed State Actors and 14th Amendment Violations. The 14th Amendment, section I states: "….No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor **shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

1702.    With respect to "Rights Retained by the People" – the rights that are not enumerated but are nonetheless protected have been destroyed as well with respect to Dean.  It is therefore a *special grievance* as Dean may never know the extent of the damage caused by False Accuser Bissell et al in their conspiracy and crime. There may be an investor at some point that wants to invest in Dean's (possible future fund) but will not because he reads the name False Accuser Bissell and the fall-out from that cannot be predicted other than to say it will not be "good for Dean."   With all the further "mud-slinging" that is going to come from this lawsuit it is yet another reason that the bell cannot be un-rung.  The damage is done and each bit of "mud slung," is yet more damage to the Article III standing.

1703.    To decide whether or not the False Accusers and Imm defendants are state actors consider: "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action…Thus, in the usual case we ask whether the State provided the mantle of authority that enhanced the power of the harm-causing individual actor." Tarkanian, 488 US at 193.  Withholding the Police Report and TRO recording herein is the "decisive step."

1704.    The Supreme Court has weighed in on the same concept: Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law…" Basista v Weir, 340, F.2d 74 (3rd Cir, 1965). Dean went to the Cedar Grove police station in 2017 and was told there were no criminal charges, and then again asked nicely in 2019. Dean's lawyer asked again, and the police report and related materials were 'denied,' as well as the TRO on other occasions.

1705.    State Created Danger making False Accuser Bissell et al State Actors. Dean claims that he was injured as a direct result of False Accuser Bissell et al in conspiracy and with a state of mind, agreement, and mens rea to willfully and false accuse Dean of violent and perverse Rape on the night of February 7, 2017 as well as false threats of constant and ongoing threats to re-rape (like the last time) to her in the commission of a crime (a break and enter) and constant and ongoing threats to murder her, her family and her *children*. The Cedar Grove police filled out the report and shipped it off to the prosecutor without these constant threats of "mass murder," for instance. Had that prosecutor decided to arraign Dean, Dean would have likely been murdered in prison and for sure never would have been able to get to this point of clearing his name or attempting to clear his name or get compensation for the Evil Criminality. The reasons that Dean would have been murdered is:

    i.    State prisons are the places where they usually ship the violent offenders, and they are full of murders and rapists.

    ii.    It is a well-known fact in literature, movies, and so on and so forth, that murderers are generally more welcome in prison that rapists – especially rapists that have anything to do with children – as Bissell was trying to pin on Dean. In fact rapists that have anything to do with children are decidedly "unwelcome" in prison.

    iii.    Murders that are already in prison – and perhaps on 'death row,' generally have no disincentive not to murder again. They certainly have an incentive to receive $500 or $1,000 for the deed as prisoners usually only make pennies a day doing whatever prisoners do.

1706.    Had Dean been given the police report the Amended TRO and all the subsequent actions would have never taken root – and the foregoing paragraph would not have been a consideration. Dean incorporates the foregoing paragraph every time he has to talk about "his own murder" herein.

1707.    All of these falsities is an aggravated violation of the 4th Amendment Due Process Clause of the 14th Amendment and where the state deprived Dean of Liberty and Property caused by False Accuser Bissell et al in the furtherance of crime that the state government did allow to continue despite the fact that Dean had already dealt with this – and won in Judge Murray's Court in 2017 -- and that the law in the NJ has the criminal coercion and theft by extortion laws that were not even considered because the police report was not released in a timely matter but now that it has been it is absolutely provable that this is exactly was is going on.

1708.    "This test is met when the state encourages or coerces a private party to engage in the challenged conduct." Paul C. McCaffrey, Note, Playing Fair: Why the United States Anti-Doping Agency's Performance – Enhanced Adjudications Should Be Treated as State Action, 22 WASH. U. JL and Pol'Y 645, 664 (2006). The False accusers knew that the policy of the Cedar Grove Police and/or the Township of Cedar Grove was to withhold

these materials.  Ms. Sasha Perez stated that "we never give out that information."  It begs the question of how many other innocent men are actually in NJ prisons today because of this "policy." Is this the policy of all municipalities in NJ? It has been a pitched, steep, uphill climb learning "how to be a lawyer," while under this kind of pressure at the same time and Dean is highly educated.  What about the rest of the world that cannot "speed read," like Dean, for instance?

1709.    The Joint Participation Test "…concentrates on the actual interaction between the state and the private party and not just the interrelatedness between the two." Gregory D. Malaska, American Manufacturers Mutual Insurance Company v. Sullivan.  In short, even after Dean won in Judge Murray's Court the Cedar Grove Police were in no better of a mood to give the police report than they were in 2017 and this make its all joint participation.

1710.    The Due Process Clause imposes upon state actors an obligation to refrain from preventing individuals from obtaining access to the civil courts USCA. Rosenblum v Borough of Closter, Superior Court of New Jersey, Appellate Division. July 20, 2000 333 N.J.Super. 385 755 A.2d 1184. By not having this police report Dean has in truth been denied access to the Court while False accusers just keep changing their stories and crying "rape" and "death."

1711.    **A party may be a state actor, for the purposes of the state actor component in determining whether conduct challenged under the Fourteenth Amendment is state action, because he is a state official, because he has acted together with or has obtained significant aid from state officials, because his conduct is otherwise chargeable to the State, or because there is an agreement between government and a private party.** Hernandez v AFSCME California, United States District Court, E.D. California. December 20, 2019 --- F.Supp.3d ---- 2019 WL 7038389 2019 L.R.R.M. (BNA) 489,323. Without question False Accusers received "significant aid" in not giving Dean the exculpatory evidence and especially so in 2019 after Dean already had won in Judge Murray's Court.

1712.    Conspiracy between private actors and official will suffice.  Dennis v Sparks, Dennis v. Sparks, 449 U.S. 24 (1980).        Liability in a conspiracy may be imputed to a coconspirator for conduct committed in **furtherance of the conspiracy by another conspirator**.  Ryland v Shapiro,  U.S. District Court for the Western District of Louisiana - 586 F. Supp. 1495 (W.D. La. 1984)**. Dean is not saying the Cedar Grove Police 'conspired' with the False Accusers at this time unless discovery proves something different.** Influence of official on private actor. Helvey v. City of Maplewood, 154 F.3d 841, 844, 14 I.E.R. Cas. (BNA) 559 (8th Cir. 1998). Divergent motives.

1713.    Burrell v. City of Mattoon, 378 F.3d 642, 650, 21 I.E.R. Cas. (BNA) 1123 (7th Cir. 2004)…..Burrell needed to show that the state actor….and the individual defendants conspired together to deprive Burrell of his job without due process of law and that they were each in some part motivated by that same unconstitutional

purpose. The malice that Sgt Det McDermott showed when he laughed at Dean for the situation he was in is sufficient.

1714.        Symbiotic relationship between private actor and state. Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S. Ct. 856, 862, 6 L. Ed. 2d 45, 52 (1961) "so far insinuated itself into a position of interdependence….that [the state] must be recognized as a joint participant in the challenged activity."  See Willis v. University Health Services, Inc., 993 F.2d 837, 841, 85 Ed. Law Rep. 620, 62 Empl. Prac. Dec. (CCH) ¶ 42427 (11th Cir. 1993).  Here, Bissell did such a good job telling her story to the Police that they though they indeed had a bona fide victim and rapist on their hands. They did not want to believe that it could not be true – after all False Accuser was a 30-year professional in the diamond and gem industry.

1715.        *Joint Participation*: In Lugar v Edmondston Oil Co, the Supreme Court set forth a two-part test whereby private individuals who are in "joint participation" with government officials will be considered to be state actors.  First, the Court explained that the deprivation must be "caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. Second, the defendant must "fairly be said to be a state actor." As to the later, the Court inquires into whether the defendant has acted together with or has obtained significant aid from the state officials. Again, Bissell did such a great job at saying she had been violated that the Cedar Grove police did not want to believe anything else.  False accusers then received significant aid because Dean was being lied to by the police by them telling Dean that Bissell moved to Florida and was not even going to bother to show up to the TRO/FRO hearing (Lt. Pumphrey). He also told Dean that Bissell did not file criminal charges on August 9, 2017 – that was a ploy to hide the fact that there was indeed a police report and at that very moment the prosecutor was mulling over what to do with Dean.

1716.        The Third Circuit Groman v Township of Manalapan  (Plaintiff bears the burden of proving wrongdoers have acted under the color of state law and conduct satisfying state action requirement under Fourteenth Amendment will satisfy under the color of state law requirement but reverse is not necessarily true.)  Third Circuit—Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995)

1717.        Sybalski v Independent Group Home Living Program. Plaintiff must allege that the state was involved with the activity that caused the injury giving rise to the action…..Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257-59 (2d Cir. 2008). Clearly Dean has met this burden: police report in hand; end of chaos from False Accusers. Actual transcripts of the perjury and subornation of perjury are equally damning to False accusers.

1718.        For private individual to be deemed state actor he must have had an undertaking with state actor to deny plaintiff's a constitutional right i.e. there must be a "concerted effort" between private  and state actors…." Wilson v Warren County 830 F.3d 464 (2016). Again, there was no police report – and with the police report -

this makes all of the difference to when this scheme to defraud could have been stopped. Now that it has gone this far it is that much more obvious that False Accusers and Imm defendants are hardcore criminals that have committed offenses against not only Dean, but also the United States.

1719.    A word from SCOTUS: State involvement must not only be linked to activity complained of but must be in the nature of a compulsion.  U.S. Supreme Court—Flagg Bros., Inc. v. Brooks 436 U.S. 149, 166, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185, 199, 23 UCC Rep. Serv. 1105. The definition of compulsion according to dictionary.com is: the act of compelling, constrain, and coercion.  Here all three of these are more than accounted for.

1720.    Chan v City of New York "….a private party may be characterized as a state actor when the state exacts coercive power or provides significant encouragement…." Second Circuit—Chan v. City of New York, 1 F.3d 96, 106-107, 1 Wage & Hour Cas. 2d (BNA) 956, 126 Lab. Cas. (CCH) ¶ 33031 (2d Cir. 1993).

1721.    To lie is a choice – it is *not* a mistake. "…the individual who considers himself injured, has a right to resort to the laws of his country for a remedy." 5 US (1 Cranch) 137, 166 (1803)

1722.    To state a cause of action for malicious prosecution against private party and state actors under § 1983, plaintiff must plead conspiracy between parties and state actors. i.e. private actor must wrongfully influence state's decision to prosecute through conspiracy….Davis v. Union Nat. Bank, 46 F.3d 24, 25, 26 (7th Cir. 1994). Here again, the Police did not act under terms of conspiracy with the information Plaintiff Dean has at this time, but the False accusers and Imm defendants did act under terms of conspiracy to influence the police and they let themselves be influence by way of False accusers' deceit.

1723.    To establish the elements of malicious use of civil process plaintiff had to show that defendant (1) commenced the PDVA action and Criminal matter; (2) was motivated by malice; (3) did not have probable cause when she commenced and continued the action; (4) failed to establish her claim; and (5) caused plaintiff to suffer a special grievance as a consequence of her filing the complaint under the PDVA.   See LoBiondo, supra, 199 N.J. at 90.

1724.    What that means is that "[a]t a minimum, due process requires that a party in a judicial hearing receive `notice defining the issues and an adequate opportunity to prepare and respond.'" Id. at 321, 815 A.2d 405 (quoting McKeown-Brand v. Trump Castle Hotel Casino, 132 N.J. 546, 559, 626 A.2d 425 (1993)). More particularly, we held that due process forbids the trial court "`to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint.'" Id. at 322, 815 A.2d 405 (quoting J.F. v. B.K., 308 N.J.Super. 387, 391-92, 706 A.2d 203 (App.Div. 1998)); see L.D. v. W.D., 327 N.J.Super. 1, 4, 742 A.2d 588 (App.Div. 1999) (explaining that "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint.") J.D. v. M.D.F. 207 N.J. 458, 474-75 (2011)….but yet this is what precisely is what happened in the 2017 Judge Callahan and Murray Court(s) and False Accusers violated Dean's Due process rights entirely. In all cases the trial

court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare. See H.E.S., supra, 175 N.J. at 324, 815 A.2d 405 (concluding that allowing defendant only twenty-four hours to prepare violates due process). J.D. v. M.D.F. 207 N.J. 458, 474-75 (2011).

1725.    Elements of a § 1983 Action "Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); see also Pistor v. Garcia, 791 F. 3d 1104, 1114 (9th Cir. 2015); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (en banc); Ortez v. Wash. Cty., Or., 88 F.3d 804, 810 (9th Cir. 1996). Clearly, Dean has done precisely this throughout this filing.

1726.    "A municipality is responsible for a constitutional violation,… , only when an 'action [taken] pursuant to [an] official municipal policy of some nature' caused the violation." Castro v. Cty. of Los Angeles, 797 F.3d 654, 670 (9th Cir. 2015) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies Monell's policy requirement." Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989), overruled on other grounds by Bull v. City & Cty. of San Francisco, 595 F.3d 964 (9th Cir. 2010) (en banc). **Moreover, a policy of inaction may be a municipal policy within the meaning of Monell**. See Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). A choice among alternatives by a municipal official with final decision making authority may also serve as the basis of municipal liability. Without question this is also a Monell matter in what the Cedar Grove Police and the Township of Cedar Grove did with their policy of withholding exculpatory evidence for nearly four years.

1727.    The Supreme Court has explained that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61 (internal quotation marks and citation omitted). Whether the plaintiff has succeeded in demonstrating such deliberate indifference is generally a question for the jury. See Lee, 250 F.3d at 682 (citation omitted); Alexander v. City of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994); Oviatt, 954 F.2d at 1478. By Pumphrey and McDermott telling Dean respectively that essentially "you should take care which women you date,"

followed by "I bet your life has been a whole bunch different since this all started ha ha ha…" is totally obnoxious behavior as Pumphrey believed Dean was innocent. They read the text messages and there is evidence in the text messages that directly counter what is on the police report (like Bissell saying that she terminated the relationship with Dean and Saga before April 10, 2017 yet is helping Dean with the CBC interview in late April 2017 and then asking for (and receiving) "radio silence" for "family reasons" and talk again in June if there is "business stuff."

1728.    Where the plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred. See Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016); Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999); Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284 (9th Cir. 1994); Cerrato v. S.F. Cmty. Coll. Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994); Price, 928 F.2d at 828.

1729.    A person deprives another of a constitutional right, "**within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made**.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); see also Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (en banc); Stevenson v. Koskey, 877 F.2d 1435, 1438–39 (9th Cir. 1989); 21 Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). "The requisite causal connection may be established when an official sets in motion a '**series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms**." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743); see also Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018); Wong v. United States, 373 F.3d 952, 966 (9th Cir. 2004); Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999); Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997); Bateson v. Geisse, 857 F.2d 1300, 1304 (9th Cir. 1988); Merritt v. Mackey, 827 F.2d 1368, 1371 (9th Cir. 1987). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008); Wong, 373 F.3d at 966; Stevenson, 877 F.2d at 1438–39; Leer, 844 F.2d at 634. When making the causation determination, the court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." Leer, 844 F.2d at 633–34.

1730.    Without question, by withholding the police report all of the items in the above paragraph are met and then again so on an aggravated basis in 2019.

1731.    The Cedar Grove Police knew that Bissell was about to move to Florida and one of the requisite things needed in the TRO is "immediate danger." Just on this prong alone, the TRO failed per Judge Murray's order –

yet they went ahead with permitting the False Accuser with filing the TRO anyways. This is also giving substantial assistance where none was warranted.

1732.    "A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988); see also Smith v. Wade, 461 U.S. 30, 52 (1983) ("Compensatory damages … are mandatory."). The Supreme Court has held that "no compensatory damages [may] be awarded for violation of [a constitutional] right absent proof of actual injury." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986). Compensatory damages include actual losses, mental anguish and humiliation, impairment of reputation, and out-of-pocket losses. See Borunda, 885 F.2d at 1389; Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987); Chalmers v. City of Los Angeles, 762 F.2d 753, 760–61 (9th Cir. 1985). "[D]amages in § 1983 actions are not to be assessed on the basis of the abstract 'value' or 'importance' of the infringed constitutional right." Sloman v. Tadlock, 21 F.3d 1462, 1472 (9th Cir. 1994). Municipalities can be held liable for compensatory damages. See Owen v. City of Independence, 445 U.S. 622, 657 (1980); Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996).

1733.    Dean is owed for his career as a hedge fund manager, for all of his education that is worthless now, his reputation, and rights that are not even in the constitution (8th Amendment).  Dean knows how to trade stocks at a blistering rate – but cannot raise a dime of capital until the gavel of Justice comes down hard and even then his career still might be toast.  All defendants took everything away from Dean that he had and was going to have and all defendants must be made to give it back.

1734.    Punitive damages are available under § 1983. See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 17 (1991); Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985); Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005); Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 577 n.21 (1984). Punitive damages are available even when the plaintiff is unable to show compensable injury. See Smith v. Wade, 461 U.S. 30, 55 n.21 (1983); Davis v. Mason Cty., 927 F.2d 1473, 1485 (9th Cir. 1991), superseded by statute on other grounds as stated in Davis v. City of San Francisco, 976 F.2d 1536 (9th Cir. 1992), vacated in part on other grounds by 984 F.2d 345 (9th Cir. 1993) (order).  Dean clearly will be asking for these too as the compensable injuries are apparent as shown throughout this complaint. So it is said, RICO injuries are generally to the business and property and Federal Civil Rights violations are generally to the individual.

1735.    So, it is said Dean's Equal Protection, Procedural Due Process and Substantiative Due Process rights were violated by the Cedar Grove Defendants, False accusers, and the Imm defendants.

1736.    To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property

damage or a deprivation of any right or privilege of a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)); see also Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). "The language requiring intent to deprive of equal protection … means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102; see also RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002); Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (per curiam); Sever, 978 F.2d at 1536. Animus toward union members does not meet the "otherwise class-based" factor of Griffin. See United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 835 (1983). The Supreme Court has declined to address whether gender is an "otherwise class-based" category under § 1985(3). See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993).

1737.    There was a conspiracy to deprive Dean's constitutional rights, because he was a man (gender discrimination) and False accusers and Imm defendants used the ruse of false rape to defraud and scheme, and that there were the False Accusers who were all involved in this scheme to defraud Dean of his rights, and without question there were several very personal injuries to Dean, the Saga Enterprise and his and the Enterprise's entire future.

1738.    "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988); see also Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991). Without question Dean has met this burden in these several hundred pages of this complaint plead under Federal Rule 9(b) and with particularity.

1739.    There must be 'a direct causal link between a municipal policy or custom 28 and the alleged constitutional deprivation.'") (quoting Brown v. Muhlenberg Township, 269 F.3d 29 205, 214 (3d Cir. 2001) (quoting Canton, 489 U.S. at 385)). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury."  That direct causal link is the withheld police report – a matter for the Jury to decide.

1740.    "[A] Section 1983 plaintiff must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right." Rivas v. City of Passaic, 365 3 F.3d 181, 193 (3d Cir 2004).  Clearly, withholding the police report was the proximate cause that nearly any of the RICO Acts described in Act II would not have been able to be perpetrated had this police report been released early in the 2017 scheme to defraud by False Accusers.

1741.    ("Decisions have 'recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.'"  This

(quoting 1A Martin A. Schwartz & John E. Kirklin, Section 1983 18 Litigation, § 3.20, at 316 (3d ed. 1997). This clearly has been met.

1742.    Lack of probable cause. "Under § 1983, false arrest, false imprisonment, and malicious prosecution claims require a showing that the arrest, physical restraint, **or prosecution was initiated without probable cause**." Pulice v. Enciso, 39 Fed. Appx. 692, 696 (3d Cir. July 17, 2002) (nonprecedential opinion); see also Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir. 20 2005) ("Wright bases her malicious prosecution claim on alleged Fourth Amendment violations 21 arising from her arrest and prosecution. To prevail on this claim, she must show that the officers lacked probable cause to arrest her.")  False accusers in 2:19 told Judge Arleo there was probable cause in their 12(b)(6) pleading and clearly False accusers lied to Judge Arleo.   Read: Obstruction of Justice.

1743.    Favorable termination is not an element of a Section 1983 abuse of process claim. See Rose, 871 F.2d at 351. 6 Nor is a lack of probable cause. See Jennings, 567 F.2d at 1219. "To prove abuse of process, plaintiffs must prove three elements: (1) an abuse or perversion of process already initiated (2)  with some unlawful or ulterior purpose, and (3) harm to the plaintiffs as a result." Godshalk v. 9 Borough of Bangor, 2004 WL 999546, at *13 (E.D. Pa. May 5, 2004).  Clearly all of these elements have been plead.

1744.    The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV. "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."County Concrete, 319 F.3d at 575 (quoting Taylor Inv., 983 F.2d at 1292).  Plaintiff Dean is missing one Saga Enterprise and a career as a hedge fund manager and a whole lot more. What's more, it is a commerce clause violation in aggravated ways and Dean incorporates everything else that is relevant in this complaint to this paragraph.

1745.    In Dennis v. Higgins, 498 U.S. 439 (1991), the Supreme Court upheld a cause of action under § 1983 based on the Commerce Clause, rejecting the argument that the Commerce Clause could not be the basis of a § 1983 cause of action because it "merely allocates power between the Federal and State Governments and does not confer `rights.'" Id. at 447. The Court instead held that the Commerce Clause both was a "power allocating" provision and constituted a "substantive restriction on permissible state regulation of interstate commerce." Id. (internal quotation marks and citation omitted).

1746.    Dean's New Jersey Civil Rights were violated as he was a "guest" in NJ for all of this Evil.

1747.    N.J. STAT. ANN. § 10:6-2(C) provides: Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may

bring a civil action for damages and for injunctive or other appropriate relief.  In short, all of the US constitutional violations have the same New Jersey Constitutional violations and since Dean was essentially "kidnapped" into the state of NJ to face all of this Evil, Dean has double Civil Rights claims and incorporates each and every claim above into the corresponding state violation herein against each and every defendant and under terms of conspiracy.

1748.    **Where the actors are not state or municipal officials, but are private individuals or associations, we still must address whether their activity can nevertheless be deemed to be under color of law. The inquiry is fact-specific.** Lugar v. Edmondson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982); Krynicky v. University of Pittsburgh, 742 F.2d 94, 97-98 (3d Cir. 1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). Here the Immigration Enterprise and its powers were used to reach into the United States and do these things against Dean.  Remember, Richard Dennis is a resident of the state of NY and there might be separate color of state law matter should the Jury decide this and that would apply to New York and Nevada law against Imm defendants and False Accusers (who are conspiring with Imm defendants and so Dean invokes this right now).

1749.    There may also be a Commerce Clause, Discrimination, Article 1, section 8. This clause was originally used to protect our African American Citizens but some thought should be put into whether or not this may extend to those who have been targeted and discriminated against because they are men and for extortion purposes. While "[t]he atrocities" that led Congress to enact 42 U.S.C. § 1983 "plainly sounded in tort," Wilson v. Garcia, 471 U.S., at 277, 105 S.Ct., at 1947, there is no comparable single state law analogue to RICO...."  In this case it has it all and more.

1750.    A word from President Trump (whether you lump him or love him this statement from Dean's perspective has validity):

> "It's a very scary time for men in America…you could be somebody that was perfect your entire life, and somebody could accuse you of something…and you're automatically guilty…."   Mr. Trump went on to say how a man who has been accused of sexual misconduct will have his life in 'tatters' and 'shattered,' that his wife will be 'shattered' and his children 'destroyed.' Donald Trump, Jr. agreed, noting that he feared more for his sons (and their risk of being falsely accused of sexual misconduct than he feared for his daughters actually suffering from sexual misconduct." Minnesota Law Review, Men Fear False Allegations, Women Fear Sexual Misconduct, Assault and Rape, November 25, 2018, pg 1

1751.    If Joe Biden said this above, would it make it more true or less true or right on point?  Dean says it is right on point.

# Act III

357

1752.    Imm defendants have been in violation of the CNCA and 18 USC § 1962 as detailed in Act I, every time they reached into the United States it was generally for an unlawful purpose according to US Law since 2017 – and likely even before that.

1753.    In Act III, it will be shown that the Imm defendants use the same criminal conduct that forms a pattern and embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are **interrelated by distinguishing characteristics** and are not isolated events.

1754.    It is largely those "interrelated distinguishing characteristics" where evidence fabrication, evidence tampering, and general abuse of the legal process will be shown to be very similar to the False Accusers' methods.

1755.    Additionally, without question the Imm defendants knew that Dean was having serious legal problems in the United States in USDC NJ in 2:19 and 2:20 and in Essex County New Jersey in ESX – L – 984 – 19.  A person need only type into Google.com the terms "Ryan Dean" and "Saga" to see these matters are top listed on the search engine. Yet, Imm defendants did not one but arguably three deep background dives on Dean (Amandeep Singhera, Danielle Orr, and Aakash Mistry) all they came up with was one slide of Dean on his LinkedIn with respect to his being Founder and Managing Director of Saga Global Capital Management LLC (See below).

1756.    The Imm defendants were and still are hell bent on framing and discrediting Dean somehow 'missed' their opportunity to expose Dean as a 'rapist,' as well as an "about to be 'mass murderer," that would definitely qualify as "conduct unbecoming of an immigration consultant" under their By-Laws.  Let's see what the Jury thinks about that.

1757.    Also, looking back in a little recent history, when others stand up to do something good, they too have suddenly, and most inconveniently, been accused of rape.  Take for instance Julian Assange of WikiLeaks fame - who was targeted with likely false rape allegations and then nearly ten years later – all charges quietly were dropped.  It is become a very effective weapon to use by wrong doers to protect themselves against those who are investigating them and diverts all of the attention away from the wrong doing and onto false accusers which get much more media attention (but seemingly less scrutiny).

1758.    Of note as well is that Dean is not asking the USDC NJ to interfere with Canadian Courts at this time nor is he is asking for a "Dozinger Remedy," but may later.  Dean will take this CIVIL RICO Complaint back to the various Canadian Courts and report back what has happened to the USDC NJ from time to time, and also via letters to the CDN Courts, that will be copied to the USDC NJ for full transparency.  Dean has leave to file a motion to remove himself as defendant from T-834-20.

**BEFORE ICCRC WAS CHOSEN AS THE NEW IMMIGRATION CONSULTANTS REGULATOR IN OR AROUND 2010**

1759.       The Canadian Society of Immigration Consultants ("CSIC") was the regulator, and they were being shown the door by the Government of Canada for various reasons.  A new bid process had begun.

1760.       Ms. Nuha Nancy Salloum's company, the Canadian Society of Immigration Practitioners (CSIP), and Its 4 Affiliates submitted a three-part submissions to the Canadian Government to become the new regulator of immigration consultants in and around 2010. There were approximately 2,200 pages that were submitted to regulate and open a College Of Citizenship and Immigration Consultants to teach the Immigration program.

1761.       In that Proposal the name "The College of Citizenship and Immigration Consultants" appears. With an attached letter to the Minister of the day CSIP gave two options for the name "CICC or CCIC".

1762.       The Proposal cost $375,000 (CDN) over 6 years in preparation and consent was obtained from College of Physician and Surgeon and other institutions to use their ideas by late Cdn Ontario lawyer Fay Furest.

1763.       Madame Mireille Gauthier was from Montreal, former director for Immigration department "CIC" and a court officer for 35 years. She became "CSIP-CICC" Vice-chair in 2006. There were 13 directors.

1764.       For 10+ years CSIP and its affiliates did not get involved with ICCRC after ICCRC won the bid in 2011 to become the new regulator.

1765.       Here are selected documents (see link below) that show that there was a whole bunch of effort put into CSIP bid to become the regulator by Ms. Nuha Nancy Salloum and her other stakeholders back around in 2010. Dean was not part of this process in anyway back in 2010 but was a member of CSIP while living in Asia.

https://www.dropbox.com/sh/losqzzij5cssviz/AAA55r3xDUKxuRhsoF9-0wnRa?dl=0

1766.       Here is Ms. Salloum's story in her own words, pages 4 -26 (NOTE: after downloading the link below there is a " + " button at the top of the task bar to enlarge the document and a scroll bar at the bottom of page to center the document):

https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1767.       According to Ms. Salloum, the ICCRC became the regulator with **some 25 pages of bid documentation** and became the regulator under dubious conflict of interest circumstances involving Mr. Phil Mooney, Ms. Lynn Gaudet, and Mr. Chris Daw.  According to Ms. Salloum, who is a witness and victim to this whole scheme to defraud, says that Madame Gauthier died in very mysterious circumstances very shortly after Mr. Mooney approached her to become part of the CSIP bid. When that was declined by Ms. Gauthier, she was dead a few days later, and CAPIC submitted their bid (and after they won CAPIC created ICCRC to be the regulator).

1768.       In Act I, this is discussed how CAPIC won the bid and then ICCRC became the regulator.

1769.       For years the ICCRC failed to protect the public and this is detailed in Act I:

Exhibit 36 – The Parliament of Canada CIMM Report June 2017

1770.       ICCRC was voted by the Parliamentarian committee to be deregulated by a margin of 15-0 and the committee was made up of the Canadian equivalent of the Republicans and Democrats who are the

"Progressive Conservatives," and "Liberals" respectively, plus another major party called the New Democrats (NDP) that was on the committee at the time. In any event, like American politics, it is rare that all parties agree unanimously in any decision but in the case of the ICCRC they were an abject failure. In RICO matters a good sign is to show that there are "other victims," and victim after victim after victim of the Imm defendants testified to the Parliament of Canada. This was in June 2017.

1771.    Dean at this point had already been removed from the ICCRC by "board trial" and then received the "Appeal Committee" decision upheld the unlawful "board trial."

1772.    A week later, Dean was embroiled with the False Accusers in scheme to defraud described in Act II.

1773.    In Spring 2020, Ms. Nuha Nancy Salloum contacted Dean and later he agreed to become CEO/Managing Director of CICC. It was a voluntary position and indeed Dean was just waiting to see what the Minister of the IRCC would do next. Would they promote ICCRC to be the next regulator under Salloum's ideas that became the "College of Citizenship and Immigration Consultants Act," or would they let the author of that ideas, Ms. Salloum form the next regulator?

1774.    Ms. Salloum announced that Dean had become the next CEO/Managing Director of the College of Citizenship and Immigration Consultants Corp ("CICC"). Dean wrote a few DRAFTED letters that were on the website of CICC that was still on lockdown and under construction and were not viewable to the public.

1775.    On June 18, 2020, Dean removed the NJ Law Division case ESX – L – 984 - 19 to the United States District Court New Jersey, in part to remove the case because of the "discounted extortion" that the False Accusers offered, but also in part to see what the Imm Defendants would do.

1776.    About 10 days later, on June 28, 2020, Mr. Larry reached into the United States to Dean's address in Nevada where Larry as a "lawyer" knew, or should have known, that he was in violation of 18 USC § 1952(a)(3) as well as wire fraud. It was also a violation of 18 USC § 1512 and 18 USC § 1513 as described in Act I and Act II. The Imm defendants knew that Dean was already embroiled in the USDC NJ in 2:19 and 2:20.

https://www.dropbox.com/s/w904eue9fc4b4h1/Jeff%20Larry%20College.pdf?dl=0

1777.    There was a GoDaddy.com glitch that released the information of thousands of clients and this in turn was the cause of the CICC website being public. Here is an article on the matter where GoDaddy.com has flung itself into the arms of the Attorney General of California as well as a conversation with GoDaddy and Ms. Salloum.

https://www.dropbox.com/sh/m08vj5yxbi94sax/AAA_OGegxo_kI5rXCzAv4nPba?dl=0

1778.    At no time did Dean have control of the CICC website nor any CICC social media accounts such as Facebook, LinkedIn, or Twitter – Dean was plenty busy dealing with the 2:19 and 2:20 matters. In any event, Ms. Salloum had 100% control of the CICC website and all social media related accounts.

1779.     The Imm defendants knew that Dean was already embroiled in the USDC NJ in 2:19 and 2:20 and they perpetrated further violations of 18 USC § 1512 and 18 USC § 1513 by "urgently suspending his [immigration] license" with ICCRC for reasons that had nothing to do with Dean's practice as an Immigration Consultant as well as the ICCRC sued Dean in Federal Canadian Court in T-834-20 by did not depose him and Dean was repeatedly called "irrelevant" to the proceedings begging the question of why he was there in the first place.  They did say that Dean owned CICC and the website when it was clear by the corporate documents that he did not.  Arizona RICO can help defendants decide if they want keep this fraudulent position or not.

1780.     **What follows here is not for this USDC NJ to influence the Canadian Federal Court – far from it.  Dean will do that himself but may come back with the Dozinger remedy.  Dean has been given leave to remove himself as a defendant in T-834-20 and will report back to USDC NJ what happens with that later.  For now, what is below is that there was activity directed to the United States and it is connected with the other Imm defendants.**

1781.     Dean poured in all of the issues related to the CNCA into T-834-20 (that was quickly kicked out by the conflicted Judge (see below) and to date it does not seem to have bothered the Imm defendants a bit that the ICCRC is in gross violation and is flouting Canadian Federal laws; they are getting all kinds of cover friend their Associates-In-Fact all the way up to the Minister's office and even have influenced the Canadian Federal Court (see below).

1782.     In Federal Canadian Court, T-834-20 here were some 20,000 – 30,000 documents that passed back and forth - and the point here is that involving Dean in T-834-20 was expressly done with the intention to "keep him busy" and not to be successful in 2:19, 2:20 and/or ESX – L  - 984 - 19.

1783.     The Imm defendants took unlawful Jurisdiction over Dean and reached into the United States.  The Judge in the Canadian Federal Court insisted that Dean provide a Canadian Address and Dean told them that he did not have one and despite being a Canadian Citizen, had not lived in Canada for some 20+ years.  That did not matter, and Dean was forced to use Ms. Salloum's address on a c/o basis.

1784.     It is of note that there was a parallel case in the matter, and it involved Ms. Salloum and the council for the Attorney General of Canada ("Attorney General") – Dean was not named in that matter (Canadian Federal Court T-1033-20).  In depositions, the Attorney General (Ms. Jennifer Chow) apparently said essentially that "we know that Ryan Dean did nothing wrong." Dean is still waiting to get a copy of those transcripts to see precisely what the Attorney General did or did not say. The case in T-1033-20 went into Sine Die. See Link below:

https://www.dropbox.com/s/ue1z65ybrjj81gt/92%20%20%20%20Judge%20Richar%20Bell%20Order%20SINE%20DIE%20T1033-20.pdf?dl=0

1785.     What's more, the Attorney General did not bring Dean into the Federal Vancouver (T-1033-20) matter because Dean believes that the Attorney General herself could not see any evidence against Dean. The Attorney

General, herself has said on the record that the dispute between ICCRC and CICC is a private matter and Dean believes that the council is perhaps trying to distance herself from ICCRC because of the real evidence that is coming out that is principally Ms. Salloum did submit a bid in 2011 as reported by the Federal Gazette (essentially the Canadian Government's way of publicizing government actions and/or initiatives) and Salloum's College of Immigration and Citizenship Consultants was most assuredly published and this fact has been denied repeatedly by ICCRC and Mr. Wall et al in their pleadings reply to the counterclaim of Sept 18, 2020 in T-834-20.

1786.    In any event, Dean cannot speak for the Attorney General and in due course we will be able to get the documents of what has precisely been said.

1787.    One of the reasons that the case went into Sine Die was because of this statement that was placed on the CICC website by Ms. Salloum:

1788.    "PUBLIC DISCLAIMER Please be advised that the "College of Immigration and Citizenship Consultants Corp." IS NOT authorized by the federal government as the regulatory body governing immigration and citizenship consultants. CICC is an educational College and not a regulator of the Profession if you wish more clarification please contact us at info@cicc-lcic.com"

1789.    It was good enough for the Attorney General of Canada but not good enough for the Imm defendants as will be shown below.  The whole point to Ms. Salloum's website was for us to see what the Minister was going to do and if the Minister had selected Ms. Salloum's CICC then we would not have been caught totally flat-footed.

1790.    Of note however, is why Ms. Salloum would be "sued" for flouting laws but the Imm defendants have received a "pass" for all of their clear violations of the CNCA (Act I) – which is a Canadian Federal Law. At this time, the Attorney General is not a defendant to this USDC NJ action. Dean was not a party to T-1033-20 with the exception that he had to show up to Court via zoom link as CEO/Managing Director in Ms. Salloum's stead (who still managed to peel herself out of the emergency room) because she had a stroke (minor?)/COVID – 19 symptoms.  Ms. Salloum produced a medical certificate that indicated that she did have a stroke as well. Ms. Salloum during this time also had two eye operations (each eye) and these matters still grumbled on until settlement talks were entered into.

1791.    Here Imm defendants wanted Dean to settle in T-834-20 but not settle the ICCRC Internal urgent motion and that is because Imm defendants know that Dean has plenty to do in the United States with the False Accusers matter(s), and in turn since Imm defendants totally control the Immigration Enterprise it is easy for them to simply suspend and then revoke Dean's license while helping the False accusers.  Dean can only speculate what will become of himself as the 30-day mark for Canadian Judicial Review approaches to appeal the tribunal mark.  Here is the link to the T-1033-20 matter.

https://www.dropbox.com/s/uhakfn0yj71kkpn/2020%2009%2003%20Statement%20of%20Claim%20-%20filed.pdf?dl=0

1792.     At first Wall claimed there was no bid (see statement of claim below) in 2010 and then they quickly backed off of that. It is somewhat similar to False Accuser Bissell doing business plans in the bathtub and passing it off as suddenly she is hired and Wall not wanting to acknowledge that Salloum did a bid in 2010.  Next Wall would attack Salloum and essentially say that she plagiarized the whole bid but then Ms. Salloum came up with permissions from at least one regulator that said it was all ok from 10 + years ago – usually things that long are not kept but Salloum luckily did.

https://www.dropbox.com/s/fsdhrv7vlwi0ora/Wall%202020%2007%2028%20-%20Statement%20of%20Claim%20%28issued%29.pdf?dl=0

1793.     Again, Dean's involvement in the matter was as a US Citizen, living in the USA, he took a voluntary CEO position with CICC, put his name of Linkedin, and waited to see what the Minister was going to do.  Dean never "sent" any letter to ICCRC member with regard to any CICC matter ever, and the Imm defendants knew this. Some 20,000 – 30,000 pages later Dean is embroiled in T-834-20 after forcing him to give a Canadian address and skipping the "little matter" of Jurisdiction over Dean.  Above in the Jeffrey Larry letter, the Court can see Dean's address is in Nevada.

1794.     One of the reasons that Mr. Wall did not want to talk about any of the "Ryan Dean" issues and the reason that all "new people – meaning no history against Dean" were involved in the hearing against Dean in T-834-20 was to cover up something more troubling. That is that any of the "old people – meaning people that Dean had a history with," also had a history with Ms. Salloum and CICC from 2010.

1795.     What's more, Larry was the lawyer that convinced the Judge in the CNCA application in Ontario to not even read Dean's materials (a letter will be on the way to that Judge and copied to the USDC NJ shortly) illuminating these matters.

1796.     ICCRC and IRCC knew of the continued existence of CICC since October 2018. And then they became aware of its incorporation in October 2019 and still did nothing. Earlier, around May 2019 is when Ms. Basatrache, Ms. Kennedy, Ms. Fuhrer, and others arranged for Queen's University to be the "teaching arm" of the new College of Citizenship and Immigration Consultants. Katarina Stephenson, a director of IRCC and Minister Ahmed Hussen went in front of the Senate and passed of Salloum's work as if it was theirs and Ms. Salloum will also have much more to say about this. It is an important point because these were all 'new people,' as defined above.  It was not until in June 2020 – 1 year and eight months later - when Dean became CEO/Managing director of CICC did it invoke any kind of response to CICC from the Imm defendants.

1797.     Despite the fact that Dean literally did nothing more than accept the position and wait to see what the Minister (Mendicino) was going to do, and put the CEO/Managing Director position on Dean's own Linkedin –

the Imm defendants took terrible vengeance on not only Dean but also Salloum - and caused her to have a stroke.

1798.    Ms. Salloum in due course will be a witness about these troubling matters as she is best set to talk about these points below:

➢ Minister Ahmed Hussen gave an interview with Ipolitics and announced CICC College Act; he is yet another lawyer who was cutting corners and taking credit for others' work as he is the one that received Ms. Salloum's work from Ms. Stephenson, who received it from Phil Mooney because according Salloum Mooney Mooney one of few people that actually had a copy of Salloum's work from 2010. Salloum will have more to say about.

➢ Queen's University signed contract with ICCRC in 2019 to be the 'teaching arm' of the College.

➢ Private Citizen Ms. Janet Fuhrer was a Dean Council member at Queen's University.

➢ Katarina Stephenson on May 31, 2019 told Senate of Canada about the signed contract between University and ICCRC and she was one of the high level Canadian bureaucrats giving the ICCRC all kinds of help and cover and making sure Dean's parliamentary privilege was not enforced. Brian Smith worked with Ms. Stephenson to make laws apply to mostly everyone – but not everyone with Ms. Stephenson.

➢ Danielle Bastarache and Mary Kennedy became employed by ICCRC in and around May 2019 and both pursued complaints and Investigations against both Salloum and Dean in 2020.

➢ Judge Fuhrer became Judge on June 19, 2019 and resided on the hearing in the ICCRC motion in T-834-20 – and did not disclose the conflict of interest between Queen's University and ICCRC and herself presiding on the case.  Judge Further is a member of a US based copyright and IP lawyers' organization. She knew better as her judgment went outside of the "status quo" it said.

➢ Before Judgement, Judge Fuhrer denied letting Dean submit numerous documents – and ruled that he indeed submitted nothing, and then – despite the fact that Dean still had leave from the case management Judge for "preliminary issues," the Judge Fuhrer cut him off when he started talking (while on US based Zoom serves) about the criminality that is now part of this RICO action (meaning the Federal Canadian Court literally waived Jurisdiction over it and the transcript will be submitted in due course).

➢ Further, Judge Further decided that Dean, a Canadian Citizen (who was brought unjustly into T-834-20 because of jurisdiction issues was then not allowed to speak at his own hearing).

➢ Ms. Salloum subsequently was not allowed to represent CICC and was given time – over the Christmas holidays to find a lawyer. Judgement was delivered by Judge Fuhrer on Christmas Eve as some kind of punch-in-the-mouth to Salloum and a 'pat on the back' to the Imm defendants ripping Salloum off.

➢ Minister Mendicio (and maybe higher as others are investigation now) attempted to influence the Federal Canadian Court and did influence the Federal Canadian Court and the Court was influenced. There was document that was held out as being current – the OIC - but it had a date on it of April 31, 2017 (there are not 31 days in April) and in turn there have been several other documents that show that this was an utter fraud to influence the Canadian Court.

➢ Lawyer Scott Mackendrick at the law firm "Bereskin & Parr," was interviewed by Salloum to become CICC's lawyer (as well as Salloum and Dean's lawyer) and apparently declined to so.  Some weeks later Mackendrick and Ms. Tamara Céline Winegust (another lawyer) of Bereskin & Parr decided that it was their 'lawyerly duty' to represent Salloum, Dean, and CICC by blasting out into the world numerous posting directed at Canadian lawyers (and polluting the internal Canadian Bar Association ("CBA") chat room all about the decision of the case (see below)) for the express purpose that CICC could not get a lawyer at all to defend itself.  This sounds like the same scheme to defraud as what Shivas et al did to Saga Global Capital Management LLC in ESX – L – 984 – 19 because they were

victims of the first attack and could not pay for a lawyer and so in ESX – L – 984 Saga has it answers, defenses, and counterclaims struck with prejudice at the time of this writing.

➢ Mackendrick and Private Citizen Janet Fuhrer knew each other from Queen's University and in fact worked there together. As far as the RICO statute is concerned it is fraudulent concealment of material facts that were discovered after the fact.

➢ Federal Canadian Judge Janet Fuhrer presided on the case T-834-20 and did not disclose the conflict of interest as above. Private Citizen Fuhrer is a defendant and not Judge Fuhrer.

1799.    All of these things were no coincidence because it was high level government plans for a number of years and explains quite a bit why it is that Imm defendants were allowed to get away with so much for so long all the way back to 2017 and why they were given the green light to reach into the USA from 2017 onward. They knew that they could steal Salloum's IP and CICC materials in Canada and they calculated the Dean – being a Pro Se guy getting destroyed in legal proceedings in Ontario with Imm defendants (which may also been improperly influenced) – was not spending all of his time learning how to be a RICO lawyer.

1800.    Defendants – Welcome to the United States - and Y'all can tell the Jury about the issues above and how you reached into the United States and did the things you did. Dean expects that the Judge and Jury in USDC NJ will let Dean speak at his own trial and present the documents that he has compiled to put forth his case. Of note, Dean is under the FULL PROTECTION of the USDC NJ with this filing and if need be under a Dozinger remedy.

1801.    The further point is that while Dean was not publicly associated with Salloum and/or CICC they did nothing. Even when Ms. Salloum gave Dean an affidavit that she owned CICC in around March 2019, the Imm defendants did nothing. But as soon as Dean become publicly associated with Salloum and CICC then the Imm defendants lashed out.

1802.    Dean then tried to submit a motion to remove himself as defendant and because there was essentially the Canadian Equivalent of "Fraud on the Court," a common theme with these lawyers. The point for the Court is not to read each page but just to see a lot of work and effort was put into the document and it was not read in Canada – nothing new.

https://www.dropbox.com/sh/amk024xdde9jgq2/AABUDlnnQwZTXhiJPhJ02c7ga?dl=0

1803.    Without skipping to the very end of story of what happened in Canadian Federal Court case T-834-20, Dean was shut down by the Judge - when he said that there was "tampering with the evidence" – and was told that was "inappropriate" by the Judge. Next, Dean was not allowed to speak at his own hearing involving himself and Dean was told that he submitted nothing despite working with Ms. Salloum on another 7,000 page + document that Ms. Salloum and Dean whipped together in less than 10 days. Because Salloum and Dean were not represented by a lawyer the Judge Ruled that Dean had to submit his own paperwork separate and apart from Ms. Salloum's and indeed had submitted nothing.

1804.    Here is the document that will be referred to frequently in Act III – but only a few pages in the entire document will be referred to for now in USDC NJ and Dean is using it because it is all contained in one document with page numbers for easy reference.  However, the Court should also note how little all of these pages have anything to do with Dean but yet Dean is part of it in T-834-20 as a total abuse of legal process and more forced labor as well as a huge diversion for the benefit of the False Accusers matters.  The point being the Imm defendants wanted to keep Dean more than busy in Canada to give the False accusers all of the help and diversion against Dean that they can.

1805.    Additionally, it is of note that the Judge in T-834-20 ditched entire major sections of this document and did not allow Salloum to use it for if she did, Salloum most assuredly would have won the day – but that is not how it was all designed by the bureaucrats influencing the Canadian Federal Court.

https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1806.    Here are some of the examples (below paragraph) of the "evidence tampering" that were deemed "inappropriate," but nevertheless given to Dean by wire in the United States in a scheme to defraud Salloum (and Dean as Imm defendants insist that CICC is Dena's property – it is not (maybe it might have been in the future) and then the items were not allowed into evidence because Ms. Salloum had not properly referenced that she was going to use the items for a specific purpose.

1807.    In the United States, Pro Se Litigants are afforded the highest amount of leeway in the Court decerning the pleadings as a comparison for our Canadian friends.

1808.    The Imm defendants' goal was to fabricate evidence that CICC's website was already in business to the Federal Canadian Court and in turn make it seem like the CICC website was already live. It was not – it was being prepared in the event the government selected CICC to be the next regulator but godaddy.com had a 'glitch.' Salloum and Dean assumed that since the government was using the name CICC and the College of Citizenship and Immigration Consultants that the government was getting ready to let others try to see if they could run the regulator any better than the failed ICCRC. This link shows the different tampering of evidence in the link above in para 1802.

https://www.dropbox.com/s/5al7lq19puubisf/Notes%20for%20differences%20in%20affidavits%20under%20construction.pdf?dl=0

1809.    For Ms. Salloum the Judge would not let Ms. Salloum use the majority of the filing because it did not say it was being used for a specific purpose which is simply ridiculous – but April 31, 2017 was welcome into the hearing as a late edition and after the hearing had in fact took place. It was total bias and a sham with the Judge 'ruling' not to follow the status quo – which also has an effect in the United States (if US Courts use Canadian Judgments for case law which Dean understands they in fact do from time to time).

1810.   Further, the Judge said that it was Dean's responsibility to "know the Federal Rules of Court" and took no mercy nor pity on Dean and told him to essentially be silent at his own hearing. For most of proceedings previous to that in case management conferences and so on and so forth Dean had little to say because there was little that Dean was subject of.

1811.   There was a key piece of evidence that the Judge "allowed" into the proceedings – after the proceeding was concluded - that had a date on the document dated April 31, 2017. This document dated April 31, 2017 was held out to be a current document just recently signed by the Governor General of Canada (but the Governor General of Canada resigned because of a dispute with the Prime Minister of Canada right around this time and others are looking into that and that is only tangentially related to this matter it is thought at this time).

https://www.dropbox.com/sh/sxdn7gjvk0k97c7/AABFIcFutUCNsZdWIzfjmJsIa?dl=0

1812.   Salloum had some very choice comments to the Attorney General (see above). Again, Dean has not included the Attorney General – nor any of AGC staff in these matters as defendants but they are the ones that produced this document and/or moved it along in the process to present to the Federal Canadian Court.

1813.   November 20, 2020 – the day of the actual hearing – and it had to do with something called the  Order in Council ("OIC").  More about this later but just so it is said, even in Canada, there is no April 31 – not even in "leap years."  April has 30 days in it and not 31. Later, when it was discovered this same Federal Judge, had a major conflict of interest issue, then it all started to "add up" that something was seriously out of place north of the 49th Parallel.  Especially, when the Minister himself corrected the supposed date of the OIC to be November 26, 2020.

https://www.dropbox.com/s/hckudczkde9ibpi/Nov%2026%202020%20Minister%20Mendicino%20Announcemnt%20the%20coming%20into%20fore%20CICC%20%20%20%20%20correction.pdf?dl=0

1814.   The Imm defendants started to take their own "Spin Doctor Mentality" and did the same kinds of tactics that were described in Act I and II, where Dean is innocent. The Urgent Motion to Suspend Dean came, and that document can be found here:

https://www.dropbox.com/s/k0qm2a9p84llx89/CD.2020.313-ICCRC%20Motion%20Record-2020-08-10.pdf?dl=0

1815.   The take-away from this document is that each and every screen shot says, "under construction," but in T-834-20 this "under construction" is all purposefully edited out and again the link in 1806 gives some examples.

1816.   The other take away is that Dean was kicked off the ICCRC board by unlawful board trial and then when the Imm defendants sent Dean the "urgent motion," Dean tried to resign his membership.  Instead, Imm defendants wanted more retribution and revenge and criminally coerced Dean, by reaching into the United States and blackmailed Dean into "participating" in having to deal with more of their scheme to defraud.

1817.   Below is the Motion Record of ICCRC and by the direction of Ms. Danielle Bastarache (see link), as the Imm defendants' chief lawyer on this part of the scheme to defraud by reaching into the United States and sent

to Dean's Nevada address. Dean incorporates all of the Nevada RICO from Act I and Act II herein and applies it to this Act III matter for all elements and statutes as well as all Federal RICO elements and statutes named herein with respect to the Predicate Acts and Causes of Action.

1818.    Let's see what the Jury thinks about that where the Imm defendants despise Dean so much that they would not even let him leave and they thought that their ICCRC By – Laws, which Imm defendants don't follow themselves, somehow trump US Law.

1819.    Imm defendants knew that they did not have any jurisdiction over Dean as well as that they were operating the Immigration Enterprise illegally under CNCA and 18 USC § 1962 et al, using the facilities and resources to commit wire fraud and then using the statements of Salloum and CICC and attributing them to Dean - when the Chair of the ICCRC "Discipline Committee" herself said that it was probably a problem.

1820.    Here is the motion record and the point is not for the court to read each and every word of it but instead to see how much of Ms. Salloum and CICC's materials were used against Dean. Dean was purposefully not posting any social media knowing that the Imm defendants would later try to twist it – just like the False Accusers did. It is the same methods that all defendants have used. See Link:

1821.    https://www.dropbox.com/sh/o14715mxm3d4u1i/AACazaKCqMFRff-KW8WODBfwa?dl=0

1822.    Conspicuously, the Imm defendants in Volume 5, pg 480 is a Dean's LinkedIn Profile as Founder and Managing Director of Saga Global Capital Management LLC. Ms. Bastarache and the Imm defendants thought that they need not include any of the problems that they created and paid for in the United States with Dean with respect to the False Accusers. Alternatively stated, if the Imm defendants did not pay for the False Accusers then why would they pass on the scandalous and juicy facts of accusations of "anal rape" and aggravated threats of break and enter, re-rape, and "mass murder" from their Public Enemy # 1 Ryan Dean. If in fact the Imm defendants financed and/or paid for the False Accusers to do their predicate acts in the United States, then it would be really easy for the Jury to see why Danielle Bastarache and her Associates-In-Fact and co-conspirators would not want to use this fact. Remember – Phil Mooney does not want to talk about Dean (Act I) and Gervais Wall (herein act III) really does not want to talk about Dean but Wall/Noonan and their firm want Dean in T-834-20. It is all a matter for the Jury to decide.

1823.    Instead of including salacious details of "rape" and "mass murder" against Dean, they included all of the statements of Ms. Salloum – who is furious that she is being extorted and robbed out in the open with the government of Canada's help as well as the fact that the Imm defendants are insisting that Salloum's property and business is in fact Dean's property and business and it is all just another step in the process to defraud not only Dean in the United States but also Salloum in Canada AND the United States. Again, Salloum will either become a plaintiff or a witness in this matter.

1824.    Ms. Bastarache herself has stated that that there was no link between the ICCRC matter and the Federal Court of Canada matter in T-834-20 but in Volume I near the beginning (see table of contents), the Interlocutory Order against Salloum, Dean, and CICC to not use Salloum's stuff (by the conflict-of-interest Judge) is there front and center (in Canada it is spelt "Centre").  Ms. Bastarache must have a direct connection to Dave Shivas' office who has repeatedly said that the matters in 2017 are "separate" from matters in 2019.  Again, a matter for the Jury to decide.

1825.    Both have also decided that by working together it is better to bury Dean in some more "forced labor" (Federal) and Nevada/NY statutes (and more below) to deal with their Evil to give False Accusers every chance to do as much damage in the United States as possible.

1826.    Now, how did Daniel Bastarache, a Canadian Lawyer and definitely not a law enforcement officer come by to acquire CICC website and all of its materials in the United States? To Ms. Bastarache and the Imm defendants that was simply a matter of reaching into the United States and the state of Arizona to contact GoDaddy.com and report crime as if Ms. Bastarache was a law enforcement officer – which she was and is not. Michael Huynh another lawyer allowed himself to be put on the same paperwork that Bastarache submitted ot godaddy.com Let's meet Ms. Bastarache as she seems perfectly well balanced and there is nothing out of place – at all.

https://www.dropbox.com/sh/1jaogvsspg60bw4/AADjoTmysluZ4kuLprLtWmd9a?dl=0

1827.    Here is some more wire fraud from Ms. Bastarache on October 5, 2020 at 8:26 AM, stating essentially that Dean should get the complaint (with Mr. Michael Huynh – another Imm defendant lawyer who knew or should have known he was committing a predicate RICO act) from elsewhere – despite the fact that Ms. Bastarache is the one that filed the complaint with GoDaddy.com; just so it was said there is no "litigation privilege" on this point for Imm defendants because there was no legitimate Court proceeding.

https://www.dropbox.com/s/zruxhb1iiclduuu/Danielle%20Bastarache%20Email%20October%2013%202020.pdf?dl=0

1828.    Here is the GoDaddy.com complaint from the "Law Enforcement Request Team" on page 2218 of the link below. On page 2220 it states that "these individuals have set up a website and social media pages in an attempt to dupe our licensees – Regulated Canadian Immigration Consultants (RCICs) – into paying them the annual licensing fees instead of ICCRC."  Remember – those pages all stated "under construction" and were under lockdown until the godaddy.com glitch happened as above.   Godaddy.com glitch or no Godaddy.com glitch Dean never had access to any of the CICC website and/or Linkedin or social medica platforms and he did not cause any of it to be released into the world.

https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1829.	Below it will be made clear that ICCRC had no proof that Dean had tried to dupe the licenses because he did not send any letter to any member via email or Canada Post and/or USPS or otherwise. Also, Ms. Kennedy would also state that she had no proof that Dean had in fact collected any money whatsoever from any member. This is the same kinds of means and tactics that the False accusers did as they buried evidence and fabricate other evidence (like editing out the "under construction" items at the top of each page).

1830.	The ICCRC knew that the website was set up in the event that Minister selected CICC to be the regulator that is when the website would have gone 'live' and if not but for the GoDaddy.com glitch (see above) this website would never have gone public so says Salloum.  Likewise, with the LinkedIn Posts these were also part of Ms. Salloum's package with GoDaddy.com and according to Ms. Salloum those posts were also not to be made public except the GoDaddy.com did make the website, go live, and those posts were going public.

1831.	At any rate, the larger issue here is that Ms. Bastarache and Mr. Huynh held themselves out to be "law enforcement" officials and they are not.  They are Canadian lawyers and they reached in Arizona.

1832.	Second, the (false) complaint holding themselves out to be law enforcement officials turns out to qualify for Federal wire fraud but also Arizona RICO. Note: there is a lot of false complaining going on with the Imm defendants and the False accuser defendants – and it is simply another link tying them together and a matter for the Jury to decide.

1833.	Because the Imm defendants were successful in obtaining the property and business of Salloum's (the CICC website that they insist that is Dean's as well) and as a direct result of Jeffrey Larry's threatening June 29, 2020 letter, this also qualifies as Extortion and/or Robbery under the Federal and RICO statues.  Dean and Salloum told the Imm defendants that it was not Dean's website and they insisted it was as the requisite requirement to drag him into T-834-20 and the grounds for the urgent suspension, and to make Dean engage in more forced labor (Federal and Arizona RICO) acts. More about that later.

1834.	Of note, is that in the urgent motion, Dean clearly told the Imm defendants that they did not have jurisdiction over him to resign his membership based on their violations of CNCA and now herein revealed under 18 USC § 1962 et al.  See Volume I, pg 207, para 4 (above link). Dean's membership will be revoked (at the time of this writing it is pending) and Imm defendants will for certain splash that all over the Immigration Enterprise's website. In any event, they have committed extortion and/or robbery against Ms. Salloum (and Dean) because it was her website under the terms described above.

1835.	Schedule G, pages 3386 – 3393 is quite illuminative and shows how much the Imm defendants do not even want to talk about Dean at all. See the depositions of Nuha Nancy Salloum and Mary Kennedy on pages 1274-1406 and 1629-1739 respectively.  Dean was never deposed and Mr. Wall, the Imm Defendant (lawyer) do not want to talk about Dean at all, or as little as they can, for the same reasons that Mr. Wall and Ms. Michelle

Noonan (that other lawyer participating in this arm of the scheme to defraud) have included Dean just to keep him busy so he is distracted from the real threat in the United States.

1836.    Imm defendants used Ms. Kennedy - that was new to the Immigration Enterprise – and never knew Dean so she could pretend like she did not know facts (like as Deputy Registrar of ICCRC she did not know what Dean's status was as an ICCRC member; credible?). It was very similar to the scheme to defraud that Bissell perpetrated on the Callahan Court with the supposed Councilor helping her with her "memory." In the actual deposition, Salloum claims that Kennedy is taking her answers from the screen and it appears that others are feeding her answers in the deposition. Total scheme to defraud.

> https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1837.    Notice also that Ms. Kennedy attributes that CICC website to being Dean's website and that he received payments from the ICCRC membership, but Ms. Kennedy has no proof whatsoever (pages 1715 – 1718). Sound familiar with the False Accusers?

1838.    At this point the Imm defendants are well aware the there was a GoDaddy.com Glitch and that Ms. Salloum had put a disclaimer on the website stating essentially that CICC was not the regulator and still the Imm defendants unlawfully robbed the website from Ms. Salloum (and Dean if they insist that it was his property and the basis for the "urgent suspension" and "pending license revocation.")

1839.    Ms. Kennedy also committed perjury and Mr. Wall and Ms. Noonan suborned that perjury; keep in mind as well that all of this was done on Zoom servers for the internet conference, and it makes it all wire fraud too for all defendants. If the Congress of the United States wanted a carve out for Canadian Court matters being broadcast through United States infrastructure the Congress would have said so – and it did not. The Congress of the United States did however, on numerous occasions outlaw any scheme to defraud as shown amply demonstrated in 18 USC § 1961.

1840.    Now in Ms. Mary Kennedy's cross examination Q290 found on page 1,708 (Lines 20-) there is a question that asks [(See link) then question]:

> https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1841.    Q: Was there anything in the website at that time that you reviewed it to suggest that the website was under construction?

1842.    Ms. Kennedy answered: "No. There was information that was holding out as a regulatory body with new...that they had registration that was pending. It appeared as if the website was active and trying to establish themselves as a regulator and had many programs that a regulator in fact would have, although not specific to this organization."

1843.  Ms. Kennedy continued with this on page 1709 (Lines 89): "…but not at any time did I think that it was under construction…" except of course when she and her team at co-conspirators edited all out. In Amandeep S' affidavit all of these "under construction" items are all present.

1844.  And again, on page 1,709 (Line 23-25 and spilling onto page 1,710) Ms. Kennedy again stated that: "Commonly when you are on a website that is under construction, you would have "under construction" language, that is kind of templated language they would have on a website. They wouldn't really have information about the actual process…"  Uncommonly, a supposed Canadian federal regulator was tampering with evidence and then using it in Court proceedings – just like the False accusers.

1845.  Uncommonly as well, Dean was already in the USDC NJ and had filed a RICO action against *some of* the False Accusers, and since Ms. Kennedy was committing perjury through United States wires that gave the United States jurisdiction over Ms. Kennedy and the other defendants and co-conspirators in their scheme to defraud. It is like Bissell claiming that she was doing business plans in the bathtub et al with Dean; in Kennedy's case she is actually "appropriating" "Salloum's business and property to Dean so that the Imm defendants can turn around and say that Dean was attempting to appropriate the ICCRC membership fee.  Slick but "slick" is a scheme(s) to defraud.

1846.  The deputy Registrar of a supposed lawful Canadian Federal Regulator caught in perjury and Mr. Wall and Ms. Noonan, and their lawless firm are caught in Subornation of Perjury in multiple schemes to defraud. Again, note the team effort it took to crop all of the photos and edit out the "under construction." Mr. Wall would in many instances of the Kennedy state that Dean was irrelevant or some variation of that which begs the question why Dean was in the civil suit to begin with at all and that is because Imm defendants were providing cover and support to the False Accusers by keeping Dean busy and occupied.

1847.  It is almost like Ms. Kennedy and False Accuser Bissell are related as Dean has seen this type of "Spin Doctor mentality" before and again evidence fabrication is the way of both the Imm defendants and False accusers.  Again, this cropping out the "under development" is TEAM Fraud, Team Misrepresentation and Team Misconduct by ICCRC and is material and goes to the central heart of the issue of whether or not Salloum and Dean as defendants in T-834-20 were holding ourselves out as the regulator. A matter for the Jury to decide.

1848.  Also note that the individuals that Imm defendants choose to involve in this matter: Mary Kennedy and Daniel Orr and Amandeep Signhera and really everyone else that had touched the files in T-834-20 and the Urgent Motion to suspend.  With the exception of John Murray, Dean had never personally met any of them while on the board at ICCRC.  Hiding something are we?  That can now be fixed in USDC NJ.

1849.  That is why Ms. Kennedy could say so many "I don't knows" and so on and so forth and when it got so uncomfortable that Mr. Wall – knowingly protecting the Imm defendants would say: "don't answer the question" or something like that as covered in the deposition of Mary Kennedy pages 1631-1739, and has a

condensed list of all of the questions that she will not answer or does not know how to answer (remember Imm defendants picked her for the reason of plausible deniability) on pg 3386-3393.

1850.    How coincidental Kennedy, Fuhrer (Queen's University), Singhera, Bastrache all were brought to ICCRC or were connected to the ICCRC in May 2019.

1851.    Here is what the Imm defendants splashed up on their website that some 700 ICCRC members in the United States read or was intended to read.

https://www.dropbox.com/s/djdhvxaq82afyr6/Blue%20Button%20on%20ICCRC%20October%2020%20 2020.pdf?dl=0

1852.    It was precisely things like this that has affected Dean and the Saga Enterprise. In 2017 Peretz' institutional people Kim and Tom discussed with Peretz Dean's Immigration Issues and their false and fraudulent discipline complaints and scheme to defraud were the proximate reason and cause that the Saga Enterprise lost Kim and Tom (they were plugged into the entire institutional hedge fund industry). But it gets far worse than that.

1853.    Astoundingly, the Imm defendants actually admitted to (see para 1849):

   i.    Secured ca.goddy.com confirmation that the fraudulent website has been suspended for 90 days pending the outcome of legal proceedings.
   ii.   Corporate LinkedIn page successfully taken down.
   iii.  Urgent Motion to suspend the license of one of the individuals responsible who is a licensee of ICCRC, filed on July 24, 2020.
   iv.   Criminal complaint filed with the Competition Bureau on August 7, 2020.

1854.    Dealing with each of these notions. In (i) they try to use the term ca.godday.com but know that they were poking around in Arizona with GoDaddy.com and the website of CICC is/was cicc-lcic.com – a very American matter indeed – and Canadian Courts have zero jurisdiction in the United States as well as the fact that Canada has no wire fraud laws to take jurisdiction. In point (ii) the Immigration defendants astoundingly admit in writing – under terms of wire fraud blasted out to the world and back into the United States – that they were successful in hacking LinkedIn – a very Federal wire fraud matter and much more as well as a very California RICO matter as LinkedIn is located in California. Salloum AND Linkedin will testify that Salloum's Linkedin page the CICC was hacked and here the Imm defendants admit that they hacked Linkedin. Is that problem? There is so much here that it warrants its own section on the next edit.

1855.    See below for Federal and California RICO statues with the evidence the LinkedIn said Salloum's account was hacked – again Imm defendants contend that the CICC LinkedIn account was Dean's and perhaps this will help them re-think their notion of Dean's ownership of the CICC LinkedIn account and godaddy.com.

1856.    In fact, if it is available, GoDaddy.com and LinkedIn.com ought to be able to provide the IP addresses each and every time that a posting was made for the CICC GoDaddy.com and/or LinkedIn.com posting and it will show that it all originated from within Canada (as Dean has not been back to Canada since COVID – 19 erupted) border records will show.

1857.     Under (iii), the basis of the urgent suspension is generally because the alleged Dean tried to take money from ICCRC members, but Mary Kennedy has no evidence and they do not want to consider the possibility that there was a GoDaddy glitch. The truth does not matter to Imm defendants – false accusations do. Just like the False accusers.

1858.     With respect to Dean's LinkedIn Picture as the Founder and Managing Director of Saga Global Capital Management LLC – and the Imm defendants go no further than post the LinkedIn picture of Dean's and it is a matter for the Jury to decide it there are violations of 18 USC § 1512 and 18 USC § 1513.

1859.     As for (iv) above, the Imm defendants falsely accused Dean of a crime (like False accusers) but the Dean has neither heard a word from the Competition Bureau nor has he been able to get a copy of the complaint and it has been some 9 months since it was filed. Does this sound like a certain Police Report that took 4 years to secure in NJ and that was fraudulently concealed from Dean for nearly 4 years.  Moreover, Dean invokes 18 USC § 1512 and 18 USC § 1513 if this 'phantom' "complaint" suddenly pops up like the director of education's "complaint" months after the fact (see Act I).

1860.     Now, who was it that swallowed the hook so Dean can link the Imm defendants to the False accusers? None other the Phil Mooney's good friend and buddy Ms. Robin Jones mentioned in Act I. As promised and provided by the Imm defendants themselves, Mr. Mooney given a very "unwelcome welcome" from the State of Vermont that just adds to the pattern of racketeering that the Imm defendants are in a habit of breaking in the United States:

https://www.dropbox.com/s/b27qquri5faikku/Exhibit%2044%20--%20MooneyVermont.pdf?dl=0

1861.     Ms. Jones is the one who, in Volume 5, part II, held herself out as a "victim" after being interview by Phil Mooney.  Keep in mind that in all of these volumes that Phil Mooney wrote – he too does not want to publicly talk about "Dean," but he does go out of his ways in the shadows (See Sascha Kate Marskell) emails to attack – just like False accusers.

https://www.dropbox.com/sh/pxokm759k35r89k/AADvPv9tJVd9UgY-VkXjS1Cfa?dl=0

1862.     Now, Ms. Jones was the one that said that she found a "gem" that someone on her "team" she implies gave to her, made her aware of or any number of things. ICCRC would turn it around and say that Dean "sent it" the entire membership of ICCRC.

1863.     Isn't it a 'daisy' that False Accuser Robin Jones would use the word 'GEM,' and by the methods and tactics used by False Accusers it is yet another way to connect the False Accusers to the Imm defendants. Remember that Lisa Bissell was the CEO of Pure Grown Diamonds selling "lab grown diamonds" as being better than a "girl's best friend."

1864.     As Dean said, he heard a voice saying "don't erase those text messages," and with that kind of help on the team there is no way that the very thing that kicked of the "urgent suspension of Dean" and T-834-20

intersects with the word 'gem' is not connect to the "Happy Valentines' Day False Accuser et al." We'll see if the Jury agrees or not.

1865.    Here is that said email penned by Ms. Jones that was intended to find its way to Dean in the United States and it is predicate act of wire fraud on Ms. Jones' part, and each person that moved it along in the process of the scheme to defraud. This email was contained in the first affidavit of Mary Kennedy and this too constitutes wire fraud because it was sent to Dean in the United States by corrupt lawyers Gervais Wall and Michelle Noonan of the law (less) firm Deeth, Williams, and Wall LLP in Toronto, Canada. See the first affidavit of Mary Kennedy starting on pg 2078, where Imm defendants reiterate their wire fraud of Mr. Jeffrey Larry and his "law (less) firm" and his reach into the United States by wire unlawfully. There were two more affidavits of Mary Kennedy and those will be noted in the RICO Civil Case Information Statement. Deeth, Williams, and Wall LLP, Gervais Wall, and Michelle Noonan are full partners in the scheme(s) to defraud Dean in the United States.

   https://www.dropbox.com/s/idgewzwpi40mh11/November%2017%202020%20Federal%20Court%20Submission.pdf?dl=0

1866.    On the next page 2081, Ms. Jones writes an email (June 25, 2020 10:31 PM) that was intended to find its way to Dean in the United States as well as the email is meant to and actually does (aside from the conflict-of-interest issues with the Judge) deceive a Federal Canadian Judge and this is the equivalent to "Fraud on the Court" in the United States. Since Imm defendants already knew that Dean was in United States District Court New Jersey before they launched their matter this is a further problem for them too for all the reasons contained herein.

1867.    See how smart Ms. Jones and the Imm defendants think they are? In the next paragraph it will be shown that Ms. Jones statement below was designed to be the impetus to drag Dean into Court:

   "This is VERY confusing, particularly to the new members of my group, so I'll bet there will be a lot of people left completely bamboozled by this."

1868.    Ms. Jones, trying to play the "victim" again, quotes the language that the Imm defendants try to use in their legal document filed in T-834-20. For now, let's turn to the actual letter in question on page 2083. This letter was supposed to be on lockdown on the GoDaddy.com site and was the main reason why Imm defendants dragged Dean into T-834-20. See below in para 1869 for link.

1869.    But there is a problem with this letter and that is that ICCRC says that Dean "sent" this letter to the ICCRC members but despite Dean's best efforts, ICCRC has not been able to produce even one email from any member that received this letter from Dean via email or Canada Post and/or USPS. Dean on the other hand has hundreds and likely thousands of predicate acts of wire/mail fraud against the Imm defendants because he has the emails that contain things like the dates, times, to, from, and the message itself in actual emails and letters with post marks.

375

1870.    This letter that ICCRC makes a huge deal over – and in fact that the Attorney General let the case in T-1033-20 go sine die because Ms. Salloum changed the disclaimer (see above) and apparently that was enough for the Attorney General to essentially wash her hands of the matter and say (again, pending receipt of transcripts) that essentially Dean did nothing wrong. Why then are the Imm defendants insisting Dean is doing wrong when the Attorney General herself has not lifted one finger against Dean to date?

1871.    On page 60 of the ICCRC's statement of claim this same letter appears:

https://www.dropbox.com/s/jd280u3n38s53bb/ICCRC%20Statement%20of%20Claim.pdf?dl=0

1872.    Now turn to ICCRC's Statement of Claim para 34 where they FURTHER misleading statement. "On June 25, 2020, **Mr. Dean sent a letter to members of the plaintiff** under the letterhead of "The College of Immigration and Citizenship Corp." A copy of that letter is attached at Schedule D."

1873.    CONSPICUOUSLY ABSENT FROM ANY OF ICCRC'S DOCUMENTS IS AN EMAIL OR POST MARKED LETTER FROM DEAN TO ANY MEMBER YET THE IMMIGRATION DEFENDANTS ARE FRAUDULENTLY REPRESENTING TO THE COURT AND INDEED TO THE ENTIRE ICCRC MEMBERSHIP WORLDWIDE THAT IN FACT DEAN SENT THIS LETTER TO THE MEMBERS. DEAN DID NOT.   **This is a scheme to defraud and this message was also sent to the 700 plus members in the United States that relied on it to the detriment of Dean.**

1874.    Dean neither used the facilities of interstate commerce to send the letter not the USPS/Canada Post system.  Dean puts the Imm defendants to the proof to show even one of these items.  Moreover, by GoDaddy.com having a glitch is not Dean's fault and Dean did not put the GoDaddy.com glitch in motion. THIS LETTER WAS EMBEEDED IN THE CICC website and would only be released if the Minister gave the go ahead to Salloum's CICC.

1875.    What Mary Kennedy, Gervais Wall, Michelle Noonan, and their "law firm," did in T-834-20 where ICCRC produced affidavits and one fabricated and edited evidence and the other did not.  As well, one said that CICC was not holding itself out as the regulator and one did. Again, the same methods and tactics of the False accusers and Imm defendants are being used and they are one of the same for RICO purposes.

1876.    In Volume IV of the link (see below) on page 2430, there is a question asked by a Canadian Senator about how s/he was concerned with how broad the powers would be of [the Imm defendants for the purposes of this complaint – see exact quote for entire context] and the notion is that once Imm defendants get more power for sure they will wield it into the United States. On page 2434 Mr. Murray (see below for a discussion on Mr. Murray) admits that ICCRC is a "club," or an "Association" and Dean agrees. The Imm defendants are an Association-In-Fact and they admit that they have no power under the CNCA, which in turn really points to their violations of 18 USC § 1962.

1877.    So, what makes the Imm defendants think that the instant that Dean resigned his membership from ICCRC that they could reach into the United States and pull him back into an "urgent motion?"  The United

States outlawed any form of slavery long ago and this is violation of 18 USC § 1589 for not only T-834-20 but also for the internal ICCRC motion where they admit they are powerless under the CNCA and are still operating under the CNCA at the time of this filing and in fact are not the "new college."

https://www.dropbox.com/sh/o14715mxm3d4u1i/AACazaKCqMFRff-KW8WODBfwa?dl=0

1878.    As another aside in the link above are the notes of Ms. Salloum and Dean and Ms. Salloum believes that her computer was "hacked" by the Imm defendants; here is a copy of Best Buy's 'geek squad' that is mentioning Askash Mistry – one of the makers of the affidavits:

https://www.dropbox.com/s/szozyj1ya56iwzk/Aakash%20Mistry%20Evidenc%20of%20Hacking%20ussingGeekSquad.pdf?dl=0

1879.    As for John Murray, the CEO of ICCRC he used to be the Registrar at CPA Ontario. When Merv Hillier (Act I, "No Private third party") used Dean's discipline complaint against Dean to file his own discipline complaint, Dean turned to CPA Ontario, and filed a complaint against Hillier.

1880.    The grave man of the offense as far as the United States is concerned is that there were four attempts to cover up the true financial statements of ICCRC, and these were all broadcast into the United States.  There was conspiracy to cover it up.  Jeffrey Larry will say that has already been dealt with in the Watto matter, but conspiracy is a separate offense and was never dealt with and when some 400 ICCRC members received this information in the United Stats it became wire fraud.

1881.    In any event, Dean's complaint(s) at CPA Ontario – after being threatened by Mr. Hillier in writing – were dismissed and in turn Quid Pro Quo was on the menu as Mr. John Murray – yet another lawyer – took the position at ICCRC as president and CEO.  Murray of course was the one that signed Dean's complaints to CPA Ontario and was the buddy of Merv Hillier, who also used to work at CPA Ontario. Another blatant conflict of interest issue.

1882.    More currently, In T-834-20 in an attempt to fast track all the litigation and for the court to 'rely' on, Murray issued an Undertaking so the court could skip facts that were trying to be buried and glossed over (Sounds like Flanagan with 'suspect text messages.' In the United States, whenever the 42 USC § 1983 and 42 USC § 1985 are used, heightened judicial scrutiny is invoked and there will be no "undertaking" short cuts as ordered by SCOTUS. See John Murray's Undertaking that Dean now applies to this matter as well.

https://www.dropbox.com/s/of47eyxnqd8k0a8/6%20%20John%20Murray%20undertaking%20July%202028%202020.pdf?dl=0

1883.    This undertaking transfers to the United States for all defendants. This is also tactic used by the False accuser on August 17, 2017 when False Accuser Flanagan wanted to skip getting the text messages and have the TRO/FRO hearing right there and then.

1884.    CPA Ontario, Theresa Tonelli, Elizabeth Cowie are all Imm defendants.  More facts will come out in discovery as well as more defendants will likely be added for their part in the scheme to defraud as well.

1885.     At the September 19, 2019 Special General Meeting, John Burke (ICCRC then Chair) and John Murray can be heard – when they thought the microphone was turned off – and said "I can't believe that we are doing this to them." The Imm defendants refuse to give a copy of this Special General Meeting that they blasted out in a live feed to the entire membership. It is further evidence of a violation of 18 USC § 1962 et al.

1886.     With respect to the insurance matter in Act I, the Insurance carrier obviously was is in contact with John Murray and ICCRC and other Imm defendants. Ms. Salloum had a conversation with the Insurance carrier that Dean was not part of nor knew about until after the fact, and the insurance carrier ran to ICCRC. There is no reason to believe that the insurance carrier did not do the same thing when Dean was on the board and tried to invoke his director insurance that was denied wholesale for a fake board trial not provided for under CNCA. See page 2104.

1887.     With respect Insurance  an "[A]aggrieved injured parties may be awarded punitive damages if a jury finds clear and convincing evidence that the insurer is guilty of "oppression, fraud or malice." Nev. Rev. Stat. §42.005(1) (1995). Nevada's punitive damages statute places certain limits on those damages—three times the amount of compensatory damages if they are more than $100,000, and $300,000 if compensatories are less than $100,000….But the same law adds that these limits do not apply to claims against "[a]n insurer who acts in bad faith regarding its obligations to provide insurance coverage.…" Accordingly, plaintiffs seeking relief under Nevada law may be eligible for damages exceeding the treble damages available under RICO.

1888.     Dean clearly is seeking for damages exceeding the Insurance Companies limitation.

1889.     At or around this time in April 2019, the Imm defendants began to have discussions with the Queen's University Law Faculty and the Private Citizen Ms. Janet Fuhrer (also the Federal Judge in T-834-20) happened to be this same person according to documents Ms. Salloum has provided.

1890.     Private Citizen Janet Fuhrer did contract with the Imm defendants and did benefit or was about to benefit from the scheme to defraud the membership of ICCRC due to the CNCA and 18 USC § 1962 violations. Of course, on November 20, 2020 at the hearing for T-834-20 none of this was disclosed with respect to the conflict of interest between Private Citizen Fuhrer and ICCRC and Ms. Salloum will be a witness to these events and give details and documents.

1891.     Likewise, Katrina Stephenson, Brian Smith, Marco Mendecino, and Ahmed Hussein – all high up in the IRCC were the ones given all kinds of help and cover to the Imm defendants – knowing that they were the ones "flouting federal laws" with respect to the CNCA and helping the Imm defendants rip off Ms. Salloum's IP and property so they could take it themselves and then turn around and punish Mr. Salloum (and Dean) for their thievery. If not but for the help of Stephenson, Smith, Mendecino and Hussein, the Imm defendants would likely not dared to do what they have done by reaching into the United States and destroying the Saga Enterprise and the violation of Dean's US Federally guaranteed Civil Rights.

1892.       These individuals are the ones that "forgot" that another College had been established – this time for IP and that goes counter to what happened in Federal Court – just to put a reach emphasis at the corruption frothing over the side of the Immigration-defendants'-corruption-cup-'floweth' over. There was a Canadian IP College established by the same government to prevent precisely what the IRCC (through ICCRC) was doing to Salloum and Dean in T-834-20:

https://www.dropbox.com/s/kz6bc5yda8cmvni/IP%20experts%20say%20Ottawa%E2%80%99s%20prop osed%20regulations%20could%20harm%20their%20business%20and%20drive%20up%20patent%20cos ts%20for%20domestic%20innovators%20-%20The%20Globe%20and%20Mail.pdf?dl=0

1893.       To the Imm defendants, it is better to "flout" Canadian Federal Laws rather than come up with their own ideas in the first place, properly register the company documents, and avoid this chaos involving CICC.  Ms. Salloum will have plenty to say about this video.  Go to time: 11:30:01 to 11:44:01. It is a good time to ask the question how the government came up with the name and did not secure the proper incorporation documents like Salloum did that are in the links above and below.

https://senparlvu.parl.gc.ca/Harmony/en/PowerBrowser/PowerBrowserV2?fk=526693&globalStreamId =3

1894.       This is precisely what the False Accusers have done as well.  They have attempted to extort et al and then they want to get paid off for destroying the Saga Enterprise and violate Dean's US Federal Civil Rights under terms of conspiracy with the False accusers.

1895.       At issue is a change stemming from the Trudeau government's IP strategy introduced in 2018 to address longstanding concerns that domestic innovators lacked savvy when it came to protecting their ideas. The government pledged to establish a Canadian College of Patent Agents and Trademark Agents, which would take over regulation of the profession from Ottawa. Professionals had asked for their own self-regulating body for years. IP experts say Ottawa's proposed regulations could harm their business and drive-up patent costs for domestic innovators - The Globe and Mail (Canada's reputational equivalent to the Wall Street Journal).

1896.       When the government finally posted draft regulations to govern the college in the Canada Gazette members of the profession were alarmed to read that anyone applying for a patent agent license had to reside in Canada, a rule that didn't exist before.

1897.       Jason Hynes, a partner with IP law firm Bereskin & Parr in Waterloo, said, "I really do believe the government has heard us on this issue and that they will correct this. I don't think anyone was actively intending to upset an 80-year-old tradition. …The government is well aware of the potential consequences." This is the same law firm where Scott Mackendrick attacked Dean, Salloum and CICC.

1898.       The idea of creating another College by the Canadian Government is to protect the applicants and innovators of ideas to be patented and registered under the IP process in Canada. What is unique about this new College is similar to the College of CICC to protect Immigration consumers. However, ICCRC sued Dean,

Salloum and CICC because Salloum and CICC were trying to protect their own innovation ideas and proposal sand own IP intellectual property.

1899.      Note in this legal proceeding, and because of absolute litigation privilege, and that there are no copyright on pleadings in Federal Court, Dean acknowledges that he has taken from here, there, and everywhere excerpts of case law regarding RICO and other matters contained herein.  But that is not IP infringement as it is all inside of a legal proceeding.

1900.      Shortly after the decision on December 24, 2020 in T-834-20, one of the former associates of Ms. Fuhrer Mr. Scott Mackendrick entered into the Imm defendants' 'association-in-fact.' Ms. Salloum had interviewed Scott Mackendrick of the firm  Bereskin & Parr and his colleague before the December 24, 2020 judgement and then they took it upon themselves to go and broadcast to the world the Judgement of December 24, 2020 (Yes, Christmas Eve) a few weeks later in numerous posting in T-834-20 that there was an injunction against Ms. Salloum (and defendants – which included Dean) for using her own company and IP with respect to CICC and so on and so forth.

1901.      The other purpose of Mackendrick and Winegust's participation in the scheme was to spread all of this within the Canadian Bar Association chat rooms and therefore it makes it nearly impossible for Salloum to retain a lawyer for CICC, Salloum and Dean in T-834-20 going forward – it was a sub scheme to defraud because so that CICC could not get a lawyer and in turn would lose the overall lawsuit in T-834-20.

1902.      Imm defendants also know that they will lose in T-834-20 if but not for the fact that if Salloum cannot get (or pay) for a lawyer they will win – and that is not Justice. Unfortunately, for the Immigration defendants when they broadcast this into the United States where it was to Dean's detriment it became a scheme to defraud via the wires.

1903.      Keep in mind that Salloum contacted Mackendrick to be her, Dean, and CICC's lawyer prior to the December 24, 2020 judgment.   There was a big push as well not to let Ms. Salloum represent CICC and that was taken from her in bizarre set of circumstances from the case management Judge – that Dean felt was unwarranted at best.

1904.      Is it any coincidence that Mr. Mackendrick was also a member to the faculty of law and the successor Dean's Council at the Queen's University Law faculty?  Of course not.  That is why Queen's University is also a defendant in these matters. When Ms. Salloum got wind of all of this she sent Mr. Mackendrick and Ms. Winegust a very unpleasant demand and they complied – nevertheless all of these postings qualify as wire fraud and the damage is done and Mackendrick and Winegust had some kind of idea of what was going on from Private Citizen Fuhrer.  Each one of these postings by Mackendrick, Winegust, and their firm Bereskin & Parr are predicate acts of wire fraud as substantial steps in the scheme to defraud Dean and Salloum and these are were Salloum, Dean, and CICC's own lawyer the instant Salloum consulted with them over the T-834-20 issue.

https://www.dropbox.com/sh/rzzha5j0oueq4bx/AACbFY9o8sqXy2cJ3t6DF0hla?dl=0

1905.     Here is Mr. Mackendrick stating that without "admitting or denying...." they took down the posts.  Mr. Macdendrick does not need to admit or deny it.  It is in the above link what they did and there is a connection to Private Citizen Fuhrer at Queen's University.  Both Mackendrick and Fuhrer were from the same class of 1985 and Mr. Mackendrick became the Chair of ICIP (Intellectual Property Institute of Canada) which Private Citizen Fuhrer was the Chair before being appointed a Canadian Federal Judge.  They are buddies.

https://www.dropbox.com/s/ly0hsjeoa73x16b/Scott%20M.pdf?dl=0

1906.     Here Mr. Mackendrick's bio that links him to Queen's University and to Private Citizen Fuhrer at the ICIP.

https://www.dropbox.com/sh/lar984rjmj4gozh/AAC0UagKyvPqGuYLr-TgMMzSa?dl=0

1907.     In T-834-20, Judge Fuhrer stated that the only evidence that was going to be allowed into the hearing was the evidence that was before her now.  That changed a few days later when the OIC was issued on November 25, 2020 and back dated and then Dean tendered his resignation as CEO/Managing Director of CICC, Volume I, pg 200.  Notice that Dean included a copy of the OIC that had the April 31, 2017 date on it circled. Dean knew then that the Government of Canada was interfering in a Federal Court case and the Federal Court allowed it. Better to evacuate back to the United States for cover and Dean resigned as CEO and Managing Director and the Imm defendants' completed their extortion et al under color of official right.

https://www.dropbox.com/sh/o14715mxm3d4u1i/AACazaKCqMFRff-KW8WODBfwa?dl=0

1908.     The corporate LinkedIn account was also hacked and the Imm defendants admit to it on the Immigration Enterprise's website (wire fraud) and here are the conversations from LinkedIn that state the LinkedIn account was hacked.  Once again, Imm defendants insist that Dean was an owner of the CICC LinkedIn account, and this is yet another basis for Imm defendants to suspend/revoke Dean's immigration license. California likely does not take kindly to anyone hacking into LinkedIn and who knows who else this is going to disturb in California.

**ARIZONA RICO**

1909.     Arizona's Racketeer Influenced and Corrupt Organization (RICO) statutes cover most criminal acts that are profit-oriented. Taking the CICC website qualifies as profit oriented.

1910.     RICO statutes are used to prosecute activities of organized criminals who extort money from legitimate individuals or businesses by violence or other forms of threats or intimidation or conducting illegal enterprises. RICO statutes provide prosecutors with options that are generally not available under other types of criminal statutes, such as forfeitures, including the ability to confiscate the fruits of criminal activity from those convicted of racketeering offenses. Racketeering is any act that is chargeable or indictable under the laws of the state, punishable by imprisonment for more than a year and includes such acts as homicide, robbery or extortion if committed for financial gain (A.R.S. § 13-2301). Statute also outlines what is considered illegal control of an enterprise through racketeering (A.R.S. § 13-2312) and provides a method for the state to seek civil

remedies (A.R.S. § 13-2314). Remedies include the payment of all costs and expenses for the prosecution and investigation of a racketeering offense and payment to the state or county general fund equal to any profit received through racketeering.

1911.    Here the Immigration defendants are qualified candidates for Arizona RICO.

1912.    A person commits conspiracy when they act with the intention to promote or assist in an illegal offense and: 1) agrees with at least one person to engage in conduct resulting in action to further the offense (A.R.S. § 13-1003); and 2) one of the parties commits an overt act in furtherance of the offense. However, statute stipulates an overt act is not always required when conspirators work together to commit a felony act such as arson or first-degree burglary.

1913.    For the purposes of this section these are the relevant elements and defined. "Combination" means persons who collaborate in carrying on or furthering the activities or purposes of a criminal syndicate even though such persons may not know each other's identity, membership in the combination changes from time to time or one or more members may stand in a wholesaler-retailer or other arm's length relationship with others as to activities or dealings between or among themselves in an illicit operation.

1914.    Without question Ms. Basatrache worked in concert with Mr. Huynh and the rest of the Imm defendants. They all had their own small part to play either directly, indirectly, or under terms of conspiracy.

1915.    "Communication service provider" has the same meaning prescribed in § 13-3001. Clearly, Basatrache used email from Canada into the United States and perhaps even phoned into the United States to contact GoDaddy.com. Discovery will prove out more. "Criminal syndicate" means any combination of persons or enterprises engaging, or having the purpose of engaging, on a continuing basis in conduct that violates any one or more provisions of any felony statute of this state. Without question there are dozens of predicate acts that have been committed in the United States at a federal level and in the other states mentioned herein and they are equivalent or close to Arizona law. The acts that were specifically committed in Arizona are coming up.

1916.    "Material support or resources" includes money or other financial securities, financial services, lodging, sustenance, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, disguises, and other physical assets but does not include medical assistance, legal assistance or religious materials. Without question, the Imm defendants have used the vast resources of the Immigration Enterprise to perpetrate their crimes.

1917.    "Enterprise" means any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity. The Imm defendants have been defined as the Immigration Association-In-Fact and Dean reincorporates that definition from the Introduction and Act I herein into Act III.

382

1918.     "Racketeering" means any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred and, if the act occurred in a state or country other than this state, that would be chargeable or indictable under the laws of this state if the act had occurred in this state, and that would be punishable by imprisonment for more than one year under the laws of this state and, if the act occurred in a state or country other than this state, under the laws of the state or country in which the act occurred, regardless of whether the act is charged or indicted, and the act involves either (Plaintiff(s)) edits out the irrelevant portions to this instance case with respect to Arizona RICO and keeps the relevant ones and makes a brief comment in italics):

1919.     (b)  Any of the following acts if committed for financial gain:

1920.     (ii)  Robbery – the Imm defendants took Salloum's website CICC and they state that it was Dean's as well and therefore using their standard it is robbery.

1921.     (v)  Theft – in the event that it is not considered robbery, then theft will also certainly qualify for all defendants.

1922.     (ix)  Extortion – Mr. Larry's letter to Nevada transfers to Arizona as well applies to all defendants as Mr. Larry's letter was for the purpose to invoke fear and then when Basatrache obtained the CICC website it became extortion complete.

1923.     (xiii)  Participating in a criminal syndicate. – without question and with all of the things detailed herein in all acts there is a criminal syndicate where each helps the other defendant in small but effective ways.

1924.     (xiv)  Obstructing or hindering criminal investigations or prosecutions – Ms. Basatrache et al obstructed and hindered a criminal investigation by beginning one in Arizona by holding out that there was actually one initiated in Canada and pending and it appears that there was not. There is not even a complaint given to Dean and he has asked for it from Bastarache and the Canadian Competition Bureau and they will not give anything. The more important point is that the Canadian Competition Bureau did not even contact Dean nor Salloum once.

1925.     (xx)  A scheme or artifice to defraud – with out question Basatrache et al have engaged in a scheme to defraud by working with the False Accusers, abusing the legal system, and making Dean enter into 'forced labor," with their threats.

1926.     (xxiv)  Restraint of trade or commerce in violation of § 34-252 – the total aggregate actions of the defendants has resulted in the destruction of the Saga Enterprise that would have dwarfed their puny regulator with the way Dean trades stocks.

1927.     (xxvi)  Money laundering-by definition any Federal Predicate Act of racketeering is money laundering and therefore all defendants are culpable of Arizona money laundering.

1928.     (xxviii)  Counterfeiting marks as proscribed in §  44-1453 – Again here CICC was 100% the property of Ms. Salloum's and Ms. Salloum may file criminal charges herself in the state of Arizona.  If ICCRC insists that it is Dean's property then Dean may follow suit. Dean believes that Ms. Salloum also is a holder of USA Social Security card for the past 33 years.

1929.     (xxxiii)  Trafficking of persons for forced labor or services - as above. Dean has been made to deal with numerous legal battles in numerous jurisdictions all at the same time to fight off the criminal syndicate Imm defendants running the Immigration Enterprise.

1930.     Daniel Bastarache and Mr. Huynh under Arizona Statute 13-2411. Impersonating a peace officer; classification; definition

> A. A person commits impersonating a peace officer if the person, without lawful authority, pretends to be a peace officer and engages in any conduct with the intent to induce another to submit to the person's pretended authority or to rely on the person's pretended acts.
>
> B. It is not a defense to a prosecution under this section that the law enforcement agency the person pretended to represent did not in fact exist or that the law enforcement agency the person pretended to represent did not in fact possess the authority claimed for it.
>
> C. Impersonating a peace officer is a class 6 felony, except that impersonating a peace officer during the commission of any of the following felonies is a class 4 felony:

1931.     Theft by extortion also applies to Arizona RICO and again, like New Jersey – which the False Accusers violated and have the Imm defendants violated in Arizona are again similar or same crimes and another link to the Imm defendants and the False Accusers.  13-1804. Theft by extortion; classification:

> A. A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the future any of the following:
>
> 4. Engage in other conduct constituting an offense.
>
> 5. Accuse anyone of a crime or bring criminal charges against anyone.
>
> 6. Expose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt, or ridicule or to impair the person's credit or business.
>
> 8. Cause anyone to part with any property.
>
> C. Theft by extortion as defined in subsection A, paragraph 1 is a class 2 felony.    Otherwise, theft by extortion is a class 4 felony.

1932.     Without question the defendants have been engaging in all kinds of activity constituting an offense as outline herein.

1933.     The Imm defendants used the Imm Enterprise to accuse Dean of criminality and say they filed a criminal complaint in Canada that was and still is a 'nothing burger.' No one ever called Salloum, Dean, nor CICC – but to

godaddy.com they fraudulently misrepresented something entirely different.  ICCRC asserted on their website that Salloum and Dean have committed "fraudulent activities." They ripped off a woman's stuff, made her have a stroke, and then called her fraudulent. They caused Ms. Salloum (and Dean if they still insist CICC and the website was Dean's) under terms of Theft by Extortion to have a stroke. We'll see what they think of that in Tombstone, Arizona – and see if prosecutors down there think it is 'cute' or not.

1934.        As well, the Imm defendants have caused a violation of 29 U.S.C. § 186 (also frequently identified as § 302 of the Taft-Hartley Act) provides, in relevant part: "It shall be unlawful for any employer or association of employers...to pay, led, or deliver, or agree to pay, lend, or deliver, any money or thing of value to any representative of any of his employees who are employed in an industry affecting commerce; or to any labor organization or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer...."

1935.        The further gravamen of the offense is simply the misuse of interstate communication facilities to execute "any scheme or artifice to defraud." 18 U.S.C. § 1343; See United States v. States, 488 F.2d 761, 767 (8th Cir.  1973). The prosecution condones no immoral bargain;  it  concerns  itself with  neither  the  victim's loss  nor  the  defendant's gain.

1936.        By Imm defendants financing and/or paying the False Accusers to do that they did to Dean et al it qualifies as a violation of the Taft-Hartley Act and indeed another Federal RICO violation.

1937.        The principal prohibitions relating to criminal copyright infringement are set forth at 17 U.S.C. § 506(a) and 18 U.S.C. § 2319. Titles 17 and 18 also contain a number of other provisions that make illegal certain practices which are inconsistent with Congress' copyright protection scheme. What is so shameful and disturbing is that all of these lawyers in Canada knew about US IP laws and they just thought that Salloum and Dean could not figure it out.

1938.        In the past several years, these criminal sanctions have been revised significantly, and the penalties for criminal infringement of copyrights have been increased. Under the Copyright Felony Act of 1992, Pub. L. No. 102-561, 106 Stat. 4233 (1992), infringement of a copyrighted work may now constitute a felony under federal law, depending on the number of infringing copies reproduced or distributed in a 180-day period, and their retail value. See 18 U.S.C. § 2319. This chapter should be read (and prosecutions should be conducted) with due consideration to other criminal and civil laws protecting intellectual property owners and the public from violations, including, for example, the trademark counterfeiting statute. See 18 U.S.C. § 2320; JM 9-68.000 (Trademark Counterfeiting).

1939.        Should the Imm defendants continue to insist (or not insist) that Ms. Salloum's IP is Dean's IP then Dean will amend his complaint accordingly for the date of service – the damage is already done up to the date of service and that is locked in.

1940.    For now, consider that the courts interpreting § 2314 have never required, of course, that the items stolen and transported remain in entirely unaltered form. See, e.g., United States v. Moore, 571 F.2d 154, 158 (CA3) (counterfeit printed Ticketron tickets "the same" as stolen blanks from which they were printed), cert. denied, 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978). Nor does it matter that the item owes a major portion of its value to an intangible component. But these cases and others prosecuted under § 2314 have always involved physical "goods, wares, [or] merchandise" that have themselves been "stolen, converted or **taken by fraud."** This basic element comports with the common-sense meaning of the statutory language: by requiring that the "goods, wares, [or] merchandise" be "the same" as those "stolen, converted or taken by fraud," the provision seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods. In contrast, the Government's theory here would make theft, conversion, or **fraud equivalent to wrongful appropriation of statutorily protected rights in copyright.** The copyright owner, however, holds no ordinary chattel. **A copyright, like other intellectual property, comprises a series of carefully defined and carefully delimited interests to which the law affords correspondingly exact protections....**

1941.    **Salloum has her bid – where is the Immigration defendants IP and work?**

1942.    It follows that interference with copyright does not easily equate with theft, conversion, or fraud. The Copyright Act even employs a separate term of art to define one who misappropriates a copyright: "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.' [17 U.S.C.J § 50l(a)." So'!)l Corp., supra, 464 U.S., at 433, 104 S.Ct., at 784. There is no dispute in this case that Dowling's unauthorized inclusion on his bootleg albums of performances of copyrighted compositions constituted infringement of those copyrights. It is less clear, however, that the taking that occurs when an infringer arrogates the use of another's protected work comfortably fits the terms associated with physical removal employed by § 2314. The infringer invades a statutorily defined province guaranteed to the copyright holder alone. But he does not assume physical control over the copyright; nor does he wholly deprive its owner of its use. While one may colloquially link infringement with some general notion of wrongful appropriation, infringement plainly implicates a more complex set of property interests than does run-of-the mill theft, conversion, or fraud. As a result, it fits but awkwardly with the language Congress chose-- "stolen, converted or taken by fraud"-to describe the sorts of goods whose interstate shipment § 2314 makes criminal.

1943.    The lawyers in T-834-20 tried to perpetrate this scheme onto Dean and Salloum knowing the above laws existed and it shows their malice and intent and scheme to defraud Ms. Salloum (and Dean's too if they insist) and further violation of 18 USC § 2314 is a RICO Predicate Act. It is the same thing that False Accusers are trying

to do to Dean and Klassen and their extortion schemes by demanding $875,000 (then $180,000 of the Saga Enterprise after grievously injuring it) and then likely trying to convert that into equity through abuse of legal process et al  What happened in T-834-20 is even worse from the perspective that Imm defendants just flat out tried to run over Ms. Salloum and dragged Dean into it – by stealing her property, business, and IP by utilizing technical rules in the Court and because they could outspend Salloum in Court. Conflicts of interests helped quite a bit because when Mr. Wall brought up the OIC to the Judge he actually winked at her Ms. Salloum will testify.  There is probably a video recording of it.

1944.        Note 1: Not a good idea to "wink" at a USDC Judge.  Note 2: This Private RICO Prosecutor(s) will not be outspent.

1945.        Moreover, since the Imm defendants reached into the United States and insisted the Intellectual property was in fact Dean's IP, then 18 U.S. Code § 2318 - Trafficking in counterfeit labels, illicit labels, or counterfeit documentation or packaging also applies, and this will be further developed in the Amended Complaint depending on the (revised) positions of the Imm defendants and/or Ms. Salloum. For now, it is sufficient to simply quote the law and pertinent parts (irrelevant (items) – as Mr. Wall likes to say – have been edited out).

1946.        18 USC § 2318 states that:

> (1) [1] Whoever, in any of the circumstances described in subsection (c), knowingly traffics in—
>
>> (A) a counterfeit label or illicit label affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany—**documentation** or packaging; or
>
> (4) the term "illicit label" means a genuine certificate, licensing document, registration card, or similar labeling component—
>
>> (B) **that is, without the authorization of the copyright owner**—
>> (i) distributed or intended for distribution not in connection with the copy, phonorecord, or work of visual art to which such labeling component was intended to be affixed by the respective copyright owner; or
>> (c)The circumstances referred to in subsection (a) of this section are—
>
> (1) the offense is committed within the special maritime and territorial jurisdiction of the United States; or within the special aircraft jurisdiction of the United States (as defined in section 46501 of title 49);
>
> **(2) the mail or a facility of interstate or foreign commerce is used or intended to be used in the commission of the offense.**
>
>> (G) copyrighted documentation or packaging; or
> (2) Discretion of court.—In any action brought under paragraph (1), the court—
>> (A) may grant 1 or more temporary or permanent injunctions on such terms as the court determines to be reasonable to prevent or restrain a violation of subsection (a);
>> (B) at any time while the action is pending, may order the impounding, on such terms as the court determines to be reasonable, of any article that is in the custody or control of

the alleged violator and that the court has reasonable cause to believe was involved in a violation of subsection (a); and

1947.  There are of course more provisions to this Statute that Dean and/or Salloum can invoke that will be developed in the Amended Compliant as well as 18 U.S. Code § 2319 - Criminal infringement of a copyright for the same reasons set forth above. It is of note that both §2318 & §2319 are RICO predicate offenses.

1948.  It is of note that the lawyers are the ones that structured all of these transactions for the Imm Defendants, and they are not immune from liability per, for instance. Lawyers are not immune in any way from potential racketeering liability, and the Eighth Circuit's decision in Handeem v. Lemaire 112 F.3d 1339 (8th Cir. 1997) vividly illustrates this and should not:

> "...be mistaken for an absolute edict that an attorney who associates with an enterprise can never be liable under RICO. An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. Neither Reves nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title "attorney at law" is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court [in Reves]."

1949.  The Eighth Circuit in Handeem made other significant observations relevant to structuring the enterprise allegations of a RICO complaint. As the Handeem decision stressed, any alleged RICO enterprise "must be marked by a common purpose," (Id. at 1351) must have "continuity of structure and personnel" (Id. at 1352) and must have "an ascertainable structure."  Id. The overarching framework for the successfully pleaded enterprise allegation in Handeem was the rule, first enunciated by the Supreme Court in its earliest RICO decision, United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2523, 2529, 69 L. Ed. 2d 246 (1981).that the enterprise cannot be the pattern of racketeering activity; instead, the enterprise must be "an entity separate and apart from the pattern of racketeering in which it engages."

1950.  Well, not only is there a pattern of racketeering but there are the same patterns of racketeering involving two different enterprises. In turn and *obviously* all of these elements above are present and these lawyers have each had their part in the structuring of these transactions and propagating the Immigration Enterprise and False Accuser Enterprise forward.

1951.  A conspiracy involves (1) an agreement between at least two people to commit a crime and (2) the agreement of the defendant to further that endeavor (Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)). Under basic principles of conspiracy theory, the named defendant need not agree to be the one to commit the predicate acts, nor must the defendant "participate in the operation or management of [the] enterprise in order to be liable for conspiracy" (United States v. Wilson, 605 F.3d 985, 1019 (D.C. Cir. 2012). Instead, a defendant can be liable if she/he "adopt[s] the goal of furthering or facilitating the criminal endeavor" (Salinas, 522 U.S. at 65, 118 S. Ct. 469).

1952.    Plaintiff(s) state and all injuries to their business and property derived directly from all defendants'

'ac[t][s] of tortious character,' see 4 Restatement (Second) of Torts § 876).

1953.    What's more the Federal Conspiracy laws on this subject are further *draconian* and that is what is

outlined above (and below) - but it is just the right prescript for the behavior of all defendants.  It is a perverse

situation where all Imm defendants have to stand by the False Accusers and/or vice versa, and their numerous

different documented stories on the same subject matter and time frame using the same methods, tactics, and

means to commit their crimes - while at the same time attempting to explain why they had no part in the

activities of the other and their innocence while at the same time *attempting* to coordinate it all to the Cedar

Grove defendants and explaining to them why they are defendants at all in this gigantic scheme to defraud.

**WHEN GROUPS OF INDIVIDUALS GET TOGETHER UNDER CORRUPT TERMS TO PERVERT THE LAW THEY CAN EXPECT A PERVERSE RESULT SUCH AS WHAT IS IN THIS CIVIL RICO COMPLAINT**

"The law makes several exceptions for conspiracy because of its unusual nature. Because many united in crime pose a greater danger than the isolated offender, conspirators may be punished for the conspiracy, and completed substantive offense which is the object of the plot, and any foreseeable other offenses which one of the conspirators commits in furtherance of the scheme.  Since conspiracy is an omnipresent crime, it may be prosecuted wherever an overt act is committed in its furtherance. Because conspiracy is a continuing crime, its statute of limitations does not begin to run until the last overt act committed for its benefit. Since conspiracy is a separate crime, it may be prosecuted following conviction for the underlying substantive offense, without offending constitutional double jeopardy principles; because conspiracy is a continuing offense, it may be punished when it straddles enactment of the prohibiting statue, without offending constitutional ex post facto principles.  Accused conspirators are likely to tried together, and the statements of one may often be admitted in evidence against all." ….Federal conspiracy laws rest on the belief that criminal schemes are equally or more reprehensible than are the substantive offenses to which they are devoted. The Supreme Court has explained that a "collective criminal agreement – [a] partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attainted and decrease the probability that the individuals will depart from their path of criminality (See: Iannelli v United States, 420 US 720, 778 (1975))…..[c]ombination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed.  In sum, "the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise. Congress and the courts have fashioned federal conspiracy law accordingly. Federal Conspiracy Law: A Brief Overview, Doyle, April 3, 2020.

**ANTI-TRUST AND CLAYTON ACT VIOLATIONS**

1954.    Where RICO stops, Anti-Trust and Clayton Acts takes over.  All of this will be more fully developed in the

Amended complaint but for now they are so stated. These items are purposefully withheld from the causes of

actions and will be amended accordingly (that will trigger more predicate Federal and State RICO matters). Ms.

Salloum and/or Mr. Dean reserve this right.

1955.    15 U.S.C. § 1 Sherman Act states "Every contract, combination in the form of trust or otherwise, or

conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be

illegal...." In order to state a claim under § 1, a plaintiff must allege "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." Denny's Marina, Inc. v. Renfro Prods., Inc., 8 F.3d 1217, 1220 (7th Cir. 1993). So it is stated this does not apply to the Saga Enterprise – Federal RICO is handing that. This applies to CICC.

1956.    15 U.S. Code § 2 - Monopolizing trade a felony; penalty. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other, person $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

1957.    What makes the Imm defendants think that they can reach into the United States and rip off Salloum's IP from Canada, while they themselves are in gross violation of 18 USC § 1962 et al – a matter for the Jury to decide. Without question as shown herein there has been a conspiracy in restraint of trade, and certainly so with Ms. Salloum's IP and the Imm defendants' insistence that it is in fact Dean's IP – when it is not.  However, if the Imm defendants continue to insist that the IP for Salloum's company is indeed Dean's then Dean invokes the Sherman Anti-trust act and will develop this more fully in an amended complaint.

1958.    What's more, after Dean completed his defeat of the False Accusers – who is to say that Dean was not going to leverage Salloum's corporation into other countries providing Pro Bono services but investing the actual immigrant's money themselves or any number of permutations and combinations that affected trade and commerce domestically and worldwide.

1959.    The Clayton act (Exclusive Federal Jurisdiction) and is being invoked now and will be more fully developed should the Imm defendants persist in their insistence that Ms. Salloum's property is in fact Dean's property – or indeed ever was his property. Ms. Salloum however may join as another party to this matter because the actions of the Imm defendants did affect commerce in the United States and resulted in Dean resigning as CEO/Managing Director of CICC, and in turn is a further Article III injury that will affect Dean and any future Saga Enterprise.

1960.    The 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used first in § 7 of the  Sherman  Act, and later in  the  Clayton Act's § 4. See Cannon v. University of Chicago, 441 U.S. 677, 696-698, 99 S.Ct. 1946, 1957-1958, 60 L.Ed.2d 560 (1979). "It used the same words, and we can only assume it intended them to have the same meaning that courts had already given them (See, e.g., Oscar Mqyer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609) (1979); Northcross v. Memphis Bd. ef Ed., 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).

1961.    The Clayton Act, 38 Stat. 731, as amended, 15 U.S.C. § 15, offers a far closer analogy to RICO than any state law alternative. Even a cursory comparison of the two statutes reveals that the civil action provision of RICO was patterned after the Clayton Act. The Clayton Act provides:

1962.    "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sustained, and the cost of suit including a reasonable attorney's fee." 15 U.S.C. § 15(a). Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees. Both statutes bring to bear the pressure of "private attorneys general" of a serious  national  problem for which public."

1963.    Therefore, Dean pleads the same injuries caused by the immigration defendants to not the Saga Enterprise but to the CICC Enterprise – and all of those injuries, and pleading requirements such as proximate cause, continuity, zone of interests and everything else that was plead for RICO will be plead for this cause of action. Alternatively, Ms. Salloum may herself decide to plead the Sherman and/or Clayton Act herself and this will be sorted in the Amended complaint.

## THE RICO ENTERPRISE(S) IN GENERAL AND THE DEFENDANTS' TACTICS AND MEANS OF COMMISSION OF THEIR PREDICATE ACTS AND PLEADING REQUIREMENTS THAT ARE ALL MET

### Standing

1964.    As set forth in Holmes, the issue of standing is determined by whether a direct relationship exists between the injury asserted and the injurious conduct alleged. See Holmes, 503 U.S. at 268-269 ("a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts, generally stands at too remote a distance to recover"); see also Spinale v. United States, No. 03 Civ. 1704, 2004 WL 50873, at *15 (S.D.N.Y. Jan. 9, 2004).

1965.    The injuries to Plaintiff(s) were caused by the defendant's commission of hundreds (and likely thousands) of the predicate acts defined by 18 U.S.C. §1961(1); and the RICO plaintiff(s) were the intended target of that defendants' coordinated conduct. See link below for all of the wire fraud offenses that are already in the hundreds.

https://www.dropbox.com/scl/fi/8rrczfytbim6aub41umzn/Final-Wire-Fraud-04-19-21.xlsx?dl=0&rlkey=xf7aynqpakredjl3w49woduqd

1966.    Clearly there are numerous direct injuries that have been inflicted on the Plaintiff(s) by the actions of all defendants as described herein through multiple schemes and the three elements are met:

      i.    First, without the requirement, it would be too difficult to determine the injuries of an indirect plaintiff, apart from any of the other independent factors that may have caused the plaintiff's injury. See Holmes, 503 U.S. at 269. Here the injury caused to Plantiff(s) resulted from their direct acts as described herein.

ii.   Second, it eliminates the potentially complicated endeavor of apportioning damages between multiple plaintiffs who are removed from the defendant by varying degrees, while also eliminating multiple recoveries. This is not a suit for investors into the Saga Enterprise – although they have been injured and they may be suing the False Accusers themselves in Canada and separate jurisdictions on their own accord but not under RICO it is believed.

iii.  Third, it permits the directly injured victim to vindicate the law and to deter future injurious conduct.  Unquestionably the corrupt need to be brought to full account and their punishment needs to be severe and public to deter actions like the defendants.

**Proximate Cause**

1967.   Proximate Cause Proximate cause, on the other hand, is a merit-based concept involving common-law and prudential limitations, and examines the consequences under which the law will hold a defendant accountable. See Trollinger, 370 F.3d at 612 (referring to proximate cause as a tool used by the law to limit a person's responsibility for the consequences of their own conduct). Simply put, proximate cause requires a causal link between the conduct alleged and the injury suffered.  Again,  ranging from the fraudulent "bulk discipline complaints" to false forceable sodomy and constant threats of mass murder they all had one thing in common: destroy Dean and the Saga Enterprise so that Dean would not have the ability to wage legal war to let the Truth come out. The false allegations were also done in concert and under terms of conspiracy and in the Civil Rico Case Information Statement a time line will be presented that shows that a majority of these attacks were all co-ordinated with the false accusers by Imm defendants. Furthermore, there will be a chart showing the structure of the enterprise and the Association-In-Fact members.

1968.   The defendants knew that the injuries were foreseeable, logical and not speculative in nature.  They were done with a specific purpose -  a matter for the Jury to decide.

**The Association-In-Fact member that comprise of the Association-In-Fact Enterprise**

1969.   Under [the Boyle] test, a group must have "[1] a purpose, [2] relationships were among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose."

1970.   Clearly the purpose of the Imm defendants is to secure and make more powerful the Immigration Enterprise by the new College Act coming into force; the problem is not the College Act in and of itself (other than they ripped it off from Ms. Salloum (and Mr. Dean if Imm defendants insist it is his)) – the problem is how the Imm defendants retained and held on to power and abused their power and committed numerous varied acts prohibited under 18 USC 1961(1) (and the CNCA).

1971.   So, the purpose of the Imm defendants is to retain and gain more power by committing ever increasing and bold predicate acts in the United States (as well as breaking Canadian laws) while they get all kinds of help from the government of Canada and the Federal Courts – for instance. All of the associates in fact were interconnected and part of the schemes to defraud to keep power, get more power, and commit crime under the color of official (Canadian) right, and then using it to turn around and project their power into the United States.

392

1972.     The entire ICCRC membership largely made of Immigrants themselves is in fear of the Imm defendants as the membership expects the kind of behavior exhibited to be from so not-so-other-places-in-the-word. See United States v. Kamahele, 748 F.3d 984, 1003-05 (10th Cir. 2014) (finding that a gang was an association-in-fact enterprise where the members' common purpose was to enhance the gang's reputation by instilling fear through criminal activity and profiting from that activity, the members were related because (among other things) they shared hostility toward anyone wearing red in the neighborhood, and the enterprise had sufficient longevity because its existence spanned multiple generations of its members). It is been said that it easy to see the association of fact members by what they do and not necessarily who they say they are.

1973.     The Imm defendants shared hostility towards an elected director that was bringing wholesale change to the organization. The relationship the benefited the Imm defendants was that they were bound together to get extra perks – like not being disciplined when they really did something bad against a real immigrant immigrating to Canada.

1974.     The False accuser defendants share hostility towards and men and men they can extort in particular for extortion takes. Men are such an easy target these days as all it takes is for some reprobate lawyer – like Dave Shivas and the rest of the associates-in-fact false accusers - to file a false complaint and then confederate with his client, as an officer of the court, and perpetrate crushing fraud and extortion. They do this to people that have no means to pay a lawyer and no ability to learn how to think like law. Alternatively, people do just pay and False accusers defendant lawyers are and have been making a career out of it discovery will show. False Accuser Bissell have also schemed to defraud others as well discovery will show.

1975.     All of these unsavory and corrupt perpetrators need to be made an extreme example of for what they have done and perpetrated - a matter for the jury to decide.

1976.     If they do not, then there is a clear threat of continuing [unlawful] activity.

**The Immigration Enterprise and the False Accuser Enterprise**

1977.     These Enterprise(s) herein are themselves such enterprise(s) that the Supreme Court of the United States has said that "is proved by evidence of an ongoing organization, formal or informal, and by evidence that "an enterprise where an association of individuals, without structural hierarchy, form[ed] solely for the purpose of carrying out a pattern of racketeering acts" and that "[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure" (*Boyle v. United States*, 556 U.S. 938, 942 (2009)).

1978.     *"Structure."* We agree with petitioner that an association-in-fact enterprise must have a structure. In the sense relevant here, the term "structure" means "[t]he way in which parts are arranged or put together to form a whole" and "[t]he interrelation or arrangement of parts in a complex entity." American Heritage Dictionary 1718 (4th ed.2000); see also Random House Dictionary of the English Language 1410 (1967) (defining structure to mean,

393

among other things, "the pattern of relationships, as of status or friendship, existing among the members of a group or society"). *Boyle v. United States*, 556 U.S. 938, 945-46 (2009). In this case it is clear that both the Immigration Enterprise and the False Accuser Enterprise operate on their face, as they are supposed to. One is an Immigration organization, and one is made of a client(s) that recruit law firms that on the face of it are legitimate (in case that is why Shivas has floated his 02/05/19 false civil filing as being legit in a multitude of filings that he has made to deceive judges) but are not. Under the surface the Associates-In-Fact use the structures power and resources to commit criminality. In fact, all associate in fact member lawyers – whether they be Imm defendants and/or False accuser defendants are lawyers that have a habit of intentionally deceiving judges and courts. It is a common theme as each and every lawyer herein had a conspiracy part(s) – a distinct Evil according SCOTUS – with draconian remedies.

1979.        From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in Turkette, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S., at 583, 101 S.Ct. 2524. Clearly all of these elements are present as well as the Immigration Enterprise will outlive anyone reading this document in the year 2021 and their purpose is to bring immigrants to Canada and to hold onto power and get more power. The False Accuser enterprise will keep on extorting by fear and abuse of the legal process and engaging in criminal activity until it is stopped by the law. All of the associates-in-fact have a common purpose of operating the enterprise(s) by criminality and a course of conduct that is illegal. These two associations in fact will keep operating until Dean is dead or until the law stops it – which ever comes first.

## Liability under RICO

1980.        Liability under § 1962(c) extends only to those persons associated with or employed by an enterprise who "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U. S. C. § 1962(c). In Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173, 122. An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery. In this case it also counts for Phil Mooney, Kim Ly, and Carla Gelbloom essentially cold calling by email (using ".com" and sending to ".com" email addresses – meaning it all went through the United States) to get these bulk discipline complaints to help management/directors not to be investigated by a director so elected for that precise purpose.

1981.        It is by the virtue of their association or employment that they played a part in directing the enterprise's affairs. As for the False accusers – all of them including their secretaries Victoria Kingdom and Kriti Ward at the

394

Law (less) firm Bell & Shivas, P.C. are carrying out the "Better (not) Call Saul" strip mall fraud factory extorting and perpetrating crimes as much as Barreiro and Flanagan's secretaries – to be named later. All of these assistants had a copy of the police report but that did not matter to them – they were in on the scheme too. Behavior prohibited by§ 1962(c) will violate RICO regardless of the person to whom it may be attributed to. **The polestar is the activity in question, not the defendant's status.** Note, plenty of defendants other assistants and indeed other "more minor" law firms have been involved in this scheme to defraud. They may be included in the Amended complaint pending their self-rehabilitation and sending Dean a "we are so sorry" email and letter signed by All Y'all and sending Dean a cheque for whatever amount they were fraudulently trying to collect, Ian.

1982.    A person may participate in the conduct of an enterprise even though he had no part in the management or control of the enterprise and no share in any profits. But the participation must be willful and knowing – and in this case all defendants knew what they were perpetrating was a scheme to defraud.

1983.    The requirement "through a pattern of racketeering activity" has been met in several situations. When the defendant uses his position in the enterprise to commit the racketeering acts, the "through" requirement is fulfilled. In addition, when the resources, property, or facilities of the enterprise are used by the defendant to commit the predicate acts, the "through" requirement is fulfilled. For all defendants this "through a pattern" is fulfilled. In short, the defendants have operated or managed the enterprise(s) through a pattern of racketeering activity when s/he "uses her/his position in the enterprise to commit the racketeering acts" and when "the resources, property, or facilities of the enterprise are used by the defendant to commit the predicate acts." See also Jqy E. Hayden Found., 610 F.3d at 389.

1984.    RICO does not require that a pattern consist of two or more types of "racketeering activity." RICO only requires that a pattern consist of at least two acts of racketeering which is amply met.

1985.    Dean incorporate all the allegations herein and all defendants are liable for their being principals in the predicate acts as well as their conspiracy to commit predicate acts. They used their enterprise(s) by and through to commit the predicate acts as illustrated in detail herein. The Immigration Enterprise was used to create false legal proceedings and abuse the legal system and the False accusers abused the legal system and again these are methods that tied the Imm defendants to the False Accusers defendants because their methods were perpetrated by and through their respective enterprise(s) with racketeering activity.

**Continuity plus relationship**

1986.    When considering continuity, one must always be mindful that all of the defendants' related acts of racketeering can be included in the pattern, even those acts committed against other plaintiffs or non-plaintiffs. Phil Mooney has been committing predicate acts under 18 USC 1961(1) since 2013 when he was vomited out of the state of Vermont by the governor's office there. Phil Mooney has been the founder/president/directors of both CAPIC and ICCRC and the fruit does not "fall from the tree" as all those that surround him are corrupt.

1987.    Dean's favorite Bible passage is that of Psalm 89:7 (New International Version): "In the council of the holy ones God is greatly feared; he is more awesome than all who surround him." Quite an Enterprise Indeed – but when that Enterprise was unlawfully attempted to be taken over…well we all know happened.

1988.    The point for this case is Phil Mooney is the Imm defendants' proverbial "Emperor-God" of the Immigration Enterprise, and like Japan's emperor in WWII, people blindly followed/follow Phil Mooney, and do his bidding, even if it entices others to knowingly commit crimes. It is like they are running their own little "immigration-cult-association-in-fact." Alternatively, Satan's Little helpers, Dave Shivas et al the False accusers, was and continues to be, more than willing to do the Imm defendant's bidding (and their own to other victims as it their habitual way) – anything for extortion payoffs and inflicting unjust chaos into the innocent's lives and unjust destruction on *their* business and property.

1989.    All of this is clearly related and it is going to continue well into the future for the Imm defendants and the False accuser defendants.

1990.    With the amount of fraud, perjury, and subornation of perjury et al on both sides of the border in not only this matter but other mattes where the same schemes, tactics, and results are used against others will continue indefinitely into the future unless it is stopped. Discovery will prove out these points. These matters on both sides of the border have been going on for at least 4 years now.

1991.    According to *Morgan,* continuity is a function of the duration of time over which the predicate acts were committed, the number and variety of predicate acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Morgan,* 804 F.2d at 975.

1992.    There is no feasible electronic direct way to reach the membership as ICCRC as they have kept it a hidden secret; but in the blast emails by Phil Mooney with the 'victim' Robin Jones – Mooney had the entire membership list to cement the completion of the violation of the CNCA and 18 USC § 1962 et al.

1993.    A RICO Enterprise May Consist of an Association-in-Fact of Legal Entities as Well as an Association of Legal Entities and Individuals Although RICO's definition of "enterprise," 18 U.S.C. § 1961(4), does not specifically list an association of legal entities, it does not preclude such as association. Section 1961(4) states that the term "enterprise" "includes" the various entities enumerated in that provision.

1994.    In United States v. Turkette, 452 U.S. 576 (1981), the Supreme Court explicitly held that the enterprise element and the pattern of racketeering element of RICO were separate elements and that an association-in-fact enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.

1995.    Clearly the Associate-In-Fact enterprise for the Immigration Enterprise as it has been proven it made up of wide and diverse membership. The Association-In-Fact False Accuser Enterprise has also been proven as it is made of up the False-Accuser-In-Chief, a large NJ law firm, a small law firm operating out of a dump using a PO

Box, and a hedge fund, as well as bizarre love triangle of individuals going to home to 'heal,' but completing their divorce, and including Mr. Peretz.  These associates-in-fact enterprises will continue into the future.

1996.        Without question all of these predicate acts are related either as it was done to destroy Dean and/or his business and/property but also in the greater sense that what has been described herein is a habitual way of defendants to perpetrate crime on other victims using the same means.

**CONTINUITY – OPEN ENDED AND CLOSED ENDED**

1997.        "Continuity" is both a closed - and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. "Continuity" includes "both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. 2893. "Closed-ended continuity" can be established "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. 2893. A finding of "open-ended continuity," on the other hand, "depends on whether the *threat* of continuity is demonstrated." *Id.* (emphasis in original). Although "[f]or analytic purposes [relatedness and continuity] . . . must be stated separately, . . . in practice their proof will often overlap." *Id.* at 239, 109 S.Ct. 2893.

1998.        With respect to these defendants 'closed-ended continuity" can be established "by proving a series of related predicates extending over a substantial period of time.'  Their predicate acts on Plaintiff(s) have been ongoing for nearly 4 years, and there are substantial number of predicate acts as well as the fact that it is still continuing at this time.

1999.        Not only is there simply closed ended continuity on Plaintiff(s) but the predicate acts were going on since at least 2013 (Mooney in Vermont) and will continue to go on into the future in Canada at least – whether or not it stops in the USA is a matter before this USDC NJ.  As for the False accusers, this too has been going on for quite sometime as the reprobate Shivas has been extorting for years and he brags about his top 500 lawyers status (if that indeed is anything to brag about). His lawless partners at BS have also been scheming for years and it will continue to go on after this matter is complete if they are in fact rewarded with their criminality.  All defendants will simply learn from this 'experience,' and do a better job at begin criminals down the road.

2000.        A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. In this case there are others that are victims discovery will show further than the other victims already mentioned herein. "[W]hether there are multiple victims is highly relevant to the inquiry of continuity."); *Norstar Bank v. Pepitone,* 742 F. Supp. 1209, 1212 **(E.D.N.Y.**

1990) (holding that open-ended continuity was supported by allegations that "defendants were involved in other business transactions with other victims in which they engaged" in the same type of racketeering)

2001.    A RICO pattern is established because the RICO related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Also, with these defendants, the threat of continuity is established by the showing of all of the predicate acts herein as well as the offenses are part of an ongoing regular way of doing business. The continuity requirement is satisfied where as in herein it has been shown that the predicates are a regular way of conducting defendants' ongoing legitimate business (in the sense that it is not a business – all things being equal (which they clearly are not) - that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise

2002.    In the Supreme Court of the United States case Sedima: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 238, 240 (citations omitted).

2003.    This entire ACT III, in part has been showing the what the Imm defendants did the False accusers did and without question there is "same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events," here, there, and everywhere throughout this entire Complaint.

2004.    As the Third Circuit explained in United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991), a pattern may consist of diversified racketeering acts provided that they are related to the alleged enterprise because it is consistent with Congress' main objective in enacting RICO: the eradication of organized crime, . . . because it brings the often highly diversified acts of a single organized crime enterprise under RICO's umbrella. Indeed, a criminal enterprise is more, not less, dangerous if it is versatile, flexible, diverse in its objectives and capabilities.

2005.    By eradicating crime with so many defendants it will send a message to other "legally flexible" lawyers throughout the country extorting as a regular way of doing business. This is what Michael Avenatti did to Nike and he is sitting in Federal Prison for his extortion crimes. Arguably Plaintiff(s) need the help of the Court a 'bit more' than Nike did. See link for Mr. Avenatti: https://en.wikipedia.org/wiki/Michael_Avenatti

2006.    In this case not only are the Imm defendants versatile, flexible and diverse, but they have high level Canadian government officials in their back pocket who think nothing of influencing the Federal Canadian Court – while at the same time dealing Dave Shivas et al from a crew like "Bell & Shivas. P.C." that likely defends hardened criminals and typical mobsters.

2007.    In accordance with Congress' intended flexible approach, the federal courts of appeals have repeatedly held that the racketeering acts need not be similar or directly related to each other; rather, it is sufficient that the racketeering acts are related in some way to the affairs of the charged enterprise, including, for example, that: (1)

the racketeering acts furthered the goals of or benefitted the enterprise, (2) the enterprise or the defendant's role in the enterprise enabled the defendant to commit, or facilitated the commission of, the racketeering acts, (3) the racketeering acts were committed at the behest of, or on behalf of, the enterprise,119 or (4) the racketeering acts had the same or similar purposes, results, participants, victims or methods of commission. See United States v. Gilmore, 590 Fed.Appx. 390, 403-04 (5th Cir. 2014); United States v. Delgado, 401 F.3d 290, 298 (5th Cir. 2005); Irizarry, 341 F.3d at 301-02; Kehoe, 310 F.3d at 587; United States v. Polanco, 145 F.3d 536, 541 (2d Cir. 1998); United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994); Minicone, 960 F.2d at 1106-07; Eufrasio, 935 F.2d at 566-67; United States v. Salerno, 868 F.2d 524, 533 (2d Cir. 1989); Indelicato, 865 F.2d at 1384; United States v. Killip, 819 F.2d 1542, 1549-50 (10th Cir. 1987); United States v. Davis, 707 F.2d 880, 883 (6th Cir. 1983); United States v. Zang, 703 F.2d 1186, 1194(10th Cir. 1982);Thevis, 665 F.2d at 625; Phillips, 664 F.2d at 1011-12. 118 See, e.g., Irizarry, 341 F.3d at 301; Smith, 413 F.3d at 1272; United States v. Bruno, 383 F.3d 65, 84 (2d Cir. 2004); Marino, 277 F.3d 26-28; Corrado, 227 F.3d at 554; United States v. Posada-Rios, 158 F.3d 832, 856-57 (5th Cir. 1998); United States v. Grubb, 11 F.3d 426, 439 (4th Cir. 1993); United States v. Tillem, 906 F.2d 814, 822 (2d Cir. 1990); United States v. Pieper, 854 F.2d 1020, 1026-27 (7th Cir. 1988); Horak, 833 F.2d at 1239-40; United States v. Robilotto, 828 F.2d 940, 947-48 (2d Cir. 1987); United States v. Carter, 721 F.2d 1514, 1526-27 (11th Cir. 1984) 119 See, e.g., United States v. Daidone, 471 F.3d 371, 373 (2d Cir. 2006); Olson, 450 F.3d at 671; Smith, 413 F.3d at 1272; United States v. Miller, 116 F.3d 641, 676-77 (2d Cir. 1997); Minicone, 960 F.2d at 1107; Angiulo, 897 F.2d at 1180. 120 See, e.g., United States v. Brandao, 539 F.3d 44, 55 (1st Cir. 2008); Moon v. Piping Supply, 465 F.3d 719, 724 (6th Cir. 2006); United States v. Hively, 437 F.3d 752, 761-62.

2008.    All four of these elements have been mentioned in this complaint here, there, and everywhere and Dean incorporates them herein.

2009.    The Requisite Continuity Also May Be Proven in Several Ways Regarding the requisite "continuity," the Supreme Court made clear in H.J. Inc., 492 U.S. at 240-243, that a wide variety of proof may establish the required "continuity" and that no single particular method of proof is required. A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Plaintiff(s) have at a minimum been extorted for nearly four years with all of the ongoing criminality and false accusations – a matter for the Jury to decide.

2010.    Again, Plaintiff(s) have also met this burden.

2011.    H.J. Inc.'s second alternative means to establish continuity is referred to as "open-ended" continuity. Courts have found such "open-ended" continuity where the racketeering activity (multiple mailings and wire transmissions to sell otherwise legitimate stock through fraud); Akin v. Q-L Inv., Inc., 959 F.2d 521, 533 (5th Cir. 1992) (multiple mailings over several years containing misrepresentations to sell limited partnership interests); Abell v. Potomac Ins. Co. of Ill., 946 F.2d 1160, 1167 (5th Cir. 1991) (multiple mailings over six years to sell tax-

exempt revenue bonds involving more than 500 victims). In this case the Imm defendants monthly bulletin is a rich fountain and seemingly eternal source of monthly fraud and general misrepresentations and is illuminated in Act I. There are many other examples of course but this alone is sufficient to establish the open-ended continuity.

2012.    As for False accusers – the sky is the limit with the number of stories that they can make up and until it is put an end to by a Court *Ordering* "enough is enough," then False accusers collecting money from Imm defendants will go on with their fraud, scheme to defraud, and general overall deception. After Dean is "processed," then False accusers will simply target others and likely get paid from others to target others in the abuse of the legal system.

2013.    ("We conclude that the plaintiffs' allegations of multiple fraudulent acts involving multiple victims over more than one year are sufficiently related and pose a sufficient threat of continuing activity to satisfy the rules. . . .") and there are other victims and clearly all of this has gone on well past just 1 year. Also, It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision of an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

2014.    At this point it is clear that from the perspective of this test that there is more than one year of activity that are sufficiently related with Imm defendants and False accusers and the threat of continuing activity satisfies the rules as well as the fact that there has been plenty of conspiracy to go around.

**Circumstantial Evidence**

2015.    The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. United States v. Perholtz, 842 F.2d 343, 355 (D.C. Cir. 1988) ("The interlocking nature of the schemes and the overlapping nature of the wrongdoing provides sufficient evidence for the jury to conclude that this was a single enterprise. . . . "). United States v. Qaoud, 777 F.2d 1105, 1116-17 (6th Cir. 1985) (holding that the jury could have inferred the existence of the alleged association-in-fact enterprise from the "coordinated nature of the defendants' activity" and that the defendants' racketeering acts were facilitated by their nexus to the enterprise); United States v. Griffin, 660 F.2d 996, 1000 (4th Cir. 1981) ("Proof of the existence of an associated-in-fact enterprise requires proof of a 'common purpose' animating its associates"); United States v. Elliott, 571 F.2d 880, 898 (5th Cir. 1978) ("A jury is entitled to infer the existence of an enterprise on the basis of largely or wholly circumstantial evidence."), cert. denied, 439 U.S. 953 (1978).

2016.    There is an abundance of not only circumstantial evidence but cold hard facts in writing provided mostly from defendants.

**Membership**

2017.       As the District of Columbia Circuit has stated, "it is not essential that each and every person named in the indictment [as a member of the enterprise] be proven to be a part of the enterprise. The enterprise may exist even if its membership changes over time . . . or if certain defendants are found by the [fact finder] not to have been members at any time." Perholtz, 842 F.2d at 364.90. United States v. Mauro, 80 F.3d 73, 77 (2d Cir. 1996) (existence of enterprise not defeated by "changes in membership"); United States v. Nabors, 45 F.3d 238, 240- 41 (8th Cir. 1995) ("the personnel of the enterprise may undergo alteration without loss of the enterprise's identity as an enterprise"); United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991) (an association-in-fact enterprise continues to exist even though it undergoes change in leadership); United States v. Weinstein, 762 F. 2d 1522, 1537 n.13 (11th Cir. 1985) (liability for participation in a RICO enterprise does not require "participation of all members throughout the life of the enterprise"); United States v. Hewes, 729 F. 2d 1302, 1317 (11th Cir. 1984) ("The law does not require all members of the RICO enterprise to have maintained their association with it throughout the enterprise's life"); United States v. Riccobene, 709 F.2d 214, 223 (3d Cir. 1983) (that "the various associates function as a continuing unit" "does not mean that individuals cannot leave the group or that new members cannot join at a later time"); United States v. Cagnina, 697 F.2d 915, 921-22 (11th Cir. 1983) ("Although the enterprise grew in membership and its activities became more diverse, these facts do not negate its existence."), cert. denied, 464 U.S. 856 (1983); United States v. Errico, 635 F.2d 152, 155 (2d Cir. 1980) (upholding instruction that membership in an enterprise may change over time), cert. denied, 453 U.S. 911 (1981); United States v. Elliot, 571 F. 2d 880, 898 n.18 (5th Cir. 1978) (existence of enterprise not defeated by insufficient evidence as to one of its alleged members).

2018.       This RICO compliant is now finally ripe to submit to the USDC NJ because simply stated, a RICO violation has occurred in this case in multiplicative ways by (1) a defendant persons (2) who are employed by or associated with the enterprise(s), (3) and that the activities of the defendants have negatively affected interstate or foreign commerce, (4) the defendants' conduct or participation, directly or indirectly, in the conduct of the enterprise(s)' affairs (5) though a pattern (6) of racketeering activity has been amply demonstrated herein. All defendants are distinct from the RICO enterprise(s). Plaintiff(s) incorporate all of the defendants persons herein for their respective enterprise(s) – whether they be individuals or corporations, and that they are indeed employed or associated with the enterprises as described herein, and the activities of the defendants have definitely affected interstate AND foreign commerce, the defendants participated in the conduct directly and indirectly as the case may be, through a pattern, of racketeering activity that has been illustrated with evidence herein (and there is plenty more evidence).

2019.       The Saga Enterprise is the victim and is also distinct entity apart from Klassen and Dean – they are individual persons as well as Saga Global Capital Management LLC, a coproration. The Supreme Court recognized in *Cedric Kushner Promotions* that one person and one wholly-owned entity can be distinct. 533 U.S. at 163, 121

S.Ct. 2087 ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more `separateness' than that. . . . [L]inguistically speaking, the employee and the corporation are different `persons,' even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." (citations omitted)). Courts have also recognized that an "association-in-fact" enterprise can exist — and satisfy the "distinctiveness" requirement — when it is comprised of members that are a mixture of individual persons and "entities that they control." *See, e.g., United States v. Masters*, 924 F.2d 1362, 1366 (7th Cir. 1991) (Posner, J.) (finding an "enterprise" made up of a lawyer, his law firm, two police officers, and their respective police departments).

2020.    To satisfy the interstate commerce requirement, only a slight effect on interstate commerce is required. See, e.g., United States v. Norum, 867 F.2d 1354, 1359 (11th Cir.), cert. denied, 491 U.S. 907, 109 S. Ct. 3192, 105. Here the Saga Enterprise was injured grievously by Imm defendants and the False accuser defendants.

2021.    RICO is an aggressive initiative to supplement old remedies and develop new methods for fighting crime. See generally Russello v. United States, 464 U.S. 16, 26-29, 104 S.Ct. 296, 302-303, 78 L.Ed.2d.

**Vertical and Horizontal Relatedness**

2022.    Even though this matter is filed in the USDC NJ, there were also acts of racketeering in the 2nd Circuit and therefore "horizontal" and "vertical" relatedness are discussed and are present here in and related to the enterprise ("vertical" relatedness). *United States v. Polanco,* 145 F.3d 536, 541 (2d Cir. 1998), *cert. denied,* 525 U.S. 1071 (1999); *see also United States v. Daidone,* 471 F.3d 371, 376 (2d Cir. 2006) (holding that evidence establishes both horizontal and vertical relatedness when the acts of racketeering share common goals (increasing and protecting the financial position of the enterprise), common victims (e.g., those who threaten its goals), and draw their participants from the same pool of associates (those who are members and associates of the enterprise)). Vertical relatedness requires that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.

2023.    All of these vertical and horizontal matters have been accounted for in depth in Acts I, II, and III.

**By Reason Of Requirement**

2024.    The "by reason of" requirement contained in § 1964(c). The "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause whereby the wrongful conduct is shown to be a substantial cause of the alleged injury and the causal connection is

foreseeable and not speculative....."It is well-established that RICO plaintiffs must prove proximate causation in order to recover." *Cox* [ *v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1397, 1399 (11th Cir. 1994)]. "A proximate cause is not, however, the same thing as a sole cause. Instead, a factor is a proximate cause if it is a substantial factor in the sequence of responsible causation." *Id.*....

2025.      Herein and above it has already been pled with respect to the "proximate cause" requirement as well as the sufficiently direct injury requirement. Together these form that "By reason of requirement."

2026.      With all of the fraud that has been pled in Acts I, II, and III – it this "By Reason of Requirement" is amply met.

2027.      The Saga Enterprise would be a "rock star" hedge fund (Bissell text to Dean just before Miami hedge fund conference) with Dean and Klassen profiting wildly by now. Instead, the direct and proximate ever escalating injuries ranging from discipline complaints, removals from boards, inclusion of Saga as a defendant and false forceable sodomy and supposed constant threats of mass murder are the direct reasons that this RICO filing is made as well as everything else detailed herein.

**Conspirators**

2028.      Our recitation of conspiracy law comports with contemporary understanding. When Congress passed RICO in 1970, see Pub.L. 91-452, § 90l(a), 84 Stat. 941, the American Law Institute's Model Penal Code permitted a person to be convicted of conspiracy so long as he "agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime." Model Penal Code § 5.03(l)(a) (1962). As the drafters emphasized, "so long as the purpose of the agreement is to facilitate commission of a crime, the actor need not agree 'to commit' the crime." American Law Institute, Model Penal Code, Tent. Draft No. 10, p. 117 (1960). The Model Penal Code still uses this formulation. See Model Penal Code§ 5.03(l)(a), 10 U.L.A. 501 (1974). All of the false and fraudulent discipline complaints in violation of the CNCA and § 1962 et al constitute crime and everything else that followed with the Imm defendants and the False Accusers.

2029.      A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. See *Callanan v. United StatesJ* 364 U.S. 587, 594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312.

2030.      It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the

conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense. True, though an "enterprise" under§ 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity; and this in turn may make it somewhat difficult to determine just where the enterprise ends and the conspiracy begins, or, on the other hand, whether the two crimes are coincident in their factual circumstances. In some cases the connection the defendant had to the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the Government's case. Perhaps these were the considerations leading some of the Circuits to require in conspiracy cases that each conspirator himself commit or agree to commit two or more predicate acts. Nevertheless, that proposition cannot be sustained as a definition of the conspiracy offense, for it is contrary to the principles we have discussed.

2031.    A plaintiff satisfies section 1962(d) if she alleges and/or proves: "A conspirator ... intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas,* 522 U.S. at 65; *see also CGC Houling Co. v. Broad and Cassel,* 773 F.3d 1076, 1088 (10th Cir. 2014) (holding that one conspires to violate RICO by adopting the goal of furthering the enterprise, "even if the conspirator does not commit a predicate act"); *United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir.), *cert. denied,* 135 S.Ct. 491 (2014).

2032.    Well in this case with all defendants they are named as principles under 18 USC § 1962(c) and they are automatically upgraded to 18 USC § 1962(d) by virtue of having committed two predicate acts. Note: NY requires three and that will be all sorted out for each defendant in the CIVIL RICO case information statement and/or the Amended Complaint.

2033.    Additionally, because the police report has recently been obtained it tolls any statute of limitation issues for any and all of the requested causes of action and relief below. The police report was fraudulently concealed from Plaintiff(s) and without question the defendants had it in their possession since 08/09/17 and had Plaintiff(s) had it this Evil Cancer by defendants would not have been permitted to grow. That fraudulent concealment of the police report is and of itself a proximate cause to many of the injuries sustained by Plaintiff(s) and the Saga Enterprise.

**SUMMARY OF EACH DEFENDANT'S LIABILITY UNDER ALL CAUSES OF ACTION:**

2034.    A list of each defendant's activities will be listed in the Civil RICO Case Information Statement and/or the Amended Complaint.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Violations of RICO, 18 U.S.C. §1962(c)) (Against All RICO Defendants)**

2035.     Plaintiff(s) realleges and incorporates herein by reference each and every foregoing paragraph of this

Complaint as if set forth in full. Specifically in Acts I, II, and III many the predicate acts have been named as well

as the requisite elements of those acts and are incorporated here.

2036.     At all relevant times, Plaintiff(s) is a person within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

2037.     At all relevant times, each RICO Defendant (Imm defendants and/or False accuser defendants) is a

person within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

*The RICO Enterprise(s)*

2038.     The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the

common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this

Complaint; namely, through a multi-faceted campaign of lies, fraud, threats and official corruption, to coerce

Plaintiff(s) into paying extortion "fees" and so that the Imm defendants and False accusers and their co-

conspirators can keep their criminality and schemes moving forward and extort Dean out of his elected

directorship and licenses, reputation and in turn to injure his business and property as well as defraud the entire

membership of ICCRC.  The defendants have completed these predicate acts via the resources and facilities of

their enterprise.

2039.     These RICO Defendants and their co-conspirators have organized their operation into a cohesive group

with specific and assigned responsibilities and a command structure, operating in the United States and Canada

(and elsewhere), funded primarily from Canada, and directed mainly into the United States. Over the years they

have adapted their scheme to changing circumstances, recruiting new members to their operation, as others

have fallen back into the shadows, and expanding the scope and nature of their activities. While the

organization of the criminal enterprise has changed over time, and its members may have held different roles at

different times, the criminal enterprise(s) have generally been structured to operate as a unit in order to

accomplish the goals of their criminal scheme.  What's more, because the Imm Enterprise is largely based in

Canada and the False accusers are based in the United States – and each of these Enterprises has it own "stand

alone" RICO violations, apart they are formidable.  However, together in combination of the Imm defendants

acting  with the False Accusers has resulted in the RICO defendants running through and by an amalgamated

Association-In- Fact RICO Enterprise comprised of the Immigration Association-In-Fact Enterprise and False

Accuser Association-In-Fact-Enterprise in a 'joint venture' where all associates-in-fact can carry out their Evil

Corruption and abuse of legal process and numerous predicate acts. .

a.     The defendants' various Law Offices of have been responsible for oversight of the scheme to defraud or
portions of the scheme to defraud and extort Plaintiff(s), and have directed other conspirators to take actions
necessary to accomplish the overall aims of the criminal enterprise—namely, manufacturing evidence of
Plaintiff(s)' liability, procuring sham criminal and civil charges against Plaintiff(s), conducting a massive public

pressure campaign directed into the United States and elsewhere and designed to spread false and misleading information about Plaintiff(s) and the Canadian Litigation, and obstructing Plaintiff(s)' efforts at uncovering the truth in various U.S. and Canadian court proceedings.

b.      Imm defendants have been primarily responsible for prosecuting the sham litigation (or defending it with tricks and subornation of perjury) in the Canadian courts, and ran their own "board trial" where no court was authorized under Canadian law, and in fact to remove a director was specifically prohibited by Canadian law as only the members that elected that director could remove that director. All Imm defendants have served as either one of the heads of the Imm enterprise in Canada and/or taking orders and direction from one of the heads of the Imm enterprise, and has planned and coordinated the unlawful schemes to falsely and without probable cause to initiate the discipline complaint(s), to remove Dean from the Board, to breach his Parliamentary Privilege – twice - and chase him into the United States, to file a false lawsuit in T-834-20 thereby yanking him back into Canada, and filing an Urgent Motion to suspend/Motion to revoke Dean's license, all meant to keep Dean very busy (forced labor)  – and all while financing and/or paying for the False accusers' scheme to defraud in the United States.  The overall goal was to destroy Dean's reputation, put him in prison for the rest of his life and make sure that he could not run the Saga Enterprise because that thing would have been able to outspend all of them.  And thus the Saga Enterprise was the primary target in their taking Plaintiff(s) means of waging conventional legal war.

c.      Phil Mooney and the ICCRC board and managers et al have been primarily responsible for managing the RICO Defendants' "private Immigration cult," exerting influence over and colluding with Canadian government and court officials, and serving as the conduit for the media blasts using the Immigration Enterprise to make false statements regarding Plaintiff(s). The Imm defendants arranged for funding for the False accusers and frequently caused money to be transferred out of Canada and funneled into the United States for the False accusers to falsely prosecutor their malicious claims. Richard Dennis, a principal, at all times was a resident of Buffalo, NY assisting in and perpetrating all schemes to defraud reaching into Canada and back into the United States to help the schemes' progress as well as with the help of all conspirators.

d.      False accusers have served as the conduit for funding and otherwise furthering the RICO Defendants' criminal enterprise(s) and receiving the money sent into the United States.

e.      The lawyers of both the Imm enterprise and False accuser enterprise have been responsible for coordinating, the drafting of, fabricating evidence and tampering with evidence, and actually suborning perjury in the United States and Canada – in furtherance of a scheme(s) to defraud - promoting their RICO enterprise(s) for extortion takes, profit and take over and maintain control of the Immigration Enterprise.

f.      The RICO Defendants and their co-conspirators constitute an association-in-fact enterprise(s) within the meaning of 18 U.S.C. §1961(4) and 1962(c), referred to hereinafter as the "Enterprise." Each of the RICO Defendants participated in the operation or management of the Enterprise.

2040.      At all relevant times, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce within the meaning of 18 U.S.C. §1962(c).

*Pattern of Racketeering Activity*

2041.      The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5) and in violation of 18 U.S.C. §1962(c), to wit:

*Pattern of Racketeering Activity: Extortion in Violation of Hobbs Act, 18 U.S.C. §1951*

2042.      At all times material to this Complaint, the Saga Enterprise and Plaintiff(s) were engaged in interstate

and foreign commerce and in an industry that affects interstate and foreign commerce.

2043.    As described herein, the RICO Defendants have engineered a wide-ranging campaign of public attacks based on false and misleading statements, trumped up criminal charges, threatened and executed fraudulent civil judgments, investigations by government agencies, and ongoing harassment and disruptions of business operations, and have demanded the payment(s) under terms of extortion before these activities will cease, all with the intent and effect of causing a reasonable fear of economic loss on the part of the Saga Enterprise and Plaintiff(s) as well as permitting the associate-in-fact members to continue to perpetrate predicate acts in their respective enterprises in violation of 18 USC § 1962 et al.

2044.    As described herein, the RICO defendants manufactured false evidence against Plaintiff(s) and are relying on that false evidence in the sham NJ Essex County, NJ Litigation and the 2017 NJ PDVA action with the intent and effect of causing a reasonable fear of economic loss on the part of Plaintiff as well as the in the Canadian Federal Court in T-834-20 and the ICCRC internal tribunal.  Plaintiff(s) are not the only victims in this scheme to defraud; discovery will show there are many others.

2045.    Moreover, as described herein, the RICO Defendants conspired with the high level government of Canada officials to advance baseless civil complaint(s) against Plaintiff(s) and even improperly influencing a Canadian Federal Court – as well as the fact that said Judge of Court had serious undisclosed conflict of interest issues and was also a member a US based organization for lawyers that practice Intellectual property matters. This Private Citizen is brought into this matter due to her activity at Queens University and confederating with the Imm defendants while they flouted Canadian Law (CNCA).

2046.    The RICO Defendants' actions are intended to induce fear in Plaintiff(s) that the RICO Defendants will, among other things: (1) continue to pursue a scheme of misrepresentation to the great harm and public denigration of Plaintiff(s), unless and until Plaintiff(s) "settles" the "discipline complaints," T-834-20, & ESX – L – 984 – 19 (there is no settlement in Internal ICCRC 'tribunal.'  (2) continue to conspire with high level Canadian government officials to have Ms. Salloum's (and according to Imm defedents Dean's IP thieved away); and (3) secure fraudulent judgments against Plaintiff(s) and Saga Global Capital Management LLC, and file lawsuits in the United States and/or in Canada seeking recognition and enforcement of the fraudulent judgements. These actions, as described herein, have created a reasonable fear of harm on the part of Plaintiff, including fear of economic loss. Additionally the false accusations of violent rape on the night of February 7, 2017 by the false accusers and all of the other accusations including but not limited to the 'mass murder threats,' are and were done so in an attempt to send Dean away to prison for the rest of his life under threat of murder and maybe the play was for False accusers to appropriate for themselves a big chunk of the Sage Enterprise equity and then come back for more like a giant ATM well into the future.

2047.    Accordingly, the RICO Defendants have unlawfully obstructed, delayed, and affected—and attempted to

obstruct, delay, and affect—commerce as that term is defined in 18 U.S.C. §1951, and the movement of articles and commodities in such commerce, by extortion, that term is defined in §1951, in that the RICO Defendants attempted to induce Plaintiff(s) to consent to relinquish their property and business – now and forever - through the wrongful use of actual and threatened force, violence, and fear—including fear of economic harm.

*Pattern of Racketeering Activity: Threat of Murder – True Threats and False Threats.*

2048.        As described herein and in Acts I, II, and III, the RICO Defendants, the RICO defendants through the False Accusers tried to imprison Dean for the rest of his natural life in New Jersey state prison and then have him murdered so Phil Mooney, Chris Daw, Lynn Gaudet, Rhonda Williams et al could gain more power and hold themselves out to the world as being lawful citizens of the Immigration Enterprise when in fact they are utter fraudsters and have been involved in numerous schemes to defraud for a long, long time. Dean was accused of a level 1 indictable offense in New Jersey, and it would have likely been an aggravated Indictable offense if False Accusers' perjury and subornation if the (false) constant threats to break and enter, re-rape (like the last time), and mass murder Ms. Bissell, her family, and her *children* was believed and Dean subsequently was convicted of that as well.

2049.        Keep in mind that Shivas in the Zunic Court stated essentially that Bissell was not pursuing criminal charges trying to spin things like "she was doing Dean a BIG favor." No!  The prosecutor dismissed the criminal charges within 6 days of False Accusers filing them, but it took Dean quite some time to discover that.

2050.        It is of note that in the statute it does not say what kind of threats qualify as Predicate RICO activity with respect to "murder threats" and so False 'constant' and 'repeated' Threats of murder by False Accuser Bisselll qualify on an aggravated basis at either the Federal and/or state level.

*Pattern of Racketeering Activity: Multiple Instances of bank fraud 18 U.S. Code § 1344*

2051.        Whenever Mr. Richard Dennis cashed a cheque in the United States from the Immigration Enterprise it was a violation of 18 USC § 1344.

2052.        When False Accusers attacked the Saga Enterprise and the fund closed it violated 18 USC § 1344 on an aggravated basis because there were more than one transaction to cancel out and send investors back their money. This involved the Cayman Island, the United States, and Canada.

2053.        Because the Imm Enterprise has been operating under 18 USC § 1962, each and every check, deposit, visa, Mastercard, American Express et al transactions qualify as aggravated bank fraud.

*Pattern of Racketeering Activity: Robbery*

2054.        As described herein and in Acts I, II, and III, the RICO Defendants took away Dean's board position and it transitioned from extortion or attempted extortion to flat out robbery. They got their lawyers (actually Dean's own lawyers from Miller Thompson) and the Saga Enterprise's same lawyers and instead of respecting the obvious conflict of interest lawyer are supposed to do, they went ahead anyways and had a board trial that defendants knew was illegal and not provided for by the CNCA. Then after robbing Dean, they gave the board

position back to Richard Dennis and he accepted his bribe publicly.

*Pattern of Racketeering Activity: 18 USC § 1510 (relating to obstruction of criminal investigations)*

2055.       As described herein and in Acts I, II, and III, the RICO Defendants then prevented Dean from filing his Canadian Federal Judicial Review as well as filing with the USDC because Dean was thrust into the False Accuser scheme to defraud. Had Dean been able to report what he saw to the authorities much of what has happened could have been stopped.

*Pattern of Racketeering Activity: "murder-for-hire" statute, 18 U.S.C. § 1958*

2056.       As described herein and in Acts I, II, and III, the RICO Defendants and in particular Mr. James Bissell hired a Private Investigator, and his intent was at the beginning was to simply murder Dean but then Lisa Bissell came up with a more diabolical idea and that was to falsely accuse Dean of Rape and then surprise him with false threats of mass murder *and  then* send Dean to prison for the rest of his natural life with real murders and rapists, and *then have Dean murdered if it did not happen just by the happenstance of the environment.* They also could have gotten to point where Dean really though he was going to go to prison and in exchange for a big chunk of the Saga Enterprise, Bissell would simply not testify in the criminal proceeding and it would be dismissed as one possible Evil scenario. That is when Lisa Bissell contacted the Imm defendants for financing and coordination of the multiple schemes as well as schemed with the False Accusers for an extortion payoff in 2019 when their "send Dean to prison scheme" failed. By using the private investigator, the False Accusers were using interstate facilities to carry out their schemes.

*Pattern of Racketeering Activity: forced labor (18 USC § 1589, 18 USC § 1590 & 18 USC § 1594*

2057.       As described herein and in Acts I, II, and III, the RICO Defendants have kept Plaintiff Dean as well as Klassen very busy with false and fraudulent lawsuits on multiple fronts. In essence, they have used their Enterprises to obtain "forced labor" out of Plaintiffs to answer their fraudulent lawsuits in an effort to make Plaintiffs submit to their extortion.

*Pattern of Racketeering Activity: Multiple Instances of Mail Fraud and Wire Fraud in Violation of 18 U.S. §§1341, 1343*

2058.       As described herein and in Acts I, II, and III, the RICO Defendants engaged in a wide-ranging scheme(s) or artifice(s) to defraud Plaintiff(s) in various courts of law and fake board trial (not a court of law) manufacturing evidence, destroying evidence, colluding with the court and government officials, and beaming this into the United States via Zoom conference. As well, the Rico defendants have sent numerous emails to Plaintiff(s) and each and every email is a further step in the scheme to defraud and at this time there are hundreds of emails documented but it will likely become thousands of documented emails documented as well as USPS mail and/or Canada Post sent into the United States and delivered by USPS (Fed Ex, UPS, DHL count too).  The ultimate objective of the RICO Defendants' scheme(s) or artifice(s) to defraud was first to send Dean to prison for the rest of his natural life and have him murdered.  When that did not work the plan them became to coerce Plaintiff(s)

into not calling out their criminal schemes as well as their violation of the CNCA in Canada as well as to "pay off" the False Accusers' aggravated Hobbs Act violations for the despicable False Rape and Mass Murder Threat scheme to defraud and then changing their story to it becoming a supposed employment and sex harassment valid claim.  These two stories do not exist in the same world.

2059.    In furtherance of their scheme(s), and as described herein, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

   a.    emails and website postings incorporating false and misleading statements regarding Dean on the Immigration Enterprises' website;

   b.    wirings and/or mailings between and among the RICO Defendants concerning the preparation of discipline complaints, breach of Parliamentary Privilege, Board Trial, Appeal of Board Trial, Urgent Suspension et al, and False Accusations of False accusers from 2017 until now.

   c.    communications directed toward U.S. state and federal government officials regarding false and misleading statements about Dean being a rapist and about-to-be-mass murderer et al.

   d.    funds transferred by Imm defendants to False Accusers to finance/pay for their scheme; and,

   e.    electronic filing and service of court papers containing false and misleading statements intended to impede the operation of those courts (Fraud on the Court(s)).

   f.    Everything else herein incorporated from Acts I, II, and III.

2060.    Plaintiff(s) incorporates by reference the attached Appendix 1, which sets forth particular uses of wire and mail communications in furtherance of the RICO Defendants' scheme or artifice(s) to defraud that constitute violations of 18 U.S.C. §§1341 and 1443, including which individual defendant caused the communication to be mailed or wired, when the communication was made, and how it furthered the fraudulent scheme.

2061.    The RICO Defendants participated in the scheme(s) or artifice(s) knowingly, willfully, and with the specific intent to deceive and/or defraud Plaintiff(s) into paying the RICO Defendants and their co-conspirators. The RICO Defendants knowingly and intentionally prepared a self-serving board trial run by the very people that Dean was elected to investigate, and they refused to remove themselves based on conflict-of-interest reasons (that according to the ICCRC By-laws was supposed to be 'automatic'). Then when Dean was going to file his Canadian Judicial review, he could not because he was dealing with False Accuser matters, and was prevented from filing in USDC or elsewhere for the criminal activities of the Imm defendants.  It was a sham.

2062.    Imm defendants feared that Dean would expose the truth about Imm defendants back in 2017 and they had to resort to conspiring with False Accusers after Lisa Bissell contacted them and betrayed Dean.

2063.    The RICO Defendants colluded with the False Accusers to initiate criminal prosecution of Dean by filing the False Police Report of 08/09/17 on the basis of this report and other statements the RICO Defendant to be

false or misleading – chaos and destruction has come to the Plaintiff(s) because they cannot run their business (the Saga Enterprise) and their property has been destroyed.

2064.    The RICO Defendants further caused statements regarding this false police report through false legal filings that these the RICO Defendants knew to be false or misleading, and the false legal filing were disseminated and/or available to the general public, to the media, and to multiple state and federal agencies and federal courts, with the intent that those statements be believed and that they form the basis for further public attacks on Plaintiff. Note: the whole police report would not be available but any investor doing a background check on the Saga Enterprise would see generally what the charges were (and in reality any of these investors would have friends/family that could simply access the report- whether by legal or not so legal means).

2065.    It is of further note that the RICO defendants through their "analysts" did three deep background dives on Dean and there was but one slide on Dean Linkedin Profile with "Saga Global Capital Management LLC," but nothing about "rape" or "threats of mass murder at a time when the Imm defendants were doing all they could to discredit Dean.  Likewise, False Accusers knew" astoundingly did not make it into these three affidavits and further astoundingly (a perverse legal result) is that this was "fraudulent concealment" that these three analyst did not report the "rape" and "mass murder" accusations because they were told to not include them by their superiors Bastarache and others managing and directing the Enterprise.  But a google search on "Dean" and "Saga" top lists these US court cases.

2066.    That Dean had been "removed" from the board of directors for the main reason of "bullying and intimidating" (False Accuser Bissell helped Dean on the follow up interview with the CBC and knew all about it) but strangely Bissell did not incorporate that Canadian matter into her pleadings or court testimony (or by her lawyers questions) more than "tangentially."  She did use the exact phrase "Bullying and intimidating," that the Imm defendants gave her and that the Imm defendants used to blast out to the membership on April 21, 2017 via email link.

2067.    There has been an Investigation of the Saga Enterprise via a lawsuit and it has resulted in the decimation of the Saga Enterprises' corporate assets and ability to be a hedge fund now and into the future despite the blistering stock trading track record of the Saga Enterprise – False accusers hit the Saga Enterprise via Dean in August 2017 just before the fund was going to take in capital and re-capitalize. The Saga Enterprise cannot take in money because of the False accusers' actions (in concert with the Imm defendants)

2068.    The RICO Defendants knowingly engaged in the aforementioned conduct with the intent to generate fear in Plaintiff(s) such that Plaintiff(s) would ultimately pay the RICO Defendants to continue their conduct (via fraudulent judgements in Canada), and under the guise of a settlement of the Canadian Litigation (but not the suspension/revocation of Dean's Immigration Consulting License).

2069.    The RICO Defendants' false and misleading statements have been relied on by U.S. courts and  State

Courts, the media, and the ICCRC membership, and RICO defendants' misrepresentations and omissions and its failure to take meaningful corrective action has aggravated the matter. Further, RICO Defendants' false and misleading statements have caused the Saga Enterprise substantial damages.

*Pattern of Racketeering Activity: Money Laundering in Violations with respect to 18 U. S.C. §1956 and 18 USC § 1956(c)(7)(A)*

2070.    Imm defendants have on multiple occasions, acting in their individual capacities and as agents for the Immigration Enterprise have knowingly caused the transmission, and/or transfer of funds from Canada to the False accusers and other entities with the intent that those funds be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§1341, 1343, 1951, and 1962 et al.

2071.    Even as a stand alone, Mr. Richard Dennis has received more than $10,000 a year from Canada into the United States in violation of 18 USC § 1962. As minor as it is – it provides jurisdiction to all RICO defendants on this one point.

2072.    Plaintiff(s) reincorporate each and every predicate act and element thereof described herein from Acts I, II, and III having to do with the term "Money" or "Money Transactions" et al.

*Pattern of Racketeering Activity: Obstruction of Justice in Violation of 18 U. S. C. 1503, 1512, and 1513.*

2073.    Faced with implacable denials in Canada and Dean about to file with the Canadian Federal Court for a Judicial Review of his removal at the board trial and in turn his about to report these matter to the USCD et al, the RICO defendants instead arranged for Dean to be falsely accused of ever increasing and/or divergent false stories by the False accusers as detailed in Act I, II, and III. Dean did not have time to file a Judicial Review in Canada and Judge Murray told Dean not to retaliate against Bissell and therefore, Dean could not "connect the dots in USDC" between the Canadian and US Associate-In-Fact criminals as he was (unwittingly to Judge Murray) ordered by Judge Murray to not to do so.

2074.    In a concerted effort to thwart Plaintiff(s) attempts to uncover the Truth and avoid discovery, the RICO Defendants, and their counsel, have habitually filed or caused to be filed documents, including declarations sworn to under penalty of perjury, that falsely represent that False Accuser Bissell was raped and threatened with Mass Murder each and every time that Bissell and Dean spoke face to face or on the phone as well as the Imm defendants stating that the property that they essentially stole from Ms. Salloum (and Dean) was really theirs because some government officials influenced the Canadian Federal Court to say it was, for instance.  By making these deliberate and strategic false representations in various pending federal/state/provincial/ICCRC tribunal judicial proceedings, with full awareness of their consequence and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, the RICO Defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. §1503, Pattern of Racketeering Activity: Witness Tampering in Violation of 18 U.S.C. 1512 and Pattern of Racketeering Activity 18 U.S.C. § 1513: Retaliating against a witness, victim, or informant.

2075.    In fact, of the things that False Accusers falsely claim was really a narcissistic projection of the various things that indeed RICO defendants were doing to do Dean et al in a more subtle scheme to defraud - as it was made to seem that False accuser Bissell was the Victim and that she was "retaliated" against and so on and so forth.  A lot of legal planning went into the overall scheme to defraud and now they are caught with their own words and evidence.

2076.    Pursuant to 18 U.S.C. §1964(c), Plaintiff(s) are entitled to recover treble damages plus punitive damages and attorney fees for the reprehensible scheme(s) to defraud.

*Pattern of Racketeering Activity: All of the other Predicate Acts described herein.*

2077.    All of the other predicate acts described herein are incorporated herein and will be more full developed in the Amended complaint.

*Summary of the Pattern of Racketeering Activity Alleged Against Each RICO Defendant*

2078.    A summary of the pattern of racketeering activity alleged against each individual defendant will be included in the CIVIL RICO Case Information Statement. Herein, these claims for relief are alleged against each and every defendant generally by violating 18 USC § 1962(a)(b)(c)(d) and triggering causes of action under 18 USC § 1964(a)(b)(c)(d) as illustrated throughout this complaint.

### SECOND CLAIM FOR RELIEF

### (Conspiracy to Violate RICO, Violation of 18 U.S.C. §1962(d)) (Against All RICO Defendants)

2079.    Plaintiff(s) realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

2080.    The RICO Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. §1962(c) as described above, in violation of 18 U.S.C. §1962(d).

2081.    Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

2082.    Upon information and belief, the RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

2083.    Each RICO Defendant knew about and agreed to facilitate the enterprise(s) scheme to obtain property from Plaintiff(s) for the 'service' of destroying the Saga Enterpirse and/or the scheme(s) to defraud Dean from fulfilling his elected director role in the ICCRC to investigate the Imm defendants. It was part of the conspiracy

that the RICO Defendants and their co-conspirators would commit a pattern of ever escalating racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth as described herein. Of note, that the false accusers also in front of Judge Murray also conducted ever escalating accusations.

2084.     As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and of 18 U.S.C. §1962(d), Plaintiff(s) has been injured in its business and property, including damage to the Saga Enterprises' reputation and goodwill; the impairment of the Saga Enterprises' ability to conduct any business into the future despite accumulating a blistering stock market trading track record. Included in this sham in the Superior Court of Ontario "settlement" where Dean was getting bombarded with lawsuits and legal proceedings and Dean was forced to settle to say he "owed" Imm defendants some $100,000 CDN for their violations of the CNCA (and now we know 18 USC § 1962 et al) that was objectively baseless, improperly motivated sham litigation because the Imm defendants' lawyers suborned perjury and committed the Canadian equivalent of Fraud on the Court. Plaintiff Dean was getting bombarded by Imm defendants by September 2020 and that is not Justice and indeed is another abuse of process. Dean at that time was not 'ready' to pursue his claims against Imm defendants because he was still learning to be a lawyer, connecting Imm defendants and False accusers and generally letting all defendants make their own mistake so that Dean would be ready to make these allegations and support them proof. Now the time is ripe for all of that to happen and Dean will inform the various Canadian courts and see what think of the contents of this Civil RICO complaint.

2085.     Pursuant to 18 U.S.C. §1964(c), Plaintiff(s) are entitled to recover treble damages plus punitive damages and attorney fees for the reprehensible scheme(s) to defraud.

2086.     Plaintiff(s) are further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins the RICO defendants, their assignees and anyone else acting in concert with them—including the law firms from commencing, prosecuting, or advancing in any way—directly or indirectly—any attempt to recognize or enforce any Canadian judgment in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad, including any attempt to attach or seize any of Plaintiff's assets, whether pre-judgment or otherwise, until this Court determines the merits and enters judgment on Plaintiff(s) claims against the Defendants in this action. Again, Dean will himself make the Canadian Courts aware of this USDC NJ matter and will try to have the judgments reversed and/or stayed at the source (notwithstanding the ICCRC Tribunal because they are alleged criminals).

2087.     Plaintiff(s) should also be enjoined from sending money into Canada from the ICCRC treasury to pay for lawyers in defense of this action and instead should be made to use their personal funds because letting money come in from the ICCRC treasury would enable these criminals to benefit from their ill gotten gains and that would be more money laundering offenses. It will also give defendants a 'taste of their own medicine' by having

to learn the law and fast – just like they made Plaintiff(s).  Also, defendants should not be able to be represented by either GG or BS as there is a complete conflict of interests and indeed these lawyers' licenses ought to be suspended as one of the first acts of the court now that the police report has manifested itself.

### THIRD CLAIM FOR RELIEF
### (Fraud) (Against All Defendants)

2088.     Plaintiff(s) realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.  Note: the Cedar Grove Defendants are *not defendants* to any common law cause of action – but might be - and for the same reasons they are not RICO defendants (as above). The Cedar Grove Defendants can and should participate in all of the defendants' defenses.

2089.     Defendants and their agents have knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations before U.S and state courts and before Canadian/Provincial Courts, and in their communications to the Immigration Enterprises' members, analysts, and media. Each and every Defendants have personally engaged in this conduct, or knew or should have known that other Defendants were engaged in it on his or her behalf. These false representations are detailed throughout this Complaint and are reincorporated here.

2090.     Defendants made these false representations while knowing that their misrepresentations were materially false and/or that their omissions were material.

2091.     Defendants further made these misrepresentations and/or omissions with the intent of obtaining ( false) favorable rulings from the U.S., State, Canadian, and/or Provincial courts and the ICCRC "tribunal" because they were stacked with reprobate – legally and flexible lawyers – and their arrogance that they were above the law and that they were the "smartest guys in the room."

2092.     These material misrepresentations and/or omissions have been reasonably and justifiably relied upon by the members of ICCRC, the public, and in turn any investor that would have looked into Saga past 08/09/17 – due the filing of the false police report.  The public would not be able to see the actual report (or as in the exception above where the investor would get the report by legal or illegal means) but would get summary information and that was all that was needed for a material harm to the Saga Enterprise that would have to be explained away.  After a few of these matters, the hedge fund industry in New York is quite small and everybody knows everybody generally and word would not take long to get about the Saga Guys and Rape ect. It was devastating what False accusers did.

2093.     Explain it or not – an investor hears the mere accusation and that is the end of the discussion and therein lies the damage to the Saga Enterprise as Dean is central to the Enterprise. That Bell can never be un-rung.

2094.     As a direct, proximate, and foreseeable result of Defendants' fraud, Plaintiffs and their business and property the Saga Enterprise has been harmed, including significant pecuniary, reputational, and other

415

damages. These injuries include significant damage to Dean, Klassen, and Saga Global Capital's reputation and goodwill, and the attorneys' fees and costs (to date).

2095.     Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff(s) is entitled to, and should be awarded, punitive damages against each of the defendants.

2096.     Plaintiff(s) is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants from commencing, prosecuting, or advancing in any way, any attempt to recognize or enforce any judgment in any US court, tribunal, or administrative agency in any jurisdiction.

*Pattern of Racketeering Activity in State RICO (or equivalent) and Violations of Each State Statute:*

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF ARIZONA RICO AND CONSPIRACY TO VIOLATE ARIZONA RICO

2097.     Plaintiff(s) realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

2098.     Plaintiff reincorporates the descriptions of the Enterprise and Predicate Acts described herein and in particular in this Court and applies it to Arizona RICO under the statute.

2099.     A.R.S. § 13-2314.04 authorizes a private claim for civil racketeering: "A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by violation of section 13-2312 involving a pattern of racketeering activity, may file an action in superior court . . . ." A.R.S. § 13-2314.04(A).

2100.     A "pattern of racketeering activity" means either:

At least two acts of racketeering as defined in section 13-2301, subsection D, paragraph 4, subdivision (b), item (iv), (v), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xvi), (xvii), (xviii), (xix), (xx), (xxiv), or (xxvi) that meet the following requirements:

  i.    The last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering.
  ii.   The acts of racketeering that are alleged as the basis of the claim were related to each other or to a common external organizing principle, including the affairs of an enterprise. Acts of racketeering are related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics.
  iii.  The acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous.

A single act of racketeering as defined in section 13-2301, subsection D, paragraph 4, subdivision (b), item (i), (ii), (iii), (xi), (xii), (xiv), (xxi), (xxii), (xxiii), (xxv), (xxvii) or (xxviii).

2101.     A.R.S. § 13-2314.04(T)(3). See also RAJI Commercial Torts 32 Racketeering (Unlawful Activity Defined); RAJI Commercial Torts 33 Racketeering (Pattern of Unlawful Activity Defined). Two Acts of Racketeering Under

A.R.S. § 13-2314.04(T)(3)(a): The two acts of racketeering that require relatedness, continuity and occurrence within five years of one another to constitute a pattern of racketeering activity under A.R.S. § 13-2314.04(T)(3)(a) may include the following acts that are committed for financial gain: forgery (A.R.S. § 13-2001, et seq.), theft (A.R.S. § 13-1801, et seq.), bribery (A.R.S. § 13-2601, et seq.; A.R.S. § 13-2309), gambling (A.R.S. § 13-3301, et seq.), usury (A.R.S. § 13-2208), extortion (A.R.S. § 13-1804), extortionate extensions of credit (A.R.S. §§ 13-2301 to 13-2304), participating in a criminal syndicate (A.R.S. § 13-2308), asserting false claims including, but not limited to, false claims asserted through fraud or arson, intentional or reckless false statements or publications concerning land for sale or lease or sale of subdivided lands or sale and mortgage of unsubdivided lands (A.R.S. § 32-2161), resale of realty with intent to defraud (A.R.S. § 33-458), intentional or reckless fraud in the purchase or sale of securities (A.R.S. § 44-1991), intentional or reckless sale of unregistered securities or real property securities (A.R.S. § 44-1841), a scheme or artifice to defraud (A.R.S. § 13-2310), restraint of trade or commerce in violation of section 34-252, and money laundering (A.R.S. § 13-2317). A.R.S. § 13-2301(D)(4)(b)(iv), (v), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xvi), (xvii), (xviii), (xix), (xx), (xxiv), and (xxvi). One act that violates two separate laws does not constitute two predicate acts. See United States v. Walgren, 885 F.2d 1417, 1425 (9th Cir. 1989).

2102.        Since Arizona's statute is analogous to the federal statute, courts look to federal interpretations for guidance, and in doing so have held related predicate acts are continuous under section 13-2314.04(T)(3)(a)(iii) if they extend over a substantial period of time, i.e., more than a few weeks or months. See Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc., 198 Ariz. 149, 152-53, 7 P.3d 158, 161-62 (Ct. App. 2000).

2103.        One Act of Racketeering Under A.R.S. § 13-2314.04(T)(3)(b). The single act of racketeering that constitutes a pattern of racketeering activity under A.R.S. § 13-2314.04(T)(3)(b) **may include the following acts that are committed for financial gain**: homicide (A.R.S. § 13-1101, et seq.), robbery (A.R.S. § 13-1901, et seq.), kidnapping (A.R.S. § 13-1301, et seq.), prohibited drugs, marijuana or other prohibited chemicals or substances (A.R.S. § 13-3401, et seq.), trafficking in explosives, weapons or stolen property (A.R.S. §§ 13-2307, 13-3102 to 13-3103), **obstructing or hindering criminal investigations or prosecutions** (A.R.S. § 13-2409), obscenity (A.R.S. § 13-3501, et seq.), sexual exploitation of a minor (A.R.S. § 13-3553), prostitution (A.R.S. § 13-3201, et seq.), terrorism (A.R.S. § 13-2308.01), obscene or indecent telephone communications to minors for commercial purposes (A.R.S. § 13-3512), and counterfeiting marks as proscribed in section 44-1453. A.R.S. § 13-2301(D)(4)(b)(i), (ii), (iii), (xi), (xii), (xiv), (xxi), (xxii), (xxiii), (xxv), (xxvii) and (xxviii).

2104.        Clearly, by Bastarache et al reaching into Arizona and law enforcement officers they were obstructing and hindering criminal investigations that are now under way and would have been done a lot sooner with out the T-834-20 false filings nor the internal ICCRC sham.  Ms. Bastarache can talk to the Cedar Grove Police and they can show their badges, guns, and other qualifications of what a real law enforcement officer is. Just sayin'

2105.     With respect to the "committed for financial gain" requirement for all acts of racketeering under A.R.S. § 13-2314.04(T)(3), "'[g]ain **means any benefit, interest or property of any kind without** reduction for expenses of acquiring or maintaining it or incurred for any other reason." A.R.S. § 13-2314.04(T)(2). Here by Imm defendants taking over the CICC website after holding themselves out as law enforcement officers qualifies as well as stating that there was "criminal complaint" filed in Canada – where no complaint in writing has ever been given and indeed (like the false police report in NJ) has been withheld.

2106.     Violation of A.R.S. § 13-2312 Involving Pattern of Racketeering Activity. A violation of A.R.S. § 13-2312 involving a pattern of racketeering activity also gives rise to a private racketeering claim. Violations of section 13-2312 include: (1) committing illegal control of an enterprise, i.e., acquiring or maintaining, by investment or otherwise, control of any enterprise through racketeering or its proceeds; (2) illegally conducting an enterprise, i.e., person employed by or associated with enterprise conducting an enterprise's affairs through racketeering or participating directly or indirectly in the conduct of any enterprise that the person knows is being conducted through racketeering; and (3) hiring, engaging or using a minor for any conduct preparation to or in completion with the foregoing acts. A.R.S. § 13-2312(A)-(C). For purposes of section 13-2312, "control" of an enterprise "means the possession of sufficient means to permit substantial direction over the affairs of an enterprise and, in relation to property, means to acquire or possess" and an "enterprise" is "any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity." A.R.S. § 13-2301(D)(1)-(2).

2107.     Litigating a Private Claim for Civil Racketeering. To establish a private claim for civil racketeering, the plaintiff must prove: (1) the defendant engaged in a pattern of unlawful activity for the purpose of financial gain; (2) the defendant's pattern of unlawful activity caused the plaintiff's damages; and (3) the plaintiff's damages were a reasonably foreseeable result of the defendant's pattern of unlawful activity. RAJI Commercial Torts 31 Racketeering (Elements) (citing A.R.S. § 13-2314.04(A)). See also Rosier v. First Fin. Capital Corp., 181 Ariz. 218, 889 P.2d 11.

2108.     Defendants engaged in a pattern of unlawful activity that caused the Plaintiff(s) damages, and the damages caused by the defendants was reasonably foreseeable as a result of the defendant's pattern of unlawful racketeering activity as detailed throughout this entire compliant.

2109.     Unless a crime of violence is alleged as a racketeering act, the plaintiff may not refer to the defendant as a "racketeer" and must refer to the claim as one for "unlawful acts" or "a pattern of unlawful activity." See A.R.S. § 13-2314.04(S).

2110.     Clearly, because of the Pure Evil that went on in New Jersey and the attempted imprisonment of Dean for the rest of his natural live – with real rapists and murders – it was a major step forward of putting their scheme to defraud and attempted murder in place.  Clearly, there was also a "murder-for-hire" plot intended

until Lisa Bissell schemed the "better," and much more profitable extortion plot financed by the Imm defendants.

2111.    If the plaintiff alleges fraud or coercion in connection with act of racketeering, the circumstances constituting the fraud or coercion must be plead with particularity with respect to each defendant. A.R.S. § 13-2314.04(R). Accord Fromkin v. Indymac Bank FSB, 2010 U.S. Dist. LEXIS 60651, at *11-13 (D. Ariz. June 18, 2010); Beshears v. Provident Life & Accident Ins. Co., 2007 U.S. Dist. LEXIS 35947, at *8-10 (D. Ariz. May 15, 2007). See also Ariz. R. Civ. P. 9(b).

2112.    Clearly, Plaintiff(s) have plead with particularity the circumstances of the fraud and coercion with respect to each defendant throughout this complaint.

2113.    The court has jurisdiction to prevent, restrain and remedy a pattern of racketeering activity or a violation of section 13-2312 involving a pattern of racketeering activity, after making provisions for the rights of all innocent persons affected by the violation and after a hearing or trial, as appropriate, by issuing appropriate orders. A.R.S. § 13-2314.04(B). Clearly there are grounds under Arizona RICO for the Court to invoke these powers.

2114.    Before determining liability, such orders may include entering restraining orders or prohibitions or taking such other actions, including the acceptance of satisfactory performance bonds, the creation of receiverships and the enforcement of constructive trusts, in connection with any property or other interest subject to damage or other remedies or restraints as the court deems proper. A.R.S. § 13-2314.04(C). After determining liability, such orders may include: (1) ordering any person to divest himself of any direct or indirect interest in any enterprise; (2) imposing reasonable restrictions on the future activities or investments of any person, including prohibiting the person from engaging in the same type of endeavor as the enterprise engaged in; (3) ordering dissolution or reorganization of any enterprise (4) ordering the payment of up to treble damages to injured persons; and (5) ordering prejudgment interest on actual damages (not treble damages). A.R.S. § 13-2314.04(D)(1)-(5).  Dean asks the Court to enjoin defendants from any further actions with respect to CICC as well as enforcing any order it the United States from Canada on a temporary basis until the Canadians consider what this USDC NJ is now considering.

2115.    A natural person or an enterprise may not be held liable in damages or for other relief under A.R.S. § 13-2314.04 based on the conduct of another or agent, unless the fact finder finds by a preponderance of evidence that the natural person or director or high managerial agent performed, authorized, requested, commanded, ratified or recklessly tolerated the unlawful conduct of the other or agent, and in such circumstances, the fact finder must make particularized findings sufficient to permit a full and complete review of the record, if any, of the person's conduct. A.R.S. § 13-2314.04(L).  This is very similar to the 18 USC § 1964(d) statute and that actions of all defendants that has been plead with particularity throughout this matter.

2116.    "Recklessly" means "that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists" . . . [and] "ratification" [is defined] as the "[c]onfirmation and acceptance of a previous act, thereby making the act valid from the moment it was done." Both "ratified" and "recklessly tolerated" call for a construction that imputes knowledge or conscious awareness. That is, one who ratifies or recklessly tolerates the conduct of another must necessarily have knowledge or conscious awareness that the conduct is of a criminal nature in order to be found liable. Digital Sys. Eng'g, Inc. v. Bruce-Moreno, 2010 Ariz. App. Unpub. LEXIS 1315, at *16-17 (Nov. 16, 2010) (citations omitted).

2117.    Arizona's RICO act prohibits a person from acquiring or maintaining control of an enterprise through racketeering and it prohibits a person, who is employed by or associated with an enterprise, from conducting such enterprise's affairs through racketeering or from participating in the conduct of an enterprise that the person knows is being conducted through racketeering. Arizona RICO law also prohibits a person from hiring, engaging, or using a minor for any conduct preparatory to or in completion of a RICO offense. Ariz. Rev. Stat. Ann. § 13-2312(C) (Illegal control of an enterprise; illegally conducting an enterprise; classification). Under Arizona law, an "enterprise" is defined as, among other things, an association, other legal entity, or a group of persons associated in fact although not a legal entity. Ariz. Rev. Stat. Ann. § 13-2301(D)(3) (Definitions).

2118.    Here all defendants cannot deny that they were in violation of the CNCA and because there were so many lawyers involved, they clearly knew what they were doing.  Evidence of this on its face is all of the scheming and plotting around the laws that they have already done and trying to pass it off as lawful – it was not. 'Lawyers' Daniel Bastache and Michael Huynh knew that they were not law enforcement officers, but they reached in from Canada to Arizona to state that they were.

2119.    Arizona law also requires a mens rea element that is not included in the federal RICO laws, requiring that a person knew that an enterprise is being conducted through racketeering activity. Ariz. Rev. Stat. Ann. § 13-2312(B). Arizona law does include some provisions that make it more expansive than federal RICO law in some respects. Unlike federal law, Arizona includes using the proceeds of racketeering, along with the act of racketeering itself as part of a RICO violation. Ariz. Rev. Stat. Ann. § 13- 2312(A). Arizona also allows a person to be liable under its RICO provisions if the person participates indirectly in the conduct of an enterprise involved in racketeering. Ariz. Rev. Stat. Ann. § 13-2312(B). This allows for people who may not have a key role in the enterprise's affairs to still be found liable if they participated.

2120.    Plaintiff(s) Incorporate all the Arizona RICO predicate acts and Arizona causes of action mentioned in Acts I, II, and III herein.

2121.    A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of §  13-2312 involving a pattern of racketeering activity, may file an

action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable

attorney fees for trial and appellate representation.   The superior court has jurisdiction to prevent, restrain and

remedy a pattern of racketeering activity or a violation of §  13-2312 involving a pattern of racketeering activity,

after making provision for the rights of all innocent persons affected by the violation and after a hearing or trial,

as appropriate, by issuing appropriate orders.

2122.      Because the legislature patterned Arizona RICO after the federal RICO statute, we conclude that the

legislature intended that a plaintiff demonstrate proximate causation before becoming eligible for treble

damages under A.R.S. section 13-2314(A). We hold that in order to state a cause of action for civil damages

under RICO, the plaintiff's damages must be proximately caused by the defendant's violation of a predicate RICO

act. *Rosier v. First Financial Capital Corp.*, 181 Ariz. 218, 222 (Ariz. Ct. App. 1995).

2123.      Again, Imm defendants by the corporate documents provided by Salloum and publicly accessible by the

Imm defendants knew that Dean did not own neither CICC nor the website, and yet Imm defendants are

insistent that Dean does own these companies – and has used it as a basis for their various fraudulent

proceedings in Canada.  Dean as an American Citizen enjoys all the rights and privileges of Arizona because he

was falsely targeted in Arizona.

2124.      A subsection of this claim is also conspiracy to violate Arizona RICO – which is very similar the elements

of Federal law and those references are incorporated herein.

2125.      Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each

offense has been met and accounted for.

### FIFTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA RICO AND CONSPIRACY TO VIOLATE CALIFORNIA RICO

2126.      Plaintiff(s) Incorporate all the California RICO causes of action, Arizona causes of action, and the Federal

causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

*2127.*      Askash Ministry was sent by the Imm Defendants to hack Ms. Salloum's computer (which according to

Imm defendants' is in Fact Dean's computer) as well as Imm defendants have admitted to the world and the

entire ICCRC membership on the Immigration enterprises' website that they **admitted** that they were successful

at hacking the CICC corporate Linkedin Account and that is a very "California matter," as Linkedin's headquarters

are in California.

2128.      California's RICO act does not include a separate section on violations. However, it defines "criminal

profiteering activity" as "any act committed or attempted or any threat made for financial gain or advantage,

which act or threat may be charged as a crime . . . ." Cal. Penal Code § 186.2(a) (Definitions). Predicate Act

Requirements California law requires at least two predicate acts to establish a "pattern of racketeering activity."

Cal. Penal Code § 186.2(b) (Definitions). The acts must have similar purposes, results, principals, victims, or

methods of commission and were not isolated events. Any of the other predicate acts in any of state listed will do.

2129.     California's law under its definition of "criminal profiteering activity," does allow for the commission of an offense but also acts that were attempted or threatened thus expanding the law's reach, to a degree. Cal. Penal Code § 186.2(a) (Definitions). Just hacking the Linkedin site alone was wire fraud and 18 USC § 1956 and 18 USC § 1957 offenses, for instance, and that is three predicate offenses. There is a whole bunch more to report here too.

2130.     Plaintiff(s) incorporate California RICO and California Conspiracy law herein as California Conspiracy law is very similar to Federal RICO conspiracy law.

2131.     Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CONNECTICUT RICO AND CONSPIRACY TO VIOLATE CONNECTICUT RICO**

2132.     Plaintiff(s) Incorporate all the Connecticut RICO causes of action, California RICO causes of action, Arizona causes of action, and the Federal causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

2133.     Connecticut's RICO statute, also known as The Corrupt Organizations and Racketeering Act, prohibits a person, who has knowingly received any proceeds derived from a pattern of racketeering activity. Connecticut also prohibits a person, through a pattern of racketeering activity, from receiving anything of value or acquiring or maintaining any interest in or control of any enterprise and it prohibits a person, who is employed by, or associated with, any enterprise, from knowingly conducting or participating in such enterprise through a pattern of racketeering activity. Conn. Gen. Stat. § 53- 395(b), (c).

2134.     Under Connecticut RICO law, an "enterprise" means, among other things, an individual, a group of individuals associated in fact although not a legal entity, and illicit as well as licit enterprises. Conn. Gen. Stat. § 53-394(c) (Definitions). Predicate Act Requirements Connecticut RICO law requires at least 2 predicate acts to establish a "pattern of racketeering activity." Conn. Gen. Stat. § 53-394(e) (Definitions). The acts must be similar in purpose results, participants, victims, or methods of commission. Id. Furthermore, the acts must have a nexus to the same enterprise and not be isolated events. Id

2135.     Potential Defendants Connecticut's RICO act has the potential to reach a number of defendants as it includes, under its definition of racketeering activity, not only the commission of a relevant offense, but also an attempt to commit, a conspiracy to commit, or intentionally aiding, soliciting, coercing, or intimidating another person to commit a relevant offense. Conn. Gen. Stat. § 53-394(a) (Definitions). Essentially, this is all of the Federal and State crime committed against the Saga Enterprise but here the 'net' to punish these perpetrators is

wider than the Federal 'net,' as it contains the words "aiding," "soliciting," "coercing," and/or "intimidating," for instance.

2136.    Throughout this complaint it is clear that there is a 'mens rea' element that is required under Connecticut RICO. Persons convicted of violating Connecticut's RICO act may also have to serve consecutive sentences for both the RICO violation and the underlying predicate acts. Conn. Gen. Stat. § 53- 396(c) (Charging of incidents of racketeering activity. Sentencing on separately charged offenses). Connecticut also requires that the court "impose a separate sentence on any separately charged offense of which the defendant has been found guilty notwithstanding that the offense also constitutes an incident of racketeering activity . . . ." Id. These provisions, thus, have the potential to act as strong deterrents against committing human trafficking and CSEC offenses as they may come with greatly enhanced penalties and encourages prosecutors to try and add any relevant offenses to increase penalties.

2137.    Plaintiff(s) also incorporate all provisions of the Connecticut conspiracy law herein as described and that are similar to the Federal RICO conspiracy statutes and incorporate them herein.

2138.    Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**VIOLATION OF FLORIDA RICO AND CONSPIRACY TO VIOLATE FLORIDA RICO**

2139.    Plaintiff(s) Incorporates all Florida causes of action, Connecticut RICO causes of action, California RICO causes of action, Arizona causes of action, and the Federal causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

2140.    874.06    Civil cause of action (1)    A person or organization establishing, by clear and convincing evidence, coercion, intimidation, threats, or other harm to that person or organization in violation of this chapter has a civil cause of action for treble damages, an injunction, or any other appropriate relief in law or equity. Upon prevailing, the plaintiff may recover attorney's fees in the trial and appellate courts and the costs of investigation and litigation that are reasonably incurred.

2141.    (2)(a)    For purposes of this subsection, the term "state" includes any of the state's agencies, instrumentalities, subdivisions, or municipalities, and includes, but is not limited to, state attorneys and the Office of Statewide Prosecution of the Department of Legal Affairs.

2142.    (4)    A person who knowingly violates a temporary or permanent order issued under this section or s. 60.05 commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

**772.103    Prohibited activities** - It is unlawful for any person:

(A)    Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the

acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(B)   Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(C)   Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(D)   To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

2143.      **772.104   Civil cause of action.**—

2144.      (1)   Any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action.

2145.      874.06   Civil cause of action.— (1)   A person or organization establishing, by clear and convincing evidence, coercion, intimidation, threats, or other harm to that person or organization in violation of this chapter has a civil cause of action for treble damages, an injunction, or any other appropriate relief in law or equity. Upon prevailing, the plaintiff may recover attorney's fees in the trial and appellate courts and the costs of investigation and litigation that are reasonably incurred.

2146.      Clearly herein Plaintiff(s) have established the Imm defendants have been operating the scheme out of Florida since at least August 2017 until now. Fraud under Florida Statute means: Intentional deception resulting in injury to another. Person means and includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations. See Florida Statutes 1.01.

2147.      In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

2148.      Plaintiff(s) also incorporate Florida § 874.02 Legislative findings herein as a cause of action and all Florida matters are done under terms of predicate acts and conspiracy to commit predicate acts violating Florida RICO Statute(s).

2149.      Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

### EIGHTH CLAIM FOR RELIEF
### VIOLATION OF NEW YORK ENTERPRISE CORRUPTION AND CONSPIRACY TO VIOLATE NEW YORK ENTERPRISE CORRUPTION

2150.      Plaintiff(s) Incorporate all New York Enterprise Corruption causes of action, Florida causes of action, Connecticut RICO causes of action, California RICO causes of action, Arizona causes of action, and the Federal causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

424

2151.     Similarly, the RICO Defendants' wrongful attempts to appropriate Plaintiff(s)' business and property by instilling fear that if the property is not delivered the RICO Defendants they would perform acts calculated to harm Plaintiff(s) materially with respect to their business, financial condition, and reputation  and these have all been accomplish and in turn it violates New York Penal Law §§110.00, 155.05(2)(3), 155.42 as well as all of the other violations and elements mentioned in Act I, II, and III.

2152.     RICO Statute New York's RICO focuses primarily on enterprise corruption. The law prohibits a person, who has knowledge of the existence of a criminal enterprise and its activities and is either employed by or associated with the enterprise, from: (1) intentionally conducting or participating in the enterprise's affairs by participating in a pattern of criminal activity, (2) intentionally acquiring or maintaining an interest in or control of an enterprise by participating in a pattern or criminal activity, or (3) participating in a pattern or criminal activity and knowingly investing any proceeds in an enterprise. N.Y. Penal Law § 460.20(1) (Enterprise corruption). New York law provides two definitions for the type of enterprise referenced in its RICO act, stating that either type will satisfy the RICO provisions.

2153.     Here Richard Dennis, a New York Resident clearly participated in acquiring and controlling the Immigration Enterprise in Canada and used those powers in Canada to reach back into the United States and take action against the Plaintiff(s) and destroy the Saga Enterprise as well as the reputations of Dean and Klassen with just the Imm defendants as a "stand alone," but also confederating with the False Accusers.

2154.     One type of enterprise is a "criminal enterprise," which has the specific requirements of meaning "a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents." N.Y. Penal Law § 460.10(3) (Definitions). The other type of enterprise is less rigid in its requirements and means: "any entity of one or more persons, corporate or otherwise, public or private, engaged in business, commercial, professional, industrial, eleemosynary, social, political or governmental activity." N.Y. Penal Law § 175.00(1) (Definition of terms).

2155.     New York requires at least 3 predicate acts, which differs from federal RICO laws which only require at least 2 predicate acts. N.Y. Penal Law § 460.12(4) (Definitions), 18 U.S.C. 1961(5) (Definitions). New York also requires that the predicate acts be committed within 10 years of the commencement of the criminal action. N.Y. Penal Law § 460.12(4). Two of the acts must also be felonies other than conspiracy and two of the acts, one of which is a felony, must have occurred within 5 years of the commencement of the criminal action. N.Y. Penal Law § 460.20(2) (Enterprise corruption). Furthermore, New York requires that the acts be neither isolated nor actually single acts and each of the acts must have occurred within 3 years of a prior act. N.Y. Penal Law §§ 460.12(4), 460.20(2). The law also requires that the act be either: (1) related through a common scheme or plan

or (2) were committed, solicited, requested, importuned or intentionally aided by persons with the mens rea to commit the act and associated with or in the enterprise.

2156.    The above requirements have been met amply as illustrated throughout this complaint. The Civil RICO case information statement will provide much more Wire Fraud/Mail Fraud where nearly all defendants meet this requisite 3 predicate acts criteria.

2157.    Under New York's section on enterprise corruption, there is an intent requirement for persons to be held liable for participating in a pattern of criminal activity; the person must have acted with the intent to participate in or advance the criminal enterprise's affairs. N.Y. Penal Law § 460.20(2).56 New York also allows for criminal forfeiture of a wide range of interests related to the enterprise through the violation. Items subject to forfeiture under a conviction of committing enterprise.

2158.    Plaintiff(s) incorporate all predicate acts as well as the conspiracy provisions under New York's Enterprise Corruption conspiracy statutes.

2159.    Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

**NINTH CLAIM FOR RELIEF**
**VIOLATION OF NEVADA RICO AND CONSPIRACY TO VIOLATE NEVADA RICO**

2160.    Plaintiff(s) Incorporate all Nevada causes of action, New York Enterprise Corruption causes of action, Florida causes of action, Connecticut RICO causes of action, California RICO causes of action, Arizona causes of action, and the Federal causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

2161.    Nevada's anti-racketeering statutes, NRS 207.350 through NRS 207.520, inclusive, were enacted in 1983 and are patterned after the federal Racketeer Influenced and Corrupt Organizations, or "RICO," statutes, 18 U.S.C. § 1961-1968. Like their federal counterparts, Nevada's anti-racketeering statutes provide for a civil cause of action for injuries resulting from racketeering activities under which a plaintiff may recover treble damages, attorney's fees and litigation costs. *See* NRS 207.470.

2162.    Pursuant to NRS 207.470 and NRS 207.400, a civil RICO cause of action may be based upon allegations and proof that the defendants have and is unlawful for a person:

> (a)  Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of:

> > (1)  Any title to or any right, interest or equity in real property; or

> > (2)  Any interest in or the establishment or operation of any enterprise.

(b)  Through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(c)  Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:

(1)  The affairs of the enterprise through racketeering activity; or

(2)  Racketeering activity through the affairs of the enterprise.

(d)  Intentionally to organize, manage, direct, supervise or finance a criminal syndicate.

(e)  Knowingly to incite or induce others to engage in violence or intimidation to promote or further the criminal objectives of the criminal syndicate.

(f)  To furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate.

(g)  Intentionally to promote or further the criminal objectives of a criminal syndicate by inducing the commission of an act or the omission of an act by a public officer or employee which violates his or her official duty.

(h)  To transport property, to attempt to transport property or to provide property to another person knowing that the other person intends to use the property to further racketeering activity.

(i)  Who knows that property represents proceeds of, or is directly or indirectly derived from, any unlawful activity to conduct or attempt to conduct any transaction involving the property:

(1)  With the intent to further racketeering activity; or

(2)  With the knowledge that the transaction conceals the location, source, ownership or control of the property.

(j)  To conspire to violate any of the provisions of this section.

2163.    Under Nevada RICO law, an enterprise is defined as including, among other things, individuals, groups of persons associated in fact although not a legal entity, and illicit as well as licit enterprises. Nev. Rev. Stat. § 207.380(1)-(2) ("Enterprise" defined). Also under Nevada RICO law, a "criminal syndicate" is separate from, but related to, the definition of an enterprise and is defined as "any combination of persons, so structured that the organization will continue its operation even if the individual members enter or leave the organization, which engages in or has the purpose of engaging in racketeering activity." Nev. Rev. Stat. s 207.370 ("Criminal syndicate" defined). Predicate Act Requirements Nevada RICO law is similar to federal RICO law in that it requires a least 2 predicate acts for there to be a "pattern of racketeering activity." Nev. Rev. Stat. § 207.390 ("Racketeering activity" defined). The acts must be similar in pattern, intent, results, accomplices, victims, or

methods of commission and they may not be isolated acts. Furthermore, the law requires that at least one of the acts have occurred after July 1, 1983 and that the last of the acts occurred within 5 years after the prior commission of a racketeering crime. This time frame between acts is much stricter than that allowed under federal RICO law (10 years), thus limiting the scope of defendants capable of being prosecuted under Nevada's RICO act, even if they did commit human trafficking and CSEC related offenses. See 18 U.S.C. 1961(5) (Definitions).

2164.  Relevant Offenses - Nevada's RICO act is very limited in that it only includes 2 related offenses under its definition of a "crime related to racketeering."

2165.  Under most of the Nevada RICO provisions, violators are required to have acted either knowingly or intentionally. Nev. Rev. Stat. § 207.400(1) (Unlawful acts; penalties). Nevada law is more expansive than federal law, however, in that it also allows a person to be liable for a RICO offense for involvement in a criminal syndicate, whether as a manager or operator or as an aid or assistant. This applies to each and every person involved in the bulk discipline complaints sent to Plaintiff Dean in Nevada.

2166.  Nevada also provides for an alternative fine that is harsher than federal RICO law provisions, and allows a court to impose a fine of up to 3 times the gross pecuniary value the convicted person gained or any gross loss the convicted person caused, **including property damage and personal injury, whichever is greater**, as a result of the violation. Nev. Rev. Stat. § 207.410(1)-(2) (Alternative fine for unlawful acts). Under this alternative fine provision, a person convicted of a RICO violation may also be sentenced to pay courts costs and the costs of investigation and prosecution. Nevada also includes a wide range of property subject to forfeiture, including: titles or interests, derived proceeds, property or contractual rights, position, contracts of employment, compensation, amounts payable, etc.. Nev. Rev. Stat. § 207-420(2).

2167.  A subsection of this claim is also conspiracy to violate Arizona RICO – which is very similar the elements of Federal law and those references are incorporated herein.

2168.  NRS 207.360 "Crime related to racketeering" defined. "Crime related to racketeering" means the commission of, attempt to commit or conspiracy to commit any of the following crimes: *Racketeering activity* involves engaging in two or more *crimes related to racketeering* (as listed above) that have "*the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelate by distinguishing characteristics and are not isolated incidents*." Under the Nevada RICO law, the most recent incident must have occurred within five (5) years after a prior commission of a crime related to racketeering. Two other definitions are important in RICO violations (1) A *criminal syndicate* is an organization that engages in *racketeering activity*, structured to continue existing and operating regardless of whether specific individuals join or leave the operation (2) An *enterprise* includes any person, business, or legal entity, as well as groups and associations of people that are not legal entities. An enterprise can be a legal or illegal entity or group.

2169.      The Nevada RICO statute defines the unlawful acts that constitute violation of the law. They encompass a broad range of conduct relating to racketeering. The conduct can relate to organized, ongoing illegal activity (*criminal syndicate*) or to any illegal or otherwise legal activity (*enterprise*).

2170.      Defendants are liable for treble damages for the Saga Enterprise's destruction and for the (very expensive) careers of two up and coming hedge fund managers. Violation of the Nevada RICO provisions is a category B felony, punishable by a prison term of five (5) to twenty (20) years and a fine up to twenty-five thousand dollars ($25,000). The court may impose an alternative fine of up to.

2171.      Defendants are liable under Nevada RICO stature as well for conspiratorial unlawfulness.

2172.      Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

### TENTH CLAIM FOR RELIEF
### VIOLATION OF NEW JERSEY RICO AND CONSPIRACY TO VIOLATE NEW JERSEY RICO

2173.      Plaintiff(s) Incorporate all New Jersey causes of action, Nevada causes of action, New York Enterprise Corruption causes of action, Florida causes of action, Connecticut RICO causes of action, California RICO causes of action, Arizona causes of action, and the Federal causes of Action mentioned above and in Acts I, II, and III and everything else mentioned herein.

2174.      New Jersey Racketeer Influenced and Corrupt Organizations Act ("New Jersey RICO"), N.J.S.A. § 2C:41-2(c), the plaintiff must demonstrate (1) the existence of an enterprise, (2) that the enterprise engaged in or its activities affected trade or commerce, (3) that defendant was employed by, or associated with the enterprise, (4) that he participated in the conduct of the affairs of the enterprise, and (5) that he participated through a pattern of racketeering activity. *State v. Ball*, 141 N.J. 142, 181-187, 661 A.2d 251, 270-274 (N.J. 1995). New Jersey RICO defines "racketeering activity" as including, among other things, bribery, extortion, forgery and fraudulent practices, securities fraud, and all crimes set forth in chapter 21 of Title 2C of the New Jersey Statutes. *See* N.J.S.A. § 2C:41-1(a).

2175.      Unquestionably all defendants by incorporating Acts I, II, and III have participated and are in violation of NJ RICO.  There are the existence of two enterprises, that are confederating to defraud the Saga Enterprise, all defendants were associated or employed by the enterprise – and this applies to all state and federal causes of action, that the activities by the defendants predicate acts definitely negatively affected commerce – both interstate and foreign. All defendants participated in the conduct and affairs of the enterprise(s) as detailed in Act I, II, and III that details all of the differing patterns of related racketeering activity in multiple schemes to defraud.

2176.      In order to demonstrate a pattern of racketeering activity under New Jersey RICO, the plaintiff must show (1) that the defendant committed at least two predicate acts and (2) that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or

methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents. *See Ball*, 141 N.J. at 184-185, 661 A.2d at 272-273.

2177.    Again, all defendants without qualification have committed at least two predicate acts or have conspired to commit two NJ RICO acts.

2178.    A person who proves a claim under section 2C:41-2 of New Jersey RICO is entitled to recover threefold the damages sustained by him, and reasonable attorneys' fees. N.J.S.A. § 2C:41-4(c).

2179.    "The language of the New Jersey counterpart of [the federal Racketeer Influenced and Corrupt Organizations Act ("RICO")], 18 U.S.C. § 1962, N.J.S.A. 2C:41-2, is identical in all material respects except that the New Jersey Act is directed toward enterprises engaged in or the activities of which affect 'trade or commerce,' not interstate or foreign commerce." *Kievit v. Rokeach*, No. 86-2592, 1987 U.S. Dist. LEXIS 16131, at *20-*21 (D.N.J. Oct. 29, 1987) [enhanced version];*accord New Jersey Office Supply, Inc. v. Feldman*, No. 89-3990, 1990 U.S. Dist. LEXIS 6620, at *9 (D.N.J. June 4, 1990) [enhanced version].

2180.    "The virtual identity of the Federal and New Jersey RICO acts permits the Court to interpret them in a consistent manner." *Kievit*, No. 86-2592, 1987 U.S. Dist. LEXIS 16131, at *20-*21; *accord Gilmore v. Berg*, 761 F. Supp. 358, 375 (D.N.J. 1991) [enhanced version].

2181.    That is, at least where "[t]here is no state decisional law on . . . [an] aspect of civil [New Jersey] RICO law," "parallel federal case law is an appropriate reference source to interpret the [New Jersey] RICO statute." *Interchange State Bank v. Veglia*, 286 N.J. Super. 164, 177, 668 A.2d 465, 472 (App. Div. 1995), *cert. denied*, 144 N.J. 377, 676 A.2d 1092 (N.J. 1996); *accord Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 510 (3d Cir.2006).

2182.    The civil section of New Jersey's RICO statute authorizes the Superior Court of New Jersey for the protection of the "rights of innocent persons" the jurisdiction to "prevent and restrain" the acts or conduct which violate the RICO statute.  The Superior Court has the power to "divest" the violator or any interest, direct or indirect, in any enterprise, restrict future activities or investments, order the dissolution or reorganization of the enterprise and issue cease and desist orders which specify acts or conduct which must be "discontinued, altered or implemented by any person."  The Court also has the power to order restitution and assess civil monetary penalties and require the violator to forfeit any interest that has been acquired as a result of the fraud or violation of the statute.

2183.    The requirement of the statute is designed to address businesses that are engaged in a "pattern of racketeering activity" as a "regular way of doing business", as opposed to specific instances of fraud and criminal conduct.  Hughes v. Consolidated Pennsylvania Coal Company, 945 F.2d 594 (1991).

2184.    Because the NJ RICO is very similar to Federal RICO, Plaintiff(s) incorporates all of the Federal RICO acts herein as well as the additional NJ RICO violations of predicate Acts as detailed in Acts I, II, and III.

2185.	Plaintiff(s) incorporate each and every predicate act mentioned herein and state the elements for each offense has been met and accounted for.

### ELEVENTH CLAIM FOR RELIEF
### CIVIL CAUSE OF ACTION SECTION 221(2) OF THE WILBERFORCE ACT

2186.	Civil Cause of Action Section 221(2) of the Wilberforce Act, which has its genesis in section 221(d) of H.R. 3887, makes three changes in the civil cause of action available to the trafficking victims. First, it enlarges the civil cause of action to cover victims of violations of the involuntary servitude and trafficking provisions. Second, it gives victims a cause of action against those who have profited.

2187.	An individual who is a victim of a violation of 18 USC (Sections § 1589, § 1590 &  § 1594) of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees.

2188.	Dean has been threatened with and by actual use of abuse of legal process for years now by all defendants.  And for what? Because he won and election in Canada for the board of the federal regulator and because the membership wanted change and the membership was sick of their non-sense.  Acts I, II, and III detail it all and how it has spun out control to the point that Dean was literally forced to defend himself against false level one indictable offense(s) in NJ and the fall-out from that continues today and will do so well into Dean's natural life.

### TWELFTH CLAIM FOR RELIEF
### ARTICLE III STANDING UNDER THE CONSTITUTION OF THE UNITED STATES

2189.	**Article III Standing:** a plaintiff must have suffered an "injury-in-fact" that is distinct and palpable. That injury in turn must be fairly traceable to the challenged conduct.

2190.	An injury in fact may simply be the fear or anxiety of future harm. Article III injury-in-fact requirement even without physical symptoms of injury caused by exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law. [Deutsche Bank, 443 F.3d at 264–265.]

2191.	Here the False Accusers and the Imm Defendants have each in their own way inflicted an injury-in-fact. For False Accusers they have made Dean's reputation for now and forever as being "that guy" that was once charged with "anal rape" and was going to commit "mass murder." Dean was forced to discuss these things in legal proceedings and were all sham litigation (Noerr-Pennington Doctrine Exception) applies as well as the sham police report that could have been found and the general gist of the charges inferred.

2192.	Likewise, from being removed from the board from the Imm defendants – Dean cannot sit on any corporate board in anywhere in the world from a direct proximate cause and injury – in – fact of criminals protecting themselves to keep power of the Immigration Enterprise.

2193.    Plaintiff Dean hereby invokes the Federal authority of the United States District Court to redress the injuries-in-fact by all defendants.

2194.    To satisfy the "case" or "controversy" requirement of Article III , which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision (*Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

2195.    Dean has clearly demonstrated "injuries-in-fact" and the injuries are certainly more that merely "fairly traceable" to the Imm defendants – they are directly traceable.

2196.    In addition to the immutable requirements of Article III , "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Id.*, at 474-475. Like their constitutional counterparts, these "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen* v. *Wright*, 468 U.S. 737, 751 (1984), are "founded in concern about the proper — and properly limited — role of the courts in a democratic society," *Warth*, *supra*, at 498; but unlike their constitutional counterparts, they can be modified or abrogated by Congress, see 422 U.S., at 501. A plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit. See *Allen*, *supra*, at 751; *Valley Forge*, *supra*, at 474-475.

2197.    Here Dean is stating that his entire Bill of Rights has been shredded by the defendants (as well as the fact that they are all deemed state actors). It is the stigma of "rape," "mass murder," and "bullying and intimidation" that he is now *branded* with by those using illegal means that are in truth real mobsters themselves.    To get relief Dean is now in the unenviable position of having to sue all of these defendants making all of this an even more egregious and *public* situation to be falsely placed into.  It is like diving down a thousand meters more to come up for one breath of air. The world is *spinning* but I am not afraid – I have *special teammates* telling me to do things like "don't erase those text messages..."; you have (false) gems.

2198.    The "zone of interests" formulation was first employed in *Association of Data Processing Service Organizations, Inc*. v. *Camp*, 397 U.S. 150 (1970). Clearly there is a zone of interests herein in this case.

2199.    "Thus the Administrative Procedure Act grants standing to a person "aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 (1964 ed., Supp. IV)." *Data Processing Service v. Camp*, 397 U.S. 150, 153-54 (1970). Clear the Immigration Enterprise is not an American agency – but they act like one as they think they can reach into the United States any old time they please an act lawfully and/or unlawfully as the case may be on the fact of the matter (but actually always unlawfully because they are in violation of 18 USC § 1962).

**THIRTEENTH CLAIM FOR RELIEF**
**FEDERAL CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW UNDER 42 U.S. CODE § 1983.CIVIL ACTION**

**FOR DEPRIVATION OF RIGHTS**

2200.       Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

2201.       "Proper analysis requires that two issues be separated when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. " *Collins v. Harker Heights*, 503 U.S. 115 (1992). Here it is the Township of Cedar Grove, NJ's municipal policy to not give reports, TRO, and related materials to defendants so that they can face their accusers in open Court – but instead conceal these materials.

2202.       The Township of Cedar grove has a policy not to make available the police reports, TRO records, and other items available – and in this case exculpatory items available – as a matter of municipal policy and that makes this a Color of State Law issue as Dean was literally kidnapped in to false legal proceedings into the State of New Jersey and because of their *"policy"* risked being thrown into prison for the rest of his natural life and likely murdered (rapist are not as well liked as murders in prison and especially those rapist convicted of doing things to children)….and then was laughed at by Sgt Det. McDermott, even after Judge Murray tossed it all.

## Violations of Dean's Federal Civil Rights Under Color of State Law Against All Defendants

2203.       *FIRST AMENDMENT VIOLATION - DEFAMATION, SLANDER, & LIBEL*. If not but for the policy of Township of Cedar Grove directing its Police Department to not give the TRO recording and police report so that the Police Report and TRO materials in a timely manner in 2019 none of these matters would have even taken root and Dean and Klassen would still be hedge fund managers and Saga Global Capital Management LLC would have at least been in a much better position that it is now and in turn Dean could have finished the job he started dealing with the Imm defendants and wrestling legal control of the Immigration Enterprise from them.  It would have been a much 'toned down' situation than where the situation is today.

2204.       If not but for the policy of the Township of Cedar Grove to not only shock a person that they have a TRO being served on them with allegations of "anal rape et al" and that there is no need to worry because Bissell is not pressing charges (implying a 'big favor' to Dean from Bissell) and in turn implying that there was no police report when in fact it was sitting on the prosecutor's desk.

2205.        If that report and that TRO hearing was made available in 2017 – none of this chaos would have erupted – and in turn Dean would still be a hedge fund manager and Saga would be a going concern and the Immigration Enterprise would be a different place and Dean/Klassen would have never met Satan's Little Helper & and criminal reprobate Dave Shivas, and in turn would not have had their names trashed at each step of this "Joseph Stalin Gulag Like pre-approved process," because of the "policy" of the Township of Cedar Grove.

2206.        *FOURTH AMENDMENT VIOLATION - RIGHT TO BEAR ARMS*. False accusers did knowingly and falsely obtain the TRO and Amended TRO against Mr. Dean under false pretenses and without probable cause. False accusers were able to obtain Dean's home address. At any moment False accusers could have sent a murder-for-hire individual barreling through the door to kill Dean.

2207.        Keep in mind that this is not a preposterous notion. Each any every false claim that the False accusers have come up with has been projected onto Dean.  They said that he was going to break and enter and murder the Bissell household – what is to say that they would not do it to Dean? The circumstantial evidence points to this one point.

2208.        It does not matter that Mr. Dean did not possess any weapons – what matters is that one of the ten rights in the "Bill of Rights" was taken away.

2209.        It could have been that Ms. Bissell (or Mr. or both or someone they sent) would show up to Mr. Dean's residence and shoot him with her own firearm and Mr. Dean would have no way of protecting himself.

FIFTH AMENDMENT VIOLATIONS MULTIPLE COUNTS (SEE BELOW)

2210.        The constitution states only one command twice – so it really means it. It is also in the Declaration of Independence.

**"No one shall be deprived of life, liberty, or property without due process of law."**

2211.        These words above mean that all levels of government must operate within the law and provide fair procedures – including the Township of Cedar Grove, NJ, and the Cedar Grove Police Department, within the Township of Cedar Grove, NJ.

2212.        Due Process suggests a concern with procedure rather than substance and clearly the procedure to disclose, keep, and give a fair chance to discover what he is being accused of at the base level this includes the Police Report (in hand) and the TRO (not in hand, still). In the Police Report are mention of two videos of Lisa Bissell and James Bissell and of course the Private Detective that Mr. Bissell hired (outside of legal process). Wonder what's on those things and that too was fraudulently concealed and/or not released by Municipal policy.

2213.        Substantive Due Process has been interpreted to include things such as the right to work in an ordinary kind of job and to raise one's children as a parent.  Since all of this criminality started against Mr. Dean he has neither been able to work in his chosen calling nor spend time with his own child because he is literally working under "forced labor" to all of these lawsuits and has to carry this burden around with him at all times.

2214.    Unquestionably, Mr. Dean rights and privileges were destroyed not only in 2017 but also in 2019-2021 but the continuing criminality goes on and will go  on.

2215.    False Accusers, as full deemed state actors, did not give Mr. Dean notice of all of the grounds that they were asserting their case in 2017 – most notably the notion that Mr. Dean was going to murder Ms. Bissell, her family and her *children* every time Mr. Dean and Ms. Bissell spoke face to face or on the phone. Nor did False accusers state that Bissell in the Police Report said they never spoke of that night (02/07/17) ever again – but to Judge Murray it was front and central and all false accusers likely had a copy of the police report in their smart phone and/or briefcase.

2216.    Allegations of repeated threats of mass murder is something that should have gone in both the TRO and Amended TRO as priority #1 but no mention of it until in the middle of the FRO hearing, as the transcript evidence will show.

2217.    Mr. Dean was not given the right to know about the opposing evidence – the fabricated "bloody towel," for instance.

2218.    Depression due to Dean not being a "credible business man" some how did not make it into Judge Murray nor Judge Callahan's ear, nor did Bissell notion that she was bleeding from her anus from more than two months after the supposed 'rape.'

2219.    Civil Rights include: Life, Liberty, and the Pursuit of Happiness.  Dean has not been so happy since False accusers conspired with the Imm defendants and devastated Dean's constitutional guaranteed civil rights and all defendants are deemed state actors.

*SIXTH AMENDMENT VIOLATIONS*

2220.    The Sixth Amendment guarantees the rights of criminal defendants, including the right to a public trial without unnecessary delay, the right to a lawyer,  the right to an impartial jury, and the right to know who your accusers are and the **nature of the charges and evidence against a person so accused.**  It has been most visibly tested in a series of cases involving terrorism, but much more often figures in cases that involve (for example) jury selection or the protection of witnesses, including victims of sex crimes as well as witnesses in need of protection from retaliation.

2221.    The NJ PDVA is considered "quasi criminal" in New Jersey and a police report sent to the prosecutor with NJSA 2C:14-2b – a level 1 indictable offense in NJ would certainly qualify as "evidence against a person so accused."

2222.    The "Constitution" of the Township of Cedar Grove and/or the Cedar Grove Police Department – or any policy does not override the Sixth amendment of the United States – but the folks over at the Township of Cedar Grove say that is the policy did.

*EIGHT AMENDMENT VIOLATIONS*

435

2223.     False Accusers knew that Mr. Dean was utterly innocent and thus their reason that they fabricated the Evidence and kept changing their stories. They were in it to for extortion takes et al and not interested in the truth.

2224.     The prohibition against cruel and unusual punishments has led courts to hold that the Constitution totally prohibits certain kinds of punishment, such as drawing and quartering. Under the Cruel and Unusual Punishment Clause.

2225.     The Supreme Court has held that the Excessive Fines Clause prohibits fines that are "**so grossly excessive as to amount to a deprivation of property without due process of law**." In Law Division, Saga Global Capital Management LLC, because it could not afford a lawyer, is at the mercy of the Court and Shivas et al.  To date the answers, defenses, and counterclaims of Saga have been struck because it can't pay for a lawyer; perjury, subornation of perjury, and fraud has won the day (so far as of this writing).  Is that justice give what has been revealed above?  In short, it is deprivation of property without due process of law because of all of the things that have been withheld by the defendants the defendants at the Township of Cedar Grove and it all could have been avoided early in the process in 2017.

2226.     Who is going to write the $100,000,000 USD check to restore Dean, Klassen and the Saga Enterprise to where it would have been by now had it now been falsely accused by the False accusers and financed by the Imm defendants (in actuality the number is a lot bigger)?

*NINTH AMENDMENT VIOLATIONS – UNENUMERATED RIGHTS*

2227.     UNENUMERATED RIGHTS - NINTH AMENDMENT. The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. RIGHTS RETAINED BY THE PEOPLE. Plaintiff(s) incorporate this discussion of Unenumerated rights for our Canadian "friends."
https://www.law.cornell.edu/constitution-conan/amendment-9

2228.     It is the right to life, liberty, and the pursuit of happiness and what False Accusers and Imm defendants have done – with the color of state law help from the folks down at the Township of Cedar Grove, NJ, (and Cedar Grove Police Department) then these are violations of each and everything that False Accusers and Imm defendants have done.

2229.     It is like the movie "trading places" where the character "Louis Winthorpe III," played by Dan Ackroyd (an actual Canadian himself) had his reputation and career is devastated because of a '$1 bet.' He ends up teaming with Billy Ray Valentine (everyone's favorite comedian Eddie Murphy). Everyone knows how the story ends triumphantly.

2230.     In Dean's case, his "Valentine" betrayed him and sent him to hell for financing from the Imm defendants and extortion takes – literally playing both sides of the Evil Equation. False accusers and Imm defendants have trashed every right Dean has under Article 9 – with the story above can any reasonable person conceive of any

436

right that was not stolen from Dean starting August 9, 2017 besides his divine right to die? A question for the Jury to ponder indeed.

*FOURTEENTH AMENDMENT VIOLATIONS OF EQUAL PROTECTION UNDER THE LAW*

2231.     There has been Sex discrimination against a White Male (Reverse Discrimination).  If ½ of what has been described here was again reversed and it was "Ms. Dean" and "Mr. Lisa Bissell" that Township of Cedar Grove (and Police) would have given the materials much sooner than way later. The Township of Cedar Grove (and Police) clearly discriminated against Dean by not giving him the exculpatory information early and then denied him this right as late April 14, 2021.

> Section 1 states: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Also buried and related to the Fourteenth Amendment in the Article 1, Section 8, Clause 3 of the U.S. Constitution, which gives Congress the power "to regulate commerce with foreign nations, and among the several states, and with the Indian. Congress has often used the Commerce Clause to justify exercising legislative power over the activities of states and their citizens, leading to significant and ongoing controversy regarding the balance of power between the federal government and the states. The Commerce Clause has historically been viewed as both a grant of congressional authority and as a restriction on the regulatory authority of the States.

2232.     Of course, the Commerce Clause is discussed throughout this complaint and it prohibits the things that have been discussed here.  By the Township of Cedar Grove and the Cedar Grove Police Department not giving the information it in turn means that the Township of Cedar Grove helped in a round about way for the False accuser and the Imm defendants to commit Hobbs Act violations but the point is that the Police were intertwined with Bissell and believed her story and then in turn gave the false accusers all kinds of help and cover with their "policy," to cover up her story – and they just assumed that her story would remain the same. Clearly – the "story" has changed dramatically and materially numerous times.

2233.     Plaintiff(s) incorporate each and every aspect of Civil Rights violations in Acts I, II, and III and everywhere else herein.  Plaintiff Dean was further discriminated against from the perspective that he is a Canadian citizen and did not know the laws of the United States and States with regard to the various Prevention of Domestic Violence Schemes and that is because Dean never had those kinds of issues to deal with – and false accusers knew that. False Accusers knowing this, capitalized on their knowledge of the laws and that is how they were so bold and audacious to attempt the scheme to defraud as laid out herein. Therefore, from this perspective this is a 18 USC § 1981 issue as well. False Accusers also capitalized on their knowledge of the Employment Discrimination Claims Under Title VII and by now it is clear that those claims were all invented and fabricated further underscoring the utter and total abuse of the legal system *and the false Federal Questions that in part prevented the removal of ESX – L – 984 – 19 to USDC NJ in 2:20*.  The False accusers left no stone unturned in

their False accusations – it is entirely egregious what they have done – and for the Imm defendants to pay for it all makes it entirely something far worse and throughout this entire process Dean has been denied due process and continued to be denied due process.

2234.        For the other defendants this opens the door wide open to 18 USC § 242 – which is not 'civil' but criminal as well as 18 USC § 241.

2235.        For this instant case it is clear that with everything claimed herein that plaintiff(s) have made a prima facie case of two critical points: defendants have subjected the plaintiff(s) to conduct that occurred under color of state law, and this conduct deprived the plaintiff(s) of rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

<u>**FOURTEENTH CLAIM FOR RELIEF**</u>
**FEDERAL CIVIL RIGHTS VIOLATIONS UNDER 42 U.S. CODE § 1985 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

2236.        For the Canadian "friends," the Imm defendants, they ought to get a quick primer of the Federal law that they paid to have violated 42 USC § 1985; the False accusers knew precisely this law that they were maliciously, willfully, and intentionally violating as described herein and the relevant items to this action are in **bold**: 42 U.S. Code § 1985.Conspiracy to interfere with civil rights:

**(2)Obstructing justice; intimidating party, witness, or juror**

**If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so** attended or testified, **or to influence the** verdict, presentment, or **indictment** of any grand or petit juror **in any such court**, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; **or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;**

**(3)Depriving persons of rights or privileges**

**If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;** or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; **in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby**

**another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.**

2237.    Dean reincorporates all of the matters in Act I, II, and III herein and elsewhere herein as it in totality describes the situation above and especially so when 18 USC § 1512, 18 USC § 1513, and that not only the individual persons were injured but also the property (The Saga Enterprise).

2238.    It is no mistake that so many 'lawyers' were involved in the False accusations of False accusers and the Imm defendants – they *knew* what they were doing.  That all of these matters intersect so many different Federal and State laws is telling as well.  They gambled that they would be able to accomplish what they set out to do and that was to imprison Dean (and more) and that there would have been a zero percent chance of Dean ever getting his hands on the Cedar Grove Police Department from prison (and especially if he were dead).

2239.    Section 1985, in pertinent part, prohibits conspiracies either to deter, by force, threat, or intimidation, any party or witness from attending or testifying freely, fully, and truthfully in a federal court or to injure any party or witness in his person or property because he attended or testified in federal court.  Isn't this what is also at root in this case – Dean was elected by the ICCRC membership to investigate their alleged corruption and look how far their corruption has gone. It chased him right over the US border after False accuser gave them an invitation to participate in an Evil, Reprehensible Scheme to Defraud, that it rose to the level of becoming numerous offenses against the United States.

2240.    42 U.S.C. § 1985(3) provides citizens with a cause of action against private conspiracies to violate constitutional rights. No state action prerequisite exists for such lawsuits – but herein there is state action.  To be clear – defendants conspired to deprive Plaintiff(s) Civil Rights but the Cedar Grove Defendants were not part of the conspiracy.  The defendants capitalized on the Township of Cedar Grove's policy to not release information in violation of the Sixth Amendment, for instance.  This means that defendants are deemed state actors in violation of 42 USC § 1985 and utter violation of Dean's federally guaranteed civil rights including his Bill of Rights and the 14th Amendment rights, for instance.

**FIFTEENTH CLAIM FOR RELIEF**
***NEW YORK STATE CIVIL RIGHTS VIOLATIONS CAUSE OF ACTION***
**STATE CONSTITUTIONAL RIGHTS VIOLATION**

2241.

2242.    In the same way, Dean's New York Civil Rights have been trashed for the same reasons above as well as his NJ Civil Rights – Dean was "kidnapped into the state of NJ through Legal Process," and as their "guest" he was given a harsh rough ride.

2243.　　　Article 2 New York Civil Rights Law S 2. Supreme sovereignty in the people. No authority can, on any pretense whatsoever, be exercised over the citizens of this state, but such as is or shall be derived from and granted by the people of this state.

2244.　　　Elements to prove pursuant to the New York State Constitution: **ARTICLE I**, Bill Of Rights, Security against unreasonable searches, **seizures** and **interceptions.** All defendants caused by the False accusers caused the Cedar Grove defendants to reach into New York, without probable cause and yank Dean into the New Jersey circus described herein, depriving Dean of his right of not being **"seized" and "intercepted," without probable cause.** Plaintiff has suffered damages now and into the future, as a direct proximate result of the willful, wanton, and despicable acts of the False Accusers and Imm defendants involving the Cedar Grove defendants in their scheme to defraud, and thus Plaintiff Dean's NY constitutional rights were, and still are being violated. To wit:

> §12. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.

2245.　　　Here the Temporary Restraining Order 08/09/17 and the Civil Case filing of 02/05/19 had the effect of "seizing" and "intercepting" the Plaintiff and the Plaintiff(s)' property and business. A TRO for all purposes sake is a "warrant" because it is required to be answered almost immediately.

### SIXHTEENTH CLAIM FOR RELIEF
### NEW YORK STATE COMMON LAW FRAUD

2246.　　　It is of note that Plaintiff(s) "only" include the New York causes of action but can amended to include causes of action for all of the other states contained herein as a function of the "miserable factor" by defendants in fraudulently defending this claim from this point on. Those that tell the truth will come out ahead in the short and long run. United States District Courts have harsh perjury penalties.

2247.　　　Common law fraud (1) defendants through Mr. Craig Peretz and Sierra Global Management LLC made material misrepresentations, (2) with knowledge of its falsity, (3) with intent to defraud plaintiff(s), (4) on which plaintiff reasonably relied on and (5) that caused damage(s) to plaintiff(s) as a result or the elements of a fraud claim are 1) the making of a statement, 2) the falsity of the statement, 3) an intent to deceive, called "scienter", 4) reasonable reliance on the statement by the injured party and 5) injury sustained as the result of the reliance. Often a fraud or a scam will be both a civil wrong and a crime.

2248.    Peretz stated that he wanted to "help Lisa" with "no take," and was going to figure out a way where she could raise capital with Saga Global Capital Management LLC without the need of a series 7 license and all of this was false and it did "deceive," and the "scienter," of Peretz and Sierra Global Management LLC was to have Klassen and Dean rely on Peretz' statements to the detriment of Klassen, Dean and Saga Global Capital Management LLC, and as a result Plaintiff(s) have suffered grievous injuries.

2249.    After March 2, 2017, there was fraudulent concealment that "Kim" and "Tom" did not think things were "kosher" in direct reference to Dean's immigration issues in Canada, and that was not disclosed until 2020 by False accusers.  Had that been disclosed then Peretz would have likely not worked with Dean, Klassen, and Saga and the rest of the diabolical scheme to defraud would have never taken place.

2250.    That being the case, Peretz just carried on working with Mr. Klassen anyways in the DDQ, knowing that Dean was being lured in by Bissell the entire time and Klassen was being lured by Peretz.  False accusers wanted to extort Dean, Klassen, and Saga for a big piece of equity of Saga, in the event that Dean did not go to prison and was not murdered (as described above).  It is not credible for the Jury to believe that Peretz, and as his position of COO of Sierra Global Management LLC – making a puny 7% (or thereabouts each and every year) while the Saga Enterprise was tracking to greater than 25%, was not in on the scheme to defraud.

2251.    From another perspective, after Bissell claimed she stopped talking to Dean and wanted nothing to do with his company, Peretz kept working with Klassen until their scheme to defraud was ripe to be hatched (See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir.1997); Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V. 17 N.Y.3d 269, 276 (2011). Fraud may also be based on a "material omission of fact." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011).

2252.    Peretz never called nor emailed Klassen that the relationship was over – it was when Dean was served with the TRO that Dean called Klassen and said don't call Peretz because that might have been a violation of the TRO.  Peretz was in on the scheme as was Sierra.

2253.    Peretz has been the background scheming with false accusers the entire time as they have been extorted in legal proceedings.

2254.    Because the Police Report was recently obtained it tolls the statute of limitations.

## SEVENTEENTH CLAIM FOR RELIEF
### NEW YORK STATE FRAUDULENT MISREPRESENTATION

2255.    The plaintiff(s) have shown herein how the fraudulent misrepresentation of Peretz and Sierra Global Management LLC was made and that it was false. Furthermore, Peretz and Sierra Global Management LLC knew that at each step of the way that their misrepresentation was known to be false and that it was simply another step in the scheme to defraud and attempt to enrich themselves at Dean, Klassen, and the Saga Enterprise's expense and detriment.  All of Peretz' and Sierra Global Capital Management's fraudulent misrepresentations

were made with knowledge that it was not the truth and their actions were in fact a scheme to defraud. Dean and Klassen relied on the statements of Mr. Craig Peretz, a well-known figure in the hedge fund industry and the COO of Sierra Global Management LLC. Peretz and Sierra Global Management LLC breached their express agreements to act in good faith and follow the law – they did not. If not but for this reliance on Peretz' statements the False accusers' scheme to defraud would never had the chance to take root as it did because the 'back story' would not be available at all. See Bank of Am., N.A. v. Bear Stearns Asset Mgmt., 969 F. Supp. 2d 339, 351 (S.D.N.Y. 2013)). Peretz and Sierra Global Management LLC possessed "special facts" about Dean, Klassen, and Saga Global Capital Management LLC because there were at least two investigations, one involving a private investigator who was operating without permissible purpose or authorization (See Pramer S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89, 99 (1st Dept. 2010).

2256.    Peretz has been the background scheming with false accusers the entire time as they have been extorted in legal proceedings.

2257.    Because the police report was recently obtained this count is also tolled. All defendants participated in these schemes and all are liable.

## EIGHTTEENTH CLAIM FOR RELIEF
### NEW YORK STATE JUDICIARY LAW §487 (ATTORNEY DECEIT)

2258.    At all times every single Imm defendant Lawyer was operating in the State of New York because they were representing Dean since his election of November 12, 2017, and Dean was never properly removed from the Board of Directors of ICCRC.  Alternatively, Richard Dennis, a New York State resident was taking the advice of these attorneys in the state of New York and then directing their actions at Dean as well as conspiring with the False accusers to do what they did in NJ and NY (with Peretz and Sierra). This in turn may mean that all of the false accuser lawyers are too, Dean's attorneys.

2259.    The deceit was directed at the court or a party regarding ongoing litigation and/or probable future litigation that is a "chronic" pattern or "extreme" deceptive practice, significant, long, and very demonstrable; and damages are approximately caused by the deceit or deceptive practice.

2260.    These lawyers are liable for treble damages that they have caused Plaintiff Dean.

2261.    Unquestionably all of these elements have been met amply through out this complaint as it is the abuse and manipulation of the legal system by morally and legally flexible lawyers as one of the root causes of the scheme to defraud. All defendants participated in these schemes and all are liable.

## NINETEENTH CLAIM FOR RELIEF
### NEW YORK LEGAL FRAUD

2262.    The acts done or omitted by all "attorneys" involved in this matter were as part of steps in a scheme(s) to defraud plaintiff(s) and/or destroy their business and property and it amounted to "positive fraud," as well as what has transpired is construed as a fraud on the court because of its detrimental effect upon the public interests and public and private confidence.

2263.    Chief Justice Warren Burger (for 17 years on the United States Supreme Court) predicated 35 years ago that America was turning into a "society overrun by hordes of lawyers, hungry as locusts." Warren E. Burger, Our Vicious Legal Spiral, 16 JUDGES' J. 22, 49 (**1977**)[1] Footnote 1: Locust: "…migrating in swarms that strip the vegetation from large areas." (Dictionary.com).  In this instance it is a migrating "swarm" of lawyers also invading the United States from Canada affecting commerce – interstate and foreign.

2264.    Plaintiff(s) incorporate each and every instance of "lawyer fraud," which constitutes a good portion of this entire complaint and incorporates it here to satisfy the elements of this cause of action.  It is of note that these 'common law causes of action' listed below could also include the 'common law causes of actions' for all of the other states were there was RICO activity and in fact these may be amended to this complaint and that also depends on the "miserable factor" of defendants going forward.

### TWENTIEETH CLAIM FOR RELIEF
### NEW YORK BREACH OF CONTRACT LOST PROFITS DAMAGES

2265.    The damages resulted or were caused by the breach; the plaintiff(s)' losses may be proved with reasonable certainty; and the parties fairly contemplated the damages in question at the time the contract was entered into by the parties.

2266.    The Imm defendants' breached Dean's contract with ICCRC and that was to investigate ICCRC as authorized by the membership.  Javier Vinsome, one of the Imm defendant directors that should not have been at the regulator (in violation of CNCA and 18 USC § 1962) was making some $100,000 - $250,000 (CDN) per year it is the understanding of Dean and therefore with all of the work that Dean has put into these matters, Dean should also get paid the equivalent amount now.

2267.    Peretz said to Dean and Klassen after seeing the Saga Global Capital Management LLC demonstration that he could "raise capital for that," as well as that he had never seen "anything like that before," as the demo produced a result of around 100% return and north of 70% on another.

2268.    Likewise, Peretz, and Sierra Global Management LLC also had an oral agreement with Dean, Klassen, and Saga Global Capital Management LLC to raise capital for the Saga Enterprise, and the False accusers (that includes Peretz and Sierra) wanton, willful, and deliberate actions to not only destroy the institutional contacts and a business and/or business transaction as well as all the other Saga Enterprise clients and/or future clients.

### TWENTY - FIRST CLAIM FOR RELIEF

**NEW YORK PUNITIVE DAMAGES DUE FROM TORTFEASOR**

2269.     The elements to prove for punitive damages to be awarded: to punish a defendant; for wanton and reckless; malicious acts; and to protect society against similar acts.

2270.     Without question the False accusers and Imm defendants schemed to defraud Dean, Klassen, and the Saga Global Capital Management LLC and they need to be severely punished.  Take away all they have, and all they are going to have, and let the public know that schemes to defraud, and especially the aggravated malicious acts as described herein, will not be tolerated nor excused in any kind of way.

### TWENTY - SECOND CLAIM FOR RELIEF
**NEW YORK TORTIOUS CONDUCT LOST PROFITS DAMAGES**

2271.     The elements to prove a reasonable certainty to plaintiff's damages; and a causal connection or relationship between the damages and defendant's negligence.

2272.     Without question there is a causal relationship to all of the damages that have been inflicted on Dean, Klassen, and the Saga Enterprise.

2273.     If not but for the willful, wanton, and illegal actions of the defendants -  Dean, Klassen, and Saga Global Capital Management LLC - would have been very successful hedge fund managers by now and that the lost profits need to be restored to where they would have been.

2274.     Elements to prove: misrepresentation; concealment; of material facts; and without intention to defraud.

2275.     This speaks directly to the concealed Police Report and the fact that the False accuser defendants have been strutting around with it visiting court(s) knowing that they were perpetrating a scheme to defraud.

### TWENTY - THIRD CLAIM FOR RELIEF
**ESTOPPEL IN PAIS**

2276.     Elements to prove: a party; because of his or her conduct; is denied the right to plead or prove; what would otherwise be an important factor in the case; the act or omission must have been inconsistent with the position subsequently taken by the person sought to be estopped; must have been done not only with the intention of influencing the conduct of the person who asserts the estoppels; and must have, in fact, so influenced him.

2277.     Plaintiff(s) incorporate this against the False Accusers for reason of the fraudulently concealed police report as well as the fact that the Mass Murder threats were concealed.

2278.     Plaintiff(s) incorporate this against Imm defendants for hiding the Third Party Private Corporation and then punishing Dean for exposing it.

2279.    Plaintiff(s) incorporate this against the Imm defendants because at the board trial it was concealed that right in the CNCA it says that there is a proper way to remove directors and that is only by the members who elected the director to remove that director. What's more, Michael Pace, of the Imm defendants fraudulently concealed the proper way to appoint directors with respect to the memo he wrote in 2015 and all principle defendants knew about before launching the fraudulent discipline complaints.  What's more, the fraudulent concealment of the third party private party by all Imm defendants is also something that negatively affects all of the legality of these matters.

### TWENTY - FOURTH CLAIM FOR RELIEF
### INSURANCE BROKER LIABILITY

2280.    Elements to prove from an insurance broker for failing to obtain appropriate or sufficient coverage: a special relationship exists where the broker received compensation from the insured, other than a commission; or there was a discussion between the broker and insured regarding coverage where the insured relied upon the broker's expertise or advice; or a course of dealing existed indicating reasonable notice to the broker that his or her advice was sought and relied upon; the broker did not provide the appropriate or sufficient coverage; and the insured was damaged.

2281.    Three times Dean was denied coverage because the Insurance broker did not arrange appropriate coverage.  The Insurance broker and indeed the insurance companies all confederated with the Imm defendants to not provide coverage as it best sought their collective interests and/or to make sure that there would not be insurance coverage where an ordinary person (read Jury Member) would think that insurance should have been covered.

### TWENTY - FIFTH CLAIM FOR RELIEF
### INSURANCE BROKER MALPRACTICE

2282.    Elements to prove for damages arising from an insurance broker's malpractice or breach of contract: against a broker; based on the broker's failure to procure a particular type of coverage; plaintiff made a specific request; and the request was to the broker for that coverage.

2283.    Here the Imm defendant insurance broker(s) committed wilfull malpractice and breached their contract as it was the broker's duty to provide the particular types of coverage that could be made against Dean. Plaintiff and/or his lawyers had spoken to the insurance broker after the "discipline complaints" and no new policy riders were added to that policy nor the directors' insurance policy after Dean became a member of the board at ICCRC.

### TWENTY - SIXTH CLAIM FOR RELIEF
### INSURANCE CARRIER'S BAD FAITH

2284.        Elements to prove, when carrier refuse to settle: the insurance carrier's conduct; constituted a gross disregard; that the insurer engaged in a pattern of behavior evincing a conscious or knowing indifference; to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted; of the policyholder's interests.

2285.        That there is a pattern here also shows that indeed these insurance defendants are part of the overall RICO schemes. Other immigration consultants have been given the shaft by this insurance company.

2286.        The discipline complaints are ongoing and the removal from the board enjoys tolling and equitable estoppel principles so that there are no statute of limitation issues. The email that the from Ms. Salloum to the insurance broker that was confidential made its way to the Imm defendants and in turn made its way into T-834-20.  It is just one instance of the "back room dealing," and further shows that while Dean was on the board or fighting discipline complaints that similar emails such as this were likely sent and will be borne out in discovery.

### TWENTY - SEVENTH CLAIM FOR RELIEF
### ABUSE OF PROCESS

2287.        Elements to prove: regularly issued process, either civil or criminal; intent to do harm without excuse or justification; and use of process in perverted manner to obtain collateral objective.

2288.        Here the Imm defendants and the False accusers are culpable of this cause of action for the reasons set forth in this entire complaint.

### TWENTY - EIGHTH CLAIM FOR RELIEF
### CONCEALMENT OR DESTRUCTION OF EVIDENCE (SPOLIATION OF EVIDENCE)

2289.        Elements to prove: the individual or entity to be sanctioned; was responsible for the loss or destruction; of evidence; crucial to the establishment of a claim or defense; and at a time when he, she or it was on notice that such evidence might be needed for future litigation.

2290.        Without question the False accusers have aggravated culpability on this matters for things such as the text messages, bloody towel, and police report, and of course the threats of mass murder. False accusers said that Mr. Bissell filed for divorce in Florida and actually it was the other way around. The list goes on as detailed herein.

### TWENTY - NINTH CLAIM FOR RELIEF
### CONCERT OF ACTION

2291.        Elements to prove: joint and several liability; on the part of all defendants; having an understanding express or tacit; to participate in a common plan or design; to commit a tortious act; each defendant charged with acting in concert must have acted tortiously; and one of the defendants committed an act in pursuance of the agreement constituting a tort.

2292.    With respect to all of the fraudulent complaints filed by the Imm defendants they were all for the benefit of Richard Dennis so he could accept his bribe to be on the board again and therefore New York has jurisdiction over this as well. Y'all wanted Richard Dennis – you got em' – and the Imm defendants overrode the will of the entire membership with less than 1% of the Imm defendant ICCRC membership participating in this portion of the scheme to defraud.

2293.    All of the other defendants are also culpable for their actions herein as "concert in action" is essentially conspiracy and is described amply herein.

## THIRTIEETH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF LEGAL PROCESS (MALICIOUS PROSECUTION)

2294.    Elements to prove: the defendants maliciously commenced and continued an action against a plaintiff; the proceeding was terminated in favor of the plaintiff or under circumstances such that innocence is indicated; probable cause for the proceeding was lacking; and the plaintiff's person or property was interfered with by the issuance of a provisional remedy, such as an attachment or an arrest.

2295.    Again, Dean was yanked out of the State of New York because of the False Accusers and despite the police telling Dean there were no criminal charges pending there clearly were. Had that prosecutor had any shred of evidence of what Bissell claimed things may be different for Dean and he would be in Prison by now and likely dead too for the reason already stated herein.

2296.    But the proceeding was terminated in the favor of Dean, with the documented lies in the police report (and transcripts) it is clear there was never any true bona fide "probable cause," and the Dean and the Saga Enterprise were most definitely "interfered" with by the issuance of the TRO as well as the police report that was, now as Dean understands it, requisite to issue a TRO in this circumstance.

## THIRTY - FIRST CLAIM FOR RELIEF
## FAIR CREDIT REPORTING ACT

2297.    Elements to prove: the plaintiff's credit information; was released for a purpose other than; for meeting the needs of commerce for consumer credit; personal insurance; and other information in a manner; that is not maintained in a fair and equitable manner to the consumer regarding; confidentiality; accuracy; relevancy; and proper utilization of such information; and is done in a willful or negligent manner or obtained under false pretenses.

2298.    The Imm defendants had Dean's SSN when he filled out forms and gave them to Lawrence Barker – the then ICCRC acting President, CEO and permanent registrar.  The Imm defendants gave Dean's SSN with no permissible purpose to the False Accusers and they hired a private detective to do a "background check" on Dean.  They stated that Dean had lost properties and the False Accusers made out like it was a "current event" to the Police but that in fact happened related to the real estate financial crash where the entire credit system

froze up and tens of millions of people lost their properties in and around or before 2008. Cleary, the false accusers did not equitably nor fairly use this information and was done in a willful and negligent matter to kick off the story of Dean is "not a credible business man." In 2017 Dean's credit rating was near perfect, but now as a result of the scheme to defraud his credit rating is in chaos as a direct result of what the defendants have done in their schemes to defraud.

### THIRTY - SECOND CLAIM FOR RELIEF
### NEW YORK ANTITRUST STATUTE – DONNELLY ACT

2299.    The elements to prove: engaged in a contract, combination and conspiracy; in unreasonable restraint of; foreign and interstate trade commerce; and damages were a direct and foreseeable result of these violations.

2300.    Defendants reached into New York, and pulled Dean into T-834-20, and then arranged to skip talking about things such as "jurisdiction" and made Dean provide a Canadian address where he had none. Who is say what Dean was going to do with CICC in the United States or abroad if and when Ms. Salloum gave it to Dean to run and/or own CICC in the future.

2301.    Dean reserves the right to bring in the other state and federal laws under the Clayton Act and Antitrust Act as the "miserable factor" is determined as described above. As well, this is also a function of whether or not the defendants claim that the CICC is Dean's property in any way shape or form. This is one of the basis for their false civil suits in T-834-20 and the Imm Enterprise's' urgent motion to suspend and/or revoke Dean's immigration consulting license. Likewise, these causes of action will also appear in the amended complaint TRADEMARK AND TRADE DRESS DILUTION, TRADEMARK AND TRADE DRESS INFRINGEMENT & IDEA MISAPPROPRIATION.

### THIRTY - THIRD CLAIM FOR RELIEF
### SON OF SAM LAW

2302.    Elements to prove with written notice to the Crime Victims Board:

1.  any person, legal entity, or representative that;
2.  knowingly contracts for, pays, or agrees to pay;
    1.  any profits from a crime to a person or his or her representative charged with or convicted of that crime; or
    2.  any funds of a convicted person;
3.  where such conviction is for a specified crime; and
4.  the aggregate value exceeds or will exceed $10,000

2303.    Almost sounds like RICO but it is a bit different and therefore RICO and Son of Sam can be prosecuted concurrently. All elements are met as detailed throughout this complaint. RICO and Son of Sam issues on ones' resume are still not as bad as being accused of Forced Violent Sodomy and Mass Murder including Children – so no worries, right? Actually, do worry – Dean is innocent. Y'all are not.

### THIRTY - FORTH CLAIM FOR RELIEF
### EMOTIONAL DISTRESS (INTENTIONALLY INFLICTED)

2304.     Elements to prove: intentional or reckless; extreme and outrageous conduct; intended to cause severe emotional distress; forming the nexus between the conduct and the injury; and causing severe emotional distress to another.

2305.     For nearly four years Dean has had to reach inside himself and pull out his own proverbial guts out to prove that he is innocent and that it was the False accusers and Imm defendant working in league to destroy an innocent man for profit and to cover their own crimes and keep and get more power.  Pure Corruption.

2306.     Defendants' reading this complaint likely feel almost as bad as Dean did – as what Imm defendants did is still not as bad as what they (falsely) accused Dean of involving children!

2307.     A further difference is that Dean is innocent, and all defendants have earned every bit of what they have coming to them and they too will get a chance to stand tall in front of a Judge, with *awesome power,* frowning on them as <u>all</u> of the charges are read and as <u>all</u> of the evidence comes rolling in.  Defendants get the "opportunity" to stand in front of the Judge – just like Dean did in utter terror on 08/17/19. It has been emotionally distressful as like Edmund Dantes (*Count of Monte Cristo*) – everything was torn from Dean suddenly and unlawfully.

### THIRTY - FIFTH CLAIM FOR RELIEF
### FUTURE EARNING CAPACITY DAMAGED BY TORT and FUTURE INJURY FROM PRESENT TORTIOUS PERSONAL INJURY

2308.     It must be established with reasonable certainty based on the difference between plaintiff's potential earning capacity before and after the tort.

2309.     Here is some reasonable certainty to help put it in prospective for the Jury.

2310.     Bernie Madoff, the biggest Ponzi schemer in the history of the world died on April 14, 2021.  He was welcomed with 'open arms' into prison as widely reported in the media because the prisoners all admired him. Madoff was making his clients about 15% (Ponzi return) per year and was 'managing' hundreds of billions of dollars for his "clients" until his fraud was revealed and his mighty disgrace followed. He would make 2% management fee per year 20% of the profits.

2311.     Jeffrey Epstein, the disgraced financier, lured young women or minors for sex with Ghislaine Maxwell – it is "alleged." Even though Maxwell has not been proven guilty of a crime in a court of law – everybody knows she is guilty. Right? Everyone knows that Epstein is guilty too and he died in prison of "suicide" – he did not deserve a fair trial. Right?  For what it is worth, Plaintiff(s) think that Epstein and Maxwell probably "did it" and no matter if Maxwell is found guilty or not, she still has the stigma of being involved with young girls for sex.  It is sick and repugnant.  But what the world assumes about Epstein and Maxwell is what the False accusers and the

Imm defendants' finance of it all wanted the world to believe, except the Evidence shows it was all a scheme to defraud.

2312.     Hannibal Lecture of the "silence of the lamb" movies  – although a cannibal and a butcher of people - never killed children. He's would think that would be rude.  Jeffrey Epstein Never killed Children either. Nor did Ghislaine Maxwell never killed children.

2313.     But False Accusers wanted the world to believe that Dean – with no prior criminal conviction or hint of it anywhere in the world - would suddenly not only commit brutal forcible violent sodomy et al (arguably equivalent and/or worse than Epstein/Maxwell crimes) and then also murder in cold blood Bissell's children – which is arguably the equivalent to Hannibal Lecture's crimes. Eating people or murdering children are definitely topics that churn peoples' stomachs.

2314.     What's more, defendants wanted the world to believe Dean was going to throw it all away on Bissell, with absolutely no motive, and further that Dean was going to "throw it all away," on the hopes that Bissell would somehow remain "silent," "compliant," "tell no one," and "do whatever Dean directed her to do," when in fact Dean was hardly paying attention to Bissell. Defendants need to pay for all the damages with severe punitive measures imposed by the Jury and the Court.

2315.     Of course, the Evidence and Police Report foreclose on these scenarios by Bissell's own words, but that is what False accusers wanted to do.

2316.     Dean is forced to talk about it all to prove his utter innocence and their scheme to defraud and in doing so Dean's future earning capacity is devastated and he would be earning a lot more than Bernie Madoff because Dean had the 'chops' to know how to actually trade in the stock market far past 15% and legitimately.

## THIRTY - SIXTH CLAIM FOR RELIEF
### INTENTIONAL OR MALICIOUS HARM TO ANOTHER (PRIMA FACIE TORT)

2317.     Elements to prove: the action complained of; was solely motivated by malice or "disinterested malevolence"; without excuse or justification; by act or series of acts that would otherwise be lawful; plaintiff suffered a specific, measurable loss; requiring special damages.

2318.     In case the action complained of has been described herein amply and the damages to the Dean, Klassen, and Saga Global Capital Management LLC were stark. Approximately 10 years of their lives went down the drain as False accusers did these attacks months or weeks before Saga was going to get its first Big Client and in turn the investors that were in Saga also lost their investment and Dean, Klassen, and Saga or at least ethically responsible to pay that back. That is about $1,000,000 in cash just to pay back investors that took a chance on Saga.

## THIRTY - SEVENTH CLAIM FOR RELIEF
### ALTERNATIVE LIABILITY

2319.        Elements to prove; all possible tortfeasors are before the court; all have breached a duty toward the

plaintiff; the conduct of one of the defendants has caused plaintiff's injuries; and the defendants, as a group,

have better access to information concerning the incident than does the plaintiff.

2320.        This too is relevant because as a director of ICCRC Dean could not get the records that he sought; as for

the False accusers Dean could not get the police report for years and still cannot get the TRO recording of

08/09/17 and order a transcript.

### THIRTY - EIGHTH CLAIM FOR RELIEF
### CONSPIRACY

2321.        Elements to prove: A primary tort; A corrupt agreement between two or more parties; An overt act in

furtherance of the agreement; The parties' intentional participation in the furtherance of a plan or purpose; and

Damage or injury.

2322.        All of these elements are herein and merge into the RICO claims both Federal and State for all

defendants.

### THIRTY - NINTH CLAIM FOR RELIEF
### INDIVISIBLE HARM CAUSED BY SEPARATE TORTFEASORS

2323.        Elements to prove: separate and independent acts; that combine to cause; a single injury; or successive

injuries; and the injuries cannot be apportioned among the tortfeasors.

2324.        With so many defendants and so much corruption there is no way to separate all of the tortfeasors in

their Evil Feast that they have concocted.

### FORTIETH CLAIM FOR RELIEF
### INTEREST AWARDED ON DAMAGES

2325.        To recover interest the elements to prove: upon a sum awarded because of; a breach of performance of

a contract; an act or omission depriving or otherwise interfering with title to; or possession or enjoyment of

property; and except that a court shall award interest in an action of an equitable nature at its discretion.

2326.        Clearly, Dean and Klassen are missing property: 1 hedge fund and are entitled to interest upon a

judgement against the defendants jointly and severally.

### FORTY - FIRST CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS ADVANTAGE

2327.        Plaintiffs' first and second causes of action assert claims for tortious interference with prospective

economic advantage, and tortious interference with contractual relations, generally. To state a claim for tortious

interference with contract or prospective business advantage, Plaintiffs must allege that: (1) they had "some

protectable right," or "reasonable expectation of economic advantage;" (2) "the interference was done

intentionally . . . without justification or excuse;" (3) "the interference caused the loss of the prospective gain;"

and (4) "the injury caused the damage." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989).  The Complaint must include allegations giving rise to some "reasonable expectation of economic advantage."  (This is the one state of NJ exception that Plaintiff's are including but could list many more for all states again as a function of the "miserable factor").

2328.	In this case a 25%+ annual return is more than 7% annual return as the Saga Enterprise was tracking to against the 7% return of Sierra Global Management LLC – and that is the prospective advantage.  The overall scheme was to somehow gain share in the Saga Enterprise by extorting Dean in fact he dodged prison (and death) and instead was embroiled in legal battles. False accusers knew that their first attack made the Saga Enterprise miss their first funding round and they would be in no position to pay for lawyers for a long protracted and costly legal battle. The extortion demand of $875,000 that False Accusers floated to Dean, Klassen and Saga was a number that False accusers knew that Dean, Klassen, and Saga could not pay.  But that $875,000 could easily be converted into equity interests in Saga Global Capital Management LLC – and that was the extortion target.  They know that Dean and Klassen have something terrific for why else would Peretz be drooling all over himself to say that "I can sell that," after he saw Dean's demo and where Dean achieved north of 70% in each demo.  When False accusers, including Peretz and Sierra Global Management LLC entered into the scheme it was TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS ADVANTAGE.

2329.	Finally, Plaintiff(s) reserve the right to add SLAPP counts as well.  When the Imm defendants reached into the United States as a regulator they could be deemed a regulator under any number of state SLAPP statutes.  Again, a function of the "miserable factor," whether or not these get applied.

### FORTY - SECOND CLAIM FOR RELIEF
**TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS ADVANTAGE**

2330.	By Imm defendants using the Immigration Enterprise to chase Dean into the United States and "require" him to be a "member" of ICCRC again so that they could "discipline" him for a supposed activity that had nothing to do with his practice of as a Canadian Immigration Consultant constitutes deemed SLAPP violations in Nevada and New York.

2331.	Nevada's anti-SLAPP statute takes aim at strategic lawsuits against public participation, or SLAPPs, which "abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs." *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 219 P.3d 1276, 1281 (2009).

2332.	Clearly, all these requirements are amply met throughout this pleading. NY and NJ also have anti-slapp laws as well and really is this also not what all of this is about?

### State Securities Fraud Causes of Action

2333.	State Securities Fraud Causes of Action are not "state common law causes of action." Also, to be clear, these are not Federal Securities Fraud causes of action – those can be brought in a separate complaint – again as

a function of the "miserable factor."  In Nevada however,  NRS 90.245 states that the definition of fraud is not limited to common law fraud. Thus, even though common law fraud requires proof of reliance and scienter, these limitations do not apply to state securities fraud actions initiated under NRS 90.570(2). Furthermore, the Nevada Uniform Securities Act "must be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [NRS Chapter 90] among states enacting it and to coordinate the interpretation and administration of [NRS Chapter 90] with the related federal laws and regulations." Our holding, that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3), is consistent with the conclusion reached by other state courts that have addressed the issue. Our holding, with respect to the scienter requirement, is also consistent with the United States Supreme Court's ruling in *Aaron v. Securities and Exchange Commission.*

2334.       In *Aaron*, the Court ruled that scienter is not a necessary element to prove securities fraud under 15 U.S.C. sections 77q(a)(2) and (3) (1976), a federal statute that is almost identical to the Nevada statute at issue here. The Court concluded that scienter is not a necessary element because the federal statute "is devoid of any suggestion whatsoever of a scienter requirement." Moreover, the Court determined that the language of the federal statute "quite plainly focuses upon the *effect* of particular conduct on members of the investing public, rather than upon the culpability of the person responsible." *Secretary of State v. Tretiak*, 117 Nev. 299, 310 (Nev. 2001) See: https://www.leg.state.nv.us/nrs/nrs-090.html

2335.       Nev. Rev. Stat. § 90.570 - Offer, sale and purchase. In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly: 1. Employ any device, scheme or artifice to defraud;2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

2336.       In this case the False accuser Bissell insists that she was the "Director of marketing" of Saga Global Capital Management LLC, and in the False Accusers' Frauds they directly and indirectly made the market for Saga Global Capital Management LLC marketability and the fund itself plummet to zero.  Accusations of forced violent sodomy and mass murder tend to do these things – as was intended by the False accusers. Because the Imm defendants paid for it all – they are all culpable of Nevada Securities Fraud as this is where they directed their initial TRO to.

2337.       Likewise, New Jersey also has its own state Securities Fraud regime.  Securities fraud is a broad term for various crimes that involve some form of market manipulation involving financial instruments such as stocks, bonds, and other securities. There are many ways that participants can engage in securities fraud including investor fraud, insider trading, false advertising, and accounting fraud, among other violations.

2338.    Like any form of fraud, securities fraud can involve a misleading statement. Because securities fraud is governed by both federal and state laws, legal actions can be initiated by private investors or by a government agency such as the U.S. Securities and Exchange Commission (SEC). Thus, depending on the circumstances, a fraudster can be charged with crimes under federal law, New Jersey law, or both.  Here is the focus of NJ's securities law for this instant case: Employ any other deceptive or fraudulent device or scheme to manipulate the market in a security.  New Jersey Statutes 49:3-52 and 49:3 -52.1. Securities fraud in New Jersey also qualifies as NJ RICO under *Racketeering*: New Jersey Statutes 5:12-125. Additionally, to employ any device or scheme to defraud; or to make any untrue statement of a material fact or to omit a material fact in order to make the statements not misleading.  Here all three are present.

2339.    Plaintiff's will also rely on the "New Jersey's Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -166, should apply to all members of this nationwide class." *Intern. Un. Loc. 68 Welf. Fund v. Merck*, 192 N.J. 372, 385 (N.J. 2007). The CFA imposes liability on any person who uses: "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. Consumer fraud violations are divided broadly "into three . . . categories: affirmative acts, knowing omissions, and regulatory violations." *Cox v. Sears Roebuck Co., 138 N.J. 2*, 17, *647 A.2d 454* (1994). Thus, to state a CFA claim, a plaintiff must allege "three elements: (1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8* , 12-13, 842 A.2d 174 (App.Div.), *certif. denied, 178 N.J. 249, 837 A.2d 1092* (2003).  In this case there is clearly unlawful conduct by all defendants, an ascertainable loss, and a causal relationship between and from defendants' unlawful conduct and the plaintiff's ascertainable loss.

2340.    Florida's SECTION 301 Fraudulent transactions; falsification or concealment of facts. 517.301 Fraudulent transactions; falsification or concealment of facts.

> (1)   It is unlawful and a violation of the provisions of this chapter for a person:
>> (a)   In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. **517.051** and including any security sold in a transaction exempted under the provisions of s. **517.061**, directly or indirectly:
> 1.   To employ any device, scheme, or artifice to defraud;
> 2.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
> 3.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.
>> (b)   To publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, communication, or broadcast which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received directly or indirectly from an issuer, underwriter, or dealer, or from an agent or employee of an

issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount of the consideration.

(c)   In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

2341.      The legislative purpose of the Florida Securities and Investor Protection Act was, as its title makes clear, to protect the public from fraudulent and deceptive practices in the sale and marketing of securities. *State v. Beeler,*530 So.2d 932, 934 (Fla. 1988); *Stottler Stagg Associates, Inc. v. Argo,*403 So.2d 617 (Fla. 5th DCA 1981); *O'Neill v. State,*336 So.2d 699 (Fla. 4th DCA 1976); *Nichols v. Yandre,*9 So.2d 157 (Fla. 1942). As such, it is to be given a broad and liberal interpretation to effectuate its purpose. *Arthur Young Co. v. Mariner Corp.*, 630 So. 2d 1199, 1203 (Fla. Dist. Ct. App. 1994).

2342.      Since the False accusers have been enjoying their time in Florida at Imm defendants' expense deploying these schemes to defraud, Florida's securities law in this case is likely as a Florida RICO violation.

2343.      Under the Connecticut Uniform Securities Act Section 36b-4, et. Seq it provides the following:

Sec. 36b-4. (Formerly Sec. 36-472). Prohibited activities re the offer, sale or purchase of any security. Regulations. (a) No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) Employ any device, scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

(b) No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly engage in any dishonest or unethical practice.

(c) No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly use a certificate, professional designation or form of advertising expressing or implying that such person has special training, education or experience in advising or serving senior citizens, unless such person has obtained a certificate, title or designation through completion of a course of study (1) resulting in the awarding of an academic degree to such person that is from an accredited institution of higher education and is in a field related to the activity described in this subsection, as determined by the commissioner, provided the certificate, title or designation is not used in an untrue, deceptive, misleading or false manner, or (2) that is in a field related to the activity described in this subsection, as determined by the commissioner, and is provided by an organization accredited by the American National Standards Institute or the National Commission for Certifying Agencies, an organization recognized as an accrediting agency by the United States Department of Education pursuant to the Higher Education Act of 1965, 20 USC 1099b, as amended from time to time, or any other organization approved by the commissioner provided the certificate, title or designation is not used in an untrue, deceptive, misleading or false manner.

2344.      Since the False accuser Lisa Bissell was insistent that she was the Marketing Director and that she was "qualified," she in turn was essentially saying that in fact she did have a securities license and in fact did not. Just another string of her and the False accusers' schemes that the Imm defendants paid for and/or financed.

Like the other state securities fraud statutes, Connecticut also has a very similar structure.   Saga Global Capital Management LLC's headquarters was in Connecticut.

2345.    All of this is subject to Federal Rules of Civil Procedure Rule 11(b)(3). Plaintiff(s) include ABC Corps 1 -100 (fictious entities), John Does 1 - 100 (fictious persons) & Jane Does 1 - 100 (fictious persons) as discovery progresses there are likely more defendants to be added.

2346.    Pro Se litigants are entitled to attorneys' fees as if they were actual attorneys per Burt v Hennessey, 929 F. 2d 457, 459 (9th Cir. 1991) and it is especially so in this case as criminals with law licenses get to bill or have been billing but the innocent have been slaving away under terms of 'forced labor,' and in turn should be given full compensation as if they acted as attorneys the entire time starting in November 2017 until the conclusion of this matter at the mid-point rate of whatever bills have been submitted in aggregate by all of these attorneys in these matters. Plaintiff(s) demand mandatory restitution under 18 USC § 1593 as further grounds for having to act Pro Se and learn _and work like lawyers_ to defend and enforce our rights.

## PRAYER FOR RELIEF

Plaintiff(s) demand judgment be entered against defendants - each and every one of them, jointly and severally, for compensatory and actual damages because of their demonstrable injuries inflicted onto Plaintiff(s) and their business and property, as well as to award punitive damages because of defendants' callous and reckless indifference and malicious acts that are automatically trebled under RICO statute(s), and where appropriate, punitive damages, and such other relief the Court may deem just and proper.

The amount of damages prayed for will be included in the Amended compliant when all Plaintiff(s) have read and amended this Pleading.

Additionally, there needs to be put in place a temporary, and then a permanent injunction against the Immigration Enterprise, until such time as the Court is satisfied that it is not being run, managed, or operated but a group of hoodlums such as the Imm defendants.  All Imm defendants nevertheless need a permanent injunction against them from not only "practicing" Immigration in the United States but indeed from ever again entering the United States – with the exception of Mr. Richard Dennis and Mr. Edward Dennis - as it is believed they are American Citizens. Getting an injunction against the Immigration Enterprise will effectively end their existence unless the government of Canada acts and the Canadian government re-thinks the 'bad actors' they have running the Immigration Enterprise. Because approximately 10% of the Immigration Enterprise is in the United States it will indeed be enough influence to change things (and this 10% happens to be some of the members Dean was elected to represent and exceeds the 1% who filed out false bulk discipline complaints). In short, the injunction against the Immigration Enterprise will cause the new College of Immigration and Citizenship Consultants (that one they stole from Salloum) to at least be comprised of 100%

new directors, managers, and employees running the organization with none of these Imm defendants in it nor running the organization.

The Court can and should also make a declaratory Judgement against the Imm defendants and the Immigration Enterprise to correct this matters. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Vill., Cal., 333 U.S. 426, 431 (1948); see also Hewitt v. Helms, 482 U.S. 755, 762–63 (1987); Public Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962) (per curiam); Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 533 (9th Cir. 2008); Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1222–23 (9th Cir. 1998) (en banc).

Defendants should not be able to funnel money over the Canadian border into the United States and should be made to pay with their personal funds.  By allowing defendants to use the ICCRC treasury that would be letting the racketeers benefit from their ill gotten gains.  Moreover, they ought not be able to let BS or GG represent them as there are clear conflicts of interest issues.

Finally, an injunction from the Imm defendants obtaining Dean's American based email address rcic20xx@gmail.com; Imm defendants threatened that Dean was a wrongdoer because he had the email that contains the letters "rcic" in it for years and suddenly because Imm defendants were moving to suspend/revoke Dean's license his American property suddenly should not be used. There should be an injunction that prevents the Imm defendants from using the ICCRC treasury to defend against this Civil RICO complaint because the law says that they ought not benefit from their ill gotten gains and then use these same ill gotten gains to protect themselves.

**JURY DEMAND**

Plaintiff(s), respectfully demand a jury trial on all issues so triable.

Dated: April 19, 2021

Respectfully submitted:

Ryan Dean
Pro Se
3540 W. Sahara Ave, 752
Las Vegas, NV, 89102
rcic20xx@gmail.com

457