**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN DEAN,<br><br>*Plaintiff*,<br><br>v.<br><br>J. BISSEL, et al.,<br><br>*Defendants*. | Civil Action No. 21-9770<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Motions to Dismiss the Complaint, ECF No. 1, brought by (1) the Canadian Lawyer Defendants,[1] ECF No. 51; (2) the Society and Corporation of Lloyd's,[2] ECF No. 55; (3) the Soden Defendants,[3] ECF No. 56; (4) the SPCS Defendants,[4] ECF No. 57; (5) the Insurer, ICCRC, and CAPIC Defendants,[5] ECF No. 58; (6) the Investigator

---

[1] The Canadian Lawyer Defendants are Keel Cottrelle LLP, Patricia Harper, Miller Thomson LLP, Adam Stephens, Michael Pace, Elliott Saccucci, Forbes Chochla Leon LLP, Natalie Leon, Nicole McAuley, John Risk, Singleton Reynolds LLP, Evan Rankin, Peter Wardle, Nicole Lafreniere, Tara Lisewski, Paliare Roland Rosenberg Rothstein LLP, Glynnis Hawe, Jeff Larry, Deeth Williams Wall LLP, Gervais Wall, Michelle Noonan, Andrew John Roman, Andrew John Roman Professional Corporation, Bereskin & Parr, LLP, Tamara Winegust, and R. Scott McKendrick.

[2] Two entities have appeared on behalf of the party named as "Lloyd's of London Insurance" in the Complaint. In addition to the Society and Corporation of Lloyd's, Certain Underwriters at Lloyd's, London has appeared as an Insurer Defendant. See infra n.5.

[3] The Soden Defendants are John Soden and Shakuntala Soden.

[4] The SPCS Defendants are Kelly Parent and Smith Petrie Carr & Scott Insurance Brokers Ltd. ("SPCS"). SPCS is not named as a defendant in the Complaint's caption but is referenced in its body.

[5] The Insurer Defendants are Arch Insurance Company of Canada Ltd., Aviva Insurance Company of Canada, Everest Insurance Company of Canada, Temple Insurance Company, XL Reinsurance America Inc., Certain Underwriters at Lloyd's, London, Heather Mackie, and Diane Lefebvre.

The ICCRC Defendants are the Immigration Consultants of Canada Regulatory Council ("ICCRC"), Tarek Allam, Alli Amlani, Christina Ashmore, Stephen Ashworth, Nancy Awwad, Marty Baram, Lawrence Barker, Hafeeza Bassisrullah, Danielle Bastarache, Stanislav Belevici, Alex Beraskow, Peter Bernier, Cindy Beverly, Randy Boldt, Haile Britu, Janice Brooks, John Burke, John Cockerill, Chris Daw, Edward Dennis, Richard Dennis, Tim D'Souza, Latifa El-Ghandouri, Gabrielle Fortin, Jackie Furlong, Louis-Rene Gagnon, Lynn Gaudet, Carla Gelbloom, Russ

1

Defendants,[6] ECF No. 88; (7) the Queens University Defendants,[7] ECF No. 89; (8) the York University Defendants,[8] ECF No. 90; and (9) the Bell & Shivas Defendants,[9] ECF No. 91. Also before the Court are (10) Plaintiff Ryan Dean's ("Plaintiff") Motion to Proceed in Forma Pauperis, ECF No. 46; (11) Plaintiff's Motion for Default Judgment, ECF No. 76; (12) Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 126; and (13) Plaintiff's Motion to Submit Supplementary Materials, ECF No. 141. All Motions are opposed. For the reasons explained below, each Motion to Dismiss is **GRANTED**, Plaintiff's Motion for Leave to Amend is **GRANTED IN PART**, and Plaintiff's remaining Motions are **DENIED AS MOOT**.

I. **FACTUAL BACKGROUND**

This civil action brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("RICO") arises out an alleged international conspiracy of breathtaking scope, consisting of over 150 named defendants and still other nonparties. See generally Compl, ECF No. 1. The Court gleans the following facts from Plaintiff's 457-page, 2346-paragraph Complaint, which asserts that two independent enterprises in Canada and New Jersey colluded to violate Plaintiff's rights. The Court recites only those facts necessary to resolve the instant Motions.

---

Harrington, Ana Hernandez, Merv Hillier, James Hsieh, Michael Huynh, Nicole Jones, Sabine Jozsa, Wendy Kelly, Mary Kennedy, Maria Krajewska, Daniela Lima, Christopher May, Leanne McGeachy, Ron McKay, Phil Mooney, John Murray, Guy Marcel Nono, Danielle Orr, Joan Page, Beata Pawlowska, Peter Perram, Samantha Psoch, Rodelia Ramos, Daniel Roukema, Darlene Ryan, Laurie Sanford, Satpaul Singh Johal, Amandeep Singhera, Dace Stripniecks, Rosalee Van Staalduinen, Javier Vinsome, Maline Wen, Sherry Wiebe, and Rhonda Williams.

The CAPIC Defendants are the Canadian Association of Professional Immigration Consultants, Kim Ly, Gerd Damitz, Namita Dass, Donald Igobokwe, and Dory Jade.

[6] The Investigator Defendants are NR Complaint & Discipline Solutions, Inc., Robert Kewley, and Arnold Atkin.

[7] The Queens University Defendants are Queen's University and Janet Fuhrer.

[8] The York University Defendants are York University and Richard LeBlanc.

[9] The Bell & Shivas Defendants are Bell & Shivas, P.C., Joseph Bell, David Shivas, Brian Laskiewicz, Kristie Ward, and Victoria Kingdon.

### A. The Canadian Conspiracy

The Complaint's first alleged enterprise consists of persons associated with the ICCRC, a Canadian regulatory body (the "Immigration Enterprise"). Id. ¶ 92. The Immigration Enterprise is comprised of the ICCRC, CAPIC, Insurer, Canadian Lawyer, Soden, SPCS, Investigator, Queen's University, and York University Defendants, along with the Society and Corporation of Lloyd's and dozens of defendants who have not entered an appearance (collectively the "Immigration Defendants"). Id. The role of each named defendant within the "Immigration Enterprise" is not completely clear, and indeed many defendants are mentioned only in the Complaint's caption and list of parties.

In 2016, Plaintiff was elected as a director of the ICCRC. Id. ¶ 23. Allegedly in unlawful retaliation for testimony Plaintiff gave in March 2017 accusing the ICCRC of financial improprieties, Plaintiff was removed from his directorship on April 20, 2017. Id. ¶¶ 723-41. Plaintiff's appeal of the removal decision was denied, and Plaintiff was further banned for five years from running for the ICCRC. Id. ¶¶ 78(e), 802.[10] Plaintiff separately alleges that the Immigration Defendants stole intellectual property from nonparty Nancy Salloum and retaliated against Plaintiff for accepting a volunteer position with Salloum's company. Id. ¶ 80.

Plaintiff acknowledges that "[a]t all times, the Immigration Enterprise was based in Canada," but alleges that two directors of the ICCRC resided in Buffalo, New York for a time. Id.

---

[10] Plaintiff subsequently filed two lawsuits in the Superior Court of Ontario against the ICCRC and many of the other Immigration Defendants, alleging a conspiracy to remove him from his position. See Certification of Rachel R. Hager ¶ 2 & Ex. A, ECF No. 90.2.

¶ 74(iii). Plaintiff also asserts that the Immigration Enterprise "reached into the United States" by targeting Dean, a Nevada resident.[11]  See, e.g., id. ¶¶ 77(iii), 80, 147.

### B. The New Jersey Conspiracy

Plaintiff's second alleged enterprise consists of persons associated with Lisa Bissel ("Bissel"), a woman who allegedly falsely accused Plaintiff of sexual assault (the "False Accuser Enterprise").  Id. ¶ 92.  The False Accuser Enterprise is comprised of Bissel, her husband James Bissel, Classic Luxury LLC, Mark Faber, Craig Peretz, Sierra Global Management LLC, and the Bell & Shivas Defendants, along with the law firm Greenbaum, Rowe, Smith, Davis, LLP and several of its attorneys (collectively "Greenbaum").  Id.  Bissel and Greenbaum do not appear to be parties to this action, see id. at 1 (caption), however the remaining members of the alleged False Accuser Enterprise are named as defendants (collectively the "Bissel Defendants").

On August 9, 2017, Bissel accused Plaintiff of sexual assault in Essex County Superior Court and obtained a temporary restraining order (the "DV Action").  Id. ¶ 828.  Bissel also filed a police report with the Cedar Grove Police Department.  Id.  Ultimately, the Superior Court found the allegations of domestic violence unsubstantiated and declined to issue a final restraining order.  Id. ¶ 1556.  Plaintiff later filed suit in federal court against Greenbaum, which represented Bissel in connection with the DV Action.  See Dean v. Flannigan, No. 19-18255 (D.N.J.) (the "Greenbaum Action").  The court dismissed the Greenbaum Action on October 1, 2020 after concluding that Plaintiff's RICO, constitutional, and tort claims arising from Greenbaum's representation of Bissel failed to state a claim for relief.  See id., ECF No. 21.

---

[11] Plaintiff alleges that he also resided in Canada and New York at various times relevant to this action. Compl. ¶¶ 316, 843, 852.

On February 5, 2019, Bissel filed an employment discrimination action in New Jersey Superior Court against Plaintiff, asserting that Bissel was constructively hired by Plaintiff's hedge fund, that Plaintiff failed to offer Bissel a formal position, and that Plaintiff subjected Bissel to sexual harassment and assault (the "Employment Action"). Compl. ¶¶ 68, 79(viii); see generally Bissell v. Saga Glob. Cap. Mgmt., LLC, No. 20-7393, 2020 WL 7210024, at *1 (D.N.J. Aug. 17), report and recommendation adopted, 2020 WL 7173306 (D.N.J. Dec. 7, 2020). After Plaintiff untimely sought to remove the Employment Action, it was remanded back to Superior Court where it ostensibly remains pending.

The Bell & Shivas Defendants represent Bissel in connection with the Employment Action and are the only Bissel Defendants who have appeared in the instant case. As best the Court can tell, Plaintiff's clams against the Bell & Shivas Defendants arise from allegations that Bissel's attorneys "approved" allegedly false statements made by Bissel and made filings in the Employment Action with allegedly false statements, while having access to evidence from the DV Action showing the statements were false. See, e.g., Compl. ¶¶ 79(viii), 839, 1016, 1034-38, 1058, 1062, 1078, 1203.

Despite alleging two distinct enterprises and seemingly independent factual nexuses, Plaintiff alleges that the Immigration and Bissel Defendants "confederated and conspired" with each other. Id. ¶ 29. He specifically asserts that Bissel "knew who Dean's enemies were in Canada," and "knew that the [Immigration] defendants were into bribery and backroom deals," and so Bissel approached them to finance her litigation against Plaintiff. Id. ¶ 813. Plaintiff further alleges that the Immigration Defendants, in fact, did finance Bissel's New Jersey court actions, id. ¶¶ 12, 19, although Plaintiff does not specify whether any particular defendant or subset of defendants supplied the alleged funding.

### C. The Cedar Grove Defendants

Outside the two conspiracies described above, Plaintiff alleges civil rights violations against the Township of Cedar Grove, the Cedar Grove Police Department, and various municipal employees (collectively the "Cedar Grove Defendants" and together with the Immigration and Bissel Defendants, "Defendants"). See id. ¶ 94. The Complaint generally alleges that the Cedar Grove Defendants failed to provide Plaintiff with certain evidence in connection with the investigation into Plaintiff's alleged sexual assault of Bissel and otherwise acted improperly in connection with that investigation. Id. ¶¶ 1643-78. These defendants are not named as part of the alleged "False Accuser Enterprise," id. ¶ 94, and have not appeared in this action.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by filing the Complaint on April 19, 2021. ECF No. 1. The Complaint asserts 40 causes of action against Defendants, including federal claims brought under RICO and 42 U.S.C. §§ 1983, 1985 and statutory and common law claims under the laws of seven states. Compl. ¶¶ 2035-2346. Plaintiff claims that service of the Complaint was effectuated by sending a one-page letter with a Dropbox link purportedly containing the Complaint to each Defendant via regular mail or email. See Aug. 17, 2021 Certification of Ryan Dean ("8/17/21 Dean Cert.") ¶¶ 3-4 & Exs. 1-2, ECF No. 76.1. On July 13, 2021, the Court denied Plaintiff's motion to consolidate this case with the Greenbaum and Employment Actions. ECF No. 37.[12]

On August 2 and 4, 2021, the Canadian Lawyers, Soden, SPCS, Insurer, ICCRC, and CAPIC Defendants, along with the Society and Corporation of Lloyd's, moved to dismiss the

---

[12] On July 24, 2021, Plaintiff filed a motion to proceed in forma pauperis under 28 U.S.C. § 1915, which permits a plaintiff to proceed in a civil action without prepayment of fees upon a showing that the plaintiff cannot afford to pay those fees. ECF No. 46. As Plaintiff has already paid the applicable filing fees in this action, his application is denied as moot.

Complaint. ECF Nos. 51, 55-58. On August 30, 2021, Plaintiff filed a motion for a preliminary injunction "to immediately suspend the Bell & Shivas defendant attorneys from the practice of law," default judgment against Defendants who had not yet appeared, and authorization for alternative service or an extension of time to effectuate service. See ECF No. 76.2. The Investigator, Queen's University, York University, and Bell & Shivas Defendants moved to dismiss the Complaint on September 27-30, 2021. ECF Nos. 88-91.

On November 22, 2021, Plaintiff opposed each Motion to Dismiss, ECF Nos. 100, 103, and simultaneously filed an Amended Complaint, ECF No. 111. On December 2, 2021, the Court struck the Amended Complaint for failure to seek prior leave to file an amended pleading.[13] ECF No. 114. The Court further advised Plaintiff that any future relief sought from the Court must be requested by way of formal motion. ECF No. 124.

Plaintiff moved for leave to amend the Complaint on December 20, 2021, attaching a redlined version of his proposed 943-page Amended Complaint. ECF No. 126. Plaintiff then filed a motion for leave "to submit supplementary materials and other relief" on January 4, 2022, which requests a wide scope of relief, including a stay of the Employment Action. ECF No. 141.

The moving Defendants now seek dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

---

[13] To the extent Plaintiff argues that the Court erred by striking the Amended Complaint, the Court disagrees. Federal Rule of Civil Procedure 15(a)(1) permits a party to file an amended pleading "once as a matter of course" within 21 days after service of a responsive pleading or a motion under Rule 12(b). Though Plaintiff requested and received multiple extensions to respond to the instant Motions, he did not first express his intention to file an amended complaint until September 17, 2021—well more than 21 days after the Canadian Lawyers filed their motion to dismiss on August 2, 2021. See ECF No. 86. Consequently, Rule 15(a)(2) required Plaintiff to seek Defendants' consent or the Court's leave before filing an amended pleading.

**III.    LEGAL STANDARD**

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiff bears the burden of proving that personal jurisdiction is proper. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998). In establishing a prima facie case of personal jurisdiction, a plaintiff is "entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citation and quotations omitted). However, where a Rule 12(b)(2) motion challenges a plaintiff's allegations with "affidavits or other evidence," the "plaintiff must respond with actual proofs, not mere allegations." UniMaven, Inc. v. Texas TR, LLC, No. 17-12008, 2018 WL 2244695, at *2 (D.N.J. Apr. 25, 2018) (quoting Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990)).

Rule 12(b)(5) permits the Court to dismiss a complaint without prejudice due to insufficient service of process. See Umbenhauer v. Woog, 969 F.2d 25, 30 n.6 (3d Cir. 1992). The Court may also, in lieu of dismissal, order the plaintiff to effect proper service. Moses v. Amazon.com.dedc LLC, No. 16-8675, 2019 WL 7293590, at *3 (D.N.J. Dec. 30, 2019). "[T]he party asserting the validity of service bears the burden of proof on that issue." Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). Moreover, a pro se plaintiff's ignorance of service requirements cannot excuse the failure to effect proper service. Moses, 2019 WL 7293590, at *2.

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Finally, since Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and hold them to a less stringent standard than those filed by attorneys, Haines v. Kerner, 404 U.S. 519, 520 (1972), but the "Court need not . . . credit a pro se plaintiff's 'bald assertions' or 'legal conclusions,'" Mestman v. Escandon, No. 14-3880, 2014 WL 11398143, at *1 (D.N.J. June 25, 2014).

IV.  ANALYSIS

The moving Defendants each argue that the Complaint should be dismissed in its entirety. The Immigration Defendants argue, among other things, that the Court lacks personal jurisdiction over them, and that the Complaint fails to plausibly connect the alleged conduct in Canada to the alleged conduct in New Jersey. The Bell & Shivas Defendants argue that the Complaint has not been properly served and fails to state a claim for relief against them. The Court agrees on all fronts.

    A.    **Personal Jurisdiction over Immigration Defendants**

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law," which "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." Id. Moreover, RICO permits the exercise of personal jurisdiction over "other parties residing in any other district" where required by the "ends of justice." 18 U.S.C. § 1965(b) ("Section 1965(b)"); see also Laurel Gardens, LLC

9

v. Mckenna, 948 F.3d 105, 116-20 (3d Cir. 2020) (holding that Section 1965(b) governs the exercise of personal jurisdiction in RICO actions).

As discussed below, Plaintiff has failed to establish personal jurisdiction under either a traditional "minimum contacts" analysis or Section 1965(b).

### 1. Minimum Contacts with New Jersey

A plaintiff asserting personal jurisdiction must show constitutionally sufficient contacts with respect to "each defendant" individually, and a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 137 S. Ct. 1773, 1783 (2017) (citations and quotation marks omitted). There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). The Court examines each in turn.

#### a. General Jurisdiction

This Court may exercise general jurisdiction only over defendants who are "essentially at home" in New Jersey. Id. Individuals are at home in their "place of domicile," while an entity is subject to general jurisdiction in states where it is incorporated or maintains its principal place of business. Id. Plaintiff has not alleged that any of the Immigration Defendants are domiciled, incorporated, or principally located in New Jersey. See, e.g., Compl. ¶ 74(iii) (alleging that the Immigration Enterprise was "based in Canada" except for two ICCRC directors residing in Buffalo, New York). Consequently, the Court lacks general jurisdiction over the Immigration Defendants.

### b.      Specific Jurisdiction

To establish specific jurisdiction over a nonresident Defendant, a plaintiff must show two elements: (1) that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" through deliberate contacts with New Jersey; and (2) that the plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum. Ford Motor Co., 141 S. Ct. at 1024-25 (citations and quotation marks omitted).  Once these elements are established, jurisdiction is "presumptively constitutional" unless the defendant can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 324 (3d Cir. 2007) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Here, the only factual allegations connecting the Canadian-based Immigration Enterprise to New Jersey are that Bissel approached the "Immigration Defendants"—a group comprised of well over 100 different individuals and entities—for litigation financing and that the Immigration Defendants funded the DV and Employment Actions in New Jersey Superior Court.  See, e.g., Compl. ¶¶ 12, 19, 813.  Such generalized and vague allegations fall well short of carrying Plaintiff's burden to show that each Defendant purposefully availed him or herself of the privilege of conducting activities in New Jersey.

The allegations in Plaintiff's proposed Amended Complaint further highlight the lack of individualized connections to New Jersey.  Despite the new addition of a 300-page section titled "Summary of Each Defendants' Liability," Plaintiff has still failed to plausibly link the Immigration Defendants to New Jersey.  By way of example, Plaintiff's new allegations against ICCRC Defendant Tarek Allam consist primarily of three pages of conclusory statements of liability under various laws.  See Proposed Am. Compl. ¶ 2062, ECF No. 126.4.  But with respect

11

to contacts with New Jersey, Plaintiff merely asserts that Allam is liable under 42 U.S.C. §§ 1983 & 1985 "if there is a . . . connection to the False accusers" and that "discovery will provide more details and who had authorized the financing of the [False Accuser Enterprise] and knew about it." Id. Indeed, Plaintiff now concedes that "[t]he matters in Canada have not produced Evidence that [the] NJ matters and the Canadian matters are related." Id. ¶ 38.[14]

Manifestly, Plaintiff's mere speculation as to the source of Bissel's litigation funding is insufficient to show that any Immigration Defendant purposefully contacted New Jersey. The Court therefore lacks specific jurisdiction over the Immigration Defendants.[15]

### 3. RICO Statutory Jurisdiction

The Court next considers whether, despite the lack of minimum contacts with New Jersey, RICO provides for personal jurisdiction over the Immigration Defendants. Section 1965(b) authorizes jurisdiction over RICO defendants who "resid[e] in any other district" but otherwise lack minimum contacts with the forum state if three requirements are met: (1) "at least one defendant . . . meets the traditional contacts test"; (2) the "ends of justice" require that the district court exercise jurisdiction; and (3) jurisdiction comports with due process based on the out-of-state defendant's contacts with the United States as a whole. Laurel Gardens, LLC, 948 F.3d at 120-23.

As an initial matter, RICO's authorization of jurisdiction over defendants residing in "any other district" does not appear to extend to defendants residing in another country.[16] Nonetheless,

---

[14] This is a significant revision from the present Complaint, which alleges, without further explanation, that Plaintiff's use of "Canadian Avenues" produced evidence "related to [the False Accuser Enterprise] and shows the interrelatedness." Compl. ¶ 26.

[15] As Plaintiff's allegations fail to present a prima facie case of personal jurisdiction, the Court need not consider the Immigration Defendants' extrinsic evidence speaking to their lack of contacts with New Jersey.

[16] Courts have diverged on this issue, which the Court need not decide to resolve the instant Motions. Compare AmTrust Fin. Servs., Inc. v. Lacchini, 260 F. Supp. 3d 316, 330 n.7 (S.D.N.Y. 2017) ("[Section] 1965 may not be

12

Plaintiff has alleged that two ICCRC Defendants reside in the Western District of New York, Compl. ¶ 74(iii), and so the Court proceeds.

Plaintiff alleges RICO claims against both the Immigration and Bissel Defendants, and there is, at minimum, general personal jurisdiction over the Bissel Defendants residing in New Jersey. The Court must therefore determine whether the "ends of justice" require jurisdiction over the Immigration Defendants.

Though the precise contours of RICO's "ends of justice" requirement are unclear, Section 1965(b) reflects a congressional intent to "enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986). In Laurel Gardens, the Third Circuit declined to decide whether a "multidistrict conspiracy" encompassing both resident and nonresident defendants must be pled in every case,[17] but instead found that a "flexible understanding of the 'ends of justice'" permitted jurisdiction over three Delaware residents in the Eastern District of Pennsylvania. 948 F.3d at 121 & n.11. The court found jurisdiction appropriate because (a) the plaintiff alleged a multi-state, "hub-and-spoke" conspiracy centered in Pennsylvania; (b) the focal point of the allegedly unlawful conduct was Pennsylvania; and (c) the "obvious proximity between Delaware and the Eastern District of Pennsylvania" would not subject the defendants to litigation in "far flung fora." Id. at 121-22.

---

used to exert personal jurisdiction over foreign defendants." (citation omitted)), with Mocha Mill, Inc. v. Port of Mokha, Inc., No. 18-2539, 2019 WL 1048252, at *6 (N.D. Cal. Mar. 5, 2019) ("With respect to foreign defendants, Section 1965(b) simply affords courts the opportunity to analyze nationwide contacts in determining whether the court may exercise personal jurisdiction.").

[17] The Ninth Circuit requires such allegations, along with a showing that no other District can exercise jurisdiction over all defendants under a traditional minimum contacts analysis. See Butcher's Union, 788 F.2d at 539. Like the "multidistrict conspiracy" requirement, the Third Circuit did not decide whether a plaintiff invoking Section 1965(b) must always show a lack of jurisdiction in other Districts. Laurel Gardens, LLC, 948 F.3d at 121.

None of the factors present in <u>Laurel Gardens</u> exist here. First, the Complaint does not allege a single RICO conspiracy encompassing both the Immigration and Bissel Defendants, but instead describes two distinct enterprises with separate operations in Canada and New Jersey.[18] <u>See, e.g.</u>, Compl. ¶¶ 70, 75. Second, excepting the vague allegations of litigation funding discussed above, all conduct alleged against the Immigration Defendants occurred in Canada and was directed at Plaintiff, a resident of Canada, Nevada, and New York. <u>See, e.g.</u>, <u>id.</u> ¶¶ 77(iii), 80, 147, 723-41. Finally, the vast majority of Immigration Defendants ostensibly reside in a foreign nation, rather than a neighboring District. <u>See</u> <u>Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.</u>, 480 U.S. 102, 114 (1987) (recognizing the "unique burdens placed upon one who must defend oneself in a foreign legal system"). Consequently, the Court is well satisfied that "ends of justice" do not require haling the Immigration Defendants into court in New Jersey and need not determine which of the Immigration Defendants has constitutionally minimum contacts with the United States as a whole.

Plaintiff has failed to demonstrate personal jurisdiction over any Immigration Defendant under a traditional "minimum contacts" analysis or Section 1965(b). The Court will therefore dismiss the Complaint as to the Immigration Defendants.

### B. Service of the Complaint

The Bell & Shivas Defendants do not contest personal jurisdiction but argue instead that Plaintiff failed to properly serve the Complaint. Further, Plaintiff has requested a default judgment

---

[18] Among other things, a Plaintiff alleging a RICO violation must plead the existence of an "enterprise" that engaged in a course of conduct. <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 362 (3d Cir. 2010). The enterprise requirement can be satisfied through allegations plausibly implying the existence of an "association-in-fact" that shares a common "purpose," continuing "relationships among those associated with the enterprise," and "longevity sufficient to permit these associates to pursue the enterprise's purpose." <u>Id.</u> (citing <u>Boyle v. United States</u>, 556 U.S. 938, 946 (2009)). The Complaint does not suggest that the Immigration and Bissel Defendants had any continuing relationship or association beyond the alleged agreement to fund Bissel's litigation activities.

against Defendants who have not appeared, and so the Court will also assess the validity of service as to the nonmoving Bissel and Cedar Grove Defendants.[19] The Court finds that Plaintiff failed to properly serve the Complaint.

Service upon a defendant residing in the United States must be effected by delivering a copy of the summons & complaint to an individual personally, leaving a copy of each at an individual's dwelling, delivering a copy of each to a defendant's authorized agent, or by any means authorized by New Jersey law. See Fed. R. Civ. P. 4(e), (h). Plaintiff purports to have served each Defendant by mailing a one page letter containing a Dropbox link via regular mail or email. See 8/17/21 Dean Cert. ¶¶ 3-4 & Ex. 1-2. Nothing in Rule 4 or New Jersey's Court Rules permits initial service in this manner.[20]

Plaintiff has therefore failed to properly serve the Bissel and Cedar Grove Defendants, and the Court must now decide whether to dismiss the Complaint without prejudice or permit additional time to perfect service. As discussed below, the Court also concludes that the Complaint fails to comply with Federal Rule of Civil Procedure 8, rendering service futile.[21]

### C. Adequacy of the Complaint

Rule 8(a)(2) requires any complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d) similarly requires each allegation in a

---

[19] Because the Court lacks jurisdiction over the nonmoving Immigration Defendants, it need not assess whether they have been properly served.

[20] New Jersey Court Rule 4:4-4(c) does permit a plaintiff to attempt initial service by regular mail and provides that such service is effective if the defendant appears in response to the complaint. However, nothing in Rule 4:4-4 authorizes a plaintiff to serve a defendant by mailing a hyperlink, as opposed to the summons and complaint itself.

[21] For the same reason, the Court denies Plaintiff's request for alternative service at this time. To the extent Plaintiff seeks to effect alternative service of an amended pleading, he must formally request such relief from the Magistrate Judge.

15

pleading to be "simple, concise, and direct." Plaintiff has failed to comply with both of these fundamental requirements.

The Third Circuit has explained the "short and plain statement" requirement as follows:

> The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. And the statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage. Whether the "short and plain statement" requirement is satisfied is a context-dependent exercise. A complaint may permissibly be dismissed based on Rule 8 noncompliance.

Kamdem-Ouaffo v. Huczko, 810 F. App'x 82, 84 (3d Cir. 2020) (citations, quotation marks, and alterations omitted). Stated more plainly, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003).

The instant Complaint is the antithesis of a "short and plain statement" and its allegations are far from "simple, concise and direct." Plaintiff has pled 2346 paragraphs—many of which span multiple pages or include multiple subparagraphs—over 457 pages, not including numerous Dropbox links to outside exhibits. Many, if not most, of the factual allegations are repeated multiple times and accompanied by lengthy analyses and commentary as to their legal significance. The Complaint is also replete with multi-page discussions of case law and statutory language, rhetorical questions, speculation as to what would have happened to Dean if he was convicted of assaulting Bissel, and even references to Alexandre Dumas's The Count of Monte Cristo. Plaintiff has also dedicated hundreds of pages to allegations of conduct which occurred in Canada and is attributed to parties over whom the Court has now determined that it lacks jurisdiction. And

perhaps most critically, the Complaint does not explain which facts support each of Plaintiff's 40 causes of action, requiring the reader to pore over 450 pages to ascertain the relevant material. See, e.g., Compl. ¶ 2288 (alleging that the Immigration and Bissel Defendants are liable for abuse of process "for the reasons set forth in this entire complaint").

While the Court is sympathetic to Plaintiff's pro se status, and to the fact that an international RICO conspiracy necessarily takes significant detail to explain, the Bissel and Cedar Grove Defendants cannot be expected to meaningfully respond to the instant Complaint. See, e.g., Kamdem-Ouaffo, 810 F. App'x at 85 (affirming sua sponte dismissal of complaint that spanned "almost 2,500 numbered paragraphs, incorporated "hundreds of pages of exhibits," and contained significant replication, unnecessary exposition, and analyses of case law). Permitting Plaintiff to proceed on the Complaint would place an unjustified burden on both the Defendants and this Court. Indeed, Rules 8(a) and 8(d)(1) authorize dismissal of pleadings significantly shorter than the instant Complaint. See, e.g., Jackson v. Sec'y Pa. Dep't of Corr., 438 F. App'x 74, 75 (3d Cir. 2011) (affirming dismissal of complaint consisting of "approximately fifty pages of rambling allegations, presented mostly in single-paragraph style, often with each paragraph spanning several pages").

The Court therefore finds that service of the instant Complaint would be futile and dismisses it without prejudice in its entirety.

### D. Leave to Amend the Complaint

The Court last addresses Plaintiff's motion for leave to file his proposed amended Complaint, which measures an astonishing 943 pages. Federal Rule of Civil Procedure 15(a)(2)

17

requires the Court to grant leave to amend a pleading "when justice so requires," unless amendment would be inequitable or futile.  See Phillips, 515 F.3d at 236.

As discussed above, the new allegations in the proposed Amended Complaint do not cure the jurisdictional defects with respect to the Immigration Defendants, and—needless to say—do not make Plaintiff's statement of his claims against the Bissel or Cedar Grove Defendants any shorter or plainer.  Plaintiff's motion is therefore denied to the extent he seeks to file the currently proposed Amended Complaint.

Nonetheless, the Court will permit Plaintiff the opportunity to file an amended complaint that complies with Rule 8 within 60 days.  Plaintiff is instructed that any amended pleading must be limited to 100 pages.  Such pleading must refrain from the repetition of facts, extraneous commentary, or legal analysis and must explain which specific facts support each alleged cause of action.  To the extent Plaintiff still wishes to pursue his claims against one or more of the Immigration Defendants, he must set forth specific facts—not conclusory statements—justifying the exercise of jurisdiction over each defendant.  All factual allegations must comply with Federal Rule of Civil Procedure 11(b)(3).  Finally, Plaintiff is reminded that any future requests for relief from this Court must be made by formal motion and comply with the page-limit and formatting requirements set forth in the Local Rules of Civil Procedure.  See, e.g., Local Civ. R. 7.2.

V.     **CONCLUSION**

For the reasons stated above, the pending Motions to Dismiss, ECF Nos. 51, 55, 56, 57, 58, 88, 89, 90, & 91 are each **GRANTED**.  The Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction over the Immigration Defendants, improper service, and failure to comply with Rule 8.  Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 126, is **GRANTED IN PART**.  Plaintiff may not file the proposed complaint currently

before the Court but may file an amended complaint that complies with the Court's above instructions within sixty (60) days of this Opinion.  Any amended pleading must be properly served pursuant to the rules for initial service set forth in Rule 4, except with respect to Defendants who have appeared in this action and waived service of the Complaint by failing to contest it.  Plaintiff's other pending motions, ECF Nos. 46, 76, & 141, are **DENIED AS MOOT**.  An appropriate order follows.


Date: March 14, 2022                         <u>*/s/ Madeline Cox Arleo*</u>
                                             **Hon. Madeline Cox Arleo**
                                             **UNITED STATES DISTRICT JUDGE**